| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| JOHN A. MOE, II (SBN 66893)<br>john.moe@dentons.com<br>ANDREA C. CHANG (SBN 235011)<br>andrea.chang@dentons.com<br>DENTONS US LLP<br>601 S. Figueroa Street, Suite 2500<br>Los Angeles, CA 90017-5704<br>Telephone: (213) 623-9300<br>Facsimile: (213) 623-9924<br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:* Movant Preferred Bank | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br>SDRES PARTNERS, LLC<br><br>Debtor(s). | CASE NO.: 8:26-bk-11744-SC<br>CHAPTER: 11 |
| | **NOTICE OF MOTION AND MOTION FOR (A) RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (REAL PROPERTY), and (B) RELIEF FROM TURNOVER UNDER 11 U.S.C. § 543 BY PREPETITION RECEIVER OR OTHER CUSTODIAN**<br>**(with supporting declarations)** |
| | DATE: September 16, 2026<br>TIME: 1:30 P.M.<br>COURTROOM: 5C |

**Movant/Lender (Movant):** PREFERRED BANK

1. NOTICE IS HEREBY GIVEN to the Debtor and trustee (if any) (Responding Parties), their attorneys (if any), and other interested parties that on the above date and time and in the stated courtroom, Movant in the above-captioned matter will move this court for an order granting relief from the automatic stay and relief from turnover as to the Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached motion.

2. **Hearing Location**:

   ☐ 255 East Temple Street, Los Angeles, CA 90012
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367
   ☐ 3420 Twelfth Street, Riverside, CA 92501
   ☒ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 1415 State Street, Santa Barbara, CA 93101

3. ☒ a. This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1. If you wish to oppose this motion, you must file a written response to this motion with the court and serve a copy of it upon the Movant's attorney (or upon Movant, if the Motion was filed by an unrepresented individual) at the address set forth above no less than 14 days before the above hearing and appear at the hearing on this motion.

☐ b. This motion is being heard on SHORTENED NOTICE. If you wish to oppose this motion, you must appear at the hearing. Any written response or evidence must be filed and served:
☐ at the hearing ☐ at least _____ days before the hearing.

(1) ☐ An Application for Order Setting Hearing on Shortened Notice was not required (according to the calendaring procedures of the assigned judge).

(2) ☐ An Application for Order Setting Hearing on Shortened Notice was filed per LBR 9075-1(b) and was granted by the court.

(3) ☐ An Application for Order Setting Hearing on Shortened Notice has been filed and remains pending. Once the court has ruled on that motion, you will be served with another notice or an order that will specify the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

4. You may contact the clerk's office or use the court's website (www.cacb.uscourts.gov) to obtain a copy of an approved court form for use in preparing your response (optional court form F 4001-1.MOTION.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

5. If you fail to file a written response to the Motion or fail to appear at the hearing, the court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

Date: August 25, 2026

Dentons US LLP
Printed name of law firm (if applicable)

John A. Moe, II
Printed name of individual Movant or attorney for Movant

______________________________
Signature of individual Movant or attorney for Movant

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND RELIEF FROM TURNOVER

**Movant/Lender (Movant):** Preferred Bank

1. **The Property at Issue**: Movant moves for relief from the automatic stay with respect to the following real property (Property):

   Street Address: 210, 244 (and 248) South Orange Grove Boulevard
   Apt./Suite No.:
   City, State, Zip Code: Pasadena, California 91105

   Legal description or document recording number (include county of recording):

   ☒ See attached continuation page – attached Exhibit "1."

1A. **The Custodianship Action:** This Motion relates to Property as to which a Custodian is in possession as follows:

   Name of custodian (Custodian) (*specify*): Byron Z. Moldo
   Appointing court (*specify*): Superior Court for Los Angeles County, Northeast District (Alhambra)
   Appointing court case name (*specify*): Preferred Bank v. SDRES Partners LLC
   Appointing court case number (*specify*): 26NNCV01136
   Date of appointment of Custodian: March 11, 2026
   Date Custodian took possession of the Property: March 11, 2026

2. **Case History:**

   a. ☒ A voluntary ☐ An involuntary petition under chapter ☐ 7 ☒ 11 ☐ 12 ☐ 13 was filed on (*specify date*): June 3, 2026

   b. ☐ An order of conversion to chapter ☐ 7 ☐ 11 ☐ 12 ☐ 13 was entered on (*specify date*): ____________

   c. ☐ Plan was confirmed on (*specify date*):

   d. ☐ Other bankruptcy cases affecting this Property have been pending within the past two years. See attached declaration.

3. **Grounds for Relief from Stay:**

   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant the requested relief from stay as follows:

      (1) ☒ Movant's interest in the Property is not adequately protected.

         (A) ☒ Movant's interest in the Property is not protected by an adequate equity cushion.

         (B) ☒ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

         (C) ☐ No proof of insurance re the Property has been provided to Movant, despite borrower's obligation to insure the Property under the terms of Movant's contract with Debtor.

      (2) ☒ For other cause for relief from stay, see attached continuation page. Deterioration of Collateral.

   b. ☒ Pursuant to 11 U.S.C. § 362(d)(2)(A), Debtor has no equity in the Property; and pursuant to § 362(d)(2)(B), the Property is not necessary for an effective reorganization.

c. Pursuant to 11 U.S.C. § 362(d)(3), Debtor has not satisfied the requirements of this section because of a failure to:

(1) ☒ Commence payments; or

(2) ☒ File a reasonable plan of reorganization within 90 days of the petition date, which date will have passed as of the date this Motion is considered.

4. ☐ Movant also seeks annulment of the stay so that the filing of the bankruptcy petition does not affect postpetition acts, as specified in the attached declaration(s).

4A. **Grounds for relief from turnover under 11 U.S.C. § 543(d)(1):** For the reasons set forth in the attached Declaration(s):

a. ☒ Debtor has mismanaged the Property. The Custodian can more effectively manage the Property during the bankruptcy proceedings.

b. ☒ Debtor is not an appropriate fiduciary to collect and disburse proceeds of the Property for the benefit of the estate.

c. ☐ Other (*specify*):

5. **Evidence in Support of Motion: (*Important Note: Declaration(s) in support of the Motion MUST be attached hereto.)***

a. ☒ Movant submits the attached declaration on the court's approved forms (if applicable) to provide evidence in support of this Motion pursuant to LBRs.

b. ☐ Movant submits the attached supplemental declaration under penalty of perjury, to provide additional evidence in support of this Motion.

c. ☐ Movant requests that the court consider as admissions the statements made by Debtor under penalty of perjury concerning Movant's claims and the Property set forth in Debtor's schedules. Authenticated copies of the relevant portions of the schedules are attached as exhibit _____.

d. ☒ Other evidence (*specify*): Concurrently filed Declarations of Lingchu Lin, Byron Z. Moldo and Bob Gutzman.

6. ☒ **An optional Memorandum of Points and Authorities is attached to this Motion.**

**WHEREFORE, Movant prays that this court issue an Order terminating or modifying the stay and granting the following (*specify forms of relief requested*):**

1. Relief from the stay allowing Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

2. Relief from turnover pursuant to 11 U.S.C. § 543(b)(2) and (c)(2), and annulment of the stay so that the filing of the bankruptcy petition does not affect postpetition acts and to allow all issues regarding the custodianship to be determined by the Custodian's appointing court as if this bankruptcy case had not been commenced.

3. Alternatively, entering an order modifying the stay to:

a. ☐ Allow the Custodian to file with the appointing court a final report and account and request for order approving compensation and reimbursement of costs and expenses in accordance with non-bankruptcy law requirements.

b. ☒ Allow the appointing court to proceed to hear and determine all issues related to the appropriateness of the accounting and amounts of compensation requested, including any postpetition period prior to the entry of this order, and to authorize payment out of any funds in the possession of the Custodian that have not been required to be turned over to the Debtor or bankruptcy trustee.

c. ☒ Allow the appointing court to terminate the custodianship and to exonerate any bond or undertaking as may be appropriate.

d. ☐ Allow the Custodian to file an appropriate motion in the court pursuant to 11 U.S.C. § 543(c)(2) to seek an order from this court approving payment of compensation and reimbursement approved by the Appointing court from funds that have been turned over to the Debtor or bankruptcy trustee.

4. Other relief from stay provisions requested:

a. ☒ That the order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

b. ☒ That the 14-day stay prescribed by FRBP 4001(a)(3) be waived.

c. ☐ That extraordinary relief be granted as set forth in the attachment (*attach optional court form F 4001-1.EXT .RELIEF.ATTACH*).

d. ☐ For other relief requested, see attached continuation page.

5. If relief from stay is not granted, Movant respectfully requests the court to order adequate protection.

Date: August 25, 2026

Respectfully submitted,

Preferred Bank
Movant name

Dentons US LLP
Firm name of attorney for Movant (if applicable)

[signature]
Signature

John A. Moe, II
Printed name of individual Movant or Attorney for Movant

# DECLARATION RE CUSTODIANSHIP OF REAL PROPERTY

I, Lingchu Lin, declare as follows
(*Print Name of Declarant*)

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this motion (Property) because (*specify*):

   ☐ I am the Movant and owner of the Property.

   ☐ I manage the Property as the authorized agent for the Movant.

   ☒ I am employed by Movant as (*state title and capacity*): First Vice President, Preferred Bank

   ☐ Other (specify):

2. I am one of the custodians of the books, records and files of Movant as to those books, records and files that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

3. a. The address of the Property that is the subject of this Motion is:

   *Street Address:* 210, 244 (and 248) South Orange Grove Boulevard
   *Apt./Suite No.*:
   *City, State, Zip Code*: Pasadena, California 91105

   b. **The legal description or document recording number (including county of recording) set forth in Movant's deed of trust is attached as exhibit 1.**
   ☒ See attached continuation page – attached Exhibit "1."

4. Type of property (*check all applicable boxes*):
   a. ☒ Commercial 210 South Orange Grove Boulevard, Pasadena, CA 91105

   b. ☒ Multi-unit residential 244 (and 248) South Orange Grove Boulevard, Pasadena, CA 91105

   c. ☐ Industrial

   d. ☐ Other (*specify*):

4A. **The Custodianship Action:** A custodianship proceeding affecting the Property was pending in another forum when the petition was filed in this case. A true and correct copy of the order appointing the Custodian is attached as Exhibit _____. The procedural history of that proceeding is as follows: See the concurrently filed Declaration Of Byron Z. Moldo In Support Of Motion For Relief From Stay and Exhibit "A" attached to the Moldo Declaration.

Custodian name: Byron Z. Moldo
Appointing court: Superior Court, Los Angeles County
Appointing court case name: Preferred Bank v. SDRES Partners, LLC
Appointing court case number: 26 NNCV01136
Date of appointment of custodian: March 11, 2026
Date custodian took possession of the Property: March 11, 2026

5. Nature of Debtor's interest in the Property:

a. ☒ Sole owner
b. ☐ Co-owner(s) (*specify*):

c. ☐ Lien holder (*specify*):

d. ☐ Other (*specify*):
e. ☒ Debtor ☒ did ☐ did not list the Property in the Schedules filed in this case.
f. ☒ Debtor acquired the interest in the Property by ☒ grant deed ☐ quitclaim deed ☐ trust deed

The deed was recorded on: Unknown

6. Amount of Movant's claim with respect to the Property: See Exhibit 3.

| | | | |
|---|---|---|---|
| a. | Principal: | $ | 8,254,842.11 |
| b. | Accrued Interest and Default Interest Late Charges: | $ | 884,408.29 |
| c. | Costs (attorney's fees, foreclosure costs, appraisal fees): | $ | 426,281.51 |
| d. | Advances (property taxes, insurance): Receivership related fees, HOA fees | $ | 848,896.15 |
| e. | TOTAL CLAIM as of See Master Chart attached as Exhibit "3." | $ | 10,414,428.06 |

f. ☒ Loans are all due and payable because they matured on (*specify date*): 12/10/25 (Default Date, Loan 1) and 12/13/2025 (Maturity Date, Loan 2).

7. Movant holds a ☒ deed of trust ☐ other (*specify*) that encumbers the Property
a. A true and correct copy of the document as recorded is attached as exhibit C, E, AA to the Lin Declaration.
b. A true and correct copy of the promissory note or other document that evidences the Movant's claim is attached as exhibit A, B, I, Y, Z to the concurrently filed Lin Declaration.
c. A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of trust to Movant is attached as exhibit _____.

8. Status of Movant's claim relating to the Property (fill in all applicable information requested below):
a. Current interest rate: 14.75%, Loan 1 and 15.50% Loan 2 default rates; both loans are all due and payable.
b. Contractual maturity date: Default 11/8/25 (Loan 1), Maturity Date: 12/13/25 (Loan 2) Both Loans in Default.
c. Amount of current monthly payment: $ Both loans are all due and payable.
d. Number of PREPETITION payments that have come due and were not made: Loan 1: Payment missed on 11/8/25. Loan 2 matured on 12/13/25.
e. Number of POSTPETITION payments that have come due and were not made: Zero
f. Last payment received on the following date: 10/8/2025 on Loan 1. Failed To Pay At Maturity 12/13/25 on Loan 2.
g. Notice of default recorded on the following date: January 30, 2026
h. Notice of sale recorded on the following date: May 11, 2026
i. Foreclosure sale originally scheduled for the following date: June 3, 2026
j. Foreclosure sale currently scheduled for the following date: September 23, 2026
k. Foreclosure sale already held on the following date:
l. Trustee's deed on sale already recorded on the following date:

m. Future payments due by time of anticipated hearing date (*if applicable*):
An additional payment of $ ______________________ will come due on __________, and on the ______________ day of each month thereafter. If the payment is not received by the ______________ day of the month, a late charge of $ ______________________ will be charged to the loan.

9. Attached hereto as exhibit _____ is a true and correct copy of a POSTPETITION payment history that accurately reflects the dates and amounts of all payments made by the Debtor since the petition date. None.

10. The fair market value of the entire Property is $ ______________________________, established by:
a. ☒ Appraiser's declaration with appraisals attached as exhibits JJ and KK attached to the concurrently filed Declaration of Bob Guzman.

b. ☐ A real estate broker or other expert's declaration regarding value attached as exhibit _____.

c. ☐ A true and correct copy of relevant portion(s) of Debtor's schedules attached as exhibit _____.

d. ☐ Other (specify):

11. ☒ The fair market value of the Property is declining based on/due to:
Failure to maintain the Properties and increasing unpaid property taxes.

12. **Calculation of equity in the Property:**
a. Based upon ☒ a preliminary title report ☐ Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property and the concurrently filed Declaration of Lingchu Lin:

| | Name of Holder | Amount as Scheduled by Debtor (if any) | Amount Known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | Preferred Bank | | 9,103,283.76 |
| 2nd deed of trust: | Preferred Bank | | 462,247.65 |
| 3rd deed of trust: | | | 0.00 |
| Judgment liens: | | | 0.00 |
| Taxes: | | | 227,444.03 |
| Other: | | | 621,453.12 |
| **TOTAL DEBT: $** | See Master Chart attached as Exhibit "3" | | 10,414,428.56 |

b. Evidence establishing the existence of the above deed(s) of trust and lien(s) consists of:

20,460,872.16 Preliminary Title Reports attached as Exhibit "2."

☐ Relevant portions of Debtor's schedules as filed in this case
☒ Other (*specify*): Exhibits attached to concurrently filed Declaration of Lingchu Lin.

c. Subtracting the deed(s) of trust and other lien(s) set forth above from the value of the Property as set forth in Paragraph 9 above, the Debtor's equity in the Property is $ 0.00 (§ 362(d)(2)(A)).
d. The value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant is $ 0.00 (§ 362(d)(1)).
e. Estimated costs of sale: $ 257,500.00 (Estimate based upon 2 1/2% of estimated gross sales price)

13. ☐ (*Chapter 12 and 13 cases only*) Chapter 12 or 13 case status information:
a. 341(a) Meeting currently scheduled for (or concluded on) the following date: ___________
Confirmation hearing currently scheduled for (or concluded on) the following date: ___________
Plan confirmed on the following date (*if applicable*): ___________

b. Postpetition/preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

(*Number of*) ________ payment(s) due at $ __________________ each = $ ____________________
(*Number of*) ________ payment(s) due at $ __________________ each = $ ____________________
(*Number of*) ________ late charge(s) at $ __________________ each = $ ____________________
(*Number of*) ________ late charge(s) at $ __________________ each = $ ____________________

c. Postpetition/preconfirmation advances or other charges due but unpaid: $ ____________________
(See attachment for details of type and amount.)

**TOTAL POSTPETITION/PRECONFIRMATION DELINQUENCY:** $ 0.00

d. Postconfirmation payments due BUT REMAINING UNPAID since plan confirmation (*if applicable*):

(*Number of*) ________ payment(s) due at $ __________________ each = $ ____________________
(*Number of*) ________ payment(s) due at $ __________________ each = $ ____________________
(*Number of*) ________ late charge(s) at $ __________________ each = $ ____________________
(*Number of*) ________ late charge(s) at $ __________________ each = $ ____________________

e. Postconfirmation advances or other charges due but unpaid: $ ____________________
(*See attachment for details of type and amount.*)

**TOTAL POSTCONFIRMATION DELINQUENCY:** $ 0.00

f. ☐ The claim is provided for in the Chapter 12 or 13 Plan. Plan payment history is attached as exhibit _____.

g. ☐ See attached Declaration(s) of Chapter 12 or 13 Trustee regarding receipt of payments under the plan (*attach Court Form F 4001-1.DEC.FOR.TRUSTEE*).

14. ☐ Movant has not been provided with evidence that the Property is currently insured, as required under the terms of the loan.

15. ☒ The Property qualifies as single asset real estate according to the Movant as of projected hearing date and on this Motion according to the Debtor.

a. ☒ More than 90 days have passed since the filing of the petition and Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time, as of the date of the of the hearing on this Motion; or

b. ☒ Debtor has not commenced the monthly payments to Movant as required by 11 U.S.C. § 362(d)(3)(B), as of the date of the hearing on this Motion.

16. ☐ Other bankruptcy cases that have prevented Movant from recovering possession of this Property include the following:

a. Case name:
Case no.: Chapter:
Date filed: Date dismissed:
Relief from stay re this property ☐ was ☐ was not granted.

b. Case name:
Case no.: Chapter:
Date filed: Date dismissed:
Relief from stay re this property ☐ was ☐ was not granted.

c. ☐ See attached continuation page for more information about other cases.

17. ☐ Movant seeks annulment of the automatic stay so that the filing of the bankruptcy petition does not affect any and all of the enforcement actions set forth in paragraph 8 above that were taken after the filing of the bankruptcy petition in this case.

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

a. ☐ These actions were taken by Movant without knowledge of the bankruptcy filing, and Movant would have been entitled to relief from stay to proceed with these actions.

b. ☐ Although Movant knew about the bankruptcy filing, Movant had previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting this Property as set forth in paragraph 16 above.

c. ☐ For other facts justifying annulment, see attached continuation page.

18. **Grounds for relief from turnover requirements:**
a. ☒ Debtor has mismanaged the Property. The Custodian can more effectively manage the Property during the bankruptcy proceedings. See concurrently filed Declaration of Byron Z. Moldo.
b. ☒ Debtor is not an appropriate fiduciary to collect and disburse proceeds of the Property for the benefit of the estate. See concurrently filed Declaration of Byron Z. Moldo.
c. ☐ Other (*specify*):

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 25, 2026 | Lingchu Lin | [signature] |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

Dentons US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
213 623 9300

# TABLE OF CONTENTS

Page(s)

I. PRELIMINARY STATEMENT .......... 14

II. STATEMENT OF FACTS .......... 15

- A. The First Priority Loan and Security Interests .......... 15
- B. Default and Acceleration of the First Priority Loan .......... 20
- C. Amount Owed on the First Priority Loan .......... 20
- D. The Second Priority Loan and Security Interests .......... 21
- E. Default of the Second Priority Loan .......... 23
- F. Amount Owed on Second Priority Loan .......... 23
- G. Nonjudicial Foreclosure on Deeds of Trust .......... 24
- H. Receivership Over All Three Properties .......... 24
- I. Property Taxes .......... 25
- J. HOA Fees on All Three Properties .......... 25
- K. The Bankruptcy Filing .......... 25
- L. Operating Deficit on All Three Properties .......... 25

III. LEGAL STANDARD .......... 26

IV. ARGUMENTS AS TO RELIEF FROM STAY .......... 26

- A. Relief From The Automatic Stay Should Be Given For "Cause" Under Section 362(d)(i) Because of the Active Collateral Deterioration of the Collateral that Secures Preferred Bank's Loans. .......... 26
- B. Relief Is Warranted Under 11 U.S.C. § 362(d)(1) — Lack of Adequate Protection .......... 28
- C. Relief Is Warranted Under 11 U.S.C. § 362(d)(2) — No Equity and Property Not Necessary for Effective Reorganization .......... 29
- D. Relief Is Warranted Under 11 U.S.C. § 362(d)(3) — Single Asset Real Estate .......... 30

V. Relief from Turnover Under 11 U.S.C. § 543(d) .......... 31

VI. RELIEF FROM STAY TO APPLY THE PAYMENT RESERVE ACCOUNT .......... 32

A. The Security Agreement and Perfection .......... 32

B. Cause Exists Under Section 362(d)(1) .......... 33

C. No Equity and Not Necessary for Reorganization Under Section 362(d)(2) .......... 33

D. Independent Setoff Rights Under Section 553 .......... 34

E. California Commercial Code Section 9-604 .......... 34

VII. CONCLUSION .......... 34

Dentons US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
213 623 9300

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Citizens Bank of Maryland v. Strumpf*,
516 U.S. 16 (1995)....................33, 35

*In re Delaney-Morin*,
304 B.R. 365 (9th Cir. BAP 2003)....................32

*In re Kronemyer*,
405 B.R. 915 (B.A.P. 9th Cir. 2009)....................29

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Associates, Ltd.*,
484 U.S. 365 (1988)....................29, 31

*In re Windmill Farms, Inc.*,
841 F.2d 1467 (9th Cir. 1988)....................32

**Statutes**

11 United States Code
§ 362(d)(1)....................27, 29, 34, 35
§ 362(d)(2)....................27, 30, 34, 35
§ 362(d)(3)....................27, 31, 35
§ 543....................16
§ 543(D)....................32, 36

Bankruptcy Code
§362(d)....................27
§553....................35

California Commercial Code
§9-104(a)(1)....................34
§9-327(1)....................34
§9-604....................35
§9104(a)(1)....................21

Uniform Commerical Code....................34
Article 9....................33

Dentons US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
213 623 9300

Dentons US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
213 623 9300

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND RELIEF FROM TURNOVER UNDER 11 U.S.C. § 543**

**I.**

**PRELIMINARY STATEMENT**

Preferred Bank ("Lender" or "Preferred Bank") holds, as of June 19, 2026, (which amounts continue to accrue), (a) a first-priority secured claim of approximately $9,103,283.76 and (b) a second-priority secured claim of approximately $462,247.65 secured by deeds of trust on the real properties located at 210 South Orange Grove Boulevard, Pasadena, California, and at 244 and 248[1] South Orange Grove Boulevard, Pasadena, California (collectively, the "**Properties**").

As explained in the concurrently filed *Declaration of Lingchu Lin In Support Of Preferred Bank's Motion For Relief From Stay* ("**Lin Declaration**") [¶ 4, 11:1-9; ¶ V, 15:1-15], and the *Declaration Of Byron Z. Moldo In Support Of Preferred Bank's Motion For Relief From Stay* (the "**Moldo Declaration**") [¶ 4], the most recent financial data presents a devastating picture.

Preferred Bank has been forced to advance $227,444.03 to fund receivership operations to prevent further deterioration. The Properties require over $425,286.00 in deferred repairs and maintenance, including roof replacements at end of service life [Moldo Declaration, ¶ 15, Lin Declaration, [¶ V, 15:1-15].

Unpaid property taxes total $595,427.99. HOA fees total $26,025.13 [Moldo Declaration, ¶ 16].

In addition, as demonstrated by the Receiver Report filed on July 22, 2026, and the concurrently filed Moldo Declaration [¶ 15], the Properties continue to

---

[1] In various recorded documents, the properties at 244 and 248 South Orange Grove Boulevard, Pasadena, California, are often referred to as just 244 South Orange Grove Boulevard, Pasadena, California.

Dentons US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
213 623 9300

hemorrhage value at an alarming and accelerating pace, with – as set forth above -- the Lender advancing funds to the Superior Court appointed Receiver, Byron Moldo, in an attempt to maintain the Properties that the Debtors allowed to deteriorate, with over $400,000 yet to be expended [Moldo Declaration, ¶ 15].

The 244 and 248 South Orange Grove Boulevard, Pasadena, California property (the "**244/248 Property**") and the 210 South Orange Grove Boulevard, Pasadena, California, property (the "**210 Property**") have a negative operating income when comparing income of $104,906.92 to expenses of $227,444.03[Moldo Declaration, ¶¶ 21-22].

The 210 Property has generated ZERO income because the sole commercial tenant, Clear Mind Full Heart, has never paid any rent because *the Debtor failed to perform the landlord improvements as required by the Lease* [Moldo Declaration, ¶ 6.a].

The total encumbrances are approximately $10,414,428.56 [Lin Declaration, 15:19-27].

As set forth in the concurrently filed *Declaration of Bob Gutzman In Support Of Preferred Bank's Motion for Relief From Stay* (the "**Gutzman Declaration**") [¶ 4], the total value of the two Properties is $10,330,000.

There is no equity.

Under these circumstances, relief from the automatic stay and relief from turnover under 11 U.S.C. § 543 is both necessary and appropriate.

## II.

## STATEMENT OF FACTS

### A. The First Priority Loan and Security Interests

As set forth in the Lin Declaration [3:17 – 6:6], on June 8, 2017, Preferred Bank originated a commercial real estate loan in the original principal amount of $8,400,000 (the "**First Priority Loan**"), secured by deeds of trust on the Properties as evidenced by the following documents (the "**Loan Documents**"):

1. *Promissory Note* dated June 8, 2017, a copy of which is attached to the concurrently filed Lin Declaration as Exhibit "A", in the original principal amount of Eight Million Four Hundred Thousand and No/100 Dollars ($8,400,000.00) (the "**Promissory Note**"), executed by Cantor Group LLC, a California limited liability company ("**Cantor**"), in favor of Preferred Bank, as amended and restated in its entirety by that certain *Amended and Restated Promissory Note* dated March 25, 2019, a copy of which is attached to the concurrently filed Lin Declaration as Exhibit "K", executed by SDRES Properties, LLC ("**SDRES**" or "**Debtor**"), as successor-in-interest to Cantor, in favor of Lender, together with any and all amendments thereto or modifications thereof.

2. *Loan Agreement* dated June 8, 2017, a copy of which is attached to the concurrently filed Lin Declaration as Exhibit "B" (together with any and all amendments and extensions thereto or modifications thereof, the "**Loan Agreement**"), executed by and between Cantor and Lender.

3. *Deed of Trust*, *Assignment of Rents*, *Security Agreement* and *Fixture Filing* dated June 8, 2017, a copy of which is attached to the concurrently filed Lin Declaration as Exhibit "C", (together with any and all amendments thereto or modifications thereof, the "**210 Deed of Trust**"), executed by Cantor in favor of Lender, as beneficiary, which was recorded on June 16, 2017, as Instrument No. 20170671620 in the Official Records of Los Angeles County, California, encumbering the 210 Property.

4. *Absolute Assignment of Leases, Lease Guaranties, Rents, Issues and Profits* dated June 8, 2017, a copy of which is attached to the concurrently filed Lin Declaration as Exhibit "D" (the "**210 Assignment of Leases**"), executed by Cantor in favor of Lender,

Dentons US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
213 623 9300

recorded on June 16, 2017, as Instrument No. 20170671621, in the Official Records of Los Angeles County, California.

5. *Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing* dated June 8, 2017, a copy of which is attached to the concurrently filed Lin Declaration as Exhibit "E", (together with any and all amendments thereto or modifications thereof, the "**244/248 Deed of Trust**," and together with the 210 Deed of Trust, collectively the "**Deeds of Trust**"), executed by Cantor in favor of Lender, as beneficiary, which was recorded on June 16, 2017, as Instrument No. 20170671625 in the Official Records of Los Angeles County, California, encumbering the 244/248 Property (as previously defined, together with the 210 Property, collectively the "**Properties**").

6. *Absolute Assignment of Leases, Lease Guaranties, Rents, Issues and Profits* dated June 8, 2017, a copy of which is attached to the concurrently filed Lin Declaration as Exhibit "F" (the "**244/248 Assignment of Leases**"), executed by Cantor in favor of Lender, recorded on June 16, 2017, as Instrument No. 20170671626, in the Official Records of Los Angeles County, California.

7. A UCC-1 Financing Statement, securing obligations due from Borrower to Preferred Bank, filed with the California Secretary of State on June 27, 2017 as File No. 20170712457, as amended and filed with the California Secretary of State on November 29, 2017 as File No. 1776187697, and recorded in the Official Records of Los Angeles County on December 4, 2017 as Instrument No. 20171391801, copies of which are attached collectively to the concurrently filed Lin Declaration as Exhibit "H".

8. The *Assumption Agreement* dated as of June 16, 2017, executed by the Cantor, Guarantor, SDRES and Lender a copy of which is attached to

Dentons US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
213 623 9300

Dentons US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
213 623 9300

the concurrently filed Lin Declaration as Exhibit "I", (together with any and all amendments thereto and modifications thereof, the "**Assumption Agreement**"), whereby, among other things, Lender consented to a transfer of one hundred percent (100%) of Cantor's right, title and interest in and to the Properties to SDRES, and SDRES's assumption of any and all of Cantor's indebtedness and obligations to Lender under and in connection with the First Priority Loan and Loan Documents.

9. On June 16, 2017, a *Memorandum of Assumption Agreement* was recorded as Instrument No. 20170671623 (210 Property), a copy of which is attached to the attached to the concurrently filed Lin Declaration as Exhibit "J", and Instrument No. 20170671628 (244/248 Property) recorded in the Official Records of Los Angeles County, California, a copy of which also is attached to the concurrently filed Lin Declaration as Exhibit "J", confirming as of record the Assumption Agreement.

Pursuant to the 210 Deed of Trust, the 244/248 Deed of Trust, the 210 Assignment of Leases, the 244/248 Assignment of Leases, the UCC-1 Financing Statements, and the Assumption Agreement (as set forth above, with all modifications and extensions), SDRES granted to and in favor of Lender a first priority security interest in and lien upon the Properties described in the Deeds of Trust to secure, without limitation, payment and performance of the indebtedness and obligations under and in connection with the Promissory Note and Loan Agreement. Lender's security interest in the Properties was and is perfected under applicable law.

As further explained in the Lin Declaration [6:5 – 9:21], additional documents include:

10. *Third Extension Agreement* (the "**Third Extension**") dated March 14, 2023, a copy of which is attached to the concurrently filed Lin Declaration as Exhibit "Q", extending the maturity date to July 8, 2023.

11. *Fifth Extension Agreement and Amendment to Loan Documents* (the "**Fifth Extension**") dated December 13, 2023, executed by and between SDRES and Lender, whereby, among other things, the maturity date was extended to September 8, 2026, and the interest rate and repayment terms were modified, a copy of which is attached to the concurrently filed Lin Declaration as Exhibit "S".

12. *Memorandum of Fifth Extension Agreement and Amendment to Loan Documents*, one memorandum recorded for the 210 Property on January 10, 2024, as Instrument No. 2024002044, and a second memorandum for the 244/248 Property recorded on January 10, 2024, as Instrument No. 20240020417, both of which were recorded in the Official Records of Los Angeles County, California, copies of which are attached collectively to the concurrently filed Lin Declaration as Exhibit "T," that confirm of record the Fifth Extension.

13. *Security Agreement (Assignment of Deposit Account)* dated March 14, 2023, a copy of which is attached to the concurrently filed Lin Declaration as Exhibit "W", executed by and between SDRES and Lender, whereby pursuant to which SDRES assigned, pledged, and transferred to Lender all of SDRES's right, title, and interest in and to that certain deposit account maintained at Preferred Bank in the name of SDRES, Account No. 1022431 (the "Payment Reserve Account" as defined in the Third Extension) (the "**Deposit Account**"), together with all monies or proceeds due or to become due under said Deposit Account, as collateral security for all indebtedness, liabilities, and

Dentons US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
213 623 9300

obligations owing to Lender by SDRES under the Loan Agreement and the Note.

As explained in the Lin Declaration [8:15 – 9:21], Preferred Bank's security interest in the Deposit Account is perfected by control pursuant to California Commercial Code Section 9104(a)(1), because Preferred Bank is the bank in which the Deposit Account is maintained. As the depository institution and the secured party, Preferred Bank has automatic control over the Deposit Account, establishing a first-priority perfected security interest by operation of law.

**B. Default and Acceleration of the First Priority Loan**

As explained in the Lin Declaration [10:10-26], SDRES defaulted on its payment obligations on the First Priority Loan on November 8, 2025.

Preferred Bank accordingly issued an acceleration letter on December 10, 2025, a copy of which is attached to the Lin Declaration as Exhibit "X", demanding payment on or before December 20, 2025.

In addition to the payment default, SDRES committed multiple additional defaults under the Loan Documents, including: **failure to maintain the Properties in good condition**; failure to provide required financial statements; and failure to meet the required debt service coverage ratio ("DSCR"). The defaults have not been cured.

**C. Amount Owed on the First Priority Loan**

As explained in the Lin Declaration as of June 19, 2026 [14:15-22], the total amount owed under the First Priority Loan is $9,103,283.76, consisting of the following:

Dentons US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
213 623 9300

| | |
|---|---|
| Principal: | $7,914,950.21 |
| Accrued Interest: | $448,213.27 |
| Default Interest: | $330,669.03 |
| Late Charges: | $71,848.42 |
| Legal Fees: | $284,833.09 |
| Foreclosure Fees: | $42,544.74 |
| Appraisal Fees: | 10,225.00 |
| **Total:** | **$9,103,283.76** |

Interest, late charges and other fees and costs continue to accrue daily. In addition, Preferred Bank has been forced to advance $227,444.03 to fund receivership operations (for all three Properties), further increasing the secured obligations.

**D. The Second Priority Loan and Security Interests**

As explained in the Lin Declaration [11:10 – 13:15], on December 13, 2023, Preferred Bank originated a loan in the principal amount of $400,000 (the "**Second Priority Loan**"), secured by a deed of trust and an assignment of leases, rents, issues and profits on the Properties as evidenced by the following documents:

1. *Promissory Note* dated December 13, 2023 a copy of which is attached to the concurrently filed Lin Declaration as Exhibit "Y", (together with any and all amendments thereto or modifications thereof, the "**Second Promissory Note**"), executed by Andrew Stupin, in favor of Preferred Bank, in the original principal amount of Four Hundred Thousand and No/100 Dollars ($400,000.00).
2. *Loan Agreement* dated December 13, 2023, executed by Andrew Stupin, a copy of which is attached to the concurrently filed Lin Declaration as Exhibit "Z", related to the Second Note (together with any and all amendments and extensions thereto or modifications thereof, the "**Second Loan Agreement**"), executed by and between Andrew Stupin and Preferred Bank.
3. *Secured Continuing* Guaranty dated December 13, 2023, a copy of which is attached to the concurrently filed Lin Declaration as Exhibit

Dentons US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
213 623 9300

"CC", (together with any and all amendments thereto or modifications thereof, the "**Guaranty**"), on payment and performance of SDRES's obligations under the Second Note and Second Loan Agreement.

4. *Deed of Trust,* Assignment *of Rents, Security Agreement* and *Fixture Filing* dated December 13, 2023, executed by SDRES, as trustor, in favor of Lender, a copy of which is attached to the concurrently filed Lin Declaration as Exhibit "AA", (together with any and all amendments thereto or modifications thereof, the "**Second Deed of Trust**"), which was recorded on January 5, 2024, as Instrument No. 20240011708 in the Official Records of Los Angeles County, California, encumbering the Properties, as more particularly described in Exhibit "A" attached to the Second Deed of Trust.

5. *Absolute Assignment of Leases, Lease Guaranties, Rents, Issues and Profits* dated December 13, 2023, executed by SDRES in favor of Lender, a copy of which is attached to the concurrently filed Lin Declaration as Exhibit "BB", (together with any and all amendments thereto or modifications thereof, the "**Second Assignment of Leases**"), which was recorded on January 5, 2024, in the Official Records of Los Angeles County, California.

6. The *Extension Agreement*, effective as of June 13, 2025, attached to the concurrently filed Lin Declaration as Exhibit "DD," executed by SDRES, as guarantor, confirms that the "Loan was and is guaranteed by Guarantor [SDRES] pursuant to that Secured Continuing Guaranty dated December 13, 2023, executed by Guarantor in favor of Lender . . .," and that the "Guaranty is secured by . . . that certain (1) Deed of Trust . . . dated December 13, 2023 . . . executed by Guarantor . . . in favor of Lender." The Extension Agreement reaffirmed the "obligations, indebtedness and liability of . . .

Dentons US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
213 623 9300

Dentons US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
213 623 9300

Guarantor . . . to Lender . . . ." the maturity date was extended to August 13, 2025.

7. The *Loan Modification Agreement*, effective as of August 13, 2025, attached to the concurrently filed Lin Declaration, as Exhibit "EE," executed by SDRES as Guarantor, that reiterated that the "performance of Borrower's indebtedness and obligations in connection with the Loan was and is guaranteed by Guarantor . . . ," and that the Guaranty is secured by . . . Deed of Trust . . . executed by Guarantor . . ." the maturity date was extended to December 13, 2025.

**E. Default of the Second Priority Loan**

The payments first defaulted with the payment due on November 8, 2025. The Second Priority Loan matured on December 13, 2025. SDRES and Stupin have failed to repay the Second Priority Loan.

On January 6, 2026, the law firm of Dentons US LLP, sent by Federal Express, a letter on behalf of Preferred Bank addressed to SDRES and Stupin, identified as "NOTICE OF DEFAULT AND MATURITY", a copy of which is attached as Exhibit "FF" to the concurrently filed Lin Declaration. As of the date of this Motion, the Second Priority Loan remains in default.

**F. Amount Owed on Second Priority Loan**

As explained in the Lin Declaration [14:23-27], as of June 19, 2026, the total amount owed under the Loan is $452,022.65, consisting of the following:

| | |
|---|---|
| Principal: | $339,891.40 |
| Accrued Interest: | $15,927.69 |
| Default Interest: | $17,749.88 |
| Late Charges: | $0.00 |
| Legal Fees: | $78,453.68 |
| Foreclosure Fees and Title Fees: | $0.00 |
| **Total:** | **$452,022.65** |

Interest, late charges, and other fees and costs continue to accrue daily.

### G. Nonjudicial Foreclosure on Deeds of Trust

As explained in the Lin Declaration [16:1-18], on January 30, 2026, Preferred Bank caused *Notices of Default* to be recorded against the Properties, copies of which are attached as Exhibit "GG" to the Lin Declaration.[2] The trustee's sale was scheduled for June 3, 2026, as set forth in the *Notices of Sale,* copies of which are attached as Exhibit "HH" to the Lin Declaration.

### H. Receivership Over All Three Properties

On March 10, 2026, Byron Z. Moldo was appointed as receiver over the Properties by the Superior Court of California, County of Los Angeles, Case No. 26NNCV01136. The Receiver engaged Jalmar Properties as the property manager. The concurrently filed Moldo Declaration [¶¶ 4-15], reveals catastrophic financial performance that has only worsened since the receivership began, including but not limited to:

1. 210 Property: ZERO income generated. The sole commercial tenant, Clear Mind Full Heart, owes $70,542.79 in unpaid rent and has paid nothing because the Debtor did not comply with its obligations to Lessee under the Lease on Landlord improvements.
2. Preferred Bank Advances: Preferred Bank has been forced to advance $227,444.03 to the Receiver to keep the Properties operating.
3. Code Violations: Ongoing City of Pasadena code violations requiring immediate expenditures.

[2] Substitutions of Trustees were also recorded on the same date.





Dentons US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
213 623 9300

Dentons US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
213 623 9300

4. Deferred Maintenance: Roofs at end of service life requiring $217,360 in replacement costs, among a host of other required work.
5. Total deferred maintenance for all three buildings exceeding $425,286.00.

**I. Property Taxes**

The Properties carry delinquent property taxes of approximately $595,427.99, with delinquencies extending back to 2023. These unpaid taxes constitute senior liens that prime Preferred Bank's security interest, further eroding the equity cushion with each passing day.

**J. HOA Fees on All Three Properties**

As set forth in the Moldo Declaration [¶ 16], and referred to in the Lin Declaration [15:16-18], unpaid HOA fees total $29,740.00.

**K. The Bankruptcy Filing**

The Debtor filed its Chapter 11 petition on June 3, 2026, the same day as the scheduled trustee's sale. The Debtor self-designated this case as a Single Asset Real Estate ("SARE") case on its petition, asserting that the Properties constitute a single project or property generating substantially all of the Debtor's gross income.

Lender seriously questions that designation because there is more than one piece of real property.

**L. Operating Deficit on All Three Properties**

As set forth in the Moldo Declaration [¶¶ 21, 22], the Pasadena Properties are operating at a deficit when comparing income to expenses. Since the receivership commenced, income is $104,906.92, but paid expenses have been $227,444.03. Due but unpaid amounts total $39,288.96. The Properties cannot sustain themselves and require ongoing cash infusions from Preferred Bank merely to avoid further deterioration.

Dentons US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
213 623 9300

## III.

## LEGAL STANDARD

Section 362(d) of the Bankruptcy Code provides that the court shall grant relief from the automatic stay "for cause, including the lack of adequate protection" under § 362(d)(1); where the debtor lacks equity and the property is not necessary for an effective reorganization under § 362(d)(2); and in single asset real estate cases under § 362(d)(3). The movant bears the initial burden on the issue of cause under § 362(d)(1); the debtor bears the burden on equity and necessity for reorganization under § 362(d)(2).

## IV.

## ARGUMENTS AS TO RELIEF FROM STAY

### A. Relief From The Automatic Stay Should Be Given For "Cause" Under Section 362(d)(i) Because of the Active Collateral Deterioration of the Collateral that Secures Preferred Bank's Loans.

Relief from stay should be granted for "cause" because of the demonstrable decline in the collateral due the Debtor's former lack of repairs and maintenance.

As set forth in the Appraisal for the 244/248 Property [Gutzman Declaration, Exhibit KK, 54th page.], the multifamily 244/248 Property is operating at negative NOI annualized at $109,776, meaning operating losses are accumulating and the multifamily property cannot service any debt. As set forth in the Moldo Declaration at [¶¶ 21-22], income has been $104,906.92 against expenses paid of $227,444.03 in receivership related fees and expenses.

The multifamily property is twenty-five (25%) percent vacant with no active re-leasing efforts because of disclosures that would be required.

Deferred maintenance for both the 210/Property and the 244/248 Property totals not less than $425,286, as set forth in the Moldo Declaration [¶ 15], which is going unaddressed, because there are no funds to address it.

Dentons US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
213 623 9300

As to the 210 Property, the office tenant confirmed to the Appraiser that the landlord/Debtor failed to perform required repairs, forcing the tenant to self-help, as set forth in the Appraisal [Gutzman Appraisal, Exhibit JJ, 26th page], for the 210 Property:

> "The tenant representative: Doug Friedman, indicates that since the landlord did not do any of the work required of the landlord (i.e. Lessor), he did it himself over the past couple of years. His last/latest work was completed in about May 2026 where he had the irrigation lines repaired and removed a tree in the front yard. He also had the pergola (near the water feature) rebuilt in early 2026 due to extensive termite damage. He also did the roof patching in February 2026 since there were substantial leaks during the past rainy season (i.e., winter of 2025-26). He indicated that these rain leaks caused significant damage, including, but not limited to, the kitchen ceiling essentially collapsed. He had the entire kitchen ceiling repaired. This is reportedly only a partial list of work the tenant did because the lessor did not do its work".

The ongoing neglect risks tenant termination or damage claims.

Property taxes for the Properties have been delinquent for three consecutive fiscal years (2023, 2024, 2025) with redemption amounts of $300,227 for the 210 Property and $295,201 for the 244/248 Property, respectively, as set forth in the Preliminary Title Reports [Exhibits "1," p. 2 to this Memorandum], with additional penalties continuing to accrue and increase that are senior to Preferred Bank's liens. Pre-receivership HOA fees are delinquent totaling $26,025.13.

To be blunt, as confirmed throughout the Moldo Declaration, SDRES has utterly failed to maintain the Properties, failed to make repairs, failed to keep

Dentons US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
213 623 9300

current property taxes, and failed to pay the homeowner's association fees, all of which arguably constitutes *waste* of the secured creditor's collateral.

This pattern demonstrates that the Debtor has failed in the past and cannot today adequately protect Preferred Bank's interest in the collateral, a textbook Section 362(d)(i) argument.

**B. Relief Is Warranted Under 11 U.S.C. § 362(d)(1) — Lack of Adequate Protection**

The Supreme Court held in *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 378 (1988), that a secured creditor is entitled to adequate protection of its interest in the collateral during the pendency of the stay. Adequate protection must compensate the secured creditor for the decline in value of its collateral. See also *In re Kronemyer*, 405 B.R. 915, 921 (B.A.P. 9th Cir. 2009) (adequate protection must prevent diminution in value of creditor's secured claim).

Here, the Moldo Declaration establishes beyond any doubt that Preferred Bank's interest is not adequately protected. The Properties are not merely deteriorating, they are actively losing value each month:

- Three years of unpaid property taxes, creating a tax lien senior to preferred banks' deeds of trust.
- Failure to maintain the Properties, (i.e. roof replacement needed, exterior deteriorating, water damage unrepaired, sewage spills, among a multitude of other issues).
- The failure to pay the HOA assessments, potentially exposing the property to HOA lien foreclosure.
- The office tenant was forced to do the landlord's repair work and will offset its reimbursement claims that will further encumber any income stream from the commercial tenant.

The deplorable condition of the Properties -- best exemplified by a total of more than $600,000 consisting of receivership expenses ($227,444.03) and required maintenance and repairs ($392,926.00) -- mandates relief from stay, so a foreclosure can proceed, and the Properties can be purchased by an owner who is able and willing to repair and maintain the Properties and keep obligations current.

**C. Relief Is Warranted Under 11 U.S.C. § 362(d)(2) — No Equity and Property Not Necessary for Effective Reorganization**

Under § 362(d)(2), the Court shall grant relief where the debtor lacks equity in the property and the property is not necessary for an effective reorganization. As set forth in Exhibit "3" attached to the Motion For Relief From Stay and this Memorandum of Points and Authorities, and as attached as Exhibit "II" to the Lin Declaration, the total claims against the Properties as of August 6, 2026 far exceed their value:

| | |
|---|---|
| Principal | $8,254,842.11 |
| Accrued Interest | $464,140.96 |
| Default Interest | $348,418.91 |
| Late Charges | $71,848.42 |
| Legal Fees | $363,286.77 |
| Foreclosure Fees and Title Fees | 42,544.74 |
| Appraisal Fees | $20,450.00 |
| Taxes | $595,427.99 |
| HOA Fees | $26,025.13 |
| Paid Receivership Related Fees and Expenses | $227,443.03 |
| **Total** | **$10,414,428.06** |

The aggregate claims against the Properties—including the secured debt, interest, late charges, fees and costs, delinquent property taxes, necessary maintenance costs, and receivership advances—exceed the appraised value of the Properties as set forth in the Gutzman Declaration, ¶ 4.

With a 25% vacancy rate at the 244/248 Property, zero commercial income from the 210 Property, and worsening monthly expenses, the Properties are not

Dentons US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
213 623 9300

Dentons US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
213 623 9300

necessary for an effective reorganization because there is no reorganization to be had. See *Timbers*, 484 U.S. at 375-76 (property must be needed for a reorganization that is "in prospect"—"a mere possibility" is insufficient).

The obligations due Preferred Bank, on its loans, without including the receivership related expenses, total $9,565,531.91. The receivership fees, which Preferred Bank has advanced, to try and maintain -- to some extent -- the Properties, total $227,443.03.

Senior priority liens, including $595,428 in delinquent taxes alone, plus $26,025.13 in delinquent homeowners association fees, are eating into the value of the Properties.

Any evaluation of a stabilized value for the Properties requires curing $425,286 in deferred maintenance that the Debtor is plainly unable or willing to fund.

As confirmed in the Gutzman Declaration [¶ 4], the appraised value of the Properties is $5,070,000 and $5,350,000, a total of $5,420,000 leaving no equity in the Properties for the benefit of the estate.

There is no equity, and the negative equity that currently exists, is getting *worse*.

**D. Relief Is Warranted Under 11 U.S.C. § 362(d)(3) — Single Asset Real Estate**

Lender seriously questions whether this case qualifies for SARES treatment.

However, if it does: Under 11 U.S.C. § 362(d)(3), in a single asset real estate case, the court shall grant relief from the stay unless, within the later of 90 days after the order for relief or 30 days after the court determines that the debtor is a SARE debtor, the debtor files a plan that has a reasonable possibility of being confirmed within a reasonable time, or commences making monthly payments to the secured creditor in an amount equal to interest at the then-applicable non-default contract rate on the value of the creditor's interest in the property.

The petition was filed June 3, 2026. The 90-day deadline expires September 1, 2026, which is before the date scheduled for the hearing on this Motion For Relief From Stay.

Given the confirmed operating deficit—now established by months of Receiver data showing consistent and worsening losses—the Debtor cannot make interest payments. Monthly interest on approximately $8,254,841.61 at the two regular interest rates on the two loans, is approximately $46,504.20 per month, *which far exceeds the Properties' negative cash flow*.

There is no source from which to fund interest payments, and the Debtor has proposed no plan. See *In re Delaney-Morin*, 304 B.R. 365, 370-71 (9th Cir. BAP 2003) (granting stay relief in SARE case where debtor could not demonstrate ability to service debt from property income). See *In re Delaney-Morin*, 304 B.R. 365, 370-71 (9th Cir. BAP 2003) (granting stay relief in SARE case where debtor could not demonstrate ability to service debt from property income).

Dentons US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
213 623 9300

## V.

## RELIEF FROM TURNOVER UNDER 11 U.S.C. § 543(D)

Section 543(a) generally requires a custodian to turn over estate property to the debtor in possession. However, under § 543(d), the court may excuse turnover where "the interests of creditors . . . would be better served by permitting a custodian to continue in possession." *In re Windmill Farms, Inc.*, 841 F.2d 1467, 1472 (9th Cir. 1988) (affirming denial of turnover where receiver's continued management served creditor interests).

Here, the Receiver's professional management is the only thing preventing further deterioration of the Properties. SDRES's prior mismanagement—including failure to maintain the Properties, failure to pay property taxes extending back to 2023, and failure to address code violations—caused the current crisis. The Receiver, Byron Z. Moldo, has 43 years of experience in receivership management and has retained Jalmar Properties for day-to-day property management.

Here, all factors favor excusing turnover and permitting the receiver to continue in possession:

1. The receiver has demonstrated professional management of the Properties through Jalmar Properties, is addressing deferred maintenance, and is taking steps to stabilize the Properties' condition.
2. SDRES caused the deterioration that necessitated the receivership. The Properties suffered from a parade of horribles, including rat infestation, failed HVAC systems, and roofs at the end of service life, all the result of the SDRES's failure to maintain the Properties.

Accordingly, the Court should exercise its discretion under § 543(d)(1) to excuse compliance with § 543(a) and permit Receiver Moldo to continue in possession of the Properties. See also *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 19–20 (1995) (discussing the interplay between bankruptcy estate provisions and creditor rights).

## VI.

## RELIEF FROM STAY TO APPLY THE PAYMENT RESERVE ACCOUNT

In addition to relief as to the real property, Preferred Bank seeks relief from the automatic stay to exercise its contractual and UCC Article 9 remedies against the Payment Reserve Account (Account No. 1022431) containing $220,000, and to apply those funds to the outstanding loan obligation.

### A. The Security Agreement and Perfection

As explained in the Lin Declaration [8:15 – 9:21; Exhibit "W"], pursuant to the *Security Agreement (Assignment of Deposit Account)* dated March 14, 2023, SDRES assigned, pledged, and transferred to Preferred Bank all right, title, and interest in Account No. 1022431 as collateral security for all indebtedness owed under the Loan. The Security Agreement expressly provides that the account is a "blocked account, accessible only to Lender" and that the Borrower "shall not have the right to withdraw funds from the Deposit Account during the term of the Loan

Dentons US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
213 623 9300

Dentons US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
213 623 9300

without the express, prior written consent of Lender." The amount in the account is $220,000.00.

Preferred Bank's security interest in the Payment Reserve Account is perfected by control under California Commercial Code section 9-104(a)(1), because Preferred Bank is both the depository institution at which the account is maintained and the secured party. No UCC filing is required for perfection by control. As the controlling secured party, Preferred Bank holds first-priority status by operation of law under California Commercial Code section 9-327(1).

**B. Cause Exists Under Section 362(d)(1)**

SDRES has no equity in the fully encumbered Payment Reserve Account. Preferred Bank's right to apply the account balance upon an Event of Default is contractually unambiguous. The Fifth Extension Agreement (December 13, 2023) attached as Exhibit "__" to the Lin Declaration, reaffirms that "[u]pon the occurrence of any Event of Default, Lender may withdraw funds from the Payment Reserve Account to pay any amounts of principal and interest due and unpaid under the Note, in Lender's sole and absolute opinion and judgment, without further authorization on the part of Borrower."

**C. No Equity and Not Necessary for Reorganization Under Section 362(d)(2)**

The Payment Reserve Account generates no value for the estate because SDRES has no access to it and because SDRES has zero equity in the account.

The entire $220,000 balance is pledged to Preferred Bank under a first-priority, perfected security interest. SDRES has no withdrawal rights. The Loan Documents themselves require repayment "from sources other than the Payment Reserve Account," confirming that the account was never intended for debtor operations. The Extension Agreements prohibit borrower access entirely.

**D. Independent Setoff Rights Under Section 553**

Section 553 of the Bankruptcy Code preserves a creditor's right of setoff where, as here, there exists a mutual pre-petition debt. Preferred Bank holds a pre-petition claim against SDRES (the Loan), and Preferred Bank holds a pre-petition debt owed by SDRES (the deposit account). *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16 (1995). Section 542(b) expressly provides that a bank's turnover obligation is subject to the "except to the extent that such debt may be offset under section 553" exception. Preferred Bank's setoff rights provide an independent basis for application of the $220,000.

**E. California Commercial Code Section 9-604**

California Commercial Code section 9-604 expressly authorizes a secured party to realize on personal property collateral (such as a deposit account) without first foreclosing on real property collateral. This eliminates any concern under the one action rule (CCP section 726), which is inapplicable here because Preferred Bank seeks court authorization under federal bankruptcy law rather than exercising unilateral self-help. The Loan Documents further include express waivers of marshalling and all setoff defenses.

For all of these reasons, Preferred Bank is entitled to relief from the automatic stay to apply the $220,000 Payment Reserve Account to the outstanding loan obligation.

**VII.**

**CONCLUSION**

For all of the foregoing reasons, Preferred Bank respectfully requests that this Court grant relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1), (d)(2), and (d)(3), permitting Preferred Bank to exercise all rights and remedies available under applicable law, including completion of the nonjudicial foreclosure; excuse

Dentons US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
213 623 9300

turnover under 11 U.S.C. § 543(d); and, permit Preferred Bank to apply the $220,000 Payment Reserve Account to the obligation due the Lender.

Dated: August 25, 2026

DENTONS US LLP
JOHN A. MOE, II
ANDREA C. CHANG

By: ______________________
John A. Moe, II
Attorneys for Secured Creditor
Preferred Bank

Dentons US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
213 623 9300

# Exhibit 1

210 South Orange Grove Boulevard
Pasadena, California

**LEGAL DESCRIPTION**

Real property in the City of Pasadena, County of Los Angeles, State of California, described as follows:

Parcel 1:

Lot 10 of TRACT NO. 063103, in the City of Pasadena, as per map recorded in Book 1369 Pages 35 through 52 of Maps in the Office of the County Recorder of said County, amended pursuant to that certain Certificate of Correction recorded December 3, 2013 as Instrument No. 20131708591 of Official Records.

Parcel 2:

A reciprocal access easement over those areas set out on the map shown above.

Parcel 3:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Consolidated Amended and Restated Driveway Easement Agreement (South Orange Grove Parcels) recorded December 5, 2013 as Instrument No. 20131716500 of Official Records, more particularly described as set out therein.

Parcel 4:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Rose Parade Grandstand Easement Agreement (Orange Grove Avenue) recorded July 21, 2005 as Instrument Nos. 05-1721787 and 05-1721788 both of Official Records, more particularly described as set out therein.

Parcel 5:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Parking Garage Easement Agreement recorded July 2, 2007 as Instrument No. 20071579026 of Official Records, more particularly described as set out therein.

Parcel 6:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Parking Easement Agreement recorded December 28, 2011 as Instrument No. 20111763712 of Official Records, more particularly described as set out therein.

APN: 5713-013-057

244 (and 248) South Orange Grove Boulevard
Pasadena, California

## LEGAL DESCRIPTION

Real property in the City of Pasadena, County of Los Angeles, State of California, described as follows:

Parcel 1:

Lot 12 of TRACT NO. 63103, in the City of Pasadena, as per map recorded in Book 1369 pages 35 through 52 of Maps in the Office of the County Recorder of said County, amended pursuant to that certain Certificate of Correction recorded December 3, 2013 as Instrument No. 20131708591 of Official Records.

Parcel 2:

A Reciprocal Access Easement over those areas set out on the map shown above.

Parcel 3:

An easement for the purposes herein stated and subject to the terms and provisions of that certain consolidated Amended and Restated Driveway Easement Agreement (South Orange Grove Parcels) Recorded December 5, 2013 as Instrument No. 20131716500 of Official Records, more particularly described as set out therein.

Parcel 4:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Amended and Restated Driveway Easement Agreement (Del Mar Parcel) recorded December 5, 2013 as Instrument No. 20131716499 of Official Records, more particularly described as set out therein.

Parcel 5:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Rose Parade Grandstand Easement Agreement (Orange Grove Avenue) recorded July 21, 2005 as Instrument Nos. 05-1721787 and 05-1721788 both of Official Records, more particularly described as set out therein.

Parcel 6:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Parking Garage Easement Agreement recorded July 2, 2007 as Instrument No. 20071579026 of Official Records, more particularly described as set out therein.

Parcel 7:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Parking Easement Agreement recorded December 28, 2011 as Instrument No. 20111763712 of Official Records, more particularly described as set out therein.

APN: 5713-027-065

# Exhibit 2

**Updated July 14, 2026**

# First American Title Insurance Company
## National Commercial Services
**9255 Towne Centre Drive, Suite 200**
**San Diego, CA 92121**

Jayden Lee
Preferred Bank
601 S Figueroa St Fl 48
Los Angeles, CA 90017
Phone: (213)891-1188
Fax: (213)622-0369

| | |
|---|---|
| Customer Reference: | 244 South Orange Grove Boulevard |
| Title Officer: | Linda Slavik |
| Phone: | (858)410-3873 |
| Email: | lslavik@firstam.com |
| Property: | 244 South Orange Grove Boulevard, Pasadena, CA |

## PRELIMINARY REPORT

In response to the above referenced application for a policy of title insurance, this company hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Policy or Policies of Title Insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an Exception below or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations of said Policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Exhibit A attached. *The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties.* Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Exhibit A. Copies of the policy forms should be read. They are available from the office which issued this report.

**Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Exhibit A of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.**

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.

Dated as of June 30, 2026 at 7:30 A.M.

The form of Policy of title insurance contemplated by this report is:

To Be Determined

A specific request should be made if another form or additional coverage is desired.

Title to said estate or interest at the date hereof is vested in:

SDRES Partners LLC, a California Limited Liability Company

The estate or interest in the land hereinafter described or referred to covered by this Report is:

A Fee as to Parcel 1, an Easement as to Parcels 2, 3, 4, 5, 6 and 7.

The Land referred to herein is described as follows:

(See attached Legal Description)

At the date hereof exceptions to coverage in addition to the printed Exceptions and Exclusions in said policy form would be as follows:

1. General and special taxes and assessments for the fiscal year 2026-2027, a lien not yet due or payable.

2. General and special taxes and assessments for the fiscal year 2025-2026.

| | |
|---|---|
| First Installment: | $48,703.78, DELINQUENT |
| Penalty: | $4,870.37 |
| Second Installment: | $48,703.77, DELINQUENT |
| Penalty: | $4,880.37 |
| Tax Rate Area: | 07500 |
| A. P. No.: | 5713-027-065 |

3. The lien of defaulted taxes for the fiscal years 2023, 2024 and 2025, and any subsequent delinquencies.

| | |
|---|---|
| Tax Rate Area: | 07500 |
| A. P. No.: | 5713-027-065 |
| Amount to redeem: | $296,684.31 |
| Valid through: | July 2026 |
| Amount to redeem: | $300,227.44 |
| Valid through: | August 2026 |

**Please contact the tax office to verify the payoff amount.**

5. Covenants, conditions, restrictions and easements in the document recorded as Book 32449, Page 143; in Book 32449, Page 152; in Book 32449, Page 166; in Book 32449, Page 173; in Book 34290, Page 121; in Book 34290, Page 86 and in Book 35539, Page 103, all of Official Records, which provide that a violation thereof shall not defeat or render invalid the lien of any first mortgage or deed of trust made in good faith and for value, but deleting any covenant, condition, or restriction, if any, indicating a preference, limitation, or discrimination based on race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, handicap, veteran or military status, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, to the extent that such covenants, conditions or restrictions violate applicable state or federal laws. Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

6. An easement for utility, roadway, walkway access and incidental purposes, recorded May 14, 2004 as Instrument No. 04-1227591 of Official Records.
   In Favor of: Worldwide Church of God, a California non-profit religious corporation and Ambassador Acquisition Coalition Partners, LLC., a Delaware limited liability company
   Affects: as described therein

   The location of the easement cannot be determined from record information.

7. The terms and provisions contained in the document entitled "Memorandum of Post-Closing Obligations" recorded May 14, 2004 as Instrument No. 04-1227594 of Official Records.

8. An easement for utility and incidental purposes, recorded May 14, 2004 as Instrument No. 04-1227598 of Official Records.
   In Favor of: Maranatha High School
   Affects: as described therein

   The location of the easement cannot be determined from record information.

9. The terms and provisions contained in the document entitled "Memorandum Post-Closing Obligations" recorded July 21, 2005 as Instrument No. 05-1721784 of Official Records.

10. The terms, provisions and easement(s) contained in the document entitled "Driveway Easement Agreement (Rankin Parcel)" recorded July 21, 2005 as Instrument No. 05-1721786 of Official Records.

11. Covenants, conditions, restrictions, easements, assessments, liens, charges, terms and provisions in the document recorded July 02, 2007 as Instrument No. 2007-1579024 of Official Records, which provide that a violation thereof shall not defeat or render invalid the lien of any first mortgage or deed of trust made in good faith and for value, but deleting any covenant, condition or restriction indicating a preference, limitation or discrimination based on race, color, religion, sex, handicap, familial status, national origin, sexual orientation, marital status, ancestry, source of income or disability, to the extent such covenants, conditions or restrictions violate Title 42, Section 3604(c), of the United States Codes. Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

Note: You may wish to contact the homeowners association referred to in the above document for information regarding assessments, transfer requirements or other matters.

Document(s) declaring modifications thereof recorded March 03, 2009 as Instrument No. 2009-0297679 of Official Records.

Document(s) declaring modifications thereof recorded October 31, 2013 as Instrument No. 20131553283 of Official Records.

Document(s) declaring modifications thereof recorded March 12, 2015 as Instrument No. 20150270219 of Official Records.

Document(s) declaring modifications thereof recorded December 21, 2015 as Instrument No. 20151601451 of Official Records.

12. The terms and provisions contained in the document entitled "Memorandum of Site Development Agreement" recorded July 02, 2007 as Instrument No. 2007-1579027 of Official Records.

    Document(s) declaring modifications thereof recorded November 12, 2008 as Instrument No. 2008-1995401 of Official Records.

13. The terms and provisions contained in the document entitled "Resolution No. 8850 Adopting a Declaration of Landmark Designation for 210 South Orange Grove Blvd." recorded May 02, 2008 as Instrument No. 20080779152 of Official Records.

14. An easement for landscaping and appurtenances and incidental purposes, recorded December 04, 2008 as Instrument No. 08-2131627 and Instrument No. 08-2131628, both of Official Records.
    In Favor of: DB Pasadena Holdco LLC, a Delaware limited liability company
    Affects: as described therein

    The location of the easement cannot be determined from record information.

15. An easement for ingress, egress and incidental purposes, recorded December 19, 2008 as Instrument No. 08-2232727 of Official Records.
    In Favor of: DB Pasadena Holdco LLC, a Delaware limited liability company
    Affects: as described therein

    The location of the easement cannot be determined from record information.

16. The terms, provisions and easement(s) contained in the document entitled "Construction Easement Agreement" recorded December 19, 2008 as Instrument No. 2008-2232728 of Official Records.

17. The terms, provisions and easement(s) contained in the document entitled "Parking Easement Agreement" recorded December 28, 2011 as Instrument No. 20111763712 of Official Records.

18. An easement shown or dedicated on the map of Tract No. 063103 recorded March 15, 2012 on file in Book 1369, Page 35 through 52, of Tract Maps.
    For: Public utility, water line, reciprocal access and incidental purposes.

19. A deed of trust to secure an original indebtedness of $8,400,000.00 recorded June 16, 2017 as Instrument No. 20170671620 of Official Records.

| | |
|---|---|
| Dated: | June 08, 2017 |
| Trustor: | Cantor Group LLC, a California limited liability company |
| Trustee: | First American Title Insurance Company |
| Beneficiary: | Preferred Bank, a California banking corporation |

The above deed of trust states that it secures a line of credit. Before the close of escrow, we require evidence satisfactory to us that (a) all checks, credit cards or other means of drawing upon the line of credit have been surrendered to escrow, (b) the borrower has not drawn upon the line of credit since the last transaction reflected in the lender's payoff demand, and (c) the borrower has in writing instructed the beneficiary to terminate the line of credit using such forms and following such procedures as may be required by the beneficiary.

A document entitled "Absolute Assignment of Leases, Lease Guaranties, Rents, Issues and Profits" recorded June 16, 2017 as Instrument No. 20170671621 of Official Records, as additional security for the payment of the indebtedness secured by the deed of trust.

A document recorded June 16, 2017 as Instrument No. 20170671623 of Official Records, provides that the obligation secured by the deed of trust was assumed by SDRES Partners LLC, a California limited liability company.

A document recorded May 29, 2019 as Instrument No. 20190487919 of Official Records provides that the deed of trust or the obligation secured thereby has been modified.

A document recorded January 10, 2024 as Instrument No. 20240020404 of Official Records provides that the deed of trust or the obligation secured thereby has been modified.

A document recorded October 09, 2024 as Instrument No. 20240688400 of Official Records provides that the deed of trust or the obligation secured thereby has been modified.

A document recorded January 30, 2026 as Instrument No. 20260071282 of Official Records provides that Preferred Bank, a California banking corporation was substituted as trustee under the deed of trust.

A notice of default recorded January 30, 2026 as Instrument No. 20260071283 of Official Records.

A notice of trustee's sale recorded May 11, 2026 as Instrument No. 20260343605 of Official Records.

20. The effect of a document entitled "Grant Deed", recorded June 16, 2017 as Instrument No. 20170671622 of Official Records.

Said document contains an erroneous legal description.

21. A financing statement recorded June 27, 2017 as Instrument No. 20170712458 of Official Records.

| | |
|---|---|
| Debtor: | Cantor Group LLC |
| Secured party: | Preferred Bank |

An amendment to the financing statement was recorded December 04, 2017 as Instrument No. 20171391800 of Official Records.

A continuation statement was recorded March 29, 2022 as Instrument No. 20220345477 of Official Records.

22. A deed of trust to secure an original indebtedness of $400,000.00 recorded January 05, 2024 as Instrument No. 20240011708 of Official Records.

| | |
|---|---|
| Dated: | December 13, 2023 |
| Trustor: | SDRES Partners LLC, a California limited liability company |
| Trustee: | Stewart Title of California, Inc. |
| Beneficiary: | Preferred Bank, a California banking corporation |

| | |
|---|---|
| Affects: | The land and other property. |

The above deed of trust states that it secures a line of credit. Before the close of escrow, we require evidence satisfactory to us that (a) all checks, credit cards or other means of drawing upon the line of credit have been surrendered to escrow, (b) the borrower has not drawn upon the line of credit since the last transaction reflected in the lender's payoff demand, and (c) the borrower has in writing instructed the beneficiary to terminate the line of credit using such forms and following such procedures as may be required by the beneficiary.

A document entitled "Absolute Assignment of Leases, Lease Guaranties, Rents, Issues and Profits" recorded January 05, 2024 as Instrument No. 20240011709 of Official Records, as additional security for the payment of the indebtedness secured by the deed of trust.

23. This item has been intentionally deleted.

24. An ALTA/NSPS survey of recent date which complies with the current minimum standard detail requirements for ALTA/NSPS land title surveys.

25. Any facts, rights, interests or claims which would be disclosed by a correct ALTA/NSPS survey.

26. Rights of parties in possession.

27. Water rights, claims or title to water, whether or not shown by the Public Records.

## INFORMATIONAL NOTES

**ALERT - CA Senate Bill 2 imposes an additional fee of $75 up to $225 at the time of recording on certain transactions effective January 1, 2018. Please contact your First American Title representative for more information on how this may affect your closing.**

1. According to the latest available equalized assessment roll in the office of the county tax assessor, there is located on the land a(n) Commercial Structure known as 210 South Orange Grove Boulevard, Pasadena, CA.

2. According to the public records, there has been no conveyance of the land within a period of twenty-four months prior to the date of this report, except as follows:

   None

3. This preliminary report/commitment was prepared based upon an application for a policy of title insurance that identified land by street address or assessor's parcel number only. It is the responsibility of the applicant to determine whether the land referred to herein is in fact the land that is to be described in the policy or policies to be issued.

4. Should this report be used to facilitate your transaction, we must be provided with the following prior to the issuance of the policy:

   A. WITH RESPECT TO A CORPORATION:
      1. A certificate of good standing of recent date issued by the Secretary of State of the corporation's state of domicile.
      2. A certificate copy of a resolution of the Board of Directors authorizing the contemplated transaction and designating which corporate officers shall have the power to execute on behalf of the corporation.
      3. A certificate of revivor and a certificate of relief from contract voidability issued by the Franchise Tax Board of the State of California.
      4. Requirements which the Company may impose following its review of the above material and other information which the Company may require.

   B. WITH RESPECT TO A CALIFORNIA LIMITED PARTNERSHIP:
      1. A certified copy of the certificate of limited partnership (form LP-1) and any amendments thereto (form LP-2) to be recorded in the public records;
      2. A full copy of the partnership agreement and any amendments;
      3. Satisfactory evidence of the consent of a majority in interest of the limited partners to the contemplated transaction;
      4. A certificate of revivor and a certificate of relief from contract voidability issued by the Franchise Tax Board of the State of California.
      5. Requirements which the Company may impose following its review of the above material and other information which the Company may require.

   C. WITH RESPECT TO A FOREIGN LIMITED PARTNERSHIP:
      1. A certified copy of the application for registration, foreign limited partnership (form LP-5) and any amendments thereto (form LP-6) to be recorded in the public records;
      2. A full copy of the partnership agreement and any amendment;
      3. Satisfactory evidence of the consent of a majority in interest of the limited partners to the contemplated transaction;

4. A certificate of revivor and a certificate of relief from contract voidability issued by the Franchise Tax Board of the State of California.
5. Requirements which the Company may impose following its review of the above material and other information which the Company may require.

D. WITH RESPECT TO A GENERAL PARTNERSHIP:

1. A certified copy of a statement of partnership authority pursuant to Section 16303 of the California Corporation Code (form GP-I), executed by at least two partners, and a certified copy of any amendments to such statement (form GP-7), to be recorded in the public records;
2. A full copy of the partnership agreement and any amendments;
3. Requirements which the Company may impose following its review of the above material required herein and other information which the Company may require.

E. WITH RESPECT TO A LIMITED LIABILITY COMPANY:

1. A copy of its operating agreement and any amendments thereto;
2. If it is a California limited liability company, a certified copy of its articles of organization (LLC-1) and any certificate of correction (LLC-11), certificate of amendment (LLC-2), or restatement of articles of organization (LLC-10) to be recorded in the public records;
3. If it is a foreign limited liability company, a certified copy of its application for registration (LLC-5) to be recorded in the public records;
4. With respect to any deed, deed of trust, lease, subordination agreement or other document or instrument executed by such limited liability company and presented for recordation by the Company or upon which the Company is asked to rely, such document or instrument must be executed in accordance with one of the following, as appropriate:
   (i) If the limited liability company properly operates through officers appointed or elected pursuant to the terms of a written operating agreement, such documents must be executed by at least two duly elected or appointed officers, as follows: the chairman of the board, the president or any vice president, and any secretary, assistant secretary, the chief financial officer or any assistant treasurer;
   (ii) If the limited liability company properly operates through a manager or managers identified in the articles of organization and/or duly elected pursuant to the terms of a written operating agreement, such document must be executed by at least two such managers or by one manager if the limited liability company properly operates with the existence of only one manager.
5. A certificate of revivor and a certificate of relief from contract voidability issued by the Franchise Tax Board of the State of California.
6. Requirements which the Company may impose following its review of the above material and other information which the Company may require.

F. WITH RESPECT TO A TRUST:

1. A certification pursuant to Section 18100.5 of the California Probate Code in a form satisfactory to the Company.
2. Copies of those excerpts from the original trust documents and amendments thereto which designate the trustee and confer upon the trustee the power to act in the pending transaction.
3. Other requirements which the Company may impose following its review of the material require herein and other information which the Company may require.

G. WITH RESPECT TO INDIVIDUALS:

1. A statement of information.

The map attached, if any, may or may not be a survey of the land depicted hereon. First American Title Insurance Company expressly disclaims any liability for loss or damage which may result from reliance on this map except to the extent coverage for such loss or damage is expressly provided by the terms and provisions of the title insurance policy, if any, to which this map is attached.

## LEGAL DESCRIPTION

Real property in the City of Pasadena, County of Los Angeles, State of California, described as follows:

Parcel 1:

Lot 10 of TRACT NO. 063103, in the City of Pasadena, as per map recorded in Book 1369 Pages 35 through 52 of Maps in the Office of the County Recorder of said County, amended pursuant to that certain Certificate of Correction recorded December 3, 2013 as Instrument No. 20131708591 of Official Records.

Parcel 2:

A reciprocal access easement over those areas set out on the map shown above.

Parcel 3:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Consolidated Amended and Restated Driveway Easement Agreement (South Orange Grove Parcels) recorded December 5, 2013 as Instrument No. 20131716500 of Official Records, more particularly described as set out therein.

Parcel 4:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Rose Parade Grandstand Easement Agreement (Orange Grove Avenue) recorded July 21, 2005 as Instrument Nos. 05-1721787 and 05-1721788 both of Official Records, more particularly described as set out therein.

Parcel 5:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Parking Garage Easement Agreement recorded July 2, 2007 as Instrument No. 20071579026 of Official Records, more particularly described as set out therein.

Parcel 6:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Parking Easement Agreement recorded December 28, 2011 as Instrument No. 20111763712 of Official Records, more particularly described as set out therein.

APN: 5713-013-057

**NOTICE**

Section 12413.1 of the California Insurance Code, effective January 1, 1990, requires that any title insurance company, underwritten title company, or controlled escrow company handling funds in an escrow or sub-escrow capacity, wait a specified number of days after depositing funds, before recording any documents in connection with the transaction or disbursing funds. This statute allows for funds deposited by wire transfer to be disbursed the same day as deposit. In the case of cashier's checks or certified checks, funds may be disbursed the next day after deposit. In order to avoid unnecessary delays of three to seven days, or more, please use wire transfer, cashier's checks, or certified checks whenever possible.

If you have any questions about the effect of this new law, please contact your local First American Office for more details.

## Privacy Policy

### We Are Committed to Safeguarding Customer Information

In order to better serve your needs now and in the future, we may ask you to provide us with certain information. We understand that you may be concerned about what we will do with such information - particularly any personal or financial information. We agree that you have a right to know how we will utilize the personal information you provide to us. Therefore, together with our parent company, The First American Corporation, we have adopted this Privacy Policy to govern the use and handling of your personal information.

### Applicability

This Privacy Policy governs our use of the information which you provide to us. It does not govern the manner in which we may use information we have obtained from any other source, such as information obtained from a public record or from another person or entity. First American has also adopted broader guidelines that govern our use of personal information regardless of its source. First American calls these guidelines its *Fair Information Values*, a copy of which can be found on our website at www.firstam.com.

### Types of Information

Depending upon which of our services you are utilizing, the types of nonpublic personal information that we may collect include:

Information we receive from you on applications, forms and in other communications to us, whether in writing, in person, by telephone or any other means;
Information about your transactions with us, our affiliated companies, or others; and
Information we receive from a consumer reporting agency.

### Use of Information

We request information from you for our own legitimate business purposes and not for the benefit of any nonaffiliated party. Therefore, we will not release your information to nonaffiliated parties except: (1) as necessary for us to provide the product or service you have requested of us; or (2) as permitted by law. We may, however, store such information indefinitely, including the period after which any customer relationship has ceased. Such information may be used for any internal purpose, such as quality control efforts or customer analysis. We may also provide all of the types of nonpublic personal information listed above to one or more of our affiliated companies. Such affiliated companies include financial service providers, such as title insurers, property and casualty insurers, and trust and investment advisory companies, or companies involved in real estate services, such as appraisal companies, home warranty companies, and escrow companies. Furthermore, we may also provide all the information we collect, as described above, to companies that perform marketing services on our behalf, on behalf of our affiliated companies, or to other financial institutions with whom we or our affiliated companies have joint marketing agreements.

### Former Customers

Even if you are no longer our customer, our Privacy Policy will continue to apply to you.

### Confidentiality and Security

We will use our best efforts to ensure that no unauthorized parties have access to any of your information. We restrict access to nonpublic personal information about you to those individuals and entities who need to know that information to provide products or services to you. We will use our best efforts to train and oversee our employees and agents to ensure that your information will be handled responsibly and in accordance with this Privacy Policy and First American's *Fair Information Values*. We currently maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

**CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (02-03-10)
EXCLUSIONS**

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1. Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:
   (a) building; (d) improvements on the Land;
   (b) zoning; (e) land division; and
   (c) land use; (f) environmental protection.
   This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.
2. The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.
3. The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.
4. Risks:
   (a) that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;
   (b) that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;
   (c) that result in no loss to You; or
   (d) that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.
5. Failure to pay value for Your Title.
6. Lack of a right:
   (a) to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
   (b) in streets, alleys, or waterways that touch the Land.
   This Exclusion does not limit the coverage described in Covered Risk 11 or 21.
7. The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.

**LIMITATIONS ON COVERED RISKS**

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows: For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

| **Your Deductible Amount** | **Our Maximum Dollar Limit of Liability** |
|---|---|
| Covered Risk 16: 1% of Policy Amount or $2,500.00 (whichever is less) | $10,000.00 |
| Covered Risk 18: 1% of Policy Amount or $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 19: 1% of Policy Amount or $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 21: 1% of Policy Amount or $2,500.00 (whichever is less) | $5,000.00 |

**ALTA RESIDENTIAL TITLE INSURANCE POLICY (6-1-87)
EXCLUSIONS**

In addition to the Exceptions in Schedule B, you are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1. Governmental police power, and the existence or violation of any law or government regulation. This includes building and zoning ordinances and also laws and regulations concerning:
   (a) and use
   (b) improvements on the land
   (c) and division
   (d) environmental protection
   This exclusion does not apply to violations or the enforcement of these matters which appear in the public records at Policy Date.
   This exclusion does not limit the zoning coverage described in Items 12 and 13 of Covered Title Risks.
2. The right to take the land by condemning it, unless:
   (a) a notice of exercising the right appears in the public records on the Policy Date
   (b) the taking happened prior to the Policy Date and is binding on you if you bought the land without knowing of the taking
3. Title Risks:
   (a) that are created, allowed, or agreed to by you

(b) that are known to you, but not to us, on the Policy Date -- unless they appeared in the public records
(c) that result in no loss to you
(d) that first affect your title after the Policy Date -- this does not limit the labor and material lien coverage in Item 8 of Covered Title Risks

4. Failure to pay value for your title.
5. Lack of a right:
   (a) to any land outside the area specifically described and referred to in Item 3 of Schedule A OR
   (b) in streets, alleys, or waterways that touch your land
   This exclusion does not limit the access coverage in Item 5 of Covered Title Risks.

**2006 ALTA LOAN POLICY (06-17-06)**
**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. a. Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

   i. the occupancy, use, or enjoyment of the Land;
   ii. the character, dimensions, or location of any improvement erected on the Land;
   iii. the subdivision of land; or
   iv. environmental protection;

   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

   b. Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   a. created, suffered, assumed, or agreed to by the Insured Claimant;
   b. not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   c. resulting in no loss or damage to the Insured Claimant;
   d. attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or
   e. resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.
6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
   a. a fraudulent conveyance or fraudulent transfer, or
   b. a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

**EXCEPTIONS FROM COVERAGE**

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) that arise by reason of:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2. Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.

5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6. Any lien or right to a lien for services, labor or material not shown by the public records.

**2006 ALTA OWNER'S POLICY (06-17-06)**
**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. a. Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

   i. the occupancy, use, or enjoyment of the Land;
   ii. the character, dimensions, or location of any improvement erected on the Land;
   iii. the subdivision of land; or
   iv. environmental protection;
   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

   b.Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   a. created, suffered, assumed, or agreed to by the Insured Claimant;
   b. not Known to the Company, not recorded in the Public Records at Date of Policy, but known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   c. resulting in no loss or damage to the Insured Claimant;
   d. attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
   e. resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
   a. a fraudulent conveyance or fraudulent transfer; or
   b. a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

**EXCEPTIONS FROM COVERAGE**

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) that arise by reason of:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2. Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6. Any lien or right to a lien for services, labor or material not shown by the public records.

**ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY (07-26-10)**
**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. a. Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

    i. the occupancy, use, or enjoyment of the Land;
    ii. the character, dimensions, or location of any improvement erected on the Land;
    iii. the subdivision of land; or
    iv. environmental protection;

    or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.

    b. Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters

    a. created, suffered, assumed, or agreed to by the Insured Claimant;
    b. not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    c. resulting in no loss or damage to the Insured Claimant;
    d. attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 28); or
    e. resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law. This Exclusion does not modify or limit the coverage provided in Covered Risk 26.
6. Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11.
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11(b) or 25.
8. The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes. This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.
9. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
    a. a fraudulent conveyance or fraudulent transfer, or
    b. a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.

**2021 ALTA LOAN POLICY (7-1-21)**
**EXCLUSIONS FROM COVERAGE**

The following matters are excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. a. any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
        i. the occupancy, use, or enjoyment of the Land;
        ii. the character, dimensions, or location of any improvement on the Land;
        iii. the subdivision of land; or
        iv. environmental remediation or protection.
    b. any governmental forfeiture, police, regulatory, or national security power.
    c. the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b.

    Exclusion 1 does not modify or limit the coverage provided under Covered Risk 5 or 6.
2. Any power of eminent domain. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 7.
3. Any defect, lien, encumbrance, adverse claim, or other matter:
    a. created, suffered, assumed, or agreed to by the Insured Claimant;
    b. not Known to the Company, not recorded in the Public Records at the Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    c. resulting in no loss or damage to the Insured Claimant;
    d. attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or

   e. resulting in loss or damage that would not have been sustained if consideration sufficient to qualify the Insured named in Schedule A as a bona fide purchaser or encumbrancer had been given for the Insured Mortgage at the Date of Policy.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business law.
5. Invalidity or unenforceability of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury law or Consumer Protection Law.
6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transaction creating the lien of the Insured Mortgage is a:
   a. fraudulent conveyance or fraudulent transfer;
   b. voidable transfer under the Uniform Voidable Transactions Act; or
   c. preferential transfer:
      i. to the extent the Insured Mortgage is not a transfer made as a contemporaneous exchange for new value; or
      ii. for any other reason not stated in Covered Risk 13.b.
7. Any claim of a PACA-PSA Trust. Exclusion 7 does not modify or limit the coverage provided under Covered Risk 8.
8. Any lien on the Title for real estate taxes or assessments imposed by a governmental authority and created or attaching between the Date of Policy and the date of recording of the Insured Mortgage in the Public Records. Exclusion 8 does not modify or limit the coverage provided under Covered Risk 2.b. or 11.b.
9. Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

**EXCEPTIONS FROM COVERAGE**

This policy does not insure against loss or damage and the Company will not pay costs, attorneys' fees, or expenses resulting from the terms and conditions of any lease or easement identified in Schedule A, and the following matters:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2. Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the Public Records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6. Any lien or right to a lien for services, labor or material unless such lien is shown by the Public Records at Date of Policy.
7. Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, geothermal resources, uranium, clay, rock, sand and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

**2021 ALTA OWNER'S POLICY (7-1-21)**
**EXCLUSIONS FROM COVERAGE**

The following matters are excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. a. any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
      i. the occupancy, use, or enjoyment of the Land;
      ii. the character, dimensions, or location of any improvement on the Land;
      iii. the subdivision of land; or
      iv. environmental remediation or protection.
   b. any governmental forfeiture, police, regulatory, or national security power.
   c. the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b.

   Exclusion 1 does not modify or limit the coverage provided under Covered Risk 5 or 6.
2. Any power of eminent domain. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 7.
3. Any defect, lien, encumbrance, adverse claim, or other matter:
   a. created, suffered, assumed, or agreed to by the Insured Claimant;
   b. not Known to the Company, not recorded in the Public Records at the Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   c. resulting in no loss or damage to the Insured Claimant;
   d. attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 9 or 10); or
   e. resulting in loss or damage that would not have been sustained if consideration sufficient to qualify the Insured named in Schedule A as a bona fide purchaser had been given for the Title at the Date of Policy.
4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transaction

vesting the Title as shown in Schedule A is a:
a. fraudulent conveyance or fraudulent transfer;
b. voidable transfer under the Uniform Voidable Transactions Act; or
c. preferential transfer:
   i. to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or
   ii. for any other reason not stated in Covered Risk 9.b.

5. Any claim of a PACA-PSA Trust. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 8.
6. Any lien on the Title for real estate taxes or assessments imposed or collected by a governmental authority that becomes due and payable after the Date of Policy. Exclusion 6 does not modify or limit the coverage provided under Covered Risk 2.b.
7. Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

**EXCEPTIONS FROM COVERAGE**

This policy does not insure against loss or damage and the Company will not pay costs, attorneys' fees, or expenses resulting from the terms and conditions of any lease or easement identified in Schedule A, and the following matters:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2. Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the Public Records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6. Any lien or right to a lien for services, labor or material unless such lien is shown by the Public Records at Date of Policy.
7. Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, geothermal resources, uranium, clay, rock, sand and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

vesting the Title as shown in Schedule A is a:
a. fraudulent conveyance or fraudulent transfer;
b. voidable transfer under the Uniform Voidable Transactions Act; or
c. preferential transfer:
   i. to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or
   ii. for any other reason not stated in Covered Risk 9.b.

5. Any claim of a PACA-PSA Trust. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 8.
6. Any lien on the Title for real estate taxes or assessments imposed or collected by a governmental authority that becomes due and payable after the Date of Policy. Exclusion 6 does not modify or limit the coverage provided under Covered Risk 2.b.
7. Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

**EXCEPTIONS FROM COVERAGE**

This policy does not insure against loss or damage and the Company will not pay costs, attorneys' fees, or expenses resulting from the terms and conditions of any lease or easement identified in Schedule A, and the following matters:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2. Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the Public Records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6. Any lien or right to a lien for services, labor or material unless such lien is shown by the Public Records at Date of Policy.
7. Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, geothermal resources, uranium, clay, rock, sand and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

**Updated July 14, 2026**

# First American Title Insurance Company
## National Commercial Services
**9255 Towne Centre Drive, Suite 200**
**San Diego, CA 92121**

Jayden Lee
Preferred Bank
601 S Figueroa St Fl 48
Los Angeles, CA 90017
Phone: (213)891-1188
Fax: (213)622-0369

Customer Reference: 210 South Orange Grove Boulevard

Title Officer: Linda Slavik
Phone: (858)410-3873
Email: lslavik@firstam.com

Property: 210 South Orange Grove Boulevard, Pasadena, CA

## PRELIMINARY REPORT

In response to the above referenced application for a policy of title insurance, this company hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Policy or Policies of Title Insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an Exception below or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations of said Policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Exhibit A attached. *The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties.* Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Exhibit A. Copies of the policy forms should be read. They are available from the office which issued this report.

**Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Exhibit A of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.**

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.

Dated as of June 30, 2026 at 7:30 A.M.

The form of Policy of title insurance contemplated by this report is:

To Be Determined

A specific request should be made if another form or additional coverage is desired.

Title to said estate or interest at the date hereof is vested in:

SDRES Partners LLC, a California limited liability company

The estate or interest in the land hereinafter described or referred to covered by this Report is:

A Fee as to Parcel 1, an Easement as to Parcels 2, 3, 4, 5 and 6.

The Land referred to herein is described as follows:

(See attached Legal Description)

At the date hereof exceptions to coverage in addition to the printed Exceptions and Exclusions in said policy form would be as follows:

1. General and special taxes and assessments for the fiscal year 2026-2027, a lien not yet due or payable.

2. General and special taxes and assessments for the fiscal year 2025-2026.

| | |
|---|---|
| First Installment: | $47,835.98, DELINQUENT |
| Penalty: | $4,783.59 |
| Second Installment: | $47,835.98, DELINQUENT |
| Penalty: | $4,793.59 |
| Tax Rate Area: | 07500 |
| A. P. No.: | 5713-013-057 |

3. The lien of defaulted taxes for the fiscal years 2023, 2024 and 2025, and any subsequent delinquencies.

| | |
|---|---|
| Tax Rate Area: | 07500 |
| A. P. No.: | 5713-013-057 |
| Amount to redeem: | $291,717.03 |
| Valid through: | July 2026 |
| Amount to redeem: | $295,200.55 |
| Valid through: | August 2026 |

**Please contact the tax office to verify the payoff amount.**

4. The lien of supplemental taxes, if any, assessed pursuant to Chapter 3.5 commencing with Section 75 of the California Revenue and Taxation Code.

4. The lien of supplemental taxes, if any, assessed pursuant to Chapter 3.5 commencing with Section 75 of the California Revenue and Taxation Code.

5. Covenants, conditions, restrictions and easements in the document recorded as Book 32449, Page 143; in Book 32449, Page 152; in Book 32449, Page 166; in Book 32449, Page 173; in Book 34290, Page 121; in Book 34290, Page 86 and in Book 35539, Page 103, All of Official Records, which provide that a violation thereof shall not defeat or render invalid the lien of any first mortgage or deed of trust made in good faith and for value, but deleting any covenant, condition, or restriction, if any, indicating a preference, limitation, or discrimination based on race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, handicap, veteran or military status, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, to the extent that such covenants, conditions or restrictions violate applicable state or federal laws. Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

6. The terms and provisions contained in the document entitled "Memorandum of Post-Closing Obligations" recorded May 14, 2004 as Instrument No. 04-1227594 of Official Records.

7. The terms, provisions and easement(s) contained in the document entitled "Utility Easement Agreement" recorded May 14, 2004 as Instrument No. 04-1227591 of Official Records.

8. The terms, provisions and easement(s) contained in the document entitled "Reciprocal Utility Easement Agreement" recorded May 14, 2004 as Instrument No. 04-1227598 of Official Records.

9. The terms and provisions contained in the document entitled "Memorandum of Post-Closing Obligations" recorded July 21, 2005 as Instrument No. 05-1721784 of Official Records.

10. The terms, provisions and easement(s) contained in the document entitled "Driveway Easement Agreement (Rankin Parcel)" recorded July 21, 2005 as Instrument No. 05-1721786 of Official Records.

11. Covenants, conditions, restrictions, easements, assessments, liens, charges, terms and provisions in the document recorded July 02, 2007 as Instrument No. 07-1579024 of Official Records, which provide that a violation thereof shall not defeat or render invalid the lien of any first mortgage or deed of trust made in good faith and for value but deleting any covenant, condition, or restriction, if any, indicating a preference, limitation, or discrimination based on race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, handicap, veteran or military status, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, to the extent that such covenants, conditions or restrictions violate applicable state or federal laws. Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

    Ambassador West Master Homeowners Association is referenced in the above mentioned document.

    Document(s) declaring modifications thereof recorded March 03, 2009 as Instrument no. 2009-297679 of Official Records.

    Document(s) declaring modifications thereof recorded October 31, 2013 as Instrument no. 20131553283 of Official Records.

Document(s) declaring modifications thereof recorded March 12, 2015 as Instrument No. 20150270219 of Official Records.

Document(s) declaring modifications thereof recorded December 21, 2015 as Instrument No. 20151601451 of Official Records.

12. The terms and provisions contained in the document entitled "Memorandum of Site Development Agreement" recorded July 02, 2007 as Instrument no. 2007-1579027 of Official Records.

    Document(s) declaring modifications thereof recorded November 12, 2008 as Instrument no. 2008-1995401 of Official Records.

13. The terms and provisions contained in the document entitled "Resolution No. 8850 adopting a Declaration of landmark designation for 210 South Orange Grove Blvd." recorded May 02, 2008 as Instrument No. 20080779152 of Official Records.

14. The terms, provisions and easement(s) contained in the document entitled "Construction Easement Agreement (Lot A Portion)" recorded December 04, 2008 as Instrument No. 08-2131627 of Official Records.

15. The terms, provisions and easement(s) contained in the document entitled "Construction Easement Agreement (Adjustment Portion)" recorded December 04, 2008 as Instrument No. 08-2131628 of Official Records.

16. An easement for ingress, egress and incidental purposes in the document recorded December 19, 2008 as Instrument No. 08-2232727 of Official Records.

    The location of the easement cannot be determined from record information.

17. The terms, provisions and easement(s) contained in the document entitled "Parking Easement Agreement" recorded December 28, 2011 as Instrument No. 11-1763713 of Official Records.

18. An easement shown or dedicated on the map of Tract No. 63103 recorded March 15, 2012 and on file in Book 1369, Page(s) 35 through 52, of Tract Maps.
    For: Reciprocal parking, reciprocal access and incidental purposes.

19. A deed of trust to secure an original indebtedness of $8,400,000.00 recorded June 16, 2017 as Instrument No. 20170671625 of Official Records.

| | |
|---|---|
| Dated: | June 08, 2017 |
| Trustor: | Cantor Group LLC, a California Limited Liability Company |
| Trustee: | First American Title Insurance Company |
| Beneficiary: | Preferred Bank, a California Banking Corporation |

A document entitled "Absolute Assignment of Leases, Lease Guaranties, Rents, Issues and Profits" recorded June 16, 2017 as Instrument No. 20170671626 of Official Records, as additional security for the payment of the indebtedness secured by the deed of trust.

A document recorded June 16, 2017 as Instrument No. 20170671628 of Official Records, provides that the obligation secured by the deed of trust was assumed by SDRES Partners LLC, a California Limited Liability Company.

A document recorded May 29, 2019 as Instrument No. 20190487920, of Official Records provides that the Deed of Trust/Mortgage or the obligation secured thereby has been modified.

A document recorded January 16, 2024 as Instrument No. 20240020417, of Official Records provides that the Deed of Trust/Mortgage or the obligation secured thereby has been modified.

A document recorded October 09, 2024 as Instrument No. 20240688406, of Official Records provides that the Deed of Trust/Mortgage or the obligation secured thereby has been modified.

A document recorded January 30, 2026 as Instrument No. 20260071280 of Official Records provides that Fidelity National Title Company was substituted as trustee under the deed of trust.

A notice of default recorded January 30, 2026 as Instrument No. 20260071281 of Official Records.

A notice of trustee's sale recorded May 11, 2026 as Instrument No. 20260343596 of Official Records.

20. A financing statement recorded June 27, 2017 as Instrument No. 20170712457 of Official Records.

| | |
|---|---|
| Debtor: | Cantor Group LLC |
| Secured party: | Preferred Bank |

An amendment to the financing statement was recorded December 04, 2017 as Instrument No. 20171391801 of Official Records.

A continuation statement was recorded March 29, 2022 as Instrument No. 20220345458 of Official Records.

21. This item has been intentionally deleted.

22. A Deed of Trust to secure an original indebtedness of $400,000.00 recorded January 05, 2024 as Instrument No. 20240011708 of Official Records.

| | |
|---|---|
| Dated: | December 13, 2023 |
| Trustor: | SDRES Partners LLC, a California limited liability company |
| Trustee: | Stewart Title of California, Inc. |
| Beneficiary: | Preferred Bank, a California banking corporation |

Affects: The land and other property.

A document entitled "Absolute Assignment of Leases, Lease Guaranties, Rents, Issues and Profits" recorded January 05, 2024 as Instrument No. 20240011709 of Official Records, as additional security for the payment of the indebtedness secured by the deed of trust.

23. An ALTA/NSPS survey of recent date which complies with the current minimum standard detail requirements for ALTA/NSPS land title surveys.

24. Any facts, rights, interests or claims which would be disclosed by a correct ALTA/NSPS survey.

25. Rights of parties in possession.

26. Water rights, claims or title to water, whether or not shown by the Public Records.

27. Lien for delinquent assessments in favor of Ambassador West Master Association

| | |
|---|---|
| Against: | SDRES Partners LLC, a California limited liability company |
| Amount: | $15,225.51, and any other amounts due thereunder |
| Recorded: | January 07, 2026 as Instrument No. 20260017885 of Official Records. |

## INFORMATIONAL NOTES

**ALERT - CA Senate Bill 2 imposes an additional fee of $75 up to $225 at the time of recording on certain transactions effective January 1, 2018. Please contact your First American Title representative for more information on how this may affect your closing.**

NOTE to proposed insured lender only: No Private transfer fee covenant, as defined in Federal Housing Finance Agency Final Rule 12 CFR Part 1228, that was created and first appears in the Public Records on or after February 8, 2011, encumbers the Title except as follows: None

1. According to the latest available equalized assessment roll in the office of the county tax assessor, there is located on the land a(n) Multiple Family Residence known as 244 South Orange Grove Boulevard, Pasadena, CA.

2. According to the public records, there has been no conveyance of the land within a period of twenty-four months prior to the date of this report, except as follows:

   None

3. This preliminary report/commitment was prepared based upon an application for a policy of title insurance that identified land by street address or assessor's parcel number only. It is the responsibility of the applicant to determine whether the land referred to herein is in fact the land that is to be described in the policy or policies to be issued.

4. Should this report be used to facilitate your transaction, we must be provided with the following prior to the issuance of the policy:

   A. WITH RESPECT TO A CORPORATION:
      1. A certificate of good standing of recent date issued by the Secretary of State of the corporation's state of domicile.
      2. A certificate copy of a resolution of the Board of Directors authorizing the contemplated transaction and designating which corporate officers shall have the power to execute on behalf of the corporation.
      3. A certificate of revivor and a certificate of relief from contract voidability issued by the Franchise Tax Board of the State of California.
      4. Requirements which the Company may impose following its review of the above material and other information which the Company may require.

   B. WITH RESPECT TO A CALIFORNIA LIMITED PARTNERSHIP:
      1. A certified copy of the certificate of limited partnership (form LP-1) and any amendments thereto (form LP-2) to be recorded in the public records;
      2. A full copy of the partnership agreement and any amendments;
      3. Satisfactory evidence of the consent of a majority in interest of the limited partners to the contemplated transaction;
      4. A certificate of revivor and a certificate of relief from contract voidability issued by the Franchise Tax Board of the State of California.
      5. Requirements which the Company may impose following its review of the above material and other information which the Company may require.

   C. WITH RESPECT TO A FOREIGN LIMITED PARTNERSHIP:
      1. A certified copy of the application for registration, foreign limited partnership (form LP-5) and any

amendments thereto (form LP-6) to be recorded in the public records;
2. A full copy of the partnership agreement and any amendment;
3. Satisfactory evidence of the consent of a majority in interest of the limited partners to the contemplated transaction;
4. A certificate of revivor and a certificate of relief from contract voidability issued by the Franchise Tax Board of the State of California.
5. Requirements which the Company may impose following its review of the above material and other information which the Company may require.

D. WITH RESPECT TO A GENERAL PARTNERSHIP:
1. A certified copy of a statement of partnership authority pursuant to Section 16303 of the California Corporation Code (form GP-I), executed by at least two partners, and a certified copy of any amendments to such statement (form GP-7), to be recorded in the public records;
2. A full copy of the partnership agreement and any amendments;
3. Requirements which the Company may impose following its review of the above material required herein and other information which the Company may require.

E. WITH RESPECT TO A LIMITED LIABILITY COMPANY:
1. A copy of its operating agreement and any amendments thereto;
2. If it is a California limited liability company, a certified copy of its articles of organization (LLC-1) and any certificate of correction (LLC-11), certificate of amendment (LLC-2), or restatement of articles of organization (LLC-10) to be recorded in the public records;
3. If it is a foreign limited liability company, a certified copy of its application for registration (LLC-5) to be recorded in the public records;
4. With respect to any deed, deed of trust, lease, subordination agreement or other document or instrument executed by such limited liability company and presented for recordation by the Company or upon which the Company is asked to rely, such document or instrument must be executed in accordance with one of the following, as appropriate:
   (i) If the limited liability company properly operates through officers appointed or elected pursuant to the terms of a written operating agreement, such documents must be executed by at least two duly elected or appointed officers, as follows: the chairman of the board, the president or any vice president, and any secretary, assistant secretary, the chief financial officer or any assistant treasurer;
   (ii) If the limited liability company properly operates through a manager or managers identified in the articles of organization and/or duly elected pursuant to the terms of a written operating agreement, such document must be executed by at least two such managers or by one manager if the limited liability company properly operates with the existence of only one manager.
5. A certificate of revivor and a certificate of relief from contract voidability issued by the Franchise Tax Board of the State of California.
6. Requirements which the Company may impose following its review of the above material and other information which the Company may require.

F. WITH RESPECT TO A TRUST:
1. A certification pursuant to Section 18100.5 of the California Probate Code in a form satisfactory to the Company.
2. Copies of those excerpts from the original trust documents and amendments thereto which designate the trustee and confer upon the trustee the power to act in the pending transaction.
3. Other requirements which the Company may impose following its review of the material require herein and other information which the Company may require.

G. WITH RESPECT TO INDIVIDUALS:
1. A statement of information.

The map attached, if any, may or may not be a survey of the land depicted hereon. First American Title Insurance Company expressly disclaims any liability for loss or damage which may result from reliance on

this map except to the extent coverage for such loss or damage is expressly provided by the terms and provisions of the title insurance policy, if any, to which this map is attached.

**LEGAL DESCRIPTION**

Real property in the City of Pasadena, County of Los Angeles, State of California, described as follows:

Parcel 1:

Lot 12 of TRACT NO. 63103, in the City of Pasadena, as per map recorded in Book 1369 pages 35 through 52 of Maps in the Office of the County Recorder of said County, amended pursuant to that certain Certificate of Correction recorded December 3, 2013 as Instrument No. 20131708591 of Official Records.

Parcel 2:

A Reciprocal Access Easement over those areas set out on the map shown above.

Parcel 3:

An easement for the purposes herein stated and subject to the terms and provisions of that certain consolidated Amended and Restated Driveway Easement Agreement (South Orange Grove Parcels) Recorded December 5, 2013 as Instrument No. 20131716500 of Official Records, more particularly described as set out therein.

Parcel 4:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Amended and Restated Driveway Easement Agreement (Del Mar Parcel) recorded December 5, 2013 as Instrument No. 20131716499 of Official Records, more particularly described as set out therein.

Parcel 5:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Rose Parade Grandstand Easement Agreement (Orange Grove Avenue) recorded July 21, 2005 as Instrument Nos. 05-1721787 and 05-1721788 both of Official Records, more particularly described as set out therein.

Parcel 6:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Parking Garage Easement Agreement recorded July 2, 2007 as Instrument No. 20071579026 of Official Records, more particularly described as set out therein.

Parcel 7:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Parking Easement Agreement recorded December 28, 2011 as Instrument No. 20111763712 of Official Records, more particularly described as set out therein.

APN: 5713-027-065

**NOTICE**

Section 12413.1 of the California Insurance Code, effective January 1, 1990, requires that any title insurance company, underwritten title company, or controlled escrow company handling funds in an escrow or sub-escrow capacity, wait a specified number of days after depositing funds, before recording any documents in connection with the transaction or disbursing funds. This statute allows for funds deposited by wire transfer to be disbursed the same day as deposit. In the case of cashier's checks or certified checks, funds may be disbursed the next day after deposit. In order to avoid unnecessary delays of three to seven days, or more, please use wire transfer, cashier's checks, or certified checks whenever possible.

If you have any questions about the effect of this new law, please contact your local First American Office for more details.

# Privacy Policy

**We Are Committed to Safeguarding Customer Information**
In order to better serve your needs now and in the future, we may ask you to provide us with certain information. We understand that you may be concerned about what we will do with such information - particularly any personal or financial information. We agree that you have a right to know how we will utilize the personal information you provide to us. Therefore, together with our parent company, The First American Corporation, we have adopted this Privacy Policy to govern the use and handling of your personal information.

**Applicability**
This Privacy Policy governs our use of the information which you provide to us. It does not govern the manner in which we may use information we have obtained from any other source, such as information obtained from a public record or from another person or entity. First American has also adopted broader guidelines that govern our use of personal information regardless of its source. First American calls these guidelines its *Fair Information Values*, a copy of which can be found on our website at www.firstam.com.

**Types of Information**
Depending upon which of our services you are utilizing, the types of nonpublic personal information that we may collect include:

Information we receive from you on applications, forms and in other communications to us, whether in writing, in person, by telephone or any other means;
Information about your transactions with us, our affiliated companies, or others; and
Information we receive from a consumer reporting agency.

**Use of Information**
We request information from you for our own legitimate business purposes and not for the benefit of any nonaffiliated party. Therefore, we will not release your information to nonaffiliated parties except: (1) as necessary for us to provide the product or service you have requested of us; or (2) as permitted by law. We may, however, store such information indefinitely, including the period after which any customer relationship has ceased. Such information may be used for any internal purpose, such as quality control efforts or customer analysis. We may also provide all of the types of nonpublic personal information listed above to one or more of our affiliated companies. Such affiliated companies include financial service providers, such as title insurers, property and casualty insurers, and trust and investment advisory companies, or companies involved in real estate services, such as appraisal companies, home warranty companies, and escrow companies. Furthermore, we may also provide all the information we collect, as described above, to companies that perform marketing services on our behalf, on behalf of our affiliated companies, or to other financial institutions with whom we or our affiliated companies have joint marketing agreements.

**Former Customers**
Even if you are no longer our customer, our Privacy Policy will continue to apply to you.

**Confidentiality and Security**
We will use our best efforts to ensure that no unauthorized parties have access to any of your information. We restrict access to nonpublic personal information about you to those individuals and entities who need to know that information to provide products or services to you. We will use our best efforts to train and oversee our employees and agents to ensure that your information will be handled responsibly and in accordance with this Privacy Policy and First American's *Fair Information Values*. We currently maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

**CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (02-03-10)**
**EXCLUSIONS**

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1. Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:
   (a) building; (d) improvements on the Land;
   (b) zoning; (e) land division; and
   (c) land use; (f) environmental protection.
   This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.
2. The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.
3. The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.
4. Risks:
   (a) that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;
   (b) that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;
   (c) that result in no loss to You; or
   (d) that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.
5. Failure to pay value for Your Title.
6. Lack of a right:
   (a) to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
   (b) in streets, alleys, or waterways that touch the Land.
   This Exclusion does not limit the coverage described in Covered Risk 11 or 21.
7. The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.

**LIMITATIONS ON COVERED RISKS**

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows: For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

| Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|
| Covered Risk 16: 1% of Policy Amount or $2,500.00 (whichever is less) | $10,000.00 |
| Covered Risk 18: 1% of Policy Amount or $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 19: 1% of Policy Amount or $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 21: 1% of Policy Amount or $2,500.00 (whichever is less) | $5,000.00 |

**ALTA RESIDENTIAL TITLE INSURANCE POLICY (6-1-87)**
**EXCLUSIONS**

In addition to the Exceptions in Schedule B, you are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1. Governmental police power, and the existence or violation of any law or government regulation. This includes building and zoning ordinances and also laws and regulations concerning:
   (a) and use
   (b) improvements on the land
   (c) and division
   (d) environmental protection
   This exclusion does not apply to violations or the enforcement of these matters which appear in the public records at Policy Date.
   This exclusion does not limit the zoning coverage described in Items 12 and 13 of Covered Title Risks.
2. The right to take the land by condemning it, unless:
   (a) a notice of exercising the right appears in the public records on the Policy Date
   (b) the taking happened prior to the Policy Date and is binding on you if you bought the land without knowing of the taking
3. Title Risks:
   (a) that are created, allowed, or agreed to by you

(b) that are known to you, but not to us, on the Policy Date -- unless they appeared in the public records
(c) that result in no loss to you
(d) that first affect your title after the Policy Date -- this does not limit the labor and material lien coverage in Item 8 of Covered Title Risks

4. Failure to pay value for your title.
5. Lack of a right:
   (a) to any land outside the area specifically described and referred to in Item 3 of Schedule A OR
   (b) in streets, alleys, or waterways that touch your land
   This exclusion does not limit the access coverage in Item 5 of Covered Title Risks.

**2006 ALTA LOAN POLICY (06-17-06)**
**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. a. Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

   i. the occupancy, use, or enjoyment of the Land;
   ii. the character, dimensions, or location of any improvement erected on the Land;
   iii. the subdivision of land; or
   iv. environmental protection;

   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

   b. Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   a. created, suffered, assumed, or agreed to by the Insured Claimant;
   b. not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   c. resulting in no loss or damage to the Insured Claimant;
   d. attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or
   e. resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.
6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
   a. a fraudulent conveyance or fraudulent transfer, or
   b. a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

**EXCEPTIONS FROM COVERAGE**

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) that arise by reason of:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2. Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.

5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6. Any lien or right to a lien for services, labor or material not shown by the public records.

**2006 ALTA OWNER'S POLICY (06-17-06)**
**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. a. Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

   i. the occupancy, use, or enjoyment of the Land;
   ii. the character, dimensions, or location of any improvement erected on the Land;
   iii. the subdivision of land; or
   iv. environmental protection;
   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

   b.Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   a. created, suffered, assumed, or agreed to by the Insured Claimant;
   b. not Known to the Company, not recorded in the Public Records at Date of Policy, but known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   c. resulting in no loss or damage to the Insured Claimant;
   d. attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
   e. resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
   a. a fraudulent conveyance or fraudulent transfer; or
   b. a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

**EXCEPTIONS FROM COVERAGE**

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) that arise by reason of:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2. Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6. Any lien or right to a lien for services, labor or material not shown by the public records.

**ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY (07-26-10)**
**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. a. Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

   i. the occupancy, use, or enjoyment of the Land;
   ii. the character, dimensions, or location of any improvement erected on the Land;
   iii. the subdivision of land; or
   iv. environmental protection;

   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.

   b. Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters

   a. created, suffered, assumed, or agreed to by the Insured Claimant;
   b. not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   c. resulting in no loss or damage to the Insured Claimant;
   d. attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 28); or
   e. resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law. This Exclusion does not modify or limit the coverage provided in Covered Risk 26.
6. Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11.
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11(b) or 25.
8. The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes. This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.
9. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
   a. a fraudulent conveyance or fraudulent transfer, or
   b. a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.

## 2021 ALTA LOAN POLICY (7-1-21)
## EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. a. any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
      i. the occupancy, use, or enjoyment of the Land;
      ii. the character, dimensions, or location of any improvement on the Land;
      iii. the subdivision of land; or
      iv. environmental remediation or protection.
   b. any governmental forfeiture, police, regulatory, or national security power.
   c. the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b.

   Exclusion 1 does not modify or limit the coverage provided under Covered Risk 5 or 6.
2. Any power of eminent domain. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 7.
3. Any defect, lien, encumbrance, adverse claim, or other matter:
   a. created, suffered, assumed, or agreed to by the Insured Claimant;
   b. not Known to the Company, not recorded in the Public Records at the Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   c. resulting in no loss or damage to the Insured Claimant;
   d. attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or

   e. resulting in loss or damage that would not have been sustained if consideration sufficient to qualify the Insured named in Schedule A as a bona fide purchaser or encumbrancer had been given for the Insured Mortgage at the Date of Policy.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business law.
5. Invalidity or unenforceability of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury law or Consumer Protection Law.
6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transaction creating the lien of the Insured Mortgage is a:
   a. fraudulent conveyance or fraudulent transfer;
   b. voidable transfer under the Uniform Voidable Transactions Act; or
   c. preferential transfer:
      i. to the extent the Insured Mortgage is not a transfer made as a contemporaneous exchange for new value; or
      ii. for any other reason not stated in Covered Risk 13.b.
7. Any claim of a PACA-PSA Trust. Exclusion 7 does not modify or limit the coverage provided under Covered Risk 8.
8. Any lien on the Title for real estate taxes or assessments imposed by a governmental authority and created or attaching between the Date of Policy and the date of recording of the Insured Mortgage in the Public Records. Exclusion 8 does not modify or limit the coverage provided under Covered Risk 2.b. or 11.b.
9. Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

**EXCEPTIONS FROM COVERAGE**

This policy does not insure against loss or damage and the Company will not pay costs, attorneys' fees, or expenses resulting from the terms and conditions of any lease or easement identified in Schedule A, and the following matters:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2. Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the Public Records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6. Any lien or right to a lien for services, labor or material unless such lien is shown by the Public Records at Date of Policy.
7. Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, geothermal resources, uranium, clay, rock, sand and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

**2021 ALTA OWNER'S POLICY (7-1-21)**
**EXCLUSIONS FROM COVERAGE**

The following matters are excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. a. any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
      i. the occupancy, use, or enjoyment of the Land;
      ii. the character, dimensions, or location of any improvement on the Land;
      iii. the subdivision of land; or
      iv. environmental remediation or protection.
   b. any governmental forfeiture, police, regulatory, or national security power.
   c. the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b.
   Exclusion 1 does not modify or limit the coverage provided under Covered Risk 5 or 6.
2. Any power of eminent domain. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 7.
3. Any defect, lien, encumbrance, adverse claim, or other matter:
   a. created, suffered, assumed, or agreed to by the Insured Claimant;
   b. not Known to the Company, not recorded in the Public Records at the Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   c. resulting in no loss or damage to the Insured Claimant;
   d. attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 9 or 10); or
   e. resulting in loss or damage that would not have been sustained if consideration sufficient to qualify the Insured named in Schedule A as a bona fide purchaser had been given for the Title at the Date of Policy.
4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transaction

# Exhibit 3

| | First Loan to June 3rd | First Loan 6/3/26 – 8/6/26 | Second Loan to June 3rd | Second Loan 6/3/26 – 8/6/26 | Totals |
|---|---|---|---|---|---|
| Principal | $7,914,950.71 | $0.00 | $339,891.40 | $0.00 | $8,254,842.11 |
| Accrued Interest | $353,233.87 | $94,979.40 | $11,697.93 | $4,229.76 | $464,140.96 |
| Default Interest | $218,100.85 | $112,568.18 | $12,915.87 | $4,834.01 | $348,418.91 |
| Late Charges | $66,672.73 | $5,175.69 | $0.00 | $0.00 | $71,848.42 |
| Legal Fees | $193,013.17 | $91,819.92 | $37,362.78 | $41,090.90 | $363,286.77 |
| Foreclosure Fees and Title Fees | $42,211.44 | $333.30 | $0.00 | $0.00 | 42,544.74 |
| Appraisal Fees | $10,225.00 | 0.00 | $10,225.00 | 0.00 | $20,450.00 |
| Taxes | | | | | $595,427.99 |
| HOA Fees | | | | | $29,400.00 |
| **TOTAL** | | | | | $10,190,359.90 |
| | **Receivership Fees to June 3rd** | **Receivership Fees 6/3/26 – 8/6/26** | | | |
| Receiver Fees And Costs | $0.00 | $67,087.75 | | | 67,087.75 |
| Jalmar Fees | $3,112.09 | $5,000.00 | | | $8,112.09 |
| Jalmar Maintenance | $26,868.15 | $11,694.38 | | | $38,562.53 |
| Maintenance And Repairs | $77,433.88 | $36,246.78 | | | $113,680.66 |
| **TOTAL** | | | | | $227,443.03 |
| Maintenance Repairs To Be Done | | | | | $392,296.00 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
601 S. Figueroa Street, Suite 2500, Los Angeles, CA 90017-5704

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR (A) RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (REAL PROPERTY), AND (B) RELIEF FROM TURNOVER UNDER 11 U.S.C. § 543 BY PREPETITION RECEIVER OR OTHER CUSTODIAN (with supporting declarations)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) August 25, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On (*date*) August 25, 2026, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) August 25, 2026, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**BY MESSENGER**
The Honorable Scott C. Clarkson
U.S. Bankruptcy Court, Ronald Reagan Federal Building
411 West Fourth Street
Suite 5130
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 25, 2026 | JoAn Mack | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

**SERVED VIA NOTICE OF ELECTRONIC FILING (NEF)**

- **Kyra E Andrassy** kandrassy@raineslaw.com, bclark@raineslaw.com;csantiago@raineslaw.com
- **Jessica L Bagdanov** jbagdanov@bg.law, ecf@bg.law
- **Ira David Kharasch** ikharasch@pszjlaw.com
- **Kenneth Misken** Kenneth.M.Misken@usdoj.gov
- **John A Moe** john.moe@dentons.com, kathryn.howard@dentons.com;derry.kalve@dentons.com;DOCKET.GENERAL.LIT.LOS@dentons.com
- **Byron Z Moldo** bmoldo@ecjlaw.com, aantonio@ecjlaw.com,dperez@ecjlaw.com,scarson@ecjlaw.com
- **Walter Whitman Moore** walter@licensedtosue.com, waltermooreinla@gmail.com
- **David M Poitras** dpoitras@bg.law
- **United States Trustee (SA)** ustpregion16.sa.ecf@usdoj.gov

**SERVED BY UNITED STATES MAIL**

SDRES Partners LLC
520 Newport Center Drive, Suite 480
Newport Beach, CA 92660

Joseph M. Rothberg
Levene, Neale, Bender, Yoo & Golubchik, LLP
2818 La Cienega Avenue
Los Angeles, California 90034

Cia Mackle
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd 13th Fl
Los Angeles, CA 90067-4100

Brook E Wilson
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd 13th Fl
Los Angeles, CA 90067-4100