JOHN A. MOE, II (SBN 66893)
john.moe@dentons.com
ANDREA C. CHANG (SBN 235011)
andrea.chang@dentons.com
DENTONS US LLP
601 South Figueroa Street
Suite 2500
Los Angeles, CA 90017-5704
Telephone: 213 623 9300
Facsimile: 213 623 9924

Attorneys for
Secured Creditor Preferred Bank

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

In re,

SDRES PARTNERS, LLC,

Debtor.

Case No. 8:26-bk-11744-SC

Chapter 11

**DECLARATION OF LINGCHU LIN IN SUPPORT OF PREFERRED BANK'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND FOR RELIEF FROM TURNOVER BY PREPETITION RECEIVER**

Date: September 16, 2026
Time: 1:30 p.m.
Place: Courtroom 5C – Virtual
411 West Fourth Street
Santa Ana, CA 92701

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

# DECLARATION OF LINGCHU LIN

I, Lingchu Lin, declare that if called as a witness, I could and would competently testify to the facts set forth below based on my personal knowledge of the facts contained in this Declaration, which I obtained through, among other things, a review of the business records in Creditor's custody, possession, and control, except for those matters stated on information and belief.

## I. INTRODUCTION

I am a First Vice President at Preferred Bank ("**Preferred Bank**," or "**Lender**") and I have held that position since 2017. In that role, I have personal knowledge of (i) the $8,400,000 loan originally made to Cantor Group LLC on June 8, 2017, subsequently assumed by SDRES Partners LLC; and (ii) the $400,000 loan made to Andrew Stupin on December 13, 2023, both of which loans Preferred Bank asserts are secured by real property generally referred to as 210 South Orange Grove Boulevard, Pasadena, California 91105 (the "**210 Property**" and 244 & 248 Orange Grove Boulevard, Pasadena, California 91105 (the "**244/248 Property**," and together with the 210 Property, collectively, the "**Properties**").

I make this declaration in support of *Preferred Bank's Notice Of Motion And Motion For Relief From The Automatic Stay Under U.S.C. § 362* (*with Supporting Declarations*) ("*Real Property*").

In the regular performance of my duties, I am familiar with the business records maintained by Preferred Bank for the purposes of its loan files. Pursuant to Preferred Bank's policies and procedures, these records (which include data compilations, electronically imaged documents, and other documents and records) are made at or near the time by, or from information provided by, persons with knowledge of the activity and transactions reflected in such records and are kept in the ordinary course of business activity conducted regularly by Preferred Bank. The information recorded includes documents and information associated with the origination of the loans, including but not limited to the loan agreements and any

additional or related agreements, information on assets provided by borrowers in connection with the issuance of the given loans, information on payments from borrowers, and information related to contact with borrowers. As part of the regular course of Preferred Bank's business, it maintains images of documents related to loan origination in its document database. I know that pursuant to Preferred Bank's policies and procedures, images of documents are scanned into Preferred Bank's document database without alteration at or near the time they are generated or received. It is a regular practice of Preferred Bank to maintain these records. In connection with making this Declaration, I have personally examined these records that are maintained at Preferred Bank.

Preferred Bank filed (a) *Proof of Claim No. 4* on June 26, 2026, asserting a secured claim of $8,951,321.99, comprising a first position priority perfected security interest in the Properties and (b) *Amended Proof of Claim No 2* on July 2, 2026, asserting a total secured claim of approximately $394,792.62 comprising a second position priority perfected security interest in the Properties. The two claims *then* totaled approximately $9,346,114.61.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

## II. PREFERRED BANK'S FIRST-PRIORITY SECURITY INTEREST

On or about June 8, 2017, Preferred Bank extended a commercial real estate loan (the "**First Priority Loan**") in the original principal amount of $8,400,000 to Cantor Group LLC ("**Cantor**"), guaranteed by Andrew Stupin ("**Stupin**"). The First Priority Loan is secured by deeds of trust on the "Properties," in accordance with the following documents:

### A. THE $8,400,000 LOAN

1. *Promissory Note* dated June 8, 2017, a copy of which is attached as Exhibit "A" (together with any and all amendments thereto or modifications thereof, the "**Promissory Note**"), executed by the Cantor Group, LLC ("**Cantor**") in favor of Lender in the original principal amount



138088138

of Eight Million Four Hundred Thousand and No/100 Dollars ($8,400,000.00).

2. *Loan Agreement* dated June 8, 2017, related to the Promissory Note, a copy of which is attached as Exhibit "B" (together with any and all amendments and extensions thereto or modifications thereof, the "**Loan Agreement**") executed by and between Cantor and Lender.

**B. <u>PREFERRED BANK'S FIRST PRIORITY PERFECTED SECURITY INTEREST IN THE PROPERTIES</u>**

3. *Deed of Trust*, *Assignment of Rents*, *Security Agreement* and *Fixture Filing* dated June 8, 2017, a copy of which is attached as Exhibit "C" (the "**210 Deed of Trust**"), executed by Cantor in favor of Lender, recorded on June 16, 2017, as Instrument No. 20170671620, in the Official Records of Los Angeles County, California, encumbering the 210 Property.

4. *Absolute Assignment of Leases, Lease Guaranties, Rents, Issues and Profits* dated June 8, 2017, a copy of which is attached as Exhibit "D" (the "**210 Assignment of Leases**"), executed by Cantor in favor of Lender, recorded on June 16, 2017, as Instrument No. 20170671621, in the Official Records of Los Angeles County, California, encumbering the 210 Property.

5. *Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing* dated June 8, 2017, a copy of which is attached as Exhibit "E" (the "**244/248 Deed of Trust**"), executed by Cantor in favor of Lender, recorded on June 16, 2017, as Instrument No. 20170671625, in the Official Records of Los Angeles County, California, encumbering the 244/248 Property.

6. *Absolute Assignment of Leases, Lease Guaranties, Rents, Issues and Profits* dated June 8, 2017, a copy of which is attached as Exhibit "F" (the "**244/248 Assignment of Leases**"), executed by Cantor in favor of Lender, recorded on June 16, 2017, as Instrument No. 20170671626, in the Official

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

Records of Los Angeles County, California, encumbering the 244/248 Property.

7. *Continuing Guaranty* dated June 8, 2017, a copy of which is attached as Exhibit "G," executed by Stupin in favor of Preferred Bank (together with any and all amendments and extensions thereto or modifications thereof), pursuant to which Cantor's indebtedness and obligations in connection with the Promissory Note and the Loan Agreement was and is guaranteed by Stupin as guarantor..

8. *UCC-1 Financing Statement* securing obligations due from Cantor to Preferred Bank, filed with the California Secretary of State on June 27, 2017 as File No. 20170712458, as amended and filed on November 29, 2017 as File No. 1776187697, and recorded in the Official Records of Los Angeles County on June 27, 2017 as Instrument No. 20170712457, copies of which are attached collectively as Exhibit "H."

## C. <u>ASSUMPTION OF LOAN BY SDRES PARTNERS LLC</u>

Pursuant to an "Assumption Agreement" dated June 16, 2017, SDRES Partners LLC ("**SDRES**") assumed all of Cantor's indebtedness and obligations to Lender under and in connection with the First Priority Loan and the loan documents, in accordance with the following documents:

9. *Assumption Agreement* ("**Assumption Agreement**") dated June 16, 2017, by and Cantor, Stupin, and SDRES Partners LLC ("**SDRES**"), a copy of which is attached as Exhibit "I," whereby Lender consented to the transfer of 100% of Cantor's interest in the Properties to SDRES and SDRES assumed all indebtedness and obligations under the Loan Documents.

10. *Memoranda of Assumption Agreements,* one memorandum recorded for the 210 Property on June 16, 2017, as Instrument No. 20170671623, and a second memorandum recorded for the 244/248 Property on June 16, 2017, as Instrument No. 20170671628, both of which were

recorded in the Official Records of Los Angeles County, California, a copy of each of which are attached collectively as Exhibit "J," that confirms of record the Assumption Agreement.

* * *

**D. <u>MODIFICATIONS AND EXTENSIONS</u>**

The First Priority Loan was subsequently modified and extended multiple times, in accordance with the following documents:

11. The *Amended Restated Promissory Note*, dated March 25, 2019, executed by SDRES in favor of Lender, a copy of which is attached as Exhibit "K" confirming the obligation of SDRES to Lender.

12. The *Modification Of Deed Of Trust And Amendment To Loan Documents*, dated March 25, 2019 (the "**2019 Modification**"), executed by SDRES in favor of Lender, confirming that the Properties are security for the obligation of SDRES to Lender, a copy of which is attached as Exhibit "L."

13. *Memoranda Of Modifications Of Deeds of Trust And Amendment To Loan Documents,* one memorandum recorded for the 210 Property on May 29, 2019, as Instrument No. 2019048719 and a second memorandum recorded for the 244/248 Property, as Instrument No. 20190487920, both of which were recorded in the Official Records of Los Angeles County, California, a copy of each of which are attached collectively as Exhibit "M," that confirms of record the 2019 Modification.

14. *Payment Deferral Agreement and Limited Waiver* dated May 20, 2020, executed by and between SDRES, Stupin and Lender, a copy of which is attached as Exhibit "N," whereby, among other things, the payments due May 8, 2020 and June 8, 2020, were deferred, with interest from the deferred payments due Preferred Bank starting February 8, 2021 and waiving defaults then existing.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

15. *Extension Agreement* dated May 24, 2022, executed by and between SDRES, Stupin and Lender, whereby, among other things, the maturity date of the Loan was extended to September 8, 2022, a copy of which is attached as Exhibit "O."

16. *Second Extension Agreement* dated September 7, 2022, executed by and between SDRES, Stupin and Lender, whereby, among other things, the maturity date of the Loan was extended to March 8, 2023, a copy of which is attached as Exhibit "P."

17. *Third Extension Agreement* (the "**Third Extension**") dated March 14, 2023 executed by and between SDRES, Stupin and Lender, whereby, among other things, the maturity date of the Loan was extended to July 8, 2023, a copy of which is attached as Exhibit "Q."

18. *Fourth Extension Agreement* dated June 28, 2023, executed by and between SDRES, Stupin and Lender, whereby, among other things, the maturity date of the Loan was extended to November 8, 2023, a copy of which is attached as Exhibit "R."

19. *Fifth Extension Agreement and Amendment to Loan Documents* (the "**Fifth Extension**") dated December 13, 2023, executed by and between SDRES, Stupin and Lender , whereby, among other things, the maturity date of the Loan was extended to September 8, 2026, and interest rate and repayment terms were modified, a copy of which are attached hereto as Exhibit "S."

20. *Memoranda Of Fifth Extension Agreement and Amendment to Loan Documents*, one memorandum recorded for the 210 Property on January 10, 2024, as Instrument No. 20240020404, and a second memorandum for the 244/248 Property recorded on January 10, 2024, as Instrument No. 20240020417, both of which were recorded in the Official Records of Los

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

Angeles County, California, a copy of each of which are attached collectively as Exhibit "T," that confirm of record the Fifth Extension.

21. *Third Amendment to Loan Documents* dated September 10, 2024, executed by and between SDRES, Stupin and Lender, whereby, among other things, the interest rate under the Promissory Note was modified to a fixed rate of six and three-quarters percent (6.75%), a copy of which is attached as Exhibit "U."

22. *Memoranda Of Third Amendment To Loan Documents,* one memorandum recorded for the 210 Property on October 9, 2024, as Instrument No. 20240688400, and a second memorandum recorded for the 244/248 Property on October 9, 2024, as Instrument No. 20240688406, both of which were recorded in the Official Records of Los Angeles County, California, a copy of each of which are attached collectively as Exhibit "V."

* * *

## E. <u>SECURITY INTEREST IN DEPOSITORY ACCOUNT</u>

The First Priority Loan was also secured with a depository account, in accordance with the following document:

23. *Security Agreement (Assignment of Deposit Account* ("**Assignment of Deposit Account**") dated March 14, 2023, a copy of which is attached as Exhibit "W," executed by and between SDRES and Lender, pursuant to which SDRES's assigned, pledged, and transferred to Lender all of Borrower's right, title, and interest in and to that certain deposit account maintained at Preferred Bank in the name of SDRES, Account No. 1022431 (the "Payment Reserve Account" defined in the Third Extension, the "**Deposit Account**"), together with all monies or proceeds due or to become due under said Deposit Account, as collateral security for all indebtedness, liabilities, and obligations owing to Lender by Borrower under the Loan Agreement and the Note.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

The Assignment of Deposit Account expressly provides that the Deposit Account is a "blocked account, accessible only to Lender" and that SDRES "shall not have the right to withdraw funds from the Deposit Account during the term of the Loan without the express, prior written consent of Lender, which Lender may give or withhold in its sole and absolute discretion." The Fifth Extension reaffirms these terms and further provides that "[u]pon the occurrence of any "Event of Default," Lender may withdraw funds from the Deposit Account to pay any amounts of principal and interest due and unpaid under the Note, in Lender's sole and absolute opinion and judgment, without further authorization on the part of Borrower."

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

Preferred Bank is the depository institution at which the Deposit Account is maintained and is also the secured party. As the controlling secured party and depository institution, Preferred Bank asserts a first-priority perfected security interest in the Deposit Account, dated March 14, 2023, whereby Borrower assigned, pledged, and transferred to Preferred Bank all of SDRES's right, title, and interest in and to that Deposit Account maintained at Preferred Bank in the name of "SDRES Partners LLC," Account No. 1022431, together with all monies or proceeds due or to become due under said account, as collateral security for all indebtedness owed to Preferred Bank. SDRES deposited the sum of $220,000.00 into the Deposit Account from SDRES's own funds, which amount remains in the Deposit Account.

## F. <u>SUMMARY AND REVIEW OF LOAN TRANSACTION</u>

The Loan Agreement, the Promissory Note, the 210 Deed of Trust, the 244/248 Deed of Trust, the 210 Assignment of Leases, the 244/248 Assignment of Leases, the UCC-1 Financing Statements, the Assumption Agreement, the Assignment of Depository Account, and all modifications and extensions described above, together with all other documents and instruments executed in connection with the First Priority Loan, are referred to herein collectively as the "**First**

**Priority Loan Documents**," pursuant to which SDRES granted to and in favor of Lender a first priority security interest in and lien upon the Properties to secure, without limitation, payment and performance of the indebtedness and obligations under and in connection with the Promissory Note and Loan Agreement.

In summary, by reason of the First Priority Loan Documents, Preferred Bank asserts that it holds a first position, senior priority perfected security interest and assignment of rents with respect to the Properties and all proceeds thereof and in the Deposit Account, as security for all obligations that originated with the Promissory Note and Loan Agreement.

### G. DEFAULT

The Loan matured when it was **accelerated on December 10, 2025**, due to default in making the monthly payment that was due on November 10, 2025. Accordingly:

24. Preferred Bank issued on December 10, 2025 a "Demand regarding $8,400,000 loan made by Preferred Bank to SDRES Partners LLC, a copy of which letter demand is attached as Exhibit "X," declaring all amounts due and payable on the First Priority Loan.

In addition to a payment default, there were multiple additional defaults under the Loan Documents, including: (a) failure to maintain the Properties in good condition and repair; (b) failure to provide required financial statements to Lender; (c) failure to meet the required Debt Service Coverage Ratio; (d) failure to pay property taxes, resulting in delinquencies which I am informed and believe -- based on a review of Preliminary Title Reports attached to the concurrently filed Motion For Relief From Stay -- are now not less than $595,427.99 for 2023, 2024, and 2025, plus accruing penalties (for all three Properties); and (e) multiple pending actions against the Guarantor.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

### H. THE COMPLAINT AND THE APPOINTMENT OF A RECEIVER

On February 5, 2026, Preferred filed a "Verified Complaint" (Preferred Bank v. SDRES Partners LLC, Case No. 26NNCV00887) for specific performance for appointment of receiver, injunctive relief, and declaratory relief.

On March 10, 2026, the Court appointed Byron Z. Moldo as receiver over the Properties. As set forth in the documents filed in support of the appointment of a receiver, the receiver was appointed because of the deplorable condition of the Properties.

## III. PREFERRED BANK'S SECOND-PRIORITY SECURITY INTEREST

In addition to the foregoing first-priority security interest, on December 13, 2023, Preferred Bank originated a second loan in the principal amount of $400,000 (the "**Second Priority Loan**") to Stupin, secured by a deed of trust executed by the SDRES on the Properties, in accordance with the following documents:

### A. THE $400,000 LOAN

25. *Promissory Note* dated December 13, 2023, a copy of which is attached as Exhibit "Y" (together with any and all amendments thereto or modifications thereof, the "**Second Promissory Note**"), executed by Stupin in favor of Lender in the original principal amount of Four Hundred Thousand and No/100 Dollars ($400,000.00).

26. *Loan Agreement* dated December 13, 2023, a copy of which is attached as Exhibit "Z," related to the Second Promissory Note (together with any and all amendments and extensions thereto or modifications thereof, the "**Second Loan Agreement**") executed by Stupin in favor of Lender, providing for a non-revolving line of credit for short-term capital for business investments.

27. *Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing* dated December 13, 2023 (the "**Second Priority Deed of**

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

**Trust**"), a copy of which is attached as Exhibit "AA," executed by SDRES in favor of Lender, recorded on January 5, 2024, as Instrument No. 20240011708 in the Official Records of Los Angeles County, California, securing repayment of the Second Promissory Note and Second Loan Agreement with the Properties. The Second Priority Deed of Trust is junior and subordinate to the $8,400,000 first-priority 210 Deed of Trust and the 244/248 Deed of Trust, both previously recorded on June 16, 2017.

28. *Secured Continuing Guaranty*, dated December 13, 2023, from Borrower to Lender, a copy of which is attached as Exhibit CC" (together with any and all amendments thereto or modifications thereof, the "**Secured Guaranty**"), guaranteeing payment and performance of Stupin's obligations under the Second Note and Second Loan Agreement.

29. *Absolute Assignment of Leases, Lease Guaranties, Rents, Issues and Profits* (the "**Second Assignment of Leases**") dated December 13, 2023, a copy of which is attached as Exhibit "BB," executed by SDRES in favor of Preferred Bank, recorded on January 5, 2024, as Instrument No. 20240011709, in the Official Records of Los Angeles County, California.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

**B. <u>MODIFICATIONS AND EXTENSIONS OF THE $400,000 LOAN</u>**

30. The *Extension Agreement*, effective as of June 13, 2025, a copy of which is attached as Exhibit "DD" (the "**First Extension Agreement**"), executed by SDRES, as guarantor, which states that the "Loan was and is guaranteed by Guarantor [SDRES] pursuant to that Secured Continuing Guaranty dated December 13, 2023, executed by Guarantor in favor of Lender . . .," and that the "Guaranty is secured by . . . that certain (1) Deed of Trust . . . dated December 13, 2023 . . . executed by Guarantor . . . in favor of Lender." The Extension Agreement reaffirmed the "obligations, indebtedness

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

and liability of . . . Guarantor . . . to Lender . . . ." The maturity date was extended to August 13, 2025.

31. The *Loan Modification Agreement*, effective as of August 13, 2025, a copy of which is attached as Exhibit "EE" (the "**Loan Modification Agreement**") executed by SDRES as Guarantor, which states that the "performance of Borrower's indebtedness and obligations in connection with the Loan was and is guaranteed by Guarantor . . . ," and that "the Guaranty is secured by . . . Deed of Trust . . . executed by Guarantor . . . ." The maturity date was extended to December 13, 2025.

* * *

The Second Promissory Note, the Second Loan Agreement, the Second Priority Deed of Trust, the Second Assignment of Leases, the First Extension Agreement, the Loan Modification Agreement, together with all other documents and instruments executed in connection with the $400,000 Loan, are referred to herein collectively as the "**Second Priority Loan Documents**."

## C. DEFAULT

The Second Priority Loan matured on December 13, 2025, and the loan was not paid off.

In addition to the payment default, there were multiple additional defaults under the Loan Documents, including: (a) failure to maintain the Properties in good condition and repair; (b) failure to provide required financial statements to Lender; (c) failure to meet the required Debt Service Coverage Ratio; and (d) failure to pay property taxes, resulting in delinquencies of now not less than $595,427.99 plus accruing penalties for 2023, 2024, and 2025 (for all three Properties). Accordingly,

32. On January 6, 2026, Preferred Bank's counsel at Dentons US LLP, sent a letter entitled "Notice of Default And Maturity," a copy of which is attached as Exhibit "FF," noting the failure to pay off the loan on the maturity date of December 13, 2026, and, that, therefore, that declaring all

amounts were now due and payable on the Second Priority Loan. The default has not been cured.

**D. <u>SUMMARY AND REVIEW OF SECOND LOAN TRANSACTION</u>**

Pursuant to the Second Priority Deed of Trust and the Second Assignment of Leases (as set forth above, with all modifications and extensions), SDRES granted to and in favor of Lender a second priority security interest in and lien upon the Properties described in the Second Priority Deed of Trust to secure, without limitation, payment and performance of the indebtedness and obligations.

The Second Priority Deed of Trust, recorded on January 5, 2024 (Instrument No. 20240011708), is junior and subordinate to Preferred's first-priority 210 Deed of Trust and the 244/248 Deed of Trust, both recorded on June 16, 2017 (Instrument Nos. 20170671620 and 20170671625).

**IV. <u>THE "LOAN AMOUNTS" DUE ON PREFERRED BANK'S LOANS</u>**

As of August 6, 2026, the outstanding amounts owed to Preferred Bank on the loan obligations, not including the receivership fees and expenses advanced by Preferred Bank, are as follows:

Under the $8,400,000 First Priority Loan:

| | |
|---|---|
| Principal | $7,914,950.21 |
| Accrued interest up to 8/6/26 | $448,213.27 |
| Default Interest to 8/6/2026 | $330,669.03 |
| Late charges to 8/6/2026 | $71,848.42 |
| Legal Fees | $284,833.09 |
| Foreclosure Fees and Title Fees | $42,544.74 |
| Appraisal Fees | $10,225.00 |
| Total | $9,103,283.76 |

Under the $400,000 Second Priority Loan:

| | |
|---|---|
| Principal | $339,891.40 |
| Accrued interest up to 8/6/26 | $15,927.69 |
| Default Interest up to 8/6/26 | $17,749.88 |
| Late charges to 8/6/2026 | $0.00 |
| Legal Fees | $78,453.68 |
| Foreclosure Fees and Title Fees | $0.00 |
| Appraisal Fees | $10,225.00 |
| Total | $462,247.65 |

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

**V. <u>THE RECEIVER'S EXPENSES</u>**

I am informed and believe based on records maintained at Preferred Bank, and the concurrently filed *Declaration of Byron Z. Moldo In Support Of Preferred Bank's Motion For Relief From* Stay, that Preferred Bank has advanced $227,444.03 in receivership related expenses (consisting of: $67,087.75 fees and expenses incurred by the Receiver, Byron Moldo; $8,112.09 in management fees incurred by the management company, Jalmar Properties; $38,562.53 in maintenance expenses paid for by the management company, Jalmar Properties; and, $113,680.66 in expenses paid to outside vendors for maintenance and repairs). Without the advances delivered to the Receiver, the receivership could not have continued to operate the Properties or pay necessary expenses. These advances further increase the secured obligation owed to Preferred Bank.

I am informed and believe based on information from the Receiver that the Receiver currently estimates that additional required maintenance and repairs will be approximately $425,286.00.

**VI. <u>TAXES AND HOA FEES</u>**

As already noted, taxes are not less than $595,427.99 plus accruing penalties, and pre-receivership HOA fees of $26,025.13.

**VII. <u>MASTER CHART</u>**

A Chart that itemizes the total amount, divided between pre and post-petition, is attached to this Declaration as Exhibit "II," and also attached to the Motion as Exhibit "3." The total encumbrances are approximately $10,414,428.56, and **rising**. In summary:

| | |
|---|---|
| $8,400,000.00 Loan | $9,103,283.76 |
| $400,000.00 Loan | $462,247.65 |
| Receivership Expenses | $227,444.03 |
| Taxes & HOA Fees | $621,453.12 |
| Total | $10,414,428.56 |

## VIII. **FORECLOSURE**

As to foreclosure:

33. On January 30, 2026, Preferred Bank caused *Notices of Default and Election to Sell Under Deed of Trust* to be recorded against the Properties in the Official Records of Los Angeles County as Instrument Nos. 20260071281 (244/248 Property) and 20260071283 (210 Property), a copy of each of which are attached collectively as Exhibit "GG." I understand that *Substitutions of Trustees* were also recorded on the same date as Instrument Nos. 20260071280 (244 Property) and 20260071282 (210 Property).

34. On May 11, 2026, Preferred Bank caused *Notices of Trustee's Sale* to be recorded against the Properties in the Official Records of Los Angeles County as Instrument Nos. 20260343596 (244/248 Property) and 20260343605 (210 Property), a copy of each of which are attached collectively as Exhibits "HH."

I understand that SDRES filed its Chapter 11 bankruptcy petition on June 3, 2026—the same day as the scheduled trustee's sale—thereby staying the foreclosure. I am informed and believe that the Debtor self-designated this case as a Single Asset Real Estate ("SARE") case on its petition.

## IX. **WAIVERS**

Both the Third Extension (Section 11(C)) and the Fifth Extension (Section 11(C)) contain express waivers of the SDRES's and Stupin's rights to any stay, including the automatic stay imposed by Section 362 of the United States Bankruptcy Code. Specifically, the Fifth Extension provides that "Borrower and Guarantor, and each of them, irrevocably consent and agree that such Stay shall automatically be lifted and released against Lender, and Lender shall thereafter be entitled to exercise all of its rights and remedies against Borrower and Guarantor, and each of them, under the Loan Documents." The agreement further states that "Borrower and Guarantor, and each of them, acknowledge that each is knowingly,

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

voluntarily, and intentionally waiving each of such party's rights to any Stay and agrees that the benefits provided to Borrower and Guarantor under the terms of this Extension Agreement are valuable consideration for such waiver."

## X. NO ADEQUATE PROTECTION PAYMENTS

No adequate protection payments have been made to Preferred Bank since the filing of the bankruptcy petition. The Debtor has not commenced making monthly payments to Preferred Bank in an amount equal to interest at the applicable non-default contract rate on the value of the Lender's interest in the Properties.

## XI. CONCLUSION

Based on my review of Preferred Bank's records and my personal knowledge, and my belief based on information from the Receiver, the aggregate claims against the Properties -- including the First Priority Loan ($9,103,283.76), the Second Priority Loan ($462,247.65), delinquent property taxes ($595,427.99), Homeowners Association Fees ($26,025.13), and receivership related fees and expenses paid by Preferred Bank ($227,444.03), all totaling approximately $10,414,428.56, together with fees, costs, receivership expenses and taxes *continuing to accrue*, and the cost of sale -- exceed the appraised value of the Properties which is $10,330,000, $5,250,000 for the 210 Property and $5,080,000 for the 244/248 Property.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 25, 2026, at Los Angeles, California.

Lingchu Lin
First Vice President, Preferred Bank

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

# Exhibit A

# PROMISSORY NOTE

$8,400,000.00 LOS ANGELES, CALIFORNIA June 8, 2017

FOR VALUE RECEIVED CANTOR GROUP LLC, a California limited liability company ("Borrower"), promises to pay to PREFERRED BANK, a California banking corporation ("Lender"), or its order, at its office located at 601 S. Figueroa Street, 29th Floor, Los Angeles, California 90017, or at such other place as the holder hereof may designate, in lawful money of the United States of America, the principal sum of Eight Million Four Hundred Thousand and No/100 Dollars ($8,400,000.00), or so much thereof as shall have been advanced and is outstanding together with interest, on the outstanding principal balance, until paid in full in accordance with the terms, conditions and provisions as hereinafter set forth in this Promissory Note (this "Note").

**LOAN AGREEMENT.** This Note is the "Note" as defined in that certain Loan Agreement (the "Loan Agreement") of even date herewith, entered into by and between Borrower and Lender, as it may be amended from time to time, and is subject to all of the terms and conditions thereof. All terms not defined herein shall have the same meaning as in the Loan Agreement. In the event of a conflict between the terms of this Note and the Loan Agreement, the terms of this Note shall prevail.

**INTEREST RATE**. Interest on the outstanding principal balance of this Note shall be computed and calculated based upon a three hundred sixty (360)-day year and actual days elapsed and shall accrue at the per annum rate (the "Note Rate") of the greater of (i) four and three-quarters of one percent (4.75%) or (ii) three-quarters of one percent (0.75%) in excess of "The Wall Street Journal Prime Rate", as the rate may change from time to time. The Wall Street Journal Prime Rate is and shall mean the variable rate of interest, on a per annum basis, which is announced and/or published in the Money Rates Section of The Wall Street Journal from time to time. The Note Rate shall be redetermined whenever The Wall Street Journal Prime Rate changes. Borrower understands and acknowledges that The Wall Street Journal Prime Rate is one of Lender's base rates, and only serves as a basis upon which effective rates of interest are calculated for loans making reference thereto and may not be the lowest of Lender's base rates. If The Wall Street Journal Prime Rate becomes unavailable during the term of this Note, Lender may designate a substitute index after notice to Borrower.

**PRINCIPAL AND INTEREST PAYMENTS**. Interest shall be due and payable monthly, in arrears, based upon the actual number of days elapsed for that monthly period, commencing on August 8, 2017, and shall continue to be due and payable, in arrears, on the same day of each calendar month thereafter until the Maturity Date (as hereinafter defined).

In addition to the payment of interest, as set forth above, commencing on July 8, 2018, and continuing on the same day of each and every calendar month thereafter until the Maturity Date, Borrower shall pay to Lender a monthly installment payment of principal in an amount equal to $15,925.06.

All payments due hereunder, including payments of principal and interest, shall be made to Lender in United States Dollars and shall be in the form of immediately available funds acceptable to the holder of this Note.

Upon the Maturity Date, the entire unpaid obligation outstanding under this Note, the Deed of Trust (as defined in the Loan Agreement), the Loan Agreement, and any other Loan Documents shall become due and payable in full.

All payments due hereunder, including payments of principal and interest, shall be made to Lender in United States Dollars and shall be in the form of immediately available funds acceptable to the holder of this Note.

**APPLICATION OF PAYMENTS**. All payments received by Lender from, or for the account of Borrower, due hereunder shall be applied by Lender, in its sole and absolute discretion, in the following manner, or in any other order or manner as Lender chooses:

a. First. To pay any and all interest due, owing and accrued;

b. Second. To pay any and all costs, advances, expenses or fees due, owing and payable to Lender, or paid or incurred by Lender, arising from or out of this Note, the Deed of Trust, the Loan Agreement, and the other Loan Documents; and

c. Third. To pay the outstanding principal balance on this Note.

All records of payments received by Lender shall be maintained at Lender's office, and the records of Lender shall, absent manifest error, be binding and conclusive upon Borrower. The failure of Lender to record any payment or expense shall not limit or otherwise affect the obligations of Borrower under this Note.

**MATURITY DATE**. On June 8, 2022 ("Maturity Date"), the entire unpaid principal balance, and all unpaid accrued interest thereon, shall be due and payable without demand or notice. In the event that Borrower does not pay this Note in full on the Maturity Date then, as of the Maturity Date and thereafter until paid in full, the interest accruing on the outstanding principal balance hereunder shall be computed, calculated and accrued on a daily basis at the Default Rate (as hereinafter defined).

**UNPAID INTEREST, CHARGES AND COSTS**. Interest, late charges, costs or expenses that are not received by Lender within ten (10) calendar days from the date such interest, late charges, costs, or expenses become due, shall, at the sole discretion of Lender, be added to the principal balance and shall from the date due bear interest at the Default Rate.

**HOLIDAY.** Whenever any payment to be made under this Note shall be due on a day other than a Business Day, including Saturdays, Sundays and legal holidays generally recognized by banks doing business in California, then the due date for such payment

shall be automatically extended to the next succeeding Business Day, and such extension of time shall in such cases be included in the computation of the interest portion of any payment due hereunder.

**NO OFFSETS OR DEDUCTIONS.** All payments under this Note shall be made by Borrower without any offset, decrease, reduction or deduction of any kind or nature whatsoever, including, but not limited to, any decrease, reduction or deduction for, or on account of, any offset, present or future taxes, present or future reserves, imposts or duties of any kind or nature, that are imposed or levied by or on behalf of any government or taxing agency, body or authority by or for any municipality, state or country. If at any time, present or future, Lender shall be compelled, by any Law, rule, regulation or any other such requirement which on its face or by its application requires or establishes reserves, or payment, deduction or withholding of taxes, imposts or duties, to act such that it causes or results in a decrease, reduction or deduction (as described above) in payment received by Lender, then Borrower shall pay to Lender such additional amounts, as Lender shall deem necessary and appropriate, such that every payment received under this Note, after such decrease, reserve, reduction, deduction, payment or required withholding, shall not be reduced in any manner whatsoever.

**DEFAULT**. Any one or more of the following events or occurrences shall constitute a default under this Note (hereinafter "Default"):

(i) Lender does not receive a payment in the amount and within the time and manner as set forth herein within ten (10) days after the same becomes due and payable; or

(ii) There shall be an Event of Default under the Loan Agreement; or

(iii) There shall be a default under any of the other Loan Documents beyond the expiration of any applicable notice and cure periods.

Upon the occurrence of a Default hereunder and during the continuance thereof, Lender may, in its sole and absolute discretion, declare the entire unpaid principal balance, together with all accrued and unpaid interest thereon, and all other amounts and payments due hereunder, immediately due and payable, without notice or demand.

**DEFAULT RATE**. From and after the occurrence of any Default in this Note whether by non-payment, maturity, acceleration, non-performance or otherwise, and until such Default has been cured, all outstanding amounts under this Note (including, but not limited to, interest, costs and late charges) shall bear interest at a per annum rate ("Default Rate") equal to eight percent (8%) over the Note Rate.

**PREPAYMENT**. The principal amount of this Note may be prepaid in whole or in part; provided, however, that written notice of prepayment is received by Lender concurrently therewith. Any such prepayment shall not result in a reamortization, deferral,

postponement, suspension, or waiver of any and all principal or other payments due under this Note.

**LATE CHARGES**. Time is of the essence for all payments and other obligations due under this Note. Borrower acknowledges that if any payment required under this Note is not received by Lender within ten (10) days after the same becomes due and payable, Lender will incur extra administrative expenses (i.e., in addition to expenses incident to receipt of timely payment) and the loss of the use of funds in connection with the delinquency in payment. Because, from the nature of the case, the actual damages suffered by Lender by reason of such administrative expenses and loss of the use of funds would be impracticable or extremely difficult to ascertain, Borrower agrees that five percent (5%) of the amount of the delinquent payment, together with interest accruing on the entire principal balance of this Note at the Default Rate, as provided above, shall be the amount of damages which Lender is entitled to receive upon such breach, in compensation therefor. Therefore, Borrower shall, in such event, without further demand or notice, pay to Lender, as Lender's monetary recovery for such extra administrative expenses and loss of use of funds, liquidated damages in the amount of five percent (5%) of the amount of the delinquent payment (in addition to interest at the Default Rate). The provisions of this paragraph are intended to govern only the determination of damages in the event of a breach in the performance of Borrower to make timely payments hereunder. Nothing in this Note shall be construed as in any way giving Borrower the right, express or implied, to fail to make timely payments hereunder, whether upon payment of such damages or otherwise. The right of Lender to receive payment of such liquidated and actual damages, and receipt thereof, are without prejudice to the right of Lender to collect such delinquent payments and any other amounts provided to be paid hereunder or under any of the Loan Documents, or to declare a default hereunder or under any of the Loan Documents.

**SECURITY AND ACCELERATION**. This Note is secured by, among other things, the Property, pursuant to the Deed of Trust. The Deed of Trust contains, among other provisions, a provision for the immediate acceleration of this Note upon the occurrence of any Default, any event of default under the Deed of Trust, or any sale, transfer, conveyance, encumbrance or alienation of Borrower's right, title or interest (or any portion thereof) in the Property. Reference is made to the Deed of Trust for the specific provisions thereof.

**COSTS AND EXPENSES**. Borrower hereby agrees to pay any and all costs or expenses paid or incurred by Lender by reason of, as a result of, or in connection with the enforcement of this Note, the Deed of Trust or any other Loan Documents, including, but not limited to, any and all attorneys' fees and related costs when such costs or expenses are paid or incurred in connection with the enforcement of this Note, the Deed of Trust and the other Loan Documents, or any of them, the protection or preservation of the collateral or security for this Note, or any other rights, remedies or interests of Lender, whether or not suit is filed. Borrower's agreement to pay any and all such costs and expenses includes, but is not limited to, costs and expenses incurred in or in connection with any bankruptcy proceeding in enforcing any judgment obtained by Lender and in

connection with any and all appeals therefrom, and in connection with the monitoring of any bankruptcy proceeding and its effect on Lender's rights and claims for recovery of the amounts due hereunder, any proceeding concerning relief from the automatic stay, use of cash collateral, proofs of claim, approval of a disclosure statement or confirmation of, or objections to confirmation of, any plan of reorganization. All such costs and expenses are immediately due and payable to Lender by Borrower whether or not demand therefor is made by Lender.

**WAIVERS**. Borrower hereby waives grace, diligence, presentment, demand, notice of demand, dishonor, notice of dishonor, protest, notice of protest, any and all exemption rights against the indebtedness evidenced by this Note and the right to plead any statute of limitations as a defense to the repayment of all or any portion of this Note, and interest thereon, to the fullest extent allowed by law, and all compensation of cross-demands pursuant to California Code of Civil Procedure Section 431.70. No delay, omission or failure on the part of Lender in exercising any right or remedy hereunder shall operate as a waiver of such right or remedy or any other right or remedy of Lender.

**MAXIMUM LEGAL RATE.** This Note is subject to the express condition that at no time shall Borrower be obligated, or required, to pay interest on the principal balance at a rate which could subject Lender to either civil or criminal liability as a result of such rate being in excess of the maximum rate which Lender is permitted to charge. If, by the terms of this Note, Borrower is, at any time, required or obligated to pay interest on the principal balance at a rate in excess of such maximum rate, then the rate of interest under this Note shall be deemed to be immediately reduced to such maximum rate and interest payable hereunder shall be computed at such maximum rate and any portion of all prior interest payments in excess of such maximum rate shall be applied, or shall retroactively be deemed to have been payments made, in reduction of the principal balance, as the case may be.

**AMENDMENT; GOVERNING LAW.** This Note may be amended, changed, modified, terminated or canceled only by a written agreement signed by the party against whom enforcement is sought for any such action. This Note shall be governed by, and construed under, the Laws of the State of California.

**AUTHORITY.** Borrower, and each person executing this Note on Borrower's behalf, hereby represents and warrants to Lender that, by its execution below, Borrower has the full power, authority and legal right to execute and deliver this Note and that the indebtedness evidenced hereby constitutes a valid and binding obligation of Borrower without exception or limitation. In the event that this Note is executed by more than one person or entity, the liability hereunder shall be joint and several. Any married person who is obligated on this Note, directly or indirectly, agrees that recourse may be had to such person's separate property in addition to any and all community property of such person.

**USA PATRIOT ACT NOTICE**. Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account or obtains

a loan. Lender will ask for Borrower's legal name, address, tax ID number or social security number and other identifying information. Lender may also ask for additional information or documentation or take other actions reasonably necessary to verify the identity of Borrower, Guarantor or other related persons.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, Borrower has executed this Note as of the day and year first above written.

**BORROWER:**

CANTOR GROUP LLC,
a California limited liability company

By: ______________________
Name: Deba Shyam
Its: General Manager

# Exhibit B

# LOAN AGREEMENT

This Loan Agreement (the "Agreement") is made as of June 8, 2017, by and between CANTOR GROUP LLC, a California limited liability company ("Borrower"), on the one hand, and PREFERRED BANK, a California banking corporation ("Lender"), on the other hand.

## RECITALS

A. Borrower has applied to Lender for a loan in the maximum principal amount of Eight Million Four Hundred Thousand and No/100 Dollars ($8,400,000.00) ("Loan") for the purpose of financing, in part, the acquisition of the Property (as hereinafter defined).

B. Lender has agreed to make the Loan to Borrower for such purpose upon the terms and conditions set forth herein.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

## ARTICLE I
## DEFINITIONS AND INTERPRETATIONS

1.1 DEFINITIONS –

For purposes of this Agreement, the following terms shall have the following meanings:

The definitions set forth in the Recitals or elsewhere in this Agreement are incorporated herein by reference.

"210 Orange Grove Assignment of Leases" shall mean the Absolute Assignment of Leases, Lease Guaranties, Rents, Issues and Profits duly executed and delivered to Lender by Borrower, assigning to Lender all present and future leases, subleases, rents, and concession rights, if any, and all related rights and interests of Borrower thereunder, affecting the 210 Orange Grove Property, or any part thereof, and in form and content acceptable to Lender in its sole opinion and judgment, and shall include delivery to Lender of the executed copies of each of said leases.

"210 Orange Grove Deed of Trust" shall mean the Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing duly executed and acknowledged by Borrower for the benefit of Lender, as beneficiary, and any and all supplements, modifications or amendments thereto, to secure the Loan and encumbering Borrower's fee interest in the 210 Orange Grove Property and other assets and rights as therein provided, together with all such riders and exhibits thereto as Lender shall require.

"210 Orange Grove Property" shall mean the real property described in Exhibit "A-1" hereto and in the 210 Orange Grove Deed of Trust and all present and future improvements thereon and appurtenances thereto.

"244 Orange Grove Assignment of Leases" shall mean the Absolute Assignment of Leases, Lease Guaranties, Rents, Issues and Profits duly executed and delivered to Lender by Borrower, assigning to Lender all present and future leases, subleases, rents, and concession rights, if any, and all related rights and interests of Borrower thereunder, affecting the 244 Orange Grove Property, or any part thereof, and in form and content acceptable to Lender in its sole opinion and judgment, and shall include delivery to Lender of the executed copies of each of said leases.

"244 Orange Grove Deed of Trust" shall mean the Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing duly executed and acknowledged by Borrower for the benefit of Lender, as beneficiary, and any and all supplements, modifications or amendments thereto, to secure the Loan and encumbering Borrower's fee interest in the 244 Orange Grove Property and other assets and rights as therein provided, together with all such riders and exhibits thereto as Lender shall require.

"244 Orange Grove Property" shall mean the real property described in Exhibit "A-2" hereto and in the 244 Orange Grove Deed of Trust and all present and future improvements thereon and appurtenances thereto.

"Advance" shall mean any advance or disbursement of Loan Proceeds by Lender pursuant to this Agreement.

"Affiliate" shall mean any Person, directly or indirectly, related to, in control of, controlled by, or under the common control of, Borrower, or of a successor thereof, whether through merger, consolidation, transfer of assets or otherwise.

"Agreement" shall mean this Loan Agreement, as originally executed and as it may from time to time be supplemented, extended, renewed, modified, or amended.

"Agreement To Furnish Insurance" shall mean the Agreement To Furnish Insurance duly executed by Borrower in form and content as required by Lender and as it may from time to time be supplemented, modified or amended.

"Anti-Money Laundering Laws" shall mean the USA Patriot Act of 2001, the Bank Secrecy Act, as amended through the date hereof, Executive Order 1 3324— Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism, as amended through the date hereof, and other federal laws and regulations and executive orders administered by OFAC which prohibit, among other things, the engagement in transactions with, and the provision of services to, certain foreign countries, territories, entities and individuals (such individuals include specially designated nationals, specially designated narcotics traffickers and other parties subject to OFAC sanction and embargo programs), and such additional laws and programs administered by OFAC which prohibit dealing with individuals or entities in certain

countries regardless of whether such individuals or entities appear on any of the OFAC lists.

"Appraisal" shall mean an appraisal of the Property, or any portion thereof, performed and prepared for Lender at Borrower's sole expense by a duly licensed or certified appraiser designated by Lender and possessing all qualifications required by Lender and applicable Laws, setting forth the appraiser's opinion and determination of the fair market value of the Property; said Appraisal shall be prepared in full narrative form meeting all requirements and approaches to value as shall be necessary or appropriate in order to comply with all customary and generally accepted appraisal standards within the appraisal industry and in accordance with Lender's requirements, and to Lender's satisfaction and all applicable Laws governing Lender's operations.

"Approved Lease" shall mean a lease between Borrower and any bona fide unrelated third party tenant for all or any portion of the Property at the prevailing market rate for similar space in the area where the Property is located and entered into by Borrower with tenants in the ordinary course of Borrower's business and is the result of a negotiation on an arms' length basis.

"Assets" shall have the meaning usually given that term in accordance with GAAP, but shall exclude sums due to Borrower from Affiliates (other than subsidiaries).

"Assignment of Leases" shall mean, individually and collectively, the 210 Orange Grove Assignment of Leases and the 244 Orange Grove Assignment of Leases.

"Business Day" shall mean Monday through Friday, excluding Saturdays, Sundays and any day of the year on which banks are required or authorized to close in California.

"Collateral" shall mean all real and personal property of Borrower, or others, in which Lender has been and may hereafter be granted a lien, assignment or security interest to secure payment and performance of Borrower's obligations under the Loan.

"Continuing Guaranty" shall mean that certain Continuing Guaranty duly executed by Guarantor, unconditionally and irrevocably guaranteeing payment and performance of Borrower's obligations to Lender in connection with the Loan, as such agreement or agreements are originally executed and as such agreement or agreements may from time to time be reaffirmed, supplemented, modified or amended.

"Debt Service" shall mean all scheduled payments of principal and interest payable by Borrower to Lender under the Note.

"Debt Service Coverage Ratio" shall mean the ratio of (a) Net Operating Income to (b) Debt Service, for the period measured.

"Deed of Trust" shall mean, individually and collectively, the 210 Orange Grove Deed of Trust and the 244 Orange Grove Deed of Trust.

"Environmental Indemnity" shall mean that certain Hazardous Substances Indemnity Agreement duly executed by Borrower, Guarantor, and such other Persons as Lender may require, pursuant to which said party(ies) shall indemnify and defend Lender from and against any loss or liability, direct or indirect, with respect to the presence or release of any hazardous or toxic material in, on, about or under the Property.

"Event of Default" shall mean any of those events specified in Article V hereof.

"FF&E" shall mean all furniture, fixtures, machinery, tools, inventory and equipment owned by Borrower and used, or intended to be used, in connection with the Property.

"Financial Statements" shall mean balance sheets, income statements, reconciliations of capital structure, statements of sources and applications of funds, and income tax returns, all prepared in accordance with GAAP, consistently applied.

"Financing Statements" shall mean one or more financing statements (form UCC-1) given by Borrower to Lender, if required by Lender, covering the FF&E and all other personal property and/or fixtures included in the Property.

"Fiscal Year" shall mean Borrower's fiscal year, ending on December 31 of each calendar year.

"GAAP" shall mean generally accepted accounting principles consistently maintained and applied throughout the period indicated and consistent with the prior financial practice of the Person providing such financial information.

"Governmental Agency" shall mean any governmental or quasi-governmental agency, authority, board, bureau, commission, department, instrumentality or public body, court, administrative tribunal, or public utility.

"Gross Income" shall mean, for any given time, the total of all rentals and other income which are received by Borrower pursuant to leases or other agreements of all or any portion of the Property, including, without limitation, percentage rentals and rentals representing pass-throughs of operating costs or cost increases to the applicable tenants; provided, however, that Gross Income shall exclude any security deposits received from any of the tenants unless and until the same are applied to rental obligations of the tenant in accordance with the terms of the applicable lease. All rentals which are to be included in Gross Income shall be computed on a cash basis and shall include all amounts actually received.

"Guarantor" shall mean Andrew Stupin, an individual.

"Hazard Insurance Disclosure" shall mean the Hazard Insurance Disclosure duly executed by Borrower in form and content as required by Lender.

"Insurance Policies" shall mean any of the policies of insurance specified in Section 4.1 hereof.

"Laws" shall mean, collectively, all federal, state, and local laws, rules, regulations, ordinances, and codes.

"Loan" shall mean the loan described in the Recitals and in Article III of this Agreement.

"Loan Closing" shall mean the date on which the Loan closes in accordance with Section 3.2 of this Agreement.

"Loan Closing Costs" shall mean all title insurance premiums and recording charges, tax service contract fees, and all out-of-pocket fees and costs incurred by Lender in connection with the appraisal, inspection, assessment, evaluation, insuring, and testing of the Property, and all fees and costs incurred by Lender in connection with the negotiation and preparation of the Loan Documents, including attorneys' fees, and closing of the Loan as herein provided, including, but without limitation, the Loan Fee.

"Loan Documents" shall mean this Agreement, the Note, Deed of Trust, Financing Statements, Assignment of Leases, Continuing Guaranty, Environmental Indemnity, Agreement to Furnish Insurance, Hazard Insurance Disclosure, and such other documents as Lender may require Borrower to give to Lender as evidence of and/or security for and/or guaranty of the Loan.

"Loan Fee" shall mean the sum of $84,000.00 payable by Borrower to Lender for the granting of the Loan.

"Loan Proceeds" shall mean funds advanced by Lender to Borrower for purposes set forth in Article III hereof.

"Material Adverse Effect" shall mean any act, event, condition or circumstance which could materially and adversely affect (i) the business, operations, condition (financial or otherwise), performance, prospects, or assets of Borrower or Guarantor, (ii) the ability of Borrower or Guarantor to perform its obligations under any Loan Document to which it is a party or by which it is bound, or (iii) Borrower's interest in, or the value, perfection or priority of Lender's security interest in the Property.

"Maturity Date" shall mean June 8, 2022, as set forth in the Note, at which time the entire principal balance of the Loan, plus accrued interest thereon, is and shall be due and payable as provided in this Agreement and the Note, subject to acceleration as provided in the Loan Documents.

"Net Operating Income" shall mean, at any given time, the amount by which Gross Income exceeds Operating Expenses.

"Note" shall mean the Promissory Note of Borrower in the amount of the Loan payable to the order of Lender, duly executed by Borrower, as required by Lender to evidence the Loan, as originally executed, and as it may from time to time be supplemented, modified or amended.

"OFAC" shall mean the United States Department of the Treasury, Office of Foreign Assets Control.

"OFAC Prohibited Person" shall mean a country, territory, individual or person (i) listed on, included within or associated with any of the countries, territories, individuals or entities referred to on The Office of Foreign Assets Control's List of Specially Designated Nationals and Blocked Persons or any other prohibited person lists maintained by governmental authorities, or otherwise included within or associated with any of the countries, territories, individuals or entities referred to in or prohibited by OFAC or any other Anti-Money Laundering Laws, or (ii) which is obligated or has any interest to pay, donate, transfer or otherwise assign any property, money, goods, services, or other benefits from the Property directly or indirectly, to any countries, territories, individuals or entities on or associated with anyone on such list or in such laws.

"Operating Expenses" shall mean, at any given time, the sum of the following expenses: (i) all taxes and assessments (including, without limitation, bond assessments) imposed on the Property (but excluding taxes and assessments which any tenant is required to pay directly to the applicable taxing authority so long as such tenant's payment of such taxes is correspondingly excluded from Gross Income); (ii) all amounts paid by Borrower on account of insurance premiums for insurance carried in connection with the Property; provided, however, that if insurance of the Property is maintained as part of a blanket policy covering the Property and other properties, the insurance premium included in this subsection shall be the premium fairly allocable to the Property; and (iii) all other expenses which are properly charged against income according to GAAP and which are incurred by Borrower with respect to the ownership and operation of the Property, including, without limitation, management expenses, cleaning expenses, leasing expenses, maintenance and repair costs, utility expenses, HVAC costs, material costs, cost of services, license fees and business taxes; provided, however, that Operating Expenses shall exclude Debt Service.

"Organizational Documents" shall mean, if Borrower, Guarantor or any other Person as Lender may require is other than a natural person, the duly filed, certified and/or executed documents or instruments evidencing or confirming the lawful formation and existence of Borrower, Guarantor and such other Persons, and all written consents and certifications required by Lender from Persons having management and/or ownership interests in Borrower, Guarantor and/or such other Persons.

"Permitted Encumbrances" shall mean only those matters and exceptions to title approved by Lender shown in the preliminary report of title and all supplements thereto of the Title Company covering the Property.

"Person" shall mean an individual, corporation, limited liability company, partnership, joint venture, trust or unincorporated organization or a Governmental Agency.

"Property" shall mean individually and collectively, the 210 Orange Grove Property and the 244 Orange Grove Property.

"SNDA" shall mean a subordination, nondisturbance and attornment agreement by a tenant on the Property, in form and content satisfactory to Lender.

"Tenant Estoppel" shall mean a tenant estoppel certificate by a tenant on the Property, in form and content satisfactory to Lender.

"Title Company" shall mean the title insurer designated by Lender, in its sole opinion and judgment, which shall issue the Title Policy.

"Title Policy" shall mean an ALTA Loan Policy (2006 Policy Form), written as such at Loan Closing and issued by the Title Company, with liability equal to the full amount of the Loan, in favor of Lender, as insured, insuring the lien of the Deed of Trust to be a valid first lien on the Property subject only to the Permitted Encumbrances. The Title Policy shall have such endorsements thereto as Lender shall require. If required by Lender, the title insurance coverage will provide for reinsurance.

1.2 ACCOUNTING TERMS – All accounting terms not specifically defined herein shall be construed in accordance with GAAP, and all financial data submitted pursuant to this Agreement shall be prepared in accordance with GAAP, unless Lender agrees to another manner of preparation.

1.3 USE OF DEFINED TERMS – Any defined terms used in the plural shall include the singular, and the masculine gender shall include the feminine and/or neuter, and such terms shall encompass all members of the relevant class.

1.4 SCHEDULES AND EXHIBITS – All schedules and exhibits to this Agreement, either as originally existing or as the same may from time to time be supplemented, modified or amended, are incorporated herein by reference.

1.5 REFERENCES – Any reference to this Agreement or any other document shall include such document, both as originally executed, and as it may from time to time be amended, supplemented and modified. References herein to Articles, Sections and Exhibits shall be construed as references to this Agreement unless a different document is named.

1.6 OTHER TERMS – The term "document" is used in its broadest sense and encompasses agreements, certificates, opinions, consents, instruments and other written material of every kind. The terms "including" and "include" shall mean "including (include), without limitation."

## ARTICLE II
## REPRESENTATIONS AND WARRANTIES OF BORROWER

Borrower hereby represents, warrants and covenants to Lender as of the date of this Agreement, the date of Loan Closing and each and every date during the existence of the Loan, or any portion thereof, as the context admits or requires, that:

2.1 BORROWER'S CAPACITY – Borrower is a limited liability company, duly organized and existing under the laws of the State of California and is duly qualified to do business in California and in any state in which the nature of Borrower's business requires Borrower to be so qualified, and is lawfully empowered and possesses the capacity to enter into and carry out the provisions of this Agreement, and all Organizational Documents delivered by Borrower or which have been filed with any and all public officials are current and complete and true and complete in all material respects.

2.2 VALIDITY OF LOAN DOCUMENTS – The Loan Documents are in all respects valid and binding upon Borrower according to their terms, subject to all applicable Laws, including, without limitation, equitable principles, insolvency Laws, and other matters applying to creditors generally; provided, however, that the implementation of such Laws do not and will not affect the ultimate realization of the obligations and security afforded thereby. The execution and delivery by Borrower of and the performance by Borrower of all its obligations under the Loan Documents have been duly authorized by all necessary action and do not and will not:

2.2.1 Require any consent or approval not heretofore obtained of any other Person holding any interest in or entitled to receive any interest issued or to be issued by Borrower or otherwise; or

2.2.2 Violate any provision of the Organizational Documents or any other agreements to which Borrower is bound; or

2.2.3 Result in or require the creation or imposition of any mortgage, deed of trust, pledge, lien, security interest, claim, charge, right of others, or other encumbrance of any nature (other than under the Loan Documents) upon or with respect to any property now owned or leased or hereafter acquired by Borrower; or

2.2.4 To the best of Borrower's knowledge, violate any order, writ, judgment, injunction, decree, determination, or award of any court or of any Governmental Agency, or violate any provision of any Laws; or

2.2.5 Result in a breach of or constitute a default under, cause or permit the acceleration of any obligation owed under, or require any consent under any indenture or loan or credit agreement or any other agreement, lease, or instrument to which Borrower is a party or by which Borrower or any property of Borrower is bound or affected.

2.3 NO DEFAULT – To the best of Borrower's knowledge, Borrower is not in default beyond the expiration of any applicable notice and cure period under any order, writ, judgment, injunction, decree, determination, award, indenture, agreement, lease, or instrument of the type described in Section 2.2 above.

2.4 NO GOVERNMENTAL APPROVALS REQUIRED – To the best of Borrower's knowledge, no authorization, consent, approval, order, license, exemption

from, or filing, registration, or qualification with, any Governmental Agency is or will be required to authorize, or is otherwise required in connection with:

2.4.1 The execution, delivery and the performance by Borrower of all or any of Borrower's obligations under the Loan Documents; or

2.4.2 The creation of the liens, security interests, or other charges or encumbrances described in the Loan Documents, except that filing and/or recording with Governmental Agencies may be required to perfect such liens, security interests, or other charges or encumbrances.

2.5 TAX LIABILITY - Borrower and Guarantor have timely filed all tax returns (federal, state, and local) required to be filed and have paid all taxes shown thereon to be due and all property taxes due, including interest and penalties, if any.

2.6 FINANCIAL STATEMENTS - All Financial Statements of Borrower, Guarantor and any Persons having an interest in Borrower or Guarantor (if Borrower or Guarantor is other than a natural person) which have heretofore been submitted to Lender fairly present the financial positions of Borrower, Guarantor and of such other Persons at the respective dates of their preparation in conformity with GAAP. Since the dates of such Financial Statements, there have been no adverse changes in the financial conditions of Borrower, Guarantor and of such other Persons.

2.7 PENDING LITIGATION – There are no actions, suits, or proceedings pending or, to the knowledge of Borrower, threatened against or affecting Borrower, Guarantor or the Property, or involving the validity or enforceability of any of the Loan Documents or the priority of the lien thereof, at Law or in equity, or before or by any Governmental Agency, except actions, suits, and proceedings that are fully covered by insurance or which, if adversely determined, would not substantially impair the ability of Borrower or Guarantor to perform each and every one of their obligations under and by virtue of the Loan Documents; and to the best of Borrower's knowledge, neither Borrower nor Guarantor is in default, or has received written notice that either is in default, with respect to any order, writ, injunction, decree, or demand of any court or any Governmental Agency.

2.8 VIOLATIONS OF LAWS – To the best of Borrower's knowledge, there are no violations or notices of violations of any Laws relating to the Property or any of the Collateral.

2.9 COMPLIANCE WITH ZONING ORDINANCES AND SIMILAR LAWS – To the best of Borrower's knowledge, the Property complies with all applicable Laws and all permits and approvals issued thereunder, affecting the Property, the sale, operation, leasing or financing of the Property and the intended occupancy, use and enjoyment of the Property, including, but not limited to, applicable subdivision Laws, licenses and permits, building codes, zoning ordinances, flood disaster, environmental protection and equal employment regulations and appropriate supervising boards of fire underwriters and similar agencies. Borrower shall not seek, make or consent to any

change in the zoning, conditions of use, or any other applicable land use permits, approvals or regulations pertaining to the Property, or any portion thereof, which would constitute a violation of the warranties and representations herein contained, or would change the nature of the use or occupancy of the Property.

2.10 AVAILABILITY OF UTILITIES – To the best of Borrower's knowledge, all utility services necessary for the proper operation of the Property for its intended purposes are available at the Property.

2.11 CONDITION OF PROPERTY – To the best of Borrower's knowledge, the Property is not now damaged or injured as a result of any fire, explosion, accident, flood, or other casualty, nor subject to any action in eminent domain.

2.12 BROKERAGE COMMISSIONS - No brokerage commissions are or will be owed by Borrower in connection with the Loan, or if there are commissions due or payable, the same will be paid by Borrower. Borrower agrees to and shall indemnify and hold Lender harmless from all liability, claims, or losses arising by reason of any such brokerage commissions related to any or all acts of Borrower in connection with the Loan. This provision shall survive the repayment of the Loan and shall continue in full force and effect so long as the possibility of such liability, claims or losses exists.

2.13 ENVIRONMENTAL IMPACT STATEMENT – To the best of Borrower's knowledge, all required environmental impact statements as required by any Governmental Agency having jurisdiction over the Property have been duly filed and approved.

2.14 ACCESS - The Property fronts on a publicly maintained road or street and has both legal and practical access to the same.

2.15 SUBORDINATE FINANCING AND LEASES - Borrower will not cause there to be deeds of trust, mortgages, security agreements, liens or encumbrances on the Property or any portion thereof or interest therein. Borrower will not, without the prior written consent of Lender, enter into a lease for all or any portion of the Property, except for Approved Leases.

2.16 PRIORITY OF LIEN ON PERSONALTY - No lease, chattel mortgage, bill of sale, security agreement, financing statement, or other title retention agreement (except those executed in favor of Lender) has or will be executed by Borrower with respect to any personal property, chattel or FF&E of Borrower used in conjunction with construction, operation, or maintenance of the Property, except with respect to removable trade fixtures, inventory, and personal property of any tenant of the Property.

2.17 AIR RIGHTS – Borrower has not and will not transfer, assign, convey, hypothecate or encumber any of the air rights pertaining to the Property.

2.18 COMPLIANCE WITH ENVIRONMENTAL LAWS – Borrower will not use, store, manufacture, generate, transport to or from, or dispose of any toxic substances, hazardous materials, hazardous wastes, radioactive materials, flammable explosives, or

related material on or in connection with the Property or the business of Borrower on the Property except as otherwise permitted in the Deed of Trust in accordance with all applicable Laws. Borrower will not permit any lessee on any property to use, store, manufacture, generate, transport to or from, or dispose of any toxic substances, hazardous materials, hazardous waste, radioactive materials, flammable explosives, related material on or in connection with any property or the business on any property. ("Toxic substances," "hazardous materials," and "hazardous waste" shall include, but not be limited to, such substances, materials and wastes which are or become regulated under applicable Laws or which are classified as hazardous or toxic under applicable Laws.)

2.19 SOLVENCY – Borrower is and shall continue to be able to pay its debts as they mature and the realizable value of its Collateral is, and at all times that it may have obligations hereunder shall continue to be, sufficient to satisfy any and all obligations hereunder.

2.20 PERMITS – Borrower possesses all licenses, approvals, permits, franchises, patents, copyrights, trademarks, and trade names, or rights thereto, that are necessary to own the Property and conduct business on the Property as now conducted and as presently proposed to be conducted, and, to the best of Borrower's knowledge, Borrower is not in violation of any valid rights of others with respect to the foregoing.

2.21 NO ERISA PLAN – Borrower does not maintain a plan under the Employee Retirement Income Security Act of 1974.

2.22 FULL DISCLOSURE – All information in the loan application, Financial Statement, certificate, or other document and all information prepared and delivered by Borrower to Lender in obtaining the Loan is correct and complete in all material respects, and there are no omissions therefrom that result in such information being incomplete, incorrect, or misleading in any material adverse respect as of the date thereof. To the best of Borrower's knowledge, all information in any loan application, Financial Statement, certificate or other document prepared and delivered to Lender on behalf of Borrower by Persons other than Borrower or its Affiliates, and all other information prepared and delivered to Lender on behalf of Borrower by Persons other than Borrower or its Affiliates in applying for the Loan is correct and complete in all material respects, and there are no omissions therefrom that result in any such information being incomplete, incorrect, or misleading in any material adverse respect as of the date thereof.

2.23 USE OF PROCEEDS; MARGIN STOCK – The proceeds of each Advance will be used by Borrower solely for the purposes specified in this Agreement. None of such proceeds will be used for the purpose of purchasing or carrying any "margin stock" as defined in Regulation U or G of the Board of Governors of the Federal Reserve System (12 C.F.R. Part 221 and 207), or for the purpose of reducing or retiring any indebtedness which was originally incurred to purchase or carry a margin stock or for any other purpose which might constitute this transaction a "purpose credit" within the meaning of such Regulation U or G. Borrower is not engaged in the business of extending credit for the purpose of purchasing or carrying margin stock. Neither Borrower nor any Person acting on behalf of Borrower has taken or will take any action

which might cause any Loan Documents to violate Regulation U or G or any other regulations of the Board of Governors of the Federal Reserve System or to violate Section 7 of the Securities Exchange Act of 1934, or any rule or regulation thereunder, in each case as now in effect or as the same may hereafter be in effect. Borrower and Borrower's Affiliates own no "margin stock".

2.24 GOVERNMENTAL REGULATION – Borrower is not subject to regulation under the Public Utility Holding Company Act of 1935, the Federal Power Act, the Investment Company Act of 1940, the Interstate Commerce Act (as any of the preceding have been amended), or any other Law which regulates the incurring by Borrower of indebtedness, including but not limited to laws relating to common or contract carriers or the sale of electricity, gas, steam, water, or other public utility services.

2.25 NO CONDEMNATION – No condemnation proceedings are pending or, to the best of Borrower's knowledge, threatened against the Property.

## ARTICLE III
## THE LOAN

3.1 THE LOAN - The Loan will be in an amount not exceeding the principal sum of Eight Million Four Hundred Thousand and No/100 Dollars ($8,400,000.00).

3.2 LOAN CLOSING

3.2.1 The Loan will close if, and only if, on or before June 16, 2017, Borrower shall, at Borrower's sole expense, deposit or cause to be deposited with Lender, the following in form and substance satisfactory to Lender, in Lender's sole opinion and judgment, duly executed by the party to be charged and acknowledged where required:

(a) The Loan Fee;

(b) The Note;

(c) The Deed of Trust;

(d) The Assignment of Leases;

(e) The Title Policy or evidence of a commitment therefor. The Title Policy shall show no blanket exceptions for anything a survey would show;

(f) The Continuing Guaranty;

(g) If requested by Lender, the survey or surveys prepared by a licensed surveyor satisfactory to Lender, certified to the Title Company and to Lender and its successors, nominees, and assigns, and showing all easements. The survey shall

be conducted in compliance with ALTA standards as applied in California and shall be certified to the Title Company, Lender, and Borrower in form and content acceptable to Lender;

(h) One or more Financing Statements;

(i) If required by Lender, UCC search certificates showing the Financing Statements to be subject only to such prior filings as are acceptable to Lender, in its sole opinion and judgment;

(j) True and correct copies of: Borrower's Organizational Documents and certificate(s) of fictitious business name and financial statements, all of which documents must be first reviewed and approved by Lender, its counsel, or both;

(k) Such resolutions or other authorizations as Lender shall require of Borrower and any Person holding an interest in Borrower authorizing the Loan or such other matters as Lender shall require;

(l) The Environmental Indemnity;

(m) The Agreement to Furnish Insurance, together with evidence that all insurance coverages required by Lender have been purchased and are in place;

(n) The Hazard Insurance Disclosure;

(o) The Appraisal, reporting that the maximum amount of the Loan to the appraised "as is" value of the Property does not exceed seventy percent (70%);

(p) A Phase I, and, if indicated, a Phase II environmental survey, by a qualified environmental engineer, indicating an absence of environmental concerns in regard to the Property, satisfactory in all respects to Lender, in Lender's sole opinion and judgment;

(q) IRS Form 4506 executed by Borrower and Guarantor;

(r) Review and approval of Borrower's Financial Statements, real estate schedules and tax returns (with all forms K-1 attached) prepared by a certified public accountant satisfactory to Lender;

(s) Review and approval of Guarantor's Financial Statements, real estate schedules and tax returns (with all forms K-1 attached), prepared by a certified public accountant satisfactory to Lender;

(t) Verification and approval of all permits, approvals and authorizations required to operate and use the Property;

(u) If requested by Lender, a property inspection of the Property prepared by an inspection company approved by Lender;

(v) Such soils and/or geology reports as Lender may require, which reports shall be satisfactory in all respects to Lender, in its reasonable discretion, prepared by such geologists, engineers and/or other consultants as are approved by Lender;

(w) Evidence satisfactory to Lender that the use of the Property will at all times comply with all applicable Laws, permits and/or approvals which affect the Property and/or the sale, operation, leasing or financing of the Property and/or the occupancy, use and enjoyment of the Property including, but not limited to, applicable subdivision Laws, licenses and permits, building codes, zoning ordinances, permits, approvals, parking ordinances, flood disaster, environmental protection and equal employment regulations and appropriate supervising boards of fire underwriters and similar agencies;

(x) Copy of the fully executed purchase agreement for the acquisition of the Property and evidence that Borrower has deposited with escrow an amount from Borrower's own funds, satisfactory to Lender, which shall be applied to the purchase price for the Property;

(y) A detailed rent roll covering the Property, setting forth the identity of each and every tenant of the Property, the rent paid by each such tenant, whether each such tenant is current on the rent, the square footage occupied by each such tenant, and such other information as Lender may request, and review and approval of all current leases and related agreements or documentation;

(z) Assignment of Grandstand License Agreement, in form and content satisfactory to Lender in its sole opinion and judgment, executed by Borrower in favor of Lender and consented to be Orange Grove Seating, LLC;

(aa) Consent and Assignment Agreement of Event Management Agreement, in form and content satisfactory to Lender in its sole opinion and judgment, executed by Borrower and BUND Productions, LLC, a California limited liability company, in favor of Lender; and

(cc) Such additional assignments, agreements, certificates, reports, approvals, instruments, documents, financing statements, consents, and opinions as Lender may request, including, but not limited to any zoning variances, permits, approvals, conditional use permits, development agreements or other land use requirements Borrower shall be required to obtain in connection with the operation of the Property and any and all subordination agreements, non-disturbance and attornment agreements, and tenant estoppel certificates as Lender, in its reasonable discretion, shall require Borrower to obtain from tenants of the Property, if any.

3.3 LOAN PURPOSE – The Loan Proceeds disbursed shall be used by Borrower solely for (i) financing, in part, a portion of the purchase price for Borrower's acquisition of the Property, (ii) paying, at Loan Closing, the Loan Fee and all other Loan Closing Costs, and (iii) paying, at or after Loan Closing, such fees, costs and other

amounts as Lender shall, in Lender's sole and absolute discretion, approve in writing, but only to the extent of the Loan Proceeds. Borrower shall be responsible for paying any of the foregoing from Borrower's own funds in the event the Loan Proceeds are insufficient to do so.

3.4 LOAN FEE - The Loan Fee shall be paid by Borrower to Lender at Loan Closing from the Loan Proceeds, and will be in addition to all other fees mentioned in this Agreement. The Loan Fee shall be deemed fully earned and non-refundable when paid, whether or not any Loan Proceeds are disbursed at any time.

3.5 LOAN TERM - The term of the Loan will commence on the date of Loan Closing and the Loan will mature upon the Maturity Date, subject to acceleration or adjustment as provided in this Agreement and the other Loan Documents.

3.6 INTEREST RATE - The interest rate will be as set forth in the Note.

3.7 REPAYMENT - In addition to any other provisions set forth herein, repayment of the Loan will be required as follows:

3.7.1 Interest and principal payments under the Loan shall be due and payable to Lender pursuant to the provisions of the Note;

3.7.2 [Intentionally omitted];

3.7.3 All payments hereunder or under the Note shall be made by Borrower without any offset or deduction for or on account of any present or future taxes, imposts or duties, of whatever nature, imposed or levied by or on behalf of any Governmental Agency. If at any time, whether by reason of any present or future Law or other requirement, Borrower shall be compelled by such Law or other requirement to deduct or withhold such taxes, imposts or duties, Borrower shall pay such additional amounts to Lender as may be necessary such that every net payment under this Agreement and the Note on which Borrower is obligated, after such deduction or withholding, will not be less than the amount required hereunder or thereunder; and

3.7.4 Whenever any payment to be made under this Agreement and the Note shall be due on a day other than a Business Day of Lender, such payment may be made on the next succeeding Business Day, and such extension of time shall in such cases be included in the computation of payment of interest hereunder and under the Note.

3.8 DEPOSIT ACCOUNT - Borrower hereby grants, assigns, pledges and hypothecates to Lender all of Borrower's right, title and interest in and to all deposit accounts maintained by Borrower with Lender, as security for each and all of the obligations of Borrower to Lender under the Loan Documents. Borrower shall, so long as the Loan has not been fully repaid, performed and discharged, (i) maintain its operating account for the Property with Lender and (ii) cause Guarantor to maintain a depository relationship with Lender.

3.9 NO AUTOMATIC SET-OFF - The existence of any sum or sums being on deposit with Lender shall in no way constitute a set-off against or be deemed to compensate the obligations of the Loan or any payment or performance due under the Loan Documents or this Agreement, unless and until Lender, by affirmative action, shall so apply said accounts or any portion thereof, and then only to the extent thereof as so designated by Lender.

3.10 RELIANCE BY LENDER AND ACQUITTANCE - Lender may conclusively assume that the statements, facts, information, and representations contained herein and/or in any affidavits, orders, receipts, or other written instrument(s) that are filed with Lender or exhibited to it, are true and correct, and Lender may rely thereon without any investigation or inquiry, and any payment made by Lender in reliance thereon shall be a complete release in its favor for all sums so paid.

3.11 ASSUMPTION.

3.11.1 Lender shall permit on a one-time only basis the transfer of the Property by Borrower to SDRES Partners, LLC, a California limited liability company ("Assuming Party") within one (1) month from the date of Loan Closing, and an assumption of the Loan by the Assuming Party, if and only if each and all of the following shall have occurred or Lender shall have received all of the following documents or instruments in form and content satisfactory to Lender in its sole opinion and judgment and suitable for filing or recording as required:

(a) The transfer of the Property to Assuming Party shall comply with all applicable Laws, including those applicable to Lender;

(b) Assuming Party, Borrower and Guarantor shall have executed the form of assumption agreement provided by Lender, in form and content satisfactory to Lender in its sole and absolute judgment (the "Assumption Agreement"), in which, in part, Assuming Party assumes all obligations of Borrower under the Loan Documents, and Guarantor reaffirms his obligations in favor of Lender pursuant to the Continuing Guaranty, continuing to guaranty payment and performance of the indebtedness and obligations of Borrower assumed by Assuming Party pursuant to the Assumption Agreement;

(c) Assuming Party or Borrower shall have paid in full all title insurance premiums and recording charges, and all fees and costs incurred by Lender in connection with the negotiation and preparation of the Assumption Agreement and all other documents and instruments related thereto, including, but not limited to, attorneys' fees;

(d) The ownership interest in Assuming Party shall be held by Borrower; Assuming Party and those Persons holding an interest in Assuming Party shall have provided Lender such resolutions and/or related documents from Assuming Party and those holding an interest in Assuming Party, as Lender may request;

(e) Assuming Party shall have provided Lender one or more UCC-1 Financing Statements, UCC-2 Amendments to Financing Statements or related documents;

(f) Assuming Party shall have provided Lender true and correct copies of the duly filed, certified and/or executed documents or instruments evidencing or confirming the lawful formation and existence of Assuming Party, and all written consents and certifications required by Lender from Persons having management and/or ownership interests in Assuming Party. Such documents and instruments shall include, without limitation, any and all corporate by-laws, lists of officers, certificates of incumbency and certificates of good standing, lawful existence, status, qualification or similar documents, any and all partnership agreements, trust agreements and a written authorization or resolution duly adopted and/or executed by the directors, general partners, members and/or managers of Assuming Party, authorizing and permitting the transactions herein described. All of such documents and instruments must first be reviewed and approved by Lender, its counsel, or both;

(g) There shall be no suit, action, or other proceeding pending or threatened which seeks to restrain or prohibit the consummation of the transactions contemplated by the Assumption Agreement, or to obtain damages or other relief in connection therewith;

(h) Lender's liens, security interests and other interests in the Property and all other Collateral shall have been perfected by such means as are required or permitted under applicable Laws, and shall be and remain a first priority perfected lien and security interest in and to the Property and all such other Collateral;

(i) No breach of any warranty or representation by Borrower to Lender shall have occurred and be continuing at the time of transfer;

(j) No event or circumstance shall have occurred and be continuing which constitutes, or would upon the giving of notice or passage of time, constitute an Event of Default, default, breach of covenant or agreement or failure of any condition of the Assumption Agreement or any of the Loan Documents;

(k) Lender shall have received such endorsements as Lender shall request to the Title Policy, including, without limitation, an endorsement which shall insure that fee title to the Property is vested in Assuming Party, that the lien and priority of the Deed of Trust is not impaired by the transfer of the Property and/or the transactions contemplated hereby, and that the lien of the Deed of Trust is not subject to any lien, encumbrance or other matter other than those set forth in the Title Policy on the date originally issued and nondelinquent real property taxes for the current tax year, all at the sole cost of Assuming Party;

(l) Assuming Party shall have delivered to Lender insurance policies and certifications satisfying such insurance coverages as Lender shall require, in its sole opinion and judgment, naming Lender as the additional insured, containing a

standard mortgagee clause, and showing evidence of payment of the annual premium therefor; and

(m) Assuming Party and Borrower shall have delivered to Lender such additional assignments, agreements, certificates, reports, approvals, instruments, documents, financing statements, consents, and opinions as Lender may reasonably request.

3.11.2 The obligations of Lender stated herein are expressly conditioned upon the assumption transaction being in compliance with the applicable Laws of all Governmental Agencies having jurisdiction over Lender at the time of the transfer. The provisions of this Section 3.11 shall apply to the transfer of the Property by Borrower only to the Assuming Party and shall not apply to any other transfer or conveyance of the Property.

## ARTICLE IV
## BORROWER'S COVENANTS

4.1 INSURANCE – Borrower shall obtain and at all times maintain hazard and liability insurance in amount, form and issued by a company or companies reasonably satisfactory to Lender, as required under the Deed of Trust and/or the Agreement to Furnish Insurance.

4.2 RIGHT OF ENTRY – Lender and Lender's employees or agents shall have the right at all times to enter upon the Property for whatever purpose Lender deems appropriate, including, without limitation, inspection of the premises and the posting of such notices and other written or printed material thereon as Lender may deem appropriate or desirable.

4.3 PRESERVE ITS EXISTENCE – Borrower, if other than a natural person, will, so long as Borrower remains obligated on the Loan, do all things necessary to preserve and keep in full force and effect its organizational status and will comply with all Laws, orders and decrees of any Governmental Agency or court applicable to Borrower or to the Property.

4.4 LENDER MAY EXAMINE BOOKS AND RECORDS – Lender shall have the right, from time to time, acting by and through its employees or agents, to examine the books, records, and accounting data of Borrower, and to make extracts therefrom or copies thereof. Borrower shall promptly make such books, records, and accounting data available to Lender, as stated above, upon written request, and upon like request shall promptly advise Lender, in writing, of the location of such books, records, and accounting data.

4.5 PAYMENT OF TAXES – Borrower shall pay and discharge all taxes, assessments, and governmental charges or levies imposed upon Borrower or upon Borrower's income or profits, or upon any properties belonging to Borrower prior to the date on which penalties attach thereto, and all lawful claims which, if unpaid, might become a lien or charge of a material nature upon any of Borrower's properties;

provided, that Borrower shall not be required to pay any such tax, assessment, charge, levy or claim which is being contested in good faith and by proper proceedings if Borrower maintains adequate reserves with respect thereto.

4.6 COMPLY WITH APPLICABLE LAWS – Borrower shall comply with all applicable restrictive covenants, zoning and subdivision ordinances, building codes, health and environmental Laws and all other applicable Laws, directions, orders and notices of violations issued by any Governmental Agency relating to or affecting the premises or the business or activity being conducted thereon whether by Borrower or by any occupant thereof, including, without limitation, any and all Laws relating to hazardous or toxic waste or waste products or hazardous substances. Further, Borrower shall indemnify and hold Lender and the Trustee under the Deed of Trust harmless from the failure by Borrower to comply with such Laws in any respect.

4.7 MAINTENANCE OF PROPERTIES AND PRESERVE EXISTENCE – Borrower shall maintain and preserve, or cause to be maintained and preserved, all of its properties, necessary or useful in the proper conduct of its business, including such as may be under lease, in good working order and condition, ordinary wear and tear excepted. Borrower, so long as Borrower remains obligated on the Loan, shall do all things necessary to preserve and keep in full force and effect Borrower's organizational status, and will comply with all Laws, orders and decrees of any Governmental Agency or court applicable to Borrower or to the Property.

4.8 BOOKS AND RECORDS; AUDIT AND EXAMINATION – Borrower shall keep and maintain all books and records in original form, as shall be required and as shall otherwise be appropriate, in Lender's reasonable opinion and judgment, pertaining to the performance by Borrower of Borrower's covenants and other obligations hereunder, and otherwise pertaining to Borrower's operations and activities. Borrower shall at all times permit Lender to review, audit and examine all such books and records, either directly or through one or more auditors designated by Lender, including independent contractors.

4.9 REPORTING REQUIREMENTS – So long as Borrower shall have any obligation to Lender under this Agreement and/or the other Loan Documents, Borrower shall prepare, or cause to be prepared, and deliver, or cause to be delivered, to Lender the following Financial Statements and reports:

(a) As soon as practicable and in any event within five (5) days after Borrower knows of the commencement of any legal action against it that would reasonably be expected to have a Material Adverse Effect, except actions seeking money judgments that are fully insured or bonded, a report of the commencement of such action containing a statement signed by an authorized signatory of Borrower setting forth details of such legal action and any action Borrower proposes to take with respect thereto;

(b) Within five (5) days of the occurrence of any Event of Default, a report regarding such Event of Default or event setting forth details and

describing any action which Borrower proposes to take with respect thereto, signed by Borrower;

(c) Any change in the name of Borrower or use of any trade names or trade styles not presently used;

(d) As soon as available, and in any event no later than ninety (90) days following the end of each calendar year during which the Loan has not been fully repaid and performed, and discharged, Borrower shall provide to Lender complete and accurate annual Financial Statements representing the financial condition of Borrower as of the date such Financial Statements are prepared and delivered to Lender, including balance sheets, income statements, sources and uses of funds, detailed schedule of real estate of Borrower, and such other supplemental reports and schedules as Lender shall require, in its reasonable discretion. The Financial Statements for Borrower may be company-prepared and shall contain a certification signed by any individual providing a Financial Statement or by one or more authorized representatives of any corporation, partnership, limited liability company or other entity providing a Financial Statement, certifying to the completeness and accuracy of all information, without exception. All such Financial Statements shall be prepared and presented in accordance with GAAP, consistently applied, or in such other form and content as Lender may permit, in its sole and absolute opinion and judgment. Borrower shall furnish to Lender complete and accurate copies of signed income tax returns (with all forms K-1 attached) of Borrower, including all schedules and exhibits thereto, prepared by an independent certified public accountant acceptable to Lender, in its sole opinion and judgment, within sixty (60) days after they are filed with the relevant taxing authorities;

(e) Borrower shall cause Guarantor to furnish to Lender, as soon as available, and in any event no later than ninety (90) days following the end of each calendar year during which the Loan has not been fully repaid and performed, and discharged, complete and accurate Financial Statements representing the financial condition of such Guarantor as of the date such Financial Statements are prepared and delivered to Lender, including, but not limited to, balance sheets, income statements, sources and uses of funds, real estate schedules and such other supplemental reports and schedules as Lender shall require, in its reasonable discretion. All such Financial Statements may be self-prepared; and all such Financial Statements shall contain a certification signed by any individual providing a Financial Statement or by one or more authorized representatives of any corporation, partnership, limited liability company, trust or other entity providing a Financial Statement, certifying to the completeness and accuracy of all information, without exception. All such Financial Statements shall be prepared and presented in accordance with GAAP, consistently applied, or in such other form and content as Lender may permit, in its sole and absolute opinion and judgment. Additionally, Borrower shall cause Guarantor to furnish to Lender complete and accurate copies of all signed income tax returns (with all forms K-1 attached) of Guarantor, including all schedules and exhibits thereto, prepared by an independent certified public accountant acceptable to Lender, in its sole opinion and judgment, within sixty (60) days after they are filed with the relevant taxing authorities;

(f) Promptly upon receipt thereof, one (1) copy of any other report submitted to Borrower by independent accountants in connection with any annual, interim or special audit made by them of the books of Borrower;

(g) Within five (5) days of (i) any contact from any Governmental Agency concerning any environmental protection Laws, including, but not limited to, any notice of any proceeding or inquiry with respect to the presence of any hazardous waste, toxic substances or hazardous materials on the Property or the migration thereof from or to other property, (ii) any and all claims made or threatened by any third Person against or relating to the Property concerning any loss or injury resulting from toxic substances, hazardous waste, or hazardous materials, or (iii) Borrower's discovery of any occurrence or condition on any property adjoining or in the vicinity of the Property that could cause the Property, or any part thereof, to be subject to any restrictions on the ownership, occupancy, transferability, or loss of the Property under any Law which would reasonably be expected to have a Material Adverse Effect, Borrower shall deliver to Lender a report regarding such contact and setting forth in detail and describing any action which Borrower proposes to take with respect thereto, signed by Borrower;

(h) Borrower shall provide to Lender upon Lender's request and in any event no later than sixty (60) days following June 30 and December 31 of each calendar year during the term of this Agreement through and including the Maturity Date, a detailed rent roll covering the Property, setting forth the identity of each and every tenant on the Property, the rent paid by each such tenant, whether each such tenant is current on the rent, the square footage occupied by such tenant, and such other information as Lender may request, accompanied by copies of any and all lease agreements and related agreements and/or documentation;

(i) Borrower shall provide to Lender upon Lender's request and in any event no later than sixty (60) days following June 30 and December 31 of each calendar year during the term of this Agreement through and including the Maturity Date, a current semi-annual operating statement for the Property, including income and expense statements and such other information as Lender may request; and

(j) Within five (5) days of becoming aware of any developments or other information which may materially and adversely affect Borrower's properties, business, prospects, profits or condition (financial or otherwise) or Borrower's ability to perform this Agreement or the other Loan Documents, telephonic or written notice (delivered via facsimile) specifying the nature of such development or information and such anticipated effect, which shall be promptly confirmed in writing;

(k) Such other information respecting the business, properties or the condition or operations, financial or otherwise, of Borrower as Lender may from time to time reasonably request.

4.10 <u>LIENS</u> – Borrower shall not create, incur, assume or suffer to exist any mortgage, deed of trust, pledge, lien, security interest or other charge or encumbrance

(including the lien or retained security title of a conditional vendor) of any nature upon or with respect to the Property, or assign or otherwise convey any right to receive income, except that the foregoing restrictions shall not apply to mortgages, deeds of trust, pledges, liens, security interests or other charges or encumbrances, including the Deed of Trust and the Assignment of Leases, covering the Property created by or pursuant to or permitted by this Agreement, or taxes, assessments or governmental charges or levies on property of Borrower, or in respect of a judgment or award against Borrower, if the same shall not at the time be delinquent or thereafter can be paid without penalty, or if Borrower shall have set aside adequate reserves therefor as determined or approved by its certified independent accounting firm, or, if in the case of a judgments or award, execution on the same shall have been effectively stayed pending appeal or review or insured or bonded to the extent of Borrower's liability in respect thereof, and in the case of all of the foregoing, the same are being contested in good faith and by appropriate proceedings.

4.11 NO TRANSFER OR FURTHER ENCUMBRANCE – Borrower shall not, without the prior written consent of Lender:

(a) Create, incur, assume, permit or suffer to exist, any mortgage, deed of trust, pledge, lien, hypothecation, charge (fixed or floating), security interest or other encumbrance whatsoever on the Property or any interest therein, except the Permitted Encumbrances;

(b) Transfer the Property, or any interest therein, except for the Approved Leases;

(c) Become a party to any transaction whereby the Property or any portion thereof, or all or any substantial part of the properties, assets or undertakings of Borrower (whether legally or beneficially owned by Borrower), would become the property of any other Person, whether by way of transfer, sale, conveyance, lease, sale and leaseback, or otherwise, except for the Approved Leases;

(d) Change the use of the Property;

(e) Modify or amend any Approved Lease;

(f) Enter into a new lease for all or any portion of the Property, except for Approved Leases;

(g) Transfer, convey, hypothecate, or sell membership interests in Borrower, except for transfers of up to forty-nine percent (49%) of the membership interests in Borrower in the aggregate, made by members of Borrower for usual and customary estate planning purposes so long as Lender shall be notified of such estate planning transfers, in writing, in advance; or

(h) Change the manager of Borrower.

4.12 PROTECTION OF LIENS – Borrower shall maintain the lien of the Deed of Trust as a first priority lien on the Property and take all actions, and execute and deliver to Lender all documents, reasonably required by Lender from time to time in connection therewith.

4.13 TITLE INSURANCE ENDORSEMENTS – Borrower shall deliver to Lender, at Borrower's sole expense and in form and content reasonably required by Lender from time to time, such endorsements to the Title Policy as Lender shall request.

4.14 APPROVED LEASES; SNDAs.

(a) Borrower shall only enter into Approved Leases for the Property (this restriction shall apply to all leases for the Property entered into by Borrower, including, without limitation, all new and renewal leases and any modifications to such leases).

(b) Borrower shall, immediately upon execution by Borrower of any new or renewal lease, or any extensions or modifications of any lease, with respect to the Property, provide Lender with (i) a true, correct and complete copy of such lease, modification or extension, as applicable, as signed by all parties, and (ii) upon Lender's request, an SNDA and/or Tenant Estoppels from such tenants under new leases as Lender shall require.

4.15 TAXES AND OTHER DEBT – Borrower shall pay and discharge (a) before delinquency all taxes, assessments, and governmental charges or levies imposed upon Borrower, upon Borrower's income or profits, or upon any property belonging to Borrower; (b) when due all lawful claims (including, without limitation, claims for labor, materials, and supplies), which, if unpaid, might become a lien or encumbrance upon any of Borrower's assets or property; and (c) all Borrower's other obligations and indebtedness when due; provided, however, that Borrower may contest any of the foregoing in good faith and by appropriate proceedings diligently prosecuted by Borrower as long as Borrower has adequate reserves to pay any adverse determination or has otherwise provided Lender evidence of a surety or bond to pay any adverse determination.

4.16 NAME, FISCAL YEAR, ACCOUNTING METHOD, AND LINES OF BUSINESS – Borrower will not change its name, fiscal year, or method of accounting. Borrower will not directly or indirectly engage in any business other than the business in which Borrower is engaged on the date of this Agreement, discontinue any existing lines of business that are material to the business or operations of Borrower, or substantially alter its method of doing business.

4.17 LOANS - Borrower will not directly or indirectly (a) make any loan or advance to any other Person other than advances made in the ordinary course of Borrower's business; (b) purchase or otherwise acquire any capital stock or any securities of any other Person, any limited liability company interest or partnership interest in any other Person, or any warrants or other options or rights to acquire any capital stock or

securities of any other Person or any limited liability company interest or partnership interest in any other Person; (c) make any capital contribution to any other Person; (d) otherwise invest in or acquire any interest in any other Person or establish any subsidiaries; (e) guarantee or otherwise become obligated in respect of any indebtedness of any other Person; or (f) subordinate any claim against or obligation of any other Person to Borrower to any other indebtedness of such Person.

4.18 INDEBTEDNESS - Borrower shall not assume, create, incur, or permit to exist any obligations or indebtedness in favor of any Person except trade obligations and normal accruals in the ordinary course of business not yet due and payable. Borrower shall not assume, create, incur, or permit to exist any contingent liabilities, including, without limitation, contingent reimbursement obligations under letters of credit.

4.19 ACQUISITION OF ASSETS - Borrower shall not acquire by purchase, lease or otherwise all or substantially all the assets of any other Person.

4.20 TRANSACTIONS WITH AFFILIATES - Borrower will not enter into, or cause, suffer or permit to exist, any arrangement or contract with any of Borrower's Affiliates, including, without limitation, any management contract, unless such transaction is on terms that are no less favorable to Borrower than those that could have been obtained in a comparable transaction on an arms' length basis from a Person that is not an Affiliate.

4.21 TERRORISM AND ANTI-MONEY LAUNDERING - Borrower warrants and agrees as follows:

(a) As of the date hereof and throughout the term of the Loan: (i) Borrower; (ii) any Person controlling or controlled by Borrower; (iii) if Borrower is a privately held entity, any Person having a beneficial interest in Borrower; or (iv) any Person for whom Borrower is acting as agent or nominee in connection with this transaction, is not an OFAC Prohibited Person.

(b) To comply with applicable U.S. Anti-Money Laundering Laws and regulations, all payments by Borrower to Lender or from Lender to Borrower will only be made in Borrower's name and to and from a bank account of a bank based or incorporated in or formed under the laws of the United States or a bank that is not a "foreign shell bank" within the meaning of the U.S. Bank Secrecy Act (31 U.S.C. § 5311 et seq.), as amended, and the regulations promulgated thereunder by the U.S. Department of the Treasury, as such regulations may be amended from time to time.

(c) To provide Lender at any time and from time to time during the term of the Loan with such information as Lender determines to be necessary or appropriate to comply with the Anti-Money Laundering Laws and regulations of any applicable jurisdiction, or to respond to requests for information concerning the identity of Borrower, any Person controlling or controlled by Borrower or any Person having a beneficial interest in Borrower, from any governmental authority, self-regulatory

organization or financial institution in connection with its anti-money laundering compliance procedures, or to update such information.

(d) The representations and warranties set forth in this Section 4.21 shall be deemed repeated and reaffirmed by Borrower as of each date that Borrower makes a payment to Lender under the Note, this Agreement and the other Loan Documents or receives any payment from Lender. Borrower agrees promptly to notify Lender in writing should Borrower become aware of any change in the information set forth in these representations.

4.22 DISTRIBUTIONS - Borrower shall not make, declare or permit any distribution to any officer, shareholder, member, manager or partner of Borrower at any time that an Event of Default (or event of which Borrower has actual knowledge and that with the giving of notice or passage of time, or both, would constitute an Event of Default) has occurred and is continuing or if any such distribution would cause or contribute to an Event of Default (or event that with the giving of notice or passage of time, or both, would constitute an Event of Default).

4.23 MAINTAIN MINIMUM DEBT SERVICE COVERAGE RATIO – From the date of Loan Closing and at all times thereafter during the term of the Loan, Borrower shall maintain a Debt Service Coverage Ratio of not less than 1.25 to 1.00 ("DSCR Requirement"), which shall be measured (i) no later than twelve (12) months following the date of Loan Closing ("Initial DSCR Compliance Date"), and (ii) annually thereafter as of the end of each calendar year commencing with the calendar year ending December 31, 2018, measured for the preceding twelve (12) consecutive calendar month period of time. In connection therewith, Borrower shall deliver to Lender a profit and loss statement for Borrower and such Financial Statements and other documentation and evidence as shall be satisfactory to Lender, in Lender's sole and absolute opinion and judgment, evidencing Borrower's compliance with the minimum Debt Service Coverage Ratio requirement set forth in this Section 4.23.

4.24 LOAN TO VALUE.

4.24.1 At all times during the term of the Loan, the outstanding principal amount of the Loan shall not exceed seventy percent (70%) of the appraised "as is" value of the Property ("Maximum LTV").

4.24.2 In addition to any other rights or remedies accorded to Lender under this Agreement or any of the other Loan Documents, Lender may, at any time and from time to time and as and when Lender deems it to be appropriate, in its sole and absolute discretion, whether or not an Event of Default has occurred, cause to be performed and prepared an updated Appraisal of the Property (each, an "Updated Appraisal"), and such Updated Appraisal shall be at the sole cost of Borrower; provided, however, that Borrower shall be responsible for paying for the cost of only one (1) Updated Appraisal in any twelve (12) month period.

4.24.3 If, at any time during the term of the Loan, Lender determines, pursuant to an Updated Appraisal in Lender's reasonable discretion, that the then outstanding principal balance of the Loan exceeds the Maximum LTV, then, upon request by Lender, Borrower shall (a) immediately pay to Lender a sum sufficient, in Lender's sole and absolute opinion and judgment, to reduce the outstanding principal amount of the Loan ("Principal Reduction Payment"), so that the outstanding principal amount of the Loan following such Principal Reduction Payment does not exceed the Maximum LTV, and, if required by Lender (b) execute such amendments, modifications and/or other agreements as Lender shall require, in form and content acceptable to Lender, in its reasonable discretion, to, among other things, reduce the maximum principal amount of the Loan under this Agreement and under the other Loan Documents, so that the maximum principal amount of the Loan following the execution and effective date of such amendment, modification and/or other agreement, shall not exceed the Maximum LTV.

4.25 POST-CLOSING SNDA AND TENANT ESTOPPELS – Borrower shall deliver to Lender by no later than ninety (90) days following the date of Loan Closing, (i) a fully executed Tenant Estoppel from the sole tenant on the 210 Orange Grove Property: Dorn Platz Management, Inc. and (ii) a fully executed SNDA from the sole tenant on the 210 Orange Grove Property: Dorn Platz Management, Inc. The failure of Borrower to timely deliver such SNDAs and Tenant Estoppel shall be deemed an Event of Default hereunder.

## ARTICLE V
## EVENTS OF DEFAULT

An "Event of Default" shall be deemed to have occurred hereunder if:

5.1 DEFAULT UNDER LOAN DOCUMENTS - Borrower shall fail to pay principal or interest, or both, when due under the terms of the Note (taking into account any grace period provided in the Note) or any other amount owing under this Agreement or any of the other Loan Documents within five (5) Business Days after Lender shall have given written notice to Borrower demanding same; or Borrower shall fail to perform or observe any term, covenant or agreement contained in this Agreement or in any of the other Loan Documents, which failure cannot be cured by the payment of money and such failure shall continue for a period of thirty (30) calendar days after Lender shall have given written notice to Borrower specifying such default; provided, however, that if such default is curable but is of a nature that such cure cannot be completed within such thirty (30) day period, Borrower shall be allowed to cure such default if Borrower shall promptly commence such cure within thirty (30) days after receipt of such notice and diligently prosecutes the same to completion within sixty (60) days of the date Lender gave written notice to Borrower specifying such default (provided further, however, that in no event shall such extension operate to extend the Maturity Date); or

5.2 BREACH OF WARRANTY - Any representations or warranties made or agreed to be made by Borrower or Guarantor in any of the Loan Documents or this Agreement, or otherwise in connection with the Loan, shall prove to be false or

misleading in any material respect when made; provided, however, if (i) Borrower or Guarantor makes a good faith, unintentional misrepresentation, and (ii) the underlying facts or situation that rendered such representation inaccurate or untrue can reasonably be expected to be remedied to Lender's reasonable satisfaction within thirty (30) days following the earlier to occur of the discovery of such misrepresentation by Borrower or Guarantor or written notice from Lender to Borrower of such misrepresentation, and Borrower or Guarantor actually remedies said underlying facts or situation as to make the original representation true and correct prior to the expiration of said thirty (30) day period, then such misrepresentation shall not be deemed an Event of Default.

5.3 ACTION AGAINST BORROWER - Any suit shall be filed against Borrower, which, if adversely determined, could reasonably be expected to have a Material Adverse Effect, unless Borrower's counsel furnishes to Lender its opinion, to the reasonable satisfaction of Lender and Lender's counsel, that, in Borrower's counsel's judgment, the suit is essentially without merit; or

5.4 LEVY UPON PROPERTY - A levy be made on the Property or any other Collateral under any process or any lien creditor commences suit to enforce a judgment lien against the Property or any other Collateral, and such levy or action shall not be bonded against by sureties deemed by Lender to be sufficient in its reasonable opinion and judgment and shall continue to be unstayed and in effect for a period of more than thirty (30) days;; or

5.5 FILING OF LIENS AGAINST THE PROPERTY - Any lien for labor, material, taxes or otherwise shall be filed against the Property and such lien shall not be either satisfied or bonded over within forty-five (45) days of such filing in the full amount; or

5.6 [Intentionally omitted.]

5.7 TRANSFER OF PROPERTY – Except for Approved Leases, Borrower shall voluntarily or by operation of Law, sell, transfer, convey, lease, or encumber the Property, or any interest therein, or shall contract for such sale, transfer, conveyance, or encumbrance without the prior written consent of Lender, which consent Lender may either give or withhold in its sole and absolute opinion and judgment; or

5.8 INSOLVENCY – (i) Borrower shall fail to pay its debts as they become due, or shall make an assignment for the benefit of its creditors, or shall admit, in writing, its inability to pay its debts as they become due, or (ii) Borrower shall file a petition under any chapter of the United States Bankruptcy Code or any similar Law, now or hereafter existing, or shall become "insolvent" as that term is generally defined under the United States Bankruptcy Code, or shall in any involuntary bankruptcy case commenced against it file an answer admitting insolvency or inability to pay its debts as they become due, or shall fail to obtain a dismissal of such case within thirty (30) calendar days after its commencement or shall convert the case from one chapter of the United States Bankruptcy Code to another chapter, or be the subject of an order for relief in such bankruptcy case, or be adjudged a bankrupt or insolvent, or shall have a custodian,

trustee, or receiver appointed for, or have any court take jurisdiction of, its property, or any part thereof, in any voluntary or involuntary proceeding, including, but not limited to, those for the purpose of reorganization, arrangement, dissolution, or liquidation, and such custodian, trustee, or receiver shall not be discharged, or such jurisdiction shall not be relinquished, vacated, or stayed within thirty (30) calendar days after the appointment; or

5.9 [Intentionally omitted.]

5.10 BORROWER STATUS - Without Lender's prior written consent, Borrower shall be liquidated, dissolved, or fail to maintain its status as a going concern or there shall be a change in the entity form of Borrower; or

5.11 ATTACHMENT - Any proceeding shall be brought the object of which is that any part of Lender's commitment to make the Advances hereunder shall at any time be subject or liable to attachment or levy during the course of the suit of any creditor of Borrower unless Borrower's counsel furnishes to Lender its opinion, to the satisfaction of Lender and Lender's counsel, that, in its judgment and after investigation, the suit is essentially without merit; or

5.12 EMINENT DOMAIN - The Property shall be the subject of an eminent domain proceeding or a taking adverse to the security interest or other interests of Lender; provided, however, that a taking of only an immaterial portion of the Property shall not be deemed an Event of Default under this Section 5.12 so long as Lender shall have received the entire amount of the proceeds payable to Borrower ("Eminent Domain Proceeds") from such proceeding or taking and Lender shall have determined, pursuant to an updated Appraisal of the remaining Property at the sole cost of Borrower, that the ratio of the outstanding principal amount of the Loan (after payment to Lender of the Eminent Domain Proceeds) to the appraised "as is" value of the remaining Property does not exceed seventy percent (70%); or

5.13 DESTRUCTION - The Property is damaged or destroyed by fire or other casualty and the loss shall prove to be inadequately covered by insurance actually collected or in the process of collection; or

5.14 FINANCIAL CONDITION - There shall be any material adverse change in the financial condition of Borrower or Guarantor; or

5.15 DEFAULT UNDER GUARANTY – Guarantor is in default under the applicable Guaranty beyond the expiration of any applicable notice and cure period or revokes or notifies Lender of an intention to revoke the Continuing Guaranty; or

5.16 MISREPRESENTATION AND/OR NON-DISCLOSURE - Borrower has made certain statements and disclosures in order to induce Lender to make the Loan and enter into this Agreement, and, in the event Borrower has made material misrepresentations or failed to disclose any material fact, Lender may treat such misrepresentation or omission as a breach of this Agreement. Such action shall not affect any remedies Lender may have for such misrepresentation or non-disclosure, as such, or under its Deed of Trust for such misrepresentation or concealment.

## ARTICLE VI
## REMEDIES

6.1 CEASE PAYMENT AND/OR ACCELERATE – Upon the occurrence of an Event of Default, and during the continuance thereof, all Loan Proceeds disbursed or advanced by Lender and all accrued and unpaid interest thereon shall, at the option of Lender, become immediately due and payable, and Lender shall be released from any and all obligations to Borrower under the terms of this Agreement.

6.2 ENFORCEMENT OF RIGHTS – Upon the occurrence of an Event of Default, and during the continuance thereof, Lender may enforce any and all rights and remedies under the Loan Documents, the Deed of Trust and all other documents delivered in connection therewith and against any or all Collateral and may pursue all rights and remedies available at Law or in equity.

6.3 COLLATERAL – Upon the occurrence of an Event of Default, and during the continuance thereof, Lender may, at its option, without notice to Borrower or any Affiliate of Borrower or without regard to the adequacy of the Collateral for the payment of the Loan, appoint one or more receivers of the Collateral, and Borrower hereby irrevocably consents to such appointment, with such receivers having all the usual powers and duties of receivers in similar cases, including the full power to maintain, sell, dispose and otherwise operate the Collateral upon such terms that may be approved by a court of competent jurisdiction.

6.4 RIGHTS AND REMEDIES NON-EXCLUSIVE - In addition to the specific rights and remedies hereinabove mentioned, Lender shall have the right to avail itself of any other rights or remedies to which it may be entitled under any then existing Laws including, but not limited to, the right to realize upon any or all of its security, and to do so in any order. Furthermore, the rights and remedies set forth above are not exclusive, and Lender may avail itself of any individual right or remedy set forth in this Agreement, or available under such Laws, without utilizing any other right or remedy.

## ARTICLE VII
## GENERAL CONDITIONS AND MISCELLANEOUS

7.1 NONLIABILITY OF LENDER - Borrower acknowledges and agrees that by accepting or approving anything required to be observed, performed, fulfilled, or given to Lender pursuant to the Loan Documents, including any certificate, statement of profit and loss, or other Financial Statement, survey, appraisal or insurance policy, Lender shall not be deemed to have warranted or represented the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision, or condition thereof, and such acceptance or approval thereof shall not be or constitute any warranty or representation to anyone with respect thereto by Lender.

7.2 NO THIRD PARTIES BENEFITTED - This Agreement is made for the purpose of defining and setting forth certain obligations, rights, and duties of Borrower and Lender in connection with the Loan and shall be deemed a supplement to the Note

and the Loan Documents, and shall not be construed as a modification of the Note or the Loan Documents, except as provided herein. This Agreement is made for the sole protection of Borrower and Lender, and Lender's successors and assigns. No Person other than Lender or Borrower shall have any rights of any nature hereunder or by reason hereof or the right to rely hereon. In the event of a conflict between this Agreement and the Note, the provisions of the Note shall control. In the event of a conflict between this Agreement and the Deed of Trust, this Agreement shall control.

7.3 INDEMNITY BY BORROWER - Borrower hereby indemnifies and agrees to hold Lender and its directors, officers, agents, and employees (individually and collectively, the "Indemnitee(s)") harmless from and against:

7.3.1 Any and all claims, demands, actions, or causes of action that are asserted against any Indemnitee by any Person if the claim, demand, action, or cause of action, directly or indirectly, relates to a claim, demand, action, or cause of action that the Person has or asserts against Borrower;

7.3.2 Any and all claims, demands, actions, or causes of action that are asserted against any Indemnitee by any Person which arise from or relate to any mechanics' lien or related proceeding relating to the Property or any other actual or alleged failure to pay or perform in connection with the Property; and

7.3.3 Any and all liabilities, losses, costs, or expenses (including court costs and attorneys' fees) that any Indemnitee suffers or incurs as a result of the assertion of any claim, demand, action, or cause of action specified in this Section 7.3.

7.4 CHANGE IN LAWS - In the event of the enactment, after the date of this Agreement, of any Laws: (a) deducting from the value of property for the purpose of taxation any lien or security interest thereon; (b) imposing upon Lender the payment of the whole or any part of the taxes or assessments or charges or liens herein required to be paid by Borrower; (c) changing in any way the Laws relating to the taxation of deeds of trust or mortgages or security agreements, or debts secured by deeds of trust or mortgages or security agreements, or the interest of the mortgagee or secured party in the property covered thereby; or (d) changing the manner of collection of such taxes; then, to the extent any of the foregoing may affect the Deed of Trust or the indebtedness secured thereby or Lender, then, and in any such event, Borrower, upon demand by Lender, shall pay such taxes, assessments, charges, or liens, or reimburse Lender therefor. If Borrower shall be prohibited from paying such tax or from reimbursing Lender for the amount thereof, Borrower shall execute a modification to the Loan Documents and the Note, which modification shall increase the interest rate payable pursuant to the Note so as to permit Lender to maintain its yield as if such tax had not been imposed. If Borrower shall be prohibited from executing the above-referenced modifications, Lender may, in Lender's sole discretion, declare the principal of all amounts disbursed and owing under the Note, this Agreement, and the other Loan Documents (including all obligations secured by the Loan Documents) and all other indebtedness of Borrower to Lender, together with interest thereon, to be forthwith due and payable, regardless of any other specified maturity or due date.

7.5 POWER OF ATTORNEY - Borrower does hereby irrevocably appoint, designate, empower, and authorize Lender, as Borrower's agent, under power of attorney, coupled with an interest, to sign and file for record any financing statements, notices of completion, notices of cessation of labor, or any other notice or written document that it may deem necessary to file or record to protect Lender's interests.

7.6 NONRESPONSIBILITY - Lender shall in no way be liable for any acts or omissions of Borrower or Borrower's agents or employees.

7.7 TIME IS OF THE ESSENCE - Time is of the essence of this Agreement and of each and every provision hereof.

7.8 NON-WAIVER - The waiver by Lender of any breach or breaches hereof shall not be deemed, nor shall the same constitute, a waiver of any subsequent breach or breaches.

7.9 BINDING EFFECT; ASSIGNMENT - This Agreement shall be binding upon and inure to the benefit of Borrower and Lender and their respective successors and assigns, except that Borrower may not assign its rights hereunder or any interest herein without the prior written consent of Lender. Lender shall have the right to assign its rights under this Agreement and to grant participations in the Loan to others, but all waivers or abridgements of Borrower's obligations that may be granted from time to time by Lender shall be binding upon such assignees or participants. Borrower shall, promptly upon demand, provide Lender or any such purchaser or participant, one or more written statements confirming Borrower's indebtedness to Lender and all obligations in connection with the Loan, including the existence of any default thereunder.

7.10 EXECUTION IN COUNTERPARTS - This Agreement and any other Loan Documents, except the Note, the Deed of Trust and the Assignment of Leases, may be executed in any number of counterparts, and any party hereto or thereto may execute any counterpart, each of which, when executed and delivered, will be deemed to be an original, and all of which counterparts of this Agreement or any other Loan Document, as the case may be, taken together will be deemed to be but one and the same instrument. The execution of this Agreement or any other Loan Document by any party or parties hereto or thereto will not become effective until counterparts hereof or thereof, as the case may be, have been executed by all the parties hereto or thereto.

7.11 INTEGRATION; AMENDMENTS; CONSENTS - This Agreement, together with the documents referred to herein constitutes the entire agreement of the parties touching upon the subject matter hereof, and supersedes any prior negotiations or agreements on such subject matter. No amendment, modification, or supplement of any provision of this Agreement or any of the other Loan Documents shall be effective unless in writing, signed by Lender and Borrower; and no waiver of any of Borrower's obligations under this Agreement or any of the other Loan Documents or consent to any departure by Borrower therefrom shall be effective unless in writing, signed by Lender, and then only in the specific instance and for the specific purpose given.

7.12 NEUTRAL INTERPRETATION - This Agreement is the product of the negotiations between the parties, and in the interpretation and/or enforcement hereof is not to be interpreted more strongly in favor of one party or the other.

7.13 COSTS, EXPENSES, AND TAXES - Borrower shall pay to Lender, on demand:

7.13.1 All attorneys' fees and out-of-pocket expenses incurred by Lender in connection with the negotiation, preparation, execution, delivery, and administration of this Agreement and any other Loan Document and any matter related thereto, including, but not limited to, the appraisal of the Property;

7.13.2 The costs and expenses of Lender in connection with the enforcement of this Agreement and any other Loan Document and any matter related thereto, including the fees and out-of-pocket expenses of any legal counsel, independent public accountants, and other outside experts retained by Lender and including all costs and expenses of enforcing any judgment or prosecuting any appeal of any judgment, order or award arising out of or in any way related to the Loan, this Agreement, or the Loan Documents; and

7.13.3 All costs, expenses, fees, premiums, and other charges relating to or arising from the Loan Documents or any transactions contemplated thereby or the compliance with any of the terms and conditions thereof, including, but not limited to, recording fees, filing fees, credit report fees, release or reconveyance fees, title insurance premiums, and the cost of realty tax service for the term of the Loan.

Except as otherwise provided in the Environmental Indemnity, all sums paid or expended by Lender under the terms of this Agreement shall be considered to be, and shall be, a part of the Loan. All such sums, together with all amounts to be paid by Borrower pursuant to this Agreement, shall bear interest from the date of expenditure at the rate provided in the Note, shall be secured by the Loan Documents, and shall be immediately due and payable by Borrower upon demand.

7.14 SURVIVAL OF REPRESENTATIONS AND WARRANTIES - All representations and warranties of Borrower contained herein or in any and all other Loan Documents shall survive the making of the Loan and the execution and delivery of the Note, and are material and have been or will be relied upon by Lender, notwithstanding any investigation made by Lender or on behalf of Lender. For the purpose of this Agreement, all statements contained in any certificate, agreement, Financial Statement, appraisal or other writing delivered by or on behalf of Borrower pursuant hereto or to any other Loan Document or in connection with the transactions contemplated hereby or thereby shall be deemed to be representations and warranties of Borrower contained herein or in the other Loan Documents, as the case may be.

7.15 NOTICES - Except as provided in the Deed of Trust, all notices, requests, demands, directions, and other communications provided for hereunder and under any other Loan Document (a "Notice") must be in writing and must be mailed, delivered, or

sent by facsimile transmission to the appropriate party at its respective address set forth below or, as to any party, at any other address as may be designated by it in a written notice sent to the other parties in accordance with this Section 7.14. Any notice given by facsimile transmission must be confirmed within forty-eight (48) hours by letter mailed or delivered to the appropriate party at its respective address. If any notice is given by mail it will be effective three (3) calendar days after being deposited in the mails with first-class or airmail postage prepaid; if given by facsimile transmission, when sent; or if given by personal delivery, when delivered.

7.16 FURTHER ASSURANCES - Borrower shall, at its sole expense and without expense to Lender, do, execute, and deliver such further acts and documents as Lender from time to time may require for the purpose of assuring and confirming unto Lender the rights hereby created or intended, now or hereafter so to be, or for carrying out the intention or facilitating the performance of the terms of any Loan Document, or for assuring the validity of any security interest.

7.17 GOVERNING LAW - The Loan shall be deemed to have been made in California, and the Loan Documents shall be governed by and construed and enforced in accordance with the Laws of the State of California.

7.18 SEVERABILITY OF PROVISIONS - Any provision in any Loan Document that is held to be inoperative, unenforceable, or invalid shall be inoperative, unenforceable, or invalid without affecting the remaining provisions, and to this end the provisions of all Loan Documents are declared to be severable.

7.19 JOINT AND SEVERAL OBLIGATIONS - If this Agreement is executed by more than one Person as Borrower, the obligations of each of such Persons hereunder shall be joint and several obligations.

7.20 NO JOINT VENTURE, MANAGEMENT AND CONTROL - Notwithstanding any provision of this Agreement, (i) Lender is not and shall not be construed to be a partner, joint venture, alter ego, manager, controlling person or other business associate or participant of any kind of Borrower and Guarantor, or either of them, or any other person; (ii) Lender shall not be deemed responsible to perform or participate in any acts, omissions, or decisions of Borrower and Guarantor, or either of them; and (iii) Borrower does not have any claims, causes of action or defenses to its obligations to Lender based on any allegations of management or control exercised by Lender. Borrower acknowledges and agrees that Lender does not manage or control it in any way.

7.21 CONSTRUCTION - Whenever the context of this Agreement requires, the singular shall include the plural and the masculine gender shall include the feminine and/or neuter.

7.22 HEADINGS - Article and section headings in this Agreement are included for convenience of reference only and are not part of this Agreement for any other purpose.

7.23 AGENCY – Nothing in this Agreement shall be construed to constitute the creation of a partnership or joint venture between Lender and Borrower. Lender is not an agent or representative of Borrower.

7.24 APPLICATION OF PAYMENTS AND WAIVER OF MARSHALLING RIGHTS - Upon such terms and at such times as Lender considers best and with or without notice to Borrower, and without affecting Borrower's continuing liability under this Agreement or any other Loan Documents, Borrower hereby authorizes Lender to (i) apply any sums received from Borrower, Guarantor, or any other endorser or cosigner, or from the sale or collection of any collateral or its proceeds, to any indebtedness whatsoever under the Loan, in any order and regardless of whether or not such indebtedness is secured by the Deed of Trust, secured by any other collateral, or is otherwise due and payable, (ii) apply any sums received from Borrower or Guarantor, or from the sale of the Property, to all or any portion of the obligations under the Loan, in any order, regardless of whether said obligations are due and payable, and (iii) exercise any right or remedy Lender may have with respect to any obligations under the Loan Documents or any collateral securing any such obligations, the Deed of Trust or Guaranty, including bidding and purchasing at any sale of any such collateral, and compromising, collecting or otherwise liquidating any collateral or any obligations. In addition, Borrower hereby waives all rights, legal and equitable, it may now or hereafter have to require marshaling of assets or to direct the order in which the Property will be sold, or how the proceeds of any such sale will be allocated, in the event of any sale under the Deed of Trust, including, but not limited to, any and all rights provided by California Civil Code Sections 2899 and 3433, as such Sections may be amended from time to time.

7.25 SALE OF LOAN DOCUMENTS AND PARTICIPATIONS – Lender shall have the right to do any or all of the following at any time without prior notice to or the consent of Borrower or any other Person: (a) to sell, transfer, pledge or assign any or all of the Loan Documents, or any or all servicing rights with respect thereto; and (b) to sell, transfer, pledge or assign participations in the Loan Documents. Lender is authorized to forward or disclose to each purchaser, transferee, assignee, servicer, participant, and any organization maintaining databases on the underwriting and performance of commercial mortgage loans, all documents and information which Lender now has or may hereafter acquire relating to the Loan and to Borrower as Lender determines to be necessary or desirable. Upon Lender's request, Borrower shall reasonably cooperate with Lender in connection with any of the transactions contemplated by this Section.

7.26 USA PATRIOT ACT NOTICE – Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account or obtains a loan. Lender will ask for Borrower's legal name, address, tax ID number or social security number and other identifying information. Lender may also ask for additional information or documentation or take other actions reasonably necessary to verify the identity of Borrower, Guarantor or other related persons.

7.27 WAIVER OF RIGHT TO TRIAL BY JURY; JUDICIAL REFERENCE IN THE EVENT OF JURY TRIAL WAIVER UNENFORCEABILITY. EACH PARTY TO THIS AGREEMENT HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (1) ARISING UNDER THIS AGREEMENT OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION THEREWITH, OR (2) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT TO THIS AGREEMENT OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND EACH PARTY HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY. NOTWITHSTANDING THE FOREGOING TO THE CONTRARY, IN THE EVENT THAT THE JURY TRIAL WAIVER CONTAINED HEREIN SHALL BE HELD OR DEEMED TO BE UNENFORCEABLE, EACH PARTY HERETO HEREBY EXPRESSLY AGREES TO SUBMIT TO JUDICIAL REFERENCE IN ACCORDANCE WITH CALIFORNIA CIVIL CODE §§ 638, ET SEQ. ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING HEREUNDER FOR WHICH A JURY TRIAL WOULD OTHERWISE BE APPLICABLE OR AVAILABLE. PURSUANT TO SUCH JUDICIAL REFERENCE, THE PARTIES AGREE TO THE APPOINTMENT OF A SINGLE REFEREE AND SHALL USE THEIR BEST EFFORTS TO AGREE ON THE SELECTION OF A REFEREE. IF THE PARTIES ARE UNABLE TO AGREE ON A SINGLE REFEREE, A REFEREE SHALL BE APPOINTED BY THE COURT TO HEAR ANY DISPUTES HEREUNDER IN LIEU OF ANY SUCH JURY TRIAL. EACH PARTY ACKNOWLEDGES AND AGREES THAT THE APPOINTED REFEREE SHALL HAVE THE POWER TO DECIDE ALL ISSUES IN THE APPLICABLE ACTION OR PROCEEDING, WHETHER OF FACT OR LAW, AND SHALL REPORT A STATEMENT OF DECISION THEREON. THE PARTIES HERETO HEREBY AGREE THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH BOTH SIDES AGREEING TO THE SAME KNOWINGLY AND BEING AFFORDED THE OPPORTUNITY TO HAVE THEIR RESPECTIVE LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN. ANY PARTY TO THIS \AGREEMENT MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY AND THE AGREEMENTS CONTAINED HEREIN REGARDING THE APPLICATION OF JUDICIAL REFERENCE IN THE EVENT OF THE INVALIDITY OF SUCH JURY TRIAL WAIVER.

Borrower has initialed this Section 7.27 to further indicate its awareness and acceptance of each and every provision hereof.

DS
Borrower's Initials

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, Borrower and Lender have hereunto caused this Agreement to be executed as of the date first above written.

**BORROWER:**

CANTOR GROUP LLC,
a California limited liability company

By: ______________________
Name: Deba Shyam
Its: General Manager

Address:

216 The Promenade North, Suite 200
Long Beach, California 90802
Attn: Deba Shyam

**LENDER:**

PREFERRED BANK,
a California banking corporation

By: Carol Lee
Name: Carol Lee
Title: EVP

Address:

601 S. Figueroa Street, 29th Floor
Los Angeles, California 90017
Attn: Note Department

**EXHIBIT "A-1"**
210 ORANGE GROVE PROPERTY
LEGAL DESCRIPTION

The land situated in the City of Pasadena, County of Los Angeles, State of California, and described as follows:

PARCEL 1:

LOT 10 OF TRACT NO. 63103, IN THE CITY OF PASADENA, AS PER MAP RECORDED IN BOOK 1369 PAGES 35 THROUGH 52 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AMENDED PURSUANT TO THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED DECEMBER 3, 2013 AS INSTRUMENT NO. 20131708591 OF OFFICIAL RECORDS.

PARCEL 2:

A RECIPROCAL ACCESS EASEMENT OVER THOSE AREAS SET OUT ON THE MAP SHOWN ABOVE.

PARCEL 3:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN CONSOLIDATED AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (SOUTH ORANGE GROVE PARCELS) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716500 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 4:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN ROSE PARADE GRANDSTAND EASEMENT AGREEMENT (ORANGE GROVE AVENUE) RECORDED JULY 21, 2005 AS INSTRUMENT NOS. 05-1721787 AND 05-1721788 BOTH OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 5:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING GARAGE EASEMENT AGREEMENT RECORDED JULY 2, 2007 AS INSTRUMENT NO. 20071579026 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 6:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING EASEMENT AGREEMENT RECORDED DECEMBER 28, 2011 AS INSTRUMENT NO. 20111763712 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

APN: 5713-013-057

**EXHIBIT "A-2"**
244 ORANGE GROVE PROPERTY
LEGAL DESCRIPTION

The land situated in the City of Pasadena, County of Los Angeles, State of California, and described as follows:

PARCEL 1:

LOT 12 OF TRACT NO. 63103, IN THE CITY OF PASADENA, AS PER MAP RECORDED IN BOOK 1369 PAGES 35 THROUGH 52 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AMENDED PURSUANT TO THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED DECEMBER 3, 2013 AS INSTRUMENT NO. 20131708591 OF OFFICIAL RECORDS.

PARCEL 2:

A RECIPROCAL ACCESS EASEMENT OVER THOSE AREAS SET OUT ON THE MAP SHOWN ABOVE.

PARCEL 3:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN CONSOLIDATED AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (SOUTH ORANGE GROVE PARCELS) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716500 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 4:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (DEL MAR PARCEL) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716499 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 5:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN ROSE PARADE GRANDSTAND EASEMENT AGREEMENT (ORANGE GROVE AVENUE) RECORDED JULY 21, 2005 AS INSTRUMENT NOS. 05-1721787 AND 05-1721788 BOTH OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 6:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING GARAGE EASEMENT AGREEMENT RECORDED JULY 2, 2007 AS INSTRUMENT NO. 20071579026 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 7:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING EASEMENT AGREEMENT RECORDED DECEMBER 28, 2011 AS INSTRUMENT NO. 20111763712 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

APN: 5713-027-065

# Exhibit C

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.


**This page is part of your document - DO NOT DISCARD**

# 20170671620

**Pages: 0029**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**06/16/17 AT 08:00AM**

| | |
|---|---|
| FEES: | 133.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 133.00 |

LEADSHEET

201706160170023

**00013856470**

008398374

**SEQ:**
**04**

SECURE - 8:00AM

**THIS FORM IS NOT TO BE DUPLICATED**

E452320

128_1904887_

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

K

Recording Requested By:
FIRST AMERICAN TITLE
National Commercial Services
AND WHEN RECORDED, MAIL TO:

PREFERRED BANK
601 S. Figueroa Street, 29th Floor
Los Angeles, California 90017
Attention: Note Department

Assessor's Parcel No.: 5713-013-057
NCS-833699-SO

**DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING**

**(210 S. Orange Grove Boulevard)** "UNRECORDED LEASES"

This Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing ("Deed of Trust") is made to be effective on June 8, 2017, by CANTOR GROUP LLC, a California limited liability company ("Trustor"), whose address is 216 The Promenade North, Suite 200, Long Beach, California 90802, to FIRST AMERICAN TITLE INSURANCE COMPANY, as Trustee ("Trustee"), for the benefit of PREFERRED BANK, a California banking corporation, as Beneficiary ("Lender").

THIS DEED OF TRUST ALSO CONSTITUTES A FIXTURE FILING UNDER DIVISION 9 OF THE CALIFORNIA UNIFORM COMMERCIAL CODE AND COVERS GOODS WHICH ARE OR ARE TO BECOME FIXTURES ON THE REAL PROPERTY DESCRIBED ON EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF. TRUSTOR IS A RECORD OWNER OF AN INTEREST IN SAID REAL PROPERTY.

**GRANT IN TRUST:**

Trustor irrevocably grants, transfers and assigns to Trustee, in trust, for the benefit of Lender, with power of sale, all of Trustor's interest in that certain real property located in Los Angeles County, California, described as:

[SEE EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN BY THIS REFERENCE]

TOGETHER WITH: All right, title and interest which Trustor now has or may later acquire in such real property and all appurtenances, easements, covenants, rights of way, tenements, hereditaments and appurtenances thereunto belonging or in any way appertaining thereto now or hereafter, and all of the estate, right, title, interest, claim, demand, reversion or remainder whatsoever of Trustor therein or thereto, at law or in equity, now or hereafter in possession or expectancy, including, without limitation, all mineral, oil, and gas rights and royalties and profits therefrom, all water and water rights and shares of stock pertaining to water and water rights, and all sewers, pipes, conduits, wires and other facilities furnishing utility or services to the real property (collectively, the "Land");



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

TOGETHER WITH: All right, title and interest which Trustor now has or may later acquire in and to all buildings, structures and improvements now or hereafter erected on the Land, including, without limitation, all plant equipment, apparatus, machinery and fixtures of every kind and nature whatsoever now or hereafter located on or forming part of said buildings, structures and improvements (collectively, the "Improvements"; the Land and Improvements being hereinafter sometimes collectively referred to as the "Premises");

TOGETHER WITH: All right, title and interest which Trustor now has or may later acquire in and to the land lying in the bed of any street, road, highway or avenue now or hereafter in front of or adjoining the Premises;

TOGETHER WITH: Any and all awards heretofore or hereafter made by any governmental authorities (federal, state, local or otherwise) to Trustor and all subsequent owners of the Premises which may be made with respect to the Premises as a result of the exercise of the right of eminent domain, the alteration of the grade of any street or any other injury to or decrease of value of the Premises, which said award or awards are hereby assigned to Lender;

TOGETHER WITH: Any and all unearned premiums accrued, accruing or to accrue, and the proceeds of insurance now or hereafter in effect with respect to all or any portion of the Premises;

TOGETHER WITH: Any and all claims or demands which Trustor now has or may hereafter acquire against anyone with respect to any damage to all or any portion of the Premises;

TOGETHER WITH: Any and all claims under and proceeds of any insurance policies by reason of or related to a loss of any kind sustained to the Premises, now or hereafter, whether or not such policies name Lender as an insured and whether or not such policies are required by Lender, and whether or not such claims thereunder are characterized as personal claims;

TOGETHER WITH: All goods, equipment, machinery, furniture, furnishings, trade fixtures, appliances, inventory, building materials, apparatus, utensils, vehicles, wiring, pipes, conduits, elevators, escalators, heating and air conditioning equipment, chattels and articles of personal property, including, without limitation, any interest therein now or at any time hereafter affixed to, attached to or used in any way in connection with or to be incorporated at any time into the Premises or placed on any part thereof wheresoever located, whether or not attached to or incorporated in the Premises, together with any and all accessions, accessories, attachments, and replacements thereof, appertaining and adapted to the complete and compatible use, enjoyment, occupancy, operation or improvement of the Premises;

TOGETHER WITH: All instruments, investment property, deposit accounts, accounts, contract rights, general intangibles, and other intangible property and rights now or hereafter relating to the foregoing property, or the operation thereof or used in connection



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

therewith, including, without limitation, all options, letters of intent, and rights of first refusal of any nature whatsoever, covering all or any portion of such property, together with any modifications thereof, and deposits or other payments made in connection therewith, existing and future development rights, permits and approvals, air rights, density bonus rights, and transferable development rights; all of Trustor's right, title, and interest in and to any awards, remunerations, settlements, or compensation heretofore made or hereafter made by any and all courts, boards, agencies, commissions, offices, or authorities, of any nature whatsoever for any governmental unit (federal, state, local or otherwise) to the present or any subsequent owner of the foregoing property, including those for any vacation of, or change of grade in, any streets affecting the foregoing property and any and all licenses and privileges obtained by Trustor from non-governmental sources;

TOGETHER WITH: All leases of the Premises, Personalty, Fixtures, or any part thereof, now or hereafter entered into and all right, title and interest of Trustor thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the lessees of their obligations thereunder (whether such cash or securities are to be held until the expiration of the terms of such leases or applied to one or more of the installments of rent coming due immediately prior to the expiration of such terms); all other rights and easements of Trustor now or hereafter existing pertaining to the use and enjoyment of the Premises; and all right, title and interest of Trustor in and to all declarations of covenants, conditions and restrictions as may affect or otherwise relate to the Premises;

TOGETHER WITH: All permits, plans, licenses, specifications, subdivision rights, security interests, contracts, contract rights, public utility deposits, prepaid sewer and water hook-up charges, or other rights as may affect or otherwise relate to the Property (as hereinafter defined) ;

TOGETHER WITH: All rents, income, issues and profits (subject, however, to the rights given in this Deed of Trust to Lender to collect and apply same), including, without limitation, the accounts, revenues, and proceeds of any business operation conducted by or on behalf of Trustor on or through the use of the Premises, prepaid municipal and utility fees, bonds, revenues, income, and other benefits to which Trustor may now or hereafter be entitled to, or which are derived from, the Property or any portion thereof or interest therein.

The foregoing listing is intended only to be descriptive of the property encumbered hereby, and not exclusive or all inclusive. It is the intent of Trustor to encumber hereby all property located or to be located upon the above-described real property. Said real property (or the leasehold estate if this Deed of Trust encumbers a leasehold estate), buildings, improvements, appurtenances, Fixtures, Personalty, additions, accretions, and other property are herein referred to as the "Property." As used herein, the term "Fixtures" shall include all articles of personal property hereinabove described, now or hereafter attached to, placed upon for a definite term, or otherwise used in connection with the Property, and shall include trade fixtures and goods which are or are to become fixtures. As used herein, the term "Personalty" shall include all furniture, furnishings,

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

equipment, machinery, goods, contract rights, general intangibles, money, deposit accounts, instruments, accounts, leases, chattel paper and other personal property described in this Deed of Trust (other than Fixtures) of any kind or character now existing or hereafter arising or acquired, now or hereafter located upon, within or about the Property, or which otherwise pertains to the use, ownership, management, operation, construction, leasing and sale of the Property, and all products and proceeds thereof, and all of Trustor's right, title, and interest in and to all such property.

Trustor makes the foregoing grant to Trustee, and to Lender, as applicable, to hold the Property in trust for the benefit of Lender and for the purposes and upon the terms and conditions hereinafter set forth.

**FOR THE PURPOSE OF SECURING:**

(1) Payment of the sum of Eight Million Four Hundred Thousand and No/100 Dollars ($8,400,000.00), together with interest thereon and certain additional costs and expenses related to or incurred in connection with or as provided in that certain Promissory Note of even date herewith (the "Note") executed by Trustor, payable to Lender, or order, and all extensions, modifications or renewals thereof (including, without limitation, any extension, modification, or renewal of the Note at a different rate of interest or on different terms);

(2) Performance of each and every term, covenant and condition of that certain Loan Agreement of even date herewith by and between Trustor and Lender, and all modifications, renewals or extensions thereof ("Agreement");

(3) Payment of all other sums, with interest, advanced, paid, or incurred by Lender or Trustee under the terms of this Deed of Trust to protect the Property or Lender's security interest therein;

(4) Payment of such additional sums, with interest, as the then record owner of the Property may later borrow from Lender, in those instances in which the later obligations are evidenced by a promissory note or notes reciting that it or they are so secured (which additional obligations shall be referred to as "future advances" in this Deed of Trust); and

(5) Trustor's performance of each agreement in this Deed of Trust.

**TRUSTOR AND LENDER AGREE AS FOLLOWS:**

**RIGHTS AND DUTIES OF THE PARTIES:**

(1) PAYMENT AND PERFORMANCE BY TRUSTOR; TITLE: Trustor represents and warrants to and for the benefit of Lender and Trustee that Trustor holds good and marketable title of record to the Property in fee simple. Trustor shall promptly: (a) pay when due all sums payable under the Note and all future advances; and (b) perform each and every term, covenant and condition of this Deed of Trust and any other obligation secured by this Deed of Trust.



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

(2) PAYMENT BY TRUSTOR OF TAXES AND OTHER IMPOSITIONS: The term "Taxes" shall mean all taxes, bonds and assessments, both general and special, affecting or levied upon the Property or any part thereof, assessments on water company stock, if any, all taxes or excises levied or assessed against Trustor, the Property, or any part thereof, in addition to or as a substitution in whole or in part for any real estate taxes or assessments, all taxes or excises measured by or based in whole or in part upon the rents, operating income, or any other factor relating to the Property, or any part thereof, and all license fees, taxes and excises imposed upon Lender (but not any federal or state income taxes imposed upon Lender) and measured by or based in whole or in part upon the obligations secured hereby. The term "Other Impositions" shall mean any fine, fee, charge, or other imposition in connection with the Property or Trustor, payment of which Lender shall deem to be necessary to protect, preserve, and defend Lender's interests hereunder. Trustor shall pay all Taxes, insurance premiums, and Other Impositions attributable to the Property, at least five (5) days before delinquency directly to the payee thereof, or in such other manner as Lender may designate in writing. Trustor shall promptly furnish to Lender all notices of amounts due under this paragraph, and if Trustor shall make payment directly, Trustor shall furnish to Lender receipts evidencing payments of Taxes at least five (5) days before delinquency and shall promptly deliver to Lender receipts evidencing all other payments above required.

Notwithstanding the foregoing, Trustor shall not be required to pay any of the Taxes or Other Impositions, so long as Trustor shall in good faith, and at its cost and expense, contest the amount or validity thereof, or take other appropriate action with respect thereto, in good faith and in an appropriate manner or by appropriate proceedings; provided that (a) such proceedings operate to prevent the collection of, or other realization upon, such Taxes or Other Impositions so contested, (b) there will be no sale, forfeiture or loss of the Property during the contest, (c) neither Lender nor Trustee is subjected to any claim against it as a result of such contest, and (d) Trustor sets aside adequate reserves and provides any other assurances as Lender may require of its ability to pay such Taxes or Other Impositions in the event Trustor is unsuccessful in its contest. Each such contest shall be promptly prosecuted to final conclusion or settlement, and Trustor shall indemnify and save Lender and Trustee harmless against all claims in connection therewith. Promptly after the settlement or conclusion of such contest or action, Trustor shall pay and discharge the amounts which shall be levied, assessed or imposed or determined to be payable, together with all penalties, fines, interests, costs and expenses in connection therewith.

At the request of Lender, or otherwise upon written agreement between Trustor and Lender, or as provided by applicable law, Trustor shall pay to Lender, on each day on which monthly installments of principal and/or interest are payable under the Note, until the Note is paid in full, an amount equal to one-twelfth (1/12) of the sum of annual Taxes and Other Impositions, together with annual insurance premiums on all policies of insurance required by this Deed of Trust, plus additional amounts reasonably estimated by Lender for the purpose of paying future installments of Taxes, Other Impositions, and insurance premiums. In such event, Trustor further agrees to cause all bills, statements, or other documents relating to Taxes, Other Impositions, and insurance premiums to be sent or mailed directly to Lender. Upon receipt of such bills, statements, or other



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

documents, and provided Trustor has deposited sufficient funds with Lender pursuant to this paragraph (2), Lender shall pay such amounts as may be due thereunder out of the funds so deposited with Lender for that purpose, subject to Lender's rights to seize and apply said funds to satisfy, in whole or in part, any default by Trustor. If at any time and for any reason the funds deposited with Lender are or will be insufficient to pay such amounts as may then or subsequently be due, Lender shall notify Trustor and Trustor shall immediately deposit an amount equal to such deficiency with Lender. Notwithstanding the foregoing, nothing contained herein shall cause Lender to be deemed a trustee of said funds or to be obligated to pay any amounts in excess of the amount of funds deposited with Lender pursuant to this paragraph (2). Lender shall not be obligated to pay or allow any interest on any sums held by Lender pending disbursement or application hereunder, and Lender may impound or reserve for future payment of Taxes, Other Impositions, and insurance such portion of such payments as Lender may in its reasonable discretion deem proper, applying the balance on the principal of or interest on the obligations secured hereby. Should Trustor fail to deposit with Lender (exclusive of that portion of said payments which has been applied by Lender on principal of or interest on the indebtedness secured hereby) sums sufficient to fully pay such Taxes, Other Impositions, or insurance premiums, at least ten (10) days before delinquency thereof, Lender may, at Lender's election, but without any obligation so to do, advance any amounts required to make up the deficiency, which advances, if any, shall be secured hereby and shall be repayable to Lender as herein elsewhere provided, or at the option of Lender the latter may, without making any advance whatever, apply any sums held by it upon any obligation of Trustor secured hereby. Upon the occurrence and during the continuance of a default on the part of Trustor in the payment or performance of any of Trustor's obligation in connection with the above Note, Lender may, at Lender's option, apply any sums or amounts in its possession or under its control, received pursuant hereto or as rents or income of the Property or otherwise, upon any indebtedness or obligation of the Trustor secured hereby in such manner and order as Lender may elect. The receipt, use or application of any such sums paid by Trustor to Lender hereunder shall not be construed to affect the maturity of any indebtedness secured by this Deed of Trust or any of the rights or powers of Lender or said Trustee under this Deed of Trust or any other obligation secured hereby.

In the event of the passage, after the date of this Deed of Trust, of any law or judicial decision deducting from the value of the Property for the purposes of taxation any lien thereon, or changing in any way the laws now in force for the taxation of deeds of trust or obligations secured by deeds of trust, or the manner of operation of any such Taxes so as to adversely affect the interest of Lender, or imposing payment of the whole or any portion of any Taxes upon Lender, then and in such event, Trustor shall bear and pay the full amount of such Taxes; provided that if for any reason payment by Trustor of any such new or additional Taxes would be unlawful or if the payment thereof would constitute usury or render the Note, or other indebtedness secured hereby, wholly or partially usurious under any of the terms or provisions of the Note, or this Deed of Trust, or otherwise, Lender may, at its option, upon thirty (30) days' written notice to Trustor, (i) declare the whole indebtedness secured by this Deed of Trust, together with accrued interest thereon, to be immediately due and payable, or (ii) pay that amount or portion of such Taxes as render the Note, or other indebtedness secured hereby, unlawful or



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

usurious, in which event Trustor shall concurrently therewith pay the remaining lawful nonusurious portion or balance of such Taxes.

(3) TRUSTOR TO PAY GROUND RENTS AND OBLIGATIONS THAT COULD RESULT IN LIENS ON THE PROPERTY: Trustor shall fully and faithfully pay and perform each and every obligation, and otherwise satisfy all conditions and covenants, which are or may be secured by any deed of trust upon the Property, or any portion thereof, existing of record as of the date this Deed of Trust is recorded. Trustor shall pay at or prior to maturity any and all ground rents and any liens, charges and encumbrances that are, later become, claim to be or appear to Lender to be prior or superior to the lien of this Deed of Trust, including, without limiting the generality of the foregoing, any and all claims for (a) work or labor performed, (b) materials and services supplied in connection with any work of demolition, alteration, improvement of or construction upon the Property, and (c) fees, charges and liens for utilities provided to the Property.

(4) TRUSTOR TO MAINTAIN INSURANCE: (a) Trustor shall maintain insurance covering the Property against loss or damage by fire, earthquake and other risks as shall from time to time be required by Lender as necessary to protect the security interest of Lender in the Property. The insurance shall be maintained with such companies, in such amounts, for such terms, and in form and content satisfactory to Lender, in Lender's reasonable opinion and judgment. Lender shall be named as the primary loss payee under all of the insurance policies, and Trustor shall assure that Lender receives a certificate from each insurance company that acknowledges Lender's position as loss payee and that states that the insurance policy cannot be terminated as to Lender except upon thirty (30) days' prior written notice to Lender. Such policies of insurance shall include, without limitation, the following: (i) insurance against loss or damage to the Property (including contents) by fire or other risk embraced by coverage of the type known as the broad form or extended coverage (or special extended coverage) in the amount required by Lender, but in no event less than one hundred percent (100%) of the full replacement cost of the Improvements, Fixtures and Personalty included within the Property without deduction for depreciation of any kind or the unpaid balance of the Note, whichever is greater, (ii) insurance against the loss of rental value of the Property on a "rented or vacant basis," including business interruption insurance, arising out of the perils insured against pursuant to clause (i) above in the amount required by Lender, but in no event less than one (1) year's gross rental income and other revenues from the Property, and (iii) comprehensive general liability insurance against claims for personal injury, death, or property damage occurring on, in, or about the Property, or arising from or connected with the use, conduct, or operation of Trustor's business in the amount from time to time required by Lender. (b) If such insurance, together with written evidence of the premium having been paid, are not delivered to Lender at least five (5) days prior to the expiration of such insurance, Lender shall have the right, but without obligation to do so, without notice to or demand upon Trustor and without releasing Trustor from any obligation under this Deed of Trust, to obtain such insurance or like insurance through or from any insurance agency or company acceptable to it, pay the premium for such insurance, and add the amount of the premium to the loan secured by this Deed of Trust, and this amount shall bear interest at the applicable rate of interest set forth in the Note.



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

Neither the Trustee nor Lender shall be responsible for such insurance or for the collection of any insurance monies, or for any insolvency of any insurer or insurance underwriter. (c) In the event that the Property is sold to Lender at any trustee's sale under this Deed of Trust (see paragraph 17, below), Trustor hereby assigns to Lender all unearned premiums on all policies of insurance covering the Property and agrees that any and all unexpired insurance covering the Property shall inure to the benefit of and pass to Lender at the time of such Trustee's sale.

(5) INSURANCE PROCEEDS, CONDEMNATION PROCEEDS AND OTHER RECOVERIES: (a) All settlements, awards, damages and proceeds received by Trustor or any other person under any fire, earthquake or other hazard insurance policy, for losses existing as of or occurring after the effective date of this Deed of Trust, or in connection with any condemnation for public use of or injury to the Property (or any part of or interest in the Property) are assigned to Lender and may, at the option of Lender, be applied by Lender as provided in section (c) of this paragraph (5). (b) All causes of action, whether accrued before or after the date of this Deed of Trust, of any type for any damage or injury to the Property (or any portion of or interest in the Property), or in connection with the sale or other transaction being financed by the funds that are secured by this Deed of Trust, or in connection with or affecting the Property (or any portion of or interest in the Property), including causes of action arising in tort or contract and causes of action in fraud or concealment of a material fact, are assigned to Lender, and the proceeds of any such causes of action may, at the option of Lender, be applied by Lender as provided in section (c) of this paragraph (5). Lender may, at its option, appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement of any such action or proceeding. Trustor agrees to execute such further assignments of any settlements, awards, damages and causes of action as Lender from time to time may request. (c) Settlements, awards, proceeds and damages (collectively, "Awards") received by Lender under the provisions of section (a) and section (b) of this paragraph (5), at the option of Lender, may (i) if a default has occurred hereunder and is continuing or if Lender determines its security hereunder has been materially impaired be applied by Lender to the outstanding balance due on the Note, or any other obligation secured by this Deed of Trust, in such order as Lender may determine; (ii) be used by Lender, without reducing the principal balance of the Note or any other obligation secured by this Deed of Trust, to replace, restore or reconstruct the Property to a condition satisfactory to Lender; or (iii) any such amount may be divided in any manner among any such application, use or release. Awards received by Lender under the provisions of section (a) and section (b) of this paragraph (5) may, at the option of Lender, be released to Trustor to replace, restore or reconstruct the Property to a condition satisfactory to Lender in the event that Lender's security interest has not been materially impaired thereby in the reasonable opinion of Lender, and provided no default under paragraph (14) exists. No such application, use or release of the Award shall cure or waive any default or notice of default under this Deed of Trust or invalidate any act done pursuant to such notice.

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

(6) MAINTENANCE AND PRESERVATION OF THE PROPERTY:

(a) Trustor shall: (i) keep the Property, and every portion thereof, in good condition and repair and replace from time to time, or at any time, any Fixtures, Personalty or other items comprising the Property which may become obsolete or worn out, with Fixtures, Personalty or other items of at least the same utility, quality and value, each such replacement to be free of any liens or security interests of any kind or character other than the lien of this Deed of Trust, or any other document or instrument securing the indebtedness hereunder; (ii) not remove or demolish the Property, or any part thereof; (iii) complete or restore promptly and in good and workmanlike manner the Property, or any part thereof, which may be damaged or destroyed, so long as Lender makes available to Trustor any insurance proceeds which arise from or in connection with such damage or destruction and which have been received by Lender; (iv) comply with and not suffer violations of (A) any and all laws, ordinances, rules, regulations, standards and orders, including, without limitation, making any alterations or additions required to be made to, or safety appliances and devices required to be installed or maintained in or about, the Property, or any portion thereof, under any such laws, ordinances, rules, regulations, standards or orders now or hereafter adopted, enacted or made applicable to the Property, or any portion thereof, and payment of any fees, charges or assessments arising out of or in any way related to treatment of the Property, or any portion thereof, as a source of air pollution, traffic, storm water runoff, or other adverse environmental impacts or effects, and (B) any and all covenants, conditions, restrictions, equitable servitudes and easements, whether public or private, of every kind and character, and (C) any and all requirements of insurance companies and any bureau or agency which establishes standards of insurability, which laws, covenants or requirements affect the Property and/or pertain to acts committed or conditions existing thereon, or the use, management, operation or occupancy thereof by Trustor and anyone holding under Trustor, including (but without limitation) such work of alteration, improvement or demolition as such laws, covenants or requirements mandate; (v) not commit or permit waste of the Property, or any portion thereof; (vi) do all other acts which from the character or use of the Property may be reasonably necessary to maintain, preserve and enhance its value, including, without limitation, keeping all plants, lawns and other landscaping in a good and thriving condition, and otherwise performing such appropriate upkeep and maintenance to the Property to insure that the Property, and each part thereof, is maintained in a first-class manner and retains at all times a first-class appearance and condition, such upkeep to include, without limitation, appropriate measures to protect wood, stucco and concrete surfaces from weathering, deterioration and aging, and to protect from and immediately remove graffiti or other defacement from such surfaces; (vii) perform all obligations required to be performed in leases or conditional sales or like agreements affecting the Property or the operation, occupation or use thereof (and, if not previously assigned, upon the occurrence and during the continuance of a default hereunder, all right, title and interest of Trustor under any such leases, conditional sales or like agreements shall be automatically assigned to Lender hereunder, together with any deposits made in connection therewith); (viii) make payment of any and all charges, assessments or fees imposed in connection with the delivery, installation or maintenance of any utility services or installations on, to or for the Property, or any portion thereof; (ix) not create any deed of trust, liens or encumbrances upon the Property subsequent hereto, the parties



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

hereby having specifically bargained in contemplation of the fact that any subsequent encumbrance upon the Property would adversely affect Lender's security interests hereunder; (x) make no further assignment of rents of the Property; and (xi) execute and, where appropriate, acknowledge and deliver such further documents or instruments as Lender or Trustee deem necessary or appropriate to preserve, continue, perfect and enjoy the security provided for herein, including (but without limitation) assignments of Trustor's interest in leases of the Property.

(b) Trustor shall not undertake or suffer to be made pursuant to section (a) of this paragraph (6), any material alterations, additions, repairs, expansions, relocations, remodeling or demolition of, or structural or other material changes in, any Improvements, Fixtures or Personalty comprising the Property, without the prior written consent of Lender, which consent shall not be unreasonably withheld, delayed or conditioned. No material changes are to be made in any plans and/or specifications as approved by Lender without Lender's prior written consent, which consent shall not be unreasonably withheld, delayed or conditioned. All such work shall be performed promptly and in good and workmanlike manner, using first quality materials in conformity with plans and specifications reasonably approved in advance by Lender, and shall be diligently prosecuted to completion free of liens and encumbrances, other than this Deed of Trust and any other document or instrument evidencing or securing the indebtedness secured hereby.

(c) Without limiting the generality of this paragraph (6), Trustor hereby warrants, represents and covenants to Lender that Trustor and the Property presently, to the best of Trustor's knowledge, comply with, and will in the future comply fully with, all applicable federal, state and local laws, ordinances, rules and regulations, and all permits and approvals issued thereunder, affecting Trustor's qualification to do business, the construction of any improvements to be located upon the Property, the sale, operation, leasing or financing of the Property and the intended occupancy, use and enjoyment thereof, including, but not limited to, all applicable subdivision laws, licenses and permits, building codes, zoning ordinances, environmental protection laws, flood disaster laws, and all laws pertaining to industrial hygiene and the environmental conditions on, under or about the Property, including, but not limited to, soil and groundwater condition. Trustor further warrants, represents and covenants that Trustor does not presently, and will not in the future, use, store, manufacture, generate, transport to or from, or dispose of any toxic substances, hazardous wastes, radioactive materials, flammable explosives or related material on or in connection with the Property or the business of Trustor on the Property; except as are described in Exhibit "B" attached hereto and incorporated herein, and which are used, stored or maintained in full and complete compliance with all such laws ("Permitted Toxic Materials"). Trustor further warrants, represents and covenants to Lender that Trustor does not presently, and will not, permit any lessee or other user of the Property to use, store, manufacture, generate, transport to or from, release or dispose of any toxic substances, hazardous materials, hazardous wastes, radioactive materials, flammable explosives or related materials on or in connection with the Property or the business of said lessee or other user of the Property. Trustor further warrants, represents and covenants to Lender that as to the Permitted Toxic Materials, Trustor shall obtain and continue to maintain all necessary



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

permits and approvals for the Permitted Toxic Materials, and comply with all laws, ordinances, rules and regulations, and all permits and approvals issued thereunder, pertaining thereto. ("Toxic substances," "hazardous materials" and "hazardous wastes" shall include, but not be limited to, such substances, materials and wastes which are or become regulated under applicable federal, state or local laws, ordinances, rules or regulations.) Without the prior written consent of Lender, which consent shall not be unreasonably withheld, delayed or conditioned, Trustor shall not seek, make or consent to any change in the zoning, conditions of use, or any other applicable land use permits, approvals or regulations pertaining to the Property, or any portion thereof, which would constitute a violation of the warranties, representations and covenants herein contained, or would otherwise materially impair the ability of Trustor to complete construction of any improvements now underway or to be constructed, constituting the Property, or would change the nature of the use or occupancy of the Property. Within five (5) days of (i) any contact from any federal, state, or local governmental agency concerning any environmental protection laws, including, but not limited to, any notice of any proceeding or inquiry with respect to the presence of any hazardous wastes, toxic substances or hazardous materials on the Property or the migration thereof from or to other property, (ii) any and all claims made or threatened by any third party against or relating to the Property concerning any loss or injury resulting from toxic substances, hazardous wastes, or hazardous materials, or (iii) Trustor's discovery of any occurrence or condition on any property adjoining or in the vicinity of the Property that could cause the Property, or any part thereof, to be subject to any restrictions on the ownership, occupancy, transferability, or loss of the Property under any federal, state, or local laws, ordinances, rules, or regulations, Trustor shall deliver to Lender a report regarding such contact and setting forth in detail and describing any action which Trustor proposes to take with respect thereto, signed by Trustor.

(d) If Trustor has executed any unsecured agreement regarding hazardous materials containing any warranties and/or indemnities by Trustor in favor of Lender pertaining to the presence or release of hazardous and/or toxic materials or other similar substances upon, within or from the Property (hereinafter "Hazardous Substances Indemnity"), then the covenants, duties, and liabilities of Trustor, and the rights and remedies of Lender with respect to the subject of hazardous and/or toxic materials, shall be governed by the provisions of the Hazardous Substances Indemnity in addition to the provisions of this Deed of Trust; provided, however, that the provisions of the Hazardous Substances Indemnity shall prevail and exclusively govern the subject matter to the extent of any duplication, conflict or inconsistency between such provisions and the provisions of this Deed of Trust, and payment or performance of Trustor's obligations under said Hazardous Substances Indemnity shall not be secured by this Deed of Trust but shall be and remain unsecured obligations of the Trustor, unless expressly otherwise therein provided.

(e) Trustor shall deliver to Lender such affidavits, reports, certificates or other written instruments as may be requested by Lender, in Lender's reasonable opinion and judgment, pertaining to Trustor's compliance with this paragraph (6). Lender may conclusively assume that the statements, facts, information and representations contained herein and/or in any affidavits, orders, receipts or other written



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

instruments that are filed with Lender or exhibited to it, are true and correct. Lender may rely thereon without any investigation or inquiry. By accepting or approving anything required to be observed, performed, fulfilled, or given to Lender pursuant to this paragraph (6), Lender shall not be deemed to have warranted or represented the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision or condition thereof, or of Trustor's compliance with the terms of this Deed of Trust, and such acceptance or approval thereof shall not be or constitute any warranty or representation to anyone with respect thereto by Lender.

(7) LEGAL ACTIONS AND PAYMENT OF RELATED COSTS: Trustor shall appear in and defend any action or proceeding that may, in the Lender's reasonable judgment, affect the Lender's security interest under this Deed of Trust or any of the rights or powers of Lender or Trustee under this Deed of Trust. Whether or not Trustor so appears or defends, Trustor shall pay all costs and expenses, including, without limitation, cost of evidence of title and attorneys' fees, that are incurred by Trustor, Lender or Trustee in any such action or proceeding in which Lender or Trustee may appear, by virtue of being made a party defendant or otherwise, and irrespective of whether the interest of Lender or Trustee in the Property is directly questioned by such action or proceeding or whether Lender's rights or interests are otherwise adversely affected thereby, or whether Lender is or shall become a party, including by way of intervention. Trustor promises and agrees to give Lender notice in writing of the pendency of any such action or proceeding promptly, but in any event no later than five (5) days, after Trustor first obtains knowledge of the pendency of such action or proceeding. Trustor shall cooperate with Lender in any action that is brought by Lender to protect its security interest under this Deed of Trust. Trustor will, upon demand by Lender, commence any action or proceeding required to protect or facilitate Lender's recovery of Awards under paragraph (5) of this Deed of Trust. If Trustor fails to bring any such action or proceeding, then Lender may, but need not, do so, and Trustor shall pay to Lender all costs, expenses and attorneys' fees that are incurred by Lender in doing so. Whenever, under this Deed of Trust, or any other document or instrument evidencing or securing the indebtedness secured hereby, Trustor is obligated to appear in and defend Lender or defend or prosecute any action or proceeding, Lender shall have the right of full participation in any such action or proceeding, with counsel of Lender's choice, and all costs and expenses incurred by Lender in connection with such participation (including, without limitation, attorneys' fees) shall be reimbursed by Trustor to Lender immediately upon demand. In addition, Lender shall have the right to approve any counsel retained by Trustor in connection with the prosecution or defense of any such action or proceeding by Trustor. All costs or expenses required to be reimbursed by Trustor to Lender hereunder shall, if not paid upon demand by Lender, thereafter bear interest at the applicable rate of interest set forth in the Note. As used herein, "proceeding" shall include litigation (whether by way of complaint, answer, cross-complaint, counter claim or third party claim), arbitration and administrative hearings or proceedings, and shall include commencement of any case or the filing of any petition for relief or other action under any Chapter of the U.S. Bankruptcy Code.

(8) LENDER'S RIGHTS TO INSPECT THE PROPERTY: Lender and its agents, employees and contractors, may enter upon the Property at any time to inspect



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

the Property for any purpose relating to Lender's rights and interests under the terms of this Deed of Trust, including, but not limited to, Trustor's compliance with the terms of paragraph (6).

(9) SUBSTITUTION OF TRUSTEE: From time to time, by an instrument signed and acknowledged by Lender, and recorded in the Office of the Recorder of the County in which the Property is located, Lender may appoint a substitute trustee or trustees in place of the Trustee. Such instrument shall refer to this Deed of Trust and shall set forth the date and instrument number or book and page of its recordation. Upon recordation of such instrument, the Trustee shall be discharged and the new trustee so appointed shall be substituted as Trustee under this Deed of Trust with the same effect as if originally named Trustee in this Deed of Trust. An instrument recorded pursuant to the provisions of this paragraph (9) shall be conclusive proof of the proper substitution of such new Trustee.

(10) MISCELLANEOUS POWERS OF LENDER AND TRUSTEE: In addition to any other powers granted in this Deed of Trust to the Trustee, from time to time, upon the written request of Lender and upon the presentation of this Deed of Trust and any obligation secured by this Deed of Trust for endorsement, and without affecting any obligation secured by this Deed of Trust or the performance of the obligations set forth in this Deed of Trust, the Trustee may, without liability and without notice to any person: reconvey all or any part of the Property to Trustor, consent to the making of any map or plat of the Property, join in granting any easement on the Property, join in any agreement subordinating the lien of this Deed of Trust, release any obligation secured by this Deed of Trust, in whole or in part, with regard to any Trustor, extend or renew the Note or any other obligation secured by this Deed of Trust, accept or release any additional security under this Deed of Trust, or accept and release the guaranty of any additional person or any obligation secured by this Deed of Trust.

(11) ASSIGNMENT AND COLLECTION OF RENTS: (a) Trustor hereby assigns absolutely to Lender the rents of the Property, provided that Trustor shall have a revocable license to collect such rents as they become due and payable, prior to any default by Trustor under paragraph (14) of this Deed of Trust. (b) Upon any default by Trustor under paragraph (14) of this Deed of Trust and during the continuance thereof, such license will, automatically, be deemed revoked without the necessity for any act or notice by Lender, and Lender, in person, by agent or by judicially appointed receiver, shall be entitled to enter upon, take possession of and manage the Property and may collect the rents of the Property, and, after so taking possession, shall be entitled to collect any rents that are past due. Lender has, however, no duty to produce rents from the Property nor any responsibility for pursuing or collecting claims or rights of Trustor. If Trustor, at or immediately prior to such taking of possession by or on behalf of Lender, has operated a business upon the Property other than the rental thereof, the authority granted herein to so take possession of the Property shall also include the authority and power to take possession of the receipts of such business and, if appropriate, to operate such business, and the receipts thereof shall be deemed herein to be a form of rents. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and of collection of rents, including, but not limited to, costs

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

and expenses of any receivership and attorneys' fees incurred by Lender in connection with the receivership, and then to the Note and any other obligations secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received. (c) At any time, whether or not an event of default exists under this Deed of Trust, or any other agreement or obligation secured by this Deed of Trust, Trustor shall, on demand, deliver to Lender from time to time all security deposits made by lessees to Trustor under the terms of any lease of all or part of the Property. These funds shall be held by Lender without interest payable to Trustor and as a part of and commingled with Lender's general funds. These funds, however, will be repayable to lessees pursuant to the provisions of the leases under which security deposits are made. In the event of any conflict between the provisions of this paragraph (11) and the provisions of a specific separate assignment of rents and/or assignment of lease(s), the provisions of the specific assignment(s) shall be deemed to govern over the provisions of this paragraph.

(12) RECONVEYANCE OF THE PROPERTY: Upon the written request of Lender stating that the Note and all other obligations secured by this Deed of Trust have been discharged, and upon surrender of this Deed of Trust, the Note or any other notes or instruments evidencing such other obligations to the Trustee, and upon payment of the Trustee's fees, the Trustee shall reconvey, without warranty, the Property or that portion of the Property then held by the Trustee under this Deed of Trust. The recitals in any such reconveyance of any matters or facts shall be conclusive proof of the truthfulness of such matters or facts. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." When the Property has been fully reconveyed, the last such reconveyance shall operate as a reassignment of all of the rents of the Property to the person or persons legally entitled to such rents. Five (5) years after issuance of such full reconveyance, the Trustee may destroy this Deed of Trust and any such notes, unless directed in such request to retain them.

(13) CHANGE OF LENDER'S RECORDS: In the event Trustor requests Lender to change any of its records relating to the Property, the Note or this Deed of Trust (including, but not limited to, changes in mailing address or ownership of the Property), Trustor shall pay a fee prescribed by the Lender to so change its records.

**ACCELERATION AND DEFAULT:**

(14) CONDITIONS UNDER WHICH LENDER MAY DECLARE A DEFAULT BY TRUSTOR: A default under this Deed of Trust shall occur in the event that: (a) subject to any applicable grace, notice or cure periods, if any, provided for in the Agreement, Trustor fails to pay when due: (i) any sum payable under the Note in accordance with the terms thereof; or (ii) any sum the payment of which is required or secured by this Deed of Trust; (b) subject to any applicable grace, notice or cure periods, if any, provided for in the Agreement, Trustor fails to perform any other obligation required to be performed by Trustor under this Deed of Trust or secured by this Deed of Trust; (c) the Property is or becomes subject to any proceedings for abatement of a public nuisance; (d) any material information given to Lender by Trustor, intended to or which does, in fact, induce the granting of any loan secured by this Deed of Trust, was not true in any respect when given, or any material information requested or required by Lender is



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

withheld or concealed by Trustor; or (e) there is an Event of Default under the Agreement.

(15) LENDER'S RIGHT TO REQUIRE IMMEDIATE PAYMENT IN FULL: In the event: (a) of a default under this Deed of Trust, or (b) Trustor sells, transfers, grants, hypothecates, conveys, encumbers, alienates, or assigns (voluntarily, involuntarily, or by operation of law), enters into a contract of sale of, or leases, the Property, or any portion of the Property or any interest therein not expressly permitted in the Agreement, or any interest in Trustor not expressly permitted in the Agreement, Lender may, at its option and without further notice to any person, declare the entire principal balance and any other obligations under the Note and/or any other obligations secured by this Deed of Trust, together with accrued interest thereon and any prepayment penalties, immediately due and payable. Trustor shall provide to Lender a complete and exact duplicate copy of any contract providing for the transfer of any interest in the Property, or any deed of trust or similar instrument creating a lien or encumbrance on the Property, immediately upon the execution of any such contract, deed of trust, or other instrument. No waiver of the Lender's right to accelerate shall be effective unless it is in writing.

(16) LENDER'S RIGHT TO PERFORM ACTS TRUSTOR FAILS TO PERFORM AND INDEMNIFICATION:

(a) If Trustor fails to make any payment when due or to do any act required to be made or performed under this Deed of Trust, subject to any applicable grace, notice or cure periods, if any, provided for in the Agreement, then Lender or Trustee, without notice to or demand upon Trustor and without releasing Trustor from any obligation under this Deed of Trust, may, but are not required to, make or do the same in such manner and to such extent as either may deem necessary or desirable to protect the security of this Deed of Trust. Lender and Trustee are authorized to (i) enter upon the Property for such purposes; (ii) appear in and defend any action or proceeding purporting to affect the security of this Deed of Trust or the rights or powers of Lender or Trustee; and (iii) pay, purchase, contest or compromise any encumbrance, charge, lien or claim of lien, in whole, in part and/or in installments, which in the judgment of either Lender or Trustee appears to be prior or superior to the lien of this Deed of Trust, the judgment of Lender or Trustee being conclusive of the matter as among the parties to this Deed of Trust. In exercising the above powers, Lender or Trustee may pay necessary costs and expenses, employ counsel, consultants, any other agents or independent contractors, and pay fees, compensation, and costs thereof. Trustor promises and agrees to pay immediately upon demand all amounts so expended by Lender or Trustee (including all such costs, expenses and attorneys' fees) under this paragraph (16), together with any fees charged by Lender in regard to such activity by Lender and interest from the date of expenditure at the applicable rate of interest set forth in the Note, with payment of such amounts being secured by this Deed of Trust.

(b) Trustor hereby indemnifies and agrees to hold harmless Lender and Trustee and their directors, officers, shareholders, agents and employees (individually and collectively the "Indemnitees") from and against: (i) any and all



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

claims, demands, actions, liabilities, or causes of action that are asserted against any Indemnitee by any person or entity if the claim, demand, action, liability, or cause of action, directly or indirectly, relates to a claim, demand, action, liability, or cause of action that the person or entity has or asserts based upon, arising out of, or in connection with, the Property, the conduct of Trustor, any action or non-action by Trustor in connection with the Property, or this Deed of Trust; and (ii) any and all claims, liabilities, losses, costs, or expenses (including court costs and attorneys' fees) that any Indemnitee suffers or incurs as a result of the assertion of any such claim, demand, action, liability or cause of action (excluding liability to Indemnitees to the extent resulting solely and directly from the gross negligence or willful misconduct of any Indemnitee). The foregoing indemnity shall survive the release of this Deed of Trust, whether such release is as a result of payment of the indebtedness secured hereby, foreclosure, acceptance of a deed in lieu of foreclosure, other action, or otherwise.

(17) TRUSTEE'S RIGHTS AND DUTIES TO SELL THE PROPERTY: (a) Upon the occurrence and during the continuance of a default under this Deed of Trust by Trustor, Lender may then or thereafter execute or cause the Trustee to execute a written notice of such default and of its election to have the Property sold to satisfy the obligations secured by this Deed of Trust. Such notice shall be recorded in the office of the Recorder of the County where the Property is located. (b) When the minimum period of time required by law following recordation of such notice of default has elapsed, and notice of sale having been given as then required by law, the Trustee, without demand upon Trustor, shall sell the Property at the time and place of sale fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as Lender may determine, at public auction to the highest bidder for cash or a cash equivalent acceptable to Trustee, in lawful money of the United States, payable at time of sale. Lender shall have the right, at its option, to offset Lender's bid(s) to the extent of the total amount due Lender, including but not limited to all Trustee's fees, costs, expenses (including, without limitation, premiums for guarantees or other evidence of title), and other amounts secured by this Deed of Trust. The Trustee may postpone the sale of all or any portion of the Property by public notice at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Additionally, Lender, from time to time before any Trustee's sale, may rescind or cause to be rescinded any notice of default and election to sell or notice of sale by executing and delivering to Trustee a written notice of such rescission, which notice, when recorded, shall also constitute a cancellation of any prior declaration of default and demand for sale. The exercise by Lender of such right of rescission shall not constitute a waiver of any breach or default then existing or subsequently occurring, or impair the right of Lender to execute and deliver to Trustee, as above provided, other declarations or notices of default and demand for sale of the Property to satisfy the obligations hereof, nor otherwise affect any provision, covenant or condition of the Note or the Agreement or any of the rights, obligations or remedies of Trustee to Lender. (c) The Trustee shall deliver to the purchaser at such sale its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. (d) Any person, including Trustor, Lender or Trustee may purchase at such sale. After deducting all costs, fees and expenses of the Trustee and of this Deed of Trust, including, without limitation, cost of



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

evidence of title and attorneys' fees in connection with the sale, the Trustee shall apply the proceeds of the sale to the payment of: first, all sums expended under the terms of this Deed of Trust not then repaid, with interest at the applicable rate of interest set forth in the Note; second, the payment of all other sums then secured by this Deed of Trust; and third, the remainder, if any, to the person or persons legally entitled to such proceeds.

(18) OTHER REMEDIES IF TRUSTOR DEFAULTS: (a) All of the remedies of Lender and Trustee set forth in this Deed of Trust are intended to be in addition to and not in substitution for any other remedies available to Lender or Trustee at law or in equity. It is expressly understood and agreed that Lender or Trustee, or both, may bring suit in any court of competent jurisdiction to foreclose this Deed of Trust by judicial action or to obtain specific performance of the assignment of rents contained in this Deed of Trust. In connection with any such action, Lender or Trustee may apply to the court for the appointment of a receiver to take possession of the Property, operate the business of Trustor being conducted on the Property, utilize and enforce all agreements of Trustor in respect of the operation of such business, the utilization of any such agreement being at the election of Lender or the receiver, to be exercised at any time after the occurrence and during the continuance of a default hereunder, receive the rents of the Property and apply the same to the obligations of Trustor under this Deed of Trust and under the Note and any other obligations secured by this Deed of Trust. (b) Neither the acceptance of this Deed of Trust nor its enforcement in any manner shall prejudice the right of Lender or Trustee to realize upon or enforce any other security now or later held by Lender or Trustee. Trustor promises and agrees that the rights of Lender and Trustee under this Deed of Trust, and with respect to any other security now or later held by Lender, may be enforced in such order and manner as Lender and Trustee, or either of them, may determine in their sole and absolute discretion.

(19) TRUSTOR'S OBLIGATIONS AND LENDER'S RIGHTS NOT WAIVED: By accepting payment of any sum secured by this Deed of Trust after its due date, or by accepting late performance of any obligation secured by this Deed of Trust, or by making any payment or performing any act on behalf of Trustor that Trustor was obligated to make or perform under this Deed of Trust but failed to make or perform, or by adding any payment so made by Lender to the Note secured by this Deed of Trust, Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to make any such prompt payment or to perform any such act. No failure or delay on the part of Lender, Trustee, or any holder of the Note or this Deed of Trust in the exercise of any power, right or privilege hereunder shall operate as a waiver thereof. No single or partial exercise of any such power, right or privilege shall preclude any other or further exercise thereof or of any other right, power or privilege. No exercise of any right or remedy of Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right or remedy contained in this Deed of Trust or provided by law. All rights and remedies existing under this Deed of Trust are cumulative to, and not exclusive of, any rights or remedies otherwise available.

(20) SUCCESSORS IN INTEREST: The terms, agreements, and conditions contained in this Deed of Trust shall apply to, be binding upon and inure to the benefit of,

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

all of the parties to this Deed of Trust, their heirs, personal representatives, successors and assigns.

(21) STATEMENTS CONCERNING THE STATUS OF THE LOAN: From time to time as required by law, Lender shall furnish to Trustor such statements as may be required concerning the status of the obligations secured by this Deed of Trust. Trustor promises and agrees to pay upon demand for such statements the maximum amount permitted by law.

(22) TRUSTEE'S OBLIGATIONS: The Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. The Trustee is not obligated to notify any party to this Deed of Trust of pending sale under any other deed of trust or of any action or proceeding in which Trustor, Lender or Trustee is a party unless such action is brought by the Trustee. The Trustee shall not be obligated to perform any act required of it under this Deed of Trust unless the performance of such act is requested in writing and the Trustee is reasonably indemnified against loss, costs, liability and expense.

(23) OBLIGATIONS OF TRUSTOR ARE JOINT AND SEVERAL; GENDER AND NUMBER: If more than one person has executed this Deed of Trust as "Trustor," the obligations of all such persons under this Deed of Trust shall be joint and several. In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(24) NO OFFSETS: No offset or claims which Trustor now or in the future may have against Lender shall relieve Trustor from making payments or performing any other obligations contained in or secured by this Deed of Trust. Despite any right or option that may be granted to Lender or Trustee by this Deed of Trust or in the evidence of any obligations secured by this Deed of Trust or document ancillary to this Deed of Trust to receive, collect, accept deposit of, use, apply or in any other manner obtain or dispose of any funds or property, the same shall not be deemed to constitute any credit against or to satisfy any obligation secured by this Deed of Trust, in whole or in part, unless and until such funds or property shall be both so obtained and expressly so applied by Lender or Trustee to such satisfaction of such obligation and then only in the manner and to the extent of such application.

(25) GOVERNING LAW: The loan secured by this Deed of Trust is made pursuant to the laws of the State of California, and the rules and regulations promulgated thereunder. The loan contracts between the parties, including this Deed of Trust, shall be construed and governed by such laws, rules, and regulations.

(26) AGREEMENT CHANGED ONLY BY WRITING: This Deed of Trust cannot be changed except by agreement in writing signed by Trustor and Lender.

(27) TIME: Time is of the essence in connection with all of Trustor's obligations under this Deed of Trust.



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

(28) NOTICE: Except for any notice required under applicable law to be given in another manner: (a) any notice to Trustor provided for in this Deed of Trust shall be addressed to Trustor at the address of Trustor set forth above, or to such other address as Trustor may designate by notice to Lender pursuant to the terms of paragraph (28)(c), and (b) any notice to Lender provided for in this Deed of Trust shall be addressed to Lender as follows:

PREFERRED BANK
601 S. Figueroa Street, 29th Floor
Los Angeles, California 90017
Attention: Note Department

and to such other address as Lender may designate by notice to Trustor, pursuant to the terms of paragraph (28)(c).

(c) Except as otherwise provided by law, all notices, requests, demands, directions, and other communications provided for in this Deed of Trust must be in writing and sent by facsimile and mail or certified mail to the appropriate party at its respective address. Any notice given by facsimile must be confirmed within forty-eight (48) hours by letter mailed via regular mail to the appropriate party at its respective address. If any notice is given by certified mail, it will be effective when deposited in the mails with first class or airmail postage prepaid; or if given by facsimile and mail, when the facsimile is sent.

(29) TITLES, CAPTIONS, AND HEADINGS: The titles, captions, and headings to paragraphs contained in this Deed of Trust are for assistance in identification only and are not to be considered part of the substance of the provisions of this Deed of Trust.

(30) SEVERABILITY OF PROVISIONS: If any paragraph, clause or provision of this Deed of Trust is construed or interpreted by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those paragraphs, clauses or provisions so construed or interpreted and shall not affect the remaining paragraphs, clauses and provisions of this Deed of Trust.

(31) ACKNOWLEDGMENT OF TRUSTOR'S UNDERSTANDING OF DEED OF TRUST: The foregoing terms, provisions and conditions of this Deed of Trust have been read and are understood by Trustor. Trustor hereby acknowledges receipt of a copy of this Deed of Trust.

(32) LENDER'S RELIANCE: The financial accommodations made or to be made by Lender to Trustor are being made, renewed or extended, as applicable, by Lender to Trustor at the request and urging of Trustor and this Deed of Trust is being given in consideration of such financial accommodations, and Lender may rely upon the validity and enforceability of this Deed of Trust in making such financial accommodations.



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

(33) SECURITY AGREEMENT:

(a) Security Interest. This Deed of Trust shall also constitute and serve as a security agreement and financing statement for Personalty, Fixtures, and any of the Property in which a security interest can be perfected under and within the meaning of Division 9 of the California Uniform Commercial Code, and shall grant to Lender, until the obligations secured hereby shall be satisfied, a first priority security interest, including but not limited to a fixture filing, pursuant to Division 9 of the California Uniform Commercial Code with respect to the Personalty and Fixtures. To this end, Trustor shall and hereby does grant to Lender, a first priority security interest in, under and to the Personalty, Fixtures, and any of the Property in which a security interest can be perfected under Division 9 of the California Uniform Commercial Code.

(b) Financing Statements. Trustor authorizes Lender to file such financing statements and cause such financing statements and other assurances as Lender may from time to time require to be recorded and filed at such times and places as may be required or permitted by law to create, perfect and preserve such security interest.

(c) Remedies on Default. Upon the occurrence and during the continuance of a default hereunder, Lender may, at its option: (i) exercise any remedy permitted by law or in equity, including without limitation, all the rights and remedies of a secured party under the California Uniform Commercial Code in any jurisdiction where enforcement is sought, whether in California or elsewhere; (ii) notify any parties obligated on any of the Personalty or Fixtures to make payment to Lender and enforce collection thereof; (iii) apply any sums received or collected from or on account of any Personalty or Fixtures, including the proceeds of any sales thereof, to the payment of any indebtedness of Trustor to Lender in any order, including the costs and expenses incurred in preserving and enforcing the rights of Lender and attorneys' fees, in such order and manner as Lender in Lender's sole discretion determines. All of Lender's rights and remedies shall be cumulative and not exclusive.

(d) Fixture Filing. This Deed of Trust shall constitute a fixture filing under the California Uniform Commercial Code. Lender's address from which information concerning Lender's security interest can be obtained is set forth in paragraph (28) above, subject to change as therein provided.

(34) SALE OF INTEREST: Trustor acknowledges and accepts that Lender may, at any time, in Lender's sole discretion sell all or any portion of Lender's interest in the Note and this Deed of Trust to one or more third parties. The sale of all or any part of Lender's interest in the Note or Deed of Trust shall not relieve Trustor of any of Trustor's obligations hereunder.

(35) SEPARATE PROPERTY: Any married person executing this Deed of Trust in an individual capacity agrees that recourse may be had to his or her separate property for satisfaction of all sums secured under this Deed of Trust.



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

(36) BOOKS AND RECORDS: Trustor shall keep and maintain at all times at Trustor's address stated above, or at such other place as Lender may approve in writing from time to time, complete and accurate books or accounts and records adequate to reflect correctly the results of the operation of the Property and copies of all written contracts, leases, rental agreements, concessions, licenses, and other documents and instruments which affect the Property, or any portion thereof or interest therein. Such books, records, contracts, leases, documents, and other instruments shall be subject to examination and inspection by Lender, or Lender's agents or designated auditors, at any reasonable time and from time to time.

(37) INSPECTION, APPRAISAL, AND ASSESSMENTS: Lender may, at any time and from time to time and as and when Lender deems it to be appropriate, whether or not Trustor is then in default,(a) enter upon the Premises, directly or through one or more agents or independent contractors, to inspect any and all Property which is security for the obligations herein described, and (b) cause to be performed and prepared one or more appraisals and/or preliminary or other environmental assessments of the Property, or any portion thereof, in form and content satisfactory to Lender and meeting all requirements or standards of applicable laws, regulations, ordinances, orders, and generally recognized industry standards relating thereto. All costs and expenses incurred by Lender or Trustee in connection with any such inspection, appraisal, or assessment, shall be payable by Trustor upon demand and shall be secured by this Deed of Trust. All reports and other evidence and work papers relating to such inspections, appraisals, and assessments, shall be and remain the sole property of Lender, and Trustor hereby waives any right which Trustor may have by agreement or by operation of law to receive an original or duplicate thereof. Any appraisal or assessment may, at Lender's sole election, be relied upon by Lender in taking any action Lender deems to be necessary or appropriate in connection with the enforcement of its rights and exercise of remedies under or by virtue of this Deed of Trust, or under any obligation secured hereby, or under any separate obligation pertaining to the Property, or in connection with the protection, maintenance, preservation, remediation, restoration, or repair of the Property. Unless Lender otherwise expressly declares in writing, neither said appraisal nor assessment shall constitute conclusive evidence of the value or condition of the Property or as a representation or warranty by Lender as to the value or condition of the Property, and may not be used or relied upon by Trustor for any purpose.

(38) DEFINITIONS: All terms not defined herein shall be defined as set forth in the Agreement.

(39) **WAIVER OF RIGHT TO TRIAL BY JURY; JUDICIAL REFERENCE IN THE EVENT OF JURY TRIAL WAIVER UNENFORCEABILITY. EACH PARTY TO THIS DEED OF TRUST HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (1) ARISING UNDER THIS DEED OF TRUST OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION THEREWITH, OR (2) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT**



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

**TO THIS DEED OF TRUST OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND EACH PARTY HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY. NOTWITHSTANDING THE FOREGOING TO THE CONTRARY, IN THE EVENT THAT THE JURY TRIAL WAIVER CONTAINED HEREIN SHALL BE HELD OR DEEMED TO BE UNENFORCEABLE, EACH PARTY HERETO HEREBY EXPRESSLY AGREES TO SUBMIT TO JUDICIAL REFERENCE, IN ACCORDANCE WITH CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 638, ET SEQ. ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING HEREUNDER FOR WHICH A JURY TRIAL WOULD OTHERWISE BE APPLICABLE OR AVAILABLE. PURSUANT TO SUCH JUDICIAL REFERENCE, THE PARTIES AGREE TO THE APPOINTMENT OF A SINGLE REFEREE AND SHALL USE THEIR BEST EFFORTS TO AGREE ON THE SELECTION OF A REFEREE. IF THE PARTIES ARE UNABLE TO AGREE ON A SINGLE REFEREE, A REFEREE SHALL BE APPOINTED BY THE COURT TO HEAR ANY DISPUTES HEREUNDER IN LIEU OF ANY SUCH JURY TRIAL. EACH PARTY ACKNOWLEDGES AND AGREES THAT THE APPOINTED REFEREE SHALL HAVE THE POWER TO DECIDE ALL ISSUES IN THE APPLICABLE ACTION OR PROCEEDING, WHETHER OF FACT OR LAW, AND SHALL REPORT A STATEMENT OF DECISION THEREON. THE PARTIES HERETO HEREBY AGREE THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH BOTH SIDES AGREEING TO THE SAME KNOWINGLY AND BEING AFFORDED THE OPPORTUNITY TO HAVE THEIR RESPECTIVE LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN. ANY PARTY TO THIS DEED OF TRUST MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS PARAGRAPH WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY AND THE AGREEMENTS CONTAINED HEREIN REGARDING THE APPLICATION OF JUDICIAL REFERENCE IN THE EVENT OF THE INVALIDITY OF SUCH JURY TRIAL WAIVER.**



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

Trustor has initialed this paragraph (39) to further indicate Trustor's awareness and acceptance of each and every provision hereof.

DS

Trustor's Initials

[Signature page to follow.]

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

THE UNDERSIGNED TRUSTOR REQUESTS THAT A COPY OF ANY NOTICE OF DEFAULT AND ANY NOTICE OF SALE HEREUNDER BE MAILED TO TRUSTOR AT TRUSTOR'S ADDRESS SET FORTH ABOVE.

("Trustor")

CANTOR GROUP LLC,
a California limited liability company

By: ______________________
Name: Deba Shyam
Its: General Manager

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Los Angeles )

On June 8, 2017 before me, G. Leach, Notary Public
(insert name and title of the officer)

personally appeared Deba Shyam,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

G. LEACH
COMM. # 2165573
NOTARY PUBLIC • CALIFORNIA
LOS ANGELES COUNTY
Comm. Exp. OCT. 21, 2020

Signature [signature] (Seal)

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

**EXHIBIT "A"**
LEGAL DESCRIPTION

The land situated in the City of Pasadena, County of Los Angeles, State of California, and described as follows:

PARCEL 1:

LOT 10 OF TRACT NO. 63103, IN THE CITY OF PASADENA, AS PER MAP RECORDED IN BOOK 1369 PAGES 35 THROUGH 52 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AMENDED PURSUANT TO THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED DECEMBER 3, 2013 AS INSTRUMENT NO. 20131708591 OF OFFICIAL RECORDS.

PARCEL 2:

A RECIPROCAL ACCESS EASEMENT OVER THOSE AREAS SET OUT ON THE MAP SHOWN ABOVE.

PARCEL 3:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN CONSOLIDATED AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (SOUTH ORANGE GROVE PARCELS) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716500 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 4:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN ROSE PARADE GRANDSTAND EASEMENT AGREEMENT (ORANGE GROVE AVENUE) RECORDED JULY 21, 2005 AS INSTRUMENT NOS. 05-1721787 AND 05-1721788 BOTH OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 5:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING GARAGE EASEMENT AGREEMENT RECORDED JULY 2, 2007 AS INSTRUMENT NO. 20071579026 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 6:

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING EASEMENT AGREEMENT RECORDED DECEMBER 28, 2011 AS INSTRUMENT NO. 20111763712 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

APN: 5713-013-057

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

**EXHIBIT "B"**
**(PERMITTED TOXIC MATERIALS)**

Trustor shall not permit there to be any hazardous and/or toxic materials at, on, in, around and/or under the Property and improvements, other than those as used in the regular course of business and for which Trustor has licenses from the proper authority, such as a government agency or regulatory body, and further, notwithstanding the foregoing, Trustor hereby expressly covenants, represents and warrants to Lender that all such materials shall be used or stored in strict compliance with the provisions as set forth in paragraph (6)(c) of the Deed of Trust for compliance with all state and federal laws, rules, regulations, relating to or governing the use, storage and/or presence of toxic materials and/or hazardous substances.

Notwithstanding any provisions to the contrary contained in this Exhibit "B" and paragraph (6)(c) of the Deed of Trust, in the event Trustor has executed any unsecured Hazardous Substances Indemnity Agreement ("Hazardous Substances Indemnity") in favor of Lender pertaining to the presence or release of hazardous and/or toxic materials or other similar substances upon, within or from the Property, then the covenants, duties and liabilities of Trustor, and the rights and remedies of Lender with respect to the subject of hazardous and/or toxic materials, shall be governed by the provisions of the Hazardous Substances Indemnity in addition to the provisions of the Deed of Trust; provided, however, that the provisions of said Hazardous Substances Indemnity shall prevail and exclusively govern the subject matter to the extent of any duplication, conflict or inconsistency between such provisions and the provisions of this Deed of Trust, and payment or performance of Trustor's obligations under said Hazardous Substances Indemnity shall not be secured by this Deed of Trust, but shall be and remain unsecured obligations of the Trustor.

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

# Exhibit D

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

**This page is part of your document - DO NOT DISCARD**

# 20170671621

**Pages: 0009**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County, California**

**06/16/17 AT 08:00AM**

| | |
|---|---|
| FEES: | 77.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 77.00 |

**PCOR SURCHARGE $20.00**

LEADSHEET

201706160170023

**00013856471**

008398374

**SEQ:**
**05**

SECURE - 8:00AM

**THIS FORM IS NOT TO BE DUPLICATED**

E452320

128_1904887_

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

6

Recording Requested By:
FIRST AMERICAN TITLE
National Commercial Services

**RECORDING REQUESTED BY**
**AND WHEN RECORDED, MAIL TO:**

PREFERRED BANK
601 S. Figueroa Street, 29th Floor
Los Angeles, California 90017
Attention: Note Department

Assessor's Parcel No.: 5713-013-057

NCS-833699-SD

**ABSOLUTE ASSIGNMENT OF LEASES, LEASE GUARANTIES, RENTS, ISSUES AND PROFITS** "UNRECORDED LEASES"

**(210 S. Orange Grove Boulevard)**

FOR VALUE RECEIVED, the undersigned, CANTOR GROUP LLC, a California limited liability company ("Assignor"), grants, transfers and assigns to PREFERRED BANK, a California banking corporation ("Assignee"), all of Assignor's right, title and interest in all leases executed by Assignor, or Assignor's predecessors in interest, or Assignor's successors in interest, in regard to the real property described below, as lessor (individually and collectively, the "Leases"), concerning real property located in Los Angeles County, California, and legally described as set forth in Exhibit "A" hereto and incorporated herein by reference ("Property"), and all lease guaranties in regard to the Leases (individually and collectively, the "Lease Guaranties") and all rents, issues and profits of the Property, including the cash proceeds thereof, to the fullest extent permitted by California Civil Code Section 2938. Assignor's interests in the Property are the subject of that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated June 8, 2017 ("Deed of Trust"), by Assignor, as Trustor, to First American Title Insurance Company, as Trustee, for Assignee, as Beneficiary, which Deed of Trust secures an obligation or obligations in the original principal amount of Eight Million Four Hundred Thousand and No/100 Dollars ($8,400,000.00), plus permitted accrued interest pursuant to that certain Loan Agreement ("Loan Agreement") between Assignor, on the one hand, and Assignee, on the other hand, dated June 8, 2017, in regard to which this assignment is given. This assignment includes the assignment of Assignor's interest in all extensions and renewals of the Leases and all extensions or renewals of the Lease Guaranties.

1. Assignor warrants that title to all of such property interests is in Assignor; that Assignor has the right to make this assignment; that full title and right to receive all rents, issues and profits under the Leases and all amounts accruing under the Lease Guaranties are vested absolutely in Assignee by this assignment; and that the rental property and rental payments and other sums are free from liens, encumbrances, claims and setoffs of every kind whatsoever, other than the liens and rights of Assignee.

2. Assignor, to the extent made necessary hereby, appoints Assignee its true, lawful and irrevocable attorney to demand, receive and enforce payment, to give receipts, releases and

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

satisfactions, and to sue, either in the name of Assignor or in the name of Assignee, for all rents and other sums payable in regard to the Leases and Lease Guaranties.

3. Until a default in the payment of any indebtedness to which this assignment is related or in the performance of any obligation, covenant or agreement contained herein or in the Deed of Trust on the part of Assignor to be performed ("Default") has occurred and is continuing, Assignor shall have the right to collect said rents or other sums, but according to the terms and conditions hereinafter specified. During the continuance of a Default by Assignor, Assignee shall be entitled to collect and receive all rents, issues and profits that have accrued but remain unpaid and uncollected by Assignor (or Assignor's agent, or for Assignor's benefit) on that date, and all rents, issues and profits that accrue after that date.

4. Assignee may enforce its rights to collect rents, issues and profits in any manner permitted by law, including, without limitation, (a) the appointment of a receiver, (b) obtaining possession of the rents, issues or profits, (c) delivery to any one or more of the tenants of a written demand for the turnover of rents, issues and profits in the form specified by California Civil Code Section 2938, and (d) delivery to Assignor of a written demand for the rents, issues and profits as specified by California Civil Code Section 2938.

5. Assignor consents that, without further notice and without releasing the liability of Assignor, Assignee may, at Assignee's discretion, give grace or indulgence in the collection of all rents and sums due or to become due under the Leases and Lease Guaranties and grant extensions of time for the payment of the same before, at, or after maturity.

6. Nothing herein contained shall be construed as imposing upon Assignee the duty to collect any rent or any other sum. Further, nothing herein contained shall be construed as imposing upon Assignee any duty in regard to causing the Property to be rented, in whole or in part, or to be utilized in any other way.

7. Nothing herein contained shall be construed as requiring Assignee to give credit to Assignor or any successor in interest of Assignor in regard to Assignor's obligation or obligations to Assignee which are related to this assignment, or as creating any setoff against or reduction of said obligation or obligations for any sum or sums except to the extent of any sum or sums actually received and so applied by Assignee.

8. Assignee does not assume any of the landlord's obligations under the Leases or the Lease Guaranties, or any of them, and Assignor agrees (a) to keep and perform all obligations of the landlord under the Leases and the Lease Guaranties and to save Assignee harmless from the consequences of any failure to do so; and (b) to preserve the Property subject to the Leases free and clear of liens and encumbrances, except to or with the written consent of Assignee.

9. Assignor agrees that Assignor will not assign any other interest in the Leases or the Lease Guaranties, or any of them, or in the rents, issues or profits of the Property; that notice of this assignment may be given to any tenant or lease guarantor at any time at Assignee's option; and that, in the event any payment of rent or any other sum is made to Assignor, Assignor will hold such rent or other sum as trustee for Assignee to the extent that the same equals any installment

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

or installments then due and payable under the related obligation or obligations, any installment or installments on any lien which may be superior to the Deed of Trust in terms of priority and any taxes or assessments then due and payable in regard to the Property.

10. Assignor further agrees, at its sole cost and expense: (i) to enforce or secure the performance of each obligation of the Leases by the respective Lessees to be performed and each obligation of the Lease Guaranties by the respective lease guarantor to be performed; (ii) not to anticipate the rents thereunder, nor to waive or release any party thereunder of or from his, her or its obligations; and (iii) not to modify the Leases or Lease Guaranties, or any of them, nor accept surrender thereunder.

11. This assignment is in addition to the Deed of Trust and is not to be construed as being a waiver of any of the terms thereof or of the obligations which the Deed of Trust secures.

12. If, as and when a Default occurs, Assignee shall be entitled to all attorneys' fees paid or incurred by Assignee for so doing, all fees and commissions paid or incurred by Assignee for or in connection with management of the Property, and reimbursement of all expenses paid or incurred by Assignee for or in connection with maintaining the Property, all added to the obligation hereinabove described as though advances under the Deed of Trust.

13. This assignment is irrevocable and shall remain in full force and effect until and unless there is payment in full of all obligations related to it or it is released in writing by Assignee.

14. A Default hereunder shall constitute a default under the Loan Agreement, the Note, the Deed of Trust and all other instruments evidencing or securing the Note, as those terms are defined in the Loan Agreement, and, upon occurrence and during the continuance of any such Default, at the option of Assignee, without notice to Assignor, all unpaid indebtedness secured by said instruments shall become immediately due and payable.

15. Nothing contained in this assignment or in any action or undertaking by Assignee pursuant to this assignment shall be deemed or be construed to constitute Assignee as a mortgagee in possession of the Property or to obligate Assignee to take any action hereunder, to incur expenses or discharge any obligation, duty or liability hereunder or under the Leases or Lease Guaranties. Until the loan as evidenced by the Note and all indebtedness secured hereby shall have been paid in full, Assignor will from time to time execute and deliver to Assignee upon demand any and all writings which Assignee may deem necessary or desirable to carry out the purposes and intent hereof, and which will enable Assignee to enforce any right or remedy hereunder.

16. Except to the extent caused by the gross negligence or willful misconduct of Assignee, Assignor hereby indemnifies and holds Assignee harmless from and against any and all liability, loss, or damage which Assignee may incur under the Leases or Lease Guaranties or by reason of this assignment, and of and from any and all claims and demands whatsoever which may be asserted against Assignee by reason of any alleged obligation or undertaking to be performed or discharged by any mortgagee or holder of a trust deed under the Leases or this assignment. Nothing contained in the Note, the Deed of Trust, the Loan Agreement, or in this assignment shall

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

be construed to bind Assignee to the performance of any of the terms or provisions contained in any of the Leases or Lease Guaranties, or otherwise to impose any obligation on Assignee, including, but not limited to, any liability under any covenant of quiet enjoyment contained in the Leases in the event that any tenant shall have been joined as a party defendant in any action to foreclose the Deed of Trust and shall have been barred and foreclosed thereby of all right, title, and interest, and equity of redemption, in said premises. Prior to actual entry and taking possession of the Property, or any portion thereof, by Assignee, even though Assignee may be receiving rental income, this assignment shall not operate to place responsibility for control, care, management, or repair of said Property upon Assignee, nor for the carrying out of any terms and provisions of the Leases or Lease Guaranties. Should Assignee incur any liability described in this Section, or loss or damage under the Leases or Lease Guaranties or under or by reason of the assignment, or in defense of any such claims or demands, Assignor shall immediately upon demand reimburse Assignee for the amount thereof, including all costs, expenses and attorneys' fees incurred in connection therewith, and Assignee may retain possession and collection of any and all rents and other income derived from the Leases, the Lease Guaranties and/or the Property, and, from time to time, apply them in or towards satisfaction of or reimbursement for any such loss, damage, cost or expense.

[Signature page to follow.]

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

Dated: June 8, 2017

"ASSIGNOR"

CANTOR GROUP LLC,
a California limited liability company

By:
Name: Deba Shyam
Its: General Manager

**(ALL SIGNATURES MUST BE ACKNOWLEDGED)**

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.


## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Los Angeles )

On June 8, 2017 before me, G. Leach, Notary Public
(insert name and title of the officer)

personally appeared Deba Shyam,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

G. LEACH
COMM. # 2165573
NOTARY PUBLIC • CALIFORNIA
LOS ANGELES COUNTY
Comm. Exp. OCT. 21, 2020

Signature ______ (Seal)

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

**EXHIBIT "A"**
LEGAL DESCRIPTION

The land situated in the City of Pasadena, County of Los Angeles, State of California, and described as follows:

PARCEL 1:

LOT 10 OF TRACT NO. 63103, IN THE CITY OF PASADENA, AS PER MAP RECORDED IN BOOK 1369 PAGES 35 THROUGH 52 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AMENDED PURSUANT TO THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED DECEMBER 3, 2013 AS INSTRUMENT NO. 20131708591 OF OFFICIAL RECORDS.

PARCEL 2:

A RECIPROCAL ACCESS EASEMENT OVER THOSE AREAS SET OUT ON THE MAP SHOWN ABOVE.

PARCEL 3:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN CONSOLIDATED AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (SOUTH ORANGE GROVE PARCELS) RECORDED DECEMBER 5, 2013 ASINSTRUMENT NO. 20131716500 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 4:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN ROSE PARADE GRANDSTAND EASEMENT AGREEMENT (ORANGE GROVE AVENUE) RECORDED JULY 21, 2005 AS INSTRUMENT NOS. 05-1721787 AND 05-1721788 BOTH OF FFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 5:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING GARAGE EASEMENT AGREEMENT RECORDED JULY 2, 2007 AS INSTRUMENT NO. 20071579026 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 6:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING EASEMENT AGREEMENT

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

RECORDED DECEMBER 28, 2011 AS INSTRUMENT NO. 20111763712 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

APN: 5713-013-057

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

# Exhibit E

**This page is part of your document - DO NOT DISCARD**

# 20170671625

**Pages: 0030**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County, California**

**06/16/17 AT 08:00AM**

| | |
|---|---|
| FEES: | 145.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 145.00 |

LEADSHEET

201706160170023

**00013856475**

008398374

**SEQ: 09**

SECURE - 8:00AM

**THIS FORM IS NOT TO BE DUPLICATED**

E452320

128_1904887

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

9

Recording Requested By:
FIRST AMERICAN TITLE
National Commercial Services
AND WHEN RECORDED, MAIL TO:

PREFERRED BANK
601 S. Figueroa Street, 29th Floor
Los Angeles, California 90017
Attention: Note Department

Assessor's Parcel No.: 5713-027-065

NCS-833700-SO

**DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING**

**(244 S. Orange Grove Boulevard)** "UNRECORDED LEASES"

This Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing ("Deed of Trust") is made to be effective on June 8, 2017, by CANTOR GROUP LLC, a California limited liability company ("Trustor"), whose address is 216 The Promenade North, Suite 200, Long Beach, California 90802, to FIRST AMERICAN TITLE INSURANCE COMPANY, as Trustee ("Trustee"), for the benefit of PREFERRED BANK, a California banking corporation, as Beneficiary ("Lender").

THIS DEED OF TRUST ALSO CONSTITUTES A FIXTURE FILING UNDER DIVISION 9 OF THE CALIFORNIA UNIFORM COMMERCIAL CODE AND COVERS GOODS WHICH ARE OR ARE TO BECOME FIXTURES ON THE REAL PROPERTY DESCRIBED ON EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF. TRUSTOR IS A RECORD OWNER OF AN INTEREST IN SAID REAL PROPERTY.

**GRANT IN TRUST:**

Trustor irrevocably grants, transfers and assigns to Trustee, in trust, for the benefit of Lender, with power of sale, all of Trustor's interest in that certain real property located in Los Angeles County, California, described as:

[SEE EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN BY THIS REFERENCE]

TOGETHER WITH: All right, title and interest which Trustor now has or may later acquire in such real property and all appurtenances, easements, covenants, rights of way, tenements, hereditaments and appurtenances thereunto belonging or in any way appertaining thereto now or hereafter, and all of the estate, right, title, interest, claim, demand, reversion or remainder whatsoever of Trustor therein or thereto, at law or in equity, now or hereafter in possession or expectancy, including, without limitation, all mineral, oil, and gas rights and royalties and profits therefrom, all water and water rights and shares of stock pertaining to water and water rights, and all sewers, pipes, conduits, wires and other facilities furnishing utility or services to the real property (collectively, the "Land");



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

TOGETHER WITH: All right, title and interest which Trustor now has or may later acquire in and to all buildings, structures and improvements now or hereafter erected on the Land, including, without limitation, all plant equipment, apparatus, machinery and fixtures of every kind and nature whatsoever now or hereafter located on or forming part of said buildings, structures and improvements (collectively, the "Improvements"; the Land and Improvements being hereinafter sometimes collectively referred to as the "Premises");

TOGETHER WITH: All right, title and interest which Trustor now has or may later acquire in and to the land lying in the bed of any street, road, highway or avenue now or hereafter in front of or adjoining the Premises;

TOGETHER WITH: Any and all awards heretofore or hereafter made by any governmental authorities (federal, state, local or otherwise) to Trustor and all subsequent owners of the Premises which may be made with respect to the Premises as a result of the exercise of the right of eminent domain, the alteration of the grade of any street or any other injury to or decrease of value of the Premises, which said award or awards are hereby assigned to Lender;

TOGETHER WITH: Any and all unearned premiums accrued, accruing or to accrue, and the proceeds of insurance now or hereafter in effect with respect to all or any portion of the Premises;

TOGETHER WITH: Any and all claims or demands which Trustor now has or may hereafter acquire against anyone with respect to any damage to all or any portion of the Premises;

TOGETHER WITH: Any and all claims under and proceeds of any insurance policies by reason of or related to a loss of any kind sustained to the Premises, now or hereafter, whether or not such policies name Lender as an insured and whether or not such policies are required by Lender, and whether or not such claims thereunder are characterized as personal claims;

TOGETHER WITH: All goods, equipment, machinery, furniture, furnishings, trade fixtures, appliances, inventory, building materials, apparatus, utensils, vehicles, wiring, pipes, conduits, elevators, escalators, heating and air conditioning equipment, chattels and articles of personal property, including, without limitation, any interest therein now or at any time hereafter affixed to, attached to or used in any way in connection with or to be incorporated at any time into the Premises or placed on any part thereof wheresoever located, whether or not attached to or incorporated in the Premises, together with any and all accessions, accessories, attachments, and replacements thereof, appertaining and adapted to the complete and compatible use, enjoyment, occupancy, operation or improvement of the Premises;

TOGETHER WITH: All instruments, investment property, deposit accounts, accounts, contract rights, general intangibles, and other intangible property and rights now or hereafter relating to the foregoing property, or the operation thereof or used in connection



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

therewith, including, without limitation, all options, letters of intent, and rights of first refusal of any nature whatsoever, covering all or any portion of such property, together with any modifications thereof, and deposits or other payments made in connection therewith, existing and future development rights, permits and approvals, air rights, density bonus rights, and transferable development rights; all of Trustor's right, title, and interest in and to any awards, remunerations, settlements, or compensation heretofore made or hereafter made by any and all courts, boards, agencies, commissions, offices, or authorities, of any nature whatsoever for any governmental unit (federal, state, local or otherwise) to the present or any subsequent owner of the foregoing property, including those for any vacation of, or change of grade in, any streets affecting the foregoing property and any and all licenses and privileges obtained by Trustor from non-governmental sources;

TOGETHER WITH: All leases of the Premises, Personalty, Fixtures, or any part thereof, now or hereafter entered into and all right, title and interest of Trustor thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the lessees of their obligations thereunder (whether such cash or securities are to be held until the expiration of the terms of such leases or applied to one or more of the installments of rent coming due immediately prior to the expiration of such terms); all other rights and easements of Trustor now or hereafter existing pertaining to the use and enjoyment of the Premises; and all right, title and interest of Trustor in and to all declarations of covenants, conditions and restrictions as may affect or otherwise relate to the Premises;

TOGETHER WITH: All permits, plans, licenses, specifications, subdivision rights, security interests, contracts, contract rights, public utility deposits, prepaid sewer and water hook-up charges, or other rights as may affect or otherwise relate to the Property (as hereinafter defined) ;

TOGETHER WITH: All rents, income, issues and profits (subject, however, to the rights given in this Deed of Trust to Lender to collect and apply same), including, without limitation, the accounts, revenues, and proceeds of any business operation conducted by or on behalf of Trustor on or through the use of the Premises, prepaid municipal and utility fees, bonds, revenues, income, and other benefits to which Trustor may now or hereafter be entitled to, or which are derived from, the Property or any portion thereof or interest therein.

The foregoing listing is intended only to be descriptive of the property encumbered hereby, and not exclusive or all inclusive. It is the intent of Trustor to encumber hereby all property located or to be located upon the above-described real property. Said real property (or the leasehold estate if this Deed of Trust encumbers a leasehold estate), buildings, improvements, appurtenances, Fixtures, Personalty, additions, accretions, and other property are herein referred to as the "Property." As used herein, the term "Fixtures" shall include all articles of personal property hereinabove described, now or hereafter attached to, placed upon for a definite term, or otherwise used in connection with the Property, and shall include trade fixtures and goods which are or are to become fixtures. As used herein, the term "Personalty" shall include all furniture, furnishings,



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

equipment, machinery, goods, contract rights, general intangibles, money, deposit accounts, instruments, accounts, leases, chattel paper and other personal property described in this Deed of Trust (other than Fixtures) of any kind or character now existing or hereafter arising or acquired, now or hereafter located upon, within or about the Property, or which otherwise pertains to the use, ownership, management, operation, construction, leasing and sale of the Property, and all products and proceeds thereof, and all of Trustor's right, title, and interest in and to all such property.

Trustor makes the foregoing grant to Trustee, and to Lender, as applicable, to hold the Property in trust for the benefit of Lender and for the purposes and upon the terms and conditions hereinafter set forth.

**FOR THE PURPOSE OF SECURING:**

(1) Payment of the sum of Eight Million Four Hundred Thousand and No/100 Dollars ($8,400,000.00), together with interest thereon and certain additional costs and expenses related to or incurred in connection with or as provided in that certain Promissory Note of even date herewith (the "Note") executed by Trustor, payable to Lender, or order, and all extensions, modifications or renewals thereof (including, without limitation, any extension, modification, or renewal of the Note at a different rate of interest or on different terms);

(2) Performance of each and every term, covenant and condition of that certain Loan Agreement of even date herewith by and between Trustor and Lender, and all modifications, renewals or extensions thereof ("Agreement");

(3) Payment of all other sums, with interest, advanced, paid, or incurred by Lender or Trustee under the terms of this Deed of Trust to protect the Property or Lender's security interest therein;

(4) Payment of such additional sums, with interest, as the then record owner of the Property may later borrow from Lender, in those instances in which the later obligations are evidenced by a promissory note or notes reciting that it or they are so secured (which additional obligations shall be referred to as "future advances" in this Deed of Trust); and

(5) Trustor's performance of each agreement in this Deed of Trust.

**TRUSTOR AND LENDER AGREE AS FOLLOWS:**

**RIGHTS AND DUTIES OF THE PARTIES:**

(1) PAYMENT AND PERFORMANCE BY TRUSTOR; TITLE: Trustor represents and warrants to and for the benefit of Lender and Trustee that Trustor holds good and marketable title of record to the Property in fee simple. Trustor shall promptly: (a) pay when due all sums payable under the Note and all future advances; and (b) perform each and every term, covenant and condition of this Deed of Trust and any other obligation secured by this Deed of Trust.



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

(2) PAYMENT BY TRUSTOR OF TAXES AND OTHER IMPOSITIONS: The term "Taxes" shall mean all taxes, bonds and assessments, both general and special, affecting or levied upon the Property or any part thereof, assessments on water company stock, if any, all taxes or excises levied or assessed against Trustor, the Property, or any part thereof, in addition to or as a substitution in whole or in part for any real estate taxes or assessments, all taxes or excises measured by or based in whole or in part upon the rents, operating income, or any other factor relating to the Property, or any part thereof, and all license fees, taxes and excises imposed upon Lender (but not any federal or state income taxes imposed upon Lender) and measured by or based in whole or in part upon the obligations secured hereby. The term "Other Impositions" shall mean any fine, fee, charge, or other imposition in connection with the Property or Trustor, payment of which Lender shall deem to be necessary to protect, preserve, and defend Lender's interests hereunder. Trustor shall pay all Taxes, insurance premiums, and Other Impositions attributable to the Property, at least five (5) days before delinquency directly to the payee thereof, or in such other manner as Lender may designate in writing. Trustor shall promptly furnish to Lender all notices of amounts due under this paragraph, and if Trustor shall make payment directly, Trustor shall furnish to Lender receipts evidencing payments of Taxes at least five (5) days before delinquency and shall promptly deliver to Lender receipts evidencing all other payments above required.

Notwithstanding the foregoing, Trustor shall not be required to pay any of the Taxes or Other Impositions, so long as Trustor shall in good faith, and at its cost and expense, contest the amount or validity thereof, or take other appropriate action with respect thereto, in good faith and in an appropriate manner or by appropriate proceedings; provided that (a) such proceedings operate to prevent the collection of, or other realization upon, such Taxes or Other Impositions so contested, (b) there will be no sale, forfeiture or loss of the Property during the contest, (c) neither Lender nor Trustee is subjected to any claim against it as a result of such contest, and (d) Trustor sets aside adequate reserves and provides any other assurances as Lender may require of its ability to pay such Taxes or Other Impositions in the event Trustor is unsuccessful in its contest. Each such contest shall be promptly prosecuted to final conclusion or settlement, and Trustor shall indemnify and save Lender and Trustee harmless against all claims in connection therewith. Promptly after the settlement or conclusion of such contest or action, Trustor shall pay and discharge the amounts which shall be levied, assessed or imposed or determined to be payable, together with all penalties, fines, interests, costs and expenses in connection therewith.

At the request of Lender, or otherwise upon written agreement between Trustor and Lender, or as provided by applicable law, Trustor shall pay to Lender, on each day on which monthly installments of principal and/or interest are payable under the Note, until the Note is paid in full, an amount equal to one-twelfth (1/12) of the sum of annual Taxes and Other Impositions, together with annual insurance premiums on all policies of insurance required by this Deed of Trust, plus additional amounts reasonably estimated by Lender for the purpose of paying future installments of Taxes, Other Impositions, and insurance premiums. In such event, Trustor further agrees to cause all bills, statements, or other documents relating to Taxes, Other Impositions, and insurance premiums to be sent or mailed directly to Lender. Upon receipt of such bills, statements, or other



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.


documents, and provided Trustor has deposited sufficient funds with Lender pursuant to this paragraph (2), Lender shall pay such amounts as may be due thereunder out of the funds so deposited with Lender for that purpose, subject to Lender's rights to seize and apply said funds to satisfy, in whole or in part, any default by Trustor. If at any time and for any reason the funds deposited with Lender are or will be insufficient to pay such amounts as may then or subsequently be due, Lender shall notify Trustor and Trustor shall immediately deposit an amount equal to such deficiency with Lender. Notwithstanding the foregoing, nothing contained herein shall cause Lender to be deemed a trustee of said funds or to be obligated to pay any amounts in excess of the amount of funds deposited with Lender pursuant to this paragraph (2). Lender shall not be obligated to pay or allow any interest on any sums held by Lender pending disbursement or application hereunder, and Lender may impound or reserve for future payment of Taxes, Other Impositions, and insurance such portion of such payments as Lender may in its reasonable discretion deem proper, applying the balance on the principal of or interest on the obligations secured hereby. Should Trustor fail to deposit with Lender (exclusive of that portion of said payments which has been applied by Lender on principal of or interest on the indebtedness secured hereby) sums sufficient to fully pay such Taxes, Other Impositions, or insurance premiums, at least ten (10) days before delinquency thereof, Lender may, at Lender's election, but without any obligation so to do, advance any amounts required to make up the deficiency, which advances, if any, shall be secured hereby and shall be repayable to Lender as herein elsewhere provided, or at the option of Lender the latter may, without making any advance whatever, apply any sums held by it upon any obligation of Trustor secured hereby. Upon the occurrence and during the continuance of a default on the part of Trustor in the payment or performance of any of Trustor's obligation in connection with the above Note, Lender may, at Lender's option, apply any sums or amounts in its possession or under its control, received pursuant hereto or as rents or income of the Property or otherwise, upon any indebtedness or obligation of the Trustor secured hereby in such manner and order as Lender may elect. The receipt, use or application of any such sums paid by Trustor to Lender hereunder shall not be construed to affect the maturity of any indebtedness secured by this Deed of Trust or any of the rights or powers of Lender or said Trustee under this Deed of Trust or any other obligation secured hereby.

In the event of the passage, after the date of this Deed of Trust, of any law or judicial decision deducting from the value of the Property for the purposes of taxation any lien thereon, or changing in any way the laws now in force for the taxation of deeds of trust or obligations secured by deeds of trust, or the manner of operation of any such Taxes so as to adversely affect the interest of Lender, or imposing payment of the whole or any portion of any Taxes upon Lender, then and in such event, Trustor shall bear and pay the full amount of such Taxes; provided that if for any reason payment by Trustor of any such new or additional Taxes would be unlawful or if the payment thereof would constitute usury or render the Note, or other indebtedness secured hereby, wholly or partially usurious under any of the terms or provisions of the Note, or this Deed of Trust, or otherwise, Lender may, at its option, upon thirty (30) days' written notice to Trustor, (i) declare the whole indebtedness secured by this Deed of Trust, together with accrued interest thereon, to be immediately due and payable, or (ii) pay that amount or portion of such Taxes as render the Note, or other indebtedness secured hereby, unlawful or



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

usurious, in which event Trustor shall concurrently therewith pay the remaining lawful nonusurious portion or balance of such Taxes.

(3) TRUSTOR TO PAY GROUND RENTS AND OBLIGATIONS THAT COULD RESULT IN LIENS ON THE PROPERTY: Trustor shall fully and faithfully pay and perform each and every obligation, and otherwise satisfy all conditions and covenants, which are or may be secured by any deed of trust upon the Property, or any portion thereof, existing of record as of the date this Deed of Trust is recorded. Trustor shall pay at or prior to maturity any and all ground rents and any liens, charges and encumbrances that are, later become, claim to be or appear to Lender to be prior or superior to the lien of this Deed of Trust, including, without limiting the generality of the foregoing, any and all claims for (a) work or labor performed, (b) materials and services supplied in connection with any work of demolition, alteration, improvement of or construction upon the Property, and (c) fees, charges and liens for utilities provided to the Property.

(4) TRUSTOR TO MAINTAIN INSURANCE: (a) Trustor shall maintain insurance covering the Property against loss or damage by fire, earthquake and other risks as shall from time to time be required by Lender as necessary to protect the security interest of Lender in the Property. The insurance shall be maintained with such companies, in such amounts, for such terms, and in form and content satisfactory to Lender, in Lender's reasonable opinion and judgment. Lender shall be named as the primary loss payee under all of the insurance policies, and Trustor shall assure that Lender receives a certificate from each insurance company that acknowledges Lender's position as loss payee and that states that the insurance policy cannot be terminated as to Lender except upon thirty (30) days' prior written notice to Lender. Such policies of insurance shall include, without limitation, the following: (i) insurance against loss or damage to the Property (including contents) by fire or other risk embraced by coverage of the type known as the broad form or extended coverage (or special extended coverage) in the amount required by Lender, but in no event less than one hundred percent (100%) of the full replacement cost of the Improvements, Fixtures and Personalty included within the Property without deduction for depreciation of any kind or the unpaid balance of the Note, whichever is greater, (ii) insurance against the loss of rental value of the Property on a "rented or vacant basis," including business interruption insurance, arising out of the perils insured against pursuant to clause (i) above in the amount required by Lender, but in no event less than one (1) year's gross rental income and other revenues from the Property, and (iii) comprehensive general liability insurance against claims for personal injury, death, or property damage occurring on, in, or about the Property, or arising from or connected with the use, conduct, or operation of Trustor's business in the amount from time to time required by Lender. (b) If such insurance, together with written evidence of the premium having been paid, are not delivered to Lender at least five (5) days prior to the expiration of such insurance, Lender shall have the right, but without obligation to do so, without notice to or demand upon Trustor and without releasing Trustor from any obligation under this Deed of Trust, to obtain such insurance or like insurance through or from any insurance agency or company acceptable to it, pay the premium for such insurance, and add the amount of the premium to the loan secured by this Deed of Trust, and this amount shall bear interest at the applicable rate of interest set forth in the Note.



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

Neither the Trustee nor Lender shall be responsible for such insurance or for the collection of any insurance monies, or for any insolvency of any insurer or insurance underwriter. (c) In the event that the Property is sold to Lender at any trustee's sale under this Deed of Trust (see paragraph 17, below), Trustor hereby assigns to Lender all unearned premiums on all policies of insurance covering the Property and agrees that any and all unexpired insurance covering the Property shall inure to the benefit of and pass to Lender at the time of such Trustee's sale.

(5) INSURANCE PROCEEDS, CONDEMNATION PROCEEDS AND OTHER RECOVERIES: (a) All settlements, awards, damages and proceeds received by Trustor or any other person under any fire, earthquake or other hazard insurance policy, for losses existing as of or occurring after the effective date of this Deed of Trust, or in connection with any condemnation for public use of or injury to the Property (or any part of or interest in the Property) are assigned to Lender and may, at the option of Lender, be applied by Lender as provided in section (c) of this paragraph (5). (b) All causes of action, whether accrued before or after the date of this Deed of Trust, of any type for any damage or injury to the Property (or any portion of or interest in the Property), or in connection with the sale or other transaction being financed by the funds that are secured by this Deed of Trust, or in connection with or affecting the Property (or any portion of or interest in the Property), including causes of action arising in tort or contract and causes of action in fraud or concealment of a material fact, are assigned to Lender, and the proceeds of any such causes of action may, at the option of Lender, be applied by Lender as provided in section (c) of this paragraph (5). Lender may, at its option, appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement of any such action or proceeding. Trustor agrees to execute such further assignments of any settlements, awards, damages and causes of action as Lender from time to time may request. (c) Settlements, awards, proceeds and damages (collectively, "Awards") received by Lender under the provisions of section (a) and section (b) of this paragraph (5), at the option of Lender, may (i) if a default has occurred hereunder and is continuing or if Lender determines its security hereunder has been materially impaired be applied by Lender to the outstanding balance due on the Note, or any other obligation secured by this Deed of Trust, in such order as Lender may determine; (ii) be used by Lender, without reducing the principal balance of the Note or any other obligation secured by this Deed of Trust, to replace, restore or reconstruct the Property to a condition satisfactory to Lender; or (iii) any such amount may be divided in any manner among any such application, use or release. Awards received by Lender under the provisions of section (a) and section (b) of this paragraph (5) may, at the option of Lender, be released to Trustor to replace, restore or reconstruct the Property to a condition satisfactory to Lender in the event that Lender's security interest has not been materially impaired thereby in the reasonable opinion of Lender, and provided no default under paragraph (14) exists. No such application, use or release of the Award shall cure or waive any default or notice of default under this Deed of Trust or invalidate any act done pursuant to such notice.



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

(6) MAINTENANCE AND PRESERVATION OF THE PROPERTY:

(a) Trustor shall: (i) keep the Property, and every portion thereof, in good condition and repair and replace from time to time, or at any time, any Fixtures, Personalty or other items comprising the Property which may become obsolete or worn out, with Fixtures, Personalty or other items of at least the same utility, quality and value, each such replacement to be free of any liens or security interests of any kind or character other than the lien of this Deed of Trust, or any other document or instrument securing the indebtedness hereunder; (ii) not remove or demolish the Property, or any part thereof; (iii) complete or restore promptly and in good and workmanlike manner the Property, or any part thereof, which may be damaged or destroyed, so long as Lender makes available to Trustor any insurance proceeds which arise from or in connection with such damage or destruction and which have been received by Lender; (iv) comply with and not suffer violations of (A) any and all laws, ordinances, rules, regulations, standards and orders, including, without limitation, making any alterations or additions required to be made to, or safety appliances and devices required to be installed or maintained in or about, the Property, or any portion thereof, under any such laws, ordinances, rules, regulations, standards or orders now or hereafter adopted, enacted or made applicable to the Property, or any portion thereof, and payment of any fees, charges or assessments arising out of or in any way related to treatment of the Property, or any portion thereof, as a source of air pollution, traffic, storm water runoff, or other adverse environmental impacts or effects, and (B) any and all covenants, conditions, restrictions, equitable servitudes and easements, whether public or private, of every kind and character, and (C) any and all requirements of insurance companies and any bureau or agency which establishes standards of insurability, which laws, covenants or requirements affect the Property and/or pertain to acts committed or conditions existing thereon, or the use, management, operation or occupancy thereof by Trustor and anyone holding under Trustor, including (but without limitation) such work of alteration, improvement or demolition as such laws, covenants or requirements mandate; (v) not commit or permit waste of the Property, or any portion thereof; (vi) do all other acts which from the character or use of the Property may be reasonably necessary to maintain, preserve and enhance its value, including, without limitation, keeping all plants, lawns and other landscaping in a good and thriving condition, and otherwise performing such appropriate upkeep and maintenance to the Property to insure that the Property, and each part thereof, is maintained in a first-class manner and retains at all times a first-class appearance and condition, such upkeep to include, without limitation, appropriate measures to protect wood, stucco and concrete surfaces from weathering, deterioration and aging, and to protect from and immediately remove graffiti or other defacement from such surfaces; (vii) perform all obligations required to be performed in leases or conditional sales or like agreements affecting the Property or the operation, occupation or use thereof (and, if not previously assigned, upon the occurrence and during the continuance of a default hereunder, all right, title and interest of Trustor under any such leases, conditional sales or like agreements shall be automatically assigned to Lender hereunder, together with any deposits made in connection therewith); (viii) make payment of any and all charges, assessments or fees imposed in connection with the delivery, installation or maintenance of any utility services or installations on, to or for the Property, or any portion thereof; (ix) not create any deed of trust, liens or encumbrances upon the Property subsequent hereto, the parties



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

hereby having specifically bargained in contemplation of the fact that any subsequent encumbrance upon the Property would adversely affect Lender's security interests hereunder; (x) make no further assignment of rents of the Property; and (xi) execute and, where appropriate, acknowledge and deliver such further documents or instruments as Lender or Trustee deem necessary or appropriate to preserve, continue, perfect and enjoy the security provided for herein, including (but without limitation) assignments of Trustor's interest in leases of the Property.

(b) Trustor shall not undertake or suffer to be made pursuant to section (a) of this paragraph (6), any material alterations, additions, repairs, expansions, relocations, remodeling or demolition of, or structural or other material changes in, any Improvements, Fixtures or Personalty comprising the Property, without the prior written consent of Lender, which consent shall not be unreasonably withheld, delayed or conditioned. No material changes are to be made in any plans and/or specifications as approved by Lender without Lender's prior written consent, which consent shall not be unreasonably withheld, delayed or conditioned. All such work shall be performed promptly and in good and workmanlike manner, using first quality materials in conformity with plans and specifications reasonably approved in advance by Lender, and shall be diligently prosecuted to completion free of liens and encumbrances, other than this Deed of Trust and any other document or instrument evidencing or securing the indebtedness secured hereby.

(c) Without limiting the generality of this paragraph (6), Trustor hereby warrants, represents and covenants to Lender that Trustor and the Property presently, to the best of Trustor's knowledge, comply with, and will in the future comply fully with, all applicable federal, state and local laws, ordinances, rules and regulations, and all permits and approvals issued thereunder, affecting Trustor's qualification to do business, the construction of any improvements to be located upon the Property, the sale, operation, leasing or financing of the Property and the intended occupancy, use and enjoyment thereof, including, but not limited to, all applicable subdivision laws, licenses and permits, building codes, zoning ordinances, environmental protection laws, flood disaster laws, and all laws pertaining to industrial hygiene and the environmental conditions on, under or about the Property, including, but not limited to, soil and groundwater condition. Trustor further warrants, represents and covenants that Trustor does not presently, and will not in the future, use, store, manufacture, generate, transport to or from, or dispose of any toxic substances, hazardous wastes, radioactive materials, flammable explosives or related material on or in connection with the Property or the business of Trustor on the Property; except as are described in <u>Exhibit "B"</u> attached hereto and incorporated herein, and which are used, stored or maintained in full and complete compliance with all such laws ("Permitted Toxic Materials"). Trustor further warrants, represents and covenants to Lender that Trustor does not presently, and will not, permit any lessee or other user of the Property to use, store, manufacture, generate, transport to or from, release or dispose of any toxic substances, hazardous materials, hazardous wastes, radioactive materials, flammable explosives or related materials on or in connection with the Property or the business of said lessee or other user of the Property. Trustor further warrants, represents and covenants to Lender that as to the Permitted Toxic Materials, Trustor shall obtain and continue to maintain all necessary



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

permits and approvals for the Permitted Toxic Materials, and comply with all laws, ordinances, rules and regulations, and all permits and approvals issued thereunder, pertaining thereto. ("Toxic substances," "hazardous materials" and "hazardous wastes" shall include, but not be limited to, such substances, materials and wastes which are or become regulated under applicable federal, state or local laws, ordinances, rules or regulations.) Without the prior written consent of Lender, which consent shall not be unreasonably withheld, delayed or conditioned, Trustor shall not seek, make or consent to any change in the zoning, conditions of use, or any other applicable land use permits, approvals or regulations pertaining to the Property, or any portion thereof, which would constitute a violation of the warranties, representations and covenants herein contained, or would otherwise materially impair the ability of Trustor to complete construction of any improvements now underway or to be constructed, constituting the Property, or would change the nature of the use or occupancy of the Property. Within five (5) days of (i) any contact from any federal, state, or local governmental agency concerning any environmental protection laws, including, but not limited to, any notice of any proceeding or inquiry with respect to the presence of any hazardous wastes, toxic substances or hazardous materials on the Property or the migration thereof from or to other property, (ii) any and all claims made or threatened by any third party against or relating to the Property concerning any loss or injury resulting from toxic substances, hazardous wastes, or hazardous materials, or (iii) Trustor's discovery of any occurrence or condition on any property adjoining or in the vicinity of the Property that could cause the Property, or any part thereof, to be subject to any restrictions on the ownership, occupancy, transferability, or loss of the Property under any federal, state, or local laws, ordinances, rules, or regulations, Trustor shall deliver to Lender a report regarding such contact and setting forth in detail and describing any action which Trustor proposes to take with respect thereto, signed by Trustor.

(d) If Trustor has executed any unsecured agreement regarding hazardous materials containing any warranties and/or indemnities by Trustor in favor of Lender pertaining to the presence or release of hazardous and/or toxic materials or other similar substances upon, within or from the Property (hereinafter "Hazardous Substances Indemnity"), then the covenants, duties, and liabilities of Trustor, and the rights and remedies of Lender with respect to the subject of hazardous and/or toxic materials, shall be governed by the provisions of the Hazardous Substances Indemnity in addition to the provisions of this Deed of Trust; provided, however, that the provisions of the Hazardous Substances Indemnity shall prevail and exclusively govern the subject matter to the extent of any duplication, conflict or inconsistency between such provisions and the provisions of this Deed of Trust, and payment or performance of Trustor's obligations under said Hazardous Substances Indemnity shall not be secured by this Deed of Trust but shall be and remain unsecured obligations of the Trustor, unless expressly otherwise therein provided.

(e) Trustor shall deliver to Lender such affidavits, reports, certificates or other written instruments as may be requested by Lender, in Lender's reasonable opinion and judgment, pertaining to Trustor's compliance with this paragraph (6). Lender may conclusively assume that the statements, facts, information and representations contained herein and/or in any affidavits, orders, receipts or other written



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

instruments that are filed with Lender or exhibited to it, are true and correct. Lender may rely thereon without any investigation or inquiry. By accepting or approving anything required to be observed, performed, fulfilled, or given to Lender pursuant to this paragraph (6), Lender shall not be deemed to have warranted or represented the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision or condition thereof, or of Trustor's compliance with the terms of this Deed of Trust, and such acceptance or approval thereof shall not be or constitute any warranty or representation to anyone with respect thereto by Lender.

(7) LEGAL ACTIONS AND PAYMENT OF RELATED COSTS: Trustor shall appear in and defend any action or proceeding that may, in the Lender's reasonable judgment, affect the Lender's security interest under this Deed of Trust or any of the rights or powers of Lender or Trustee under this Deed of Trust. Whether or not Trustor so appears or defends, Trustor shall pay all costs and expenses, including, without limitation, cost of evidence of title and attorneys' fees, that are incurred by Trustor, Lender or Trustee in any such action or proceeding in which Lender or Trustee may appear, by virtue of being made a party defendant or otherwise, and irrespective of whether the interest of Lender or Trustee in the Property is directly questioned by such action or proceeding or whether Lender's rights or interests are otherwise adversely affected thereby, or whether Lender is or shall become a party, including by way of intervention. Trustor promises and agrees to give Lender notice in writing of the pendency of any such action or proceeding promptly, but in any event no later than five (5) days, after Trustor first obtains knowledge of the pendency of such action or proceeding. Trustor shall cooperate with Lender in any action that is brought by Lender to protect its security interest under this Deed of Trust. Trustor will, upon demand by Lender, commence any action or proceeding required to protect or facilitate Lender's recovery of Awards under paragraph (5) of this Deed of Trust. If Trustor fails to bring any such action or proceeding, then Lender may, but need not, do so, and Trustor shall pay to Lender all costs, expenses and attorneys' fees that are incurred by Lender in doing so. Whenever, under this Deed of Trust, or any other document or instrument evidencing or securing the indebtedness secured hereby, Trustor is obligated to appear in and defend Lender or defend or prosecute any action or proceeding, Lender shall have the right of full participation in any such action or proceeding, with counsel of Lender's choice, and all costs and expenses incurred by Lender in connection with such participation (including, without limitation, attorneys' fees) shall be reimbursed by Trustor to Lender immediately upon demand. In addition, Lender shall have the right to approve any counsel retained by Trustor in connection with the prosecution or defense of any such action or proceeding by Trustor. All costs or expenses required to be reimbursed by Trustor to Lender hereunder shall, if not paid upon demand by Lender, thereafter bear interest at the applicable rate of interest set forth in the Note. As used herein, "proceeding" shall include litigation (whether by way of complaint, answer, cross-complaint, counter claim or third party claim), arbitration and administrative hearings or proceedings, and shall include commencement of any case or the filing of any petition for relief or other action under any Chapter of the U.S. Bankruptcy Code.

(8) LENDER'S RIGHTS TO INSPECT THE PROPERTY: Lender and its agents, employees and contractors, may enter upon the Property at any time to inspect



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

the Property for any purpose relating to Lender's rights and interests under the terms of this Deed of Trust, including, but not limited to, Trustor's compliance with the terms of paragraph (6).

(9) SUBSTITUTION OF TRUSTEE: From time to time, by an instrument signed and acknowledged by Lender, and recorded in the Office of the Recorder of the County in which the Property is located, Lender may appoint a substitute trustee or trustees in place of the Trustee. Such instrument shall refer to this Deed of Trust and shall set forth the date and instrument number or book and page of its recordation. Upon recordation of such instrument, the Trustee shall be discharged and the new trustee so appointed shall be substituted as Trustee under this Deed of Trust with the same effect as if originally named Trustee in this Deed of Trust. An instrument recorded pursuant to the provisions of this paragraph (9) shall be conclusive proof of the proper substitution of such new Trustee.

(10) MISCELLANEOUS POWERS OF LENDER AND TRUSTEE: In addition to any other powers granted in this Deed of Trust to the Trustee, from time to time, upon the written request of Lender and upon the presentation of this Deed of Trust and any obligation secured by this Deed of Trust for endorsement, and without affecting any obligation secured by this Deed of Trust or the performance of the obligations set forth in this Deed of Trust, the Trustee may, without liability and without notice to any person: reconvey all or any part of the Property to Trustor, consent to the making of any map or plat of the Property, join in granting any easement on the Property, join in any agreement subordinating the lien of this Deed of Trust, release any obligation secured by this Deed of Trust, in whole or in part, with regard to any Trustor, extend or renew the Note or any other obligation secured by this Deed of Trust, accept or release any additional security under this Deed of Trust, or accept and release the guaranty of any additional person or any obligation secured by this Deed of Trust.

(11) ASSIGNMENT AND COLLECTION OF RENTS: (a) Trustor hereby assigns absolutely to Lender the rents of the Property, provided that Trustor shall have a revocable license to collect such rents as they become due and payable, prior to any default by Trustor under paragraph (14) of this Deed of Trust. (b) Upon any default by Trustor under paragraph (14) of this Deed of Trust and during the continuance thereof, such license will, automatically, be deemed revoked without the necessity for any act or notice by Lender, and Lender, in person, by agent or by judicially appointed receiver, shall be entitled to enter upon, take possession of and manage the Property and may collect the rents of the Property, and, after so taking possession, shall be entitled to collect any rents that are past due. Lender has, however, no duty to produce rents from the Property nor any responsibility for pursuing or collecting claims or rights of Trustor. If Trustor, at or immediately prior to such taking of possession by or on behalf of Lender, has operated a business upon the Property other than the rental thereof, the authority granted herein to so take possession of the Property shall also include the authority and power to take possession of the receipts of such business and, if appropriate, to operate such business, and the receipts thereof shall be deemed herein to be a form of rents. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and of collection of rents, including, but not limited to, costs

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

and expenses of any receivership and attorneys' fees incurred by Lender in connection with the receivership, and then to the Note and any other obligations secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received. (c) At any time, whether or not an event of default exists under this Deed of Trust, or any other agreement or obligation secured by this Deed of Trust, Trustor shall, on demand, deliver to Lender from time to time all security deposits made by lessees to Trustor under the terms of any lease of all or part of the Property. These funds shall be held by Lender without interest payable to Trustor and as a part of and commingled with Lender's general funds. These funds, however, will be repayable to lessees pursuant to the provisions of the leases under which security deposits are made. In the event of any conflict between the provisions of this paragraph (11) and the provisions of a specific separate assignment of rents and/or assignment of lease(s), the provisions of the specific assignment(s) shall be deemed to govern over the provisions of this paragraph.

(12) RECONVEYANCE OF THE PROPERTY: Upon the written request of Lender stating that the Note and all other obligations secured by this Deed of Trust have been discharged, and upon surrender of this Deed of Trust, the Note or any other notes or instruments evidencing such other obligations to the Trustee, and upon payment of the Trustee's fees, the Trustee shall reconvey, without warranty, the Property or that portion of the Property then held by the Trustee under this Deed of Trust. The recitals in any such reconveyance of any matters or facts shall be conclusive proof of the truthfulness of such matters or facts. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." When the Property has been fully reconveyed, the last such reconveyance shall operate as a reassignment of all of the rents of the Property to the person or persons legally entitled to such rents. Five (5) years after issuance of such full reconveyance, the Trustee may destroy this Deed of Trust and any such notes, unless directed in such request to retain them.

(13) CHANGE OF LENDER'S RECORDS: In the event Trustor requests Lender to change any of its records relating to the Property, the Note or this Deed of Trust (including, but not limited to, changes in mailing address or ownership of the Property), Trustor shall pay a fee prescribed by the Lender to so change its records.

**ACCELERATION AND DEFAULT:**

(14) CONDITIONS UNDER WHICH LENDER MAY DECLARE A DEFAULT BY TRUSTOR: A default under this Deed of Trust shall occur in the event that: (a) subject to any applicable grace, notice or cure periods, if any, provided for in the Agreement, Trustor fails to pay when due: (i) any sum payable under the Note in accordance with the terms thereof; or (ii) any sum the payment of which is required or secured by this Deed of Trust; (b) subject to any applicable grace, notice or cure periods, if any, provided for in the Agreement, Trustor fails to perform any other obligation required to be performed by Trustor under this Deed of Trust or secured by this Deed of Trust; (c) the Property is or becomes subject to any proceedings for abatement of a public nuisance; (d) any material information given to Lender by Trustor, intended to or which does, in fact, induce the granting of any loan secured by this Deed of Trust, was not true in any respect when given, or any material information requested or required by Lender is



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

withheld or concealed by Trustor; or (e) there is an Event of Default under the Agreement.

(15) LENDER'S RIGHT TO REQUIRE IMMEDIATE PAYMENT IN FULL: In the event: (a) of a default under this Deed of Trust, or (b) Trustor sells, transfers, grants, hypothecates, conveys, encumbers, alienates, or assigns (voluntarily, involuntarily, or by operation of law), enters into a contract of sale of, or leases, the Property, or any portion of the Property or any interest therein not expressly permitted in the Agreement, or any interest in Trustor not expressly permitted in the Agreement, Lender may, at its option and without further notice to any person, declare the entire principal balance and any other obligations under the Note and/or any other obligations secured by this Deed of Trust, together with accrued interest thereon and any prepayment penalties, immediately due and payable. Trustor shall provide to Lender a complete and exact duplicate copy of any contract providing for the transfer of any interest in the Property, or any deed of trust or similar instrument creating a lien or encumbrance on the Property, immediately upon the execution of any such contract, deed of trust, or other instrument. No waiver of the Lender's right to accelerate shall be effective unless it is in writing.

(16) LENDER'S RIGHT TO PERFORM ACTS TRUSTOR FAILS TO PERFORM AND INDEMNIFICATION:

(a) If Trustor fails to make any payment when due or to do any act required to be made or performed under this Deed of Trust, subject to any applicable grace, notice or cure periods, if any, provided for in the Agreement, then Lender or Trustee, without notice to or demand upon Trustor and without releasing Trustor from any obligation under this Deed of Trust, may, but are not required to, make or do the same in such manner and to such extent as either may deem necessary or desirable to protect the security of this Deed of Trust. Lender and Trustee are authorized to (i) enter upon the Property for such purposes; (ii) appear in and defend any action or proceeding purporting to affect the security of this Deed of Trust or the rights or powers of Lender or Trustee; and (iii) pay, purchase, contest or compromise any encumbrance, charge, lien or claim of lien, in whole, in part and/or in installments, which in the judgment of either Lender or Trustee appears to be prior or superior to the lien of this Deed of Trust, the judgment of Lender or Trustee being conclusive of the matter as among the parties to this Deed of Trust. In exercising the above powers, Lender or Trustee may pay necessary costs and expenses, employ counsel, consultants, any other agents or independent contractors, and pay fees, compensation, and costs thereof. Trustor promises and agrees to pay immediately upon demand all amounts so expended by Lender or Trustee (including all such costs, expenses and attorneys' fees) under this paragraph (16), together with any fees charged by Lender in regard to such activity by Lender and interest from the date of expenditure at the applicable rate of interest set forth in the Note, with payment of such amounts being secured by this Deed of Trust.

(b) Trustor hereby indemnifies and agrees to hold harmless Lender and Trustee and their directors, officers, shareholders, agents and employees (individually and collectively the "Indemnitees") from and against: (i) any and all



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

claims, demands, actions, liabilities, or causes of action that are asserted against any Indemnitee by any person or entity if the claim, demand, action, liability, or cause of action, directly or indirectly, relates to a claim, demand, action, liability, or cause of action that the person or entity has or asserts based upon, arising out of, or in connection with, the Property, the conduct of Trustor, any action or non-action by Trustor in connection with the Property, or this Deed of Trust; and (ii) any and all claims, liabilities, losses, costs, or expenses (including court costs and attorneys' fees) that any Indemnitee suffers or incurs as a result of the assertion of any such claim, demand, action, liability or cause of action (excluding liability to Indemnitees to the extent resulting solely and directly from the gross negligence or willful misconduct of any Indemnitee). The foregoing indemnity shall survive the release of this Deed of Trust, whether such release is as a result of payment of the indebtedness secured hereby, foreclosure, acceptance of a deed in lieu of foreclosure, other action, or otherwise.

(17) TRUSTEE'S RIGHTS AND DUTIES TO SELL THE PROPERTY: (a) Upon the occurrence and during the continuance of a default under this Deed of Trust by Trustor, Lender may then or thereafter execute or cause the Trustee to execute a written notice of such default and of its election to have the Property sold to satisfy the obligations secured by this Deed of Trust. Such notice shall be recorded in the office of the Recorder of the County where the Property is located. (b) When the minimum period of time required by law following recordation of such notice of default has elapsed, and notice of sale having been given as then required by law, the Trustee, without demand upon Trustor, shall sell the Property at the time and place of sale fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as Lender may determine, at public auction to the highest bidder for cash or a cash equivalent acceptable to Trustee, in lawful money of the United States, payable at time of sale. Lender shall have the right, at its option, to offset Lender's bid(s) to the extent of the total amount due Lender, including but not limited to all Trustee's fees, costs, expenses (including, without limitation, premiums for guarantees or other evidence of title), and other amounts secured by this Deed of Trust. The Trustee may postpone the sale of all or any portion of the Property by public notice at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Additionally, Lender, from time to time before any Trustee's sale, may rescind or cause to be rescinded any notice of default and election to sell or notice of sale by executing and delivering to Trustee a written notice of such rescission, which notice, when recorded, shall also constitute a cancellation of any prior declaration of default and demand for sale. The exercise by Lender of such right of rescission shall not constitute a waiver of any breach or default then existing or subsequently occurring, or impair the right of Lender to execute and deliver to Trustee, as above provided, other declarations or notices of default and demand for sale of the Property to satisfy the obligations hereof, nor otherwise affect any provision, covenant or condition of the Note or the Agreement or any of the rights, obligations or remedies of Trustee to Lender. (c) The Trustee shall deliver to the purchaser at such sale its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. (d) Any person, including Trustor, Lender or Trustee may purchase at such sale. After deducting all costs, fees and expenses of the Trustee and of this Deed of Trust, including, without limitation, cost of



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

evidence of title and attorneys' fees in connection with the sale, the Trustee shall apply the proceeds of the sale to the payment of: first, all sums expended under the terms of this Deed of Trust not then repaid, with interest at the applicable rate of interest set forth in the Note; second, the payment of all other sums then secured by this Deed of Trust; and third, the remainder, if any, to the person or persons legally entitled to such proceeds.

(18) OTHER REMEDIES IF TRUSTOR DEFAULTS: (a) All of the remedies of Lender and Trustee set forth in this Deed of Trust are intended to be in addition to and not in substitution for any other remedies available to Lender or Trustee at law or in equity. It is expressly understood and agreed that Lender or Trustee, or both, may bring suit in any court of competent jurisdiction to foreclose this Deed of Trust by judicial action or to obtain specific performance of the assignment of rents contained in this Deed of Trust. In connection with any such action, Lender or Trustee may apply to the court for the appointment of a receiver to take possession of the Property, operate the business of Trustor being conducted on the Property, utilize and enforce all agreements of Trustor in respect of the operation of such business, the utilization of any such agreement being at the election of Lender or the receiver, to be exercised at any time after the occurrence and during the continuance of a default hereunder, receive the rents of the Property and apply the same to the obligations of Trustor under this Deed of Trust and under the Note and any other obligations secured by this Deed of Trust. (b) Neither the acceptance of this Deed of Trust nor its enforcement in any manner shall prejudice the right of Lender or Trustee to realize upon or enforce any other security now or later held by Lender or Trustee. Trustor promises and agrees that the rights of Lender and Trustee under this Deed of Trust, and with respect to any other security now or later held by Lender, may be enforced in such order and manner as Lender and Trustee, or either of them, may determine in their sole and absolute discretion.

(19) TRUSTOR'S OBLIGATIONS AND LENDER'S RIGHTS NOT WAIVED: By accepting payment of any sum secured by this Deed of Trust after its due date, or by accepting late performance of any obligation secured by this Deed of Trust, or by making any payment or performing any act on behalf of Trustor that Trustor was obligated to make or perform under this Deed of Trust but failed to make or perform, or by adding any payment so made by Lender to the Note secured by this Deed of Trust, Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to make any such prompt payment or to perform any such act. No failure or delay on the part of Lender, Trustee, or any holder of the Note or this Deed of Trust in the exercise of any power, right or privilege hereunder shall operate as a waiver thereof. No single or partial exercise of any such power, right or privilege shall preclude any other or further exercise thereof or of any other right, power or privilege. No exercise of any right or remedy of Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right or remedy contained in this Deed of Trust or provided by law. All rights and remedies existing under this Deed of Trust are cumulative to, and not exclusive of, any rights or remedies otherwise available.

(20) SUCCESSORS IN INTEREST: The terms, agreements, and conditions contained in this Deed of Trust shall apply to, be binding upon and inure to the benefit of,



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

all of the parties to this Deed of Trust, their heirs, personal representatives, successors and assigns.

(21) STATEMENTS CONCERNING THE STATUS OF THE LOAN: From time to time as required by law, Lender shall furnish to Trustor such statements as may be required concerning the status of the obligations secured by this Deed of Trust. Trustor promises and agrees to pay upon demand for such statements the maximum amount permitted by law.

(22) TRUSTEE'S OBLIGATIONS: The Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. The Trustee is not obligated to notify any party to this Deed of Trust of pending sale under any other deed of trust or of any action or proceeding in which Trustor, Lender or Trustee is a party unless such action is brought by the Trustee. The Trustee shall not be obligated to perform any act required of it under this Deed of Trust unless the performance of such act is requested in writing and the Trustee is reasonably indemnified against loss, costs, liability and expense.

(23) OBLIGATIONS OF TRUSTOR ARE JOINT AND SEVERAL; GENDER AND NUMBER: If more than one person has executed this Deed of Trust as "Trustor," the obligations of all such persons under this Deed of Trust shall be joint and several. In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(24) NO OFFSETS: No offset or claims which Trustor now or in the future may have against Lender shall relieve Trustor from making payments or performing any other obligations contained in or secured by this Deed of Trust. Despite any right or option that may be granted to Lender or Trustee by this Deed of Trust or in the evidence of any obligations secured by this Deed of Trust or document ancillary to this Deed of Trust to receive, collect, accept deposit of, use, apply or in any other manner obtain or dispose of any funds or property, the same shall not be deemed to constitute any credit against or to satisfy any obligation secured by this Deed of Trust, in whole or in part, unless and until such funds or property shall be both so obtained and expressly so applied by Lender or Trustee to such satisfaction of such obligation and then only in the manner and to the extent of such application.

(25) GOVERNING LAW: The loan secured by this Deed of Trust is made pursuant to the laws of the State of California, and the rules and regulations promulgated thereunder. The loan contracts between the parties, including this Deed of Trust, shall be construed and governed by such laws, rules, and regulations.

(26) AGREEMENT CHANGED ONLY BY WRITING: This Deed of Trust cannot be changed except by agreement in writing signed by Trustor and Lender.

(27) TIME: Time is of the essence in connection with all of Trustor's obligations under this Deed of Trust.



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

(28) NOTICE: Except for any notice required under applicable law to be given in another manner: (a) any notice to Trustor provided for in this Deed of Trust shall be addressed to Trustor at the address of Trustor set forth above, or to such other address as Trustor may designate by notice to Lender pursuant to the terms of paragraph (28)(c), and (b) any notice to Lender provided for in this Deed of Trust shall be addressed to Lender as follows:

PREFERRED BANK
601 S. Figueroa Street, 29th Floor
Los Angeles, California 90017
Attention: Note Department

and to such other address as Lender may designate by notice to Trustor, pursuant to the terms of paragraph (28)(c).

(c) Except as otherwise provided by law, all notices, requests, demands, directions, and other communications provided for in this Deed of Trust must be in writing and sent by facsimile and mail or certified mail to the appropriate party at its respective address. Any notice given by facsimile must be confirmed within forty-eight (48) hours by letter mailed via regular mail to the appropriate party at its respective address. If any notice is given by certified mail, it will be effective when deposited in the mails with first class or airmail postage prepaid; or if given by facsimile and mail, when the facsimile is sent.

(29) TITLES, CAPTIONS, AND HEADINGS: The titles, captions, and headings to paragraphs contained in this Deed of Trust are for assistance in identification only and are not to be considered part of the substance of the provisions of this Deed of Trust.

(30) SEVERABILITY OF PROVISIONS: If any paragraph, clause or provision of this Deed of Trust is construed or interpreted by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those paragraphs, clauses or provisions so construed or interpreted and shall not affect the remaining paragraphs, clauses and provisions of this Deed of Trust.

(31) ACKNOWLEDGMENT OF TRUSTOR'S UNDERSTANDING OF DEED OF TRUST: The foregoing terms, provisions and conditions of this Deed of Trust have been read and are understood by Trustor. Trustor hereby acknowledges receipt of a copy of this Deed of Trust.

(32) LENDER'S RELIANCE: The financial accommodations made or to be made by Lender to Trustor are being made, renewed or extended, as applicable, by Lender to Trustor at the request and urging of Trustor and this Deed of Trust is being given in consideration of such financial accommodations, and Lender may rely upon the validity and enforceability of this Deed of Trust in making such financial accommodations.



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

(33) SECURITY AGREEMENT:

(a) Security Interest. This Deed of Trust shall also constitute and serve as a security agreement and financing statement for Personalty, Fixtures, and any of the Property in which a security interest can be perfected under and within the meaning of Division 9 of the California Uniform Commercial Code, and shall grant to Lender, until the obligations secured hereby shall be satisfied, a first priority security interest, including but not limited to a fixture filing, pursuant to Division 9 of the California Uniform Commercial Code with respect to the Personalty and Fixtures. To this end, Trustor shall and hereby does grant to Lender, a first priority security interest in, under and to the Personalty, Fixtures, and any of the Property in which a security interest can be perfected under Division 9 of the California Uniform Commercial Code.

(b) Financing Statements. Trustor authorizes Lender to file such financing statements and cause such financing statements and other assurances as Lender may from time to time require to be recorded and filed at such times and places as may be required or permitted by law to create, perfect and preserve such security interest.

(c) Remedies on Default. Upon the occurrence and during the continuance of a default hereunder, Lender may, at its option: (i) exercise any remedy permitted by law or in equity, including without limitation, all the rights and remedies of a secured party under the California Uniform Commercial Code in any jurisdiction where enforcement is sought, whether in California or elsewhere; (ii) notify any parties obligated on any of the Personalty or Fixtures to make payment to Lender and enforce collection thereof; (iii) apply any sums received or collected from or on account of any Personalty or Fixtures, including the proceeds of any sales thereof, to the payment of any indebtedness of Trustor to Lender in any order, including the costs and expenses incurred in preserving and enforcing the rights of Lender and attorneys' fees, in such order and manner as Lender in Lender's sole discretion determines. All of Lender's rights and remedies shall be cumulative and not exclusive.

(d) Fixture Filing. This Deed of Trust shall constitute a fixture filing under the California Uniform Commercial Code. Lender's address from which information concerning Lender's security interest can be obtained is set forth in paragraph (28) above, subject to change as therein provided.

(34) SALE OF INTEREST: Trustor acknowledges and accepts that Lender may, at any time, in Lender's sole discretion sell all or any portion of Lender's interest in the Note and this Deed of Trust to one or more third parties. The sale of all or any part of Lender's interest in the Note or Deed of Trust shall not relieve Trustor of any of Trustor's obligations hereunder.

(35) SEPARATE PROPERTY: Any married person executing this Deed of Trust in an individual capacity agrees that recourse may be had to his or her separate property for satisfaction of all sums secured under this Deed of Trust.



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

(36) BOOKS AND RECORDS: Trustor shall keep and maintain at all times at Trustor's address stated above, or at such other place as Lender may approve in writing from time to time, complete and accurate books or accounts and records adequate to reflect correctly the results of the operation of the Property and copies of all written contracts, leases, rental agreements, concessions, licenses, and other documents and instruments which affect the Property, or any portion thereof or interest therein. Such books, records, contracts, leases, documents, and other instruments shall be subject to examination and inspection by Lender, or Lender's agents or designated auditors, at any reasonable time and from time to time.

(37) INSPECTION, APPRAISAL, AND ASSESSMENTS: Lender may, at any time and from time to time and as and when Lender deems it to be appropriate, whether or not Trustor is then in default,(a) enter upon the Premises, directly or through one or more agents or independent contractors, to inspect any and all Property which is security for the obligations herein described, and (b) cause to be performed and prepared one or more appraisals and/or preliminary or other environmental assessments of the Property, or any portion thereof, in form and content satisfactory to Lender and meeting all requirements or standards of applicable laws, regulations, ordinances, orders, and generally recognized industry standards relating thereto. All costs and expenses incurred by Lender or Trustee in connection with any such inspection, appraisal, or assessment, shall be payable by Trustor upon demand and shall be secured by this Deed of Trust. All reports and other evidence and work papers relating to such inspections, appraisals, and assessments, shall be and remain the sole property of Lender, and Trustor hereby waives any right which Trustor may have by agreement or by operation of law to receive an original or duplicate thereof. Any appraisal or assessment may, at Lender's sole election, be relied upon by Lender in taking any action Lender deems to be necessary or appropriate in connection with the enforcement of its rights and exercise of remedies under or by virtue of this Deed of Trust, or under any obligation secured hereby, or under any separate obligation pertaining to the Property, or in connection with the protection, maintenance, preservation, remediation, restoration, or repair of the Property. Unless Lender otherwise expressly declares in writing, neither said appraisal nor assessment shall constitute conclusive evidence of the value or condition of the Property or as a representation or warranty by Lender as to the value or condition of the Property, and may not be used or relied upon by Trustor for any purpose.

(38) DEFINITIONS: All terms not defined herein shall be defined as set forth in the Agreement.

(39) **WAIVER OF RIGHT TO TRIAL BY JURY; JUDICIAL REFERENCE IN THE EVENT OF JURY TRIAL WAIVER UNENFORCEABILITY. EACH PARTY TO THIS DEED OF TRUST HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (1) ARISING UNDER THIS DEED OF TRUST OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION THEREWITH, OR (2) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT**



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

**TO THIS DEED OF TRUST OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND EACH PARTY HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY. NOTWITHSTANDING THE FOREGOING TO THE CONTRARY, IN THE EVENT THAT THE JURY TRIAL WAIVER CONTAINED HEREIN SHALL BE HELD OR DEEMED TO BE UNENFORCEABLE, EACH PARTY HERETO HEREBY EXPRESSLY AGREES TO SUBMIT TO JUDICIAL REFERENCE, IN ACCORDANCE WITH CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 638, ET SEQ. ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING HEREUNDER FOR WHICH A JURY TRIAL WOULD OTHERWISE BE APPLICABLE OR AVAILABLE. PURSUANT TO SUCH JUDICIAL REFERENCE, THE PARTIES AGREE TO THE APPOINTMENT OF A SINGLE REFEREE AND SHALL USE THEIR BEST EFFORTS TO AGREE ON THE SELECTION OF A REFEREE. IF THE PARTIES ARE UNABLE TO AGREE ON A SINGLE REFEREE, A REFEREE SHALL BE APPOINTED BY THE COURT TO HEAR ANY DISPUTES HEREUNDER IN LIEU OF ANY SUCH JURY TRIAL. EACH PARTY ACKNOWLEDGES AND AGREES THAT THE APPOINTED REFEREE SHALL HAVE THE POWER TO DECIDE ALL ISSUES IN THE APPLICABLE ACTION OR PROCEEDING, WHETHER OF FACT OR LAW, AND SHALL REPORT A STATEMENT OF DECISION THEREON. THE PARTIES HERETO HEREBY AGREE THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH BOTH SIDES AGREEING TO THE SAME KNOWINGLY AND BEING AFFORDED THE OPPORTUNITY TO HAVE THEIR RESPECTIVE LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN. ANY PARTY TO THIS DEED OF TRUST MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS PARAGRAPH WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY AND THE AGREEMENTS CONTAINED HEREIN REGARDING THE APPLICATION OF JUDICIAL REFERENCE IN THE EVENT OF THE INVALIDITY OF SUCH JURY TRIAL WAIVER.**

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

Trustor has initialed this paragraph (39) to further indicate Trustor's awareness and acceptance of each and every provision hereof.

DS
Trustor's Initials

[Signature page to follow.]

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

THE UNDERSIGNED TRUSTOR REQUESTS THAT A COPY OF ANY NOTICE OF DEFAULT AND ANY NOTICE OF SALE HEREUNDER BE MAILED TO TRUSTOR AT TRUSTOR'S ADDRESS SET FORTH ABOVE.

("Trustor")

CANTOR GROUP LLC,
a California limited liability company

By:
Name: Deba Shyam
Its: General Manager

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD


## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Los Angeles )

On June 8, 2017 before me, G. Leach, Notary Public
(insert name and title of the officer)

personally appeared Deba Shyam,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

G. LEACH
COMM. # 2165573
NOTARY PUBLIC • CALIFORNIA
LOS ANGELES COUNTY
Comm. Exp. OCT. 21, 2020

Signature (Seal)

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

# NOTARY SEAL CERTIFICATION

(Government Code 27361.7)

I CERTIFY UNDER PENALTY OF PERJURY THAT THE NOTARY SEAL ON THE DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS AS FOLLOWS.

Name of the Notary: G. LEACH

Commission Number: 2165573 Date Commission Expires: 10/21/20

County Where Bond is Filed: Los Angeles

Manufacturer or Vendor Number: MGC1
(Located on both sides of the notary seal borders

Signature: [signature]
Firm Name (if applicable) Linda G.

Place of Execution: San Diego Date: 6/16/17

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

**EXHIBIT "A"**
LEGAL DESCRIPTION

The land situated in the City of Pasadena, County of Los Angeles, State of California, and is described as follows:

PARCEL 1:

LOT 12 OF TRACT NO. 63103, IN THE CITY OF PASADENA, AS PER MAP RECORDED IN BOOK 1369 PAGES 35 THROUGH 52 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AMENDED PURSUANT TO THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED DECEMBER 3, 2013 AS INSTRUMENT NO. 20131708591 OF OFFICIAL RECORDS.

PARCEL 2:

A RECIPROCAL ACCESS EASEMENT OVER THOSE AREAS SET OUT ON THE MAP SHOWN ABOVE.

PARCEL 3:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN CONSOLIDATED AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (SOUTH ORANGE GROVE PARCELS) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716500 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 4:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (DEL MAR PARCEL) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716499 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 5:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN ROSE PARADE GRANDSTAND EASEMENT AGREEMENT (ORANGE GROVE AVENUE) RECORDED JULY 21, 2005 AS INSTRUMENT NOS. 05-1721787 AND 05-1721788 BOTH OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

PARCEL 6:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING GARAGE EASEMENT AGREEMENT RECORDED JULY 2, 2007 AS INSTRUMENT NO. 20071579026 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 7:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING EASEMENT AGREEMENT RECORDED DECEMBER 28, 2011 AS INSTRUMENT NO. 20111763712 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

APN: 5713-027-065

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

**EXHIBIT "B"**
**(PERMITTED TOXIC MATERIALS)**

Trustor shall not permit there to be any hazardous and/or toxic materials at, on, in, around and/or under the Property and improvements, other than those as used in the regular course of business and for which Trustor has licenses from the proper authority, such as a government agency or regulatory body, and further, notwithstanding the foregoing, Trustor hereby expressly covenants, represents and warrants to Lender that all such materials shall be used or stored in strict compliance with the provisions as set forth in paragraph (6)(c) of the Deed of Trust for compliance with all state and federal laws, rules, regulations, relating to or governing the use, storage and/or presence of toxic materials and/or hazardous substances.

Notwithstanding any provisions to the contrary contained in this Exhibit "B" and paragraph (6)(c) of the Deed of Trust, in the event Trustor has executed any unsecured Hazardous Substances Indemnity Agreement ("Hazardous Substances Indemnity") in favor of Lender pertaining to the presence or release of hazardous and/or toxic materials or other similar substances upon, within or from the Property, then the covenants, duties and liabilities of Trustor, and the rights and remedies of Lender with respect to the subject of hazardous and/or toxic materials, shall be governed by the provisions of the Hazardous Substances Indemnity in addition to the provisions of the Deed of Trust; provided, however, that the provisions of said Hazardous Substances Indemnity shall prevail and exclusively govern the subject matter to the extent of any duplication, conflict or inconsistency between such provisions and the provisions of this Deed of Trust, and payment or performance of Trustor's obligations under said Hazardous Substances Indemnity shall not be secured by this Deed of Trust, but shall be and remain unsecured obligations of the Trustor.

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

# Exhibit F

**This page is part of your document - DO NOT DISCARD**

# 20170671626

Pages: 0009

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**06/16/17 AT 08:00AM**

| | |
|---|---|
| FEES: | 77.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 77.00 |

**PCOR SURCHARGE $20.00**

LEADSHEET

201706160170023

**00013856476**

008398374

**SEQ:**
**10**

SECURE - 8:00AM

**THIS FORM IS NOT TO BE DUPLICATED**

E452320

128_1904887

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

Recording Requested By:
FIRST AMERICAN TITLE
National Commercial Services

~~RECORDING REQUESTED BY~~
**AND WHEN RECORDED, MAIL TO:**

PREFERRED BANK
601 S. Figueroa Street, 29th Floor
Los Angeles, California 90017
Attention: Note Department

Assessor's Parcel No.: 5713-027-065
NCS-833700-SO

**ABSOLUTE ASSIGNMENT OF LEASES, LEASE GUARANTIES, RENTS, ISSUES AND PROFITS** "UNRECORDED LEASES"

**(244 S. Orange Grove Boulevard)**

FOR VALUE RECEIVED, the undersigned, CANTOR GROUP LLC, a California limited liability company ("Assignor"), grants, transfers and assigns to PREFERRED BANK, a California banking corporation ("Assignee"), all of Assignor's right, title and interest in all leases executed by Assignor, or Assignor's predecessors in interest, or Assignor's successors in interest, in regard to the real property described below, as lessor (individually and collectively, the "Leases"), concerning real property located in Los Angeles County, California, and legally described as set forth in Exhibit "A" hereto and incorporated herein by reference ("Property"), and all lease guaranties in regard to the Leases (individually and collectively, the "Lease Guaranties") and all rents, issues and profits of the Property, including the cash proceeds thereof, to the fullest extent permitted by California Civil Code Section 2938. Assignor's interests in the Property are the subject of that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated June 8, 2017 ("Deed of Trust"), by Assignor, as Trustor, to First American Title Insurance Company, as Trustee, for Assignee, as Beneficiary, which Deed of Trust secures an obligation or obligations in the original principal amount of Eight Million Four Hundred Thousand and No/100 Dollars ($8,400,000.00), plus permitted accrued interest pursuant to that certain Loan Agreement ("Loan Agreement") between Assignor, on the one hand, and Assignee, on the other hand, dated June 8, 2017, in regard to which this assignment is given. This assignment includes the assignment of Assignor's interest in all extensions and renewals of the Leases and all extensions or renewals of the Lease Guaranties.

1. Assignor warrants that title to all of such property interests is in Assignor; that Assignor has the right to make this assignment; that full title and right to receive all rents, issues and profits under the Leases and all amounts accruing under the Lease Guaranties are vested absolutely in Assignee by this assignment; and that the rental property and rental payments and other sums are free from liens, encumbrances, claims and setoffs of every kind whatsoever, other than the liens and rights of Assignee.

2. Assignor, to the extent made necessary hereby, appoints Assignee its true, lawful and irrevocable attorney to demand, receive and enforce payment, to give receipts, releases and

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

satisfactions, and to sue, either in the name of Assignor or in the name of Assignee, for all rents and other sums payable in regard to the Leases and Lease Guaranties.

3. Until a default in the payment of any indebtedness to which this assignment is related or in the performance of any obligation, covenant or agreement contained herein or in the Deed of Trust on the part of Assignor to be performed ("Default") has occurred and is continuing, Assignor shall have the right to collect said rents or other sums, but according to the terms and conditions hereinafter specified. During the continuance of a Default by Assignor, Assignee shall be entitled to collect and receive all rents, issues and profits that have accrued but remain unpaid and uncollected by Assignor (or Assignor's agent, or for Assignor's benefit) on that date, and all rents, issues and profits that accrue after that date.

4. Assignee may enforce its rights to collect rents, issues and profits in any manner permitted by law, including, without limitation, (a) the appointment of a receiver, (b) obtaining possession of the rents, issues or profits, (c) delivery to any one or more of the tenants of a written demand for the turnover of rents, issues and profits in the form specified by California Civil Code Section 2938, and (d) delivery to Assignor of a written demand for the rents, issues and profits as specified by California Civil Code Section 2938.

5. Assignor consents that, without further notice and without releasing the liability of Assignor, Assignee may, at Assignee's discretion, give grace or indulgence in the collection of all rents and sums due or to become due under the Leases and Lease Guaranties and grant extensions of time for the payment of the same before, at, or after maturity.

6. Nothing herein contained shall be construed as imposing upon Assignee the duty to collect any rent or any other sum. Further, nothing herein contained shall be construed as imposing upon Assignee any duty in regard to causing the Property to be rented, in whole or in part, or to be utilized in any other way.

7. Nothing herein contained shall be construed as requiring Assignee to give credit to Assignor or any successor in interest of Assignor in regard to Assignor's obligation or obligations to Assignee which are related to this assignment, or as creating any setoff against or reduction of said obligation or obligations for any sum or sums except to the extent of any sum or sums actually received and so applied by Assignee.

8. Assignee does not assume any of the landlord's obligations under the Leases or the Lease Guaranties, or any of them, and Assignor agrees (a) to keep and perform all obligations of the landlord under the Leases and the Lease Guaranties and to save Assignee harmless from the consequences of any failure to do so; and (b) to preserve the Property subject to the Leases free and clear of liens and encumbrances, except to or with the written consent of Assignee.

9. Assignor agrees that Assignor will not assign any other interest in the Leases or the Lease Guaranties, or any of them, or in the rents, issues or profits of the Property; that notice of this assignment may be given to any tenant or lease guarantor at any time at Assignee's option; and that, in the event any payment of rent or any other sum is made to Assignor, Assignor will hold such rent or other sum as trustee for Assignee to the extent that the same equals any installment

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

or installments then due and payable under the related obligation or obligations, any installment or installments on any lien which may be superior to the Deed of Trust in terms of priority and any taxes or assessments then due and payable in regard to the Property.

10. Assignor further agrees, at its sole cost and expense: (i) to enforce or secure the performance of each obligation of the Leases by the respective Lessees to be performed and each obligation of the Lease Guaranties by the respective lease guarantor to be performed; (ii) not to anticipate the rents thereunder, nor to waive or release any party thereunder of or from his, her or its obligations; and (iii) not to modify the Leases or Lease Guaranties, or any of them, nor accept surrender thereunder.

11. This assignment is in addition to the Deed of Trust and is not to be construed as being a waiver of any of the terms thereof or of the obligations which the Deed of Trust secures.

12. If, as and when a Default occurs, Assignee shall be entitled to all attorneys' fees paid or incurred by Assignee for so doing, all fees and commissions paid or incurred by Assignee for or in connection with management of the Property, and reimbursement of all expenses paid or incurred by Assignee for or in connection with maintaining the Property, all added to the obligation hereinabove described as though advances under the Deed of Trust.

13. This assignment is irrevocable and shall remain in full force and effect until and unless there is payment in full of all obligations related to it or it is released in writing by Assignee.

14. A Default hereunder shall constitute a default under the Loan Agreement, the Note, the Deed of Trust and all other instruments evidencing or securing the Note, as those terms are defined in the Loan Agreement, and, upon occurrence and during the continuance of any such Default, at the option of Assignee, without notice to Assignor, all unpaid indebtedness secured by said instruments shall become immediately due and payable.

15. Nothing contained in this assignment or in any action or undertaking by Assignee pursuant to this assignment shall be deemed or be construed to constitute Assignee as a mortgagee in possession of the Property or to obligate Assignee to take any action hereunder, to incur expenses or discharge any obligation, duty or liability hereunder or under the Leases or Lease Guaranties. Until the loan as evidenced by the Note and all indebtedness secured hereby shall have been paid in full, Assignor will from time to time execute and deliver to Assignee upon demand any and all writings which Assignee may deem necessary or desirable to carry out the purposes and intent hereof, and which will enable Assignee to enforce any right or remedy hereunder.

16. Except to the extent caused by the gross negligence or willful misconduct of Assignee, Assignor hereby indemnifies and holds Assignee harmless from and against any and all liability, loss, or damage which Assignee may incur under the Leases or Lease Guaranties or by reason of this assignment, and of and from any and all claims and demands whatsoever which may be asserted against Assignee by reason of any alleged obligation or undertaking to be performed or discharged by any mortgagee or holder of a trust deed under the Leases or this assignment. Nothing contained in the Note, the Deed of Trust, the Loan Agreement, or in this assignment shall

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

be construed to bind Assignee to the performance of any of the terms or provisions contained in any of the Leases or Lease Guaranties, or otherwise to impose any obligation on Assignee, including, but not limited to, any liability under any covenant of quiet enjoyment contained in the Leases in the event that any tenant shall have been joined as a party defendant in any action to foreclose the Deed of Trust and shall have been barred and foreclosed thereby of all right, title, and interest, and equity of redemption, in said premises. Prior to actual entry and taking possession of the Property, or any portion thereof, by Assignee, even though Assignee may be receiving rental income, this assignment shall not operate to place responsibility for control, care, management, or repair of said Property upon Assignee, nor for the carrying out of any terms and provisions of the Leases or Lease Guaranties. Should Assignee incur any liability described in this Section, or loss or damage under the Leases or Lease Guaranties or under or by reason of the assignment, or in defense of any such claims or demands, Assignor shall immediately upon demand reimburse Assignee for the amount thereof, including all costs, expenses and attorneys' fees incurred in connection therewith, and Assignee may retain possession and collection of any and all rents and other income derived from the Leases, the Lease Guaranties and/or the Property, and, from time to time, apply them in or towards satisfaction of or reimbursement for any such loss, damage, cost or expense.

[Signature page to follow.]

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

Dated: June 8, 2017

"ASSIGNOR"

CANTOR GROUP LLC,
a California limited liability company

By: 
Name: Deba Shyam
Its: General Manager

**(ALL SIGNATURES MUST BE ACKNOWLEDGED)**

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

# ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Los Angeles )

On June 8, 2017 before me, G. Leach, Notary Public
(insert name and title of the officer)

personally appeared Deba Shyam,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

G. LEACH
COMM. # 2165573
NOTARY PUBLIC ◦ CALIFORNIA
LOS ANGELES COUNTY
Comm. Exp. OCT. 21, 2020

Signature ______________ **(Seal)**

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

**EXHIBIT "A"**
LEGAL DESCRIPTION

The land situated in the City of Pasadena, County of Los Angeles, State of California, and described as follows:

PARCEL 1:

LOT 12 OF TRACT NO. 63103, IN THE CITY OF PASADENA, AS PER MAP RECORDED IN BOOK 1369 PAGES 35 THROUGH 52 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AMENDED PURSUANT TO THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED DECEMBER 3, 2013 AS INSTRUMENT NO. 20131708591 OF OFFICIAL RECORDS.

PARCEL 2:

A RECIPROCAL ACCESS EASEMENT OVER THOSE AREAS SET OUT ON THE MAP SHOWN ABOVE.

PARCEL 3:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN CONSOLIDATED AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (SOUTH ORANGE GROVE PARCELS) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716500 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 4:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (DEL MAR PARCEL) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716499 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 5:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN ROSE PARADE GRANDSTAND EASEMENT AGREEMENT (ORANGE GROVE AVENUE) RECORDED JULY 21, 2005 AS INSTRUMENT NOS. 05-1721787 AND 05-1721788 BOTH OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

PARCEL 6:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING GARAGE EASEMENT AGREEMENT RECORDED JULY 2, 2007 AS INSTRUMENT NO. 20071579026 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 7:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING EASEMENT AGREEMENT RECORDED DECEMBER 28, 2011 AS INSTRUMENT NO. 20111763712 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

APN: 5713-027-065

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

# Exhibit G

# CONTINUING GUARANTY

The undersigned, ANDREW STUPIN, an individual (herein called "Guarantor"), at the solicitation of CANTOR GROUP LLC, a California limited liability company ("Borrower"), requests PREFERRED BANK, a California banking corporation (herein called "Lender"), to extend Credit to Borrower. In order to induce Lender to extend Credit to Borrower, and in consideration of Credit heretofore, now or hereafter granted to Borrower by Lender, Guarantor agrees as follows:

1. The term "Credit" is used throughout this Continuing Guaranty ("Guaranty") in its most comprehensive sense and means and includes, without limitation, any and all loans, advances, debts, obligations and liabilities of any kind or nature owed by Borrower to Lender, heretofore, now, or hereafter made, incurred or created, arising from the Loan Documents as defined in the Loan Agreement dated June 8, 2017, between Borrower and Lender ("Agreement"), whether due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined, secured or unsecured, whether on original, renewed, extended or revised terms (including, without limitation, those evidenced by new or additional instruments or agreements or those changing the applicable rate of interest or which release any obligor with respect thereto), whether principal, interest, fees, or expenses, whether Borrower may be liable individually or jointly with others, whether recovery upon such indebtedness may be or hereafter becomes barred by any statute of limitations, and whether such indebtedness may be or hereafter becomes invalid or otherwise unenforceable. In the event a petition under the United States Bankruptcy Code is filed by or against Borrower, the term "Borrower" shall also mean and include Borrower in its status as a debtor, debtor-in-possession and/or reorganized debtor under the United States Bankruptcy Code. All capitalized terms used herein but not defined shall have the meaning given to them in the Agreement.

2. (a) If there is more than a single entity or person included in the terms "Guarantor" or "Borrower," respectively, each reference herein to such terms shall mean any and all, and one or more of such entities and persons both jointly and severally, and (b) if more than one person or entity executes this Guaranty, the obligations and liabilities hereunder of Guarantors are and shall be both joint and several. If Borrower is a corporation, partnership, limited liability company or association, each reference herein to the term "Borrower" shall include any successor entity to Borrower. If there is more than one guaranty of the obligations of Borrower, the liabilities of all Guarantors are joint and several. As used in this Guaranty, neuter terms include the masculine and feminine, and vice versa.

3. In addition to any liability hereunder, Guarantor agrees to bear and be liable to Lender for the interest and expenses enumerated in paragraph 21 hereof. Any payment by Guarantor shall not reduce the obligations of Guarantor hereunder unless written notice to that effect is actually received by Lender at or prior to the time of such payment.

4. Guarantor unconditionally guarantees and agrees to pay to Lender, on demand, in lawful money of the United States of America, an amount equal to the amount of the Credit plus the fees, expenses, interest and other amounts and charges

specified in paragraphs 3 and 21 hereof, and to otherwise perform any obligations of Borrower undertaken pursuant to any Credit. This Guaranty is a guaranty of payment and not of collection. No payment received by Lender from Borrower or any other person or from proceeds of collateral granted by Borrower or any other person shall reduce Guarantor's liability hereunder.

5. Either before or after revocation hereof, Guarantor authorizes Lender at its sole discretion, with or without notice, and without affecting Guarantor's continuing liability hereunder, from time to time to (a) change the time or manner of payment of any Credit by modification, renewal, extension, acceleration or otherwise, (b) amend or change any other provision of any Credit including the rate of interest thereon, (c) accept partial payment on any Credit, (d) accept new or additional instruments, agreements or documents relative to any Credit, (e) release, substitute or add one or more endorsers, cosigners or guarantors for any Credit, (f) enter into forbearances with Borrower even though the result of such forbearance is to increase the amount of accrued and unpaid interest, cost, fees and/or expenses attributable to the Credit, (g) amend or modify the terms of any guaranty executed by a co-guarantor, including the maximum liability thereunder, (h) obtain collateral for the payment of any Credit and/or any guaranty thereof, (i) waive, release, exchange, substitute, or modify, in whole or in part, existing, after-acquired or later acquired collateral securing payment of the Credit or any guaranty therefor on such terms as Lender at its sole discretion shall determine, (j) subordinate payment of all or any part of the Credit to other creditors of Borrower or other persons on such terms as Lender deems appropriate, (k) apply any sums received from Borrower, any other guarantor, endorser or cosigner or from the sale or collection of collateral or its proceeds to any indebtedness whatsoever in any order and regardless of whether or not such indebtedness is guaranteed hereby, is secured by collateral, or is due and payable, (l) without limiting the foregoing, apply any sums received from Guarantor or from the sale of collateral, if any, pledged by Guarantor to any, all, or any portion of the Credit in any order regardless of whether or not the Credit is secured by collateral or is due and payable, and (m) exercise any right or remedy it may have with respect to any Credit or any collateral securing any Credit, this Guaranty or any other guaranty, including, without limitation, bidding and purchasing at any sale of any such collateral, and compromising, collecting or otherwise liquidating any collateral or any Credit.

6. Guarantor acknowledges that Guarantor may have certain rights under applicable law which, if not waived by Guarantor, might provide Guarantor with defenses against Guarantor's liability under this Guaranty. Among those rights, are certain rights of subrogation, reimbursement, indemnification and contribution, and rights provided in sections 2787 to 2855, inclusive, of the California Civil Code. Guarantor waives all of Guarantor's rights of subrogation, reimbursement, indemnification, and contribution, and any other rights and defenses that are or may become available to Guarantor by reason of any or all of California Civil Code sections 2787 to 2855, inclusive, including, without limitation, Guarantor's rights:

(a) To require Lender to notify Guarantor of any default by Borrower, provide Guarantor with notice of any sale or other disposition of security for any Credit, disclose information with respect to the Credit, Borrower, or any other guarantor, co-signer or endorser, or with respect to any collateral;

(b) That Guarantor's obligation under this Guaranty must be commensurate with that of Borrower;

(c) To be discharged based upon the absence of any liability of Borrower, at any time, by virtue of operation of law, or otherwise, or due to any other disability or defense of Borrower or any other guarantor, endorser or co-signer;

(d) To be discharged if any of the terms, conditions or provisions of the Credit are altered in any respect;

(e) To be discharged upon acceptance by Lender of anything in partial satisfaction of the Credit, and/or if Lender designates the portion of the Credit to be satisfied;

(f) To be discharged upon any modification of the Credit or the release by Lender of Borrower or any other guarantor, endorser or co-signer;

(g) To require Lender to proceed against Borrower, or any other guarantor, endorser, co-signer, or other person, or to pursue or refrain from pursuing any other remedy in Lender's power;

(h) To receive the benefit of or participate in any and all security for repayment and/or performance of the Credit;

(i) To have any security for the Credit first applied to satisfy or discharge the Credit;

(j) That any arbitration award rendered against Borrower not constitute an award against Guarantor;

(k) To be discharged based upon any failure by Lender to perfect or continue perfection of any lien, use due diligence to collect all or any part of any Credit, or if recovery against Borrower becomes barred by any statute of limitations, or if Borrower is not liable for any deficiency after Lender realizes upon any collateral;

(l) To be discharged due to the release or discharge of any collateral for any Credit or guaranty, or relating to the validity, value or enforceability of any collateral; and

(m) To revoke this Guaranty.

7. Guarantor also waives all rights and defenses that Guarantor may have because the Borrower's debt is secured by real property. This means, among other things: (1) Lender may collect from Guarantor without first foreclosing on any real or personal property collateral pledged or assigned by Borrower; (2) If Lender forecloses on any real property collateral pledged by the Borrower: (A) The amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price, (B) Lender may collect from Guarantor even if Lender, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from Borrower. This is an unconditional and irrevocable

waiver of any rights and defenses Guarantor may have because Borrower's debt is secured by real property. These rights and defenses include, but are not limited to, any rights or defenses directly or indirectly based upon Sections 580a, 580b, 580d, or 726 of the California Code of Civil Procedure.

8. Guarantor also waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against the principal by the operation of Section 580d of the California Code of Civil Procedure or otherwise.

9. Guarantor waives all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of acceptance, notices of the existence, creation or increase of any new or additional credit, notice of sale in regard to judicial or non-judicial foreclosure of real or personal property collateral and all other notices and demands of any kind or nature whatsoever except as expressly set forth herein.

10. Notwithstanding any foreclosure of the lien of any security agreements, deeds of trust, mortgages or other security instruments, with respect to the Credit or any other guaranty, whether by the exercise of the power of sale contained therein, by any action for judicial foreclosure, or by any acceptance of a deed or other transfer in lieu of foreclosure, whether or not such method of foreclosure or transfer in lieu of foreclosure was for a consideration equal to or greater than the fair market value of the security property, Guarantor shall remain bound under this Guaranty for the obligations of Borrower to Lender and shall be liable to Lender for any and all of the Credit remaining unpaid after any such foreclosure.

11. Guarantor represents and warrants to Lender that: (a) Lender has made no representation to Guarantor in regard to Borrower, the Credit or any matters pertaining thereto, upon which Guarantor is relying in giving this Guaranty; and (b) Guarantor has established adequate means and assumes the responsibility for being and keeping informed of the financial condition of Borrower and of all other circumstances bearing upon the risk of nonpayment of the Credit which diligent inquiry would reveal, and Lender shall have no duty to advise Guarantor of information known to Lender regarding such condition or any such circumstance.

12. [Intentionally omitted.]

13. Any and all indebtedness of Borrower now or hereafter owed to Guarantor and all claims of Guarantor against Borrower, whenever arising, are hereby subordinated to the Credit and assigned to Lender as additional collateral. If Lender so requests, any note or other instrument evidencing such indebtedness and all claims of Guarantor against Borrower shall be delivered to Lender, and such indebtedness and all claims of Guarantor against Borrower shall be collected, enforced and received by Guarantor as trustee for Lender and be paid over to Lender on account of the Credit and shall reduce liability of Guarantor hereunder. Should Guarantor fail to collect proceeds of debt owed to it by Borrower and pay the proceeds to Lender, Lender, as Guarantor's attorney-in-fact may do such acts and sign such documents in Guarantor's name as Lender considers

necessary, at its discretion, to effect such collection, and Guarantor hereby irrevocably appoints Lender as Guarantor's attorney-in-fact for such purposes. If Borrower is a corporation, limited liability company or partnership, Guarantor will not withdraw or accept, without Lender's prior written consent, any return of any capital invested or equity interest in Borrower (i) following the occurrence of an Event of Default (as defined in the Agreement) and during the continuance thereof, or (ii) if such withdrawal or acceptance would cause an Event of Default.

14. Guarantor agrees that to the extent Borrower makes a payment or payments or is credited for any payment or payments made for the account of or on behalf of Borrower to Lender, which payment or payments, or any part thereof, are subsequently invalidated, determined to be fraudulent or preferential, voided, set aside and/or required to be repaid to any trustee, receiver, assignee or any other party whether under any bankruptcy, state or federal law, common law or equitable cause or otherwise, then to the extent thereof, the obligation or part thereof intended to be satisfied thereby, together with the guaranty thereof hereunder, shall be revived, reinstated and continued in full force and effect as if said payment or payments had not originally been made by or for the account of or on behalf of Borrower.

15. Guarantor agrees that to the extent Guarantor makes a payment or payments or is credited for any payment or payments made for the account of or on behalf of Guarantor to Lender, which payment or payments, or any part thereof, are subsequently invalidated, determined to be fraudulent or preferential, voided, set aside and/or required to be repaid to any trustee, receiver, assignee or any other party whether under any bankruptcy, state or federal law, common law or equitable cause or otherwise, then to the extent thereof, the obligation or part thereof intended to be satisfied thereby, shall be revived, reinstated and continued in full force and effect as if said payment or payments had not originally been made by or for the account of or on behalf of Guarantor.

16. Guarantor's obligations hereunder are not contingent upon and are independent of the obligations of Borrower, or any other guarantor or surety of the Credit. This Guaranty is not made in consideration of the liability of any other guarantor or surety of the Credit. The release or death of any guarantor of the Credit or the revocation of any guaranty shall not release or otherwise affect the liability of any other non-revoking guarantor. A separate action or actions may be brought and prosecuted against Guarantor whether action is brought against Borrower or any other guarantor or whether Borrower or any other guarantor be joined in any such action or actions.

17. To the maximum extent permitted by law, Guarantor specifically waives the benefit of the statute of limitations affecting its liability hereunder or the enforcement hereof, or the collection of any Credit, including, without limiting the foregoing, any and all special statutes of limitations arising out of California Code of Civil Procedure sections 580a or 726(b). Any partial payment by Borrower which operates to toll any statute of limitations as to Borrower shall likewise toll the statute of limitations as to Guarantor.

18. Any married Guarantor who signs this Guaranty expressly agrees that recourse may be had against his/her separate property as well as all community property

over which that person has a power of management and control, for all of his/her obligations hereunder. Notwithstanding anything to the contrary contained herein and for the avoidance of doubt, in no event shall any of the separate property of Guarantor's spouse be subject to or bound by any of the obligations of Guarantor hereunder.

19. Should any one or more provisions of this Guaranty be determined to be illegal or unenforceable, all other provisions shall remain effective.

20. Lender may, with or without notice, assign this Guaranty in whole or in part. This Guaranty shall inure to the benefit of Lender, its successors and assigns, and shall bind Guarantor and Guarantor's heirs, executors, administrators, representatives, successors and assigns.

21. Guarantor agrees to pay to Lender, on demand, all attorneys' fees and all other costs and expenses which may be incurred by Lender in the collection or attempted collection from Borrower of any Credit and/or in the interpretation, enforcement or attempted enforcement by Lender of this Guaranty or any collateral therefor, including, but not limited to, proceedings in any bankruptcy or other insolvency case or other proceedings touching the Credit or this Guaranty, or both, in any manner, whether or not legal proceedings or suit are instituted, together with interest thereon at the rate applicable to the Credit and including, without limitation, all attorneys' fees and related costs of enforcement of any and all judgments and awards and upon any appeal relating thereto.

22. Guarantor warrants and represents to Lender that:

(a) All financial statements and other financial information furnished or to be furnished to Lender by Guarantor are or will be true and correct in all material respects and do and will fairly represent the financial condition of Guarantor (including all contingent liabilities) as of the dates thereof; and

(b) To the best of Guarantor's knowledge, there has been no material adverse change in Guarantor's financial condition since the dates of the financial statements and other information furnished to Lender, except as previously disclosed to Lender in writing..

23. Lender may declare Guarantor in default under this Guaranty upon the occurrence of any of the following events:

(a) Guarantor fails to pay or perform any of Guarantor's obligations under this Guaranty within five (5) days following written demand from Lender regarding such failure; or

(b) Any representation or warranty made or given by Guarantor to Lender proves to be false or misleading in any material respect when made by Guarantor; or

(c) A petition or action for relief shall be filed by or against Guarantor, pursuant to the Federal Bankruptcy Code (Title 11, U.S. Codes) in effect from time to

time, or under any other law relating to bankruptcy, insolvency, reorganization, moratorium, creditor composition, arrangement or other relief from debts; the appointment of a receiver, trustee, custodian or liquidator of or for any property of Guarantor; or upon the death, incapacity, insolvency, dissolution, or termination of the business of Guarantor; or

(d) Guarantor revokes or attempts to revoke this Guaranty.

24 If Borrower is a corporation, limited liability company or partnership, Lender need not inquire into the power of Borrower or the authority of its officers, directors, partners, agents, members or managers acting or purporting to act in its behalf, and any Credit granted in reliance upon the purported exercise of such power or authority is guaranteed hereunder.

25. Receipt of a true copy of this Guaranty is hereby acknowledged by Guarantor. Guarantor understands and agrees that Lender's acceptance of this Guaranty shall not constitute a commitment of any nature whatsoever by Lender to extend, renew or hereafter extend credit to Borrower. Guarantor agrees that this Guaranty shall be effective with or without notice from Lender of its acceptance of this Guaranty.

26. If Guarantor has executed more than one Guaranty of any or all indebtedness of Borrower owed to Lender, any limits of liability thereunder and hereunder shall be cumulative, and a subsequent guaranty executed by Guarantor shall not supersede or replace this Guaranty unless such subsequent guaranty so provides.

27. Guarantor waives all rights to interpose any setoffs or counterclaims of any nature in any action or proceeding instituted by Lender with respect to this Guaranty (other than compulsory counterclaim), the collateral therefor, or any matter arising therefrom or relating thereto and the posting of any bond which may otherwise be required, and waives any and all benefits of cross-demands pursuant to section 431.70 of the California Code of Civil Procedure.

28. Guarantor hereby irrevocably submits and consents to the jurisdiction of any federal or state court of competent jurisdiction within California in connection with any action or proceeding arising out of or relating to this Guaranty. In any such litigation, Guarantor consents to service of process by any means authorized by California or federal law or as otherwise agreed in writing between Lender and Guarantor.

29. All rights, remedies, powers and benefits granted to Lender under this Guaranty, the Credit, any oral or other written agreement or applicable law whether expressly granted or implied in law or otherwise, are cumulative and not exclusive, and are enforceable alternatively, successively, or concurrently on any one or more occasions at Lender's discretion.

30. Lender shall not, by any act, delay, omission or otherwise be deemed to have expressly or impliedly waived any security interest granted to Lender hereunder or Lender's rights, powers and/or remedies hereunder (including any right of setoff) unless such waiver shall be in writing and signed by an authorized officer of Lender. Any such

waiver shall be enforceable only to the extent specifically set forth therein. A waiver by Lender of any default, right, power and/or remedy on any one occasion shall not be construed as a bar to or waiver of any such default, right, power and/or remedy which Lender would otherwise have on any future occasion whether similar in kind or otherwise. Any failure by Lender to file or enforce a claim against the estate (whether in administration, bankruptcy, probate or other proceeding) of Borrower or of any others, shall not affect Guarantor's liability hereunder.

31. Neither this Guaranty nor any related agreement, document or instrument nor any provision hereof or thereof shall be amended, modified or discharged orally or by course of conduct, but only by a written agreement signed by an authorized officer of Lender expressly referring to this Guaranty and to the provisions so amended, modified or discharged.

32. Lender's books and records showing the account(s) between Lender and Borrower shall be admissible in evidence in any action or proceeding as prima facie proof of the items set forth therein. Lender's statements rendered to Borrower, to the extent to which no objection is made within thirty (30) days after date thereof, shall be deemed conclusively correct and constitute an account stated absent manifest error, which shall be binding on Guarantor whether or not Guarantor receives a copy of any such statement or notice thereof.

33. This is a continuing guaranty of the Credit, including those arising after any repayment and reborrowing and under any successive and future transactions which may increase, renew or continue the original Credit. Revocation of this Guaranty, if permitted by applicable law, shall be effective only upon the close of the next business day after written notice thereof is received by an officer of Lender by certified or registered mail, return receipt requested at 601 S. Figueroa Street, 29th Floor, Los Angeles, California 90017, Attention: Note Department, or at any other office of Lender designated in a written notice mailed by Lender to Guarantor at its address set forth below. Any such revocation shall be effective only as to the revoking party and shall not affect that party's obligations with respect to Credit existing before the revocation became effective or as to any renewals, extensions or modifications of any Credit, whether such renewal, extension or modification is made prior to or after revocation, including those evidenced by a new or additional instrument or agreement or which change the rate of interest on any Credit, or for post-revocation interest and collection expenses accruing or incurred by Lender with respect thereto. Notwithstanding any revocation hereof, this Guaranty shall not be terminated until Lender has received indefeasible payment in full of all Credit which is guaranteed hereby and, in regard to which Credit, Lender no longer has an outstanding commitment to lend. Credit existing before revocation becomes effective shall be deemed to include, without limitation, all Credit or advances which Lender has committed to make to Borrower in reliance upon this Guaranty, even though the amount of such Credit or advances has not been advanced as of the effective date of revocation, and even though Lender may have defenses or defaults which would relieve it of such commitment, if asserted.

34. The provisions of this Guaranty shall be construed and interpreted and all rights and obligations hereunder determined in accordance with the laws of the State of California.

35. GUARANTOR ACKNOWLEDGES THAT LENDER HAS OR MAY IN THE FUTURE EXTEND CREDIT TO BORROWER IN RELIANCE ON GUARANTOR'S UNCONDITIONAL PROMISE TO REPAY ANY AND ALL CREDIT AND LENDER IS RELYING ON THE WAIVERS, WARRANTIES AND PROMISES MADE BY GUARANTOR IN THIS GUARANTY. GUARANTOR AGREES THAT EACH OF THE WAIVERS, WARRANTIES AND PROMISES SET FORTH IN THIS GUARANTY ARE MADE WITH GUARANTOR'S UNDERSTANDING OF THEIR SIGNIFICANCE AND CONSEQUENCES AND THAT THEY ARE REASONABLE. IF ANY WAIVERS, WARRANTIES AND PROMISES ARE DETERMINED TO BE CONTRARY TO ANY APPLICABLE LAW OR PUBLIC POLICY, SUCH WAIVERS, WARRANTIES AND PROMISES SHALL BE EFFECTIVE TO THE MAXIMUM EXTENT PERMITTED BY LAW. BEFORE SIGNING THE GUARANTY, GUARANTOR HAS EITHER SOUGHT THE ADVICE OF COUNSEL TO EXPLAIN THE WAIVERS OF ITS RIGHTS AND DEFENSES AS STATED HEREIN AND THE EFFECT THEREOF, OR HAS HAD THE OPPORTUNITY TO SEEK SUCH COUNSEL, AND IN ANY EVENT, INTENDS THIS GUARANTY TO BE AS UNRESTRICTED AS POSSIBLE. GUARANTOR THEREFORE HAS CONSCIOUSLY AND INTENTIONALLY WAIVED ALL DEFENSES OF GUARANTOR AND RIGHTS WHICH COULD EXONERATE GUARANTOR HEREUNDER TO THE FULL EXTENT PERMITTED BY THE LAWS OF THE STATE OF CALIFORNIA, WHETHER OR NOT EACH AND EVERY DEFENSE, RIGHT OR WAIVER IS EXPLAINED OR DESCRIBED IN DETAIL IN THIS GUARANTY.

36. GUARANTOR ACKNOWLEDGES THAT NEITHER LENDER NOR ANY OF LENDER'S OFFICERS OR EMPLOYEES HAVE MADE ANY PROMISE OR REPRESENTATION, NOT INCORPORATED HEREIN, WHETHER ORAL, WRITTEN OR IMPLIED, TO CAUSE GUARANTOR TO SIGN THIS GUARANTY. GUARANTOR IS NOT SIGNING THIS GUARANTY IN RELIANCE ON ANY PROMISE, CONDITION OR THE ANTICIPATION OF THE OCCURRENCE OF ANY EVENT, AND THERE ARE NO ORAL UNDERSTANDINGS, STATEMENTS OR AGREEMENTS WHICH HAVE NOT BEEN INCLUDED IN THIS GUARANTY. GUARANTOR UNDERSTANDS THAT LENDER HAS THE RIGHT TO ENFORCE PAYMENT OF THE CREDIT AGAINST BORROWER OR GUARANTOR IN ANY ORDER AND LENDER IS NOT OBLIGATED TO OBTAIN ANY OTHER OR ADDITIONAL GUARANTORS OF THE CREDIT OR TO TAKE ANY OTHER COURSE OF ACTION.

37. This Guaranty constitutes the entire agreement between the parties with respect to the subject matter of this Guaranty, and any and all previous or contemporaneous correspondence, statements, or agreements by or between the parties hereto with respect to the subject matter of this Guaranty (but not previous or other guarantees given to Lender by Guarantor) are superseded hereby. This Guaranty may be modified only by a written instrument signed by the parties hereto.

38. This Guaranty is not secured by any real property.

39. Guarantor acknowledges that federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account

or obtains a loan. Guarantor further acknowledges that Lender will ask for Borrower's and Guarantor's legal name, address, tax ID number or social security number and other identifying information and that Lender may also ask for additional information or documentation or take other actions reasonably necessary to verify the identity of Borrower, Guaantor or other related Persons.

40. Guarantor agrees and consents to Lender's (a) sale, transfer, pledge or assignment, whether now or later, of this Guaranty and/or any of the Loan Documents, or any or all servicing rights with respect thereto, and/or (b) sale or transfer, whether now or later, of one or more participation interests in the loan guaranteed by this Guaranty ("Loan") to one or more purchasers, whether related or unrelated to Lender. Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Guarantor, Borrower or about any other matter relating to the Loan or this Guaranty, and Guarantor hereby waives any rights to privacy Guarantor may have with respect to such matters. Guarantor additionally waives any and all notices of sale or sale of participation interests, as well as all notices of any repurchase of participation interests. Guarantor also agrees that the purchasers of this Guaranty and/or any Loan Documents or participation interests will be considered as the absolute owners of such interests in the Guaranty and/or Loan, as applicable, and will have all the rights granted under the agreement or agreements governing the sale of such interests. Guarantor further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of this Guaranty or such Loan Documents or participant of the Loan and unconditionally agrees that either Lender or such purchaser or participant may enforce Guarantor's obligation under this Guaranty irrespective of the failure or insolvency of any holder of any interest in the Loan and/or this Guaranty. Guarantor further agrees that the purchaser of any such interests may enforce its interests irrespective of any personal claims or defenses that Guarantor may have against Lender.

41. Notice. Any notice, request, direction, demand, consent, waiver, approval or other communication required or permitted to be given hereunder shall not be effective unless it is given in writing and shall be delivered (a) in person, (b) by certified mail, postage prepaid, return receipt requested, (c) by facsimile (any notice given by facsimile must be confirmed within 48 hours by letter mailed via regular mail to eth appropriate party), or (d) by a commercial overnight courier that guarantees next day delivery and provides a receipt, and addressed to the parties at the addresses stated below, or at such other address as either party may hereafter notify the other in writing as aforementioned:

If to Guarantor:

ANDREW STUPIN
216 The Promenade North, Suite 200
Long Beach, California 90802
Fax No.: ~~7149695AA~~ 5
9695775

With a copy to:

____________________
____________________
____________________
Attention: __________
Fax No.: __________

If to Lender:

PREFERRED BANK
601 S. Figueroa Street, 29th Floor
Los Angeles, California 90017
Attn: Note Department/Carol Lee
Fax No.: (213) 622-1948

Service of any such notice or other communications so made shall be deemed effective when made in person, when deposited in the mails or when the facsimile is sent, as applicable (whether accepted or refused).

42. WAIVER OF RIGHT TO TRIAL BY JURY; JUDICIAL REFERENCE IN THE EVENT OF JURY TRIAL WAIVER UNENFORCEABILITY. GUARANTOR HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION (1) ARISING UNDER THIS GUARANTY, OR ANY OTHER INSTRUMENT, DOCUMENT, OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR (2) IN ANY WAY CONNECTED WITH, OR RELATED OR INCIDENTAL TO, THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT TO THIS GUARANTY, OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND GUARANTOR HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY. NOTWITHSTANDING THE FOREGOING TO THE CONTRARY, IN THE EVENT THAT THE JURY TRIAL WAIVER CONTAINED HEREIN SHALL BE HELD OR DEEMED TO BE UNENFORCEABLE, GUARANTOR HEREBY EXPRESSLY AGREES TO SUBMIT TO JUDICIAL REFERENCE IN ACCORDANCE WITH CALIFORNIA CIVIL CODE §§ 638, ET SEQ. ANY CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION ARISING HEREUNDER FOR WHICH A JURY TRIAL WOULD OTHERWISE BE APPLICABLE OR AVAILABLE. PURSUANT TO SUCH JUDICIAL REFERENCE, GUARANTOR AGREES TO THE APPOINTMENT OF A SINGLE REFEREE AND SHALL USE ITS BEST EFFORTS TO AGREE ON THE SELECTION OF A REFEREE. IF THE PARTIES TO THE DISPUTE ARE UNABLE TO AGREE ON A SINGLE REFEREE, A REFEREE SHALL BE APPOINTED BY THE COURT TO HEAR ANY DISPUTES HEREUNDER IN LIEU OF ANY SUCH JURY TRIAL. GUARANTOR ACKNOWLEDGES AND AGREES THAT THE APPOINTED REFEREE SHALL HAVE THE POWER TO DECIDE ALL ISSUES IN THE APPLICABLE ACTION OR PROCEEDING, WHETHER OF FACT OR LAW, AND SHALL REPORT A STATEMENT OF DECISION THEREON; PROVIDED, HOWEVER, THAT ANY MATTERS WHICH WOULD NOT OTHERWISE BE THE SUBJECT OF A JURY TRIAL WILL BE UNAFFECTED BY THIS WAIVER AND THE AGREEMENTS CONTAINED HEREIN. GUARANTOR AGREES THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH GUARANTOR AGREEING TO THE SAME KNOWINGLY, AND BEING AFFORDED THE OPPORTUNITY TO HAVE GUARANTOR'S LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED

HEREIN. ANY PARTY MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THE RIGHT TO TRIAL BY JURY AND THE AGREEMENTS CONTAINED HEREIN REGARDING THE APPLICATION OF JUDICIAL REFERENCE IN THE EVENT OF THE INVALIDITY OF SUCH JURY TRIAL WAIVER.

Guarantor has initialed below to further indicate its awareness and acceptance of each and every provision hereof.

Guarantor's Initials

[Signature page to follow.]

IN WITNESS WHEREOF, the Guarantor has executed this Guaranty as of June 8, 2017.

**GUARANTOR:**

ANDREW STUPIN, an individual

Social Security No.: 550746896

Address: 216 The Promenade North, Suite 200
Long Beach, California 90802

Telephone: 714 969 1185

# Exhibit H

[redacted]

06/27/2017
*20170712458*

COPY of Document Recorded
Has not been compared with original.
Originals will be returned when processing has been completed.
LOS ANGELES COUNTY REGISTRAR-RECORDER

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Phone: (800) 331-3282 Fax: (818) 662-4141

B. E-MAIL CONTACT AT FILER (optional)
CLS-CTLS_Glendale_Customer_Service@wolterskluwer.com

C. SEND ACKNOWLEDGEMENT TO: (Name and Address) 15728 - PREFERRED

CT Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

59344719
CALI
FIXTURE

File with: Los Angeles, CA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | | |
|---|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME: Cantor Group LLC | | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX | |
| 1c. MAILING ADDRESS: 216 The Promenade North, Suite 200 | CITY: Long Beach | STATE: CA | POSTAL CODE: 90802 | COUNTRY: USA | |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | |
|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | | |
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME: PREFERRED BANK | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS: 601 S FIGUEROA STREET, 20TH FLOOR | CITY: LOS ANGELES | STATE: CA | POSTAL CODE: 90017 | COUNTRY: USA |

4. COLLATERAL: This financing statement covers the following collateral:
Please see Exhibit "A" and "B" attached hereto and incorporated herein by this reference.

Property Address, 210 S. Orange Grove Blvd, Pasadena, CA 91105

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
59344719 LA 301026

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME
Cantor Group LLC

OR 9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR 10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

13. ☒ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT: ☐ covers timber to be cut ☐ covers as-extracted collateral ☒ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

See Exhibit "A" and "B"

17. MISCELLANEOUS: 59344719-CA-31 15728 - PREFERRED BANK PREFERRED BANK File with: Los Angeles, CA LA 301026

ACKNOWLEDGMENT COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

Prepared by Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

**EXHIBIT "A"**
**COLLATERAL DESCRIPTION**

DEBTOR: CANTOR GROUP LLC

SECURED PARTY: PREFERRED BANK

COLLATERAL:

All right, title and interest which Debtor now has or may later acquire in the real property described in Exhibit "B" attached hereto and made a part hereof by this reference and all appurtenances, easements, covenants, rights of way, tenements, hereditaments and appurtenances thereunto belonging or in any way appertaining thereto now or hereafter, and all of the estate, right, title, interest, claim, demand, reversion or remainder whatsoever of Debtor therein or thereto, at law or in equity, now or hereafter in possession or expectancy, including, without limitation, all mineral, oil, and gas rights and royalties and profits therefrom, all water and water rights and shares of stock pertaining to water and water rights, and all sewers, pipes, conduits, wires and other facilities furnishing utility or services to the real property (collectively, the "Land");

All right, title and interest which Debtor now has or may later acquire in and to all buildings, structures and improvements now or hereafter erected on the Land, including, without limitation, all plant equipment, apparatus, machinery and fixtures of every kind and nature whatsoever now or hereafter located on or forming part of said buildings, structures and improvements (collectively, the "Improvements"; the Land and Improvements being hereinafter sometimes collectively referred to as the "Premises");

All right, title and interest which Debtor now has or may later acquire in and to the land lying in the bed of any street, road, highway or avenue now or hereafter in front of or adjoining the Premises;

All right, title and interest which Debtor now has or may later acquire in any and all awards heretofore or hereafter made by any governmental authorities (federal, state, local or otherwise) to Debtor and all subsequent owners of the Premises which may be made with respect to the Premises as a result of the exercise of the right of eminent domain, the alteration of the grade of any street or any other injury to or decrease of value of the Premises, which said award or awards have been assigned to Secured Party;

All right, title and interest which Debtor now has or may later acquire in any and all unearned premiums accrued, accruing or to accrue, and the proceeds of insurance now or hereafter in effect with respect to all or any portion of the Premises;

All right, title and interest which Debtor now has or may later acquire in any and all claims or demands which Debtor now has or may hereafter acquire against anyone with respect to any damage to all or any portion of the Premises;

All right, title and interest which Debtor now has or may later acquire in any and all claims under and proceeds of any insurance policies by reason of or related to a loss of any kind sustained to

the Premises, now or hereafter, whether or not such policies name Secured Party as an insured and whether or not such policies are required by Secured Party, and whether or not such claims thereunder are characterized as personal claims;

All right, title and interest which Debtor now has or may later acquire in all goods, equipment, machinery, furniture, furnishings, trade fixtures, appliances, inventory, building materials, apparatus, utensils, vehicles, wiring, pipes, conduits, elevators, escalators, heating and air conditioning equipment, chattels and articles of personal property, including, without limitation, any interest therein now or at any time hereafter affixed to, attached to or used in any way in connection with or to be incorporated at any time into the Premises or placed on any part thereof wheresoever located, whether or not attached to or incorporated in the Premises, together with any and all accessions, accessories, attachments, and replacements thereof, appertaining and adapted to the complete and compatible use, enjoyment, occupancy, operation or improvement of the Premises;

All right, title and interest which Debtor now has or may later acquire in all instruments, investment property, deposit accounts, accounts, contract rights, general intangibles, and other intangible property and rights now or hereafter relating to the foregoing property, or the operation thereof or used in connection therewith, including, without limitation, all options, letters of intent, and rights of first refusal of any nature whatsoever, covering all or any portion of such property, together with any modifications thereof, and deposits or other payments made in connection therewith, existing and future development rights, permits and approvals, air rights, density bonus rights, and transferable development rights; all of Debtor's right, title, and interest in and to any awards, remunerations, settlements, or compensation heretofore made or hereafter made by any and all courts, boards, agencies, commissions, offices, or authorities, of any nature whatsoever for any governmental unit (federal, state, local or otherwise) to the present or any subsequent owner of the foregoing property, including those for any vacation of, or change of grade in, any streets affecting the foregoing property and any and all licenses and privileges obtained by Debtor from non-governmental sources;

All right, title and interest which Debtor now has or may later acquire in all leases of the Premises, Personalty, Fixtures, or any part thereof, now or hereafter entered into and all right, title and interest of Debtor thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the lessees of their obligations thereunder (whether such cash or securities are to be held until the expiration of the terms of such leases or applied to one or more of the installments of rent coming due immediately prior to the expiration of such terms); all other rights and easements of Debtor now or hereafter existing pertaining to the use and enjoyment of the Premises; and all right, title and interest of Debtor in and to all declarations of covenants, conditions and restrictions as may affect or otherwise relate to the Premises;

All right, title and interest which Debtor now has or may later acquire in all permits, plans, licenses, specifications, subdivision rights, security interests, contracts, contract rights, public utility deposits, prepaid sewer and water hook-up charges, or other rights as may affect or otherwise relate to the Property (as hereinafter defined); and

All right, title and interest which Debtor now has or may later acquire in all rents, income, issues and profits, including, without limitation, the accounts, revenues, and proceeds of any business

operation conducted by or on behalf of Debtor on or through the use of the Premises, prepaid municipal and utility fees, bonds, revenues, income, and other benefits to which Debtor may now or hereafter be entitled to, or which are derived from, the Property or any portion thereof or interest therein.

The foregoing listing is intended only to be descriptive of the property encumbered by the Deed of Trust (as hereinafter defined), and not exclusive or all inclusive. It is the intent of Debtor to encumber by the Deed of Trust all property located or to be located upon the above-described real property. Said real property (or the leasehold estate if the Deed of Trust encumbers a leasehold estate), buildings, improvements, appurtenances, Fixtures, Personalty, additions, accretions, and other property are herein referred to as the "Property." As used herein, the term "Fixtures" shall include all articles of personal property hereinabove described, now or hereafter attached to, placed upon for a definite term, or otherwise used in connection with the Property, and shall include trade fixtures and goods which are or are to become fixtures. As used herein, the term "Personalty" shall include all furniture, furnishings, equipment, machinery, goods, contract rights, general intangibles, money, deposit accounts, instruments, accounts, leases, chattel paper and other personal property described in this Exhibit "A" (other than Fixtures) of any kind or character now existing or hereafter arising or acquired, now or hereafter located upon, within or about the Property, or which otherwise pertains to the use, ownership, management, operation, construction, leasing and sale of the Property, and all products and proceeds thereof, and all of Debtor's right, title, and interest in and to all such property.

Nothing herein contained shall be construed as creating a mortgage of real property, it being understood and agreed that only that portion of the foregoing description of collateral which constitutes personal property is intended to be included herein and that Secured Party has taken a separate deed of trust encumbering all of Debtor's interest in real property to which the foregoing description refers.

Capitalized terms used above without definition have the meanings given them in the Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (the "Deed of Trust"), dated as of June 8, 2017, by Debtor, as trustor, for the benefit of Secured Party, as beneficiary, encumbering certain property as therein described.

**EXHIBIT "B"**
**LEGAL DESCRIPTION**

The land situated in the City of Pasadena, County of Los Angeles, State of California, and described as follows:

PARCEL 1:

LOT 10 OF TRACT NO. 63103, IN THE CITY OF PASADENA, AS PER MAP RECORDED IN BOOK 1369 PAGES 35 THROUGH 52 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AMENDED PURSUANT TO THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED DECEMBER 3, 2013 AS INSTRUMENT NO. 20131708591 OF OFFICIAL RECORDS.

PARCEL 2:

A RECIPROCAL ACCESS EASEMENT OVER THOSE AREAS SET OUT ON THE MAP SHOWN ABOVE.

PARCEL 3:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN CONSOLIDATED AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (SOUTH ORANGE GROVE PARCELS) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716500 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 4:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN ROSE PARADE GRANDSTAND EASEMENT AGREEMENT (ORANGE GROVE AVENUE) RECORDED JULY 21, 2005 AS INSTRUMENT NOS. 05-1721787 AND 05-1721788 BOTH OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 5:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING GARAGE EASEMENT AGREEMENT RECORDED JULY 2, 2007 AS INSTRUMENT NO. 20071579026 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 6:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING EASEMENT AGREEMENT RECORDED DECEMBER 28, 2011 AS INSTRUMENT NO. 20111763712 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

APN: 5713-013-057

CT Lien Solutions
a Wolters Kluwer Business

CT LIEN SOLUTIONS - JC
CT Lien Solutions
2727 Allen Parkway,
Suite 1000
Houston TX 77019
(800) 833-5778
CLS-HURD@wolterskluwer.com

# Search Results

LORI WONG
PREFERRED BANK
601 S FIGUEROA ST, 29TH FLOOR
NOTE DEPARTMENT, ATTN: TERESA
LOS ANGELES CA 90017

Order #: 59556405 / 1
Customer #: 15728 / --
Date: 07/05/2017
Reference 1: LA
Reference 2: 301026

**Target Name:** CANTOR GROUP LLC
File #:17-7591697042, File Date:06/21/2017, Filing Type:Original, Filing Order#:59344666

**Address 1:** 216 THE PROMENADE NORTH, SUITE

**City:** LONG BEACH
**State:** California
**Zip Code:** 90802

**Jurisdiction:** CA, Secretary of State
**Search Type:** UCC Name Search to Reflect

**Debtor Name Search to Reflect:**
**Searched Through:** 06/28/2017
**Results:** See Attached Listing of Records Found

**Disclaimers:** --
**Comments:**
--

This report contains information compiled from sources which CT Lien Solutions considers reliable but does not control. The information provided is not a certified record of the applicable jurisdiction unless otherwise indicated. CT Lien Solutions does not (i) warrant or guarantee the accuracy, completion or timeliness of the information provided or (ii) accept any liability for delays, errors or omissions in the information provided. CT Lien Solutions is not an insurer with regard to this information or these services. Under no circumstances shall CT Lien Solutions be liable for any loss of underlying collateral or loss (or decreased priority) of security interest in connection with this information or these services. Any categorization of search results is provided for convenience only and is not to be construed as a legal opinion concerning the status of filings.

Date: Jul. 05, 2017



CT Lien Solutions
UCC Search Report

The following represents a listing of the documentation you requested through a careful search of effective UCC filings recorded in the Office of the Secretary of State of CA, Secretary of State, licensed from the State of an independent third party and maintained in a computerized form and available through our offices. Variations of the Name and Address of the search key may appear on this report as a result of the search findings and your individual request for the information.

This report reflects record effective through Jun. 28,2017

Because we cannot independently verify the accuracy of the public information maintained by the responsible government agency or other sources of this data, we make no guaranties, representations, or warranties as to the accuracy or completeness of this report. We cannot and do not accept any liability for errors or omissions.

State of CA, Secretary of State UCC Debtor Name Search results performed on the following

Search Key :
Name = CANTOR%GRO%

1 157460112693 Original filed on Apr. 16,2015
expires on Apr. 16,2020

| | |
|---|---|
| Orig DB | CANTOR GROUP LLC<br>215 5TH ST., STE. A<br>HUNTINGTON BEACH CA 92648 |
| SecPty | CALIFORNIA REPUBLIC BANK<br>18400 VON KARMAN AVE., STE. 1100<br>IRVINE CA 92612 |

2 157470699684 Original filed on Jun. 18,2015
expires on Jun. 18,2020

| | |
|---|---|
| Orig DB | CANTOR GROUP LLC<br>215 15TH STREET, SUITE A<br>HUNTINGTON BEACH CA 92648 |
| SecPty | FIRST CHOICE BANK<br>17785 CENTER COURT DRIVE, SUITE 750<br>CERRITOS CA 90703 |
| Termin. | #1574931079 filed on Nov. 02,2015 |

3 157470699705 Original filed on Jun. 18,2015
expires on Jun. 18,2020

| | |
|---|---|
| Orig DB | CANTOR GROUP LLC<br>215 15TH STREET, SUITE A<br>HUNTINGTON BEACH CA 92648 |
| SecPty | FIRST CHOICE BANK<br>17785 CENTER COURT DRIVE, SUITE 750<br>CERRITOS CA 90703 |
| Termin. | #1574931078 filed on Nov. 02,2015 |

4 167514271206 Original filed on Mar. 15,2016
expires on Mar. 15,2021

| | |
|---|---|
| Orig DB | CANTOR GROUP LLC<br>215 5TH STREET, SUITE A<br>HUNTINGTON BEACH CA 92648 |
| SecPty | FIRST CHOICE BANK<br>17785 CENTER COURT DRIVE, SUITE 750<br>CERRITOS CA 90703 |
| Termin. | #1675217470 filed on Apr. 26,2016 |

5 167520945786 Original filed on Apr. 20,2016
expires on Apr. 20,2021

| | |
|---|---|
| Orig DB | CANTOR GROUP LLC<br>216 THE PROMENADE NORTH, SUITE 200<br>LONG BEACH CA 90802 |
| SecPty | FIRST CHOICE BANK<br>17785 CENTER COURT DRIVE, SUITE 750<br>CERRITOS CA 90703 |
| Termin. | #1675394277 filed on Aug. 01,2016 |

6 177591676110 Original filed on Jun. 21,2017
expires on Jun. 21,2022

| | |
|---|---|
| Orig DB | CANTOR GROUP LLC<br>216 THE PROMENADE NORTH, SUITE 200<br>LONG BEACH CA 90802 |
| SecPty | PREFERRED BANK<br>601 S FIGUEROA STREET, 20TH FLOOR<br>LOS ANGELES CA 90017 |

7 177591697042 Original filed on Jun. 21,2017
expires on Jun. 21,2022

| | |
|---|---|
| Orig DB | CANTOR GROUP LLC<br>216 THE PROMENADE NORTH, SUITE 200<br>LONG BEACH CA 90802 |
| SecPty | PREFERRED BANK<br>601 S FIGUEROA STREET, 20TH FLOOR<br>LOS ANGELES CA 90017 |

[End of Report]

Date: Jul. 05, 2017



CT Lien Solutions
UCC Search Report

The following represents a listing of the documentation you requested through a careful search of effective UCC filings recorded in the Office of the Secretary of State of CA, Secretary of State, licensed from the State of an independent third party and maintained in a computerized form and available through our offices. Variations of the Name and Address of the search key may appear on this report as a result of the search findings and your individual request for the information.

This report reflects record effective through Jun. 28,2017

Because we cannot independently verify the accuracy of the public information maintained by the responsible government agency or other sources of this data, we make no guaranties, representations, or warranties as to the accuracy or completeness of this report. We cannot and do not accept any liability for errors or omissions.

State of CA, Secretary of State UCC Debtor Name Search results performed on the following

Search Key :
Name = CANTOR%GRO%

| | No. | Name | Address | City/State | Zip |
|---|---|---|---|---|---|
| | --- | --------------- | ---------- | ------------- | ---------- |
| | 1 | CANTOR GROUP II, LLC | 216 THE PROMENADE NORTH, SUITE 200 | LONG BEACH CA | 90802 |
| * | 2 | CANTOR GROUP LLC | 215 15TH STREET, SUITE A | HUNTINGTON BEACH CA | 92648 |
| * | 3 | CANTOR GROUP LLC | 215 15TH STREET, SUITE A | HUNTINGTON BEACH CA | 92648 |
| * | 4 | CANTOR GROUP LLC | 215 5TH ST., STE. A | HUNTINGTON BEACH CA | 92648 |
| * | 5 | CANTOR GROUP LLC | 215 5TH STREET, SUITE A | HUNTINGTON BEACH CA | 92648 |
| * | 6 | CANTOR GROUP LLC | 216 THE PROMENADE NORTH, SUITE 200 | LONG BEACH CA | 90802 |
| * | 7 | CANTOR GROUP LLC | 216 THE PROMENADE NORTH, SUITE 200 | LONG BEACH CA | 90802 |
| * | 8 | CANTOR GROUP LLC | 216 THE PROMENADE NORTH, SUITE 200 | LONG BEACH CA | 90802 |

[End of Report]

CT Lien Solutions

a Wolters Kluwer Business

CT LIEN SOLUTIONS - JC
**CT Lien Solutions**
**2727 Allen Parkway,**
**Suite 1000**
**Houston TX 77019**
**(800) 833-5778**
**CLS-HURD@wolterskluwer.com**

**Summary of Charges**
**This is not an invoice. Do not pay from this report.**

| | |
|---|---|
| Order #: | 59556405 |
| Customer #: | 15728 |
| Date: | 07/05/2017 |
| Reference 1: | LA |
| Reference 2: | 301026 |

Joann Gaspard
601 S FIGUEROA ST
LOS ANGELES, 90017

| | Bill-Code | Price |
|---|---|---|
| **CANTOR GROUP LLC** | | |
| UCC Name Search to Reflect-CA, Secretary of State | LA | $26.25 |
| | **Sub-Total:** | **$26.25** |

**Summary**

| | |
|---|---|
| **Service Charge:** | **$26.25** |
| **TOTAL:** | **$26.25** |

*** Pending items may have additional costs of state, county, third party fees or additional copies/pages which will increase the total cost. This report shows preliminary cost only.**

[redacted]

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

17-7591676110

06/21/2017 17:00

FILED

CALIFORNIA SECRETARY OF STATE

SOS

62135030002 UCC 1 FILING

A. NAME & PHONE OF CONTACT AT FILER (optional)
Phone: (800) 331-3282 Fax: (818) 662-4141

B. E-MAIL CONTACT AT FILER (optional)
CLS-CTLS_Glendale_Customer_Service@wolterskluwer.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address) 15728 - PREFERRED

CT Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

59344718
CALI
FIXTURE

File with: Secretary of State, CA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | | |
|---|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME: Cantor Group LLC | | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY | |
| 216 The Promenade North, Suite 200 | Long Beach | CA | 90802 | USA | |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | |
|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | | |
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME: PREFERRED BANK | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 601 S FIGUEROA STREET, 20TH FLOOR | LOS ANGELES | CA | 90017 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
Please see Exhibit "A" and "B" attached hereto and incorporated herein by this reference.

Property Address: 210 S. Orange Grove Blvd., Pasadena, CA 91105

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
59344718 LA 301026

6213503000002

## UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME
Cantor Group LLC

OR 9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR 10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |
| | | | | |

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

| OR 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| --- | --- | --- | --- |
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |
| | | | | |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

13. ☒ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut ☐ covers as-extracted collateral ☒ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

See Exhibit "A" and "B"

17. MISCELLANEOUS: 59344718-CA-0 15728 - PREFERRED BANK PREFERRED BANK File with: Secretary of State, CA LA 301026

**EXHIBIT "A"**
**COLLATERAL DESCRIPTION**

6213503000002

DEBTOR: CANTOR GROUP LLC

SECURED PARTY: PREFERRED BANK

COLLATERAL:

All right, title and interest which Debtor now has or may later acquire in the real property described in Exhibit "B" attached hereto and made a part hereof by this reference and all appurtenances, easements, covenants, rights of way, tenements, hereditaments and appurtenances thereunto belonging or in any way appertaining thereto now or hereafter, and all of the estate, right, title, interest, claim, demand, reversion or remainder whatsoever of Debtor therein or thereto, at law or in equity, now or hereafter in possession or expectancy, including, without limitation, all mineral, oil, and gas rights and royalties and profits therefrom, all water and water rights and shares of stock pertaining to water and water rights, and all sewers, pipes, conduits, wires and other facilities furnishing utility or services to the real property (collectively, the "Land");

All right, title and interest which Debtor now has or may later acquire in and to all buildings, structures and improvements now or hereafter erected on the Land, including, without limitation, all plant equipment, apparatus, machinery and fixtures of every kind and nature whatsoever now or hereafter located on or forming part of said buildings, structures and improvements (collectively, the "Improvements"; the Land and Improvements being hereinafter sometimes collectively referred to as the "Premises");

All right, title and interest which Debtor now has or may later acquire in and to the land lying in the bed of any street, road, highway or avenue now or hereafter in front of or adjoining the Premises;

All right, title and interest which Debtor now has or may later acquire in any and all awards heretofore or hereafter made by any governmental authorities (federal, state, local or otherwise) to Debtor and all subsequent owners of the Premises which may be made with respect to the Premises as a result of the exercise of the right of eminent domain, the alteration of the grade of any street or any other injury to or decrease of value of the Premises, which said award or awards have been assigned to Secured Party;

All right, title and interest which Debtor now has or may later acquire in any and all unearned premiums accrued, accruing or to accrue, and the proceeds of insurance now or hereafter in effect with respect to all or any portion of the Premises;

All right, title and interest which Debtor now has or may later acquire in any and all claims or demands which Debtor now has or may hereafter acquire against anyone with respect to any damage to all or any portion of the Premises;

All right, title and interest which Debtor now has or may later acquire in any and all claims under and proceeds of any insurance policies by reason of or related to a loss of any kind sustained to

the Premises, now or hereafter, whether or not such policies name Secured Party as an insured and whether or not such policies are required by Secured Party, and whether or not such claims thereunder are characterized as personal claims;

All right, title and interest which Debtor now has or may later acquire in all goods, equipment, machinery, furniture, furnishings, trade fixtures, appliances, inventory, building materials, apparatus, utensils, vehicles, wiring, pipes, conduits, elevators, escalators, heating and air conditioning equipment, chattels and articles of personal property, including, without limitation, any interest therein now or at any time hereafter affixed to, attached to or used in any way in connection with or to be incorporated at any time into the Premises or placed on any part thereof wheresoever located, whether or not attached to or incorporated in the Premises, together with any and all accessions, accessories, attachments, and replacements thereof, appertaining and adapted to the complete and compatible use, enjoyment, occupancy, operation or improvement of the Premises;

All right, title and interest which Debtor now has or may later acquire in all instruments, investment property, deposit accounts, accounts, contract rights, general intangibles, and other intangible property and rights now or hereafter relating to the foregoing property, or the operation thereof or used in connection therewith, including, without limitation, all options, letters of intent, and rights of first refusal of any nature whatsoever, covering all or any portion of such property, together with any modifications thereof, and deposits or other payments made in connection therewith, existing and future development rights, permits and approvals, air rights, density bonus rights, and transferable development rights; all of Debtor's right, title, and interest in and to any awards, remunerations, settlements, or compensation heretofore made or hereafter made by any and all courts, boards, agencies, commissions, offices, or authorities, of any nature whatsoever for any governmental unit (federal, state, local or otherwise) to the present or any subsequent owner of the foregoing property, including those for any vacation of, or change of grade in, any streets affecting the foregoing property and any and all licenses and privileges obtained by Debtor from non-governmental sources; 6213503002

All right, title and interest which Debtor now has or may later acquire in all leases of the Premises, Personalty, Fixtures, or any part thereof, now or hereafter entered into and all right, title and interest of Debtor thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the lessees of their obligations thereunder (whether such cash or securities are to be held until the expiration of the terms of such leases or applied to one or more of the installments of rent coming due immediately prior to the expiration of such terms); all other rights and easements of Debtor now or hereafter existing pertaining to the use and enjoyment of the Premises; and all right, title and interest of Debtor in and to all declarations of covenants, conditions and restrictions as may affect or otherwise relate to the Premises;

All right, title and interest which Debtor now has or may later acquire in all permits, plans, licenses, specifications, subdivision rights, security interests, contracts, contract rights, public utility deposits, prepaid sewer and water hook-up charges, or other rights as may affect or otherwise relate to the Property (as hereinafter defined); and

All right, title and interest which Debtor now has or may later acquire in all rents, income, issues and profits, including, without limitation, the accounts, revenues, and proceeds of any business

operation conducted by or on behalf of Debtor on or through the use of the Premises, prepaid municipal and utility fees, bonds, revenues, income, and other benefits to which Debtor may now or hereafter be entitled to, or which are derived from, the Property or any portion thereof or interest therein.

The foregoing listing is intended only to be descriptive of the property encumbered by the Deed of Trust (as hereinafter defined), and not exclusive or all inclusive. It is the intent of Debtor to encumber by the Deed of Trust all property located or to be located upon the above-described real property. Said real property (or the leasehold estate if the Deed of Trust encumbers a leasehold estate), buildings, improvements, appurtenances, Fixtures, Personalty, additions, accretions, and other property are herein referred to as the "Property." As used herein, the term "Fixtures" shall include all articles of personal property hereinabove described, now or hereafter attached to, placed upon for a definite term, or otherwise used in connection with the Property, and shall include trade fixtures and goods which are or are to become fixtures. As used herein, the term "Personalty" shall include all furniture, furnishings, equipment, machinery, goods, contract rights, general intangibles, money, deposit accounts, instruments, accounts, leases, chattel paper and other personal property described in this Exhibit "A" (other than Fixtures) of any kind or character now existing or hereafter arising or acquired, now or hereafter located upon, within or about the Property, or which otherwise pertains to the use, ownership, management, operation, construction, leasing and sale of the Property, and all products and proceeds thereof, and all of Debtor's right, title, and interest in and to all such property.

Nothing herein contained shall be construed as creating a mortgage of real property, it being understood and agreed that only that portion of the foregoing description of collateral which constitutes personal property is intended to be included herein and that Secured Party has taken a separate deed of trust encumbering all of Debtor's interest in real property to which the foregoing description refers.

Capitalized terms used above without definition have the meanings given them in the Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (the "Deed of Trust"), dated as of June 8, 2017, by Debtor, as trustor, for the benefit of Secured Party, as beneficiary, encumbering certain property as therein described.

621350300002

**EXHIBIT "B"**
**LEGAL DESCRIPTION**

The land situated in the City of Pasadena, County of Los Angeles, State of California, and described as follows:

PARCEL 1:

LOT 10 OF TRACT NO. 63103, IN THE CITY OF PASADENA, AS PER MAP RECORDED IN BOOK 1369 PAGES 35 THROUGH 52 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AMENDED PURSUANT TO THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED DECEMBER 3, 2013 AS INSTRUMENT NO. 20131708591 OF OFFICIAL RECORDS.

PARCEL 2:

A RECIPROCAL ACCESS EASEMENT OVER THOSE AREAS SET OUT ON THE MAP SHOWN ABOVE.

PARCEL 3:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN CONSOLIDATED AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (SOUTH ORANGE GROVE PARCELS) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716500 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 4:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN ROSE PARADE GRANDSTAND EASEMENT AGREEMENT (ORANGE GROVE AVENUE) RECORDED JULY 21, 2005 AS INSTRUMENT NOS. 05-1721787 AND 05-1721788 BOTH OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 5:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING GARAGE EASEMENT AGREEMENT RECORDED JULY 2, 2007 AS INSTRUMENT NO. 20071579026 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

621350300002

PARCEL 6:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING EASEMENT AGREEMENT RECORDED DECEMBER 28, 2011 AS INSTRUMENT NO. 20111763712 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

APN: 5713-013-057

6213503000002

[redacted]

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

17-7591697042
06/21/2017 17:00
SOS
FILED
CALIFORNIA SECRETARY OF STATE
62137550002 UCC 1 FILING

A. NAME & PHONE OF CONTACT AT FILER (optional)
Phone: (800) 331-3282 Fax: (818) 662-4141

B. E-MAIL CONTACT AT FILER (optional)
CLS-CTLS_Glendale_Customer_Service@wolterskluwer.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address) 15728 - PREFERRED

CT Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

59344666
CALI
FIXTURE

File with: Secretary of State, CA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

1a. ORGANIZATION'S NAME: Cantor Group LLC

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |
| **1c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 216 The Promenade North, Suite 200 | Long Beach | CA | 90802 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

2a. ORGANIZATION'S NAME:

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |
| **2c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

3a. ORGANIZATION'S NAME: PREFERRED BANK

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |
| **3c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 601 S FIGUEROA STREET, 20TH FLOOR | LOS ANGELES | CA | 90017 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
Please see Exhibit "A" and "B" attached hereto and incorporated herein by this reference.

Property Address: 244-248 S. Orange Grove Blvd, Pasadena, CA 91105

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
59344666 LA 301026

## UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME
Cantor Group LLC

OR 9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

621375500002

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR 10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

OR 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

13. ☒ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut ☐ covers as-extracted collateral ☒ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

Exhibit "B"

17. MISCELLANEOUS: 58044666-CA-0 15728 - PREFERRED BANK PREFERRED BANK File with: Secretary of State, CA LA 301026

**EXHIBIT "A"**
**COLLATERAL DESCRIPTION**

DEBTOR: CANTOR GROUP LLC

SECURED PARTY: PREFERRED BANK

COLLATERAL:

62137550002

All right, title and interest which Debtor now has or may later acquire in the real property described in Exhibit "B" attached hereto and made a part hereof by this reference and all appurtenances, easements, covenants, rights of way, tenements, hereditaments and appurtenances thereunto belonging or in any way appertaining thereto now or hereafter, and all of the estate, right, title, interest, claim, demand, reversion or remainder whatsoever of Debtor therein or thereto, at law or in equity, now or hereafter in possession or expectancy, including, without limitation, all mineral, oil, and gas rights and royalties and profits therefrom, all water and water rights and shares of stock pertaining to water and water rights, and all sewers, pipes, conduits, wires and other facilities furnishing utility or services to the real property (collectively, the "Land");

All right, title and interest which Debtor now has or may later acquire in and to all buildings, structures and improvements now or hereafter erected on the Land, including, without limitation, all plant equipment, apparatus, machinery and fixtures of every kind and nature whatsoever now or hereafter located on or forming part of said buildings, structures and improvements (collectively, the "Improvements"; the Land and Improvements being hereinafter sometimes collectively referred to as the "Premises");

All right, title and interest which Debtor now has or may later acquire in and to the land lying in the bed of any street, road, highway or avenue now or hereafter in front of or adjoining the Premises;

All right, title and interest which Debtor now has or may later acquire in any and all awards heretofore or hereafter made by any governmental authorities (federal, state, local or otherwise) to Debtor and all subsequent owners of the Premises which may be made with respect to the Premises as a result of the exercise of the right of eminent domain, the alteration of the grade of any street or any other injury to or decrease of value of the Premises, which said award or awards have been assigned to Secured Party;

All right, title and interest which Debtor now has or may later acquire in any and all unearned premiums accrued, accruing or to accrue, and the proceeds of insurance now or hereafter in effect with respect to all or any portion of the Premises;

All right, title and interest which Debtor now has or may later acquire in any and all claims or demands which Debtor now has or may hereafter acquire against anyone with respect to any damage to all or any portion of the Premises;

All right, title and interest which Debtor now has or may later acquire in any and all claims under and proceeds of any insurance policies by reason of or related to a loss of any kind sustained to

the Premises, now or hereafter, whether or not such policies name Secured Party as an insured and whether or not such policies are required by Secured Party, and whether or not such claims thereunder are characterized as personal claims;

All right, title and interest which Debtor now has or may later acquire in all goods, equipment, machinery, furniture, furnishings, trade fixtures, appliances, inventory, building materials, apparatus, utensils, vehicles, wiring, pipes, conduits, elevators, escalators, heating and air conditioning equipment, chattels and articles of personal property, including, without limitation, any interest therein now or at any time hereafter affixed to, attached to or used in any way in connection with or to be incorporated at any time into the Premises or placed on any part thereof wheresoever located, whether or not attached to or incorporated in the Premises, together with any and all accessions, accessories, attachments, and replacements thereof, appertaining and adapted to the complete and compatible use, enjoyment, occupancy, operation or improvement of the Premises;

All right, title and interest which Debtor now has or may later acquire in all instruments, investment property, deposit accounts, accounts, contract rights, general intangibles, and other intangible property and rights now or hereafter relating to the foregoing property, or the operation thereof or used in connection therewith, including, without limitation, all options, letters of intent, and rights of first refusal of any nature whatsoever, covering all or any portion of such property, together with any modifications thereof, and deposits or other payments made in connection therewith, existing and future development rights, permits and approvals, air rights, density bonus rights, and transferable development rights; all of Debtor's right, title, and interest in and to any awards, remunerations, settlements, or compensation heretofore made or hereafter made by any and all courts, boards, agencies, commissions, offices, or authorities, of any nature whatsoever for any governmental unit (federal, state, local or otherwise) to the present or any subsequent owner of the foregoing property, including those for any vacation of, or change of grade in, any streets affecting the foregoing property and any and all licenses and privileges obtained by Debtor from non-governmental sources;

All right, title and interest which Debtor now has or may later acquire in all leases of the Premises, Personalty, Fixtures, or any part thereof, now or hereafter entered into and all right, title and interest of Debtor thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the lessees of their obligations thereunder (whether such cash or securities are to be held until the expiration of the terms of such leases or applied to one or more of the installments of rent coming due immediately prior to the expiration of such terms); all other rights and easements of Debtor now or hereafter existing pertaining to the use and enjoyment of the Premises; and all right, title and interest of Debtor in and to all declarations of covenants, conditions and restrictions as may affect or otherwise relate to the Premises;

All right, title and interest which Debtor now has or may later acquire in all permits, plans, licenses, specifications, subdivision rights, security interests, contracts, contract rights, public utility deposits, prepaid sewer and water hook-up charges, or other rights as may affect or otherwise relate to the Property (as hereinafter defined); and

All right, title and interest which Debtor now has or may later acquire in all rents, income, issues and profits, including, without limitation, the accounts, revenues, and proceeds of any business

6213755000 2

operation conducted by or on behalf of Debtor on or through the use of the Premises, prepaid municipal and utility fees, bonds, revenues, income, and other benefits to which Debtor may now or hereafter be entitled to, or which are derived from, the Property or any portion thereof or interest therein.

The foregoing listing is intended only to be descriptive of the property encumbered by the Deed of Trust (as hereinafter defined), and not exclusive or all inclusive. It is the intent of Debtor to encumber by the Deed of Trust all property located or to be located upon the above-described real property. Said real property (or the leasehold estate if the Deed of Trust encumbers a leasehold estate), buildings, improvements, appurtenances, Fixtures, Personalty, additions, accretions, and other property are herein referred to as the "Property." As used herein, the term "Fixtures" shall include all articles of personal property hereinabove described, now or hereafter attached to, placed upon for a definite term, or otherwise used in connection with the Property, and shall include trade fixtures and goods which are or are to become fixtures. As used herein, the term "Personalty" shall include all furniture, furnishings, equipment, machinery, goods, contract rights, general intangibles, money, deposit accounts, instruments, accounts, leases, chattel paper and other personal property described in this Exhibit "A" (other than Fixtures) of any kind or character now existing or hereafter arising or acquired, now or hereafter located upon, within or about the Property, or which otherwise pertains to the use, ownership, management, operation, construction, leasing and sale of the Property, and all products and proceeds thereof, and all of Debtor's right, title, and interest in and to all such property.

Nothing herein contained shall be construed as creating a mortgage of real property, it being understood and agreed that only that portion of the foregoing description of collateral which constitutes personal property is intended to be included herein and that Secured Party has taken a separate deed of trust encumbering all of Debtor's interest in real property to which the foregoing description refers.

Capitalized terms used above without definition have the meanings given them in the Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (the "Deed of Trust"), dated as of June 8, 2017, by Debtor, as trustor, for the benefit of Secured Party, as beneficiary, encumbering certain property as therein described.

621375500002

**EXHIBIT "B"**
**LEGAL DESCRIPTION**

The land situated in the City of Pasadena, County of Los Angeles, State of California, and described as follows:

PARCEL 1:

LOT 12 OF TRACT NO. 63103, IN THE CITY OF PASADENA, AS PER MAP RECORDED IN BOOK 1369 PAGES 35 THROUGH 52 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AMENDED PURSUANT TO THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED DECEMBER 3, 2013 AS INSTRUMENT NO. 20131708591 OF OFFICIAL RECORDS.

PARCEL 2:

A RECIPROCAL ACCESS EASEMENT OVER THOSE AREAS SET OUT ON THE MAP SHOWN ABOVE.

PARCEL 3:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN CONSOLIDATED AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (SOUTH ORANGE GROVE PARCELS) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716500 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 4:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (DEL MAR PARCEL) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716499 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 5:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN ROSE PARADE GRANDSTAND EASEMENT AGREEMENT (ORANGE GROVE AVENUE) RECORDED JULY 21, 2005 AS INSTRUMENT NOS. 05-1721787 AND 05-1721788 BOTH OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

62137550002

PARCEL 6:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING GARAGE EASEMENT AGREEMENT RECORDED JULY 2, 2007 AS INSTRUMENT NO. 20071579026 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 7:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING EASEMENT AGREEMENT RECORDED DECEMBER 28, 2011 AS INSTRUMENT NO. 20111763712 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

*APN: 5713-027-065*

62137550002

[redacted]

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

1776187697

11/29/2017 17:00

FILED

CALIFORNIA SECRETARY OF STATE

SOS

65671390002 UCC 3 FILING

A. NAME & PHONE OF CONTACT AT FILER (optional)
Phone: (800) 331-3282 Fax: (818) 662-4141

B. E-MAIL CONTACT AT FILER (optional)
CLS-CTLS_Glendale_Customer_Service@wolterskluwer.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address) 15728 - PREFERRED

Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

61703398

CALI

FIXTURE

File with: Secretary of State, CA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
17-7591697042 6/21/2017 SS CA

1b. ☒ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ ASSIGNMENT (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☒ PARTY INFORMATION CHANGE:

Check one of these two boxes:
This Change affects ☒ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:
☒ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

6a. ORGANIZATION'S NAME
Cantor Group LLC

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

7a. ORGANIZATION'S NAME
SDRES Partners LLC

OR

7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 216 The Promenade North, Suite 200 | Long Beach | CA | 90802 | USA |

8. ☐ COLLATERAL CHANGE: Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral

Indicate collateral:

See Exhibit A

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

9a. ORGANIZATION'S NAME
PREFERRED BANK

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

10. OPTIONAL FILER REFERENCE DATA: Debtor Name: SDRES Partners LLC

61703398 LA 301026

# UCC FINANCING STATEMENT AMENDMENT ADDENDUM

FOLLOW INSTRUCTIONS

55671390002

11. INITIAL FINANCING STATEMENT FILE NUMBER: Same as item 1a on Amendment form

17-7591697042 6/21/2017 SS CA

12. NAME OF PARTY AUTHORIZING THIS AMENDMENT: Same as item 9 on Amendment form

12a. ORGANIZATION'S NAME

PREFERRED BANK

OR 12b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

13. Name of DEBTOR on related financing statement (Name of a current Debtor of record required for indexing purposes only in some filing offices - see Instruction item 13): Provide only one Debtor name (13a or 13b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); see Instructions if name does not fit

13a. ORGANIZATION'S NAME

Cantor Group LLC

| OR 13b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

14. ADDITIONAL SPACE FOR ITEM 8 (Collateral):

15. This FINANCING STATEMENT AMENDMENT:

☐ covers timber to be cut ☐ covers as-extracted collateral ☒ is filed as a fixture filing

16. Name and address of a RECORD OWNER of real estate described in item 17 (if Debtor does not have a record interest):

17. Description of real estate:

Exhibit "B"

18. MISCELLANEOUS: 61703398-CA-0 15728 - PREFERRED BANK PREFERRED BANK File with: Secretary of State, CA LA 301028

Prepared by Lien Solutions, P.O. Box 29071

[redacted]

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141

B. E-MAIL CONTACT AT FILER (optional)
uccfilingreturn@wolterskluwer.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address) 15728 - PREFERRED

Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

85392261

CALI
FIXTURE

File with: Los Angeles, CA

**Lien Solutions**
Representation of filing

**This filing is Completed**
File Number : 20220345458
File Date : 29-Mar-2022

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1a. INITIAL FINANCING STATEMENT FILE NUMBER
20170712457 6/27/2017 CC CA Los Angeles

1b. ☒ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ ASSIGNMENT (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☒ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ PARTY INFORMATION CHANGE:
Check one of these two boxes:
This Change affects ☐ Debtor or ☐ Secured Party of record
AND Check one of these three boxes to:
☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

6a. ORGANIZATION'S NAME
SDRES Partners LLC

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

7a. ORGANIZATION'S NAME

OR

7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

8. ☐ COLLATERAL CHANGE: Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

9a. ORGANIZATION'S NAME
PREFERRED BANK

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

10. OPTIONAL FILER REFERENCE DATA: Debtor Name: SDRES Partners LLC
85392261 LA 301026



Prepared by Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

# UCC FINANCING STATEMENT AMENDMENT ADDENDUM

FOLLOW INSTRUCTIONS

11. INITIAL FINANCING STATEMENT FILE NUMBER: Same as item 1a on Amendment form
20170712457 6/27/2017 CC CA Los Angeles

12. NAME OF PARTY AUTHORIZING THIS AMENDMENT: Same as item 9 on Amendment form

12a. ORGANIZATION'S NAME
PREFERRED BANK

OR 12b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

13. Name of DEBTOR on related financing statement (Name of a current Debtor of record required for indexing purposes only in some filing offices - see Instruction item 13): Provide only one Debtor name (13a or 13b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); see Instructions if name does not fit

13a. ORGANIZATION'S NAME
SDRES Partners LLC

| OR 13b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

14. ADDITIONAL SPACE FOR ITEM 8 (Collateral):
Debtor Name and Address:
SDRES Partners LLC - 216 The Promenade North, Suite 200 , Long Beach, CA 90802

Secured Party Name and Address:
PREFERRED BANK - 601 S FIGUEROA STREET 20TH FLOOR, LOS ANGELES, CA 90017

15. This FINANCING STATEMENT AMENDMENT:
☐ covers timber to be cut ☐ covers as-extracted collateral ☒ is filed as a fixture filing

16. Name and address of a RECORD OWNER of real estate described in item 17
(if Debtor does not have a record interest):

17. Description of real estate:
Exhibit "B"

18. MISCELLANEOUS: 85392261-CA-37 15728 - PREFERRED BANK PREFERRED BANK File with: Los Angeles, CA LA 301026



Prepared by Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

[redacted]

06/27/2017
*20170712457*

COPY of Document Recorded
Has not been compared with original. Originals will be returned when processing has been completed.
LOS ANGELES COUNTY REGISTRAR-RECORDER

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Phone: (800) 331-3282 Fax: (818) 662-4141

B. E-MAIL CONTACT AT FILER (optional)
CLS-CTLS_Glendale_Customer_Service@wolterskluwer.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address) 15728 - PREFERRED

CT Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

59344667
CALI
FIXTURE

File with: Los Angeles, CA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | | |
|---|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME: Cantor Group LLC | | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |
| 1c. MAILING ADDRESS: 216 The Promenade North, Suite 200 | CITY: Long Beach | STATE: CA | POSTAL CODE: 90802 | | COUNTRY: USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | | |
|---|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | | | |
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| | | | | | |
|---|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME: PREFERRED BANK | | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |
| 3c. MAILING ADDRESS: 601 S FIGUEROA STREET, 20TH FLOOR | CITY: LOS ANGELES | STATE: CA | POSTAL CODE: 90017 | | COUNTRY: USA |

4. COLLATERAL: This financing statement covers the following collateral:
Please see Exhibit "A" and "B" attached hereto and incorporated herein by this reference.

Property Address: 244-248 S. Orange Grove Blvd, Pasadena, CA 91105

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
59344667 LA 301026

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME
Cantor Group LLC

OR 9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR 10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

| OR 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

13. ☒ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT: ☐ covers timber to be cut ☐ covers as-extracted collateral ☒ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

Exhibit "B"

17. MISCELLANEOUS: 50344867-CA-37 15728 - PREFERRED BANK PREFERRED BANK File with: Los Angeles, CA LA 301026



Prepared by Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

**EXHIBIT "A"**
**COLLATERAL DESCRIPTION**

DEBTOR: CANTOR GROUP LLC

SECURED PARTY: PREFERRED BANK

COLLATERAL:

All right, title and interest which Debtor now has or may later acquire in the real property described in Exhibit "B" attached hereto and made a part hereof by this reference and all appurtenances, easements, covenants, rights of way, tenements, hereditaments and appurtenances thereunto belonging or in any way appertaining thereto now or hereafter, and all of the estate, right, title, interest, claim, demand, reversion or remainder whatsoever of Debtor therein or thereto, at law or in equity, now or hereafter in possession or expectancy, including, without limitation, all mineral, oil, and gas rights and royalties and profits therefrom, all water and water rights and shares of stock pertaining to water and water rights, and all sewers, pipes, conduits, wires and other facilities furnishing utility or services to the real property (collectively, the "Land");

All right, title and interest which Debtor now has or may later acquire in and to all buildings, structures and improvements now or hereafter erected on the Land, including, without limitation, all plant equipment, apparatus, machinery and fixtures of every kind and nature whatsoever now or hereafter located on or forming part of said buildings, structures and improvements (collectively, the "Improvements"; the Land and Improvements being hereinafter sometimes collectively referred to as the "Premises");

All right, title and interest which Debtor now has or may later acquire in and to the land lying in the bed of any street, road, highway or avenue now or hereafter in front of or adjoining the Premises;

All right, title and interest which Debtor now has or may later acquire in any and all awards heretofore or hereafter made by any governmental authorities (federal, state, local or otherwise) to Debtor and all subsequent owners of the Premises which may be made with respect to the Premises as a result of the exercise of the right of eminent domain, the alteration of the grade of any street or any other injury to or decrease of value of the Premises, which said award or awards have been assigned to Secured Party;

All right, title and interest which Debtor now has or may later acquire in any and all unearned premiums accrued, accruing or to accrue, and the proceeds of insurance now or hereafter in effect with respect to all or any portion of the Premises;

All right, title and interest which Debtor now has or may later acquire in any and all claims or demands which Debtor now has or may hereafter acquire against anyone with respect to any damage to all or any portion of the Premises;

All right, title and interest which Debtor now has or may later acquire in any and all claims under and proceeds of any insurance policies by reason of or related to a loss of any kind sustained to

the Premises, now or hereafter, whether or not such policies name Secured Party as an insured and whether or not such policies are required by Secured Party, and whether or not such claims thereunder are characterized as personal claims;

All right, title and interest which Debtor now has or may later acquire in all goods, equipment, machinery, furniture, furnishings, trade fixtures, appliances, inventory, building materials, apparatus, utensils, vehicles, wiring, pipes, conduits, elevators, escalators, heating and air conditioning equipment, chattels and articles of personal property, including, without limitation, any interest therein now or at any time hereafter affixed to, attached to or used in any way in connection with or to be incorporated at any time into the Premises or placed on any part thereof wheresoever located, whether or not attached to or incorporated in the Premises, together with any and all accessions, accessories, attachments, and replacements thereof, appertaining and adapted to the complete and compatible use, enjoyment, occupancy, operation or improvement of the Premises;

All right, title and interest which Debtor now has or may later acquire in all instruments, investment property, deposit accounts, accounts, contract rights, general intangibles, and other intangible property and rights now or hereafter relating to the foregoing property, or the operation thereof or used in connection therewith, including, without limitation, all options, letters of intent, and rights of first refusal of any nature whatsoever, covering all or any portion of such property, together with any modifications thereof, and deposits or other payments made in connection therewith, existing and future development rights, permits and approvals, air rights, density bonus rights, and transferable development rights; all of Debtor's right, title, and interest in and to any awards, remunerations, settlements, or compensation heretofore made or hereafter made by any and all courts, boards, agencies, commissions, offices, or authorities, of any nature whatsoever for any governmental unit (federal, state, local or otherwise) to the present or any subsequent owner of the foregoing property, including those for any vacation of, or change of grade in, any streets affecting the foregoing property and any and all licenses and privileges obtained by Debtor from non-governmental sources;

All right, title and interest which Debtor now has or may later acquire in all leases of the Premises, Personalty, Fixtures, or any part thereof, now or hereafter entered into and all right, title and interest of Debtor thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the lessees of their obligations thereunder (whether such cash or securities are to be held until the expiration of the terms of such leases or applied to one or more of the installments of rent coming due immediately prior to the expiration of such terms); all other rights and easements of Debtor now or hereafter existing pertaining to the use and enjoyment of the Premises; and all right, title and interest of Debtor in and to all declarations of covenants, conditions and restrictions as may affect or otherwise relate to the Premises;

All right, title and interest which Debtor now has or may later acquire in all permits, plans, licenses, specifications, subdivision rights, security interests, contracts, contract rights, public utility deposits, prepaid sewer and water hook-up charges, or other rights as may affect or otherwise relate to the Property (as hereinafter defined); and

All right, title and interest which Debtor now has or may later acquire in all rents, income, issues and profits, including, without limitation, the accounts, revenues, and proceeds of any business

operation conducted by or on behalf of Debtor on or through the use of the Premises, prepaid municipal and utility fees, bonds, revenues, income, and other benefits to which Debtor may now or hereafter be entitled to, or which are derived from, the Property or any portion thereof or interest therein.

The foregoing listing is intended only to be descriptive of the property encumbered by the Deed of Trust (as hereinafter defined), and not exclusive or all inclusive. It is the intent of Debtor to encumber by the Deed of Trust all property located or to be located upon the above-described real property. Said real property (or the leasehold estate if the Deed of Trust encumbers a leasehold estate), buildings, improvements, appurtenances, Fixtures, Personalty, additions, accretions, and other property are herein referred to as the "Property." As used herein, the term "Fixtures" shall include all articles of personal property hereinabove described, now or hereafter attached to, placed upon for a definite term, or otherwise used in connection with the Property, and shall include trade fixtures and goods which are or are to become fixtures. As used herein, the term "Personalty" shall include all furniture, furnishings, equipment, machinery, goods, contract rights, general intangibles, money, deposit accounts, instruments, accounts, leases, chattel paper and other personal property described in this Exhibit "A" (other than Fixtures) of any kind or character now existing or hereafter arising or acquired, now or hereafter located upon, within or about the Property, or which otherwise pertains to the use, ownership, management, operation, construction, leasing and sale of the Property, and all products and proceeds thereof, and all of Debtor's right, title, and interest in and to all such property.

Nothing herein contained shall be construed as creating a mortgage of real property, it being understood and agreed that only that portion of the foregoing description of collateral which constitutes personal property is intended to be included herein and that Secured Party has taken a separate deed of trust encumbering all of Debtor's interest in real property to which the foregoing description refers.

Capitalized terms used above without definition have the meanings given them in the Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (the "Deed of Trust"), dated as of June 8, 2017, by Debtor, as trustor, for the benefit of Secured Party, as beneficiary, encumbering certain property as therein described.

**EXHIBIT "B"**
**LEGAL DESCRIPTION**

The land situated in the City of Pasadena, County of Los Angeles, State of California, and described as follows:

PARCEL 1:

LOT 12 OF TRACT NO. 63103, IN THE CITY OF PASADENA, AS PER MAP RECORDED IN BOOK 1369 PAGES 35 THROUGH 52 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AMENDED PURSUANT TO THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED DECEMBER 3, 2013 AS INSTRUMENT NO. 20131708591 OF OFFICIAL RECORDS.

PARCEL 2:

A RECIPROCAL ACCESS EASEMENT OVER THOSE AREAS SET OUT ON THE MAP SHOWN ABOVE.

PARCEL 3:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN CONSOLIDATED AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (SOUTH ORANGE GROVE PARCELS) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716500 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 4:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (DEL MAR PARCEL) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716499 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 5:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN ROSE PARADE GRANDSTAND EASEMENT AGREEMENT (ORANGE GROVE AVENUE) RECORDED JULY 21, 2005 AS INSTRUMENT NOS. 05-1721787 AND 05-1721788 BOTH OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 6:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING GARAGE EASEMENT AGREEMENT RECORDED JULY 2, 2007 AS INSTRUMENT NO. 20071579026 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 7:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING EASEMENT AGREEMENT RECORDED DECEMBER 28, 2011 AS INSTRUMENT NO. 20111763712 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

APN: 5713-027-065

3

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Phone: (800) 331-3282 Fax: (818) 662-4141

B. E-MAIL CONTACT AT FILER (optional)
CLS-CTLS_Glendale_Customer_Service@wolterskluwer.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address) 15728 - PREFERRED

CT Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

59344667

CALI FIXTURE

File with: Los Angeles, CA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

1a. ORGANIZATION'S NAME: Cantor Group LLC

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 216 The Promenade North, Suite 200 | Long Beach | CA | 90802 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

2a. ORGANIZATION'S NAME:

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

3a. ORGANIZATION'S NAME: PREFERRED BANK

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 601 S FIGUEROA STREET, 20TH FLOOR | LOS ANGELES | CA | 90017 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
Please see Exhibit "A" and "B" attached hereto and incorporated herein by this reference.

Property Address: 244-248 S. Orange Grove Blvd, Pasadena, CA 91105

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
59344667 LA 301026



Prepared by Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

**This page is part of your document - DO NOT DISCARD**

# 20170712457

Pages: 0009

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

06/27/17 AT 02:25PM

| | |
|---|---|
| FEES: | 25.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 25.00 |

LEADSHEET

201706272860032

00013873076

008406848

SEQ:
09

DAR - Courier (Hard Copy)

**THIS FORM IS NOT TO BE DUPLICATED**

2

06/27/2017

*20170712457*

Record and Return To:

CT Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071
Order# 59344667

UCC-1 Original Financing Statement

4

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME
Cantor Group LLC

OR 9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR 10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

OR 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

13. ☒ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut ☐ covers as-extracted collateral ☒ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

Exhibit "B"

17. MISCELLANEOUS: 58344667-CA-37 15726 - PREFERRED BANK PREFERRED BANK File with: Los Angeles, CA LA 301026



Prepared by Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

5

**EXHIBIT "A"**
**COLLATERAL DESCRIPTION**

DEBTOR: CANTOR GROUP LLC

SECURED PARTY: PREFERRED BANK

COLLATERAL:

All right, title and interest which Debtor now has or may later acquire in the real property described in Exhibit "B" attached hereto and made a part hereof by this reference and all appurtenances, easements, covenants, rights of way, tenements, hereditaments and appurtenances thereunto belonging or in any way appertaining thereto now or hereafter, and all of the estate, right, title, interest, claim, demand, reversion or remainder whatsoever of Debtor therein or thereto, at law or in equity, now or hereafter in possession or expectancy, including, without limitation, all mineral, oil, and gas rights and royalties and profits therefrom, all water and water rights and shares of stock pertaining to water and water rights, and all sewers, pipes, conduits, wires and other facilities furnishing utility or services to the real property (collectively, the "Land");

All right, title and interest which Debtor now has or may later acquire in and to all buildings, structures and improvements now or hereafter erected on the Land, including, without limitation, all plant equipment, apparatus, machinery and fixtures of every kind and nature whatsoever now or hereafter located on or forming part of said buildings, structures and improvements (collectively, the "Improvements"; the Land and Improvements being hereinafter sometimes collectively referred to as the "Premises");

All right, title and interest which Debtor now has or may later acquire in and to the land lying in the bed of any street, road, highway or avenue now or hereafter in front of or adjoining the Premises;

All right, title and interest which Debtor now has or may later acquire in any and all awards heretofore or hereafter made by any governmental authorities (federal, state, local or otherwise) to Debtor and all subsequent owners of the Premises which may be made with respect to the Premises as a result of the exercise of the right of eminent domain, the alteration of the grade of any street or any other injury to or decrease of value of the Premises, which said award or awards have been assigned to Secured Party;

All right, title and interest which Debtor now has or may later acquire in any and all unearned premiums accrued, accruing or to accrue, and the proceeds of insurance now or hereafter in effect with respect to all or any portion of the Premises;

All right, title and interest which Debtor now has or may later acquire in any and all claims or demands which Debtor now has or may hereafter acquire against anyone with respect to any damage to all or any portion of the Premises;

All right, title and interest which Debtor now has or may later acquire in any and all claims under and proceeds of any insurance policies by reason of or related to a loss of any kind sustained to

the Premises, now or hereafter, whether or not such policies name Secured Party as an insured and whether or not such policies are required by Secured Party, and whether or not such claims thereunder are characterized as personal claims;

All right, title and interest which Debtor now has or may later acquire in all goods, equipment, machinery, furniture, furnishings, trade fixtures, appliances, inventory, building materials, apparatus, utensils, vehicles, wiring, pipes, conduits, elevators, escalators, heating and air conditioning equipment, chattels and articles of personal property, including, without limitation, any interest therein now or at any time hereafter affixed to, attached to or used in any way in connection with or to be incorporated at any time into the Premises or placed on any part thereof wheresoever located, whether or not attached to or incorporated in the Premises, together with any and all accessions, accessories, attachments, and replacements thereof, appertaining and adapted to the complete and compatible use, enjoyment, occupancy, operation or improvement of the Premises;

All right, title and interest which Debtor now has or may later acquire in all instruments, investment property, deposit accounts, accounts, contract rights, general intangibles, and other intangible property and rights now or hereafter relating to the foregoing property, or the operation thereof or used in connection therewith, including, without limitation, all options, letters of intent, and rights of first refusal of any nature whatsoever, covering all or any portion of such property, together with any modifications thereof, and deposits or other payments made in connection therewith, existing and future development rights, permits and approvals, air rights, density bonus rights, and transferable development rights; all of Debtor's right, title, and interest in and to any awards, remunerations, settlements, or compensation heretofore made or hereafter made by any and all courts, boards, agencies, commissions, offices, or authorities, of any nature whatsoever for any governmental unit (federal, state, local or otherwise) to the present or any subsequent owner of the foregoing property, including those for any vacation of, or change of grade in, any streets affecting the foregoing property and any and all licenses and privileges obtained by Debtor from non-governmental sources;

All right, title and interest which Debtor now has or may later acquire in all leases of the Premises, Personalty, Fixtures, or any part thereof, now or hereafter entered into and all right, title and interest of Debtor thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the lessees of their obligations thereunder (whether such cash or securities are to be held until the expiration of the terms of such leases or applied to one or more of the installments of rent coming due immediately prior to the expiration of such terms); all other rights and easements of Debtor now or hereafter existing pertaining to the use and enjoyment of the Premises; and all right, title and interest of Debtor in and to all declarations of covenants, conditions and restrictions as may affect or otherwise relate to the Premises;

All right, title and interest which Debtor now has or may later acquire in all permits, plans, licenses, specifications, subdivision rights, security interests, contracts, contract rights, public utility deposits, prepaid sewer and water hook-up charges, or other rights as may affect or otherwise relate to the Property (as hereinafter defined); and

All right, title and interest which Debtor now has or may later acquire in all rents, income, issues and profits, including, without limitation, the accounts, revenues, and proceeds of any business

7

operation conducted by or on behalf of Debtor on or through the use of the Premises, prepaid municipal and utility fees, bonds, revenues, income, and other benefits to which Debtor may now or hereafter be entitled to, or which are derived from, the Property or any portion thereof or interest therein.

The foregoing listing is intended only to be descriptive of the property encumbered by the Deed of Trust (as hereinafter defined), and not exclusive or all inclusive. It is the intent of Debtor to encumber by the Deed of Trust all property located or to be located upon the above-described real property. *Said real property (or the leasehold estate if the Deed of Trust encumbers a* leasehold estate), buildings, improvements, appurtenances, Fixtures, Personalty, additions, accretions, and other property are herein referred to as the "Property." As used herein, the term "Fixtures" shall include all articles of personal property hereinabove described, now or hereafter attached to, placed upon for a definite term, or otherwise used in connection with the Property, and shall include trade fixtures and goods which are or are to become fixtures. As used herein, the term "Personalty" shall include all furniture, furnishings, equipment, machinery, goods, contract rights, general intangibles, money, deposit accounts, instruments, accounts, leases, chattel paper and other personal property described in this Exhibit "A" (other than Fixtures) of any kind or character now existing or hereafter arising or acquired, now or hereafter located upon, within or about the Property, or which otherwise pertains to the use, ownership, management, operation, construction, leasing and sale of the Property, and all products and proceeds thereof, and all of Debtor's right, title, and interest in and to all such property.

Nothing herein contained shall be construed as creating a mortgage of real property, it being understood and agreed that only that portion of the foregoing description of collateral which constitutes personal property is intended to be included herein and that Secured Party has taken a separate deed of trust encumbering all of Debtor's interest in real property to which the foregoing description refers.

Capitalized terms used above without definition have the meanings given them in the Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (the "Deed of Trust"), dated as of June 8, 2017, by Debtor, as trustor, for the benefit of Secured Party, as beneficiary, encumbering certain property as therein described.

8

**EXHIBIT "B"**
**LEGAL DESCRIPTION**

The land situated in the City of Pasadena, County of Los Angeles, State of California, and described as follows:

PARCEL 1:

LOT 12 OF TRACT NO. 63103, IN THE CITY OF PASADENA, AS PER MAP RECORDED IN BOOK 1369 PAGES 35 THROUGH 52 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AMENDED PURSUANT TO THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED DECEMBER 3, 2013 AS INSTRUMENT NO. 20131708591 OF OFFICIAL RECORDS.

PARCEL 2:

A RECIPROCAL ACCESS EASEMENT OVER THOSE AREAS SET OUT ON THE MAP SHOWN ABOVE.

PARCEL 3:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN CONSOLIDATED AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (SOUTH ORANGE GROVE PARCELS) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716500 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 4:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (DEL MAR PARCEL) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716499 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 5:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN ROSE PARADE GRANDSTAND EASEMENT AGREEMENT (ORANGE GROVE AVENUE) RECORDED JULY 21, 2005 AS INSTRUMENT NOS. 05-1721787 AND 05-1721788 BOTH OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 6:

9

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING GARAGE EASEMENT AGREEMENT RECORDED JULY 2, 2007 AS INSTRUMENT NO. 20071579026 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 7:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING EASEMENT AGREEMENT RECORDED DECEMBER 28, 2011 AS INSTRUMENT NO. 20111763712 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

APN: 5713-027-065

# Exhibit I

# ASSUMPTION AGREEMENT

This Assumption Agreement ("Agreement"), effective as of June 16, 2017, by and among the following: PREFERRED BANK, a California banking corporation ("Lender"), CANTOR GROUP LLC, a California limited liability company ("Existing Borrower"), ANDREW STUPIN, an individual ("Guarantor"), and SDRES PARTNERS LLC, a California limited liability company ("New Borrower"), with reference to the following facts:

## RECITALS

A. Existing Borrower and Lender have heretofore entered into a Loan Agreement dated June 8, 2017 (together with any and all amendments thereto or modifications thereof, the "Loan Agreement"), pursuant to which Lender made a loan ("Loan") to Existing Borrower for the purpose of financing, in part, Borrower's acquisition of the Property (as hereinafter defined).

B. In connection with the Loan Agreement, Existing Borrower executed and delivered to Lender that certain Promissory Note dated June 8, 2017 , in the original principal amount of Eight Million Four Hundred Thousand and No/100 Dollars ($8,400,000.00), executed by Existing Borrower in favor of Lender (together with any and all amendments thereto or modifications thereof, the "Note").

C. As security for, among other things, the indebtedness and obligations under the Note and Loan Agreement, Existing Borrower executed and delivered to and in favor of Lender, without limitation, (i) that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated June 8, 2017 (together with any and all amendments thereto or modifications thereof, the "210 Orange Grove Deed of Trust"), executed by Existing Borrower, as trustor, in favor of Lender, as beneficiary, and recorded in the Official Records of Los Angeles County, California and encumbering, without limitation, certain real property located in Los Angeles County, California and described in Exhibit "A-1" attached hereto (the "210 Orange Grove Property"), and (ii) that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated June 8, 2017 (together with any and all amendments thereto or modifications thereof, the "244 Orange Grove Deed of Trust", and together with the 210 Orange Grove Property, collectively, the "Deed of Trust"), executed by Existing Borrower, as trustor, in favor of Lender, as beneficiary, and recorded in the Official Records of Los Angeles County, California and encumbering, without limitation, certain real property located in Los Angeles County, California and described in Exhibit "A-2" attached hereto (the "244 Orange Grove Property", and together with the 210 Orange Grove Property, collectively, the "Property").

D. As further consideration for the Loan, Existing Borrower, among others, also executed, without limitation, the documents listed on Schedule 1, attached hereto and incorporated herein by this reference.

E. In order to induce Lender to make the Loan, Guarantor executed and delivered to and in favor of Lender a Continuing Guaranty dated as of June 8, 2017 (together with any and all amendments thereto or modifications thereof, the "Guaranty").

F. The Loan Agreement, the Note, the Deed of Trust, the Guaranty, the documents described in Schedule 1, and the other documents executed in connection with any of the foregoing, together with any extensions, modifications or amendments thereto or restatements thereof, will at times hereinafter be referred to collectively as the "Loan Documents."

G. The Property and any and all other real or personal property in which Lender holds a security interest or other interest pursuant to any of the Loan Documents will sometimes be referred to collectively as the "Collateral".

H. Existing Borrower, Guarantor and New Borrower have each requested that pursuant to Section 3.11 of the Loan Agreement, (i) Lender consent to a transfer ("Property Transfer") of all of Existing Borrower's right, title and interest in and to the Property to New Borrower, and (ii) Lender permit New Borrower to assume all the indebtedness and obligations of Existing Borrower under and in connection with the Loan and the Loan Documents.

I. Lender is willing to consent to the Property Transfer and to allow New Borrower to assume the Loan and all the indebtedness and obligations under the Loan Documents executed by Existing Borrower, subject to the terms and conditions set forth in this Agreement including, without limitation, certain modifications to the Loan.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

## AGREEMENT

1. Recitals and Definitions.

The Recitals are incorporated herein by this reference, and the parties agree that the facts recited above are true and correct. All capitalized terms not specifically defined herein shall have the meaning ascribed to them in the Loan Agreement. Except as provided herein, all of the terms, conditions, and provisions of the Loan Documents shall remain in full force. In the event of any conflict or inconsistency between the terms, conditions, and provisions of this Agreement and the Loan Documents, the terms, conditions, and provisions of this Agreement shall prevail.

2. Existing Borrower, New Borrower and Guarantor Acknowledgment as to Obligations.

a. Existing Borrower, New Borrower and Guarantor, and each of them, acknowledge and confirm that as of June __, 2017, (i) the total principal amount owing to Lender under the Loan is $8,400,000.00, plus accrued and unpaid interest thereon, and (ii) the total amount of undisbursed Loan proceeds available for disbursement is $0.

b. Existing Borrower, New Borrower and Guarantor, and each of them, specifically acknowledge and confirm that they do not have any valid offset or defense to the obligations, indebtedness and liability under the Loan Documents.

3. Assumption of Liability under the Loan Documents.

a. New Borrower hereby assumes and agrees to pay the indebtedness and obligations represented by the Loan Documents including, but not limited to, the principal sum of the full amount of the Loan, and agrees, for the benefit of Lender and its successors and assigns, to be bound by, observe and perform, all past, present and future liabilities, indebtedness, terms, provisions, covenants and obligations of Existing Borrower under the Loan Documents, and all indemnities and guaranties, and New Borrower agrees that it will be bound by all of such terms and provisions, promptly pay all such liabilities and indebtedness and promptly observe and perform all such covenants and obligations, with the same force and effect as if New Borrower had originally executed and delivered the Loan Documents (collectively, the "Assumed Obligations").

b. New Borrower acknowledges that the Property and any and all other Collateral for the Loan are and shall remain subject to the security interests and/or other interests created by the Loan Documents; and acknowledges and agrees to be bound by all of the conditions and covenants contained in the Loan Documents. New Borrower also agrees that the security interests and other interests created by the Loan Documents shall secure payment and performance of the Assumed Obligations in accordance with the terms of the Loan Documents (except for any obligations or indebtedness owing to Lender under that certain Hazardous Substances Indemnity Agreement dated June 8, 2017, executed by Existing Borrower and Guarantor in favor of Lender). New Borrower also agrees that any rights, title and interest in any Collateral that are absolutely assigned to Lender pursuant to any of the Loan Documents shall remain absolutely assigned to Lender.

c. Subject to the terms and conditions set forth in this Agreement, including, without limitation, the conditions precedent set forth in Section 7 below, and except as expressly provided herein, Lender hereby consents to the Property Transfer; provided, however, that this consent shall not be deemed a waiver of any right to require consent to any other or future transactions.

4. Release of Existing Borrower; Continuing Liability of Guarantor.

a. Upon satisfaction by Existing Borrower, Guarantor and New Borrower of the conditions precedent set forth in Section 7 below, Lender hereby releases Existing Borrower from all contractual liability and obligations under the Loan Documents to which Existing Borrower is a party arising from and after the effective date of this Agreement; provided, however, nothing herein shall be construed as releasing Existing Borrower from any liability to Lender as a result of gross negligence, fraud, willful misconduct, or any intentional torts that may have been committed by Existing Borrower. Any and all references to "Borrower" in the Loan Documents shall mean New Borrower, all as of the effective date of this Agreement.

b. Guarantor shall continue to be liable for his obligations under the Loan Documents, and nothing herein shall be construed as a release, discharge or modification of such obligations.

5. Limitation of Consent.

Lender's consent set forth in this Agreement is strictly limited to the Property Transfer from Existing Borrower to New Borrower, and this Agreement shall not constitute a

waiver or modification of any requirement of obtaining Lender's consent to any future transfer of the Property or any portion thereof or interest therein, nor shall it constitute a modification of the terms, provisions, or requirements in the Loan Documents in any respect except as expressly provided herein.

New Borrower, Guarantor and Existing Borrower and each of them, specifically acknowledge that:

a. any transfer of the Property or any portion thereof or interest therein by New Borrower or Existing Borrower without Lender's prior written consent shall entitle Lender to accelerate the Note balance and foreclose the Deed of Trust as provided therein; and

b. Lender's consent to this Agreement shall not be deemed to be consent by Lender to New Borrower or Existing Borrower encumbering the Property with any junior or other financing.

6. No Representations of Lender.

New Borrower recognizes and agrees that Lender has made no representation or warranty, either express or implied, regarding the Property and has no responsibility whatsoever with respect to the Property, the condition of the Property or the use, occupancy, or status of the Property. To the extent New Borrower has any claims which in any manner relate to the Property, the condition of the Property, or the use, occupancy, or status of the Property, the same shall not be asserted against Lender, or its agents, employees, professional consultants, attorneys, accountants, affiliated entities, successors or assigns, or asserted as a defense to any of the Loan Documents.

7. Conditions Precedent.

In addition to all other conditions of the effectiveness of this Agreement, the effectiveness of this Agreement and the obligations of Lender under this Agreement are expressly conditioned upon the following having occurred or Lender having received by no later than June __, 2017, all of the following documents or other instruments in form and content satisfactory to Lender in its sole opinion and judgment and suitable for filing or recording as required:

a. This Agreement fully executed by Existing Borrower, Guarantor, New Borrower and Lender;

b. Execution by Existing Borrower, Guarantor and New Borrower of two (2) separate Memorandum of Assumption Agreement (individually and collectively, "Memorandum"), and recordation of the Memorandum in the Official Records of the County where each Property is located;

c. [Intentionally omitted];

d. Payment to Lender of an amount necessary to pay all accrued and unpaid interest on the current outstanding principal balance of the Loan to the satisfaction of Lender;

e. Payment in full of all title insurance premiums and recording charges, and all fees and costs incurred by Lender in connection with the negotiation and preparation of this Agreement and all other documents and instruments related thereto, including, but not limited to, attorneys' fees;

f. Evidence satisfactory to Lender in its sole opinion and judgment that New Borrower is qualified to do business in the State of California;

g. All delinquent property taxes on the Property, if any, shall have been paid in full;

h. Such resolutions and/or related documents from New Borrower and those holding an interest in New Borrower as Lender may request;

i. One or more UCC-1 Financing Statements, UCC-2 Amendments to Financing Statements or related documents by New Borrower;

j. True and correct copies of the duly filed, certified and/or executed documents or instruments evidencing or confirming the lawful formation and existence of New Borrower, and all written consents and certifications required by Lender from persons and/or entities having management and/or ownership interests in New Borrower. All of such documents and instruments must first be reviewed and approved by Lender, its counsel, or both;

k. No suit, action, or other proceeding shall be pending or threatened which seeks to restrain or prohibit the consummation of the transactions contemplated by this Agreement, or to obtain damages or other relief in connection therewith;

l. Lender's liens, security interests and other interests in the Property and all other Collateral shall have been perfected by such means as are required or permitted under applicable laws, and shall be and remain a first priority perfected lien and security interest in and to the Property and all such other Collateral;

m. No breach of any warranty or representation by Existing Borrower or Guarantor to Lender shall have occurred;

n. No event or circumstance shall have occurred and be continuing which constitutes, or would upon the giving of notice or passage of time, constitute an Event of Default, default, breach of covenant or agreement or failure of any condition of this Agreement or any of the Loan Documents;

o. Lender shall have received such endorsements as Lender shall request to Lender's policy of title insurance insuring Lender's interest in the Property (the "Title Policy"), including, without limitation, an endorsement which shall insure that fee title to the Property is vested in New Borrower, that the lien and priority of the Deed of Trust is not impaired by the Property Transfer and/or the transactions contemplated hereby, and that the lien of the Deed of Trust is not subject to any lien, encumbrance or other matter other than those set forth in the Title Policy on the date originally issued and nondelinquent real property taxes for the current tax year;

p. New Borrower shall have delivered to Lender insurance policies and certifications satisfying such insurance coverages as Lender shall require, in its sole opinion and judgment, naming Lender as the additional insured, containing a standard mortgagee clause, and showing evidence of payment of the annual premium therefor; and

q. Such additional assignments, agreements, certificates, reports, approvals, instruments, documents, financing statements, consents, and opinions as Lender may request.

8. Representations and Warranties of Existing Borrower and Guarantor.

Existing Borrower and Guarantor, and each of them, represent and warrant to Lender, and Lender is relying thereon, as follows:

a. Lender has a duly perfected first-priority lien on the Property and other Collateral for the Loan, subject only to the exceptions set forth in the Title Policy on the date originally issued and nondelinquent real property taxes for the current tax year, and there will be no other liens, encumbrances, or charges on the Property or other such Collateral except to or by Lender.

b. All present and future leases of the Property, and all present and future rents, revenues, income, issues, royalties and profits of the Property, have been absolutely assigned to Lender and Lender holds and owns all right, title and interest therein.

c. This Agreement and the documents and instruments executed in connection herewith constitute legal, valid, and binding obligations of Existing Borrower and Guarantor, as applicable, to Lender.

d. There are no actions, suits, or proceedings pending or, to the knowledge of Existing Borrower or Guarantor, threatened against or affecting Existing Borrower or Guarantor in relation to their obligations to Lender, or involving the validity or enforceability of this Agreement, the Loan Documents, or any other documents executed in connection herewith or therewith.

e. No event or circumstance has occurred which constitutes, or would, upon the giving of notice or passage of time, constitute an Event of Default, default, breach of covenant or agreement or failure of any condition of this Agreement or any of the Loan Documents.

f. The execution and delivery of this Agreement by Existing Borrower and Guarantor, and each of them, and the performance by Existing Borrower and Guarantor, and each of them, of all their obligations hereunder do not and will not result in a breach of or constitute a default under, or cause or permit the acceleration of any obligation owed or required under, any other agreement, lease, or instrument to which Existing Borrower or Guarantor is a party or by which Existing Borrower or Guarantor or their properties are bound or affected.

g. Neither Existing Borrower nor Guarantor is in default under, or in violation of any law, order, writ, judgment, injunction, decree, determination, or award, or under any obligation, agreement, instrument, loan, or indenture, whether to Lender or otherwise, or any

lease, that would affect the ability of Existing Borrower or Guarantor to perform their obligations hereunder.

h. Except as expressly provided herein, all security interests and other interests given by Existing Borrower remain in full force and effect, and Existing Borrower and Guarantor consents to each and every transaction, condition, term, and provision contained in this Agreement.

i. Existing Borrower is a limited liability company validly existing and in good standing under the laws of the State of California.

j. The security interests and other interests of Lender in the Property and the other Collateral are valid, binding, and enforceable, in accordance with the terms of this Agreement and the Loan Documents.

k. In addition to all other covenants given by Existing Borrower and Guarantor in this Agreement, in the documents and instruments executed in connection herewith, and in the Loan Documents, Existing Borrower and Guarantor, and each of them, will, so long as any obligations to Lender remain outstanding:

(1) Execute any and all documents as Lender may reasonably request in connection with this Agreement; and

(2) Cooperate fully with Lender during the term of this Agreement with respect to this Agreement, the Loan Documents, and the documents executed in connection with this Agreement.

10. Representations and Warranties of New Borrower.

New Borrower represents and warrants to Lender, and Lender is relying thereon, as follows:

a. Lender has a duly perfected first-priority lien on the Property and other Collateral for the Loan, subject only to the exceptions set forth in the Title Policy on the date originally issued and nondelinquent real property taxes for the current tax year, and there will be no other liens, encumbrances, or charges on the Property or other such Collateral except to or by Lender.

b. All present and future leases of the Property, and all present and future rents, revenues, income, issues, royalties and profits of the Property, have been absolutely assigned to Lender and Lender holds and owns all right, title and interest therein.

c. This Agreement and the documents and instruments executed in connection herewith constitute legal, valid, and binding obligations of New Borrower to Lender.

d. There are no actions, suits, or proceedings pending or, to the knowledge of New Borrower, threatened against or affecting New Borrower in relation to their obligations to

Lender, or involving the validity or enforceability of this Agreement, the Loan Documents, or any other documents executed in connection herewith or therewith.

e. No event or circumstance has occurred which constitutes, or would upon the giving of notice or passage of time, constitute an Event of Default, default, breach of covenant or agreement or failure of any condition of this Agreement or any of the Loan Documents.

f. The execution and delivery of this Agreement by New Borrower and the performance by New Borrower of all its obligations hereunder do not and will not result in a breach of or constitute a default under, or cause or permit the acceleration of any obligation owed or required under, any other agreement, lease, or instrument to which New Borrower is a party or by which New Borrower or its properties are bound or affected.

g. New Borrower is not in default under, or in violation of any law, order, writ, judgment, injunction, decree, determination, or award, or under any obligation, agreement, instrument, loan, or indenture, whether to Lender or otherwise, or any lease, that would affect the ability of New Borrower to perform its obligations hereunder, including, but not limited to, the ability of New Borrower to repay the outstanding indebtedness under this Agreement and/or under the Loan Documents.

h. Except as expressly provided herein, all security interests and other interests given by Existing Borrower remain in full force and effect.

i. New Borrower is a limited liability company validly created and existing and in good standing under the laws of the State of California.

j. The security interests and other interests of Lender in the Property and the other Collateral are valid, binding, and enforceable, in accordance with the terms of this Agreement and the Loan Documents.

k. In addition to all other covenants given by New Borrower in this Agreement, in the documents and instruments executed in connection herewith, and in the Loan Documents, New Borrower will, so long as any obligations to Lender remain outstanding:

(1) Execute any and all documents as Lender may reasonably request in connection with this Agreement;

(2) Cooperate fully with Lender during the term of this Agreement with respect to this Agreement, the Loan Documents, and the documents executed in connection with this Agreement; or

(3) At its own cost and defense, appear and defend any action or proceeding that may affect Lender's security interests or other interests in the Property and/or the other Collateral for any of the obligations referred to in this Agreement and the Loan Documents; provided, however, that Lender shall not be restricted from also appearing and defending any action or proceeding that may affect Lender's security interests or other interests in the Property and/or the other Collateral.

10. Modification of Loan Documents.

This Agreement and any other documents and instruments executed in connection herewith shall each constitute "Loan Documents". In addition to any other modifications of any Loan Documents provided under this Agreement, all references in the Loan Agreement, the Note, the Deed of Trust and each of the other Loan Documents are hereby modified so that all references to Existing Borrower therein shall be construed to mean New Borrower.

11. No Joint Venture, Management, and Control.

Notwithstanding any provision of this Agreement among the parties hereto:

a. Lender is not and shall not be construed to be a partner, joint venturer, alter ego, manager, controlling person, or other business associate or participant of any kind of Existing Borrower, Guarantor, New Borrower or any other person or entity;

b. Lender shall not be deemed responsible to perform or participate in any acts, omissions, or decisions of Existing Borrower, Guarantor and New Borrower, or any of them; and

c. Existing Borrower, Guarantor and New Borrower, and each of them, do not have any claims, causes of action, or defenses to their obligations to Lender based on any allegations of management or control exercised by Lender. Existing Borrower, Guarantor and New Borrower, and each of them, acknowledge and agree that Lender does not manage or control them in any way.

12. Waiver and Release.

Existing Borrower, Guarantor and New Borrower, and each of them, hereby unconditionally waive and release any and all claims, damages costs, liabilities, actions or suits they have or may have, whether known or unknown, against Lender, their officers, agents, directors, employees, shareholders, successors or assigns, arising out of or in connection with the Loan Documents, the debt evidenced thereby or the handling, course of conduct, closing or servicing thereof.

a. Voluntary Release. Existing Borrower, Guarantor and New Borrower, and each of them, acknowledge that this waiver and release is voluntary and without any duress or undue influence, and is given as part of the consideration for Lender's accommodation of Existing Borrower's, Guarantor's and New Borrower's request for Lender's consent to the Property Transfer and New Borrower's assumption of the Loan.

b. Civil Code Section 1542. Existing Borrower, Guarantor and New Borrower, and each of them, waive all rights under Section 1542 of the Civil Code of the State of California, which it understands provides as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her

favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

c. Subsequently Discovered Claims. Existing Borrower, Guarantor and New Borrower, and each of them, expressly acknowledge that they may hereafter discover facts different from, or in addition to, those which it now believes to be true with respect to the release of claims. Existing Borrower, Guarantor and New Borrower, and each of them, agree that the foregoing release shall be and remain effective in all respects notwithstanding such different or additional facts.

13. Miscellaneous.

a. Not a Novation. This Agreement is not a novation, nor is it to be construed as a release or modification of any of the terms, conditions, warranties, waivers, or rights set forth in the Loan Documents, except as set forth herein.

b. Acknowledgment of Waiver.

(1) Existing Borrower, Guarantor and New Borrower, and each of them, represent and warrant that all of the waivers, warranties, and promises set forth in this Agreement are made after consultation with legal counsel of their choosing and with an understanding of their significance and consequence and that they are reasonable.

(2) Existing Borrower, Guarantor and New Borrower, and each of them, further represent and warrant as follows:

(a) They have received, or have had the opportunity to receive, independent legal advice from attorneys of their choice with respect to the advisability of executing this Agreement, and prior to the execution of this Agreement, their attorneys reviewed this Agreement and discussed the Agreement with them and they have made all desired changes;

(b) Except as expressly stated in this Agreement, neither Lender nor any other Person has made any statement or representation to Existing Borrower, Guarantor and New Borrower, or any of them, regarding any facts relied upon by them;

(c) Existing Borrower, Guarantor and New Borrower, and each of them, do not rely upon any statement, representation, or promise of Lender or any other person or entity in executing this Agreement except as expressly stated in this Agreement; and

(d) The terms of this Agreement are contractual and not a mere recital.

c. Survival of Warranties. All agreements, representations, and warranties made herein shall survive the execution and delivery of this Agreement.

d. Failure of Indulgence Not Waiver. No failure or delay on the part of Lender in the exercise of any right, power, or privilege hereunder or under the documents or

instruments referred to herein shall operate as a waiver thereof, and no single or partial exercise of any such power, right, or privilege shall preclude a further exercise of any right, power, or privilege.

e. Applicable Law. This Agreement and the Loan Documents, and the rights and obligations of the parties hereto and thereto shall be governed by and construed in accordance with the laws of the State of California. Existing Borrower, Guarantor and New Borrower, and each of them, waive any objection to jurisdiction and venue of any action instituted against either of them as provided herein and agree not to assert any defense based on lack of jurisdiction or venue.

f. Assignability. This Agreement shall be binding upon and inure to the benefit of Existing Borrower, Guarantor, and New Borrower, and their respective successors and assigns, except that the respective rights of Existing Borrower, Guarantor and New Borrower, and each of them, hereunder are not assignable without the prior written consent of Lender, which consent Lender may give or withhold in its sole and absolute opinion and judgment.

g. Expenses and Fees.

(1) Existing Borrower, Guarantor and New Borrower, and each of them, shall reimburse Lender for all fees and costs incurred in connection with the negotiation, preparation, execution and effectuation of this Agreement including, but not limited to, attorneys' fees, title insurance premiums, and recording charges.

(2) In the event that Lender employs attorneys to remedy or obtain relief from, or arising out of, a breach or default under this Agreement, the documents and instruments executed in connection herewith, or the Loan Documents, any of the terms, covenants, provisions and all conditions hereof or thereof, or any of the matters referred to herein or therein or in connection with any bankruptcy proceeding, Lender shall be entitled to be reimbursed by Existing Borrower, Guarantor and New Borrower, and each of them, for all of their reasonable attorneys' fees, whether or not suit is filed and including, without limitation, those incurred in each and every action, suit, or proceeding, including any and all appeals and petitions therefrom and all fees and costs incurred by Lender.

h. Modifications and Amendments. This Agreement may be modified or amended only by written agreement duly executed by the party to be charged.

i. Integration. This Agreement, the Loan Documents, and the documents and instruments executed in connection herewith constitute a single, integrated written contract expressing the entire agreement of the parties hereto relative to the subject matter hereof. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any party hereto with respect to the subject matter hereof, except as specifically set forth in this Agreement and the documents and instruments executed in connection with this Agreement.

j. Severability. If any provision of this Agreement is found to be illegal, invalid, or unenforceable under present or future laws effective during the term of this Agreement, such provisions shall be fully severable; this Agreement shall be construed and enforced as if such illegal, invalid, or unenforceable provision never comprised a part of this

Agreement; and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid, or unenforceable provision or by severance from this Agreement.

k. Time of Essence. The parties hereto expressly acknowledge and agree that time is of the essence and that all deadlines and time periods provided for under this Agreement are absolute and final.

l. Notices. All notices, requests, demands, directions and other communications provided for hereunder and under any other Loan Document (a "Notice"), must be in writing and must be mailed, delivered or sent by to the appropriate party at its respective address set forth below or, as to any party, at any other address as may be designated by it in a written notice sent to the other parties in accordance with this Section.

Any notice given by facsimile must be confirmed within forty-eight (48) hours by letter mailed or delivered to the appropriate party at its respective address. If any notice is given by mail, it will be effective three (3) calendar days after being deposited in the mails with first-class or air mail postage prepaid; if given by facsimile or other form of electronic written communication, when sent; or if given by personal delivery, when delivered.

Such notices will be given as follows:

To Lender:

PREFERRED BANK
601 S. Figueroa Street, 29th Floor
Los Angeles, California 90017
Attn: Note Department

To New Borrower:

SDRES PARTNERS, LLC
216 The Promenade North, Suite 200
Long Beach, California 90802
Attn: Deba Shyam

To Existing Borrower:

CANTOR GROUP LLC
216 The Promenade North, Suite 200
Long Beach, California 90802
Attn: Deba Shyam

To Existing Guarantor:

ANDREW STUPIN
216 The Promenade North, Suite 200
Long Beach, California 90802

m. Execution in Counterpart. This Agreement may be executed and delivered in two or more counterparts, each of which, when so executed and delivered, shall be an original, and such counterparts together shall constitute but one and the same instrument and Agreement, and the Agreement shall not be binding on any party until all parties have executed it.

n. Final and Binding Agreement. This Agreement is intended to be final and binding among the parties hereto, and each party expressly relies on the finality of this Agreement as a substantial, material factor inducing that party's execution of this Agreement. Each of the parties hereto has the full right and authority to enter into this Agreement, and the officer, member, manager, partner, agent, or other representative executing this Agreement on behalf of any party has the full right and authority to fully commit and bind it to this Agreement.

o. No Other Parties Intended. Nothing contained in this Agreement is intended, nor shall it be construed or deemed, to confer any rights, powers, or privileges on any person, firm, partnership, corporation, or other entity not an express party hereto, a successor-in-interest, assign, or a party released under this Agreement.

p. Section Headings Not Effective. Section headings used in this Agreement are for convenience only and shall not affect the construction of this Agreement.

q. Neutral Interpretation. This Agreement constitutes the product of the negotiation of the parties hereto and the enforcement hereof shall be interpreted in a neutral manner, and not more strongly for or against any party based upon the source of the draftsmanship hereof.

r. Construction of Agreement. Whenever the context so requires, the masculine gender shall include the feminine or neuter and the singular number shall include the plural, and vice versa. Unless the context of this Agreement clearly requires otherwise, the term "or" includes the inclusive meaning represented by the phrase "and/or."

s. Effectiveness of Agreement. In addition to any other conditions to the effectiveness and enforceability of this Agreement set forth in this Agreement, this Agreement shall not be effective and enforceable unless and until it is executed by Lender.

[Signatures to follow.]

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year set forth above.

**EXISTING BORROWER:**

CANTOR GROUP LLC,
a California limited liability company

By: ______________________
Name: Deba Shyam
Its: General Manager

**EXISTING GUARANTOR:**

______________________
ANDREW STUPIN, an individual

**NEW BORROWER:**

SDRES PARTNERS LLC,
a California limited liability company

By: Cantor Group LLC
a California limited liability company
Its: Managing Member

By: ______________________
Name: Deba Shyam
Its: General Manager

[LENDER'S SIGNATURE TO FOLLOW.]

**LENDER:**

PREFERRED BANK,
a California banking corporation

By: Carol Lee
Name: Carol Lee
Title: FVP

**EXHIBIT "A-1"**
210 ORANGE GROVE PROPERTY
LEGAL DESCRIPTION

The land situated in the City of Pasadena, County of Los Angeles, State of California, and described as follows:

PARCEL 1:

LOT 10 OF TRACT NO. 63103, IN THE CITY OF PASADENA, AS PER MAP RECORDED IN BOOK 1369 PAGES 35 THROUGH 52 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AMENDED PURSUANT TO THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED DECEMBER 3, 2013 AS INSTRUMENT NO. 20131708591 OF OFFICIAL RECORDS.

PARCEL 2:

A RECIPROCAL ACCESS EASEMENT OVER THOSE AREAS SET OUT ON THE MAP SHOWN ABOVE.

PARCEL 3:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN CONSOLIDATED AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (SOUTH ORANGE GROVE PARCELS) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716500 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 4:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN ROSE PARADE GRANDSTAND EASEMENT AGREEMENT (ORANGE GROVE AVENUE) RECORDED JULY 21, 2005 AS INSTRUMENT NOS. 05-1721787 AND 05-1721788 BOTH OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 5:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING GARAGE EASEMENT AGREEMENT RECORDED JULY 2, 2007 AS INSTRUMENT NO. 20071579026 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 6:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING EASEMENT AGREEMENT RECORDED DECEMBER 28, 2011 AS INSTRUMENT NO. 20111763712 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

APN: 5713-013-057

**EXHIBIT "A-2"**
244 ORANGE GROVE PROPERTY
LEGAL DESCRIPTION

The land situated in the City of Pasadena, County of Los Angeles, State of California, and described as follows:

PARCEL 1:

LOT 12 OF TRACT NO. 63103, IN THE CITY OF PASADENA, AS PER MAP RECORDED IN BOOK 1369 PAGES 35 THROUGH 52 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AMENDED PURSUANT TO THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED DECEMBER 3, 2013 AS INSTRUMENT NO. 20131708591 OF OFFICIAL RECORDS.

PARCEL 2:

A RECIPROCAL ACCESS EASEMENT OVER THOSE AREAS SET OUT ON THE MAP SHOWN ABOVE.

PARCEL 3:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN CONSOLIDATED AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (SOUTH ORANGE GROVE PARCELS) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716500 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 4:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (DEL MAR PARCEL) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716499 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 5:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN ROSE PARADE GRANDSTAND EASEMENT AGREEMENT (ORANGE GROVE AVENUE) RECORDED JULY 21, 2005 AS INSTRUMENT NOS. 05-1721787 AND 05-1721788 BOTH OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 6:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING GARAGE EASEMENT AGREEMENT RECORDED JULY 2, 2007 AS INSTRUMENT NO. 20071579026 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 7:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING EASEMENT AGREEMENT RECORDED DECEMBER 28, 2011 AS INSTRUMENT NO. 20111763712 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

APN: 5713-027-065

**SCHEDULE 1**
LIST OF LOAN DOCUMENTS

1. Loan Agreement dated June 8, 2017, between Existing Borrower and Lender.

2. Promissory Note dated June 8, 2017, by Existing Borrower in favor of Lender.

3. Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated June 8, 2017, by Existing Borrower in favor of Lender. [210 S. Orange Grove Blvd.]

4. Absolute Assignment of Leases, Lease Guaranties, Rents, Issues and Profits dated June 8, 2017, by Existing Borrower in favor of Lender. [210 S. Orange Grove Blvd.]

5. Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated June 8, 2017, by Existing Borrower in favor of Lender. [244 S. Orange Grove Blvd.]

6. Absolute Assignment of Leases, Lease Guaranties, Rents, Issues and Profits dated June 8, 2017, by Existing Borrower in favor of Lender. [244 S. Orange Grove Blvd.]

7. Hazardous Substances Indemnity Agreement dated June 8, 2017, by and among Existing Borrower, Guarantor, and Lender.

8. Continuing Guaranty dated June 8, 2017, by Guarantor in favor of Lender.

9. Hazard Insurance Disclosure dated June 8, 2017, by Existing Borrower.

10. Agreement to Furnish Insurance dated June 8, 2017, by Existing Borrower.

11. Disbursement Request and Authorization dated June 8, 2017, by Existing Borrower.

12. Limited Liability Company Borrowing Authorization (Borrower) dated June 8, 2017.

13. Tenant Estoppel Certificate (Dorn Platz Management Inc.).

14. Subordination, Nondisturbance and Attornment Agreement dated June 8, 2017, by and among Lender, Borrower, and Dorn Platz Management Inc., a California corporation.

15. Assignment of Grandstand License Agreement dated June 8, 2017, by and among Lender, Borrower, and Orange Grove Seating, LLC.

16. Consent and Assignment Agreement dated June 8, 2017, by and among Lender, Borrower, Orange Grove Seating, LLC, and BUNDB Productions, LLC, a California limited liability company.

# Exhibit J

**This page is part of your document - DO NOT DISCARD**

# 20170671623

**Pages: 0011**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**06/16/17 AT 08:00AM**

| | |
|---|---|
| FEES: | 45.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 45.00 |

LEADSHEET

201706160170023

**00013856473**

008398374

**SEQ:**
**07**

SECURE - 8:00AM

**THIS FORM IS NOT TO BE DUPLICATED**

E452320

128_1904887

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

1

FIRST AMERICAN TITLE

**RECORDING REQUESTED BY**
**AND WHEN RECORDED, MAIL TO:**

PREFERRED BANK
601 S. Figueroa Street, 29th Floor
Los Angeles, California 90017
Attention: Note Department
Assessor's Parcel No.: 5713-013-057

NCS - 833 699-SD

**MEMORANDUM OF**
**ASSUMPTION AGREEMENT**

**(210 S. Orange Grove Boulevard)**

KNOW ALL MEN BY THESE PRESENTS, that effective as of June 16, 2017, PREFERRED BANK, a California banking corporation ("Lender"), CANTOR GROUP LLC, a California limited liability company ("Existing Borrower"), ANDREW STUPIN, an individual ("Guarantor"), and SDRES PARTNERS LLC, a California limited liability company ("New Borrower"), have entered into that certain Assumption Agreement ("Assumption") dated as of even date herewith, which, among other things, modifies the terms of that certain Loan Agreement dated as of June 8, 2017, executed by Lender and Existing Borrower (together with any amendments and/or addenda thereto, "Loan Agreement"), pursuant to which Lender made a loan to Existing Borrower (the "Loan") evidenced, in part, by that certain Promissory Note dated as of June 8, 2017, in the original principal sum of Eight Million Four Hundred Thousand and No/100 Dollars ($8,400,000.00), executed by Existing Borrower in favor of Lender ("Note"). The Loan Agreement and Note are secured, in part, by a lien on real property more particularly described in Exhibit "A" attached hereto and incorporated herein by this reference (the "Property"), pursuant to that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated as of June 8, 2017, executed by Existing Borrower, as trustor, in favor of Lender, as beneficiary, and recorded in the Official Records of Los Angeles County, California ("Deed of Trust").

This memorandum is intended to make a matter of public record the execution of the Assumption by New Borrower, Guarantor, Existing Borrower and Lender in connection with the Loan Agreement and Note; which Assumption provides for, among other things, (i) Lender's consent to a transfer of one hundred percent (100%) of Existing Borrower's right, title and interest in and to the Property to New Borrower, and (ii) New Borrower's assumption of any and all of Existing Borrower's indebtedness and obligations to Lender under and in connection with the Loan Agreement, Note, Deed of Trust, and any and all other instruments, agreements and/or documents executed by Existing Borrower in connection therewith. Reference is made to the Assumption for the full particulars thereof.



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

This memorandum may be executed and delivered in two or more counterparts, each of which, when so executed and delivered shall be an original, and such counterparts together shall constitute but one and the same instrument.

[Signatures to follow.]

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year set forth above.

**EXISTING BORROWER:**

CANTOR GROUP LLC,
a California limited liability company

By: ______________________
Name: Deba Shyam
Its: General Manager

**EXISTING GUARANTOR:**

______________________
ANDREW STUPIN, an individual

**NEW BORROWER:**

SDRES PARTNERS LLC,
a California limited liability company

By: Cantor Group LLC
a California limited liability company
Its: Managing Member

By: ______________________
Name: Deba Shyam
Its: General Manager

[LENDER'S SIGNATURE TO FOLLOW.]

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

**LENDER:**

PREFERRED BANK,
a California banking corporation

By: Carol Lee
Name: Carol Lee
Title: EVP

[ALL SIGNATURES MUST BE ACKNOWLEDGED]

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

# ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Los Angeles )

On June 8, 2017 before me, G. Leach, Notary Public
(insert name and title of the officer)

personally appeared Deba Shyam,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

G. LEACH
COMM. # 2165573
NOTARY PUBLIC • CALIFORNIA
LOS ANGELES COUNTY
Comm. Exp. OCT. 21, 2020

Signature _______________ (Seal)

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of California )

On June 13, 2017 before me, G. Leach, Notary public
(insert name and title of the officer)

personally appeared Andrew Stupin,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

G. LEACH
COMM. # 2165573
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
Comm. Exp. OCT. 21, 2020

Signature ____________ (Seal)

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Los Angeles )

On June 8, 2017 before me, G. Leach, Notary Public
(insert name and title of the officer)

personally appeared Deba Shyam,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

G. LEACH
COMM. # 2165573
NOTARY PUBLIC • CALIFORNIA
LOS ANGELES COUNTY
Comm. Exp. OCT. 21, 2020

Signature (Seal)

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.


A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
) ss
COUNTY OF Los Angeles )

On June 12, 2017 before me, Xiao Li Wells, a Notary Public, personally appeared Carol Lee, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

XIAO LI WELLS
Commission # 2128402
Notary Public - California
Los Angeles County
My Comm. Expires Sep 28, 2019

Xiao Li Wells
Notary Public

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
) ss
COUNTY OF ____________________ )

On ____________________, before me, ____________________________, a Notary Public, personally appeared ______________________________, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

______________________________
Notary Public

2568367.2 | 050625-0612



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

**EXHIBIT "A"**
LEGAL DESCRIPTION

The land situated in the City of Pasadena, County of Los Angeles, State of California, and described as follows:

PARCEL 1:

LOT 10 OF TRACT NO. 63103, IN THE CITY OF PASADENA, AS PER MAP RECORDED IN BOOK 1369 PAGES 35 THROUGH 52 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AMENDED PURSUANT TO THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED DECEMBER 3, 2013 AS INSTRUMENT NO. 20131708591 OF OFFICIAL RECORDS.

PARCEL 2:

A RECIPROCAL ACCESS EASEMENT OVER THOSE AREAS SET OUT ON THE MAP SHOWN ABOVE.

PARCEL 3:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN CONSOLIDATED AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (SOUTH ORANGE GROVE PARCELS) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716500 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 4:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN ROSE PARADE GRANDSTAND EASEMENT AGREEMENT (ORANGE GROVE AVENUE) RECORDED JULY 21, 2005 AS INSTRUMENT NOS. 05-1721787 AND 05-1721788 BOTH OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 5:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING GARAGE EASEMENT AGREEMENT RECORDED JULY 2, 2007 AS INSTRUMENT NO. 20071579026 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 6:



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING EASEMENT AGREEMENT RECORDED DECEMBER 28, 2011 AS INSTRUMENT NO. 20111763712 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

APN: 5713-013-057

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

**This page is part of your document - DO NOT DISCARD**

# 20170671628

**Pages: 0011**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**06/16/17 AT 08:00AM**

| | |
|---|---|
| FEES: | 45.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 45.00 |

LEADSHEET

201706160170023

**00013856478**

008398374

**SEQ:**
**12**

SECURE - 8:00AM

**THIS FORM IS NOT TO BE DUPLICATED**

E452320

128_1904887_1_2

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.


Recording Requested By:
FIRST AMERICAN TITLE
National Commercial Services

~~RECORDING REQUESTED BY~~

**AND WHEN RECORDED, MAIL TO:**

PREFERRED BANK
601 S. Figueroa Street, 29th Floor
Los Angeles, California 90017
Attention: Note Department
Assessor's Parcel No.: 5713-027-065

NCS-833700-SO

**MEMORANDUM OF**
**ASSUMPTION AGREEMENT**

**(244 S. Orange Grove Boulevard)**

KNOW ALL MEN BY THESE PRESENTS, that effective as of June 16, 2017, PREFERRED BANK, a California banking corporation ("Lender"), CANTOR GROUP LLC, a California limited liability company ("Existing Borrower"), ANDREW STUPIN, an individual ("Guarantor"), and SDRES PARTNERS LLC, a California limited liability company ("New Borrower"), have entered into that certain Assumption Agreement ("Assumption") dated as of even date herewith, which, among other things, modifies the terms of that certain Loan Agreement dated as of June 8, 2017, executed by Lender and Existing Borrower (together with any amendments and/or addenda thereto, "Loan Agreement"), pursuant to which Lender made a loan to Existing Borrower (the "Loan") evidenced, in part, by that certain Promissory Note dated as of June 8, 2017, in the original principal sum of Eight Million Four Hundred Thousand and No/100 Dollars ($8,400,000.00), executed by Existing Borrower in favor of Lender ("Note"). The Loan Agreement and Note are secured, in part, by a lien on real property more particularly described in Exhibit "A" attached hereto and incorporated herein by this reference (the "Property"), pursuant to that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated as of June 8, 2017, executed by Existing Borrower, as trustor, in favor of Lender, as beneficiary, and recorded in the Official Records of Los Angeles County, California ("Deed of Trust").

This memorandum is intended to make a matter of public record the execution of the Assumption by New Borrower, Guarantor, Existing Borrower and Lender in connection with the Loan Agreement and Note; which Assumption provides for, among other things, (i) Lender's consent to a transfer of one hundred percent (100%) of Existing Borrower's right, title and interest in and to the Property to New Borrower, and (ii) New Borrower's assumption of any and all of Existing Borrower's indebtedness and obligations to Lender under and in connection with the Loan Agreement, Note, Deed of Trust, and any and all other instruments, agreements and/or documents executed by Existing Borrower in connection therewith. Reference is made to the Assumption for the full particulars thereof.

2568378.2 | 050625-0612

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

This memorandum may be executed and delivered in two or more counterparts, each of which, when so executed and delivered shall be an original, and such counterparts together shall constitute but one and the same instrument.

[Signatures to follow.]

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year set forth above.

**EXISTING BORROWER:**

CANTOR GROUP LLC,
a California limited liability company

By: ______________________
Name: Deba Shyam
Its: General Manager

**EXISTING GUARANTOR:**

______________________
ANDREW STUPIN, an individual

**NEW BORROWER:**

SDRES PARTNERS LLC,
a California limited liability company

By: Cantor Group LLC
a California limited liability company
Its: Managing Member

By: ______________________
Name: Deba Shyam
Its: General Manager

[LENDER'S SIGNATURE TO FOLLOW.]



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

**LENDER:**

**PREFERRED BANK,**
**a California banking corporation**

By: Carol Lee
Name: Carol Lee
Title: VP

[ALL SIGNATURES MUST BE ACKNOWLEDGED]

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.


## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Los Angeles )

On June 8, 2017 before me, G. Leach, Notary Public
(insert name and title of the officer)

personally appeared Deba Shyam,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

G. LEACH
COMM. # 2165573
NOTARY PUBLIC • CALIFORNIA
LOS ANGELES COUNTY
Comm. Exp. OCT. 21, 2020

Signature ______________________ **(Seal)**

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of California )

On June 13, 2017 before me, G. Leach, Notary public
(insert name and title of the officer)

personally appeared Andrew Stupin,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

G. LEACH
COMM. # 2165573
NOTARY PUBLIC • CALIFORNIA
LOS ANGELES COUNTY
Comm. Exp. OCT. 21, 2020

Signature ______________________ **(Seal)**

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Los Angeles )

On June 8, 2017 before me, G. Leach, Notary Public
(insert name and title of the officer)

personally appeared Deba Shyam,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

G. LEACH
COMM. # 2165573
NOTARY PUBLIC ◦ CALIFORNIA
LOS ANGELES COUNTY
Comm. Exp. OCT. 21, 2020

Signature ______________________ (Seal)

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
) ss
COUNTY OF Los Angeles )

On June 12, 2017, before me, Xiao Li Wells, a Notary Public, personally appeared Carol Lee, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

[signature]
Notary Public

XIAO LI WELLS
Commission # 2128402
Notary Public - California
Los Angeles County
My Comm. Expires Sep 28, 2019

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
) ss
COUNTY OF ________________ )

On ________________, before me, ________________________, a Notary Public, personally appeared ________________________, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

______________________________
Notary Public

2568378.2 | 050625-0612



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

**EXHIBIT "A"**
LEGAL DESCRIPTION

The land situated in the City of Pasadena, County of Los Angeles, State of California, and is described as follows:

PARCEL 1:

LOT 12 OF TRACT NO. 63103, IN THE CITY OF PASADENA, AS PER MAP RECORDED IN BOOK 1369 PAGES 35 THROUGH 52 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AMENDED PURSUANT TO THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED DECEMBER 3, 2013 AS INSTRUMENT NO. 20131708591 OF OFFICIAL RECORDS.

PARCEL 2:

A RECIPROCAL ACCESS EASEMENT OVER THOSE AREAS SET OUT ON THE MAP SHOWN ABOVE.

PARCEL 3:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN CONSOLIDATED AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (SOUTH ORANGE GROVE PARCELS) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716500 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 4:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (DEL MAR PARCEL) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716499 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 5:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN ROSE PARADE GRANDSTAND EASEMENT AGREEMENT (ORANGE GROVE AVENUE) RECORDED JULY 21, 2005 AS INSTRUMENT NOS. 05-1721787 AND 05-1721788 BOTH OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

PARCEL 6:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING GARAGE EASEMENT AGREEMENT RECORDED JULY 2, 2007 AS INSTRUMENT NO. 20071579026 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 7:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING EASEMENT AGREEMENT RECORDED DECEMBER 28, 2011 AS INSTRUMENT NO. 20111763712 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

APN: 5713-027-065

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

# Exhibit K

# AMENDED RESTATED PROMISSORY NOTE

$8,400,000.00 LOS ANGELES, CALIFORNIA March 25, 2019

FOR VALUE RECEIVED, SDRES PARTNERS LLC, a California limited liability company ("Borrower"), promises to pay to PREFERRED BANK, a California banking corporation ("Lender"), or its order, at its office located at 601 S. Figueroa Street, 29th Floor, Los Angeles, California 90017, or at such other place as the holder hereof may designate, in lawful money of the United States of America, the principal sum of Eight Million Four Hundred Thousand and No/100 Dollars ($8,400,000.00), or so much thereof as shall have been advanced and is outstanding together with interest, on the outstanding principal balance, until paid in full in accordance with the terms, conditions and provisions as hereinafter set forth in this Amended and Restated Promissory Note (this "Note").

Borrower (as successor-in-interest to Cantor Group LLC, a California limited liability company) has heretofore executed and delivered to and in favor of Lender that certain Promissory Note dated as of June 8, 2017, in the principal sum of $8,400,000.00 (together with any and all amendments thereto or modifications thereof, the "Original Note"). This Note amends and restates in its entirety the Original Note effective as of January 8, 2019 ("Effective Date") upon timely and complete satisfaction of each and all of the conditions precedent set forth in Section 10 of the Modification (as hereinafter defined).

**LOAN AGREEMENT.** This Note is the "Amended and Restated Note" as defined in that certain Modification of Deed of Trust and Amendment to Loan documents dated March 25, 2019 ("Modification"), which Modification modified, among other things, that certain Loan Agreement dated June 8, 2017 (together with any and all other amendments thereto or modifications thereof, the "Loan Agreement"), entered into by and between Borrower and Lender, as it may be amended from time to time, and is subject to all of the terms and conditions thereof. All terms not defined herein shall have the same meaning as in the Loan Agreement. In the event of a conflict between the terms of this Note and the Loan Agreement, the terms of this Note shall prevail.

**INTEREST RATE.** Interest on the outstanding principal balance of this Note shall be computed and calculated based upon a three hundred sixty (360)-day year and actual days elapsed and shall accrue at the per annum rate (the "Note Rate") as follows:

(a) from the Effective Date to January 7, 2020, a fixed rate of four and three-quarters of one percent (4.75%);

(b) from January 8, 2020 to January 7, 2021, a fixed rate of five percent (5.00%);

(c) from January 8, 2021 to January 7, 2022, a fixed rate of five and one-quarter of one percent (5.25%); and

(d) from January 8, 2022, until the Maturity Date (as hereinafter defined), the greater of (i) five percent (5.00%) or (ii) three-quarter of one percent (0.75%) in excess of "The Wall Street Journal Prime Rate", as the rate may change from time to time. The Wall Street Journal Prime Rate is and shall mean the variable rate of interest, on a per annum basis, which is announced and/or published in the Money Rates Section of The Wall Street Journal from time to time. The Note Rate shall be redetermined whenever The Wall Street Journal Prime Rate changes. Borrower understands and acknowledges that The Wall Street Journal Prime Rate is one of Lender's base rates, and only serves as a basis upon which effective rates of interest are calculated for loans making reference thereto and may not be the lowest of Lender's base rates. If The Wall Street Journal Prime Rate becomes unavailable during the term of this Note, Lender may designate a substitute index after notice to Borrower.

**PRINCIPAL AND INTEREST PAYMENTS**. Interest shall be due and payable monthly, in arrears, based upon the actual number of days elapsed for that monthly period, commencing on February 8, 2019, and shall continue to be due and payable, in arrears, on the same day of each calendar month thereafter until the Maturity Date (as hereinafter defined).

In addition to the payment of interest, as set forth above, commencing on February 8, 2021, and continuing on the same day of each and every calendar month thereafter through the Maturity Date, Borrower shall pay to Lender a monthly installment payment of principal in an amount equal to $9,838.13.

Upon the Maturity Date, the entire unpaid obligation outstanding under this Note, the Deed of Trust (as defined in the Loan Agreement), the Loan Agreement, and any other Loan Documents shall become due and payable in full.

All payments due hereunder, including payments of principal and interest, shall be made to Lender in United States Dollars and shall be in the form of immediately available funds acceptable to the holder of this Note.

**APPLICATION OF PAYMENTS**. All payments received by Lender from, or for the account of Borrower, due hereunder shall be applied by Lender, in its sole and absolute discretion, in the following manner, or in any other order or manner as Lender chooses:

a. First. To pay any and all interest due, owing and accrued;

b. Second. To pay any and all costs, advances, expenses or fees due, owing and payable to Lender, or paid or incurred by Lender, arising from or out of this Note, the Deed of Trust, the Loan Agreement, and the other Loan Documents; and

c. Third. To pay the outstanding principal balance on this Note.

All records of payments received by Lender shall be maintained at Lender's office, and the records of Lender shall, absent manifest error, be binding and conclusive upon Borrower. The failure of Lender to record any payment or expense shall not limit or otherwise affect the obligations of Borrower under this Note.

**MATURITY DATE**. On June 8, 2022 ("Maturity Date"), the entire unpaid principal balance, and all unpaid accrued interest thereon, shall be due and payable without demand or notice. In the event that Borrower does not pay this Note in full on the Maturity Date then, as of the Maturity Date and thereafter until paid in full, the interest accruing on the outstanding principal balance hereunder shall be computed, calculated and accrued on a daily basis at the Default Rate (as hereinafter defined).

**UNPAID INTEREST, CHARGES AND COSTS**. Interest, late charges, costs or expenses that are not received by Lender within ten (10) calendar days from the date such interest, late charges, costs, or expenses become due, shall, at the sole discretion of Lender, be added to the principal balance and shall from the date due bear interest at the Default Rate.

**HOLIDAY.** Whenever any payment to be made under this Note shall be due on a day other than a Business Day, including Saturdays, Sundays and legal holidays generally recognized by banks doing business in California, then the due date for such payment shall be automatically extended to the next succeeding Business Day, and such extension of time shall in such cases be included in the computation of the interest portion of any payment due hereunder.

**NO OFFSETS OR DEDUCTIONS.** All payments under this Note shall be made by Borrower without any offset, decrease, reduction or deduction of any kind or nature whatsoever, including, but not limited to, any decrease, reduction or deduction for, or on account of, any offset, present or future taxes, present or future reserves, imposts or duties of any kind or nature, that are imposed or levied by or on behalf of any government or taxing agency, body or authority by or for any municipality, state or country. If at any time, present or future, Lender shall be compelled, by any Law, rule, regulation or any other such requirement which on its face or by its application requires or establishes reserves, or payment, deduction or withholding of taxes, imposts or duties, to act such that it causes or results in a decrease, reduction or deduction (as described above) in payment received by Lender, then Borrower shall pay to Lender such additional amounts, as Lender shall deem necessary and appropriate, such that every payment received under this Note, after such decrease, reserve, reduction, deduction, payment or required withholding, shall not be reduced in any manner whatsoever.

**DEFAULT**. Any one or more of the following events or occurrences shall constitute a default under this Note (hereinafter "Default"):

(i) Lender does not receive a payment in the amount and within the time and manner as set forth herein within ten (10) days after the same becomes due and payable; or

(ii) There shall be an Event of Default under the Loan Agreement; or

(iii) There shall be a default under any of the other Loan Documents beyond the expiration of any applicable notice and cure periods.

Upon the occurrence of a Default hereunder and during the continuance thereof, Lender may, in its sole and absolute discretion, declare the entire unpaid principal balance, together with all accrued and unpaid interest thereon, and all other amounts and payments due hereunder, immediately due and payable, without notice or demand.

**DEFAULT RATE**. From and after the occurrence of any Default in this Note whether by non-payment, maturity, acceleration, non-performance or otherwise, and until such Default has been cured, all outstanding amounts under this Note (including, but not limited to, interest, costs and late charges) shall bear interest at a per annum rate ("Default Rate") equal to eight percent (8%) over the Note Rate.

**PREPAYMENT**. Borrower shall have the right at any time following five (5) calendar days prior written notice to Lender, to prepay all or any portion of the principal balance outstanding under this Note, without any prepayment premium or prepayment penalty; provided, however, that Borrower shall be required to pay to Lender, as and for a prepayment premium, the Prepayment Fee (as hereinafter defined). The prepayment amount due on the prepayment date shall equal the sum of: (i) all unpaid late payment processing fees and unreimbursed costs and expenses then outstanding; plus (ii) all accrued and unpaid interest as of the prepayment date; plus (iii) the principal amount of the Loan being prepaid, plus (iv) the Prepayment Fee. The "Prepayment Fee" shall be an amount equal to the product obtained by multiplying the principal amount of the Note being prepaid by the applicable percentage set forth below, depending on the length of time between the Effective Date and the date when the prepayment will be made:

| **If prepayment occurs during the following periods:** | **The percentage multiplier is:** |
|---|---|
| From the Effective Date until January 7, 2020 | 3.00% |
| From January 8, 2020 to January 7, 2021 | 2.00% |
| From January 8, 2021 to January 7, 2022 | 1.00% |
| From January 8, 2022 to June 8, 2022 | 0.00% |

THE PREPAYMENT FEE SHALL APPLY NOT ONLY IN THE CASE OF VOLUNTARY PREPAYMENT, BUT ALSO IN THE EVENT THAT THIS NOTE BECOMES DUE AND PAYABLE IN FULL BY REASON OF ACCELERATION UPON THE OCCURRENCE OF A DEFAULT OR OTHERWISE, INCLUDING, WITHOUT LIMITATION, UPON OCCURRENCE OF A TRANSFER OF THE PROPERTY, WHETHER VOLUNTARILY OR INVOLUNTARILY OR OTHERWISE.

In such case, the Prepayment Fee shall be calculated as of the date of the Default, or other event or condition triggering acceleration, and until paid in full shall accrue interest at the Default Rate. Whether prepayment is voluntary or involuntary, in no event shall the amount of the Prepayment Fee, or the method of calculating the Prepayment Fee, result in a reduction of the outstanding principal balance, accrued and unpaid interest, or other amounts due as of the date of prepayment. Absent material and manifest error, Lender's determination of the Prepayment Fee shall be binding and conclusive on Borrower and anyone else having an interest in the determination. Notwithstanding the foregoing, a Prepayment Fee shall not be required in connection with any application towards the outstanding principal balance of this Note from the sale of any portion of the Property pursuant to, and in accordance with, the terms and conditions set forth in Section 3.12 of the Loan Agreement, as modified by the Modification.

**Any such prepayment shall not result in a reamortization, deferral, postponement, suspension, or waiver of any and all other payments due under this Note.**

Pursuant to California Civil Code Section 2954.10, Borrower has initialed this provision of the Note expressly waiving the right to prepay the Note except as expressly permitted herein.

DS
Borrower's Initials

**LATE CHARGES**. Time is of the essence for all payments and other obligations due under this Note. Borrower acknowledges that if any payment required under this Note is not received by Lender within ten (10) days after the same becomes due and payable, Lender will incur extra administrative expenses (i.e., in addition to expenses incident to receipt of timely payment) and the loss of the use of funds in connection with the delinquency in payment. Because, from the nature of the case, the actual damages suffered by Lender by reason of such administrative expenses and loss of the use of funds would be impracticable or extremely difficult to ascertain, Borrower agrees that five percent (5%) of the amount of the delinquent payment, together with interest accruing on the entire principal balance of this Note at the Default Rate, as provided above, shall be the amount of damages which Lender is entitled to receive upon such breach, in compensation therefor. Therefore, Borrower shall, in such event, without further demand or notice, pay to Lender, as Lender's monetary recovery for such extra administrative expenses and loss of use of funds, liquidated damages in the amount of five percent (5%) of the amount of the delinquent payment (in addition to interest at the Default Rate). The provisions of this paragraph are intended to govern only the determination of damages in the event of a breach in the performance of Borrower to make timely payments hereunder. Nothing in this Note shall be construed as in any way giving Borrower the right, express or implied, to fail to make timely payments hereunder, whether upon payment of such damages or otherwise. The right of Lender to receive payment of such liquidated and actual damages, and receipt thereof, are without prejudice to the right of Lender to collect such delinquent payments and any other amounts provided to be paid hereunder or under any of the Loan Documents, or to declare a default hereunder or under any of the Loan Documents.

**SECURITY AND ACCELERATION**. This Note is secured by, among other things, the Property, pursuant to the Deed of Trust. The Deed of Trust contains, among other provisions, a provision for the immediate acceleration of this Note upon the occurrence of any Default, any event of default under the Deed of Trust, or any sale, transfer, conveyance, encumbrance or alienation of Borrower's right, title or interest (or any portion thereof) in the Property. Reference is made to the Deed of Trust for the specific provisions thereof.

**COSTS AND EXPENSES.** Borrower hereby agrees to pay any and all costs or expenses paid or incurred by Lender by reason of, as a result of, or in connection with the enforcement of this Note, the Deed of Trust or any other Loan Documents, including, but not limited to, any and all attorneys' fees and related costs when such costs or expenses are paid or incurred in connection with the enforcement of this Note, the Deed of Trust and the other Loan Documents, or any of them, the protection or preservation of the collateral or security for this Note, or any other rights, remedies or interests of Lender, whether or not suit is filed. Borrower's agreement to pay any and all such costs and expenses includes, but is not limited to, costs and expenses incurred in or in connection with any bankruptcy proceeding in enforcing any judgment obtained by Lender and in connection with any and all appeals therefrom, and in connection with the monitoring of any bankruptcy proceeding and its effect on Lender's rights and claims for recovery of the amounts due hereunder, any proceeding concerning relief from the automatic stay, use of cash collateral, proofs of claim, approval of a disclosure statement or confirmation of, or objections to confirmation of, any plan of reorganization. All such costs and expenses are immediately due and payable to Lender by Borrower whether or not demand therefor is made by Lender.

**WAIVERS**. Borrower hereby waives grace, diligence, presentment, demand, notice of demand, dishonor, notice of dishonor, protest, notice of protest, any and all exemption rights against the indebtedness evidenced by this Note and the right to plead any statute of limitations as a defense to the repayment of all or any portion of this Note, and interest thereon, to the fullest extent allowed by law, and all compensation of cross-demands pursuant to California Code of Civil Procedure Section 431.70. No delay, omission or failure on the part of Lender in exercising any right or remedy hereunder shall operate as a waiver of such right or remedy or any other right or remedy of Lender.

**MAXIMUM LEGAL RATE.** This Note is subject to the express condition that at no time shall Borrower be obligated, or required, to pay interest on the principal balance at a rate which could subject Lender to either civil or criminal liability as a result of such rate being in excess of the maximum rate which Lender is permitted to charge. If, by the terms of this Note, Borrower is, at any time, required or obligated to pay interest on the principal balance at a rate in excess of such maximum rate, then the rate of interest under this Note shall be deemed to be immediately reduced to such maximum rate and interest payable hereunder shall be computed at such maximum rate and any portion of all prior interest payments in excess of such maximum rate shall be applied, or shall retroactively

be deemed to have been payments made, in reduction of the principal balance, as the case may be.

**AMENDMENT; GOVERNING LAW.** This Note may be amended, changed, modified, terminated or canceled only by a written agreement signed by the party against whom enforcement is sought for any such action. This Note shall be governed by, and construed under, the Laws of the State of California.

**AUTHORITY.** Borrower, and each person executing this Note on Borrower's behalf, hereby represents and warrants to Lender that, by its execution below, Borrower has the full power, authority and legal right to execute and deliver this Note and that the indebtedness evidenced hereby constitutes a valid and binding obligation of Borrower without exception or limitation. In the event that this Note is executed by more than one person or entity, the liability hereunder shall be joint and several. Any married person who is obligated on this Note, directly or indirectly, agrees that recourse may be had to such person's separate property in addition to any and all community property of such person.

**USA PATRIOT ACT NOTICE**. Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account or obtains a loan. Lender will ask for Borrower's legal name, address, tax ID number or social security number and other identifying information. Lender may also ask for additional information or documentation or take other actions reasonably necessary to verify the identity of Borrower, Guarantor or other related persons.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, Borrower has executed this Note as of the day and year first above written.

**BORROWER:**

SDRES PARTNERS LLC,
a California limited liability company

By: Cantor Group LLC
a California limited liability company
Its: Managing Member

By: ______________________
Name: Deba Shyam
Its: General Manager

# Exhibit L

**MODIFICATION OF DEED OF TRUST AND AMENDMENT TO LOAN DOCUMENTS**

THIS MODIFICATION OF DEED OF TRUST AND AMENDMENT TO LOAN DOCUMENTS (this "Modification") is entered into as of March 25, 2019, by and between SDRES PARTNERS LLC, a California limited liability company ("Borrower"), and ANDREW STUPIN, an individual ("Guarantor"), on the one hand, and PREFERRED BANK, a California banking corporation ("Lender"), on the other hand.

**RECITALS**

A. Lender has made a loan (the "Loan") to CANTOR GROUP LLC, a California limited liability company ("Original Borrower"), for the purpose of financing Original Borrower's acquisition of the Property (as hereinafter defined). The Loan was and is evidenced, in part, by that certain Promissory Note dated June 8, 2017, in the original principal amount of Eight Million Four Hundred Thousand and No/100 Dollars ($8,400,000.00), executed by Original Borrower in favor of Lender (together with any and all amendments and extensions thereto or modifications thereof, the "Note").

B. In connection with the Loan, Original Borrower also executed and delivered to and in favor of Lender, the following additional documents, among others:

1. Loan Agreement dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "Loan Agreement"), executed by and between Original Borrower and Lender;

2. Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "210 Orange Grove Deed of Trust"), executed by Original Borrower as trustor in favor of Lender, which was recorded on June 16, 2017, as Instrument No. 20170671620, in the Official Records of Los Angeles County, California, encumbering the real property more commonly known as 210 South Orange Grove, Pasadena, California, and more particularly described in Exhibit "A-1" attached hereto and incorporated herein by this reference ("210 Orange Grove Property");

3. Absolute Assignment of Leases, Lease Guaranties, Rents, Issues and Profits dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "210 Orange Grove Assignment of Leases"), executed by Original Borrower in favor of Lender, which was recorded on June 16, 2017, as Instrument No. 20170671621, in the Official Records of Los Angeles County, California;

4. Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "244 Orange Grove Deed of Trust" and together with the 210 Orange Grove Property, individually and collectively, the "Deed of Trust"), executed by Original Borrower as trustor in favor of Lender, which was recorded on June 16, 2017, as Instrument No. 20170671625, in the Official Records of Los Angeles County, California, encumbering the real property more commonly known as 244 South Orange Grove, Pasadena, California, and more particularly described in Exhibit "A-2" attached hereto and incorporated herein by this reference

(the "244 Orange Grove Property", and together with the 210 Orange Grove Property, individually and collectively, the "Property");

5. Absolute Assignment of Leases, Lease Guaranties, Rents, Issues and Profits dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "244 Orange Grove Assignment of Leases" and together with the 210 Orange Grove Assignment of Leases, individually and collectively, the "Assignment of Leases"), executed by Original Borrower in favor of Lender, which was recorded on June 16, 2017, as Instrument No. 20170671626, in the Official Records of Los Angeles County, California; and

6. Hazardous Substances Indemnity Agreement dated August 11, 2015 (together with any and all amendments and extensions thereto or modifications thereof, the "Indemnity Agreement"), executed by Original Borrower and Guarantor in favor of Lender, and covering the Property.

C. Pursuant to that certain Assumption Agreement dated June 8, 2017, by and among Original Borrower, Guarantor and Borrower, and aa Memorandum of Assumption Agreement dated June 8, 2017, recorded in connection with each Property (collectively, the "Assumption Documents"), Lender consented to a transfer of one hundred percent (100%) of Original Borrower's right, title and interest in and to each Property to Borrower, and Borrower's assumption of any and all of Original Borrower's indebtedness and obligations to Lender under and in connection with the Loan Agreement, Note, Deed of Trust, Assignment of Leases, Indemnity Agreement and any and all other instruments, agreements and/or documents executed by Original Borrower in connection therewith.

D. Payment and performance of Borrower's indebtedness and obligations in connection with the Loan was and is guaranteed by Guarantor, who delivered to and in favor of Lender a Continuing Guaranty dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "Guaranty").

E. Pursuant to each Deed of Trust and the Assumption Documents, Borrower granted to and in favor of Lender a first priority security interest in and lien upon certain real and personal property described in each Deed of Trust (the "Deed of Trust Collateral"), to secure, without limitation, payment and performance of the indebtedness and obligations under and in connection with the Loan and the Note. Lender's security interest in the Deed of Trust Collateral was and is perfected under applicable law.

F. The Note, Loan Agreement, Deed of Trust, Assignment of Leases, Indemnity Agreement, Assumption Documents, Guaranty, and all other assignments, agreements, instruments and other documents executed by Borrower (and Original Borrower) or Guarantor in connection with the Loan shall at times hereinafter be referred to collectively as the "Loan Documents."

G. Borrower and Guarantor have each requested that Lender (i) modify the interest rate and the repayment terms under the Note, and (ii) permit Borrower to subdivide the Property into two or more parcels and to sell any such parcels to third parties, and Lender is willing to agree to said requests, subject to the terms and conditions set forth in this Modification.

Except as may be otherwise expressly defined in this Agreement, all terms used in this Agreement beginning with a capital letter shall have the meanings ascribed to them in the Loan Agreement.

**AGREEMENT**

NOW, THEREFORE, for valuable consideration and the mutual promises of the parties hereto, said parties do hereby acknowledge and agree as follows:

1. Recitals.

The recitals are incorporated herein by this reference as are all exhibits. Borrower and Guarantor, and each of them, agree and acknowledge that the factual information recited above is true and correct.

2. Borrower and Guarantor Acknowledgment as to Obligations.

A. Borrower, and Guarantor each acknowledge, confirm and agree that as of March 25, 2019, the total outstanding principal balance of the Note is $8,256,674.46 plus accrued and unpaid interest thereon.

B. Borrower and Guarantor, and each of them, specifically acknowledge and confirm that they do not have any valid offset or defense to the obligations, indebtedness and liability under the Loan Documents.

3. Reaffirmation of Obligations.

This Modification is, in part, a reaffirmation of the obligations, indebtedness and liability of Borrower and Guarantor, and each of them, to Lender as evidenced by the Loan Documents. Therefore, Borrower and Guarantor, and each of them, acknowledge and agree that, except as specified herein, all of the terms and conditions of the Loan Documents are and shall remain in full force and effect, without waiver or modification of any kind whatsoever, and are ratified and confirmed in all respects.

4. [Intentionally omitted.]

5. Amended and Restated Note; Amendment to Deed of Trust.

A. The Note shall be amended and restated in its entirety pursuant to that certain Amended and Restated Promissory Note of even date herewith in the principal sum of $8,400,000.00 ("Amended and Restated Note"), in form and content satisfactory to Lender in Lender's sole opinion and judgment. All amounts available under the Amended and Restated Note have already been advanced as of the date hereof, and Lender shall have no further obligation to make any further advances under the Amended and Restated Note. Any and all references to the "Note" in the Loan Documents shall mean the Amended and Restated Note. The Loan as evidenced by the Amended and Restated Note shall continue to be secured by the Property pursuant to the Deed of Trust, and by any and all other security documents executed

pursuant to the Loan Agreement, as such Deed of Trust and other documents are amended pursuant to this Modification.

B. Each Deed of Trust is hereby modified such that paragraph (1) under the heading "FOR THE PURPOSE OF SECURING" on page 4 of each Deed of Trust is hereby deleted and replaced with the following:

"(1) Payment of the sum of Eight Million Four Hundred Thousand and No/100 Dollars ($8,400,000.00), together with interest thereon and certain additional costs and expenses related to or incurred in connection with or as provided in that certain Amended and Restated Promissory Note dated March 25, 2019 (the "Note") executed by Trustor, payable to Lender, or order, and all extensions, modifications or renewals thereof (including, without limitation, any extension, modification, or renewal of the Note at a different rate of interest or on different terms), which Note amended and restated in its entirety that certain Promissory Note dated June 8, 2017, in the maximum principal amount of $8,400,000.00, executed by Trustor in favor of Lender."

6. Amendment to Loan Agreement.

A. The following new Section 3.12 is hereby added to the Loan Agreement immediately following Section 3.11:

"3.12 CONDITIONS TO THE PARTIAL RELEASE OF DEED OF TRUST - Borrower intends subdivide the Property into two or more parcels and to sell one or more of the parcels (each a "Parcel") to third Persons. Lender shall permit Borrower to do so, subject to Borrower satisfying each and every one of the following terms and conditions:

3.12.1 No Event of Default (or event which, with the giving of notice or the passage of time, or both, would become an Event of Default) shall exist under this Agreement, the Note, the Deed of Trust or any of the other Loan Documents;

3.13.2 Each Parcel to be sold shall be in compliance with the California Subdivision Map Act and all applicable Laws pertaining to the subdivision of the Property, and all other applicable Laws;

3.13.3 If requested by Lender, Borrower shall execute and deliver to Lender a modification of the Deed of Trust, in form and content satisfactory to Lender, in its sole and absolute opinion and judgment;

3.12.4 The terms of the sale, including without limitation the sales price, shall be satisfactory to Lender, in its sole and absolute discretion;

3.12.5 With respect to each Parcel to be sold, Lender shall be paid an amount equal to either of the following as determined by Lender in its sole opinion and judgment: (i) one hundred percent (100%) of the financed cost of such Parcel on a pro-rata basis based on the Appraisal approved by Lender prior

to Closing, as determined by Lender in its sole opinion or judgment, or (ii) such other amount as shall be determined by Lender based on Lender's review of such Appraisal;

3.12.6 Lender shall have received evidence satisfactory in Lender's sole opinion and judgment that the Debt Service Coverage Ratio following the sale of the Parcel to be sold, on a forward looking basis (based on leases in effect and for which monthly rents are being paid) for the remaining Property shall be not less than 1.25 to 1.00, as determined by Lender in its sole opinion and judgment. In that regard, Borrower shall provide to Lender operating statements and rent roll for the remaining Property, certified by Borrower, for said period, including income and expense statements, and such other information and documentation as Lender may request;

3.12.7 All funds received by Lender pursuant to Section 3.12.5 shall be applied to reduce the outstanding principal balance on the Loan; and

3.12.8 At the election of Lender, in Lender's sole discretion, Lender shall receive, at Borrower's expense, such endorsements to the Title Policy as Lender may request, in its sole opinion and judgment, including, without limitation, endorsements insuring the continued first priority lien of the Deed of Trust, subject only to the Permitted Encumbrances.

Upon satisfaction of the foregoing terms and conditions by Borrower with respect to the Parcel sold, and upon written request of Borrower, Lender shall authorize the trustee under the Deed of Trust to issue a partial reconveyance of the lien of the Deed of Trust with respect to the Parcel sold.

Borrower understands, acknowledges and agrees that, in connection with any proposed sale of any Parcel, Lender requires, as a part of Lender's standard procedures and practices, that any funds which are released to Borrower prior to the closing of such sale either directly from the buyer, from the escrow, or otherwise, be paid over to Lender if there is an Event of Default. All such released funds so paid over to Lender shall be held by Lender and credited to the minimum release price required by Lender in connection with a release of the lien of the Deed of Trust from that portion of the Property which is the subject of such sale. No payment by Borrower or receipt by Lender of any such funds described herein shall be deemed to constitute an agreement by Lender to release the lien of its Deed of Trust against all or any portion of the Property or any Parcel, or constitute any representation as to a release price which Lender may accept with respect to the release of the lien of its Deed of Trust, or otherwise bind Lender with respect to the lien of its Deed of Trust or its use of such funds."

7. <u>Modification as a Loan Document.</u>

From and after the effective date of this Modification, this Modification and any other documents and instruments executed in connection herewith shall each constitute one of the "Loan Documents."

8. Effective Date of Modification.

This Modification and the amendments provided for herein shall be effective as of January 8, 2019, upon the timely and complete satisfaction of each and all of the conditions precedent set forth in Section 10 of this Modification.

9. Borrower's and Guarantor's Representations and Warranties.

Borrower and Guarantor, and each of them, hereby represent and warrant to Lender and covenant and agree with Lender as follows:

A. Borrower and Guarantor, and each of them, have full legal right, power and authority to enter into and perform this Modification. The execution and delivery of this Modification by Borrower and the consummation by Borrower of the transactions contemplated hereby have been duly authorized by all necessary action by or on behalf of Borrower. This Modification is a valid and binding obligation of Borrower and Guarantor, and each of them, enforceable against Borrower and Guarantor in accordance with its terms.

B. Neither the execution and delivery of this Modification by Borrower and Guarantor, or any of them, nor the consummation by Borrower and Guarantor, or any of them, of the transactions contemplated hereby, conflicts with or constitutes a violation or a default under any law or regulation applicable to Borrower and Guarantor, or any of them, or any contract, commitment, agreement, arrangement or restriction of any kind to which Borrower and Guarantor, or any of them, is a party, by which Borrower and Guarantor, or any of them, is bound or to which any of Borrower's and Guarantor's, or any of their, property or assets is subject.

C. There are no actions, suits or proceedings pending, or to the knowledge of Borrower and Guarantor, or any of them, threatened against or affecting Borrower and Guarantor, or any of them, respectively, in relation to their obligations to Lender or involving the validity and enforceability of this Modification, the Loan Agreement, the Deed of Trust, the Guaranty or any of the other Loan Documents, as applicable, or the priority of any liens given by Borrower to Lender in accordance with the Note, the Loan Agreement, the Deed of Trust, and the other Loan Documents, at Law or in equity, or before or by any Governmental Agency, or which could have a material adverse effect on the financial condition, operations, properties, assets, liabilities or earnings of Borrower and Guarantor, or any of them, or the ability of Borrower and Guarantor, or any of them, to perform their respective obligations to Lender.

D. Borrower and Guarantor, and each of them, hereby reaffirm and confirm that the representations and warranties of Borrower and Guarantor, as applicable, contained in the Loan Documents are true, correct and complete in all material respects as of the date of this Modification.

E. Borrower and Guarantor, and each of them, are in full and complete compliance with the terms, covenants, provisions and conditions of the Note, the Loan Agreement, the Deed of Trust, the Guaranty and the other Loan Documents.

F. Neither Borrower nor Guarantor has any actual knowledge of any release of Hazardous Substances (as defined in the Indemnity Agreement) on the Property.

All covenants, representations and warranties of Borrower and Guarantor herein are incorporated by reference and hereby made a part of the Loan Agreement and the Guaranty, as applicable.

10. Conditions Precedent to Effectiveness of Modification.

The effectiveness of this Modification is expressly conditioned upon Borrower having, at its sole expense, deposited or caused to be deposited with Lender as of April 30, 2019, all of the following items, documents, certificates and other instruments, in form and content satisfactory to Lender and its counsel, in their sole and absolute discretion, and suitable for filing or recording as required:

A. [Intentionally omitted];

B. Payment by Borrower to Lender from Borrower's own funds of all current unpaid and accrued interest due and payable under the Note as of the date hereof;

C. This Modification, fully executed by Borrower and Guarantor;

D. The Memorandum of Modification of Deed of Trust and Amendment to Loan Documents executed by Borrower and Guarantor; which shall be recorded in the Official Records of Los Angeles County, California, covering the 210 Orange Grove Property;

E. The Memorandum of Modification of Deed of Trust and Amendment to Loan Documents executed by Borrower and Guarantor; which shall be recorded in the Official Records of Los Angeles County, California, covering the 244 Orange Grove Property;

F. The Amended and Restated Note, executed by Borrower in favor of Lender;

G. At Borrower's expense, endorsements to Lender's policy of title insurance insuring the lien of the Deed of Trust, which endorsements will provide, in substance, that the priority of the Deed of Trust is unaffected by this Modification, and such other endorsements as Lender deems appropriate, in its sole and absolute opinion and judgment;

H. If required by Lender, resolutions and/or other authorizations of Borrower evidencing approval and authorization of the transactions contemplated hereunder and the documents and instruments to be executed by Borrower in connection herewith;

I. Such additional information, assignments, agreements, certificates, reports, approvals, instruments, documents, subordination agreements, financing statements,

consents and opinions as Lender may request, in its sole and absolute opinion and judgment, in connection with this Modification and/or any of the matters which are the subject of this Modification; and

J. Payment of the fees and costs of Lender in connection with the preparation, negotiation, administration and execution of this Modification including, but not limited to, attorneys' fees, endorsement and recording fees, and other costs and fees of other professionals retained by Lender.

11. General Release.

A. Except as to the obligations imposed upon Lender, as provided herein, Borrower and Guarantor, and each of them, on behalf of themselves, their respective successors and assigns, and each of them, do each hereby forever relieve, release, acquit and discharge Lender and its predecessors, successors and assigns, and their respective past and present attorneys, accountants, insurers, representatives, affiliates, partners, subsidiaries, officers, employees, directors, and shareholders, and each of them (collectively, the "Released Parties"), from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, costs and expenses (including, but not limited to, attorneys' fees), damages, injuries, actions and causes of action, of whatever kind or nature, whether legal or equitable, known or unknown, suspected or unsuspected, contingent or fixed, which Borrower and Guarantor, or any of them, now own or hold or have at any time heretofore owned or held or may at any time hereafter own or hold against the Released Parties, or any of them, by reason of any acts, facts, transactions or any circumstances whatsoever occurring or existing through the date of this Modification, including, but not limited to, those based upon, arising out of, appertaining to, or in connection with the Recitals above, the Loan, the Loan Documents, the facts pertaining to this Modification, any collateral heretofore granted to Lender or granted in connection herewith, or to any other obligations of Borrower and/or Guarantor to Lender, all jointly and severally.

B. As to the matters released herein, Borrower and Guarantor, and each of them, expressly waive any and all rights under Section 1542 of the Civil Code of the State of California, which provides as follows:

> "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

Borrower and Guarantor, and each of them, expressly waive and release any right or benefit which they have or may have under Section 1542 of the Civil Code of the State of California, and any similar law of any state, territory, commonwealth or possession of the United States, or the United States, to the full extent that they may waive all such rights and benefits pertaining to the matters released herein. In connection with such waiver and relinquishment, Borrower and Guarantor, and each of them, acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true. Nevertheless, it is the intention of

Borrower and Guarantor, and each of them, through this Modification, to fully, finally and forever release all such matters, and all claims relative thereto, which do now exist, may exist, or heretofore have existed. In furtherance of such intention, the release herein given shall be and remain in effect as a full and complete release of such matters notwithstanding the discovery or existence of any such additional or different claims or facts relative thereto.

C. In entering into the release provided for in this Modification, Borrower and Guarantor, and each of them, recognize that no facts or representations are ever absolutely certain; accordingly, Borrower and Guarantor, and each of them, assume the risk of any misrepresentation, concealment or mistake, and if Borrower and Guarantor, or any of them, should subsequently discover that any fact that they relied upon in entering into these releases was untrue, or that any fact was concealed from them, or that any understanding of the facts or of the law was incorrect, Borrower and Guarantor, and each of them, shall be not entitled to set aside these releases by reason thereof, regardless of any claims of fraud, misrepresentation, promise made without the intention of performing it, concealment of fact, mistake of fact or law, or any other circumstances whatsoever.

D. Borrower and Guarantor, and each of them, are the sole and lawful owners of all right, title and interest in and to every claim and other matter which they purport to release herein, and they have not heretofore assigned or transferred, or purported to assign or transfer to any person or any entity claims or other matters herein released. Borrower and Guarantor, and each of them, shall indemnify, defend and hold Lender and each of the other Released Parties, harmless from and against any claims, liabilities, actions, causes of action, demands, injuries, costs, and expenses (including, but not limited to, attorneys' fees), based upon or arising in connection with any such prior assignment or transfer, or any such purported assignment or transfer, or any claims or other matters released herein.

12. Revival of Obligation.

A. Borrower and Guarantor, and each of them, acknowledge and agree that in the event that the payment of money, this Modification, or the grant of collateral should for any reason subsequently be declared to be "fraudulent" within the meaning of any state, federal or foreign law relating to fraudulent conveyances, preferential or otherwise voidable or recoverable, in whole or in part, for any reason, under the United States Bankruptcy Code or any other federal, foreign or state law (collectively referred to herein as "Voidable Transfer"), and Lender is required to pay or restore any such Voidable Transfer, or any portion thereof, then as to that which is repaid or restored pursuant to any such Voidable Transfer (including all costs, expenses and attorneys' fees of Lender related thereto, including, without limitation, relief from stay or similar proceedings), the liability of Borrower and Guarantor, and each of them, shall automatically be revived, reinstated and restored to the extent thereof, and shall exist as though such Voidable Transfer had never been made to Lender.

B. Nothing set forth herein is an admission that such Voidable Transfer has occurred. Borrower and Guarantor, and each of them, expressly acknowledge that Lender may rely upon advice of counsel, and if so advised by counsel, may, in the exercise of Lender's sole opinion and judgment, settle, without defending, any action to void any alleged Voidable

Transfer, and that upon such settlement, Borrower and Guarantor, and each of them, shall again be liable for any deficiency resulting from such settlement as provided in this Modification.

C. As an additional inducement to and material consideration for Lender agreeing to the modifications provided in this Modification, Borrower and Guarantor, and each of them, agree that in the event a Bankruptcy or Judicial Action (as hereinafter defined in this Section 12) is commenced which subjects Lender to any stay in the exercise of Lender's rights and remedies under the Loan Documents including, but not limited to, the automatic stay imposed by Section 362 of the United States Bankruptcy Code (individually and collectively, "Stay"), then Borrower and Guarantor, and each of them, irrevocably consent and agree that such Stay shall automatically be lifted and released against Lender, and Lender shall thereafter be entitled to exercise all of its rights and remedies against Borrower and Guarantor, and each of them, under the Loan Documents, subject, however, to the terms and conditions of this Modification. Borrower and Guarantor, and each of them, acknowledge that each is knowingly, voluntarily, and intentionally waiving each of such party's rights to any Stay and agrees that the benefits provided to Borrower and Guarantor under the terms of this Modification are valuable consideration for such waiver. As used in this Section 12, the term "Bankruptcy or Judicial Action" shall mean any voluntary or involuntary case filed by or against Borrower and/or Guarantor, or any of them, under the United States Bankruptcy Code, or any voluntary or involuntary petition in composition, readjustment, liquidation, or dissolution, or any state and federal bankruptcy law action filed by or against Borrower and Guarantor, or any of them, any action where Borrower or Guarantor, or any of them, are adjudicated as bankrupt or insolvent, any action for dissolution of Borrower or Guarantor, or any of them, or any action in furtherance of any of the foregoing, or any other action, case, or proceeding that has the effect of staying (or in which a stay is being obtained against) the enforcement by Lender of its rights and remedies under this Modification, or any of the Loan Documents.

13. No Joint Venture, Management and Control. Notwithstanding any provision of this Modification and/or of the Loan Documents:

A. Lender is not and shall not be construed to be a partner, joint venture, alter ego, manager, controlling person or other business associate or participant of any kind of Borrower and Guarantor, or any of them, or any other person;

B. Lender shall not be deemed responsible to perform or participate in any acts, omissions, or decisions of Borrower and Guarantor, or any of them; and

C. Borrower and Guarantor, and each of them, do not have any claims, causes of action or defenses to their obligations to Lender based on any allegations of management or control exercised by Lender. Borrower and Guarantor, and each of them, acknowledge and agree that Lender does not manage or control them in any way.

14. Miscellaneous.

A. Section headings used in this Modification are for convenience only and shall not affect the construction of this Modification.

B. This Modification may be executed in one or more counterparts but all of the counterparts shall constitute one agreement; provided, however, this Modification shall not be effective and enforceable unless and until it is executed by all parties hereto.

C. This Modification and the other documents and instruments executed in connection therewith constitute the product of the negotiation of the parties hereto and the enforcement hereof shall be interpreted in a neutral manner, and not more strongly for or against any party based upon the source of the draftsmanship hereof.

D. This Modification shall be binding upon and inure to the benefit of Lender, Borrower and Guarantor, and each of them, and their respective successors and assigns, except that neither Borrower nor Guarantor shall assign their rights hereunder or any interest therein without the prior written consent of Lender.

E. This Modification is not a novation, nor, except as expressly provided in this Modification, is it to be construed as a release or modification of any of the terms, conditions, warranties, waivers or rights set forth in the Loan Documents. Nothing contained in this Modification shall be deemed to constitute a waiver by Lender of any required performance by Borrower or Guarantor, and each of them, of any Event of Default or default heretofore or hereafter occurring under or in connection with the other Loan Documents. In the event there is a conflict in any term, condition or provision of this Modification, on the one hand, and the Note, the Loan Agreement, the Deed of Trust, the Guaranty, or any of the other Loan Documents, on the other hand, the terms, conditions and provisions of this Modification are to control.

F. Borrower and Guarantor, and each of them, further represent and warrant as follows:

(1) They have received, or have had the opportunity to receive, independent legal advice from attorneys of each of their choice with respect to the advisability of executing this Modification and prior to the execution of this Modification by Borrower and Guarantor, their attorneys reviewed this Modification and discussed this Modification with them and have made all desired changes;

(2) Except as expressly stated in this Modification, neither Lender nor any other person or entity has made any statement or representation to Borrower or Guarantor regarding facts relied upon by any of them;

(3) Borrower and Guarantor, and each of them, do not rely upon any statement, representation or promise of Lender or any other person or entity in executing this Modification except as expressly stated in this Modification;

(4) The terms of this Modification are contractual and not a mere recital;

(5) This Modification has been carefully read by, the contents hereof are known and understood by, and it is signed freely by Borrower and Guarantor, and each of them; and

(6) This Modification and the releases contained herein are intended to be final and binding against Borrower and Guarantor, and each of them, and each of them acknowledge that Lender is expressly relying on the finality of this Modification as a substantial, material factor inducing Lender's execution of this Modification. Borrower and Guarantor, and each of them, have the full right and authority to enter into this Modification, and the officer, agent or other representative executing this Modification on behalf of Borrower has the full right and authority to fully commit and bind it to this Modification.

[Signature page to follow.]

IN WITNESS WHEREOF, Borrower, Guarantor and Lender have executed and delivered this Modification as of the date set forth above.

**BORROWER**:

SDRES PARTNERS LLC,
a California limited liability company

By: Cantor Group LLC
a California limited liability company
Its: Managing Member

By: ______________________
Name: Deba Shyam
Its: General Manager

**GUARANTOR:**

______________________
ANDREW STUPIN, an individual

**LENDER**:

PREFERRED BANK,
a California banking corporation

By: ______________________
Name: Carol Lee
Title: FVP

IN WITNESS WHEREOF, Borrower, Guarantor and Lender have executed and delivered this Modification as of the date set forth above.

**BORROWER**:

SDRES PARTNERS LLC,
a California limited liability company

By: Cantor Group LLC
a California limited liability company
Its: Managing Member

By: ___________________________
Name: Deba Shyam
Its: General Manager

**GUARANTOR:**

___________________________
ANDREW STUPIN, an individual

**LENDER**:

PREFERRED BANK,
a California banking corporation

By: ___________________________
Name: ___________________________
Title: ___________________________



SEE ATTACHED NOTARIZATION

**EXHIBIT "A-1"**
LEGAL DESCRIPTION OF THE 210 ORANGE GROVE PROPERTY

The land situated in the City of Pasadena, County of Los Angeles, State of California, and described as follows:

PARCEL 1:

LOT 10 OF TRACT NO. 63103, IN THE CITY OF PASADENA, AS PER MAP RECORDED IN BOOK 1369 PAGES 35 THROUGH 52 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AMENDED PURSUANT TO THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED DECEMBER 3, 2013 AS INSTRUMENT NO. 20131708591 OF OFFICIAL RECORDS.

PARCEL 2:

A RECIPROCAL ACCESS EASEMENT OVER THOSE AREAS SET OUT ON THE MAP SHOWN ABOVE.

PARCEL 3:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN CONSOLIDATED AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (SOUTH ORANGE GROVE PARCELS) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716500 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 4:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN ROSE PARADE GRANDSTAND EASEMENT AGREEMENT (ORANGE GROVE AVENUE) RECORDED JULY 21, 2005 AS INSTRUMENT NOS. 05-1721787 AND 05-1721788 BOTH OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 5:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING GARAGE EASEMENT AGREEMENT RECORDED JULY 2, 2007 AS INSTRUMENT NO. 20071579026 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 6:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING EASEMENT AGREEMENT

**RECORDED DECEMBER 28, 2011 AS INSTRUMENT NO. 20111763712 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.**

**APN: 5713-013-057**

**EXHIBIT "A-2"**

LEGAL DESCRIPTION OF THE 244 ORANGE GROVE PROPERTY

The land situated in the City of Pasadena, County of Los Angeles, State of California, and described as follows:

PARCEL 1:

LOT 12 OF TRACT NO. 63103, IN THE CITY OF PASADENA, AS PER MAP RECORDED IN BOOK 1369 PAGES 35 THROUGH 52 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AMENDED PURSUANT TO THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED DECEMBER 3, 2013 AS INSTRUMENT NO. 20131708591 OF OFFICIAL RECORDS.

PARCEL 2:

A RECIPROCAL ACCESS EASEMENT OVER THOSE AREAS SET OUT ON THE MAP SHOWN ABOVE.

PARCEL 3:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN CONSOLIDATED AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (SOUTH ORANGE GROVE PARCELS) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716500 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 4:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (DEL MAR PARCEL) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716499 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 5:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN ROSE PARADE GRANDSTAND EASEMENT AGREEMENT (ORANGE GROVE AVENUE) RECORDED JULY 21, 2005 AS INSTRUMENT NOS. 05-1721787 AND 05-1721788 BOTH OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 6:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING GARAGE EASEMENT AGREEMENT RECORDED JULY 2, 2007 AS INSTRUMENT NO. 20071579026 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 7:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING EASEMENT AGREEMENT RECORDED DECEMBER 28, 2011 AS INSTRUMENT NO. 20111763712 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

APN: 5713-027-065

# Exhibit M

**This page is part of your document - DO NOT DISCARD**

# 20190487919

Pages:
0009

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**05/29/19 AT 08:00AM**

| | |
|---|---|
| FEES: | 81.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 225.00 |
| PAID: | 306.00 |

LEADSHEET

201905290180003

**00016662645**

009850895

**SEQ:**
**01**

SECURE - 8:00AM

**THIS FORM IS NOT TO BE DUPLICATED**

E480070

833699-E

Recording Requested By:
FIRST AMERICAN TITLE
National Commercial Services

AND WHEN RECORDED, MAIL TO:

PREFERRED BANK
601 S. Figueroa Street, 29th Floor
Los Angeles, California 90017
Attention: Note Department

Assessor's Parcel No. 5713-013-057

833699-E

SPACE ABOVE FOR RECORDER'S USE ONLY

## MEMORANDUM OF MODIFICATION OF DEED OF TRUST AND AMENDMENT TO LOAN DOCUMENTS

**(210 S. Orange Grove Boulevard)**

THIS MEMORANDUM OF MODIFICATION OF DEED OF TRUST AND AMENDMENT TO LOAN DOCUMENTS ("Memorandum") is entered into as of this 25th day of March 2019, by and between PREFERRED BANK, a California banking corporation ("Lender"), on the one hand, and SDRES PARTNERS LLC, a California limited liability company ("Borrower"), and ANDREW STUPIN, an individual ("Guarantor"), on the other hand. Borrower (as successor-in-interest to Cantor Group LLC, a California limited liability company) has executed that certain Promissory Note dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "Note"), in favor of Lender, evidencing a loan made by Lender to Borrower in the maximum principal amount of Eight Million Four Hundred Thousand and No/100 Dollars ($8,400,000.00) (the "Loan"), which Note is being amended and restated in its entirety by that certain Amended and Restated Promissory Note of even date herewith, executed by Borrower in favor of Lender, in the maximum principal amount of $8,400,000.00 (the "Amended and Restated Note"). The Amended and Restated Note is secured by, among other things, a lien on the real property more particularly described in Exhibit "A" attached hereto and incorporated herein by this reference (the "Property"), pursuant to that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated June 8, 2017 (together with any and all amendments thereto or modifications thereof, the "Deed of Trust"), executed by Borrower as trustor in favor of Lender, which was recorded on June 16, 2017, as Instrument No. 20170671620 of Official Records of Los Angeles County, California. Lender, Borrower and Guarantor have entered into that certain Modification of Deed of Trust and Amendment to Loan Documents dated as of March 25, 2019 ("Modification"), pursuant to which Lender, among other things, has agreed to (i) modify the interest rate and the repayment terms under the Note, as evidenced by, among other things, the Amended and Restated Note, (ii) permit Borrower to subdivide the Property into two or more parcels and to sell any such parcels to third parties, and (iii) make certain other modification to the Deed of Trust and other Loan Documents (as defined in the Modification).

The Deed of Trust is hereby modified such that paragraph (1) under the heading "FOR THE PURPOSE OF SECURING" on page 4 of the Deed of Trust is hereby deleted and replaced with the following:

"(1) Payment of the sum of Eight Million Four Hundred Thousand and No/100 Dollars ($8,400,000.00), together with interest thereon and certain additional costs and expenses related to or incurred in connection with or as provided in that certain Amended and Restated Promissory Note dated March 25, 2019 (the "Note") executed by Trustor, payable to Lender, or order, and all extensions, modifications or renewals thereof (including, without limitation, any extension, modification, or renewal of the Note at a different rate of interest or on different terms), which Note amended and restated in its entirety that certain Promissory Note dated June 8, 2017, in the maximum principal amount of $8,400,000.00, executed by Trustor (as successor-in-interest to Cantor Group LLC, a California limited liability company) in favor of Lender."

This Memorandum is intended to make a matter of public record the execution of the Modification, which Modification, inter alia, revises the terms of the repayment of Borrower to pay the obligations evidenced by the Note and Deed of Trust. This Memorandum is not intended to set forth all the terms and conditions thereof, for which reference is made to the Modification. This Memorandum may be executed and delivered in two or more counterparts, each of which, when so executed and delivered, shall be an original, and such counterparts together shall constitute but one and the same instrument and agreement, and this Memorandum shall not be binding on any party until all parties have executed it.

[Signature page to follow.]

IN WITNESS WHEREOF, this Memorandum is executed by Lender, Borrower and Guarantor as of the day and year first above written.

**BORROWER:**

SDRES PARTNERS LLC,
a California limited liability company

By: Cantor Group LLC
a California limited liability company
Its: Managing Member

See Attached
Acknowledgment → 4/26/19
Jurat

By: ______________________
Name: Deba Shyam
Its: General Manager

**GUARANTOR:**

______________________
ANDREW STUPIN, an individual

**LENDER:**

PREFERRED BANK,
a California banking corporation

By: ______________________
Name: Carol Lee
Title: VP

[ALL SIGNATURES MUST BE ACKNOWLEDGED]

IN WITNESS WHEREOF, this Memorandum is executed by Lender, Borrower and Guarantor as of the day and year first above written.

**BORROWER:**

SDRES PARTNERS LLC,
a California limited liability company

By: Cantor Group LLC
a California limited liability company
Its: Managing Member

By: ____________________
Name: Deba Shyam
Its: General Manager

**GUARANTOR:**

____________________
ANDREW STUPIN, an individual

**LENDER:**

PREFERRED BANK,
a California banking corporation

By: ____________________
Name: ____________________
Title: ____________________

[ALL SIGNATURES MUST BE ACKNOWLEDGED]



SEE ATTACHED NOTARIZATION

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
) ss
COUNTY OF Santa Clara )

On 4/26/2019, before me, JASON TRI NGUYEN, a Notary Public, personally appeared Deba J. Shyam., who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public [signature]

JASON TRI NGUYEN
COMM. #2132668
Notary Public - California
Santa Clara County
My Comm. Expires Nov. 5, 2019
NRO1

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
) ss
COUNTY OF Los Angeles )

On April 29, 2019, before me, Xiao Li Wells, a Notary Public, personally appeared carol Lee, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

[signature]
Notary Public

XIAO LI WELLS
Commission # 2128402
Notary Public - California
Los Angeles County
My Comm. Expires Sep 28, 2019
NNA1

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
) ss
COUNTY OF Orange )

On March 27th 2019, before me, Alex Barsoum, a Notary Public, personally appeared Andrew Stupin, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

[signature]
Notary Public

ALEX BARSOUM
COMM...2253072
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Term Exp. August 7, 2022

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
) ss
COUNTY OF ____________________ )

On ____________________, before me, ____________________________, a Notary Public, personally appeared ________________________________, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

________________________________
Notary Public

**EXHIBIT "A"**
LEGAL DESCRIPTION

The land situated in the City of Pasadena, County of Los Angeles, State of California, and described as follows:

PARCEL 1:

LOT 10 OF TRACT NO. 63103, IN THE CITY OF PASADENA, AS PER MAP RECORDED IN BOOK 1369 PAGES 35 THROUGH 52 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AMENDED PURSUANT TO THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED DECEMBER 3, 2013 AS INSTRUMENT NO. 20131708591 OF OFFICIAL RECORDS.

PARCEL 2:

A RECIPROCAL ACCESS EASEMENT OVER THOSE AREAS SET OUT ON THE MAP SHOWN ABOVE.

PARCEL 3:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN CONSOLIDATED AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (SOUTH ORANGE GROVE PARCELS) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716500 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 4:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN ROSE PARADE GRANDSTAND EASEMENT AGREEMENT (ORANGE GROVE AVENUE) RECORDED JULY 21, 2005 AS INSTRUMENT NOS. 05-1721787 AND 05-1721788 BOTH OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 5:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING GARAGE EASEMENT AGREEMENT RECORDED JULY 2, 2007 AS INSTRUMENT NO. 20071579026 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 6:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING EASEMENT AGREEMENT RECORDED DECEMBER 28, 2011 AS INSTRUMENT NO. 20111763712 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

APN: 5713-013-057

**This page is part of your document - DO NOT DISCARD**

**20190487920**

**Pages:**
**0010**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**05/29/19 AT 08:00AM**

| | |
|---|---|
| FEES: | 84.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 84.00 |

LEADSHEET

201905290180003

**00016662646**

009850895

**SEQ:**
**02**

SECURE - 8:00AM

**THIS FORM IS NOT TO BE DUPLICATED**

E400070

833699-E

FOR REFERENCE ONLY: 20190487920

**RECORDING REQUESTED BY:**

**WHEN RECORDED MAIL DOCUMENT TO:**
PREFERRED BANK
601 S. FIGUEROA STREET 29TH FLOOR
LOS ANGELES, CALIFORNIA 90017
ATTN: NOTE DEPARTMENT

5713-027-065

**Space Above This Line for Recorder's Use Only**

MEMORANDUM OF MODIFICATION OF DEED OF TRUST AND AMENDMENT TO LOAN DOCUMENTS
Title of Document

Pursuant to Senate Bill 2 - Building Homes and Jobs Act (GC Code Section 27388.1), effective January 1, 2018, a fee of seventy-five dollars ($75.00) shall be paid at the time of recording of every real estate instrument, paper, or notice required or permitted by law to be recorded, except those expressly exempted from payment of recording fee, per each single transaction per parcel of real property. The fee imposed by this section shall not exceed two hundred twenty-five dollars ($225.00).

( ) Recorded [concurrently] in connection with a transfer of real property subject to the imposition of Documentary Transfer Tax per GC 27388.1 (a) (2).

( ) Recorded [concurrently] in connection with a transfer of real property that is residential dwelling to an owner-occupier per GC 27388.1 (a) (2).

(XX ) Maximum fee of $225 has been reached per GC 27388.1 (a) (1).

( ) Not related to real property GC 27388.1 (a) (1).

THIS PAGE ADDED TO PROVIDE EXEMPTION INFORMATION FOR THE BUILDING HOMES AND JOBS ACT FEE (SB-2; AFFORDABLE HOUSING FEE) ($3.00 Additional recording fee applies)

Recording Requested By:
FIRST AMERICAN TITLE
National Commercial Services

AND WHEN RECORDED, MAIL TO:

PREFERRED BANK
601 S. Figueroa Street, 29th Floor
Los Angeles, California 90017
Attention: Note Department

Assessor's Parcel No. 5713-027-065

833700-E

SPACE ABOVE FOR RECORDER'S USE ONLY

**MEMORANDUM OF MODIFICATION OF DEED OF TRUST AND AMENDMENT TO LOAN DOCUMENTS**

**(244 S. Orange Grove Boulevard)**

THIS MEMORANDUM OF MODIFICATION OF DEED OF TRUST AND AMENDMENT TO LOAN DOCUMENTS ("Memorandum") is entered into as of this 25th day of March 2019, by and between PREFERRED BANK, a California banking corporation ("Lender"), on the one hand, and SDRES PARTNERS LLC, a California limited liability company ("Borrower"), and ANDREW STUPIN, an individual ("Guarantor"), on the other hand. Borrower (as successor-in-interest to Cantor Group LLC, a California limited liability company) has executed that certain Promissory Note dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "Note"), in favor of Lender, evidencing a loan made by Lender to Borrower in the maximum principal amount of Eight Million Four Hundred Thousand and No/100 Dollars ($8,400,000.00) (the "Loan"), which Note is being amended and restated in its entirety by that certain Amended and Restated Promissory Note of even date herewith, executed by Borrower in favor of Lender, in the maximum principal amount of $8,400,000.00 (the "Amended and Restated Note"). The Amended and Restated Note is secured by, among other things, a lien on the real property more particularly described in Exhibit "A" attached hereto and incorporated herein by this reference (the "Property"), pursuant to that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated June 8, 2017 (together with any and all amendments thereto or modifications thereof, the "Deed of Trust"), executed by Borrower as trustor in favor of Lender, which was recorded on June 16, 2017, as Instrument No. 20170671625 of Official Records of Los Angeles County, California. Lender, Borrower and Guarantor have entered into that certain Modification of Deed of Trust and Amendment to Loan Documents dated as of March 25, 2019 ("Modification"), pursuant to which Lender, among other things, has agreed to (i) modify the interest rate and the repayment terms under the Note, as evidenced by, among other things, the Amended and Restated Note, (ii) permit Borrower to subdivide the Property into two or more parcels and to sell any such parcels to third parties, and (iii) make certain other modification to the Deed of Trust and other Loan Documents (as defined in the Modification).

The Deed of Trust is hereby modified such that paragraph (1) under the heading "FOR THE PURPOSE OF SECURING" on page 4 of the Deed of Trust is hereby deleted and replaced with the following:

"(1) Payment of the sum of Eight Million Four Hundred Thousand and No/100 Dollars ($8,400,000.00), together with interest thereon and certain additional costs and expenses related to or incurred in connection with or as provided in that certain Amended and Restated Promissory Note dated March 25, 2019 (the "Note") executed by Trustor, payable to Lender, or order, and all extensions, modifications or renewals thereof (including, without limitation, any extension, modification, or renewal of the Note at a different rate of interest or on different terms), which Note amended and restated in its entirety that certain Promissory Note dated June 8, 2017, in the maximum principal amount of $8,400,000.00, executed by Trustor (as successor-in-interest to Cantor Group LLC, a California limited liability company) in favor of Lender."

This Memorandum is intended to make a matter of public record the execution of the Modification, which Modification, inter alia, revises the terms of the repayment of Borrower to pay the obligations evidenced by the Note and Deed of Trust. This Memorandum is not intended to set forth all the terms and conditions thereof, for which reference is made to the Modification. This Memorandum may be executed and delivered in two or more counterparts, each of which, when so executed and delivered, shall be an original, and such counterparts together shall constitute but one and the same instrument and agreement, and this Memorandum shall not be binding on any party until all parties have executed it.

[Signature page to follow.]

IN WITNESS WHEREOF, this Memorandum is executed by Lender, Borrower and Guarantor as of the day and year first above written.

**BORROWER:**

SDRES PARTNERS LLC,
a California limited liability company

By: Cantor Group LLC
a California limited liability company
Its: Managing Member

See Attached Acknowledgment → 4/26/2019
Jurat

By: ______________________
Name: Deba Shyam
Its: General Manager

**GUARANTOR:**

______________________
ANDREW STUPIN, an individual

**LENDER:**

PREFERRED BANK,
a California banking corporation

By: ______________________
Name: Caro Lee
Title: VP

[ALL SIGNATURES MUST BE ACKNOWLEDGED]

IN WITNESS WHEREOF, this Memorandum is executed by Lender, Borrower and Guarantor as of the day and year first above written.

**BORROWER**:

SDRES PARTNERS LLC,
a California limited liability company

By: Cantor Group LLC
a California limited liability company
Its: Managing Member

By: ________________________
Name: Deba Shyam
Its: General Manager

**GUARANTOR**:

________________________
ANDREW STUPIN, an individual

**LENDER**:

PREFERRED BANK,
a California banking corporation

By: ________________________
Name: ________________________
Title: ________________________

[ALL SIGNATURES MUST BE ACKNOWLEDGED]



SEE ATTACHED
NOTARIZATION

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
) ss
COUNTY OF Santa Clara )

On 4/26/2019, before me, JASON TRI NGUYEN, a Notary Public, personally appeared Shyam, Deba J., who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

[signature]
Notary Public

JASON TRI NGUYEN
COMM. #2132668
Notary Public - California
Santa Clara County
My Comm. Expires Nov. 5, 2019

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
) ss
COUNTY OF Los Angeles )

On April 29, 2019, before me, Xiao Li Wells, a Notary Public, personally appeared Carol Lee, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

[signature]
Notary Public

XIAO LI WELLS
Commission # 2128402
Notary Public - California
Los Angeles County
My Comm. Expires Sep 28, 2019

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
) ss
COUNTY OF Orange )

On March 27th 2019, before me, Alex Barsoum, a Notary Public, personally appeared Andrew Stepin, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public

ALEX BARSOUM
COMM...2253072
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Term Exp. August 7, 2022

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
) ss
COUNTY OF ____________________ )

On ____________________, before me, ____________________________, a Notary Public, personally appeared __________________________________, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

______________________________
Notary Public

**EXHIBIT "A"**
LEGAL DESCRIPTION

The land situated in the City of Pasadena, County of Los Angeles, State of California, and described as follows:

PARCEL 1:

LOT 12 OF TRACT NO. 63103, IN THE CITY OF PASADENA, AS PER MAP RECORDED IN BOOK 1369 PAGES 35 THROUGH 52 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AMENDED PURSUANT TO THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED DECEMBER 3, 2013 AS INSTRUMENT NO. 20131708591 OF OFFICIAL RECORDS.

PARCEL 2:

A RECIPROCAL ACCESS EASEMENT OVER THOSE AREAS SET OUT ON THE MAP SHOWN ABOVE.

PARCEL 3:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN CONSOLIDATED AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (SOUTH ORANGE GROVE PARCELS) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716500 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 4:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (DEL MAR PARCEL) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716499 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 5:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN ROSE PARADE GRANDSTAND EASEMENT AGREEMENT (ORANGE GROVE AVENUE) RECORDED JULY 21, 2005 AS INSTRUMENT NOS. 05-1721787 AND 05-1721788 BOTH OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 6:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING GARAGE EASEMENT AGREEMENT RECORDED JULY 2, 2007 AS INSTRUMENT NO. 20071579026 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 7:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING EASEMENT AGREEMENT RECORDED DECEMBER 28, 2011 AS INSTRUMENT NO. 20111763712 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

APN: 5713-027-065

# Exhibit N

# PAYMENT DEFERRAL AGREEMENT AND LIMITED WAIVER

This Payment Deferral Agreement and Limited Waiver (the "Agreement"), is made as of May 20, 2020, and effective as of May 8, 2020, by and between SDRES PARTNERS LLC, a California limited liability company ("Borrower"), and PREFERRED BANK, a California banking corporation ("Lender"), with reference to the following:

## RECITALS

A. On or about June 8, 2017, Lender made a loan in the original maximum principal amount of Eight Million Four Hundred Thousand and No/100 Dollars ($8,400,000.00) (the "Loan") to Borrower (as successor-in-interest to Cantor Group LLC, a California limited liability company) pursuant to that certain Loan Agreement dated as of June 8, 2017 (together with any and all amendments thereto or modifications thereof, the "Loan Agreement"), which Loan is evidenced by, among other things, that certain Promissory Note dated June 8, 2017, in the original principal amount of Eight Million Four Hundred Thousand and No/100 Dollars ($8,400,000.00), executed by (as successor-in-interest to Cantor Group LLC, a California limited liability company) in favor of Lender (together with any and all amendments thereto or modifications thereof, the "Original Note"), which Original Note was amended and restated in its entirety pursuant to that certain Amended and Restated Promissory Note dated as of March 25, 2019, in the maximum principal amount of $8,400,000.00, executed by Borrower in favor of Lender (together with any and all amendments thereto or modifications thereof, the "Note") in connection with that certain Modification of Deed of Trust and Amendment to Loan Documents dated as of March 25, 2019 (the "Modification"), by and among Lender, Borrower and Andrew Stupin, an individual. The Loan Agreement, the Note, the Modification and all other documents evidencing, securing and/or guarantying the Loan are collectively referred to herein as the "Loan Documents".

B. The Loan Agreement, the Note, the Modification and each of the other Loan Documents are valid, binding and enforceable in accordance with their terms, and Borrower does not have any defense, claim or offset to its obligations to Lender under the Loan Agreement, the Note, the Modification and the other Loan Documents.

C. As of May 20, 2020, the unpaid principal balance of the Loan under the Note is $8,224,824.34, plus accrued and unpaid interest owing to Lender under the Note.

D. The paragraph of the Note entitled "PRINCIPAL AND INTEREST PAYMENTS" provides, among other things, as follows: "Interest shall be due and payable monthly, in arrears, based upon the actual number of days elapsed for that monthly period, commencing on February 8, 2019, and shall continue to be due and payable, in arrears, on the same day of each calendar month thereafter until the Maturity Date (as hereinafter defined). In addition to the payment of interest, as set forth above, commencing on February 8, 2021, and continuing on the same day of each and every calendar month thereafter through the Maturity Date, Borrower shall pay to Lender a monthly installment payment of principal in an amount equal to $9,838.13."

E. Borrower has represented and warranted to Lender that it has been adversely impacted by COVID-19 and has experienced financial hardship as a result of this impact, making it difficult for Borrower to meet its payment obligations as and when due under the Loan Agreement, the Note, the Modification and the other Loan Documents.

F. To alleviate this hardship, Borrower has requested that Lender agree to temporarily defer the monthly payments of interest required under the Note, and in an effort to accommodate Borrower, Lender hereby agrees to Borrower's request on the terms and conditions more particularly set forth below.

G. In addition, Borrower has failed to maintain a Debt Service Coverage Ratio (as defined in the Loan Agreement) of not less than 1.25 to 1.00 for the calendar year ending December 31, 2019, as required pursuant to Section 4.23 of the Loan Agreement (the "Existing Default"). As a result of the Existing Default, Lender has the right to, among other things, declare the Loan in default. Notwithstanding the foregoing, Borrower has requested that Lender waive the Existing Default, and Lender is willing to also agree to said request, subject to the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the premises set forth above and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

**AGREEMENT**

1. Recitals; Defined Terms. The Recitals are incorporated herein by this reference. Borrower agrees and acknowledges that the factual information recited above is true and correct. All capitalized terms not expressly defined herein shall have the meanings ascribed to them in the Note.

2. Payment Deferral. Beginning with the Loan payment due on May 8, 2020, Borrower's regularly scheduled monthly payments of interest due under the Note for a period of two (2) months through and including the payment due on June 8, 2020 (the "Payment Deferral Period") shall be deferred in its entirety until the earlier to occur of the full repayment of the Loan or the entire balance of the Loan becoming due and payable, whether as a result of maturity or otherwise; provided, that the amount of interest deferred during the Payment Deferral Period shall be paid to Lender pursuant to Paragraph 3 below. Upon the end of the Payment Deferral Period and beginning with the Loan payment due on July 8, 2020, all payments due and owing under the Note shall revert back to the payment terms in effect directly prior to the Payment Deferral Period, as set forth in the Note (and described in Recital D above).

3. Accrued and Unpaid Interest during the Payment Deferral Period. Borrower hereby acknowledges and agrees that all interest that accrues and remains unpaid ("Deferred Interest") under the Note during the Payment Deferral Period shall not be capitalized or added to the principal balance of the Loan, but instead shall be paid from the regularly scheduled monthly principal and interest payments required under the Note received by Lender ("Monthly P&I Payments") beginning with the Loan payment due on February 8, 2021. Until such time as the entire Deferred Interest has been paid in full, Lender shall apply the Monthly P&I Payments received by Lender as follows: (i) first, to pay any and all Deferred Interest owing to Lender, (ii)

second, to pay any and all interest due, owing and accrued under the Note, and (iii) third, to pay down the outstanding principal balance under the Note.

4. Maturity Date. The maturity date of the Loan is not being extended as a result of the Payment Deferral Period.

5. Limited Waiver of Existing Default. Subject to Borrower's and Guarantor's execution of this Amendment and the payment of any fees and costs incurred by Lender pursuant to Section 6 below, Lender hereby agrees to waive the Existing Default. The waiver of the Existing Default granted in this Section 5 is expressly limited to the Existing Default, and such waiver shall not constitute, nor shall it be deemed to constitute, (i) a waiver by Lender of any other past, existing or future breach or default by Borrower or Guarantor, or any of them, of or under any of the terms, covenants, conditions or provisions of any of the Loan Documents, or (ii) a waiver of Lender's right to insist upon strict compliance with each term, covenant, condition and provision of each and all of the Loan Documents.

6. Priority of Lender's Security Interests; Fees and Costs. Borrower agrees to fully cooperate with Lender in connection with obtaining any title insurance and any other action that may be undertaken by Lender in connection with this Agreement that Lender determines is or may be necessary to preserve the validity and/or priority of Lender's liens and/or security interests securing the Loan. Borrower further acknowledges and agrees that Borrower shall be responsible for any and all fees, costs and expenses (including attorneys' fees) incurred by Lender in connection with this Agreement and the foregoing, which shall be due and payable by Borrower to Lender as a condition precedent to the effectiveness to this Agreement.

7. Reservation of Rights. Borrower hereby acknowledges and agrees that the Payment Deferral Period is granted by Lender on a one-time basis and that Lender reserves the right to withhold its consent to any future request that Lender provide payment deferral or other forms of relief or accommodation. Nothing herein shall be construed as a waiver of Lender's right to strictly enforce the terms of the Loan Agreement, the Note and the other Loan Documents in the event of a default under this Agreement or, except for the Payment Deferral Period provided in this Agreement, any other event of default under the Loan Agreement or the other Loan Documents. Additionally, if any Event(s) of Default (as defined in the Loan Agreement) now exist or hereafter arise, Lender's execution of this Agreement is not intended to be, nor shall the same be deemed to constitute, a waiver thereof (except for the limited one-time waiver of the Existing Default subject to Section 5 above), and Lender reserves any and all rights and remedies that it may have in respect of the same, and may exercise such rights whether or not the Payment Deferral Period is still in effect.

8. Continuing Validity. Borrower acknowledges and agrees that, except as otherwise expressly provided in this Agreement, all terms, conditions and provisions of the Loan Agreement, the Note and the other Loan Documents shall continue in full force and effect, and remain unaffected and unchanged. Without limiting the generality of the foregoing, Borrower acknowledges and agrees that (i) except as expressly provided in Paragraph 2 above, there shall be no deferral or extension of the due dates of any monthly principal and/or interest payments, and (ii) the Maturity Date of the Loan shall not be extended, delayed or otherwise affected by this Agreement. This Agreement in no way acts as a release or relinquishment of, and in no way

affects, the liens, security interests and rights created by or arising under the Loan Agreement, the Note and the other Loan Documents, or the priority thereof. Such liens, security interests and rights are hereby ratified, confirmed, renewed and extended in all respects. The Loan Agreement, the Note and the other Loan Documents, any other security for payment of the Note and/or any other Loan Document, and all rights, remedies, titles, liens and equities securing the Note as hereby modified, and/or any other Loan Document, and the indebtedness represented thereby are hereby recognized, renewed, extended and continued in full force and effect for the benefit of the holder of the Note and the indebtedness evidenced thereby. Except as specifically set forth in this Agreement, all rights and remedies of Lender are reserved.

9. Release. In consideration of Lender's agreement to enter into this Agreement, Borrower hereby agrees as follows:

a. Borrower, on behalf of itself, its general partners, its limited partners, its members, its shareholders, its directors, its officers, its affiliates and its and their successors and assigns (collectively the "Releasing Parties"), hereby releases and forever discharges Lender and all of its subsidiaries, affiliates, officers, directors, employees, agents, attorneys, advisors, and its and their successors and assigns (collectively the "Released Parties") from any and all claims, demands, debts, liabilities, contracts, obligations, accounts, torts, causes of action or claims for relief of whatever kind or nature, whether known or unknown, whether suspected or unsuspected, which the Releasing Parties may have or which may hereafter be asserted or accrue against Released Parties, or any of them, resulting from or in any way relating to any act or omission done or committed by Released Parties, or any of them, arising directly or indirectly out of the Loan, the Loan Agreement, the Note and/or the other Loan Documents, the transactions evidenced or contemplated thereby, the approval, the origination, the funding and the closing of the Loan; the review, approval, or disapproval of any and all documents, instruments, insurance and all other items submitted to Lender in connection with the Loan; the disbursements of funds under the Loan; the modification of the Loan made pursuant to this Agreement; Lender's acts, statements, conduct, representations and omissions made in connection with the modification of the Loan, including, without limitation, the terms and conditions of this Agreement; any fact, matter, transaction or event relating thereto; or the relationships existing or transactions or dealings occurring between Lender and Releasing Parties up to and as of the date of this Agreement (the "Claims").

b. The release described in the immediately preceding paragraph and in this paragraph applies to all Claims which the Releasing Parties have or which may hereafter arise against the Released Parties, or any of them, as a result of acts or omissions occurring before the date of this Agreement, whether or not known or suspected by the Parties hereto. Releasing Parties expressly acknowledge that, although it may be that ordinarily a general release does not extend to claims which the releasing party does not know or suspect to exist in his favor, which if known by him must have materially affected his settlement with the party released, Releasing Parties have carefully considered and taken into account in determining to enter into this Agreement the possible existence of such unknown losses or Claims.

c. Without limiting the generality of the foregoing, Releasing Parties expressly waive any and all rights conferred upon them by any statute or rule of law which provides that a release does not extend to claims which the releasing party does not know or

suspect to exist in the releasing party's favor at the time of executing the release, which if known by the releasing party must have materially affected the releasing party's settlement with the released party. Further, Releasing Parties each acknowledge and waive the benefits of California Civil Code Section 1542, and any ordinances or statutory, regulatory, or judicially created laws or rules of any applicable jurisdiction which may provide, in substantive part, that:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

d. This release by Releasing Parties shall constitute a complete defense to any claim, cause of action, defense, contract, liability, indebtedness, obligation, liability, claim or cause of action exists which is within the scope of those hereby released. Releasing Parties hereby acknowledge that they has not relied upon any representation of any kind made by Lender in making the foregoing release.

10. This Agreement One of the Loan Documents. From and after the date hereof, this Agreement is and shall be deemed one of the Loan Documents. An event of default under this Agreement shall constitute an Event of Default (as defined in the Loan Agreement) under the Loan Agreement, the Note and each of the other Loan Documents.

11. Termination. Either party may terminate this Agreement upon written notice of termination to the other party. Upon termination of this Agreement, the Payment Deferral Period shall automatically cease and be of no further force or effect, all payments due and owing under the Note shall revert back to the payment terms in effect directly prior to the Payment Deferral Period, and Borrower shall remain obligated for payment of any and all fees, costs and/or expenses incurred by Lender in connection with this Agreement as provided above.

12. General. Borrower shall execute such additional documents as Lender may require to fully effectuate the intent of this Agreement. If any action, suit or other proceeding is brought to enforce the obligations of Borrower under this Agreement, Lender shall be entitled to receive all of its costs and expenses of suit, including attorneys' fees, incurred in each and every such action, suit or other proceeding, including any and all appeals or petitions therefrom. As used in this Agreement, attorneys' fees shall mean the full and actual cost of any legal services actually performed in connection with the matters involved, calculated on the basis of the usual fee charged by the attorneys performing such services, and may also include the allocable fees and costs of in-house counsel, and shall not be limited to "reasonable attorneys' fees" as defined in any statute or rule of court. This Agreement shall be governed by, and interpreted in accordance with, the laws of the State of California (however, not to the exclusion of any applicable Federal law), without regard to state statutes or judicial decisions regarding choice of law questions.

13. Counterparts. This Agreement may be executed in counterparts, each of which, when so executed, shall be deemed an original, but all such counterparts, taken together, shall constitute one and the same instrument. Delivery of an executed counterpart of this Agreement by telefacsimile or electronically shall be equally as effective as delivery of a manually executed counterpart of this Agreement.

*[Signature page(s) to follow.]*

**PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT AND BORROWER AGREES TO THE TERMS OF THIS AGREEMENT. THIS AGREEMENT IS ENTERED INTO BY BORROWER AND LENDER AS OF THE DATE FIRST ABOVE WRITTEN.**

**BORROWER**:

SDRES PARTNERS LLC,
a California limited liability company

By: Cantor Group LLC
a California limited liability company
Its: Managing Member

By: ______________________
Name: Deba Shyam
Its: General Manager

[Lender's signature to follow.]

**LENDER:**

**PREFERRED BANK,**
**a California banking corporation**

By: ______________________
Name: Carol Lee
Its: FVP

## CONSENT AND REAFFIRMATION OF GUARANTORS AND PLEDGORS

This Consent and Reaffirmation of Guarantors and Pledgors (this "Consent") is dated as of May 20, 2020.

The undersigned (the "Guarantor") is a guarantor of, and/or pledgor of collateral for (or with respect to), the obligations of SDRES PARTNERS LLC, a California limited liability company ("Borrower"), to PREFERRED BANK, a California banking corporation ("Lender"), under the Loan Agreement, the Note and the other Loan Documents. Guarantor hereby (i) acknowledges and consents to the Payment Deferral Agreement and Limited Waiver between Borrower and Lender, to which this Consent is attached (the "Agreement"), (ii) reaffirms his obligations under his guaranty in favor of the Lender and/or under any agreement under which he has granted to the Lender a lien or security interest in any of his real or personal property, (iii) acknowledges and consents to the Agreement and agrees to be bound by and hereby joins in the general release in favor of Lender set forth in Paragraph 9 of the Agreement, which is hereby incorporated by this reference as though fully set forth herein, and agrees that the Guarantor shall be a Releasing Party thereunder, and (iv) confirms that such guaranty and other agreements, including but not limited to any jury trial waivers and judicial reference provisions contained in the Loan Agreement, the Note and the other Loan Documents, remain in full force and effect, without defense, offset, or counterclaim. (All capitalized terms not expressly defined in this Consent shall have the meanings ascribed to them in the Agreement.)

Although the undersigned has been informed of the terms of the Agreement, the undersigned understands and agrees that Lender has no duty to so notify him or any other guarantor/pledgor or to seek this or any future acknowledgment, consent or reaffirmation, and nothing contained in the Agreement or in this Consent shall create or imply any such duty as to any transactions, past or future.

*[Signature page(s) to follow]*

The undersigned Guarantor has executed this Consent as of the date first above written.

**GUARANTOR:**

______________________________
ANDREW STUPIN, an individual

PREFERRED BANK

# Certification Regarding Beneficial Owner(s) and Controlling Person of Legal Entity Customers

GENERAL INSTRUCTIONS

**What is this form?**

To help the government fight financial crime, federal regulation requires certain financial institutions to obtain, verify, and record information about the beneficial owners of legal entity customers. Legal entities can be abused to disguise involvement in terrorist financing, money laundering, tax evasion, corruption, fraud, and other financial crimes. Requiring the disclosure of key individuals who ultimately own or control a legal entity (i.e., the beneficial owners) helps law enforcement investigate and prosecute these crimes.

**Who has to complete this form?**

This form must be completed by the person opening a new account on behalf of a legal entity with any of the following U.S. financial institutions: (i) a bank or credit union; (ii) a broker or dealer in securities; (iii) a mutual fund; (iv) a futures commission merchant; or (v) an introducing broker in commodities.

For the purposes of this form, a legal entity includes a corporation, limited liability company, or other entity that is created by a filing of a public document with a Secretary of State or similar office, a general partnership, and any similar business entity formed in the United States or a foreign country. Legal entity does not include sole proprietorships, unincorporated associations, or natural persons opening accounts on their own behalf.

**What information do I have to provide?**

This form requires you to provide the name, address, date of birth and Social Security number (or passport number or other similar information, in the case of foreign persons) for the following individuals (i.e., the beneficial owners and controlling person):

i. Each individual, if any, who owns, directly or indirectly, 25 percent or more of the equity interests of the legal entity customer (e.g., each natural person that owns 25 percent or more of the shares of a corporation); **and**
ii. An individual with significant responsibility for managing the legal entity customer (e.g., a Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, Managing Member, General Partner, President, Vice President, or Treasurer)

The number of individuals that satisfy this definition of "beneficial owner" may vary. Under section (D), depending on the factual circumstances, up to four individuals (but as few as zero) may need to be identified. Regardless of the number of individuals identified under section (D), you must provide the identifying information of one individual under section (E). It is possible that in some circumstances the same individual might be identified under both sections. Thus, a completed form will contain the identifying information of at least one individual (under section (E)), and up to five individuals (i.e., one individual under section (E) and four 25 percent equity holders under section (D)).

We may also ask to see a copy of a driver's license or other identifying document for each beneficial owner listed on this form.

PREFERRED BANK

# Certification Regarding Beneficial Owner(s) and Controlling Person of Legal Entity Customers

**Exemption List**

Review the list of entity types below for Beneficial Ownership exemptions

**(If items 1-9 are applicable to entity, COMPLETE B and C by Preferred Bank employee)**

1. Regulated Domestic Financial Institutions, including their holding companies
2. US & US State government entities
3. US publicly traded companies and subsidiaries
4. Securities and Exchange Commission (SEC) registered issuers of securities
5. Exchanges and Clearing Services
6. Securities and Exchange (SEC) Registered investment companies
7. Securities and Exchange (SEC) Registered investment advisors
8. Securities and Exchange (SEC) Registered entities
9. Commodity Futures Trading Commission (CFTC) registered entities

**(If items 10-20 are applicable to entity, COMPLETE sections A, B, C and F by customer)**

10. Sole Proprietorship
11. Unincorporated Associations (such as scout troops or youth sport leagues, etc.)
12. Registered public accounting firms
13. Trusts (non-statutory)
14. Estates
15. US State registered insurance companies
16. Financial Market Utilities
17. Non-US government agency engaged in US government activity only (non-commercial), e.g. Federal Reserve Board
18. Pooled investment vehicle operated or advised by a regulated domestic financial institution
19. Any legal entity whose sole relationship with Preferred Bank is to finance the insurance premiums and for which payments are remitted directly by the financial institution to the vendor or lessor of this equipment, without possibility of cash refund.
20. Any legal entity whose sole relationship with Preferred Bank is to finance the purchase or leasing of equipment and for which payments are remitted directly by the financial institution to the vendor or lessor of this equipment, without possibility of cash refund.

**(If items 21-22 are applicable to entity, COMPLETE sections A, B, C, E and F by customer)**

21. Pooled investment vehicle NOT operated or advised by a regulated domestic financial institution
22. Charities and Non-Governmental Organization (NGOs) that are 501c registered

For all other entities that do not fall under the exemption list above, complete all applicable sections as described.

PREFERRED BANK

## Certification Regarding Beneficial Owner(s) and Controlling Person of Legal Entity Customers

**A. Person Certifying Form:**

| | | | |
|---|---|---|---|
| Full Name | DEBA SHYAM | | |
| Date of Birth | 9/13/72 | Title | Manager |

**B. Legal Entity Information:**

| | |
|---|---|
| Full Name | SDRES PARTNERS LLC |
| Address (Physical) | 520 Newport Center Drive, Suite 480 |
| | Newport Beach, CA 92660 |

**C. Exemptions:**

The following information pertains to each individual, if any, who, directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, owns 25 percent or more of the equity interests of the legal entity.

If no individual meets this definition, please check "Beneficial Owner Not Applicable" below.

☒ Beneficial Owner Not Applicable Exemption Type: ______________________

**D. Beneficial Owners**

| **Beneficial Owner 1 Information** | | |
|---|---|---|
| Individual Name: | Taxpayer Identification #: | |
| Ownership Percentage: % | Date of Birth: | |
| Address: | | |
| City, State, Zip Code: | | |
| ID Type: | ID #: | Issue Date: |
| Issuing State/Country: | Expiration Date: | |

# Certification Regarding Beneficial Owner(s) and Controlling Person of Legal Entity Customers

| **Beneficial Owner 2 Information** | | |
|---|---|---|
| Individual Name: | Taxpayer Identification #: | |
| Ownership Percentage: % | Date of Birth: | |
| Address: | | |
| City, State, Zip Code: | | |
| ID Type: | ID #: | Issue Date: |
| Issuing State/Country: | Expiration Date: | |

| **Beneficial Owner 3 Information** | | |
|---|---|---|
| Individual Name: | Taxpayer Identification #: | |
| Ownership Percentage: % | Date of Birth: | |
| Address: | | |
| City, State, Zip Code: | | |
| ID Type: | ID #: | Issue Date: |
| Issuing State/Country: | Expiration Date: | |

| **Beneficial Owner 4 Information** | | |
|---|---|---|
| Individual Name: | Taxpayer Identification #: | |
| Ownership Percentage: % | Date of Birth: | |
| Address: | | |
| City, State, Zip Code: | | |
| ID Type: | ID #: | Issue Date: |
| Issuing State/Country: | Expiration Date: | |

PREFERRED BANK

# Certification Regarding Beneficial Owner(s) and Controlling Person of Legal Entity Customers

**E. Controlling Person**

The following information for one individual with significant responsibility for managing the legal entity listed above, such as:

a. An executive officer or senior manager (e.g. Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, Managing Member, General Partner, President, Vice President, Treasurer); or
b. Any other individual who regularly performs similar functions.

| **Individual with Control Information** | | | |
|---|---|---|---|
| Individual Name: Deba Shyam | | Taxpayer Identification #: | |
| Business Title: Manager | | Date of Birth: 9/13/72 | |
| Address: 564 Monterey Terrace | | | |
| City, State, Zip Code: Sunnyvale, CA, 94049 | | | |
| ID Type: DL | ID #: D8616678 | | Issue Date: 9/6/16 |
| Issuing State/Country: CA/USA | | Expiration Date: 9/13/21 | |

**F. Certification**

**Certify/Agreed To:**

**I,** DEBA SHYAM **(name of person opening account), hereby certify, to the best of my knowledge, that the information provided above is complete and correct.**

| Signature: [signature] | Date: 5/27/20 |
|---|---|

# Exhibit O

**EXTENSION AGREEMENT**

THIS EXTENSION AGREEMENT (this "Extension Agreement") is entered into as of May 24, 2022, by and between by and between SDRES PARTNERS LLC, a California limited liability company ("Borrower"), and ANDREW STUPIN, an individual ("Guarantor"), on the one hand, and PREFERRED BANK, a California banking corporation ("Lender"), on the other hand.

**RECITALS**

A. Lender has made a loan (the "Loan") to CANTOR GROUP LLC, a California limited liability company ("Original Borrower"), for the purpose of financing Original Borrower's acquisition of the Property (as hereinafter defined). The Loan was and is evidenced, in part, by that certain Promissory Note dated June 8, 2017, in the original principal amount of Eight Million Four Hundred Thousand and No/100 Dollars ($8,400,000.00), executed by Original Borrower in favor of Lender (together with any and all amendments and extensions thereto or modifications thereof, the "Original Note").

B. In connection with the Loan, Original Borrower also executed and delivered to and in favor of Lender, the following additional documents, among others:

1. Loan Agreement dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "Loan Agreement"), executed by and between Original Borrower and Lender;

2. Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "210 Orange Grove Deed of Trust"), executed by Original Borrower as trustor in favor of Lender, which was recorded on June 16, 2017, as Instrument No. 20170671620, in the Official Records of Los Angeles County, California, encumbering the real property more commonly known as 210 South Orange Grove, Pasadena, California, and more particularly described in Exhibit "A-1" attached hereto and incorporated herein by this reference ("210 Orange Grove Property");

3. Absolute Assignment of Leases, Lease Guaranties, Rents, Issues and Profits dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "210 Orange Grove Assignment of Leases"), executed by Original Borrower in favor of Lender, which was recorded on June 16, 2017, as Instrument No. 20170671621, in the Official Records of Los Angeles County, California;

4. Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "244 Orange Grove Deed of Trust" and together with the 210 Orange Grove Property, individually and collectively, the "Deed of Trust"), executed by Original Borrower as trustor in favor of Lender, which was recorded on June 16, 2017, as Instrument No. 20170671625, in the Official Records of Los Angeles County, California, encumbering the real property more commonly known as 244 South Orange Grove, Pasadena, California, and more particularly described in Exhibit "A-2" attached hereto and incorporated herein by this reference

(the "244 Orange Grove Property", and together with the 210 Orange Grove Property, individually and collectively, the "Property");

5. Absolute Assignment of Leases, Lease Guaranties, Rents, Issues and Profits dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "244 Orange Grove Assignment of Leases" and together with the 210 Orange Grove Assignment of Leases, individually and collectively, the "Assignment of Leases"), executed by Original Borrower in favor of Lender, which was recorded on June 16, 2017, as Instrument No. 20170671626, in the Official Records of Los Angeles County, California; and

6. Hazardous Substances Indemnity Agreement dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "Indemnity Agreement"), executed by Original Borrower and Guarantor in favor of Lender, and covering the Property.

C. Payment and performance of Borrower's indebtedness and obligations in connection with the Loan was and is guaranteed by Guarantor, who delivered to and in favor of Lender a Continuing Guaranty dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "Guaranty").

D. Pursuant to that certain Assumption Agreement dated June 8, 2017, by and among Original Borrower, Guarantor and Borrower, and a Memorandum of Assumption Agreement dated June 8, 2017, recorded in connection with each Property (collectively, the "Assumption Documents"), Lender consented to a transfer of one hundred percent (100%) of Original Borrower's right, title and interest in and to each Property to Borrower, and Borrower's assumption of any and all of Original Borrower's indebtedness and obligations to Lender under and in connection with the Loan Agreement, Original Note, Deed of Trust, Assignment of Leases, Indemnity Agreement and any and all other instruments, agreements and/or documents executed by Original Borrower in connection therewith.

E. On or about March 25, 2019, Borrower, Guarantor and Lender entered into that certain Modification of Deed of Trust and Amendment to Loan Documents dated as of March 25, 2019 (the "Modification"), whereby, among other things, (i) the interest rate and the repayment terms under the Original Note were modified pursuant to that certain Amended and Restated Promissory Note dated March 25, 2019, in the maximum principal amount of $8,400,000.00, executed by Borrower in favor of Lender (the "Note"), which Note amended and restated the Original Note in its entirety, and (ii) Borrower was permitted to subdivide the Property into two or more parcels and to sell any such parcels to third parties subject to the terms and conditions more particularly described therein.

F. On or around May 20, 2020, Borrower, Guarantor and Lender entered into that certain Payment Deferral Agreement and Limited Waiver dated May 20, 2020 (the "Payment Deferral Agreement"), whereby, among other things, beginning with the Loan payment due on May 8, 2020, Borrower's regularly scheduled monthly payments of interest under the Note was deferred in its entirety for a period of two (2) months through and including the payment due on June 8, 2020 ("Payment Deferral Period"). Beginning with the Loan payment due on July 8,

2020, all payments due and owing under the Note reverted back to the payment terms in effect directly prior to the Payment Deferral Period, as set forth in the Note.

G. Pursuant to each Deed of Trust and the Assumption Documents, Borrower granted to and in favor of Lender a first priority security interest in and lien upon certain real and personal property described in each Deed of Trust (the "Deed of Trust Collateral"), to secure, without limitation, payment and performance of the indebtedness and obligations under and in connection with the Loan and the Original Note, as amended and restated in its entirety by the Note. Lender's security interest in the Deed of Trust Collateral was and is perfected under applicable law.

H. The Note, Loan Agreement, Deed of Trust, Assignment of Leases, Indemnity Agreement, Assumption Documents, Guaranty, Modification, Payment Deferral Agreement and all other assignments, agreements, instruments and other documents executed by Borrower (and Original Borrower) or Guarantor in connection with the Loan shall at times hereinafter be referred to collectively as the "Loan Documents."

I. Borrower and Guarantor acknowledge and agree with Lender that Borrower failed to maintain a minimum Debt Service Coverage Ratio (as defined in the Loan Agreement) of not less than 1.25 to 1.00, measured as of December 31, 2021 for the immediately preceding twelve (12) consecutive calendar month period of time, pursuant to Section 4.23 of the Loan Agreement (the "2021 DSCR Covenant Violation").

J. Notwithstanding the foregoing, Borrower and Guarantor have each requested that Lender (i) waive, on a one-time only basis, the 2021 DSCR Covenant Violation, and (ii) extend the maturity date of the Note from June 8, 2022 to September 8, 2022. Lender is willing to agree to said requests, subject to the terms and conditions set forth in this Extension Agreement.

Except as may be otherwise expressly defined in this Extension Agreement, all terms used in this Extension Agreement beginning with a capital letter shall have the meanings ascribed to them in the Loan Agreement.

**AGREEMENT**

NOW, THEREFORE, for valuable consideration and the mutual promises of the parties hereto, said parties do hereby acknowledge and agree as follows:

1. <u>Recitals.</u>

The recitals are incorporated herein by this reference as are all exhibits. Borrower and Guarantor, and each of them, agree and acknowledge that the factual information recited above is true and correct.

2. Borrower and Guarantor Acknowledgment as to Obligations.

A. Borrower, and Guarantor each acknowledge, confirm and agree that as of May 19, 2022, the total outstanding principal balance of the Note is $8,137,096.80 plus accrued and unpaid interest thereon.

B. Borrower and Guarantor, and each of them, specifically acknowledge and confirm that they do not have any valid offset or defense to the obligations, indebtedness and liability under the Loan Documents.

3. Reaffirmation of Obligations.

This Extension Agreement is, in part, a reaffirmation of the obligations, indebtedness and liability of Borrower and Guarantor, and each of them, to Lender as evidenced by the Loan Documents. Therefore, Borrower and Guarantor, and each of them, acknowledge and agree that, except as specified herein, all of the terms and conditions of the Loan Documents are and shall remain in full force and effect, without waiver or modification of any kind whatsoever, and are ratified and confirmed in all respects.

4. Extension of Maturity Date; Limited Waiver.

A. The Maturity Date is hereby extended to September 8, 2022, at which time the entire principal balance under the Loan plus all accrued and unpaid interest thereon is and shall be due and payable as provided under the Loan Documents. The "Maturity Date", as defined in the Loan Agreement and referenced therein, shall hereby mean September 8, 2022.

B. Subject to Borrower's and Guarantor's complete and unconditional compliance of the terms of this Agreement and the other Loan Documents (including, without limitation, the timely and complete satisfaction of each and all of the conditions precedent set forth in Section 8 of this Extension Agreement), Lender waives, on a one-time basis only, the 2021 DSCR Covenant Violation. The waiver set forth in this Section 4(B) applies only to the 2021 DSCR Covenant Violation, and shall be effective only to the extent specifically set forth herein and shall not (i) be construed as a waiver of any breach, default or event of default other than the 2021 DSCR Covenant Violation, (ii) affect the right of Lender to demand compliance by Borrower and/or Guarantor with all terms and conditions of the Loan Documents, except as specifically waived by this Agreement, (iii) be deemed a waiver of any transaction or future action on the part of Borrower and/or Guarantor requiring Lender's consent or approval under the Loan Documents, or (iv) except as waived hereby, be deemed or construed to be a waiver or release of, or a limitation upon, Lender's exercise of any rights or remedies under any of the Loan Documents, whether arising as a consequence of any default or event of default which may now exist or otherwise, all such rights and remedies hereby being expressly reserved. In the event that another Event of Default (or event which, with the giving of notice or the passage of time, or both, would become an Event of Default) exists, such failure shall be a further Event of Default and Lender shall be entitled to exercise any and

all of its rights and remedies hereunder, under the Loan Documents and at law and/or in equity.

5. Extension Agreement as a Loan Document.

From and after the effective date of this Extension Agreement, this Extension Agreement and any other documents and instruments executed in connection herewith shall each constitute one of the "Loan Documents."

6. Effective Date of Amendment.

This Extension Agreement and the amendments provided for herein shall be effective as of June 8, 2022, upon the timely and complete satisfaction of each and all of the conditions precedent set forth in Section 8 of this Extension Agreement.

7. Borrower's and Guarantor's Representations and Warranties.

Borrower and Guarantor, and each of them, hereby represent and warrant to Lender and covenant and agree with Lender as follows:

A. Borrower and Guarantor, and each of them, have full legal right, power and authority to enter into and perform this Extension Agreement. The execution and delivery of this Extension Agreement by Borrower and the consummation by Borrower of the transactions contemplated hereby have been duly authorized by all necessary action by or on behalf of Borrower. This Extension Agreement is a valid and binding obligation of Borrower and Guarantor, and each of them, enforceable against Borrower and Guarantor in accordance with its terms.

B. Neither the execution and delivery of this Extension Agreement by Borrower and Guarantor, or any of them, nor the consummation by Borrower and Guarantor, or any of them, of the transactions contemplated hereby, conflicts with or constitutes a violation or a default under any law or regulation applicable to Borrower and Guarantor, or any of them, or any contract, commitment, agreement, arrangement or restriction of any kind to which Borrower and Guarantor, or any of them, is a party, by which Borrower and Guarantor, or any of them, is bound or to which any of Borrower's and Guarantor's, or any of their, property or assets is subject.

C. There are no actions, suits or proceedings pending, or to the knowledge of Borrower and Guarantor, or any of them, threatened against or affecting Borrower and Guarantor, or any of them, respectively, in relation to their obligations to Lender or involving the validity and enforceability of this Extension Agreement, the Note, the Loan Agreement, the Deed of Trust, the Guaranty or any of the other Loan Documents, as applicable, or the priority of any liens given by Borrower to Lender in accordance with the Note, the Loan Agreement, the Deed of Trust, and the other Loan Documents, at Law or in equity, or before or by any Governmental Agency, or which could have a material adverse effect on the financial condition, operations, properties, assets, liabilities or earnings of Borrower and Guarantor, or any of them, or the ability of Borrower and Guarantor, or any of them, to perform their respective obligations to Lender.

D. Borrower and Guarantor, and each of them, hereby reaffirm and confirm that the representations and warranties of Borrower and Guarantor, as applicable, contained in the Loan Documents are true, correct and complete in all material respects as of the date of this Extension Agreement.

E. Borrower and Guarantor, and each of them, are in full and complete compliance with the terms, covenants, provisions and conditions of the Note, the Loan Agreement, the Deed of Trust, the Guaranty and the other Loan Documents.

F. Neither Borrower nor Guarantor has any actual knowledge of any release of Hazardous Substances (as defined in the Indemnity Agreement) on the Property.

All covenants, representations and warranties of Borrower and Guarantor herein are incorporated by reference and hereby made a part of the Loan Agreement and the Guaranty, as applicable.

8. Conditions Precedent to Effectiveness of Extension Agreement.

The effectiveness of this Extension Agreement is expressly conditioned upon Borrower having, at its sole expense, deposited or caused to be deposited with Lender as of June 22, 2022, all of the following items, documents, certificates and other instruments, in form and content satisfactory to Lender and its counsel, in their sole and absolute discretion, and suitable for filing or recording as required:

A. This Extension Agreement, fully executed by Borrower and Guarantor;

B. Borrower shall have paid to Lender a nonrefundable extension fee in the total amount of $10,000.00 (the "Extension Fee") from Borrower's own funds, which Extension Fee shall be deemed fully earned when paid;

C. Borrower shall have paid to Lender the monthly installment payments of principal and interest required under the Note through and including the due date of June 8, 2022, which shall consist of a monthly principal installment of $9,838.13 plus interest each month;

D. Such additional information, assignments, agreements, certificates, reports, approvals, instruments, documents, subordination agreements, financing statements, consents and opinions as Lender may request, in its sole and absolute opinion and judgment, in connection with this Extension Agreement and/or any of the matters which are the subject of this Extension Agreement; and

E. [Intentionally omitted.]

9. General Release.

A. Except as to the obligations imposed upon Lender, as provided herein, Borrower and Guarantor, and each of them, on behalf of themselves, their respective successors and assigns, and each of them, do each hereby forever relieve, release, acquit and discharge

Lender and its predecessors, successors and assigns, and their respective past and present attorneys, accountants, insurers, representatives, affiliates, partners, subsidiaries, officers, employees, directors, and shareholders, and each of them (collectively, the "Released Parties"), from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, costs and expenses (including, but not limited to, attorneys' fees), damages, injuries, actions and causes of action, of whatever kind or nature, whether legal or equitable, known or unknown, suspected or unsuspected, contingent or fixed, which Borrower and Guarantor, or any of them, now own or hold or have at any time heretofore owned or held or may at any time hereafter own or hold against the Released Parties, or any of them, by reason of any acts, facts, transactions or any circumstances whatsoever occurring or existing through the date of this Extension Agreement, including, but not limited to, those based upon, arising out of, appertaining to, or in connection with the Recitals above, the Loan, the Loan Documents, the facts pertaining to this Extension Agreement, any collateral heretofore granted to Lender or granted in connection herewith, or to any other obligations of Borrower and/or Guarantor to Lender, all jointly and severally.

B. As to the matters released herein, Borrower and Guarantor, and each of them, expressly waive any and all rights under Section 1542 of the Civil Code of the State of California, which provides as follows:

> "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

Borrower and Guarantor, and each of them, expressly waive and release any right or benefit which they have or may have under Section 1542 of the Civil Code of the State of California, and any similar law of any state, territory, commonwealth or possession of the United States, or the United States, to the full extent that they may waive all such rights and benefits pertaining to the matters released herein. In connection with such waiver and relinquishment, Borrower and Guarantor, and each of them, acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true. Nevertheless, it is the intention of Borrower and Guarantor, and each of them, through this Extension Agreement, to fully, finally and forever release all such matters, and all claims relative thereto, which do now exist, may exist, or heretofore have existed. In furtherance of such intention, the release herein given shall be and remain in effect as a full and complete release of such matters notwithstanding the discovery or existence of any such additional or different claims or facts relative thereto.

C. In entering into the release provided for in this Extension Agreement, Borrower and Guarantor, and each of them, recognize that no facts or representations are ever absolutely certain; accordingly, Borrower and Guarantor, and each of them, assume the risk of any misrepresentation, concealment or mistake, and if Borrower and Guarantor, or any of them, should subsequently discover that any fact that they relied upon in entering into these releases was untrue, or that any fact was concealed from them, or that any understanding of the facts or of the law was incorrect, Borrower and Guarantor, and each of them, shall be not entitled to set

aside these releases by reason thereof, regardless of any claims of fraud, misrepresentation, promise made without the intention of performing it, concealment of fact, mistake of fact or law, or any other circumstances whatsoever.

D. Borrower and Guarantor, and each of them, are the sole and lawful owners of all right, title and interest in and to every claim and other matter which they purport to release herein, and they have not heretofore assigned or transferred, or purported to assign or transfer to any person or any entity claims or other matters herein released. Borrower and Guarantor, and each of them, shall indemnify, defend and hold Lender and each of the other Released Parties, harmless from and against any claims, liabilities, actions, causes of action, demands, injuries, costs, and expenses (including, but not limited to, attorneys' fees), based upon or arising in connection with any such prior assignment or transfer, or any such purported assignment or transfer, or any claims or other matters released herein.

10. Revival of Obligation.

A. Borrower and Guarantor, and each of them, acknowledge and agree that in the event that the payment of money, this Extension Agreement, or the grant of collateral should for any reason subsequently be declared to be "fraudulent" within the meaning of any state, federal or foreign law relating to fraudulent conveyances, preferential or otherwise voidable or recoverable, in whole or in part, for any reason, under the United States Bankruptcy Code or any other federal, foreign or state law (collectively referred to herein as "Voidable Transfer"), and Lender is required to pay or restore any such Voidable Transfer, or any portion thereof, then as to that which is repaid or restored pursuant to any such Voidable Transfer (including all costs, expenses and attorneys' fees of Lender related thereto, including, without limitation, relief from stay or similar proceedings), the liability of Borrower and Guarantor, and each of them, shall automatically be revived, reinstated and restored to the extent thereof, and shall exist as though such Voidable Transfer had never been made to Lender.

B. Nothing set forth herein is an admission that such Voidable Transfer has occurred. Borrower and Guarantor, and each of them, expressly acknowledge that Lender may rely upon advice of counsel, and if so advised by counsel, may, in the exercise of Lender's sole opinion and judgment, settle, without defending, any action to void any alleged Voidable Transfer, and that upon such settlement, Borrower and Guarantor, and each of them, shall again be liable for any deficiency resulting from such settlement as provided in this Extension Agreement.

C. As an additional inducement to and material consideration for Lender agreeing to the amendment provided in this Extension Agreement, Borrower and Guarantor, and each of them, agree that in the event a Bankruptcy or Judicial Action (as hereinafter defined in this Section 10) is commenced which subjects Lender to any stay in the exercise of Lender's rights and remedies under the Loan Documents including, but not limited to, the automatic stay imposed by Section 362 of the United States Bankruptcy Code (individually and collectively, "Stay"), then Borrower and Guarantor, and each of them, irrevocably consent and agree that such Stay shall automatically be lifted and released against Lender, and Lender shall thereafter be entitled to exercise all of its rights and remedies against Borrower and Guarantor, and each of them, under the Loan Documents, subject, however, to the terms and conditions of this Extension

Agreement. Borrower and Guarantor, and each of them, acknowledge that each is knowingly, voluntarily, and intentionally waiving each of such party's rights to any Stay and agrees that the benefits provided to Borrower and Guarantor under the terms of this Extension Agreement are valuable consideration for such waiver. As used in this Section 10, the term "Bankruptcy or Judicial Action" shall mean any voluntary or involuntary case filed by or against Borrower and/or Guarantor, or any of them, under the United States Bankruptcy Code, or any voluntary or involuntary petition in composition, readjustment, liquidation, or dissolution, or any state and federal bankruptcy law action filed by or against Borrower and Guarantor, or any of them, any action where Borrower or Guarantor, or any of them, are adjudicated as bankrupt or insolvent, any action for dissolution of Borrower or Guarantor, or any of them, or any action in furtherance of any of the foregoing, or any other action, case, or proceeding that has the effect of staying (or in which a stay is being obtained against) the enforcement by Lender of its rights and remedies under this Extension Agreement, or any of the Loan Documents.

11. No Joint Venture, Management and Control. Notwithstanding any provision of this Extension Agreement and/or of the Loan Documents:

A. Lender is not and shall not be construed to be a partner, joint venture, alter ego, manager, controlling person or other business associate or participant of any kind of Borrower and Guarantor, or any of them, or any other person;

B. Lender shall not be deemed responsible to perform or participate in any acts, omissions, or decisions of Borrower and Guarantor, or any of them; and

C. Borrower and Guarantor, and each of them, do not have any claims, causes of action or defenses to their obligations to Lender based on any allegations of management or control exercised by Lender. Borrower and Guarantor, and each of them, acknowledge and agree that Lender does not manage or control them in any way.

12. Miscellaneous.

A. Section headings used in this Extension Agreement are for convenience only and shall not affect the construction of this Extension Agreement.

B. This Extension Agreement may be executed in one or more counterparts but all of the counterparts shall constitute one agreement; provided, however, this Extension Agreement shall not be effective and enforceable unless and until it is executed by all parties hereto.

C. This Extension Agreement and the other documents and instruments executed in connection therewith constitute the product of the negotiation of the parties hereto and the enforcement hereof shall be interpreted in a neutral manner, and not more strongly for or against any party based upon the source of the draftsmanship hereof.

D. This Extension Agreement shall be binding upon and inure to the benefit of Lender, Borrower and Guarantor, and each of them, and their respective successors and assigns, except that neither Borrower nor Guarantor shall assign their rights hereunder or any interest therein without the prior written consent of Lender.

E. This Extension Agreement is not a novation, nor, except as expressly provided in this Extension Agreement, is it to be construed as a release or modification of any of the terms, conditions, warranties, waivers or rights set forth in the Loan Documents. Nothing contained in this Extension Agreement shall be deemed to constitute a waiver by Lender of any required performance by Borrower or Guarantor, and each of them, of any Event of Default or default heretofore or hereafter occurring under or in connection with the other Loan Documents. In the event there is a conflict in any term, condition or provision of this Extension Agreement, on the one hand, and the Note, the Loan Agreement, the Deed of Trust, the Guaranty, or any of the other Loan Documents, on the other hand, the terms, conditions and provisions of this Extension Agreement are to control.

F. Borrower and Guarantor, and each of them, further represent and warrant as follows:

(1) They have received, or have had the opportunity to receive, independent legal advice from attorneys of each of their choice with respect to the advisability of executing this Extension Agreement and prior to the execution of this Extension Agreement by Borrower and Guarantor, their attorneys reviewed this Extension Agreement and discussed this Extension Agreement with them and have made all desired changes;

(2) Except as expressly stated in this Extension Agreement, neither Lender nor any other person or entity has made any statement or representation to Borrower or Guarantor regarding facts relied upon by any of them;

(3) Borrower and Guarantor, and each of them, do not rely upon any statement, representation or promise of Lender or any other person or entity in executing this Extension Agreement except as expressly stated in this Extension Agreement;

(4) The terms of this Extension Agreement are contractual and not a mere recital;

(5) This Extension Agreement has been carefully read by, the contents hereof are known and understood by, and it is signed freely by Borrower and Guarantor, and each of them; and

(6) This Extension Agreement and the releases contained herein are intended to be final and binding against Borrower and Guarantor, and each of them, and each of them acknowledge that Lender is expressly relying on the finality of this Extension Agreement as a substantial, material factor inducing Lender's execution of this Extension Agreement. Borrower and Guarantor, and each of them, have the full right and authority to enter into this Extension Agreement, and the officer, agent or other representative executing this Extension Agreement on behalf of Borrower has the full right and authority to fully commit and bind it to this Extension Agreement.

IN WITNESS WHEREOF, Borrower, Guarantor and Lender have executed and delivered this Extension Agreement as of the date set forth above.

**BORROWER**:

SDRES PARTNERS LLC,
a California limited liability company

By: Cantor Group LLC
a California limited liability company
Its: Managing Member

By: ______________________
Name: Deba Shyam
Its: General Manager

**GUARANTOR**:

______________________
ANDREW STUPIN, an individual

**LENDER**:

PREFERRED BANK,
a California banking corporation

By: ______________________
Name: ______________________
Title: ______________________

IN WITNESS WHEREOF, Borrower, Guarantor and Lender have executed and delivered this Extension Agreement as of the date set forth above.

**BORROWER**:

SDRES PARTNERS LLC,
a California limited liability company

By: Cantor Group LLC
a California limited liability company
Its: Managing Member

By: ______________________
Name: Deba Shyam
Its: General Manager

**GUARANTOR:**

______________________
ANDREW STUPIN, an individual

**LENDER**:

PREFERRED BANK,
a California banking corporation

By: ______________________
Name: Carol Lee
Title: Senior Vice President

**EXHIBIT "A-1"**

LEGAL DESCRIPTION OF THE 210 ORANGE GROVE PROPERTY

The land situated in the City of Pasadena, County of Los Angeles, State of California, and described as follows:

PARCEL 1:

LOT 10 OF TRACT NO. 63103, IN THE CITY OF PASADENA, AS PER MAP RECORDED IN BOOK 1369 PAGES 35 THROUGH 52 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AMENDED PURSUANT TO THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED DECEMBER 3, 2013 AS INSTRUMENT NO. 20131708591 OF OFFICIAL RECORDS.

PARCEL 2:

A RECIPROCAL ACCESS EASEMENT OVER THOSE AREAS SET OUT ON THE MAP SHOWN ABOVE.

PARCEL 3:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN CONSOLIDATED AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (SOUTH ORANGE GROVE PARCELS) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716500 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 4:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN ROSE PARADE GRANDSTAND EASEMENT AGREEMENT (ORANGE GROVE AVENUE) RECORDED JULY 21, 2005 AS INSTRUMENT NOS. 05-1721787 AND 05-1721788 BOTH OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 5:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING GARAGE EASEMENT AGREEMENT RECORDED JULY 2, 2007 AS INSTRUMENT NO. 20071579026 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 6:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING EASEMENT AGREEMENT

RECORDED DECEMBER 28, 2011 AS INSTRUMENT NO. 20111763712 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

APN: 5713-013-057

**EXHIBIT "A-2"**

LEGAL DESCRIPTION OF THE 244 ORANGE GROVE PROPERTY

The land situated in the City of Pasadena, County of Los Angeles, State of California, and described as follows:

PARCEL 1:

LOT 12 OF TRACT NO. 63103, IN THE CITY OF PASADENA, AS PER MAP RECORDED IN BOOK 1369 PAGES 35 THROUGH 52 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AMENDED PURSUANT TO THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED DECEMBER 3, 2013 AS INSTRUMENT NO. 20131708591 OF OFFICIAL RECORDS.

PARCEL 2:

A RECIPROCAL ACCESS EASEMENT OVER THOSE AREAS SET OUT ON THE MAP SHOWN ABOVE.

PARCEL 3:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN CONSOLIDATED AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (SOUTH ORANGE GROVE PARCELS) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716500 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 4:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (DEL MAR PARCEL) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716499 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 5:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN ROSE PARADE GRANDSTAND EASEMENT AGREEMENT (ORANGE GROVE AVENUE) RECORDED JULY 21, 2005 AS INSTRUMENT NOS. 05-1721787 AND 05-1721788 BOTH OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 6:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING GARAGE EASEMENT AGREEMENT RECORDED JULY 2, 2007 AS INSTRUMENT NO. 20071579026 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 7:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING EASEMENT AGREEMENT RECORDED DECEMBER 28, 2011 AS INSTRUMENT NO. 20111763712 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

APN: 5713-027-065

# Exhibit P

# SECOND EXTENSION AGREEMENT

THIS SECOND EXTENSION AGREEMENT (this "Extension Agreement") is entered into as of September 7, 2022, by and between by and between SDRES PARTNERS LLC, a California limited liability company ("Borrower"), and ANDREW STUPIN, an individual ("Guarantor"), on the one hand, and PREFERRED BANK, a California banking corporation ("Lender"), on the other hand.

## RECITALS

A. Lender has made a loan (the "Loan") to CANTOR GROUP LLC, a California limited liability company ("Original Borrower"), for the purpose of financing Original Borrower's acquisition of the Property (as hereinafter defined). The Loan was and is evidenced, in part, by that certain Promissory Note dated June 8, 2017, in the original principal amount of Eight Million Four Hundred Thousand and No/100 Dollars ($8,400,000.00), executed by Original Borrower in favor of Lender (together with any and all amendments and extensions thereto or modifications thereof, the "Original Note").

B. In connection with the Loan, Original Borrower also executed and delivered to and in favor of Lender, the following additional documents, among others:

1. Loan Agreement dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "Loan Agreement"), executed by and between Original Borrower and Lender;

2. Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "210 Orange Grove Deed of Trust"), executed by Original Borrower as trustor in favor of Lender, which was recorded on June 16, 2017, as Instrument No. 20170671620, in the Official Records of Los Angeles County, California, encumbering the real property more commonly known as 210 South Orange Grove, Pasadena, California, and more particularly described in Exhibit "A-1" attached hereto and incorporated herein by this reference ("210 Orange Grove Property");

3. Absolute Assignment of Leases, Lease Guaranties, Rents, Issues and Profits dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "210 Orange Grove Assignment of Leases"), executed by Original Borrower in favor of Lender, which was recorded on June 16, 2017, as Instrument No. 20170671621, in the Official Records of Los Angeles County, California;

4. Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "244 Orange Grove Deed of Trust" and together with the 210 Orange Grove Property, individually and collectively, the "Deed of Trust"), executed by Original Borrower as trustor in favor of Lender, which was recorded on June 16, 2017, as Instrument No. 20170671625, in the Official Records of Los Angeles County, California, encumbering the real property more commonly known as 244 South Orange Grove, Pasadena, California, and more particularly described in Exhibit "A-2" attached hereto and incorporated herein by this reference

(the "244 Orange Grove Property", and together with the 210 Orange Grove Property, individually and collectively, the "Property");

5. Absolute Assignment of Leases, Lease Guaranties, Rents, Issues and Profits dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "244 Orange Grove Assignment of Leases" and together with the 210 Orange Grove Assignment of Leases, individually and collectively, the "Assignment of Leases"), executed by Original Borrower in favor of Lender, which was recorded on June 16, 2017, as Instrument No. 20170671626, in the Official Records of Los Angeles County, California; and

6. Hazardous Substances Indemnity Agreement dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "Indemnity Agreement"), executed by Original Borrower and Guarantor in favor of Lender, and covering the Property.

C. Payment and performance of Borrower's indebtedness and obligations in connection with the Loan was and is guaranteed by Guarantor, who delivered to and in favor of Lender a Continuing Guaranty dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "Guaranty").

D. Pursuant to that certain Assumption Agreement dated June 8, 2017, by and among Original Borrower, Guarantor and Borrower, and a Memorandum of Assumption Agreement dated June 8, 2017, recorded in connection with each Property (collectively, the "Assumption Documents"), Lender consented to a transfer of one hundred percent (100%) of Original Borrower's right, title and interest in and to each Property to Borrower, and Borrower's assumption of any and all of Original Borrower's indebtedness and obligations to Lender under and in connection with the Loan Agreement, Original Note, Deed of Trust, Assignment of Leases, Indemnity Agreement and any and all other instruments, agreements and/or documents executed by Original Borrower in connection therewith.

E. On or about March 25, 2019, Borrower, Guarantor and Lender entered into that certain Modification of Deed of Trust and Amendment to Loan Documents dated as of March 25, 2019 (the "Modification"), whereby, among other things, (i) the interest rate and the repayment terms under the Original Note were modified pursuant to that certain Amended and Restated Promissory Note dated March 25, 2019, in the maximum principal amount of $8,400,000.00, executed by Borrower in favor of Lender (the "Note"), which Note amended and restated the Original Note in its entirety, and (ii) Borrower was permitted to subdivide the Property into two or more parcels and to sell any such parcels to third parties subject to the terms and conditions more particularly described therein.

F. On or around May 20, 2020, Borrower, Guarantor and Lender entered into that certain Payment Deferral Agreement and Limited Waiver dated May 20, 2020 (the "Payment Deferral Agreement"), whereby, among other things, beginning with the Loan payment due on May 8, 2020, Borrower's regularly scheduled monthly payments of interest under the Note was deferred in its entirety for a period of two (2) months through and including the payment due on June 8, 2020 ("Payment Deferral Period"). Beginning with the Loan payment due on July 8,

2020, all payments due and owing under the Note reverted back to the payment terms in effect directly prior to the Payment Deferral Period, as set forth in the Note.

G. On or about May 24, 2022, Borrower, Guarantor and Lender entered into that certain Extension Agreement dated as of May 24, 2022 (the "First Extension"), whereby, among other things, the maturity date of the Note was extended from June 8, 2022 to September 8, 2022.

H. Pursuant to each Deed of Trust and the Assumption Documents, Borrower granted to and in favor of Lender a first priority security interest in and lien upon certain real and personal property described in each Deed of Trust (the "Deed of Trust Collateral"), to secure, without limitation, payment and performance of the indebtedness and obligations under and in connection with the Loan and the Original Note, as amended and restated in its entirety by the Note. Lender's security interest in the Deed of Trust Collateral was and is perfected under applicable law.

I. The Note, Loan Agreement, Deed of Trust, Assignment of Leases, Indemnity Agreement, Assumption Documents, Guaranty, Modification, Payment Deferral Agreement, First Extension and all other assignments, agreements, instruments and other documents executed by Borrower (and Original Borrower) and/or Guarantor in connection with the Loan shall at times hereinafter be referred to collectively as the "Loan Documents."

J. Borrower and Guarantor acknowledge and agree with Lender that Borrower failed to maintain a minimum Debt Service Coverage Ratio (as defined in the Loan Agreement) of not less than 1.25 to 1.00, measured as of June 30, 2022, for the immediately preceding six (6) consecutive calendar month period of time, pursuant to Section 4.23 of the Loan Agreement (the "DSCR Covenant Violation").

K. Notwithstanding the foregoing, Borrower and Guarantor have each requested that Lender (i) waive, on a one-time only basis, the DSCR Covenant Violation, and (ii) extend the maturity date of the Note from September 8, 2022 to March 8, 2023. Lender is willing to agree to said requests, subject to the terms and conditions set forth in this Extension Agreement.

Except as may be otherwise expressly defined in this Extension Agreement, all terms used in this Extension Agreement beginning with a capital letter shall have the meanings ascribed to them in the Loan Agreement.

## AGREEMENT

NOW, THEREFORE, for valuable consideration and the mutual promises of the parties hereto, said parties do hereby acknowledge and agree as follows:

1. <u>Recitals.</u>

The recitals are incorporated herein by this reference as are all exhibits. Borrower and Guarantor, and each of them, agree and acknowledge that the factual information recited above is true and correct.

2. Borrower and Guarantor Acknowledgment as to Obligations.

A. Borrower, and Guarantor each acknowledge, confirm and agree that as of August 31, 2022, the total outstanding principal balance of the Note is $8,107,582.41 plus accrued and unpaid interest thereon.

B. Borrower and Guarantor, and each of them, specifically acknowledge and confirm that they do not have any valid offset or defense to the obligations, indebtedness and liability under the Loan Documents.

3. Reaffirmation of Obligations.

This Extension Agreement is, in part, a reaffirmation of the obligations, indebtedness and liability of Borrower and Guarantor, and each of them, to Lender as evidenced by the Loan Documents. Therefore, Borrower and Guarantor, and each of them, acknowledge and agree that, except as specified herein, all of the terms and conditions of the Loan Documents are and shall remain in full force and effect, without waiver or modification of any kind whatsoever, and are ratified and confirmed in all respects.

4. Extension of Maturity Date; Limited Waiver; Debt Service Coverage Ratio; MRB Provision.

A. The Maturity Date is hereby extended to March 8, 2023, at which time the entire principal balance under the Loan plus all accrued and unpaid interest thereon is and shall be due and payable as provided under the Loan Documents. The "Maturity Date", as defined in the Loan Agreement and referenced therein, shall hereby mean March 8, 2023.

B. Subject to Borrower's and Guarantor's complete and unconditional compliance of the terms of this Agreement and the other Loan Documents (including, without limitation, the timely and complete satisfaction of each and all of the conditions precedent set forth in Section 8 of this Extension Agreement), Lender waives, on a one-time basis only, the DSCR Covenant Violation. The waiver set forth in this Section 4(B) applies only to the DSCR Covenant Violation, and shall be effective only to the extent specifically set forth herein and shall not (i) be construed as a waiver of any breach, default or event of default other than the DSCR Covenant Violation, (ii) affect the right of Lender to demand compliance by Borrower and/or Guarantor with all terms and conditions of the Loan Documents, except as specifically waived by this Agreement, (iii) be deemed a waiver of any transaction or future action on the part of Borrower and/or Guarantor requiring Lender's consent or approval under the Loan Documents, or (iv) except as waived hereby, be deemed or construed to be a waiver or release of, or a limitation upon, Lender's exercise of any rights or remedies under any of the Loan Documents, whether arising as a consequence of any default or event of default which may now exist or otherwise, all such rights and remedies hereby being expressly reserved. In the event that another Event of Default (or event which, with the giving of notice or the passage of time, or both, would become an Event of Default) exists, such failure shall be a further Event of Default and Lender shall be entitled to exercise any and

all of its rights and remedies hereunder, under the Loan Documents and at law and/or in equity.

C. Notwithstanding the foregoing limited waiver provided in Section 4(B) above and anything set forth in Section 4.23 of the Loan Agreement, Borrower shall be required to maintain a Debt Service Coverage Ratio of not less than 1.25 to 1.00 ("DSCR Requirement"), at all times during the remaining term of the Loan, which shall be tested (i) on December 31, 2022, measured for the preceding twelve (12) consecutive calendar month period of time, and then (ii) semi-annually thereafter (A) on June 30 of each calendar year, measured for the preceding six (6) consecutive calendar month period of time and (B) on December 31 of each calendar year, measured for the preceding twelve (12) consecutive calendar month period of time. In connection therewith, Borrower shall deliver to Lender a profit and loss statement for Borrower and such Financial Statements and other documentation and evidence as shall be satisfactory to Lender, in Lender's sole and absolute opinion and judgment, evidencing Borrower's compliance with such minimum Debt Service Coverage Ratio requirement.

D. The following new Section 4.26 is hereby added to the Loan Agreement immediately following Section 4.25:

"4.26 <u>MARIJUANA RELATED BUSINESS (MRB)</u> – Borrower acknowledges that if any part of the Property will be leased to a marijuana related business ("<u>MRB</u>"), or otherwise used for MRB purposes, Borrower must submit written request for approval of an MRB tenant or MRB use to Lender prior to execution of such lease or MRB use, which approval shall be in Lender's sole discretion.

D S
____________________
Borrower's Initials"

5. <u>Extension Agreement as a Loan Document.</u>

From and after the effective date of this Extension Agreement, this Extension Agreement and any other documents and instruments executed in connection herewith shall each constitute one of the "Loan Documents."

6. <u>Effective Date of Amendment.</u>

This Extension Agreement and the amendments provided for herein shall be effective as of September 8, 2022, upon the timely and complete satisfaction of each and all of the conditions precedent set forth in Section 8 of this Extension Agreement.

7. <u>Borrower's and Guarantor's Representations and Warranties.</u>

Borrower and Guarantor, and each of them, hereby represent and warrant to Lender and covenant and agree with Lender as follows:

A. Borrower and Guarantor, and each of them, have full legal right, power and authority to enter into and perform this Extension Agreement. The execution and delivery of

this Extension Agreement by Borrower and the consummation by Borrower of the transactions contemplated hereby have been duly authorized by all necessary action by or on behalf of Borrower. This Extension Agreement is a valid and binding obligation of Borrower and Guarantor, and each of them, enforceable against Borrower and Guarantor in accordance with its terms.

B. Neither the execution and delivery of this Extension Agreement by Borrower and Guarantor, or any of them, nor the consummation by Borrower and Guarantor, or any of them, of the transactions contemplated hereby, conflicts with or constitutes a violation or a default under any law or regulation applicable to Borrower and Guarantor, or any of them, or any contract, commitment, agreement, arrangement or restriction of any kind to which Borrower and Guarantor, or any of them, is a party, by which Borrower and Guarantor, or any of them, is bound or to which any of Borrower's and Guarantor's, or any of their, property or assets is subject.

C. There are no actions, suits or proceedings pending, or to the knowledge of Borrower and Guarantor, or any of them, threatened against or affecting Borrower and Guarantor, or any of them, respectively, in relation to their obligations to Lender or involving the validity and enforceability of this Extension Agreement, the Note, the Loan Agreement, the Deed of Trust, the Guaranty or any of the other Loan Documents, as applicable, or the priority of any liens given by Borrower to Lender in accordance with the Note, the Loan Agreement, the Deed of Trust, and the other Loan Documents, at Law or in equity, or before or by any Governmental Agency, or which could have a material adverse effect on the financial condition, operations, properties, assets, liabilities or earnings of Borrower and Guarantor, or any of them, or the ability of Borrower and Guarantor, or any of them, to perform their respective obligations to Lender.

D. Borrower and Guarantor, and each of them, hereby reaffirm and confirm that the representations and warranties of Borrower and Guarantor, as applicable, contained in the Loan Documents are true, correct and complete in all material respects as of the date of this Extension Agreement.

E. Borrower and Guarantor, and each of them, are in full and complete compliance with the terms, covenants, provisions and conditions of the Note, the Loan Agreement, the Deed of Trust, the Guaranty and the other Loan Documents.

F. Neither Borrower nor Guarantor has any actual knowledge of any release of Hazardous Substances (as defined in the Indemnity Agreement) on the Property.

All covenants, representations and warranties of Borrower and Guarantor herein are incorporated by reference and hereby made a part of the Loan Agreement and the Guaranty, as applicable.

8. Conditions Precedent to Effectiveness of Extension Agreement.

The effectiveness of this Extension Agreement is expressly conditioned upon Borrower having, at its sole expense, deposited or caused to be deposited with Lender as of September 27, 2022, all of the following items, documents, certificates and other instruments, in

form and content satisfactory to Lender and its counsel, in their sole and absolute discretion, and suitable for filing or recording as required:

A. This Extension Agreement, fully executed by Borrower and Guarantor;

B. Borrower shall have paid to Lender a nonrefundable extension fee in the total amount of $15,000.00 (the "Extension Fee") from Borrower's own funds, which Extension Fee shall be deemed fully earned when paid;

C. Borrower shall have paid to Lender the monthly installment payments of principal and interest required under the Note through and including the due date of September 8, 2022, which shall consist of a monthly principal installment of $9,838.13 plus interest each month;

D. Such additional information, assignments, agreements, certificates, reports, approvals, instruments, documents, subordination agreements, financing statements, consents and opinions as Lender may request, in its sole and absolute opinion and judgment, in connection with this Extension Agreement and/or any of the matters which are the subject of this Extension Agreement; and

E. [Intentionally omitted.]

9. <u>General Release.</u>

A. Except as to the obligations imposed upon Lender, as provided herein, Borrower and Guarantor, and each of them, on behalf of themselves, their respective successors and assigns, and each of them, do each hereby forever relieve, release, acquit and discharge Lender and its predecessors, successors and assigns, and their respective past and present attorneys, accountants, insurers, representatives, affiliates, partners, subsidiaries, officers, employees, directors, and shareholders, and each of them (collectively, the "Released Parties"), from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, costs and expenses (including, but not limited to, attorneys' fees), damages, injuries, actions and causes of action, of whatever kind or nature, whether legal or equitable, known or unknown, suspected or unsuspected, contingent or fixed, which Borrower and Guarantor, or any of them, now own or hold or have at any time heretofore owned or held or may at any time hereafter own or hold against the Released Parties, or any of them, by reason of any acts, facts, transactions or any circumstances whatsoever occurring or existing through the date of this Extension Agreement, including, but not limited to, those based upon, arising out of, appertaining to, or in connection with the Recitals above, the Loan, the Loan Documents, the facts pertaining to this Extension Agreement, any collateral heretofore granted to Lender or granted in connection herewith, or to any other obligations of Borrower and/or Guarantor to Lender, all jointly and severally.

B. As to the matters released herein, Borrower and Guarantor, and each of them, expressly waive any and all rights under Section 1542 of the Civil Code of the State of California, which provides as follows:

> "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

Borrower and Guarantor, and each of them, expressly waive and release any right or benefit which they have or may have under Section 1542 of the Civil Code of the State of California, and any similar law of any state, territory, commonwealth or possession of the United States, or the United States, to the full extent that they may waive all such rights and benefits pertaining to the matters released herein. In connection with such waiver and relinquishment, Borrower and Guarantor, and each of them, acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true. Nevertheless, it is the intention of Borrower and Guarantor, and each of them, through this Extension Agreement, to fully, finally and forever release all such matters, and all claims relative thereto, which do now exist, may exist, or heretofore have existed. In furtherance of such intention, the release herein given shall be and remain in effect as a full and complete release of such matters notwithstanding the discovery or existence of any such additional or different claims or facts relative thereto.

C. In entering into the release provided for in this Extension Agreement, Borrower and Guarantor, and each of them, recognize that no facts or representations are ever absolutely certain; accordingly, Borrower and Guarantor, and each of them, assume the risk of any misrepresentation, concealment or mistake, and if Borrower and Guarantor, or any of them, should subsequently discover that any fact that they relied upon in entering into these releases was untrue, or that any fact was concealed from them, or that any understanding of the facts or of the law was incorrect, Borrower and Guarantor, and each of them, shall be not entitled to set aside these releases by reason thereof, regardless of any claims of fraud, misrepresentation, promise made without the intention of performing it, concealment of fact, mistake of fact or law, or any other circumstances whatsoever.

D. Borrower and Guarantor, and each of them, are the sole and lawful owners of all right, title and interest in and to every claim and other matter which they purport to release herein, and they have not heretofore assigned or transferred, or purported to assign or transfer to any person or any entity claims or other matters herein released. Borrower and Guarantor, and each of them, shall indemnify, defend and hold Lender and each of the other Released Parties, harmless from and against any claims, liabilities, actions, causes of action, demands, injuries, costs, and expenses (including, but not limited to, attorneys' fees), based upon or arising in connection with any such prior assignment or transfer, or any such purported assignment or transfer, or any claims or other matters released herein.

10. <u>Revival of Obligation</u>.

A. Borrower and Guarantor, and each of them, acknowledge and agree that in the event that the payment of money, this Extension Agreement, or the grant of collateral should for any reason subsequently be declared to be "fraudulent" within the meaning of any state, federal or foreign law relating to fraudulent conveyances, preferential or otherwise voidable or

recoverable, in whole or in part, for any reason, under the United States Bankruptcy Code or any other federal, foreign or state law (collectively referred to herein as "Voidable Transfer"), and Lender is required to pay or restore any such Voidable Transfer, or any portion thereof, then as to that which is repaid or restored pursuant to any such Voidable Transfer (including all costs, expenses and attorneys' fees of Lender related thereto, including, without limitation, relief from stay or similar proceedings), the liability of Borrower and Guarantor, and each of them, shall automatically be revived, reinstated and restored to the extent thereof, and shall exist as though such Voidable Transfer had never been made to Lender.

B. Nothing set forth herein is an admission that such Voidable Transfer has occurred. Borrower and Guarantor, and each of them, expressly acknowledge that Lender may rely upon advice of counsel, and if so advised by counsel, may, in the exercise of Lender's sole opinion and judgment, settle, without defending, any action to void any alleged Voidable Transfer, and that upon such settlement, Borrower and Guarantor, and each of them, shall again be liable for any deficiency resulting from such settlement as provided in this Extension Agreement.

C. As an additional inducement to and material consideration for Lender agreeing to the amendment provided in this Extension Agreement, Borrower and Guarantor, and each of them, agree that in the event a Bankruptcy or Judicial Action (as hereinafter defined in this Section 10) is commenced which subjects Lender to any stay in the exercise of Lender's rights and remedies under the Loan Documents including, but not limited to, the automatic stay imposed by Section 362 of the United States Bankruptcy Code (individually and collectively, "Stay"), then Borrower and Guarantor, and each of them, irrevocably consent and agree that such Stay shall automatically be lifted and released against Lender, and Lender shall thereafter be entitled to exercise all of its rights and remedies against Borrower and Guarantor, and each of them, under the Loan Documents, subject, however, to the terms and conditions of this Extension Agreement. Borrower and Guarantor, and each of them, acknowledge that each is knowingly, voluntarily, and intentionally waiving each of such party's rights to any Stay and agrees that the benefits provided to Borrower and Guarantor under the terms of this Extension Agreement are valuable consideration for such waiver. As used in this Section 10, the term "Bankruptcy or Judicial Action" shall mean any voluntary or involuntary case filed by or against Borrower and/or Guarantor, or any of them, under the United States Bankruptcy Code, or any voluntary or involuntary petition in composition, readjustment, liquidation, or dissolution, or any state and federal bankruptcy law action filed by or against Borrower and Guarantor, or any of them, any action where Borrower or Guarantor, or any of them, are adjudicated as bankrupt or insolvent, any action for dissolution of Borrower or Guarantor, or any of them, or any action in furtherance of any of the foregoing, or any other action, case, or proceeding that has the effect of staying (or in which a stay is being obtained against) the enforcement by Lender of its rights and remedies under this Extension Agreement, or any of the Loan Documents.

11. No Joint Venture, Management and Control. Notwithstanding any provision of this Extension Agreement and/or of the Loan Documents:

A. Lender is not and shall not be construed to be a partner, joint venture, alter ego, manager, controlling person or other business associate or participant of any kind of Borrower and Guarantor, or any of them, or any other person;

B. Lender shall not be deemed responsible to perform or participate in any acts, omissions, or decisions of Borrower and Guarantor, or any of them; and

C. Borrower and Guarantor, and each of them, do not have any claims, causes of action or defenses to their obligations to Lender based on any allegations of management or control exercised by Lender. Borrower and Guarantor, and each of them, acknowledge and agree that Lender does not manage or control them in any way.

12. Miscellaneous.

A. Section headings used in this Extension Agreement are for convenience only and shall not affect the construction of this Extension Agreement.

B. This Extension Agreement may be executed in one or more counterparts but all of the counterparts shall constitute one agreement; provided, however, this Extension Agreement shall not be effective and enforceable unless and until it is executed by all parties hereto.

C. This Extension Agreement and the other documents and instruments executed in connection therewith constitute the product of the negotiation of the parties hereto and the enforcement hereof shall be interpreted in a neutral manner, and not more strongly for or against any party based upon the source of the draftsmanship hereof.

D. This Extension Agreement shall be binding upon and inure to the benefit of Lender, Borrower and Guarantor, and each of them, and their respective successors and assigns, except that neither Borrower nor Guarantor shall assign their rights hereunder or any interest therein without the prior written consent of Lender.

E. This Extension Agreement is not a novation, nor, except as expressly provided in this Extension Agreement, is it to be construed as a release or modification of any of the terms, conditions, warranties, waivers or rights set forth in the Loan Documents. Nothing contained in this Extension Agreement shall be deemed to constitute a waiver by Lender of any required performance by Borrower or Guarantor, and each of them, of any Event of Default or default heretofore or hereafter occurring under or in connection with the other Loan Documents. In the event there is a conflict in any term, condition or provision of this Extension Agreement, on the one hand, and the Note, the Loan Agreement, the Deed of Trust, the Guaranty, or any of the other Loan Documents, on the other hand, the terms, conditions and provisions of this Extension Agreement are to control.

F. Borrower and Guarantor, and each of them, further represent and warrant as follows:

(1) They have received, or have had the opportunity to receive, independent legal advice from attorneys of each of their choice with respect to the advisability of executing this Extension Agreement and prior to the execution of this Extension Agreement by Borrower and Guarantor, their attorneys reviewed this Extension Agreement and discussed this Extension Agreement with them and have made all desired changes;

(2) Except as expressly stated in this Extension Agreement, neither Lender nor any other person or entity has made any statement or representation to Borrower or Guarantor regarding facts relied upon by any of them;

(3) Borrower and Guarantor, and each of them, do not rely upon any statement, representation or promise of Lender or any other person or entity in executing this Extension Agreement except as expressly stated in this Extension Agreement;

(4) The terms of this Extension Agreement are contractual and not a mere recital;

(5) This Extension Agreement has been carefully read by, the contents hereof are known and understood by, and it is signed freely by Borrower and Guarantor, and each of them; and

(6) This Extension Agreement and the releases contained herein are intended to be final and binding against Borrower and Guarantor, and each of them, and each of them acknowledge that Lender is expressly relying on the finality of this Extension Agreement as a substantial, material factor inducing Lender's execution of this Extension Agreement. Borrower and Guarantor, and each of them, have the full right and authority to enter into this Extension Agreement, and the officer, agent or other representative executing this Extension Agreement on behalf of Borrower has the full right and authority to fully commit and bind it to this Extension Agreement.

[Signature page to follow.]

IN WITNESS WHEREOF, Borrower, Guarantor and Lender have executed and delivered this Extension Agreement as of the date set forth above.

**BORROWER**:

SDRES PARTNERS LLC,
a California limited liability company

By: Cantor Group LLC
a California limited liability company
Its: Managing Member

By: ______________________
Name: Deba Shyam
Its: General Manager

**GUARANTOR:**

______________________
ANDREW STUPIN, an individual

**LENDER**:

PREFERRED BANK,
a California banking corporation

By: ______________________
Name: Carol Lee
Title: Senior Vice President

IN WITNESS WHEREOF, Borrower, Guarantor and Lender have executed and delivered this Extension Agreement as of the date set forth above.

**BORROWER**:

SDRES PARTNERS LLC,
a California limited liability company

By: Cantor Group LLC
a California limited liability company
Its: Managing Member

By: ________________________
Name: Deba Shyam
Its: General Manager

**GUARANTOR**:

________________________
ANDREW STUPIN, an individual

**LENDER**:

PREFERRED BANK,
a California banking corporation

By: ________________________
Name: ________________________
Title: ________________________

**EXHIBIT "A-1"**

LEGAL DESCRIPTION OF THE 210 ORANGE GROVE PROPERTY

The land situated in the City of Pasadena, County of Los Angeles, State of California, and described as follows:

PARCEL 1:

LOT 10 OF TRACT NO. 63103, IN THE CITY OF PASADENA, AS PER MAP RECORDED IN BOOK 1369 PAGES 35 THROUGH 52 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AMENDED PURSUANT TO THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED DECEMBER 3, 2013 AS INSTRUMENT NO. 20131708591 OF OFFICIAL RECORDS.

PARCEL 2:

A RECIPROCAL ACCESS EASEMENT OVER THOSE AREAS SET OUT ON THE MAP SHOWN ABOVE.

PARCEL 3:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN CONSOLIDATED AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (SOUTH ORANGE GROVE PARCELS) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716500 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 4:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN ROSE PARADE GRANDSTAND EASEMENT AGREEMENT (ORANGE GROVE AVENUE) RECORDED JULY 21, 2005 AS INSTRUMENT NOS. 05-1721787 AND 05-1721788 BOTH OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 5:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING GARAGE EASEMENT AGREEMENT RECORDED JULY 2, 2007 AS INSTRUMENT NO. 20071579026 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 6:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING EASEMENT AGREEMENT

RECORDED DECEMBER 28, 2011 AS INSTRUMENT NO. 20111763712 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

APN: 5713-013-057

**EXHIBIT "A-2"**

LEGAL DESCRIPTION OF THE 244 ORANGE GROVE PROPERTY

The land situated in the City of Pasadena, County of Los Angeles, State of California, and described as follows:

PARCEL 1:

LOT 12 OF TRACT NO. 63103, IN THE CITY OF PASADENA, AS PER MAP RECORDED IN BOOK 1369 PAGES 35 THROUGH 52 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AMENDED PURSUANT TO THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED DECEMBER 3, 2013 AS INSTRUMENT NO. 20131708591 OF OFFICIAL RECORDS.

PARCEL 2:

A RECIPROCAL ACCESS EASEMENT OVER THOSE AREAS SET OUT ON THE MAP SHOWN ABOVE.

PARCEL 3:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN CONSOLIDATED AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (SOUTH ORANGE GROVE PARCELS) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716500 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 4:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (DEL MAR PARCEL) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716499 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 5:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN ROSE PARADE GRANDSTAND EASEMENT AGREEMENT (ORANGE GROVE AVENUE) RECORDED JULY 21, 2005 AS INSTRUMENT NOS. 05-1721787 AND 05-1721788 BOTH OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 6:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING GARAGE EASEMENT AGREEMENT RECORDED JULY 2, 2007 AS INSTRUMENT NO. 20071579026 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 7:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING EASEMENT AGREEMENT RECORDED DECEMBER 28, 2011 AS INSTRUMENT NO. 20111763712 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

APN: 5713-027-065

# Exhibit Q

# THIRD EXTENSION AGREEMENT

THIS THIRD EXTENSION AGREEMENT (this "Extension Agreement") is entered into as of March 14, 2023, and effective as of March 8, 2023, by and between by and between SDRES PARTNERS LLC, a California limited liability company ("Borrower"), and ANDREW STUPIN, an individual ("Guarantor"), on the one hand, and PREFERRED BANK, a California banking corporation ("Lender"), on the other hand.

## RECITALS

A. Lender has made a loan (the "Loan") to CANTOR GROUP LLC, a California limited liability company ("Original Borrower"), for the purpose of financing Original Borrower's acquisition of the Property (as hereinafter defined). The Loan was and is evidenced, in part, by that certain Promissory Note dated June 8, 2017, in the original principal amount of Eight Million Four Hundred Thousand and No/100 Dollars ($8,400,000.00), executed by Original Borrower in favor of Lender (together with any and all amendments and extensions thereto or modifications thereof, the "Original Note").

B. In connection with the Loan, Original Borrower also executed and delivered to and in favor of Lender, the following additional documents, among others:

1. Loan Agreement dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "Loan Agreement"), executed by and between Original Borrower and Lender;

2. Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "210 Orange Grove Deed of Trust"), executed by Original Borrower as trustor in favor of Lender, which was recorded on June 16, 2017, as Instrument No. 20170671620, in the Official Records of Los Angeles County, California, encumbering the real property more commonly known as 210 South Orange Grove, Pasadena, California, and more particularly described in Exhibit "A-1" attached hereto and incorporated herein by this reference ("210 Orange Grove Property");

3. Absolute Assignment of Leases, Lease Guaranties, Rents, Issues and Profits dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "210 Orange Grove Assignment of Leases"), executed by Original Borrower in favor of Lender, which was recorded on June 16, 2017, as Instrument No. 20170671621, in the Official Records of Los Angeles County, California;

4. Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "244 Orange Grove Deed of Trust" and together with the 210 Orange Grove Property, individually and collectively, the "Deed of Trust"), executed by Original Borrower as trustor in favor of Lender, which was recorded on June 16, 2017, as Instrument No. 20170671625, in the Official Records of Los Angeles County, California, encumbering the real property more commonly known as 244 South Orange Grove, Pasadena, California, and more particularly described in Exhibit "A-2" attached hereto and incorporated herein by this reference

(the "244 Orange Grove Property", and together with the 210 Orange Grove Property, individually and collectively, the "Property");

5. Absolute Assignment of Leases, Lease Guaranties, Rents, Issues and Profits dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "244 Orange Grove Assignment of Leases" and together with the 210 Orange Grove Assignment of Leases, individually and collectively, the "Assignment of Leases"), executed by Original Borrower in favor of Lender, which was recorded on June 16, 2017, as Instrument No. 20170671626, in the Official Records of Los Angeles County, California; and

6. Hazardous Substances Indemnity Agreement dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "Indemnity Agreement"), executed by Original Borrower and Guarantor in favor of Lender, and covering the Property.

C. Payment and performance of Borrower's indebtedness and obligations in connection with the Loan was and is guaranteed by Guarantor, who delivered to and in favor of Lender a Continuing Guaranty dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "Guaranty").

D. Pursuant to that certain Assumption Agreement dated June 8, 2017, by and among Original Borrower, Guarantor and Borrower, and a Memorandum of Assumption Agreement dated June 8, 2017, recorded in connection with each Property (collectively, the "Assumption Documents"), Lender consented to a transfer of one hundred percent (100%) of Original Borrower's right, title and interest in and to each Property to Borrower, and Borrower's assumption of any and all of Original Borrower's indebtedness and obligations to Lender under and in connection with the Loan Agreement, Original Note, Deed of Trust, Assignment of Leases, Indemnity Agreement and any and all other instruments, agreements and/or documents executed by Original Borrower in connection therewith.

E. On or about March 25, 2019, Borrower, Guarantor and Lender entered into that certain Modification of Deed of Trust and Amendment to Loan Documents dated as of March 25, 2019 (the "Modification"), whereby, among other things, (i) the interest rate and the repayment terms under the Original Note were modified pursuant to that certain Amended and Restated Promissory Note dated March 25, 2019, in the maximum principal amount of $8,400,000.00, executed by Borrower in favor of Lender (the "Note"), which Note amended and restated the Original Note in its entirety, and (ii) Borrower was permitted to subdivide the Property into two or more parcels and to sell any such parcels to third parties subject to the terms and conditions more particularly described therein.

F. On or around May 20, 2020, Borrower, Guarantor and Lender entered into that certain Payment Deferral Agreement and Limited Waiver dated May 20, 2020 (the "Payment Deferral Agreement"), whereby, among other things, beginning with the Loan payment due on May 8, 2020, Borrower's regularly scheduled monthly payments of interest under the Note was deferred in its entirety for a period of two (2) months through and including the payment due on June 8, 2020 ("Payment Deferral Period"). Beginning with the Loan payment due on July 8,

2020, all payments due and owing under the Note reverted back to the payment terms in effect directly prior to the Payment Deferral Period, as set forth in the Note.

G. On or about May 24, 2022, Borrower, Guarantor and Lender entered into that certain Extension Agreement dated as of May 24, 2022 (the "First Extension"), whereby, among other things, the maturity date of the Note was extended from June 8, 2022 to September 8, 2022.

H. On or about September 7, 2022, Borrower, Guarantor and Lender entered into that certain Second Extension Agreement dated as of September 7 2022 (the "Second Extension"), whereby, among other things, the maturity date of the Note was extended from September 8, 2022 to March 8, 2023.

I. Pursuant to each Deed of Trust and the Assumption Documents, Borrower granted to and in favor of Lender a first priority security interest in and lien upon certain real and personal property described in each Deed of Trust (the "Deed of Trust Collateral"), to secure, without limitation, payment and performance of the indebtedness and obligations under and in connection with the Loan and the Original Note, as amended and restated in its entirety by the Note. Lender's security interest in the Deed of Trust Collateral was and is perfected under applicable law.

J. The Note, Loan Agreement, Deed of Trust, Assignment of Leases, Indemnity Agreement, Assumption Documents, Guaranty, Modification, Payment Deferral Agreement, First Extension, Second Extension and all other assignments, agreements, instruments and other documents executed by Borrower (and Original Borrower) and/or Guarantor in connection with the Loan shall at times hereinafter be referred to collectively as the "Loan Documents."

K. Borrower and Guarantor acknowledge and agree with Lender that Borrower failed to maintain a minimum Debt Service Coverage Ratio (as defined in the Loan Agreement) of not less than 1.25 to 1.00, measured as of December 31, 2022, for the immediately preceding twelve (12) consecutive calendar month period of time, pursuant to Section 4.23 of the Loan Agreement (the "DSCR Covenant Violation").

L. Notwithstanding the foregoing, Borrower and Guarantor have each requested that Lender (i) waive, on a one-time only basis, the DSCR Covenant Violation, and (ii) extend the maturity date of the Note from March 8, 2023 to July 8, 2023. Lender is willing to agree to said requests, subject to the terms and conditions set forth in this Extension Agreement.

Except as may be otherwise expressly defined in this Extension Agreement, all terms used in this Extension Agreement beginning with a capital letter shall have the meanings ascribed to them in the Loan Agreement.

**AGREEMENT**

NOW, THEREFORE, for valuable consideration and the mutual promises of the parties hereto, said parties do hereby acknowledge and agree as follows:

1. Recitals.

The recitals are incorporated herein by this reference as are all exhibits. Borrower and Guarantor, and each of them, agree and acknowledge that the factual information recited above is true and correct.

2. Borrower and Guarantor Acknowledgment as to Obligations.

A. Borrower, and Guarantor each acknowledge, confirm and agree that as of March 8, 2023, the total outstanding principal balance of the Note is $8,048,553.63 plus accrued and unpaid interest thereon.

B. Borrower and Guarantor, and each of them, specifically acknowledge and confirm that they do not have any valid offset or defense to the obligations, indebtedness and liability under the Loan Documents.

3. Reaffirmation of Obligations.

This Extension Agreement is, in part, a reaffirmation of the obligations, indebtedness and liability of Borrower and Guarantor, and each of them, to Lender as evidenced by the Loan Documents. Therefore, Borrower and Guarantor, and each of them, acknowledge and agree that, except as specified herein, all of the terms and conditions of the Loan Documents are and shall remain in full force and effect, without waiver or modification of any kind whatsoever, and are ratified and confirmed in all respects.

4. Extension of Maturity Date; Limited Waiver; Debt Service Coverage Ratio.

A. The Maturity Date is hereby extended to July 8, 2023, at which time the entire principal balance under the Loan plus all accrued and unpaid interest thereon is and shall be due and payable as provided under the Loan Documents. The "Maturity Date", as defined in the Loan Agreement and referenced therein, shall hereby mean July 8, 2023.

B. Subject to Borrower's and Guarantor's complete and unconditional compliance of the terms of this Agreement and the other Loan Documents (including, without limitation, the timely and complete satisfaction of each and all of the conditions precedent set forth in Section 9 of this Extension Agreement), Lender waives, on a one-time basis only, the DSCR Covenant Violation. The waiver set forth in this Section 4(B) applies only to the DSCR Covenant Violation, and shall be effective only to the extent specifically set forth herein and shall not (i) be construed as a waiver of any breach, default or event of default other than the DSCR Covenant Violation, (ii) affect the right of Lender to demand compliance by Borrower and/or Guarantor with all terms and conditions of the Loan Documents, except as specifically waived by this Agreement, (iii) be deemed a waiver of any transaction or future action on the part of Borrower and/or Guarantor requiring Lender's consent or approval under the Loan Documents, or (iv) except as waived hereby, be deemed or construed to be a waiver or release of, or a limitation upon, Lender's exercise of any rights or remedies under any of the Loan Documents, whether arising as a consequence of any default or event of default which may now exist or otherwise, all such rights and remedies hereby being expressly reserved. In the event that another Event of Default (or event which, with the giving of

notice or the passage of time, or both, would become an Event of Default) exists, such failure shall be a further Event of Default and Lender shall be entitled to exercise any and all of its rights and remedies hereunder, under the Loan Documents and at law and/or in equity.

C. Notwithstanding the foregoing limited waiver provided in Section 4(B) above and anything set forth in Section 4.23 of the Loan Agreement, Borrower shall be required to maintain a Debt Service Coverage Ratio of not less than 1.25 to 1.00 ("DSCR Requirement"), at all times during the remaining term of the Loan, which shall be tested semi-annually (A) on June 30 of each calendar year, measured for the preceding six (6) consecutive calendar month period of time, commencing on June 30, 2023, and (B) on December 31 of each calendar year, measured for the preceding twelve (12) consecutive calendar month period of time, commencing on December 31, 2023. In connection therewith, Borrower shall deliver to Lender a profit and loss statement for Borrower and such Financial Statements and other documentation and evidence as shall be satisfactory to Lender, in Lender's sole and absolute opinion and judgment, evidencing Borrower's compliance with such minimum Debt Service Coverage Ratio requirement.

5. Payment Reserve Account.

As a condition precedent to the effectiveness of this Extension Agreement, Borrower shall deposit in a deposit account with Lender, Acct No. 1022431 ("Payment Reserve Account") an amount not less than $220,000.00 from Borrower's own funds. The Payment Reserve Account shall be (i) a bank-controlled account and Borrower shall not have the right to withdraw funds from the Payment Reserve Account during the term of the Loan without the express, prior written consent of Lender, which Lender may give or withhold in its sole and absolute discretion; and (ii) assigned to Lender as additional collateral for the Loan pursuant to a Security Assignment (Assignment of Deposit Account) ("Assignment of Deposit Account"), executed by Borrower in favor of Lender, in form and content satisfactory to Lender in Lender's sole opinion and judgment. Notwithstanding the existence of the Payment Reserve Account, Borrower shall be responsible to pay principal and interest due under the terms of the Note from sources other than the Payment Reserve Account. Upon the occurrence of any Event of Default, Lender may withdraw funds from the Payment Reserve Account to pay any amounts of principal and interest due and unpaid under the Note, in Lender's sole and absolute opinion and judgment, without further authorization on the part of Borrower. Borrower acknowledges that Lender has made no representation or warranty concerning the adequacy or sufficiency of the funds that may, at any time, be maintained in the Payment Reserve Account for payment of principal and interest on the Loan or any portion thereof.

6. Extension Agreement as a Loan Document.

From and after the effective date of this Extension Agreement, this Extension Agreement and any other documents and instruments executed in connection herewith shall each constitute one of the "Loan Documents."

7. Effective Date of Amendment.

This Extension Agreement and the amendments provided for herein shall be effective as of March 8, 2023, upon the timely and complete satisfaction of each and all of the conditions precedent set forth in Section 9 of this Extension Agreement.

8. Borrower's and Guarantor's Representations and Warranties.

Borrower and Guarantor, and each of them, hereby represent and warrant to Lender and covenant and agree with Lender as follows:

A. Borrower and Guarantor, and each of them, have full legal right, power and authority to enter into and perform this Extension Agreement. The execution and delivery of this Extension Agreement by Borrower and the consummation by Borrower of the transactions contemplated hereby have been duly authorized by all necessary action by or on behalf of Borrower. This Extension Agreement is a valid and binding obligation of Borrower and Guarantor, and each of them, enforceable against Borrower and Guarantor in accordance with its terms.

B. Neither the execution and delivery of this Extension Agreement by Borrower and Guarantor, or any of them, nor the consummation by Borrower and Guarantor, or any of them, of the transactions contemplated hereby, conflicts with or constitutes a violation or a default under any law or regulation applicable to Borrower and Guarantor, or any of them, or any contract, commitment, agreement, arrangement or restriction of any kind to which Borrower and Guarantor, or any of them, is a party, by which Borrower and Guarantor, or any of them, is bound or to which any of Borrower's and Guarantor's, or any of their, property or assets is subject.

C. There are no actions, suits or proceedings pending, or to the knowledge of Borrower and Guarantor, or any of them, threatened against or affecting Borrower and Guarantor, or any of them, respectively, in relation to their obligations to Lender or involving the validity and enforceability of this Extension Agreement, the Note, the Loan Agreement, the Deed of Trust, the Guaranty or any of the other Loan Documents, as applicable, or the priority of any liens given by Borrower to Lender in accordance with the Note, the Loan Agreement, the Deed of Trust, and the other Loan Documents, at Law or in equity, or before or by any Governmental Agency, or which could have a material adverse effect on the financial condition, operations, properties, assets, liabilities or earnings of Borrower and Guarantor, or any of them, or the ability of Borrower and Guarantor, or any of them, to perform their respective obligations to Lender.

D. Borrower and Guarantor, and each of them, hereby reaffirm and confirm that the representations and warranties of Borrower and Guarantor, as applicable, contained in the Loan Documents are true, correct and complete in all material respects as of the date of this Extension Agreement.

E. Borrower and Guarantor, and each of them, are in full and complete compliance with the terms, covenants, provisions and conditions of the Note, the Loan Agreement, the Deed of Trust, the Guaranty and the other Loan Documents.

F. Neither Borrower nor Guarantor has any actual knowledge of any release of Hazardous Substances (as defined in the Indemnity Agreement) on the Property.

All covenants, representations and warranties of Borrower and Guarantor herein are incorporated by reference and hereby made a part of the Loan Agreement and the Guaranty, as applicable.

9. Conditions Precedent to Effectiveness of Extension Agreement.

The effectiveness of this Extension Agreement is expressly conditioned upon Borrower having, at its sole expense, deposited or caused to be deposited with Lender as of March 31, 2023, all of the following items, documents, certificates and other instruments, in form and content satisfactory to Lender and its counsel, in their sole and absolute discretion, and suitable for filing or recording as required:

A. This Extension Agreement, fully executed by Borrower and Guarantor;

B. Borrower shall have paid to Lender a nonrefundable extension fee in the total amount of $5,000.00 (the "Extension Fee") from Borrower's own funds, which Extension Fee shall be deemed fully earned when paid;

C. Borrower shall have opened up the Payment Reserve Account and deposited the amount of $220,000.00 into such account from Borrower's own funds;

D. Borrower shall have executed the Assignment of Deposit Account and delivered same to Lender;

E. Borrower shall have paid to Lender the monthly installment payments of principal and interest required under the Note through and including the due date of March 8, 2023;

F. Such additional information, assignments, agreements, certificates, reports, approvals, instruments, documents, subordination agreements, financing statements, consents and opinions as Lender may request, in its sole and absolute opinion and judgment, in connection with this Extension Agreement and/or any of the matters which are the subject of this Extension Agreement; and

G. [Intentionally omitted.]

10. General Release.

A. Except as to the obligations imposed upon Lender, as provided herein, Borrower and Guarantor, and each of them, on behalf of themselves, their respective successors and assigns, and each of them, do each hereby forever relieve, release, acquit and discharge Lender and its predecessors, successors and assigns, and their respective past and present attorneys, accountants, insurers, representatives, affiliates, partners, subsidiaries, officers, employees, directors, and shareholders, and each of them (collectively, the "Released Parties"), from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, costs and expenses (including, but not limited to, attorneys' fees), damages, injuries, actions and causes of action, of whatever kind or nature, whether legal or equitable, known or unknown, suspected or unsuspected, contingent or fixed, which Borrower and Guarantor, or any of them,

now own or hold or have at any time heretofore owned or held or may at any time hereafter own or hold against the Released Parties, or any of them, by reason of any acts, facts, transactions or any circumstances whatsoever occurring or existing through the date of this Extension Agreement, including, but not limited to, those based upon, arising out of, appertaining to, or in connection with the Recitals above, the Loan, the Loan Documents, the facts pertaining to this Extension Agreement, any collateral heretofore granted to Lender or granted in connection herewith, or to any other obligations of Borrower and/or Guarantor to Lender, all jointly and severally.

B. As to the matters released herein, Borrower and Guarantor, and each of them, expressly waive any and all rights under Section 1542 of the Civil Code of the State of California, which provides as follows:

> "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

Borrower and Guarantor, and each of them, expressly waive and release any right or benefit which they have or may have under Section 1542 of the Civil Code of the State of California, and any similar law of any state, territory, commonwealth or possession of the United States, or the United States, to the full extent that they may waive all such rights and benefits pertaining to the matters released herein. In connection with such waiver and relinquishment, Borrower and Guarantor, and each of them, acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true. Nevertheless, it is the intention of Borrower and Guarantor, and each of them, through this Extension Agreement, to fully, finally and forever release all such matters, and all claims relative thereto, which do now exist, may exist, or heretofore have existed. In furtherance of such intention, the release herein given shall be and remain in effect as a full and complete release of such matters notwithstanding the discovery or existence of any such additional or different claims or facts relative thereto.

C. In entering into the release provided for in this Extension Agreement, Borrower and Guarantor, and each of them, recognize that no facts or representations are ever absolutely certain; accordingly, Borrower and Guarantor, and each of them, assume the risk of any misrepresentation, concealment or mistake, and if Borrower and Guarantor, or any of them, should subsequently discover that any fact that they relied upon in entering into these releases was untrue, or that any fact was concealed from them, or that any understanding of the facts or of the law was incorrect, Borrower and Guarantor, and each of them, shall be not entitled to set aside these releases by reason thereof, regardless of any claims of fraud, misrepresentation, promise made without the intention of performing it, concealment of fact, mistake of fact or law, or any other circumstances whatsoever.

D. Borrower and Guarantor, and each of them, are the sole and lawful owners of all right, title and interest in and to every claim and other matter which they purport to release herein, and they have not heretofore assigned or transferred, or purported to assign or transfer to

any person or any entity claims or other matters herein released. Borrower and Guarantor, and each of them, shall indemnify, defend and hold Lender and each of the other Released Parties, harmless from and against any claims, liabilities, actions, causes of action, demands, injuries, costs, and expenses (including, but not limited to, attorneys' fees), based upon or arising in connection with any such prior assignment or transfer, or any such purported assignment or transfer, or any claims or other matters released herein.

11. Revival of Obligation.

A. Borrower and Guarantor, and each of them, acknowledge and agree that in the event that the payment of money, this Extension Agreement, or the grant of collateral should for any reason subsequently be declared to be "fraudulent" within the meaning of any state, federal or foreign law relating to fraudulent conveyances, preferential or otherwise voidable or recoverable, in whole or in part, for any reason, under the United States Bankruptcy Code or any other federal, foreign or state law (collectively referred to herein as "Voidable Transfer"), and Lender is required to pay or restore any such Voidable Transfer, or any portion thereof, then as to that which is repaid or restored pursuant to any such Voidable Transfer (including all costs, expenses and attorneys' fees of Lender related thereto, including, without limitation, relief from stay or similar proceedings), the liability of Borrower and Guarantor, and each of them, shall automatically be revived, reinstated and restored to the extent thereof, and shall exist as though such Voidable Transfer had never been made to Lender.

B. Nothing set forth herein is an admission that such Voidable Transfer has occurred. Borrower and Guarantor, and each of them, expressly acknowledge that Lender may rely upon advice of counsel, and if so advised by counsel, may, in the exercise of Lender's sole opinion and judgment, settle, without defending, any action to void any alleged Voidable Transfer, and that upon such settlement, Borrower and Guarantor, and each of them, shall again be liable for any deficiency resulting from such settlement as provided in this Extension Agreement.

C. As an additional inducement to and material consideration for Lender agreeing to the amendment provided in this Extension Agreement, Borrower and Guarantor, and each of them, agree that in the event a Bankruptcy or Judicial Action (as hereinafter defined in this Section 11) is commenced which subjects Lender to any stay in the exercise of Lender's rights and remedies under the Loan Documents including, but not limited to, the automatic stay imposed by Section 362 of the United States Bankruptcy Code (individually and collectively, "Stay"), then Borrower and Guarantor, and each of them, irrevocably consent and agree that such Stay shall automatically be lifted and released against Lender, and Lender shall thereafter be entitled to exercise all of its rights and remedies against Borrower and Guarantor, and each of them, under the Loan Documents, subject, however, to the terms and conditions of this Extension Agreement. Borrower and Guarantor, and each of them, acknowledge that each is knowingly, voluntarily, and intentionally waiving each of such party's rights to any Stay and agrees that the benefits provided to Borrower and Guarantor under the terms of this Extension Agreement are valuable consideration for such waiver. As used in this Section 11, the term "Bankruptcy or Judicial Action" shall mean any voluntary or involuntary case filed by or against Borrower and/or Guarantor, or any of them, under the United States Bankruptcy Code, or any voluntary or involuntary petition in composition, readjustment, liquidation, or dissolution, or any state and

federal bankruptcy law action filed by or against Borrower and Guarantor, or any of them, any action where Borrower or Guarantor, or any of them, are adjudicated as bankrupt or insolvent, any action for dissolution of Borrower or Guarantor, or any of them, or any action in furtherance of any of the foregoing, or any other action, case, or proceeding that has the effect of staying (or in which a stay is being obtained against) the enforcement by Lender of its rights and remedies under this Extension Agreement, or any of the Loan Documents.

12. No Joint Venture, Management and Control. Notwithstanding any provision of this Extension Agreement and/or of the Loan Documents:

A. Lender is not and shall not be construed to be a partner, joint venture, alter ego, manager, controlling person or other business associate or participant of any kind of Borrower and Guarantor, or any of them, or any other person;

B. Lender shall not be deemed responsible to perform or participate in any acts, omissions, or decisions of Borrower and Guarantor, or any of them; and

C. Borrower and Guarantor, and each of them, do not have any claims, causes of action or defenses to their obligations to Lender based on any allegations of management or control exercised by Lender. Borrower and Guarantor, and each of them, acknowledge and agree that Lender does not manage or control them in any way.

13. Miscellaneous.

A. Section headings used in this Extension Agreement are for convenience only and shall not affect the construction of this Extension Agreement.

B. This Extension Agreement may be executed in one or more counterparts but all of the counterparts shall constitute one agreement; provided, however, this Extension Agreement shall not be effective and enforceable unless and until it is executed by all parties hereto.

C. This Extension Agreement and the other documents and instruments executed in connection therewith constitute the product of the negotiation of the parties hereto and the enforcement hereof shall be interpreted in a neutral manner, and not more strongly for or against any party based upon the source of the draftsmanship hereof.

D. This Extension Agreement shall be binding upon and inure to the benefit of Lender, Borrower and Guarantor, and each of them, and their respective successors and assigns, except that neither Borrower nor Guarantor shall assign their rights hereunder or any interest therein without the prior written consent of Lender.

E. This Extension Agreement is not a novation, nor, except as expressly provided in this Extension Agreement, is it to be construed as a release or modification of any of the terms, conditions, warranties, waivers or rights set forth in the Loan Documents. Nothing contained in this Extension Agreement shall be deemed to constitute a waiver by Lender of any required performance by Borrower or Guarantor, and each of them, of any Event of Default or default heretofore or hereafter occurring under or in connection with the other Loan Documents.

In the event there is a conflict in any term, condition or provision of this Extension Agreement, on the one hand, and the Note, the Loan Agreement, the Deed of Trust, the Guaranty, or any of the other Loan Documents, on the other hand, the terms, conditions and provisions of this Extension Agreement are to control.

F. Borrower and Guarantor, and each of them, further represent and warrant as follows:

(1) They have received, or have had the opportunity to receive, independent legal advice from attorneys of each of their choice with respect to the advisability of executing this Extension Agreement and prior to the execution of this Extension Agreement by Borrower and Guarantor, their attorneys reviewed this Extension Agreement and discussed this Extension Agreement with them and have made all desired changes;

(2) Except as expressly stated in this Extension Agreement, neither Lender nor any other person or entity has made any statement or representation to Borrower or Guarantor regarding facts relied upon by any of them;

(3) Borrower and Guarantor, and each of them, do not rely upon any statement, representation or promise of Lender or any other person or entity in executing this Extension Agreement except as expressly stated in this Extension Agreement;

(4) The terms of this Extension Agreement are contractual and not a mere recital;

(5) This Extension Agreement has been carefully read by, the contents hereof are known and understood by, and it is signed freely by Borrower and Guarantor, and each of them; and

(6) This Extension Agreement and the releases contained herein are intended to be final and binding against Borrower and Guarantor, and each of them, and each of them acknowledge that Lender is expressly relying on the finality of this Extension Agreement as a substantial, material factor inducing Lender's execution of this Extension Agreement. Borrower and Guarantor, and each of them, have the full right and authority to enter into this Extension Agreement, and the officer, agent or other representative executing this Extension Agreement on behalf of Borrower has the full right and authority to fully commit and bind it to this Extension Agreement.

[Signature page to follow.]

IN WITNESS WHEREOF, Borrower, Guarantor and Lender have executed and delivered this Extension Agreement as of the date set forth above.

**BORROWER:**

SDRES PARTNERS LLC,
a California limited liability company

By: Cantor Group LLC
a California limited liability company
Its: Managing Member

By:
Name: Deba Shyam
Its: General Manager

**GUARANTOR:**

______________________________
ANDREW STUPIN, an individual

**LENDER:**

PREFERRED BANK,
a California banking corporation

By: ________________________
Name: ______________________
Title: _______________________

IN WITNESS WHEREOF, Borrower, Guarantor and Lender have executed and delivered this Extension Agreement as of the date set forth above.

**BORROWER**:

SDRES PARTNERS LLC,
a California limited liability company

By: Cantor Group LLC
a California limited liability company
Its: Managing Member

By: ______________________
Name: Deba Shyam
Its: General Manager

**GUARANTOR:**

______________________
ANDREW STUPIN, an individual

**LENDER**:

PREFERRED BANK,
a California banking corporation

By: ______________________
Name: Carol Lee
Title: SVP

**EXHIBIT "A-1"**
LEGAL DESCRIPTION OF THE 210 ORANGE GROVE PROPERTY

The land situated in the City of Pasadena, County of Los Angeles, State of California, and described as follows:

PARCEL 1:

LOT 10 OF TRACT NO. 63103, IN THE CITY OF PASADENA, AS PER MAP RECORDED IN BOOK 1369 PAGES 35 THROUGH 52 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AMENDED PURSUANT TO THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED DECEMBER 3, 2013 AS INSTRUMENT NO. 20131708591 OF OFFICIAL RECORDS.

PARCEL 2:

A RECIPROCAL ACCESS EASEMENT OVER THOSE AREAS SET OUT ON THE MAP SHOWN ABOVE.

PARCEL 3:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN CONSOLIDATED AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (SOUTH ORANGE GROVE PARCELS) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716500 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 4:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN ROSE PARADE GRANDSTAND EASEMENT AGREEMENT (ORANGE GROVE AVENUE) RECORDED JULY 21, 2005 AS INSTRUMENT NOS. 05-1721787 AND 05-1721788 BOTH OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 5:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING GARAGE EASEMENT AGREEMENT RECORDED JULY 2, 2007 AS INSTRUMENT NO. 20071579026 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 6:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING EASEMENT AGREEMENT

**RECORDED DECEMBER 28, 2011 AS INSTRUMENT NO. 20111763712 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.**

**APN: 5713-013-057**

**EXHIBIT "A-2"**
LEGAL DESCRIPTION OF THE 244 ORANGE GROVE PROPERTY

The land situated in the City of Pasadena, County of Los Angeles, State of California, and described as follows:

PARCEL 1:

LOT 12 OF TRACT NO. 63103, IN THE CITY OF PASADENA, AS PER MAP RECORDED IN BOOK 1369 PAGES 35 THROUGH 52 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AMENDED PURSUANT TO THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED DECEMBER 3, 2013 AS INSTRUMENT NO. 20131708591 OF OFFICIAL RECORDS.

PARCEL 2:

A RECIPROCAL ACCESS EASEMENT OVER THOSE AREAS SET OUT ON THE MAP SHOWN ABOVE.

PARCEL 3:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN CONSOLIDATED AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (SOUTH ORANGE GROVE PARCELS) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716500 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 4:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (DEL MAR PARCEL) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716499 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 5:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN ROSE PARADE GRANDSTAND EASEMENT AGREEMENT (ORANGE GROVE AVENUE) RECORDED JULY 21, 2005 AS INSTRUMENT NOS. 05-1721787 AND 05-1721788 BOTH OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 6:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING GARAGE EASEMENT AGREEMENT RECORDED JULY 2, 2007 AS INSTRUMENT NO. 20071579026 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 7:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING EASEMENT AGREEMENT RECORDED DECEMBER 28, 2011 AS INSTRUMENT NO. 20111763712 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

APN: 5713-027-065

# Exhibit R

# FOURTH EXTENSION AGREEMENT

THIS FOURTH EXTENSION AGREEMENT (this "Extension Agreement") is entered into as of June 28, 2023, by and between by and between SDRES PARTNERS LLC, a California limited liability company ("Borrower"), and ANDREW STUPIN, an individual ("Guarantor"), on the one hand, and PREFERRED BANK, a California banking corporation ("Lender"), on the other hand.

## RECITALS

A. Lender has made a loan (the "Loan") to CANTOR GROUP LLC, a California limited liability company ("Original Borrower"), for the purpose of financing Original Borrower's acquisition of the Property (as hereinafter defined). The Loan was and is evidenced, in part, by that certain Promissory Note dated June 8, 2017, in the original principal amount of Eight Million Four Hundred Thousand and No/100 Dollars ($8,400,000.00), executed by Original Borrower in favor of Lender (together with any and all amendments and extensions thereto or modifications thereof, the "Original Note").

B. In connection with the Loan, Original Borrower also executed and delivered to and in favor of Lender, the following additional documents, among others:

1. Loan Agreement dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "Loan Agreement"), executed by and between Original Borrower and Lender;

2. Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "210 Orange Grove Deed of Trust"), executed by Original Borrower as trustor in favor of Lender, which was recorded on June 16, 2017, as Instrument No. 20170671620, in the Official Records of Los Angeles County, California, encumbering the real property more commonly known as 210 South Orange Grove, Pasadena, California, and more particularly described in Exhibit "A-1" attached hereto and incorporated herein by this reference ("210 Orange Grove Property");

3. Absolute Assignment of Leases, Lease Guaranties, Rents, Issues and Profits dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "210 Orange Grove Assignment of Leases"), executed by Original Borrower in favor of Lender, which was recorded on June 16, 2017, as Instrument No. 20170671621, in the Official Records of Los Angeles County, California;

4. Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "244 Orange Grove Deed of Trust" and together with the 210 Orange Grove Property, individually and collectively, the "Deed of Trust"), executed by Original Borrower as trustor in favor of Lender, which was recorded on June 16, 2017, as Instrument No. 20170671625, in the Official Records of Los Angeles County, California, encumbering the real property more commonly known as 244 South Orange Grove, Pasadena, California, and more particularly described in Exhibit "A-2" attached hereto and incorporated herein by this reference

(the "244 Orange Grove Property", and together with the 210 Orange Grove Property, individually and collectively, the "Property");

5. Absolute Assignment of Leases, Lease Guaranties, Rents, Issues and Profits dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "244 Orange Grove Assignment of Leases" and together with the 210 Orange Grove Assignment of Leases, individually and collectively, the "Assignment of Leases"), executed by Original Borrower in favor of Lender, which was recorded on June 16, 2017, as Instrument No. 20170671626, in the Official Records of Los Angeles County, California; and

6. Hazardous Substances Indemnity Agreement dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "Indemnity Agreement"), executed by Original Borrower and Guarantor in favor of Lender, and covering the Property.

C. Payment and performance of Borrower's indebtedness and obligations in connection with the Loan was and is guaranteed by Guarantor, who delivered to and in favor of Lender a Continuing Guaranty dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "Guaranty").

D. Pursuant to that certain Assumption Agreement dated June 8, 2017, by and among Original Borrower, Guarantor and Borrower, and a Memorandum of Assumption Agreement dated June 8, 2017, recorded in connection with each Property (collectively, the "Assumption Documents"), Lender consented to a transfer of one hundred percent (100%) of Original Borrower's right, title and interest in and to each Property to Borrower, and Borrower's assumption of any and all of Original Borrower's indebtedness and obligations to Lender under and in connection with the Loan Agreement, Original Note, Deed of Trust, Assignment of Leases, Indemnity Agreement and any and all other instruments, agreements and/or documents executed by Original Borrower in connection therewith.

E. On or about March 25, 2019, Borrower, Guarantor and Lender entered into that certain Modification of Deed of Trust and Amendment to Loan Documents dated as of March 25, 2019 (the "Modification"), whereby, among other things, (i) the interest rate and the repayment terms under the Original Note were modified pursuant to that certain Amended and Restated Promissory Note dated March 25, 2019, in the maximum principal amount of $8,400,000.00, executed by Borrower in favor of Lender (the "Note"), which Note amended and restated the Original Note in its entirety, and (ii) Borrower was permitted to subdivide the Property into two or more parcels and to sell any such parcels to third parties subject to the terms and conditions more particularly described therein.

F. On or around May 20, 2020, Borrower, Guarantor and Lender entered into that certain Payment Deferral Agreement and Limited Waiver dated May 20, 2020 (the "Payment Deferral Agreement"), whereby, among other things, beginning with the Loan payment due on May 8, 2020, Borrower's regularly scheduled monthly payments of interest under the Note was deferred in its entirety for a period of two (2) months through and including the payment due on June 8, 2020 ("Payment Deferral Period"). Beginning with the Loan payment due on July 8,

2020, all payments due and owing under the Note reverted back to the payment terms in effect directly prior to the Payment Deferral Period, as set forth in the Note.

G. On or about May 24, 2022, Borrower, Guarantor and Lender entered into that certain Extension Agreement dated as of May 24, 2022 (the "First Extension"), whereby, among other things, the maturity date of the Note was extended from June 8, 2022 to September 8, 2022.

H. On or about September 7, 2022, Borrower, Guarantor and Lender entered into that certain Second Extension Agreement dated as of September 7 2022 (the "Second Extension"), whereby, among other things, the maturity date of the Note was extended from September 8, 2022 to March 8, 2023.

I. On or about March 14, 2023, Borrower, Guarantor and Lender entered into that certain Third Extension Agreement dated as of March 14, 2023 (the "Third Extension"), whereby, among other things, the maturity date of the Note was extended from March 8, 2023 to July 8, 2023.

J. In connection with the Third Extension, (i) Borrower executed and delivered to Lender that certain Security Agreement (Assignment of Deposit Account) dated as March 14, 2023 (the "Assignment of Deposit Account"), whereby, among other things, Borrower assigned, pledged, and transferred to Lender all of Borrower's right, title, and interest in and to that certain deposit account with Lender in the name of "SDRES PARTNERS LLC" and maintained at Lender, Account No. 1022431 (the "Payment Reserve Account"), as further set forth therein, and (ii) Borrower deposited the sum of $220,000.00 into the Payment Reserve Account. Lender's security interest in the Payment Reserve Account was and is perfected under applicable law.

K. Pursuant to each Deed of Trust and the Assumption Documents, Borrower granted to and in favor of Lender a first priority security interest in and lien upon certain real and personal property described in each Deed of Trust (the "Deed of Trust Collateral"), to secure, without limitation, payment and performance of the indebtedness and obligations under and in connection with the Loan and the Original Note, as amended and restated in its entirety by the Note. Lender's security interest in the Deed of Trust Collateral was and is perfected under applicable law.

L. The Note, Loan Agreement, Deed of Trust, Assignment of Leases, Indemnity Agreement, Assumption Documents, Guaranty, Modification, Payment Deferral Agreement, First Extension, Second Extension, Third Extension, Assignment of Deposit Account and all other assignments, agreements, instruments and other documents executed by Borrower (and Original Borrower) and/or Guarantor in connection with the Loan shall at times hereinafter be referred to collectively as the "Loan Documents."

M. Borrower and Guarantor have each requested that Lender extend the maturity date of the Note from July 8, 2023 to November 8, 2023. Lender is willing to agree to said request, subject to the terms and conditions set forth in this Extension Agreement.

Except as may be otherwise expressly defined in this Extension Agreement, all terms used in this Extension Agreement beginning with a capital letter shall have the meanings ascribed to them in the Loan Agreement.

## AGREEMENT

NOW, THEREFORE, for valuable consideration and the mutual promises of the parties hereto, said parties do hereby acknowledge and agree as follows:

1. Recitals.

The recitals are incorporated herein by this reference as are all exhibits. Borrower and Guarantor, and each of them, agree and acknowledge that the factual information recited above is true and correct.

2. Borrower and Guarantor Acknowledgment as to Obligations.

A. Borrower, and Guarantor each acknowledge, confirm and agree that as of June 28, 2023, (i) the total outstanding principal balance of the Note is $8,019,039.24 plus accrued and unpaid interest thereon, and (ii) the sum of $220,000.00 remains in the Payment Reserve Account, subject to the terms, conditions and provisions of the Loan Documents.

B. Borrower and Guarantor, and each of them, specifically acknowledge and confirm that they do not have any valid offset or defense to the obligations, indebtedness and liability under the Loan Documents.

3. Reaffirmation of Obligations.

This Extension Agreement is, in part, a reaffirmation of the obligations, indebtedness and liability of Borrower and Guarantor, and each of them, to Lender as evidenced by the Loan Documents. Therefore, Borrower and Guarantor, and each of them, acknowledge and agree that, except as specified herein, all of the terms and conditions of the Loan Documents are and shall remain in full force and effect, without waiver or modification of any kind whatsoever, and are ratified and confirmed in all respects.

4. Extension of Maturity Date.

The Maturity Date is hereby extended to November 8, 2023, at which time the entire principal balance under the Loan plus all accrued and unpaid interest thereon is and shall be due and payable as provided under the Loan Documents. The "Maturity Date", as defined in the Loan Agreement and referenced therein, shall hereby mean November 8, 2023.

5. Payment Reserve Account.

The Payment Reserve Account shall continue to be (i) a bank-controlled account and Borrower shall not have the right to withdraw funds from the Payment Reserve Account during the term of the Loan without the express, prior written consent of Lender, which Lender

may give or withhold in its sole and absolute discretion; and (ii) assigned to Lender as additional collateral for the Loan pursuant to the Assignment of Deposit Account. Notwithstanding the existence of the Payment Reserve Account, Borrower shall continue to be responsible to pay principal and interest due under the terms of the Note from sources other than the Payment Reserve Account. Upon the occurrence of any Event of Default, Lender may withdraw funds from the Payment Reserve Account to pay any amounts of principal and interest due and unpaid under the Note, in Lender's sole and absolute opinion and judgment, without further authorization on the part of Borrower. Borrower acknowledges that Lender has made no representation or warranty concerning the adequacy or sufficiency of the funds that may, at any time, be maintained in the Payment Reserve Account for payment of principal and interest on the Loan or any portion thereof.

6. Extension Agreement as a Loan Document.

From and after the effective date of this Extension Agreement, this Extension Agreement and any other documents and instruments executed in connection herewith shall each constitute one of the "Loan Documents."

7. Effective Date of Amendment.

This Extension Agreement and the amendments provided for herein shall be effective as of the date and year first written above, upon the timely and complete satisfaction of each and all of the conditions precedent set forth in Section 9 of this Extension Agreement.

8. Borrower's and Guarantor's Representations and Warranties.

Borrower and Guarantor, and each of them, hereby represent and warrant to Lender and covenant and agree with Lender as follows:

A. Borrower and Guarantor, and each of them, have full legal right, power and authority to enter into and perform this Extension Agreement. The execution and delivery of this Extension Agreement by Borrower and the consummation by Borrower of the transactions contemplated hereby have been duly authorized by all necessary action by or on behalf of Borrower. This Extension Agreement is a valid and binding obligation of Borrower and Guarantor, and each of them, enforceable against Borrower and Guarantor in accordance with its terms.

B. Neither the execution and delivery of this Extension Agreement by Borrower and Guarantor, or any of them, nor the consummation by Borrower and Guarantor, or any of them, of the transactions contemplated hereby, conflicts with or constitutes a violation or a default under any law or regulation applicable to Borrower and Guarantor, or any of them, or any contract, commitment, agreement, arrangement or restriction of any kind to which Borrower and Guarantor, or any of them, is a party, by which Borrower and Guarantor, or any of them, is bound or to which any of Borrower's and Guarantor's, or any of their, property or assets is subject.

C. There are no actions, suits or proceedings pending, or to the knowledge of Borrower and Guarantor, or any of them, threatened against or affecting Borrower and

Guarantor, or any of them, respectively, in relation to their obligations to Lender or involving the validity and enforceability of this Extension Agreement, the Note, the Loan Agreement, the Deed of Trust, the Guaranty or any of the other Loan Documents, as applicable, or the priority of any liens given by Borrower to Lender in accordance with the Note, the Loan Agreement, the Deed of Trust, and the other Loan Documents, at Law or in equity, or before or by any Governmental Agency, or which could have a material adverse effect on the financial condition, operations, properties, assets, liabilities or earnings of Borrower and Guarantor, or any of them, or the ability of Borrower and Guarantor, or any of them, to perform their respective obligations to Lender.

D. Borrower and Guarantor, and each of them, hereby reaffirm and confirm that the representations and warranties of Borrower and Guarantor, as applicable, contained in the Loan Documents are true, correct and complete in all material respects as of the date of this Extension Agreement.

E. Borrower and Guarantor, and each of them, are in full and complete compliance with the terms, covenants, provisions and conditions of the Note, the Loan Agreement, the Deed of Trust, the Guaranty and the other Loan Documents.

F. Neither Borrower nor Guarantor has any actual knowledge of any release of Hazardous Substances (as defined in the Indemnity Agreement) on the Property.

All covenants, representations and warranties of Borrower and Guarantor herein are incorporated by reference and hereby made a part of the Loan Agreement and the Guaranty, as applicable.

9. Conditions Precedent to Effectiveness of Extension Agreement.

The effectiveness of this Extension Agreement is expressly conditioned upon Borrower having, at its sole expense, deposited or caused to be deposited with Lender as of July 24, 2023, all of the following items, documents, certificates and other instruments, in form and content satisfactory to Lender and its counsel, in their sole and absolute discretion, and suitable for filing or recording as required:

A. This Extension Agreement, fully executed by Borrower and Guarantor;

B. Borrower shall have paid to Lender a nonrefundable extension fee in the total amount of $3,000.00 (the "Extension Fee") from Borrower's own funds, which Extension Fee shall be deemed fully earned when paid;

C. [Reserved];

D. [Reserved];

E. Borrower shall have paid to Lender interest required under the Note through and including the due date of July 8, 2023;

F. Such additional information, assignments, agreements, certificates, reports, approvals, instruments, documents, subordination agreements, financing statements,

consents and opinions as Lender may request, in its sole and absolute opinion and judgment, in connection with this Extension Agreement and/or any of the matters which are the subject of this Extension Agreement; and

G. [Reserved].

10. General Release.

A. Except as to the obligations imposed upon Lender, as provided herein, Borrower and Guarantor, and each of them, on behalf of themselves, their respective successors and assigns, and each of them, do each hereby forever relieve, release, acquit and discharge Lender and its predecessors, successors and assigns, and their respective past and present attorneys, accountants, insurers, representatives, affiliates, partners, subsidiaries, officers, employees, directors, and shareholders, and each of them (collectively, the "Released Parties"), from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, costs and expenses (including, but not limited to, attorneys' fees), damages, injuries, actions and causes of action, of whatever kind or nature, whether legal or equitable, known or unknown, suspected or unsuspected, contingent or fixed, which Borrower and Guarantor, or any of them, now own or hold or have at any time heretofore owned or held or may at any time hereafter own or hold against the Released Parties, or any of them, by reason of any acts, facts, transactions or any circumstances whatsoever occurring or existing through the date of this Extension Agreement, including, but not limited to, those based upon, arising out of, appertaining to, or in connection with the Recitals above, the Loan, the Loan Documents, the facts pertaining to this Extension Agreement, any collateral heretofore granted to Lender or granted in connection herewith, or to any other obligations of Borrower and/or Guarantor to Lender, all jointly and severally.

B. As to the matters released herein, Borrower and Guarantor, and each of them, expressly waive any and all rights under Section 1542 of the Civil Code of the State of California, which provides as follows:

> "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

Borrower and Guarantor, and each of them, expressly waive and release any right or benefit which they have or may have under Section 1542 of the Civil Code of the State of California, and any similar law of any state, territory, commonwealth or possession of the United States, or the United States, to the full extent that they may waive all such rights and benefits pertaining to the matters released herein. In connection with such waiver and relinquishment, Borrower and Guarantor, and each of them, acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true. Nevertheless, it is the intention of Borrower and Guarantor, and each of them, through this Extension Agreement, to fully, finally and forever release all such matters, and all claims relative thereto, which do now exist, may

exist, or heretofore have existed. In furtherance of such intention, the release herein given shall be and remain in effect as a full and complete release of such matters notwithstanding the discovery or existence of any such additional or different claims or facts relative thereto.

C. In entering into the release provided for in this Extension Agreement, Borrower and Guarantor, and each of them, recognize that no facts or representations are ever absolutely certain; accordingly, Borrower and Guarantor, and each of them, assume the risk of any misrepresentation, concealment or mistake, and if Borrower and Guarantor, or any of them, should subsequently discover that any fact that they relied upon in entering into these releases was untrue, or that any fact was concealed from them, or that any understanding of the facts or of the law was incorrect, Borrower and Guarantor, and each of them, shall be not entitled to set aside these releases by reason thereof, regardless of any claims of fraud, misrepresentation, promise made without the intention of performing it, concealment of fact, mistake of fact or law, or any other circumstances whatsoever.

D. Borrower and Guarantor, and each of them, are the sole and lawful owners of all right, title and interest in and to every claim and other matter which they purport to release herein, and they have not heretofore assigned or transferred, or purported to assign or transfer to any person or any entity claims or other matters herein released. Borrower and Guarantor, and each of them, shall indemnify, defend and hold Lender and each of the other Released Parties, harmless from and against any claims, liabilities, actions, causes of action, demands, injuries, costs, and expenses (including, but not limited to, attorneys' fees), based upon or arising in connection with any such prior assignment or transfer, or any such purported assignment or transfer, or any claims or other matters released herein.

11. Revival of Obligation.

A. Borrower and Guarantor, and each of them, acknowledge and agree that in the event that the payment of money, this Extension Agreement, or the grant of collateral should for any reason subsequently be declared to be "fraudulent" within the meaning of any state, federal or foreign law relating to fraudulent conveyances, preferential or otherwise voidable or recoverable, in whole or in part, for any reason, under the United States Bankruptcy Code or any other federal, foreign or state law (collectively referred to herein as "Voidable Transfer"), and Lender is required to pay or restore any such Voidable Transfer, or any portion thereof, then as to that which is repaid or restored pursuant to any such Voidable Transfer (including all costs, expenses and attorneys' fees of Lender related thereto, including, without limitation, relief from stay or similar proceedings), the liability of Borrower and Guarantor, and each of them, shall automatically be revived, reinstated and restored to the extent thereof, and shall exist as though such Voidable Transfer had never been made to Lender.

B. Nothing set forth herein is an admission that such Voidable Transfer has occurred. Borrower and Guarantor, and each of them, expressly acknowledge that Lender may rely upon advice of counsel, and if so advised by counsel, may, in the exercise of Lender's sole opinion and judgment, settle, without defending, any action to void any alleged Voidable Transfer, and that upon such settlement, Borrower and Guarantor, and each of them, shall again be liable for any deficiency resulting from such settlement as provided in this Extension Agreement.

C. As an additional inducement to and material consideration for Lender agreeing to the amendment provided in this Extension Agreement, Borrower and Guarantor, and each of them, agree that in the event a Bankruptcy or Judicial Action (as hereinafter defined in this Section 11) is commenced which subjects Lender to any stay in the exercise of Lender's rights and remedies under the Loan Documents including, but not limited to, the automatic stay imposed by Section 362 of the United States Bankruptcy Code (individually and collectively, "Stay"), then Borrower and Guarantor, and each of them, irrevocably consent and agree that such Stay shall automatically be lifted and released against Lender, and Lender shall thereafter be entitled to exercise all of its rights and remedies against Borrower and Guarantor, and each of them, under the Loan Documents, subject, however, to the terms and conditions of this Extension Agreement. Borrower and Guarantor, and each of them, acknowledge that each is knowingly, voluntarily, and intentionally waiving each of such party's rights to any Stay and agrees that the benefits provided to Borrower and Guarantor under the terms of this Extension Agreement are valuable consideration for such waiver. As used in this Section 11, the term "Bankruptcy or Judicial Action" shall mean any voluntary or involuntary case filed by or against Borrower and/or Guarantor, or any of them, under the United States Bankruptcy Code, or any voluntary or involuntary petition in composition, readjustment, liquidation, or dissolution, or any state and federal bankruptcy law action filed by or against Borrower and Guarantor, or any of them, any action where Borrower or Guarantor, or any of them, are adjudicated as bankrupt or insolvent, any action for dissolution of Borrower or Guarantor, or any of them, or any action in furtherance of any of the foregoing, or any other action, case, or proceeding that has the effect of staying (or in which a stay is being obtained against) the enforcement by Lender of its rights and remedies under this Extension Agreement, or any of the Loan Documents.

12. <u>No Joint Venture, Management and Control</u>. Notwithstanding any provision of this Extension Agreement and/or of the Loan Documents:

A. Lender is not and shall not be construed to be a partner, joint venture, alter ego, manager, controlling person or other business associate or participant of any kind of Borrower and Guarantor, or any of them, or any other person;

B. Lender shall not be deemed responsible to perform or participate in any acts, omissions, or decisions of Borrower and Guarantor, or any of them; and

C. Borrower and Guarantor, and each of them, do not have any claims, causes of action or defenses to their obligations to Lender based on any allegations of management or control exercised by Lender. Borrower and Guarantor, and each of them, acknowledge and agree that Lender does not manage or control them in any way.

13. <u>Miscellaneous</u>.

A. Section headings used in this Extension Agreement are for convenience only and shall not affect the construction of this Extension Agreement.

B. This Extension Agreement may be executed in one or more counterparts but all of the counterparts shall constitute one agreement; provided, however, this Extension

Agreement shall not be effective and enforceable unless and until it is executed by all parties hereto.

C. This Extension Agreement and the other documents and instruments executed in connection therewith constitute the product of the negotiation of the parties hereto and the enforcement hereof shall be interpreted in a neutral manner, and not more strongly for or against any party based upon the source of the draftsmanship hereof.

D. This Extension Agreement shall be binding upon and inure to the benefit of Lender, Borrower and Guarantor, and each of them, and their respective successors and assigns, except that neither Borrower nor Guarantor shall assign their rights hereunder or any interest therein without the prior written consent of Lender.

E. This Extension Agreement is not a novation, nor, except as expressly provided in this Extension Agreement, is it to be construed as a release or modification of any of the terms, conditions, warranties, waivers or rights set forth in the Loan Documents. Nothing contained in this Extension Agreement shall be deemed to constitute a waiver by Lender of any required performance by Borrower or Guarantor, and each of them, of any Event of Default or default heretofore or hereafter occurring under or in connection with the other Loan Documents. In the event there is a conflict in any term, condition or provision of this Extension Agreement, on the one hand, and the Note, the Loan Agreement, the Deed of Trust, the Guaranty, or any of the other Loan Documents, on the other hand, the terms, conditions and provisions of this Extension Agreement are to control.

F. Borrower and Guarantor, and each of them, further represent and warrant as follows:

(1) They have received, or have had the opportunity to receive, independent legal advice from attorneys of each of their choice with respect to the advisability of executing this Extension Agreement and prior to the execution of this Extension Agreement by Borrower and Guarantor, their attorneys reviewed this Extension Agreement and discussed this Extension Agreement with them and have made all desired changes;

(2) Except as expressly stated in this Extension Agreement, neither Lender nor any other person or entity has made any statement or representation to Borrower or Guarantor regarding facts relied upon by any of them;

(3) Borrower and Guarantor, and each of them, do not rely upon any statement, representation or promise of Lender or any other person or entity in executing this Extension Agreement except as expressly stated in this Extension Agreement;

(4) The terms of this Extension Agreement are contractual and not a mere recital;

(5) This Extension Agreement has been carefully read by, the contents hereof are known and understood by, and it is signed freely by Borrower and Guarantor, and each of them; and

(6) This Extension Agreement and the releases contained herein are intended to be final and binding against Borrower and Guarantor, and each of them, and each of them acknowledge that Lender is expressly relying on the finality of this Extension Agreement as a substantial, material factor inducing Lender's execution of this Extension Agreement. Borrower and Guarantor, and each of them, have the full right and authority to enter into this Extension Agreement, and the officer, agent or other representative executing this Extension Agreement on behalf of Borrower has the full right and authority to fully commit and bind it to this Extension Agreement.

[Signature page to follow.]

IN WITNESS WHEREOF, Borrower, Guarantor and Lender have executed and delivered this Extension Agreement as of the date set forth above.

**BORROWER:**

SDRES PARTNERS LLC,
a California limited liability company

By: Cantor Group LLC
a California limited liability company
Its: Managing Member

By: ______________________
Name: Deba Shyam
Its: General Manager

**GUARANTOR:**

______________________
ANDREW STUPIN, an individual

**LENDER:**

PREFERRED BANK,
a California banking corporation

By: ______________________
Name: ______________________
Title: ______________________

IN WITNESS WHEREOF, Borrower, Guarantor and Lender have executed and delivered this Extension Agreement as of the date set forth above.

**BORROWER**:

SDRES PARTNERS LLC,
a California limited liability company

By: Cantor Group LLC
a California limited liability company
Its: Managing Member

By: ________________________
Name: Deba Shyam
Its: General Manager

**GUARANTOR**:

______________________________
ANDREW STUPIN, an individual

**LENDER**:

PREFERRED BANK,
a California banking corporation

By: ________________________
Name: Carol Lee
Title: Senior Vice President

**EXHIBIT "A-1"**
LEGAL DESCRIPTION OF THE 210 ORANGE GROVE PROPERTY

The land situated in the City of Pasadena, County of Los Angeles, State of California, and described as follows:

PARCEL 1:

LOT 10 OF TRACT NO. 63103, IN THE CITY OF PASADENA, AS PER MAP RECORDED IN BOOK 1369 PAGES 35 THROUGH 52 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AMENDED PURSUANT TO THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED DECEMBER 3, 2013 AS INSTRUMENT NO. 20131708591 OF OFFICIAL RECORDS.

PARCEL 2:

A RECIPROCAL ACCESS EASEMENT OVER THOSE AREAS SET OUT ON THE MAP SHOWN ABOVE.

PARCEL 3:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN CONSOLIDATED AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (SOUTH ORANGE GROVE PARCELS) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716500 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 4:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN ROSE PARADE GRANDSTAND EASEMENT AGREEMENT (ORANGE GROVE AVENUE) RECORDED JULY 21, 2005 AS INSTRUMENT NOS. 05-1721787 AND 05-1721788 BOTH OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 5:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING GARAGE EASEMENT AGREEMENT RECORDED JULY 2, 2007 AS INSTRUMENT NO. 20071579026 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 6:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING EASEMENT AGREEMENT

RECORDED DECEMBER 28, 2011 AS INSTRUMENT NO. 20111763712 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

APN: 5713-013-057

**EXHIBIT "A-2"**

LEGAL DESCRIPTION OF THE 244 ORANGE GROVE PROPERTY

The land situated in the City of Pasadena, County of Los Angeles, State of California, and described as follows:

PARCEL 1:

LOT 12 OF TRACT NO. 63103, IN THE CITY OF PASADENA, AS PER MAP RECORDED IN BOOK 1369 PAGES 35 THROUGH 52 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AMENDED PURSUANT TO THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED DECEMBER 3, 2013 AS INSTRUMENT NO. 20131708591 OF OFFICIAL RECORDS.

PARCEL 2:

A RECIPROCAL ACCESS EASEMENT OVER THOSE AREAS SET OUT ON THE MAP SHOWN ABOVE.

PARCEL 3:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN CONSOLIDATED AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (SOUTH ORANGE GROVE PARCELS) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716500 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 4:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (DEL MAR PARCEL) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716499 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 5:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN ROSE PARADE GRANDSTAND EASEMENT AGREEMENT (ORANGE GROVE AVENUE) RECORDED JULY 21, 2005 AS INSTRUMENT NOS. 05-1721787 AND 05-1721788 BOTH OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 6:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING GARAGE EASEMENT AGREEMENT RECORDED JULY 2, 2007 AS INSTRUMENT NO. 20071579026 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 7:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING EASEMENT AGREEMENT RECORDED DECEMBER 28, 2011 AS INSTRUMENT NO. 20111763712 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

APN: 5713-027-065

# Exhibit S

**FIFTH EXTENSION AGREEMENT AND AMENDMENT TO LOAN DOCUMENTS**

THIS FIFTH EXTENSION AGREEMENT AND AMENDMENT TO LOAN DOCUMENTS (this "Extension Agreement") is entered into as of December 13, 2023, and effective as of September 8, 2023 (the "Effective Date"), by and between SDRES PARTNERS LLC, a California limited liability company ("Borrower"), and ANDREW STUPIN, an individual ("Guarantor"), on the one hand, and PREFERRED BANK, a California banking corporation ("Lender"), on the other hand

**RECITALS**

A. Lender has made a loan (the "Loan") to CANTOR GROUP LLC, a California limited liability company ("Original Borrower"), for the purpose of financing Original Borrower's acquisition of the Property (as hereinafter defined). The Loan was and is evidenced, in part, by that certain Promissory Note dated June 8, 2017, in the original principal amount of Eight Million Four Hundred Thousand and No/100 Dollars ($8,400,000.00), executed by Original Borrower in favor of Lender (together with any and all amendments and extensions thereto or modifications thereof, the "Original Note").

B. In connection with the Loan, Original Borrower also executed and delivered to and in favor of Lender, the following additional documents, among others:

1. Loan Agreement dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "Loan Agreement"), executed by and between Original Borrower and Lender;

2. Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "210 Orange Grove Deed of Trust"), executed by Original Borrower as trustor in favor of Lender, which was recorded on June 16, 2017, as Instrument No. 20170671620, in the Official Records of Los Angeles County, California, encumbering the real property more commonly known as 210 South Orange Grove, Pasadena, California, and more particularly described in Exhibit "A-1" attached hereto and incorporated herein by this reference ("210 Orange Grove Property");

3. Absolute Assignment of Leases, Lease Guaranties, Rents, Issues and Profits dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "210 Orange Grove Assignment of Leases"), executed by Original Borrower in favor of Lender, which was recorded on June 16, 2017, as Instrument No. 20170671621, in the Official Records of Los Angeles County, California;

4. Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "244 Orange Grove Deed of Trust" and together with the 210 Orange Grove Property, individually and collectively, the "Deed of Trust"), executed by Original Borrower as trustor in favor of Lender, which was recorded on June 16, 2017, as Instrument No. 20170671625, in the Official Records of Los Angeles County, California, encumbering the real property more commonly known as 244 South Orange Grove, Pasadena, California, and more

particularly described in Exhibit "A-2" attached hereto and incorporated herein by this reference (the "244 Orange Grove Property", and together with the 210 Orange Grove Property, individually and collectively, the "Property");

5. Absolute Assignment of Leases, Lease Guaranties, Rents, Issues and Profits dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "244 Orange Grove Assignment of Leases" and together with the 210 Orange Grove Assignment of Leases, individually and collectively, the "Assignment of Leases"), executed by Original Borrower in favor of Lender, which was recorded on June 16, 2017, as Instrument No. 20170671626, in the Official Records of Los Angeles County, California; and

6. Hazardous Substances Indemnity Agreement dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "Indemnity Agreement"), executed by Original Borrower and Guarantor in favor of Lender, and covering the Property.

C. Payment and performance of Borrower's indebtedness and obligations in connection with the Loan was and is guaranteed by Guarantor, who delivered to and in favor of Lender a Continuing Guaranty dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "Guaranty").

D. Pursuant to that certain Assumption Agreement dated June 8, 2017, by and among Original Borrower, Guarantor and Borrower, and a Memorandum of Assumption Agreement dated June 8, 2017, recorded in connection with each Property (collectively, the "Assumption Documents"), Lender consented to a transfer of one hundred percent (100%) of Original Borrower's right, title and interest in and to each Property to Borrower, and Borrower's assumption of any and all of Original Borrower's indebtedness and obligations to Lender under and in connection with the Loan Agreement, Original Note, Deed of Trust, Assignment of Leases, Indemnity Agreement and any and all other instruments, agreements and/or documents executed by Original Borrower in connection therewith.

E. On or about March 25, 2019, Borrower, Guarantor and Lender entered into that certain Modification of Deed of Trust and Amendment to Loan Documents dated as of March 25, 2019 (the "Modification"), whereby, among other things, (i) the interest rate and the repayment terms under the Original Note were modified pursuant to that certain Amended and Restated Promissory Note dated March 25, 2019, in the maximum principal amount of $8,400,000.00, executed by Borrower in favor of Lender (the "Note"), which Note amended and restated the Original Note in its entirety, and (ii) Borrower was permitted to subdivide the Property into two or more parcels and to sell any such parcels to third parties subject to the terms and conditions more particularly described therein.

F. On or around May 20, 2020, Borrower, Guarantor and Lender entered into that certain Payment Deferral Agreement and Limited Waiver dated May 20, 2020 (the "Payment Deferral Agreement"), whereby, among other things, beginning with the Loan payment due on May 8, 2020, Borrower's regularly scheduled monthly payments of interest under the Note was deferred in its entirety for a period of two (2) months through and including the payment due on June 8, 2020 ("Payment Deferral Period"). Beginning with the Loan payment due on July 8,

2020, all payments due and owing under the Note reverted back to the payment terms in effect directly prior to the Payment Deferral Period, as set forth in the Note.

G. On or about May 24, 2022, Borrower, Guarantor and Lender entered into that certain Extension Agreement dated as of May 24, 2022 (the "First Extension"), whereby, among other things, the maturity date of the Note was extended from June 8, 2022 to September 8, 2022.

H. On or about September 7, 2022, Borrower, Guarantor and Lender entered into that certain Second Extension Agreement dated as of September 7 2022 (the "Second Extension"), whereby, among other things, the maturity date of the Note was extended from September 8, 2022 to March 8, 2023.

I. On or about March 14, 2023, Borrower, Guarantor and Lender entered into that certain Third Extension Agreement dated as of March 14, 2023 (the "Third Extension"), whereby, among other things, the maturity date of the Note was extended from March 8, 2023 to July 8, 2023.

J. In connection with the Third Extension, (i) Borrower executed and delivered to Lender that certain Security Agreement (Assignment of Deposit Account) dated as March 14, 2023 (the "Assignment of Deposit Account"), whereby, among other things, Borrower assigned, pledged, and transferred to Lender all of Borrower's right, title, and interest in and to that certain deposit account with Lender in the name of "SDRES PARTNERS LLC" and maintained at Lender, Account No. 1022431 (the "Payment Reserve Account"), as further set forth therein, and (ii) Borrower deposited the sum of $220,000.00 into the Payment Reserve Account. Lender's security interest in the Payment Reserve Account was and is perfected under applicable law.

K. On or about June 28, 2023, Borrower, Guarantor and Lender entered into that certain Fourth Extension Agreement dated as of June 28, 2023 (the "Fourth Extension"), whereby, among other things, the maturity date of the Note was extended from July 8, 2023 to November 8, 2023.

L. Pursuant to each Deed of Trust and the Assumption Documents, Borrower granted to and in favor of Lender a first priority security interest in and lien upon certain real and personal property described in each Deed of Trust (the "Deed of Trust Collateral"), to secure, without limitation, payment and performance of the indebtedness and obligations under and in connection with the Loan and the Original Note, as amended and restated in its entirety by the Note. Lender's security interest in the Deed of Trust Collateral was and is perfected under applicable law.

M. The Note, Loan Agreement, Deed of Trust, Assignment of Leases, Indemnity Agreement, Assumption Documents, Guaranty, Modification, Payment Deferral Agreement, First Extension, Second Extension, Third Extension, Assignment of Deposit Account, Fourth Extension and all other assignments, agreements, instruments and other documents executed by Borrower (and Original Borrower) and/or Guarantor in connection with the Loan shall at times hereinafter be referred to collectively as the "Loan Documents."

N. Borrower and Guarantor have each requested that Lender (i) extend the Maturity Date of the Loan from November 8, 2023 to September 8, 2026, and (ii) make certain other changes and/or amendments to the Loan and the Loan Documents, as more particularly set forth herein. Lender is willing to agree to said requests, subject to the terms and conditions set forth in this Extension Agreement.

Except as may be otherwise expressly defined in this Extension Agreement, all terms used in this Extension Agreement beginning with a capital letter shall have the meanings ascribed to them in the Loan Agreement.

**AGREEMENT**

NOW, THEREFORE, for valuable consideration and the mutual promises of the parties hereto, said parties do hereby acknowledge and agree as follows:

1. Recitals.

The recitals are incorporated herein by this reference as are all exhibits. Borrower and Guarantor, and each of them, agree and acknowledge that the factual information recited above is true and correct.

2. Borrower and Guarantor Acknowledgment as to Obligations.

A. Borrower, and Guarantor each acknowledge, confirm and agree that as of November 15, 2023, (i) the total outstanding principal balance of the Note is $7,999,362.98 plus accrued and unpaid interest thereon, and (ii) the sum of $220,000.00 remains in the Payment Reserve Account, subject to the terms, conditions and provisions of the Loan Documents.

B. Borrower and Guarantor, and each of them, specifically acknowledge and confirm that they do not have any valid offset or defense to the obligations, indebtedness and liability under the Loan Documents.

3. Reaffirmation of Obligations.

This Extension Agreement is, in part, a reaffirmation of the obligations, indebtedness and liability of Borrower and Guarantor, and each of them, to Lender as evidenced by the Loan Documents. Therefore, Borrower and Guarantor, and each of them, acknowledge and agree that, except as specified herein, all of the terms and conditions of the Loan Documents are and shall remain in full force and effect, without waiver or modification of any kind whatsoever, and are ratified and confirmed in all respects.

4. Extension of Maturity Date and Amendment to the Note.

A. The Maturity Date is hereby extended from November 8, 2023 September 8, 2026, at which time the entire principal balance under the Loan plus all accrued and unpaid interest thereon is and shall be due and payable as provided under the Loan Documents. The "Maturity Date", as defined in the Loan Agreement and the Note and referenced therein shall hereby mean September 8, 2026.

B. Effective as of the Effective Date, the section of the Note entitled "INTEREST RATE" on page 1 of the Note is hereby deleted in its entirety and replaced with the following:

"INTEREST RATE. Interest on the outstanding principal balance of this Note shall be computed and calculated based upon a three hundred sixty (360)-day year and actual days elapsed and shall accrue at the per annum fixed rate of seven and one-half percent (7.50%) (the "Note Rate")."

C. Effective as of the Effective Date, the section of the Note entitled "PRINCIPAL AND INTEREST PAYMENTS" on pages 1 and 2 of the Note is hereby deleted in its entirety and replaced with the following:

"PRINCIPAL AND INTEREST PAYMENTS. Interest shall be due and payable monthly, in arrears, based upon the actual number of days elapsed for that monthly period, commencing on October 8, 2023, and shall continue to be due and payable, in arrears, on the same day of each calendar month thereafter until the Maturity Date (as hereinafter defined).

In addition to the payment of interest, as set forth above, commencing on October 8, 2024, and continuing on the same day of each and every calendar month thereafter until the Maturity Date, Borrower shall pay to Lender a monthly installment payment of principal in an amount equal to $6,493.29.

All payments due hereunder, including payments of principal and interest, shall be made to Lender in United States Dollars and shall be in the form of immediately available funds acceptable to the holder of this Note.

Upon the Maturity Date, the entire unpaid obligation outstanding under this Note, the Deed of Trust (as defined in the Loan Agreement), the Loan Agreement, and any other Loan Documents shall become due and payable in full.

All payments due hereunder, including payments of principal and interest, shall be made to Lender in United States Dollars and shall be in the form of immediately available funds acceptable to the holder of this Note."

D. Effective as of the Effective Date, the section of the Note entitled "PREPAYMENT" on pages 3 and 4 of the Note is hereby deleted in its entirety and replaced with the following:

"PREPAYMENT. Borrower shall have the right at any time following five (5) calendar days prior written notice to Lender, to prepay all or any portion of the principal balance outstanding under this Note, without any prepayment premium or prepayment penalty; provided, however, that Borrower shall be required to pay to Lender, as and for a prepayment premium, the Prepayment Fee (as hereinafter defined). The prepayment amount due on the prepayment date shall equal the sum of: (i) all unpaid late payment processing fees and unreimbursed costs and

expenses then outstanding; plus (ii) all accrued and unpaid interest as of the prepayment date; plus (iii) the principal amount of the Loan being prepaid, plus (iv) the Prepayment Fee. The "Prepayment Fee" shall be an amount equal to the product obtained by multiplying the principal amount of the Note being prepaid by the applicable percentage set forth below, depending on the length of time between September 8, 2023 and the date when the prepayment will be made:

| **If prepayment occurs during the following periods:** | **The percentage multiplier is:** |
|---|---|
| From September 8, 2023 until September 7, 2024: | 2.00% |
| From September 8, 2024 to September 7, 2025: | 1.00% |
| From September 8, 2025 to September 7, 2026: | 1.00% |

THE PREPAYMENT FEE SHALL APPLY NOT ONLY IN THE CASE OF VOLUNTARY PREPAYMENT, BUT ALSO IN THE EVENT THAT THIS NOTE BECOMES DUE AND PAYABLE IN FULL BY REASON OF ACCELERATION UPON THE OCCURRENCE OF A DEFAULT OR OTHERWISE, INCLUDING, WITHOUT LIMITATION, UPON OCCURRENCE OF A TRANSFER OF THE PROPERTY, WHETHER VOLUNTARILY OR INVOLUNTARILY OR OTHERWISE. In such case, the Prepayment Fee shall be calculated as of the date of the Default, or other event or condition triggering acceleration, and until paid in full shall accrue interest at the Default Rate. Whether prepayment is voluntary or involuntary, in no event shall the amount of the Prepayment Fee, or the method of calculating the Prepayment Fee, result in a reduction of the outstanding principal balance, accrued and unpaid interest, or other amounts due as of the date of prepayment. Absent material and manifest error, Lender's determination of the Prepayment Fee shall be binding and conclusive on Borrower and anyone else having an interest in the determination. Notwithstanding the foregoing, a Prepayment Fee shall not be required in connection with any application towards the outstanding principal balance of this Note from the sale of the Property (so long as the sale results in the payoff of this Note and any other amounts due under the Loan Documents in its entirety).

**Any such prepayment shall not result in a reamortization, deferral, postponement, suspension, or waiver of any and all other payments due under this Note.**

Pursuant to California Civil Code Section 2954.10, Borrower has initialed this provision of the Note expressly waiving the right to prepay the Note except as expressly permitted herein.

B.H
Borrower's Initials"

5. Amendments to Loan Agreement.

A. Section 4.23 of the Loan Agreement is hereby deleted in its entirety and replaced with the following:

"4.23 MAINTAIN MINIMUM DEBT SERVICE COVERAGE RATIO – From January 1, 2024, and at all times thereafter during the term of the Loan, Borrower shall maintain a Debt Service Coverage Ratio of not less than 1.20 to 1.00 ("DSCR Requirement"), which shall be measured (i) initially on October 8, 2024 based on (A) actual Net Operating Income generated during the trailing six (6) month period from January 1, 2024 to June 30, 2024 (in connection therewith, Borrower shall furnish to Lender certified rent rolls, executed leases and operating statements for the Property and such other information and documentation as shall be required by Lender), and (B) Debt Service calculated as if the then outstanding principal balance of the Loan is being paid in full in equal monthly installments of principal plus interest for a period of three hundred sixty (360) months at an interest rate equal to the effective interest rate under the Note, and (ii) annually thereafter as of the end of each calendar year commencing with the calendar year ending December 31, 2024, measured for the immediately preceding twelve (12) consecutive calendar month period of time, based on (A) actual Net Operating Income generated during the trailing twelve (12) month period and (B) actual Debt Service of principal plus interest under the Note. In connection therewith, Borrower shall deliver to Lender a profit and loss statement for Borrower and such Financial Statements and other documentation and evidence as shall be satisfactory to Lender, in Lender's sole and absolute opinion and judgment, evidencing Borrower's compliance with the minimum Debt Service Coverage Ratio requirement set forth in this Section 4.23."

B. Section 4.24.1 of the Loan Agreement is hereby deleted in its entirety and replaced with the following:

"4.24.1 At all times during the term of the Loan, the outstanding principal amount of the Loan shall not exceed seventy-two percent (72%) of the appraised "as is" value of the Property ("Maximum LTV")."

6. Payment Reserve Account.

A. The Payment Reserve Account shall continue to be (i) a bank-controlled account and Borrower shall not have the right to withdraw funds from the Payment Reserve Account during the term of the Loan without the express, prior written consent of Lender, which Lender may give or withhold in its sole and absolute discretion; and (ii) assigned to Lender as additional collateral for the Loan pursuant to the Assignment of Deposit Account. Notwithstanding the existence of the Payment Reserve Account, Borrower shall continue to be responsible to pay principal and interest due under the terms of the Note from sources other than the Payment Reserve Account. Upon the occurrence of any Event of Default, Lender may withdraw funds from the Payment Reserve Account to pay any amounts of principal and interest due and unpaid under the Note, in Lender's sole and absolute opinion and judgment, without further authorization on the part of Borrower. Borrower acknowledges that Lender has made no representation or warranty concerning the adequacy or sufficiency of the funds that may, at any

time, be maintained in the Payment Reserve Account for payment of principal and interest on the Loan or any portion thereof.

B. From and after September 8, 2024, the funds in the Payment Reserve Account shall be released to Borrower upon satisfaction of all the following terms and conditions:

(i) Borrower shall submit to Lender a written request for release of funds from the Payment Reserve Account ("Release Request");

(ii) There is not an uncured Event of Default (or event that with the giving of notice or passage of time, or both, would constitute an Event of Default) under this Agreement or any of the Loan Document; and

(iii) The Debt Service Coverage Ratio for the Property shall be not less than 1.20 to 1.00, measured for the immediately preceding three (3) full consecutive calendar months, annualized, as determined by Lender in its sole opinion and judgment. Debt Service shall be calculated for the period measured; provided, that for any portion of the period measured consisting of the interest-only period of the Loan, the Debt Service calculated for that portion shall be the projected monthly installments of principal plus interest assuming that the Loan is being paid in full in equal monthly installments of principal plus interest for a period of three hundred sixty (360) months at the then effective interest rate under the Note. In connection therewith, Borrower shall furnish to Lender certified rent rolls and operating statements for the Property and such other information and documentation as Lender may request, as shall be satisfactory to Lender, in Lender's sole and absolute opinion and judgment, evidencing Borrower's compliance with such minimum Debt Service Coverage Ratio requirement.

7. Extension Agreement as a Loan Document.

From and after the effective date of this Extension Agreement, this Extension Agreement and any other documents and instruments executed in connection herewith shall each constitute one of the "Loan Documents."

8. Effective Date of Extension Agreement.

This Extension Agreement and the amendments provided for herein shall be effective as of the Effective Date of September 8, 2023, upon the timely and complete satisfaction of each and all of the conditions precedent set forth in Section 10 of this Extension Agreement.

9. Borrower's and Guarantor's Representations and Warranties.

Borrower and Guarantor, and each of them, hereby represent and warrant to Lender and covenant and agree with Lender as follows:

A. Borrower and Guarantor, and each of them, have full legal right, power and authority to enter into and perform this Extension Agreement. The execution and delivery of

this Extension Agreement by Borrower and the consummation by Borrower of the transactions contemplated hereby have been duly authorized by all necessary action by or on behalf of Borrower. This Extension Agreement is a valid and binding obligation of Borrower and Guarantor, and each of them, enforceable against Borrower and Guarantor in accordance with its terms.

B. Neither the execution and delivery of this Extension Agreement by Borrower and Guarantor, or any of them, nor the consummation by Borrower and Guarantor, or any of them, of the transactions contemplated hereby, conflicts with or constitutes a violation or a default under any law or regulation applicable to Borrower and Guarantor, or any of them, or any contract, commitment, agreement, arrangement or restriction of any kind to which Borrower and Guarantor, or any of them, is a party, by which Borrower and Guarantor, or any of them, is bound or to which any of Borrower's and Guarantor's, or any of their, property or assets is subject.

C. There are no actions, suits or proceedings pending, or to the knowledge of Borrower and Guarantor, or any of them, threatened against or affecting Borrower and Guarantor, or any of them, respectively, in relation to their obligations to Lender or involving the validity and enforceability of this Extension Agreement, the Loan Agreement, the Deed of Trust, the Guaranty or any of the other Loan Documents, as applicable, or the priority of any liens given by Borrower to Lender in accordance with the Note, the Loan Agreement, the Deed of Trust, and the other Loan Documents, at Law or in equity, or before or by any Governmental Agency, or which could have a material adverse effect on the financial condition, operations, properties, assets, liabilities or earnings of Borrower and Guarantor, or any of them, or the ability of Borrower and Guarantor, or any of them, to perform their respective obligations to Lender.

D. Borrower and Guarantor, and each of them, hereby reaffirm and confirm that the representations and warranties of Borrower and Guarantor, as applicable, contained in the Loan Documents are true, correct and complete in all material respects as of the date of this Extension Agreement.

E. Borrower and Guarantor, and each of them, are in full and complete compliance with the terms, covenants, provisions and conditions of the Note, the Loan Agreement, the Deed of Trust, the Guaranty and the other Loan Documents.

F. Neither Borrower nor Guarantor has any actual knowledge of any release of Hazardous Substances (as defined in the Indemnity Agreement) on the Property.

All covenants, representations and warranties of Borrower and Guarantor herein are incorporated by reference and hereby made a part of the Loan Agreement and the Guaranty, as applicable.

10. <u>Conditions Precedent to Effectiveness of Extension Agreement.</u>

The effectiveness of this Extension Agreement is expressly conditioned upon Borrower having, at its sole expense, deposited or caused to be deposited with Lender as of January 8, 2024, all of the following items, documents, certificates and other instruments, in

form and content satisfactory to Lender and its counsel, in their sole and absolute discretion, and suitable for filing or recording as required:

A. This Extension Agreement, fully executed by Borrower and Guarantor;

B. The Memorandums of Fifth Extension Agreement and Amendment to Loan Documents with respect to the 210 Orange Grove Property, each executed by Borrower, which shall be recorded in the Official Records of Los Angeles County, California, at Borrower's sole expense;

C. The Memorandums of Fifth Extension Agreement and Amendment to Loan Documents with respect to the 244 Orange Grove Property, each executed by Borrower, which shall be recorded in the Official Records of Los Angeles County, California, at Borrower's sole expense;

D. Borrower shall have paid to Lender a nonrefundable extension fee in the total amount of $19,998.41 (the "Extension Fee"), which Extension Fee shall be paid from Borrower's own funds. The Extension Fee shall be deemed fully earned when paid;

E. At Borrower's sole expense, endorsements to Lender's policy of title insurance insuring the lien of the Deed of Trust, which endorsements will provide, in substance, that the priority of the Deed of Trust is unaffected by this Extension Agreement, and such other endorsements as Lender deems appropriate, in its sole and absolute opinion and judgment;

F. Lender shall have obtained an updated appraisal of the Property reporting that the current outstanding principal balance of the Loan to the appraised "as is" value of the Property does not exceed sixty-five percent (65.00%);

G. Lender shall have received evidence satisfactory to Lender in its sole opinion and judgment that Borrower has obtained and is maintaining all property, liability and other insurance in amount, form and issued by a company or companies satisfactory to Lender as required under the Deed of Trust and the Agreement to Furnish Insurance and as deemed necessary by Lender, naming Lender as loss payee and/or additional insured during the term of the Loan, as extended by this Extension Agreement;

H. Borrower shall have paid to Lender all amounts owed under the Note (as modified by this Extension Agreement effective as of the Effective Date) through the payment due on November 8, 2023;

I. Such additional information, assignments, agreements, certificates, reports, approvals, instruments, documents, subordination agreements, financing statements, consents and opinions as Lender may request, in its sole and absolute opinion and judgment, in connection with this Extension Agreement and/or any of the matters which are the subject of this Extension Agreement; and

J. Payment of the fees and costs of Lender in connection with the preparation, negotiation, administration and execution of this Extension Agreement including,

but not limited to, attorneys' fees, endorsement and recording fees, and other costs and fees of other professionals retained by Lender.

11. General Release.

A. Except as to the obligations imposed upon Lender, as provided herein, Borrower and Guarantor, and each of them, on behalf of themselves, their respective successors and assigns, and each of them, do each hereby forever relieve, release, acquit and discharge Lender and its predecessors, successors and assigns, and their respective past and present attorneys, accountants, insurers, representatives, affiliates, partners, subsidiaries, officers, employees, directors, and shareholders, and each of them (collectively, the "Released Parties"), from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, costs and expenses (including, but not limited to, attorneys' fees), damages, injuries, actions and causes of action, of whatever kind or nature, whether legal or equitable, known or unknown, suspected or unsuspected, contingent or fixed, which Borrower and Guarantor, or any of them, now own or hold or have at any time heretofore owned or held or may at any time hereafter own or hold against the Released Parties, or any of them, by reason of any acts, facts, transactions or any circumstances whatsoever occurring or existing through the date of this Extension Agreement, including, but not limited to, those based upon, arising out of, appertaining to, or in connection with the Recitals above, the Loan, the Loan Documents, the facts pertaining to this Extension Agreement, any collateral heretofore granted to Lender or granted in connection herewith, or to any other obligations of Borrower and/or Guarantor to Lender, all jointly and severally.

B. As to the matters released herein, Borrower and Guarantor, and each of them, expressly waive any and all rights under Section 1542 of the Civil Code of the State of California, which provides as follows:

> "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

Borrower and Guarantor, and each of them, expressly waive and release any right or benefit which they have or may have under Section 1542 of the Civil Code of the State of California, and any similar law of any state, territory, commonwealth or possession of the United States, or the United States, to the full extent that they may waive all such rights and benefits pertaining to the matters released herein. In connection with such waiver and relinquishment, Borrower and Guarantor, and each of them, acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true. Nevertheless, it is the intention of Borrower and Guarantor, and each of them, through this Extension Agreement, to fully, finally and forever release all such matters, and all claims relative thereto, which do now exist, may exist, or heretofore have existed. In furtherance of such intention, the release herein given shall be and remain in effect as a full and complete release of such matters notwithstanding the discovery or existence of any such additional or different claims or facts relative thereto.

C. In entering into the release provided for in this Extension Agreement, Borrower and Guarantor, and each of them, recognize that no facts or representations are ever absolutely certain; accordingly, Borrower and Guarantor, and each of them, assume the risk of any misrepresentation, concealment or mistake, and if Borrower and Guarantor, or any of them, should subsequently discover that any fact that they relied upon in entering into these releases was untrue, or that any fact was concealed from them, or that any understanding of the facts or of the law was incorrect, Borrower and Guarantor, and each of them, shall be not entitled to set aside these releases by reason thereof, regardless of any claims of fraud, misrepresentation, promise made without the intention of performing it, concealment of fact, mistake of fact or law, or any other circumstances whatsoever.

D. Borrower and Guarantor, and each of them, are the sole and lawful owners of all right, title and interest in and to every claim and other matter which they purport to release herein, and they have not heretofore assigned or transferred, or purported to assign or transfer to any person or any entity claims or other matters herein released. Borrower and Guarantor, and each of them, shall indemnify, defend and hold Lender and each of the other Released Parties, harmless from and against any claims, liabilities, actions, causes of action, demands, injuries, costs, and expenses (including, but not limited to, attorneys' fees), based upon or arising in connection with any such prior assignment or transfer, or any such purported assignment or transfer, or any claims or other matters released herein.

11. Revival of Obligation.

A. Borrower and Guarantor, and each of them, acknowledge and agree that in the event that the payment of money, this Extension Agreement, or the grant of collateral should for any reason subsequently be declared to be "fraudulent" within the meaning of any state, federal or foreign law relating to fraudulent conveyances, preferential or otherwise voidable or recoverable, in whole or in part, for any reason, under the United States Bankruptcy Code or any other federal, foreign or state law (collectively referred to herein as "Voidable Transfer"), and Lender is required to pay or restore any such Voidable Transfer, or any portion thereof, then as to that which is repaid or restored pursuant to any such Voidable Transfer (including all costs, expenses and attorneys' fees of Lender related thereto, including, without limitation, relief from stay or similar proceedings), the liability of Borrower and Guarantor, and each of them, shall automatically be revived, reinstated and restored to the extent thereof, and shall exist as though such Voidable Transfer had never been made to Lender.

B. Nothing set forth herein is an admission that such Voidable Transfer has occurred. Borrower and Guarantor, and each of them, expressly acknowledge that Lender may rely upon advice of counsel, and if so advised by counsel, may, in the exercise of Lender's sole opinion and judgment, settle, without defending, any action to void any alleged Voidable Transfer, and that upon such settlement, Borrower and Guarantor, and each of them, shall again be liable for any deficiency resulting from such settlement as provided in this Extension Agreement.

C. As an additional inducement to and material consideration for Lender agreeing to the modifications/extension provided in this Extension Agreement, Borrower and Guarantor, and each of them, agree that in the event a Bankruptcy or Judicial Action (as

hereinafter defined in this Section 11) is commenced which subjects Lender to any stay in the exercise of Lender's rights and remedies under the Loan Documents including, but not limited to, the automatic stay imposed by Section 362 of the United States Bankruptcy Code (individually and collectively, "Stay"), then Borrower and Guarantor, and each of them, irrevocably consent and agree that such Stay shall automatically be lifted and released against Lender, and Lender shall thereafter be entitled to exercise all of its rights and remedies against Borrower and Guarantor, and each of them, under the Loan Documents, subject, however, to the terms and conditions of this Extension Agreement. Borrower and Guarantor, and each of them, acknowledge that each is knowingly, voluntarily, and intentionally waiving each of such party's rights to any Stay and agrees that the benefits provided to Borrower and Guarantor under the terms of this Extension Agreement are valuable consideration for such waiver. As used in this Section 11, the term "Bankruptcy or Judicial Action" shall mean any voluntary or involuntary case filed by or against Borrower and/or Guarantor, or any of them, under the United States Bankruptcy Code, or any voluntary or involuntary petition in composition, readjustment, liquidation, or dissolution, or any state and federal bankruptcy law action filed by or against Borrower and Guarantor, or any of them, any action where Borrower or Guarantor, or any of them, are adjudicated as bankrupt or insolvent, any action for dissolution of Borrower or Guarantor, or any of them, or any action in furtherance of any of the foregoing, or any other action, case, or proceeding that has the effect of staying (or in which a stay is being obtained against) the enforcement by Lender of its rights and remedies under this Extension Agreement, or any of the Loan Documents.

12. No Joint Venture, Management and Control. Notwithstanding any provision of this Extension Agreement and/or of the Loan Documents:

A. Lender is not and shall not be construed to be a partner, joint venture, alter ego, manager, controlling person or other business associate or participant of any kind of Borrower and Guarantor, or any of them, or any other person;

B. Lender shall not be deemed responsible to perform or participate in any acts, omissions, or decisions of Borrower and Guarantor, or any of them; and

C. Borrower and Guarantor, and each of them, do not have any claims, causes of action or defenses to their obligations to Lender based on any allegations of management or control exercised by Lender. Borrower and Guarantor, and each of them, acknowledge and agree that Lender does not manage or control them in any way.

13. Miscellaneous.

A. Section headings used in this Extension Agreement are for convenience only and shall not affect the construction of this Extension Agreement.

B. This Extension Agreement may be executed in one or more counterparts but all of the counterparts shall constitute one agreement; provided, however, this Extension Agreement shall not be effective and enforceable unless and until it is executed by all parties hereto.

C. This Extension Agreement and the other documents and instruments executed in connection therewith constitute the product of the negotiation of the parties hereto and the enforcement hereof shall be interpreted in a neutral manner, and not more strongly for or against any party based upon the source of the draftsmanship hereof.

D. This Extension Agreement shall be binding upon and inure to the benefit of Lender, Borrower and Guarantor, and each of them, and their respective successors and assigns, except that neither Borrower nor Guarantor shall assign their rights hereunder or any interest therein without the prior written consent of Lender.

E. This Extension Agreement is not a novation, nor, except as expressly provided in this Extension Agreement, is it to be construed as a release or modification of any of the terms, conditions, warranties, waivers or rights set forth in the Loan Documents. Nothing contained in this Extension Agreement shall be deemed to constitute a waiver by Lender of any required performance by Borrower or Guarantor, and each of them, of any Event of Default or default heretofore or hereafter occurring under or in connection with the other Loan Documents. In the event there is a conflict in any term, condition or provision of this Extension Agreement, on the one hand, and the Note, the Loan Agreement, the Deed of Trust, the Guaranty, or any of the other Loan Documents, on the other hand, the terms, conditions and provisions of this Extension Agreement are to control.

F. Borrower and Guarantor, and each of them, further represent and warrant as follows:

(1) They have received, or have had the opportunity to receive, independent legal advice from attorneys of each of their choice with respect to the advisability of executing this Extension Agreement and prior to the execution of this Extension Agreement by Borrower and Guarantor, their attorneys reviewed this Extension Agreement and discussed this Extension Agreement with them and have made all desired changes;

(2) Except as expressly stated in this Extension Agreement, neither Lender nor any other person or entity has made any statement or representation to Borrower or Guarantor regarding facts relied upon by any of them;

(3) Borrower and Guarantor, and each of them, do not rely upon any statement, representation or promise of Lender or any other person or entity in executing this Extension Agreement except as expressly stated in this Extension Agreement;

(4) The terms of this Extension Agreement are contractual and not a mere recital;

(5) This Extension Agreement has been carefully read by, the contents hereof are known and understood by, and it is signed freely by Borrower and Guarantor, and each of them; and

(6) This Extension Agreement and the releases contained herein are intended to be final and binding against Borrower and Guarantor, and each of them, and each of them acknowledge that Lender is expressly relying on the finality of this Extension Agreement

as a substantial, material factor inducing Lender's execution of this Extension Agreement. Borrower and Guarantor, and each of them, have the full right and authority to enter into this Extension Agreement, and the officer, agent or other representative executing this Extension Agreement on behalf of Borrower has the full right and authority to fully commit and bind it to this Extension Agreement.

[Signature page to follow.]

IN WITNESS WHEREOF, Borrower, Guarantor and Lender have executed and delivered this Extension Agreement as of the date set forth above.

**BORROWER:**

SDRES PARTNERS LLC,
a California limited liability company

By: ______________________
Name: Banayotis Haddad
Its: Manager

**GUARANTOR:**

______________________
ANDREW STUPIN, an individual

**LENDER:**

PREFERRED BANK,
a California banking corporation

By: ______________________
Name: Carol Lee
Title: Senior Vice President

# EXHIBIT "A-1"
## LEGAL DESCRIPTION OF THE 210 ORANGE GROVE PROPERTY

Real property in the City of Pasadena, County of Los Angeles, State of California, described as follows:

PARCEL 1:

LOT 10 OF TRACT NO. 63103, IN THE CITY OF PASADENA, AS PER MAP RECORDED IN BOOK 1369 PAGES 35 THROUGH 52 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AMENDED PURSUANT TO THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED DECEMBER 3, 2013 AS INSTRUMENT NO. 20131708591 OF OFFICIAL RECORDS.

PARCEL 2:

A RECIPROCAL ACCESS EASEMENT OVER THOSE AREAS SET OUT ON THE MAP SHOWN ABOVE.

PARCEL 3:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN CONSOLIDATED AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (SOUTH ORANGE GROVE PARCELS) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716500 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 4:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN ROSE PARADE GRANDSTAND EASEMENT AGREEMENT (ORANGE GROVE AVENUE) RECORDED JULY 21, 2005 AS INSTRUMENT NOS. 05-1721787 AND 05-1721788 BOTH OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 5:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING GARAGE EASEMENT AGREEMENT RECORDED JULY 2, 2007 AS INSTRUMENT NO. 20071579026 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 6:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING EASEMENT AGREEMENT RECORDED DECEMBER 28, 2011 AS INSTRUMENT NO. 20111763712 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

APN: 5713-013-057

# EXHIBIT "A-2"
## LEGAL DESCRIPTION OF THE 244 SOUTH ORANGE GROVE PROPERTY

Real property in the City of Pasadena, County of Los Angeles, State of California, described as follows:

PARCEL 1:

LOT 12 OF TRACT NO. 63103, IN THE CITY OF PASADENA, AS PER MAP RECORDED IN BOOK 1369 PAGES 35 THROUGH 52 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AMENDED PURSUANT TO THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED DECEMBER 3, 2013 AS INSTRUMENT NO. 20131708591 OF OFFICIAL RECORDS.

PARCEL 2:

A RECIPROCAL ACCESS EASEMENT OVER THOSE AREAS SET OUT ON THE MAP SHOWN ABOVE.

PARCEL 3:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN CONSOLIDATED AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (SOUTH ORANGE GROVE PARCELS) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716500 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 4:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (DEL MAR PARCEL) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716499 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 5:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN ROSE PARADE GRANDSTAND EASEMENT AGREEMENT (ORANGE GROVE AVENUE) RECORDED JULY 21, 2005 AS INSTRUMENT NOS. 05-1721787 AND 05-1721788 BOTH OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 6:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING GARAGE EASEMENT AGREEMENT RECORDED JULY 2, 2007 AS INSTRUMENT NO. 20071579026 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 7:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING EASEMENT AGREEMENT RECORDED DECEMBER 28, 2011 AS INSTRUMENT NO. 20111763712 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

APN: 5713-027-065

# Exhibit T

This page is part of your document - DO NOT DISCARD

20240020404

Pages: 0005

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

01/10/24 AT 08:00AM

| | |
|---|---|
| FEES: | 75.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 225.00 |
| PAID: | 300.00 |

LEADSHEET

202401100110024

00024127077

014480867

SEQ:
01

SECURE - 8:00AM

THIS FORM IS NOT TO BE DUPLICATED

E442318

833699E*LS

RECORDING REQUESTED BY
AND WHEN RECORDED, MAIL TO:

PREFERRED BANK
601 S. Figueroa Street, 47th Floor
Los Angeles, California 90017
Attention: Note Department

Assessor's Parcel No.: 5713-013-057

833699 E

SPACE ABOVE FOR RECORDER'S USE ONLY

**MEMORANDUM OF FIFTH EXTENSION AGREEMENT AND AMENDMENT TO LOAN DOCUMENTS**
**(210 S. Orange Grove Boulevard)**

THIS MEMORANDUM OF FIFTH EXTENSION AGREEMENT AND AMENDMENT TO LOAN DOCUMENTS ("Memorandum") is entered into as of this 13th day of December 2023, by and between SDRES PARTNERS LLC, a California limited liability company ("Borrower"), and PREFERRED BANK, a California banking corporation ("Lender"). Lender, Borrower, and Andrew Stupin, an individual, have entered into that certain Fifth Extension Agreement and Amendment to Loan Documents dated as of December 13, 2023 ("Extension"), pursuant to which, among other things, the parties agreed to (i) extend the maturity date of that certain Amended and Restated Promissory Note dated March 25, 2019, in the maximum principal amount of Eight Million Four Hundred Thousand and No/100 Dollars ($8,400,000.00), executed by Borrower in favor of Lender (together with any and all extensions or amendments thereto or modifications thereof, the "Note"), from November 8, 2023, to September 8, 2026, and (ii) modify the interest rate and the repayment terms under the Note. The Note is secured by, among other things, certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated June 8, 2017 (together with any and all amendments thereto or modifications thereof, the "Deed of Trust"), executed by Borrower's predecessor in interest as trustor in favor of Lender, which was recorded on June 16, 2017, as Instrument No. 20170671620 in the Official Records of Los Angeles County, California, encumbering Borrower's interest in the real property more particularly described in Exhibit "A" attached hereto.

This Memorandum is intended to make a matter of public record the execution of the Extension and the modification of the Note and the other Loan Documents (as defined in the Extension) in connection therewith. This Memorandum is not intended to set forth all the terms and conditions thereof, for which reference is made to the Extension. This Memorandum may be executed and delivered in two or more counterparts, each of which, when so executed and delivered, shall be an original, and such counterparts together shall constitute but one and the same instrument and agreement, and this Memorandum shall not be binding on any party until all parties have executed it.

IN WITNESS WHEREOF, this Memorandum is executed by Borrower and Lender and as of the day and year first above written.

**BORROWER:**

SDRES PARTNERS LLC,
a California limited liability company

By: ______________________
Name: Banayotis Haddad
Its: Manager

**LENDER:**

PREFERRED BANK,
a California banking corporation

By: ______________________
Name: Carol Lee
Title: Senior Vice President

[ALL SIGNATURES MUST BE ACKNOWLEDGED]

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
) ss
COUNTY OF Orange )

On December 19, 2023, before me, Jennifer Williamson, a Notary Public, personally appeared Panayotis Haddad, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public

JENNIFER WILLIAMSON
COMM. #2466523
Notary Public - California
Orange County
My Comm. Expires Oct. 14, 2027

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
) ss
COUNTY OF Los Angeles )

On December 20 2023, before me, Yitian Duan, a Notary Public, personally appeared Carol Lee, who proved to me on the basis of satisfactory evidence to be the person(~~s~~) whose name(~~s~~) is/~~are~~ subscribed to the within instrument, and acknowledged to me that ~~he~~/she/~~they~~ executed the same in ~~his~~/her/~~their~~ authorized capacity(~~ies~~), and that by ~~his~~/her/~~their~~ signature(~~s~~) on the instrument the person(~~s~~), or the entity upon behalf of which the person(~~s~~) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public

YITIAN DUAN
Notary Public - California
Los Angeles County
Commission # 2388605
My Comm. Expires Jan 26, 2026

# EXHIBIT "A"
## LEGAL DESCRIPTION

Real property in the City of Pasadena, County of Los Angeles, State of California, described as follows:

PARCEL 1:

LOT 10 OF TRACT NO. 63103, IN THE CITY OF PASADENA, AS PER MAP RECORDED IN BOOK 1369 PAGES 35 THROUGH 52 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AMENDED PURSUANT TO THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED DECEMBER 3, 2013 AS INSTRUMENT NO. 20131708591 OF OFFICIAL RECORDS.

PARCEL 2:

A RECIPROCAL ACCESS EASEMENT OVER THOSE AREAS SET OUT ON THE MAP SHOWN ABOVE.

PARCEL 3:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN CONSOLIDATED AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (SOUTH ORANGE GROVE PARCELS) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716500 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 4:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN ROSE PARADE GRANDSTAND EASEMENT AGREEMENT (ORANGE GROVE AVENUE) RECORDED JULY 21, 2005 AS INSTRUMENT NOS. 05-1721787 AND 05-1721788 BOTH OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 5:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING GARAGE EASEMENT AGREEMENT RECORDED JULY 2, 2007 AS INSTRUMENT NO. 20071579026 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 6:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING EASEMENT AGREEMENT RECORDED DECEMBER 28, 2011 AS INSTRUMENT NO. 20111763712 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

APN: 5713-013-057

This page is part of your document - DO NOT DISCARD

COUNTY OF LOS ANGELES CALIFORNIA

20240020417

Pages: 0005

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

01/10/24 AT 08:00AM

| | |
|---|---|
| FEES: | 75.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 225.00 |
| PAID: | 300.00 |

LEADSHEET

202401100990001

00024127078

014480868

SEQ:
01

SECURE - 8:00AM

THIS FORM IS NOT TO BE DUPLICATED

E523477

833700E*LS

RECORDING REQUESTED BY
AND WHEN RECORDED, MAIL TO:

PREFERRED BANK
601 S. Figueroa Street, 47th Floor
Los Angeles, California 90017
Attention: Note Department

Assessor's Parcel No.: 5713-027-065

833700C

SPACE ABOVE FOR RECORDER'S USE ONLY

**MEMORANDUM OF FIFTH EXTENSION AGREEMENT AND AMENDMENT TO LOAN DOCUMENTS**
**(244 S. Orange Grove Boulevard)**

THIS MEMORANDUM OF FIFTH EXTENSION AGREEMENT AND AMENDMENT TO LOAN DOCUMENTS ("Memorandum") is entered into as of this 13th day of December 2023, by and between SDRES PARTNERS LLC, a California limited liability company ("Borrower"), and PREFERRED BANK, a California banking corporation ("Lender"). Lender, Borrower, and Andrew Stupin, an individual, have entered into that certain Fifth Extension Agreement and Amendment to Loan Documents dated as of December 13, 2023 ("Extension"), pursuant to which, among other things, the parties agreed to (i) extend the maturity date of that certain Amended and Restated Promissory Note dated March 25, 2019, in the maximum principal amount of Eight Million Four Hundred Thousand and No/100 Dollars ($8,400,000.00), executed by Borrower in favor of Lender (together with any and all extensions or amendments thereto or modifications thereof, the "Note"), from November 8, 2023, to September 8, 2026, and (ii) modify the interest rate and the repayment terms under the Note. The Note is secured by, among other things, certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated June 8, 2017 (together with any and all amendments thereto or modifications thereof, the "Deed of Trust"), executed by Borrower's predecessor in interest as trustor in favor of Lender, which was recorded on June 16, 2017, as Instrument No. 20170671625 in the Official Records of Los Angeles County, California, encumbering Borrower's interest in the real property more particularly described in Exhibit "A" attached hereto.

This Memorandum is intended to make a matter of public record the execution of the Extension and the modification of the Note and the other Loan Documents (as defined in the Extension) in connection therewith. This Memorandum is not intended to set forth all the terms and conditions thereof, for which reference is made to the Extension. This Memorandum may be executed and delivered in two or more counterparts, each of which, when so executed and delivered, shall be an original, and such counterparts together shall constitute but one and the same instrument and agreement, and this Memorandum shall not be binding on any party until all parties have executed it.

IN WITNESS WHEREOF, this Memorandum is executed by Borrower and Lender and as of the day and year first above written.

**BORROWER:**

SDRES PARTNERS LLC,
a California limited liability company

By: [signature]
Name: Banayotis Haddad
Its: Manager

**LENDER:**

PREFERRED BANK,
a California banking corporation

By: [signature]
Name: Carol Lee
Title: Senior Vice President

[ALL SIGNATURES MUST BE ACKNOWLEDGED]

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
) ss
COUNTY OF Orange )

On December 19, 2023, before me, Jennifer Williamson, a Notary Public, personally appeared Banayotu Haddad, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public

JENNIFER WILLIAMSON
COMM. #2466523
Notary Public - California
Orange County
My Comm. Expires Oct. 14, 2027
NR01

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
) ss
COUNTY OF Los Angeles )

On December 20, 2023 before me, Yitian Duan, a Notary Public, personally appeared Carol Lee, who proved to me on the basis of satisfactory evidence to be the person(~~s~~) whose name(~~s~~) is/~~are~~ subscribed to the within instrument, and acknowledged to me that ~~he~~/she/~~they~~ executed the same in ~~his~~/her/~~their~~ authorized capacity(~~ies~~), and that by ~~his~~/her/~~their~~ signature(~~s~~) on the instrument the person(~~s~~), or the entity upon behalf of which the person(~~s~~) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public

YITIAN DUAN
Notary Public - California
Los Angeles County
Commission # 2388605
My Comm. Expires Jan 26, 2026

**EXHIBIT "A"**
LEGAL DESCRIPTION

Real property in the City of Pasadena, County of Los Angeles, State of California, described as follows:

PARCEL 1:

LOT 12 OF TRACT NO. 63103, IN THE CITY OF PASADENA, AS PER MAP RECORDED IN BOOK 1369 PAGES 35 THROUGH 52 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AMENDED PURSUANT TO THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED DECEMBER 3, 2013 AS INSTRUMENT NO. 20131708591 OF OFFICIAL RECORDS.

PARCEL 2:

A RECIPROCAL ACCESS EASEMENT OVER THOSE AREAS SET OUT ON THE MAP SHOWN ABOVE.

PARCEL 3:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN CONSOLIDATED AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (SOUTH ORANGE GROVE PARCELS) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716500 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 4:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (DEL MAR PARCEL) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716499 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 5:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN ROSE PARADE GRANDSTAND EASEMENT AGREEMENT (ORANGE GROVE AVENUE) RECORDED JULY 21, 2005 AS INSTRUMENT NOS. 05-1721787 AND 05-1721788 BOTH OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 6:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING GARAGE EASEMENT AGREEMENT RECORDED JULY 2, 2007 AS INSTRUMENT NO. 20071579026 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 7:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING EASEMENT AGREEMENT RECORDED DECEMBER 28, 2011 AS INSTRUMENT NO. 20111763712 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

APN: 5713-027-065

# Exhibit U

# THIRD AMENDMENT TO LOAN DOCUMENTS

THIS THIRD AMENDMENT TO LOAN DOCUMENTS (this "Amendment") is entered into as of September 10, 2024, and effective as of June 8, 2024 (the "Effective Date"), by and between SDRES PARTNERS LLC, a California limited liability company ("Borrower"), and ANDREW STUPIN, an individual ("Guarantor"), on the one hand, and PREFERRED BANK, a California banking corporation ("Lender"), on the other hand.

## RECITALS

A. Lender has made a loan (the "Loan") to CANTOR GROUP LLC, a California limited liability company ("Original Borrower"), for the purpose of financing Original Borrower's acquisition of the Property (as hereinafter defined). The Loan was and is evidenced, in part, by that certain Promissory Note dated June 8, 2017, in the original principal amount of Eight Million Four Hundred Thousand and No/100 Dollars ($8,400,000.00), executed by Original Borrower in favor of Lender (together with any and all amendments and extensions thereto or modifications thereof, the "Original Note").

B. In connection with the Loan, Original Borrower also executed and delivered to and in favor of Lender, the following additional documents, among others:

1. Loan Agreement dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "Loan Agreement"), executed by and between Original Borrower and Lender;

2. Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "210 Orange Grove Deed of Trust"), executed by Original Borrower as trustor in favor of Lender, which was recorded on June 16, 2017, as Instrument No. 20170671620, in the Official Records of Los Angeles County, California, encumbering the real property more commonly known as 210 South Orange Grove, Pasadena, California, and more particularly described in Exhibit "A-1" attached hereto and incorporated herein by this reference ("210 Orange Grove Property");

3. Absolute Assignment of Leases, Lease Guaranties, Rents, Issues and Profits dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "210 Orange Grove Assignment of Leases"), executed by Original Borrower in favor of Lender, which was recorded on June 16, 2017, as Instrument No. 20170671621, in the Official Records of Los Angeles County, California;

4. Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "244 Orange Grove Deed of Trust" and together with the 210 Orange Grove Property, individually and collectively, the "Deed of Trust"), executed by Original Borrower as trustor in favor of Lender, which was recorded on June

16, 2017, as Instrument No. 20170671625, in the Official Records of Los Angeles County, California, encumbering the real property more commonly known as 244 South Orange Grove, Pasadena, California, and more particularly described in Exhibit "A-2" attached hereto and incorporated herein by this reference (the "244 Orange Grove Property", and together with the 210 Orange Grove Property, individually and collectively, the "Property");

5. Absolute Assignment of Leases, Lease Guaranties, Rents, Issues and Profits dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "244 Orange Grove Assignment of Leases" and together with the 210 Orange Grove Assignment of Leases, individually and collectively, the "Assignment of Leases"), executed by Original Borrower in favor of Lender, which was recorded on June 16, 2017, as Instrument No. 20170671626, in the Official Records of Los Angeles County, California; and

6. Hazardous Substances Indemnity Agreement dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "Indemnity Agreement"), executed by Original Borrower and Guarantor in favor of Lender, and covering the Property.

C. Payment and performance of Borrower's indebtedness and obligations in connection with the Loan was and is guaranteed by Guarantor, who delivered to and in favor of Lender a Continuing Guaranty dated June 8, 2017 (together with any and all amendments and extensions thereto or modifications thereof, the "Guaranty").

D. Pursuant to that certain Assumption Agreement dated June 8, 2017, by and among Original Borrower, Guarantor and Borrower, and a Memorandum of Assumption Agreement dated June 8, 2017, recorded in connection with each Property (collectively, the "Assumption Documents"), Lender consented to a transfer of one hundred percent (100%) of Original Borrower's right, title and interest in and to each Property to Borrower, and Borrower's assumption of any and all of Original Borrower's indebtedness and obligations to Lender under and in connection with the Loan Agreement, Original Note, Deed of Trust, Assignment of Leases, Indemnity Agreement and any and all other instruments, agreements and/or documents executed by Original Borrower in connection therewith.

E. On or about March 25, 2019, Borrower, Guarantor and Lender entered into that certain Modification of Deed of Trust and Amendment to Loan Documents dated as of March 25, 2019 (the "Modification"), whereby, among other things, (i) the interest rate and the repayment terms under the Original Note were modified pursuant to that certain Amended and Restated Promissory Note dated March 25, 2019, in the maximum principal amount of $8,400,000.00, executed by Borrower in favor of Lender (the "Note"), which Note amended and restated the Original Note in its entirety, and (ii) Borrower was permitted to subdivide the Property into two or more parcels and to sell any such parcels to third parties subject to the terms and conditions more particularly described therein.

F. On or around May 20, 2020, Borrower, Guarantor and Lender entered into that certain Payment Deferral Agreement and Limited Waiver dated May 20, 2020 (the "Payment Deferral Agreement"), whereby, among other things, beginning with the Loan payment due on May 8, 2020, Borrower's regularly scheduled monthly payments of interest under the Note was deferred in its entirety for a period of two (2) months through and including the payment due on June 8, 2020 ("Payment Deferral Period"). Beginning with the Loan payment due on July 8, 2020, all payments due and owing under the Note reverted back to the payment terms in effect directly prior to the Payment Deferral Period, as set forth in the Note.

G. On or about May 24, 2022, Borrower, Guarantor and Lender entered into that certain Extension Agreement dated as of May 24, 2022 (the "First Extension"), whereby, among other things, the maturity date of the Note was extended from June 8, 2022 to September 8, 2022.

H. On or about September 7, 2022, Borrower, Guarantor and Lender entered into that certain Second Extension Agreement dated as of September 7 2022 (the "Second Extension"), whereby, among other things, the maturity date of the Note was extended from September 8, 2022 to March 8, 2023.

I. On or about March 14, 2023, Borrower, Guarantor and Lender entered into that certain Third Extension Agreement dated as of March 14, 2023 (the "Third Extension"), whereby, among other things, the maturity date of the Note was extended from March 8, 2023 to July 8, 2023.

J. In connection with the Third Extension, (i) Borrower executed and delivered to Lender that certain Security Agreement (Assignment of Deposit Account) dated as March 14, 2023 (the "Assignment of Deposit Account"), whereby, among other things, Borrower assigned, pledged, and transferred to Lender all of Borrower's right, title, and interest in and to that certain deposit account with Lender in the name of "SDRES PARTNERS LLC" and maintained at Lender, Account No. 1022431 (the "Payment Reserve Account"), as further set forth therein, and (ii) Borrower deposited the sum of $220,000.00 into the Payment Reserve Account. Lender's security interest in the Payment Reserve Account was and is perfected under applicable law.

K. On or about June 28, 2023, Borrower, Guarantor and Lender entered into that certain Fourth Extension Agreement dated as of June 28, 2023 (the "Fourth Extension"), whereby, among other things, the maturity date of the Note was extended from July 8, 2023 to November 8, 2023.

L. On or about December 13, 2023, Borrower, Guarantor and Lender entered into that certain Fifth Extension Agreement and Amendment to Loan Documents dated as of December 13, 2023 (the "Fifth Extension/Second Amendment"), whereby, among other things, (i) the maturity date of the Note was extended from November 8, 2023 September 8, 2026, (ii) the interest rate under the Note was revised to the per annum fixed rate of seven and one-half percent (7.50%), a prepayment fee was added to the Note and the repayment terms under the Note were amended, and (iii) certain other

modifications were made to the Loan Agreement, the Note and the other Loan Documents.

M. Pursuant to each Deed of Trust and the Assumption Documents, Borrower granted to and in favor of Lender a first priority security interest in and lien upon certain real and personal property described in each Deed of Trust (the "Deed of Trust Collateral"), to secure, without limitation, payment and performance of the indebtedness and obligations under and in connection with the Loan and the Original Note, as amended and restated in its entirety by the Note. Lender's security interest in the Deed of Trust Collateral was and is perfected under applicable law.

N. The Note, Loan Agreement, Deed of Trust, Assignment of Leases, Indemnity Agreement, Assumption Documents, Guaranty, Modification, Payment Deferral Agreement, First Extension, Second Extension, Third Extension, Assignment of Deposit Account, Fourth Extension, Fifth Extension/Second Amendment and all other assignments, agreements, instruments and other documents executed by Borrower (and Original Borrower) and/or Guarantor in connection with the Loan shall at times hereinafter be referred to collectively as the "Loan Documents."

O. Borrower and Guarantor have each requested that Lender (i) modify the interest rate under the Note for the remaining term of the Loan to a fixed rate of six and three-quarter of one percent (6.75%) and (ii) remove the existing prepayment fee required under the Note. Lender is willing to agree to said requests, subject to the terms and conditions set forth in this Amendment.

Except as may be otherwise expressly defined in this Amendment, all terms used in this Amendment beginning with a capital letter shall have the meanings ascribed to them in the Loan Agreement.

**AGREEMENT**

NOW, THEREFORE, for valuable consideration and the mutual promises of the parties hereto, said parties do hereby acknowledge and agree as follows:

1. <u>Recitals.</u>

The recitals are incorporated herein by this reference as are all exhibits. Borrower and Guarantor, and each of them, agree and acknowledge that the factual information recited above is true and correct.

2. Borrower and Guarantor Acknowledgment as to Obligations.

A. Borrower, and Guarantor each acknowledge, confirm and agree that as of September 5, 2024, (i) the total outstanding principal balance of the Note is $7,999,362.98 plus accrued and unpaid interest thereon, and (ii) the sum of $220,000.00 remains in the Payment Reserve Account, subject to the terms, conditions and provisions of the Loan Documents. The amount in the Payment Reserve Account shall remain subject to Section 6 of the Fifth Extension/Second Amendment.

B. Borrower and Guarantor, and each of them, specifically acknowledge and confirm that they do not have any valid offset or defense to the obligations, indebtedness and liability under the Loan Documents.

3. Reaffirmation of Obligations.

This Amendment is, in part, a reaffirmation of the obligations, indebtedness and liability of Borrower and Guarantor, and each of them, to Lender as evidenced by the Loan Documents. Therefore, Borrower and Guarantor, and each of them, acknowledge and agree that, except as specified herein, all of the terms and conditions of the Loan Documents are and shall remain in full force and effect, without waiver or modification of any kind whatsoever, and are ratified and confirmed in all respects.

4. Amendment to Loan Documents; Exit Fee.

A. The "Note Rate" (as defined in the Note) is hereby amended such that from and after June 8, 2024, the existing Note Rate (the "Existing Note Rate") of seven and one-half of one percent (7.50%) shall be replaced with the per annum fixed rate of six and three-quarter of one percent (6.75%) (the "New Note Rate"); provided, however, that upon an Event of Default under this Amendment or any of the other Loan Documents, as determined by Lender in its sole opinion and judgment, (i) the Note Rate shall permanently revert back to the Existing Note Rate of seven and one-half of one percent (7.50%) for the remaining term of the Loan, subject to, and in addition to, the Default Rate, as applicable, in accordance with the terms of the Note, and such reversion back to the Existing Note Rate shall be effective as of the date of the Event of Default as determined by Lender (the "Default Date"), and (ii) Borrower shall pay to Lender within ten (10) days upon demand by Lender, the Exit Fee (as hereinafter defined).

B. Commencing with the payment under the Note due on October 8, 2024, in addition to the payment of interest, as set forth therein, at the New Note Rate, and continuing on the same day of each and every calendar month thereafter until the Maturity Date, Borrower shall continue to pay to Lender a monthly installment payment of principal in an amount equal to $6,493.29.

C. In consideration for Lender's agreement to enter into this Amendment, Borrower agrees to pay to Lender in immediately available funds, within ten (10) days upon demand by Lender following an Event of Default as described in Section 4(A) above, a non-refundable fee ("Exit Fee") in an amount equal to the

difference between (i) the accrued interest under the Note at the New Note Rate from June 8, 2024 through and including the Default Date and (ii) the accrued interest at the Existing Note Rate from June 8, 2024 through and including the Default Date, which Exit Fee shall be calculated by Lender. To the extent that the Exit Fee is not paid when due, the Exit Fee shall be added to the principal amount of the Loan and interest shall accrue thereon at the Default Rate as set forth in the Note, compounded monthly until paid in full. Borrower acknowledges that the Exit Fee is not now subject to, and in the future will not be subject to, any right of set off or counterclaim. The payment of such Exit Fee shall not result in a reamortization, deferral, postponement, suspension or waiver of any and all other payments due under the Note and the Loan Documents.

D. The following is added to the end of the section of the Note entitled "DEFAULT RATE" on page 3 of the Note:

> "Borrower acknowledges and agrees that (i) the Default Rate is not a penalty; (ii) the Default Rate is intended to compensate Lender for the internal administrative costs and expenses incurred by Lender for a defaulted loan (including, for example, staff costs arising from internal and regulatory reporting of delinquencies, additional underwriting analysis, in-house legal review, and credit committee reviews) over and above the economic costs associated with the loss of use of money and out of pocket costs otherwise subject to reimbursement pursuant to this Note and the other Loan Documents; (iii) the amount of the Default Rate is a reasonable forecast of just compensation for the harm caused due to the Default; and (iv) the actual damage resulting from an Default is incapable or very difficult of accurate estimation."

E. The section of the Note (as modified by the Fifth Extension/Second Amendment) entitled "PREPAYMENT" on pages 3-4 of the Note is hereby deleted in its entirety and replaced with the following:

> "**PREPAYMENT**. Borrower shall have the right at any time following five (5) calendar days prior written notice to Lender, to prepay all or any portion of the principal balance outstanding under this Note, without any prepayment premium or prepayment penalty."

5. [Intentionally omitted.]

6. Amendment as a Loan Document.

From and after the effective date of this Amendment, this Amendment and any other documents and instruments executed in connection herewith shall each constitute one of the "Loan Documents."

7. Effective Date of Amendment.

This Amendment and the amendments provided for herein shall be effective as of June 8, 2024, upon the timely and complete satisfaction of each and all of the conditions precedent set forth in Section 9 of this Amendment.

8. Borrower's and Guarantor's Representations and Warranties.

Borrower and Guarantor, and each of them, hereby represent and warrant to Lender and covenant and agree with Lender as follows:

A. Borrower and Guarantor, and each of them, have full legal right, power and authority to enter into and perform this Amendment. The execution and delivery of this Amendment by Borrower and the consummation by Borrower of the transactions contemplated hereby have been duly authorized by all necessary action by or on behalf of Borrower. This Amendment is a valid and binding obligation of Borrower and Guarantor, and each of them, enforceable against Borrower and Guarantor in accordance with its terms.

B. Neither the execution and delivery of this Amendment by Borrower and Guarantor, or any of them, nor the consummation by Borrower and Guarantor, or any of them, of the transactions contemplated hereby, conflicts with or constitutes a violation or a default under any law or regulation applicable to Borrower and Guarantor, or any of them, or any contract, commitment, agreement, arrangement or restriction of any kind to which Borrower and Guarantor, or any of them, is a party, by which Borrower and Guarantor, or any of them, is bound or to which any of Borrower's and Guarantor's, or any of their, property or assets is subject.

C. There are no actions, suits or proceedings pending, or to the knowledge of Borrower and Guarantor, or any of them, threatened against or affecting Borrower and Guarantor, or any of them, respectively, in relation to their obligations to Lender or involving the validity and enforceability of this Amendment, the Loan Agreement, the Deed of Trust, the Guaranty or any of the other Loan Documents, as applicable, or the priority of any liens given by Borrower to Lender in accordance with the Note, the Loan Agreement, the Deed of Trust, and the other Loan Documents, at Law or in equity, or before or by any Governmental Agency, or which could have a material adverse effect on the financial condition, operations, properties, assets, liabilities or earnings of Borrower and Guarantor, or any of them, or the ability of Borrower and Guarantor, or any of them, to perform their respective obligations to Lender.

D. Borrower and Guarantor, and each of them, hereby reaffirm and confirm that the representations and warranties of Borrower and Guarantor, as applicable, contained in the Loan Documents are true, correct and complete in all material respects as of the date of this Amendment.

E. Borrower and Guarantor, and each of them, are in full and complete compliance with the terms, covenants, provisions and conditions of the Note, the Loan Agreement, the Deed of Trust, the Guaranty and the other Loan Documents.

F. Neither Borrower nor Guarantor has any actual knowledge of any release of Hazardous Substances (as defined in the Indemnity Agreement) on the Property.

All covenants, representations and warranties of Borrower and Guarantor herein are incorporated by reference and hereby made a part of the Loan Agreement and the Guaranty, as applicable.

9. Conditions Precedent to Effectiveness of Amendment.

The effectiveness of this Amendment is expressly conditioned upon Borrower having, at its sole expense, deposited or caused to be deposited with Lender as of October 10, 2024, all of the following items, documents, certificates and other instruments, in form and content satisfactory to Lender and its counsel, in their sole and absolute discretion, and suitable for filing or recording as required:

A. This Amendment, fully executed by Borrower and Guarantor;

B. The Memorandums of Third Amendment to Loan Documents with respect to the 210 Orange Grove Property, each executed by Borrower, which shall be recorded in the Official Records of Los Angeles County, California, at Borrower's sole expense;

C. The Memorandums of Third Amendment to Loan Documents with respect to the 244 Orange Grove Property, each executed by Borrower, which shall be recorded in the Official Records of Los Angeles County, California, at Borrower's sole expense;

D. At Borrower's sole expense, endorsements to Lender's policy of title insurance insuring the lien of the Deed of Trust, which endorsements will provide, in substance, that the priority of the Deed of Trust is unaffected by this Amendment, and such other endorsements as Lender deems appropriate, in its sole and absolute opinion and judgment;

E. Borrower shall have paid to Lender all accrued and unpaid interest under the Note through the payment due on September 8, 2024 from Borrower's own funds, in accordance with the terms of the Note, as modified by this Amendment;

F. Borrower shall have delivered to Lender updated operating statements and rent rolls for each Property, satisfactory to Lender in its sole opinion and judgment;

G. Such additional information, assignments, agreements, certificates, reports, approvals, instruments, documents, subordination agreements, financing statements, consents and opinions as Lender may request, in its sole and absolute opinion and judgment, in connection with this Amendment and/or any of the matters which are the subject of this Amendment; and

H. Payment of the fees and costs of Lender in connection with the preparation, negotiation, administration and execution of this Amendment including, but not limited to, attorneys' fees, endorsement and recording fees, and other costs and fees of other professionals retained by Lender.

10. General Release.

A. Except as to the obligations imposed upon Lender, as provided herein, Borrower and Guarantor, and each of them, on behalf of themselves, their respective successors and assigns, and each of them, do each hereby forever relieve, release, acquit and discharge Lender and its predecessors, successors and assigns, and their respective past and present attorneys, accountants, insurers, representatives, affiliates, partners, subsidiaries, officers, employees, directors, and shareholders, and each of them (collectively, the "Released Parties"), from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, costs and expenses (including, but not limited to, attorneys' fees), damages, injuries, actions and causes of action, of whatever kind or nature, whether legal or equitable, known or unknown, suspected or unsuspected, contingent or fixed, which Borrower and Guarantor, or any of them, now own or hold or have at any time heretofore owned or held or may at any time hereafter own or hold against the Released Parties, or any of them, by reason of any acts, facts, transactions or any circumstances whatsoever occurring or existing through the date of this Amendment, including, but not limited to, those based upon, arising out of, appertaining to, or in connection with the Recitals above, the Loan, the Loan Documents, the facts pertaining to this Amendment, any collateral heretofore granted to Lender or granted in connection herewith, or to any other obligations of Borrower and/or Guarantor to Lender, all jointly and severally.

B. As to the matters released herein, Borrower and Guarantor, and each of them, expressly waive any and all rights under Section 1542 of the Civil Code of the State of California, which provides as follows:

> "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

Borrower and Guarantor, and each of them, expressly waive and release any right or benefit which they have or may have under Section 1542 of the Civil Code of the State of California, and any similar law of any state, territory, commonwealth or possession of the United States, or the United States, to the full extent that they may waive all such rights and benefits pertaining to the matters released herein. In connection with such waiver and relinquishment, Borrower and Guarantor, and each of them, acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true. Nevertheless, it is the intention of Borrower and Guarantor,

and each of them, through this Amendment, to fully, finally and forever release all such matters, and all claims relative thereto, which do now exist, may exist, or heretofore have existed. In furtherance of such intention, the release herein given shall be and remain in effect as a full and complete release of such matters notwithstanding the discovery or existence of any such additional or different claims or facts relative thereto.

C. In entering into the release provided for in this Amendment, Borrower and Guarantor, and each of them, recognize that no facts or representations are ever absolutely certain; accordingly, Borrower and Guarantor, and each of them, assume the risk of any misrepresentation, concealment or mistake, and if Borrower and Guarantor, or any of them, should subsequently discover that any fact that they relied upon in entering into these releases was untrue, or that any fact was concealed from them, or that any understanding of the facts or of the law was incorrect, Borrower and Guarantor, and each of them, shall be not entitled to set aside these releases by reason thereof, regardless of any claims of fraud, misrepresentation, promise made without the intention of performing it, concealment of fact, mistake of fact or law, or any other circumstances whatsoever.

D. Borrower and Guarantor, and each of them, are the sole and lawful owners of all right, title and interest in and to every claim and other matter which they purport to release herein, and they have not heretofore assigned or transferred, or purported to assign or transfer to any person or any entity claims or other matters herein released. Borrower and Guarantor, and each of them, shall indemnify, defend and hold Lender and each of the other Released Parties, harmless from and against any claims, liabilities, actions, causes of action, demands, injuries, costs, and expenses (including, but not limited to, attorneys' fees), based upon or arising in connection with any such prior assignment or transfer, or any such purported assignment or transfer, or any claims or other matters released herein.

11. Revival of Obligation.

A. Borrower and Guarantor, and each of them, acknowledge and agree that in the event that the payment of money, this Amendment, or the grant of collateral should for any reason subsequently be declared to be "fraudulent" within the meaning of any state, federal or foreign law relating to fraudulent conveyances, preferential or otherwise voidable or recoverable, in whole or in part, for any reason, under the United States Bankruptcy Code or any other federal, foreign or state law (collectively referred to herein as "Voidable Transfer"), and Lender is required to pay or restore any such Voidable Transfer, or any portion thereof, then as to that which is repaid or restored pursuant to any such Voidable Transfer (including all costs, expenses and attorneys' fees of Lender related thereto, including, without limitation, relief from stay or similar proceedings), the liability of Borrower and Guarantor, and each of them, shall automatically be revived, reinstated and restored to the extent thereof, and shall exist as though such Voidable Transfer had never been made to Lender.

B. Nothing set forth herein is an admission that such Voidable Transfer has occurred. Borrower and Guarantor, and each of them, expressly

acknowledge that Lender may rely upon advice of counsel, and if so advised by counsel, may, in the exercise of Lender's sole opinion and judgment, settle, without defending, any action to void any alleged Voidable Transfer, and that upon such settlement, Borrower and Guarantor, and each of them, shall again be liable for any deficiency resulting from such settlement as provided in this Amendment.

C. As an additional inducement to and material consideration for Lender agreeing to the modifications/extension provided in this Amendment, Borrower and Guarantor, and each of them, agree that in the event a Bankruptcy or Judicial Action (as hereinafter defined in this Section 11) is commenced which subjects Lender to any stay in the exercise of Lender's rights and remedies under the Loan Documents including, but not limited to, the automatic stay imposed by Section 362 of the United States Bankruptcy Code (individually and collectively, "Stay"), then Borrower and Guarantor, and each of them, irrevocably consent and agree that such Stay shall automatically be lifted and released against Lender, and Lender shall thereafter be entitled to exercise all of its rights and remedies against Borrower and Guarantor, and each of them, under the Loan Documents, subject, however, to the terms and conditions of this Amendment. Borrower and Guarantor, and each of them, acknowledge that each is knowingly, voluntarily, and intentionally waiving each of such party's rights to any Stay and agrees that the benefits provided to Borrower and Guarantor under the terms of this Amendment are valuable consideration for such waiver. As used in this Section 11, the term "Bankruptcy or Judicial Action" shall mean any voluntary or involuntary case filed by or against Borrower and/or Guarantor, or any of them, under the United States Bankruptcy Code, or any voluntary or involuntary petition in composition, readjustment, liquidation, or dissolution, or any state and federal bankruptcy law action filed by or against Borrower and Guarantor, or any of them, any action where Borrower or Guarantor, or any of them, are adjudicated as bankrupt or insolvent, any action for dissolution of Borrower or Guarantor, or any of them, or any action in furtherance of any of the foregoing, or any other action, case, or proceeding that has the effect of staying (or in which a stay is being obtained against) the enforcement by Lender of its rights and remedies under this Amendment, or any of the Loan Documents.

12. No Joint Venture, Management and Control. Notwithstanding any provision of this Amendment and/or of the Loan Documents:

A. Lender is not and shall not be construed to be a partner, joint venture, alter ego, manager, controlling person or other business associate or participant of any kind of Borrower and Guarantor, or any of them, or any other person;

B. Lender shall not be deemed responsible to perform or participate in any acts, omissions, or decisions of Borrower and Guarantor, or any of them; and

C. Borrower and Guarantor, and each of them, do not have any claims, causes of action or defenses to their obligations to Lender based on any allegations of management or control exercised by Lender. Borrower and Guarantor, and each of them, acknowledge and agree that Lender does not manage or control them in any way.

13. Miscellaneous.

A. Section headings used in this Amendment are for convenience only and shall not affect the construction of this Amendment.

B. This Amendment may be executed in one or more counterparts but all of the counterparts shall constitute one agreement; provided, however, this Amendment shall not be effective and enforceable unless and until it is executed by all parties hereto.

C. This Amendment and the other documents and instruments executed in connection therewith constitute the product of the negotiation of the parties hereto and the enforcement hereof shall be interpreted in a neutral manner, and not more strongly for or against any party based upon the source of the draftsmanship hereof.

D. This Amendment shall be binding upon and inure to the benefit of Lender, Borrower and Guarantor, and each of them, and their respective successors and assigns, except that neither Borrower nor Guarantor shall assign their rights hereunder or any interest therein without the prior written consent of Lender.

E. This Amendment is not a novation, nor, except as expressly provided in this Amendment, is it to be construed as a release or modification of any of the terms, conditions, warranties, waivers or rights set forth in the Loan Documents. Nothing contained in this Amendment shall be deemed to constitute a waiver by Lender of any required performance by Borrower or Guarantor, and each of them, of any Event of Default or default heretofore or hereafter occurring under or in connection with the other Loan Documents. In the event there is a conflict in any term, condition or provision of this Amendment, on the one hand, and the Note, the Loan Agreement, the Deed of Trust, the Guaranty, or any of the other Loan Documents, on the other hand, the terms, conditions and provisions of this Amendment are to control.

F. Borrower and Guarantor, and each of them, further represent and warrant as follows:

(1) They have received, or have had the opportunity to receive, independent legal advice from attorneys of each of their choice with respect to the advisability of executing this Amendment and prior to the execution of this Amendment by Borrower and Guarantor, their attorneys reviewed this Amendment and discussed this Amendment with them and have made all desired changes;

(2) Except as expressly stated in this Amendment, neither Lender nor any other person or entity has made any statement or representation to Borrower or Guarantor regarding facts relied upon by any of them;

(3) Borrower and Guarantor, and each of them, do not rely upon any statement, representation or promise of Lender or any other person or entity in executing this Amendment except as expressly stated in this Amendment;

(4) The terms of this Amendment are contractual and not a mere recital;

(5) This Amendment has been carefully read by, the contents hereof are known and understood by, and it is signed freely by Borrower and Guarantor, and each of them; and

(6) This Amendment and the releases contained herein are intended to be final and binding against Borrower and Guarantor, and each of them, and each of them acknowledge that Lender is expressly relying on the finality of this Amendment as a substantial, material factor inducing Lender's execution of this Amendment. Borrower and Guarantor, and each of them, have the full right and authority to enter into this Amendment, and the officer, agent or other representative executing this Amendment on behalf of Borrower has the full right and authority to fully commit and bind it to this Amendment.

G. MARIJUANA RELATED BUSINESS (MRB) – Borrower acknowledges that if any part of the Property will be leased to a marijuana related business ("MRB"), or otherwise used for MRB purposes, Borrower must submit written request to Lender for approval of MRB tenant or MRB use prior to execution of a lease or MRB use, which approval shall be in Lender's sole discretion.

JM
Borrower's Initials

H. JUDICIAL REFERENCE. THE PARTIES HEREBY AGREE THAT ANY CLAIMS, CONTROVERSIES, DISPUTES, OR QUESTIONS OF INTERPRETATION, WHETHER LEGAL OR EQUITABLE, ARISING OUT OF, CONCERNING OR RELATED TO THIS AMENDMENT AND ALL LOAN DOCUMENTS EXECUTED BY BORROWER AND GUARANTOR SHALL BE HEARD BY A SINGLE REFEREE BY CONSENSUAL GENERAL JUDICIAL REFERENCE PURSUANT TO THE PROVISIONS OF CALIFORNIA CODE OF CIVIL PROCEDURE SECTS 638 ET SEQ., WHO SHALL DETERMINE ALL ISSUES OF FACT OR LAW AND TO REPORT A STATEMENT OF DECISION. THE REFEREE SHALL ALSO HAVE THE POWER TO HEAR AND DETERMINE PROCEEDINGS FOR ANCILLARY RELIEF, INCLUDING, BUT NOT LIMITED TO, APPLICATIONS FOR ATTACHMENT, ISSUANCE OF INJUNCTIVE RELIEF, APPOINTMENT OF A RECEIVER, AND/OR CLAIM AND DELIVERY. THE COSTS OF THE PROCEEDING SHALL BE BORNE EQUALLY BY THE PARTIES TO THE DISPUTE, SUBJECT TO THE DISCRETION OF THE REFEREE TO ALLOCATE SUCH COSTS BASED ON A DETERMINATION AS TO THE PREVAILING PARTY(IES) IN THE PROCEEDING.

[Initials to follow on next page.]

BY INITIALING BELOW, THE PARTIES ACKNOWLEDGE THAT THEY HAVE READ AND UNDERSTAND THE FOREGOING JUDICIAL REFERENCE PROVISIONS AND UNDERSTAND THAT THEY ARE WAIVING THEIR RIGHT TO A JURY TRIAL.

__________________ Borrower's Initials

__________________ Guarantor's Initials

__________________ Lender's Initials

[Signature page to follow.]

**BY INITIALING BELOW, THE PARTIES ACKNOWLEDGE THAT THEY HAVE READ AND UNDERSTAND THE FOREGOING JUDICIAL REFERENCE PROVISIONS AND UNDERSTAND THAT THEY ARE WAIVING THEIR RIGHT TO A JURY TRIAL.**

JM
Borrower's Initials

Guarantor's Initials

JM
Lender's Initials

[Signature page to follow.]

IN WITNESS WHEREOF, Borrower, Guarantor and Lender have executed and delivered this Amendment as of the date set forth above.

**BORROWER**:

SDRES PARTNERS LLC,
a California limited liability company

By: ______________________
Name: Jason Miller
Its: Manager

**GUARANTOR:**

______________________
ANDREW STUPIN, an individual

**LENDER**:

PREFERRED BANK,
a California banking corporation

By: ______________________
Name: Lingchu Lin
Title: EVP

IN WITNESS WHEREOF, Borrower, Guarantor and Lender have executed and delivered this Amendment as of the date set forth above.

**BORROWER**:

SDRES PARTNERS LLC,
a California limited liability company

By: ______________________
Name: Jason Miller
Its: Manager

**GUARANTOR**:

______________________
ANDREW STUPIN, an individual

**LENDER**:

PREFERRED BANK,
a California banking corporation

By: ______________________
Name: ______________________
Title: ______________________

**EXHIBIT "A-1"**
LEGAL DESCRIPTION OF THE 210 ORANGE GROVE PROPERTY

Real property in the City of Pasadena, County of Los Angeles, State of California, described as follows:

PARCEL 1:

LOT 10 OF TRACT NO. 63103, IN THE CITY OF PASADENA, AS PER MAP RECORDED IN BOOK 1369 PAGES 35 THROUGH 52 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AMENDED PURSUANT TO THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED DECEMBER 3, 2013 AS INSTRUMENT NO. 20131708591 OF OFFICIAL RECORDS.

PARCEL 2:

A RECIPROCAL ACCESS EASEMENT OVER THOSE AREAS SET OUT ON THE MAP SHOWN ABOVE.

PARCEL 3:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN CONSOLIDATED AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (SOUTH ORANGE GROVE PARCELS) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716500 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 4:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN ROSE PARADE GRANDSTAND EASEMENT AGREEMENT (ORANGE GROVE AVENUE) RECORDED JULY 21, 2005 AS INSTRUMENT NOS. 05-1721787 AND 05-1721788 BOTH OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 5:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING GARAGE EASEMENT AGREEMENT RECORDED JULY 2, 2007 AS INSTRUMENT NO. 20071579026 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 6:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING EASEMENT AGREEMENT RECORDED DECEMBER 28, 2011 AS INSTRUMENT NO. 20111763712 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

APN: 5713-013-057

# EXHIBIT "A-2"
# LEGAL DESCRIPTION OF THE 244 SOUTH ORANGE GROVE PROPERTY

Real property in the City of Pasadena, County of Los Angeles, State of California, described as follows:

PARCEL 1:

LOT 12 OF TRACT NO. 63103, IN THE CITY OF PASADENA, AS PER MAP RECORDED IN BOOK 1369 PAGES 35 THROUGH 52 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AMENDED PURSUANT TO THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED DECEMBER 3, 2013 AS INSTRUMENT NO. 20131708591 OF OFFICIAL RECORDS.

PARCEL 2:

A RECIPROCAL ACCESS EASEMENT OVER THOSE AREAS SET OUT ON THE MAP SHOWN ABOVE.

PARCEL 3:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN CONSOLIDATED AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (SOUTH ORANGE GROVE PARCELS) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716500 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 4:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (DEL MAR PARCEL) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716499 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 5:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN ROSE PARADE GRANDSTAND EASEMENT AGREEMENT (ORANGE GROVE AVENUE) RECORDED JULY 21, 2005 AS INSTRUMENT NOS. 05-1721787 AND 05-1721788 BOTH OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 6:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING GARAGE EASEMENT AGREEMENT RECORDED JULY 2, 2007 AS INSTRUMENT NO. 20071579026 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 7:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING EASEMENT AGREEMENT RECORDED DECEMBER 28, 2011 AS INSTRUMENT NO. 20111763712 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

APN: 5713-027-065

# Exhibit V

**This page is part of your document - DO NOT DISCARD**

**20240688400**

**Pages: 0005**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**10/09/24 AT 08:00AM**

| | |
|---|---|
| FEES: | 75.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 225.00 |
| PAID: | 300.00 |

LEADSHEET

202410090160005

**00024862498**

014934528

**SEQ:**
**01**

SECURE - 8:00AM

**THIS FORM IS NOT TO BE DUPLICATED**

E683454

833699E1*LS

FOR REFERENCE ONLY : 20240688400

NRECORDING REQUESTED BY
AND WHEN RECORDED, MAIL TO:

PREFERRED BANK
601 S. Figueroa Street, 47th Floor
Los Angeles, California 90017
Attention: Note Department

Assessor's Parcel No.: 5713-013-057

833699 E1

SPACE ABOVE FOR RECORDER'S USE ONLY

**MEMORANDUM OF THIRD AMENDMENT TO LOAN DOCUMENTS**
**(210 S. Orange Grove Boulevard)**

THIS MEMORANDUM OF THIRD AMENDMENT TO LOAN DOCUMENTS ("Memorandum") is entered into as of this 10th day of September 2024, by and between SDRES PARTNERS LLC, a California limited liability company ("Borrower"), and PREFERRED BANK, a California banking corporation ("Lender"). Lender, Borrower, and Andrew Stupin, an individual, have entered into that certain Third Amendment to Loan Documents dated as of September 10, 2024 ("Amendment"), pursuant to which, among other things, the parties agreed to reduce the interest rate under that certain Amended and Restated Promissory Note dated March 25, 2019, in the maximum principal amount of Eight Million Four Hundred Thousand and No/100 Dollars ($8,400,000.00), executed by Borrower in favor of Lender (together with any and all extensions or amendments thereto or modifications thereof, the "Note"). The Note is secured by, among other things, certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated June 8, 2017 (together with any and all amendments thereto or modifications thereof, the "Deed of Trust"), executed by Borrower's predecessor in interest as trustor in favor of Lender, which was recorded on June 16, 2017, as Instrument No. 20170671620 in the Official Records of Los Angeles County, California, encumbering Borrower's interest in the real property more particularly described in Exhibit "A" attached hereto.

This Memorandum is intended to make a matter of public record the execution of the Amendment and the modification of the Note and the other Loan Documents (as defined in the Amendment) in connection therewith. This Memorandum is not intended to set forth all the terms and conditions thereof, for which reference is made to the Amendment. This Memorandum may be executed and delivered in two or more counterparts, each of which, when so executed and delivered, shall be an original, and such counterparts together shall constitute but one and the same instrument and agreement, and this Memorandum shall not be binding on any party until all parties have executed it.

IN WITNESS WHEREOF, this Memorandum is executed by Borrower and Lender and as of the day and year first above written.

**BORROWER:**

SDRES PARTNERS LLC,
a California limited liability company

By: ______________________
Name: Jason Miller
Its: Manager

**LENDER:**

PREFERRED BANK,
a California banking corporation

By: ______________________
Name: Lingchu Lin
Title: EVP

[ALL SIGNATURES MUST BE ACKNOWLEDGED]

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
) ss
COUNTY OF Orange )

On October 4, 2024, before me, Jennifer Williamson, a Notary Public, personally appeared Jason Miller, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public

JENNIFER WILLIAMSON
COMM. #2466523
Notary Public - California
Orange County
My Comm. Expires Oct. 14, 2027

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
) ss
COUNTY OF Los Angeles )

On October 7, 2024, before me, Vicky Peng, a Notary Public, personally appeared Longchun Lin, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public

VICKY PENG
Notary Public - California
Los Angeles County
Commission # 2421481
My Comm. Expires Oct 15, 2026

# EXHIBIT "A"
LEGAL DESCRIPTION

Real property in the City of Pasadena, County of Los Angeles, State of California, described as follows:

PARCEL 1:

LOT 10 OF TRACT NO. 63103, IN THE CITY OF PASADENA, AS PER MAP RECORDED IN BOOK 1369 PAGES 35 THROUGH 52 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AMENDED PURSUANT TO THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED DECEMBER 3, 2013 AS INSTRUMENT NO. 20131708591 OF OFFICIAL RECORDS.

PARCEL 2:

A RECIPROCAL ACCESS EASEMENT OVER THOSE AREAS SET OUT ON THE MAP SHOWN ABOVE.

PARCEL 3:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN CONSOLIDATED AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (SOUTH ORANGE GROVE PARCELS) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716500 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 4:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN ROSE PARADE GRANDSTAND EASEMENT AGREEMENT (ORANGE GROVE AVENUE) RECORDED JULY 21, 2005 AS INSTRUMENT NOS. 05-1721787 AND 05-1721788 BOTH OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 5:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING GARAGE EASEMENT AGREEMENT RECORDED JULY 2, 2007 AS INSTRUMENT NO. 20071579026 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 6:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING EASEMENT AGREEMENT RECORDED DECEMBER 28, 2011 AS INSTRUMENT NO. 20111763712 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

APN: 5713-013-057

**This page is part of your document - DO NOT DISCARD**

COUNTY OF LOS ANGELES CALIFORNIA

# 20240688406

Pages: 0005

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**10/09/24 AT 08:00AM**

| | |
|---|---|
| FEES: | 31.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 106.00 |

LEADSHEET

202410090140005

**00024862503**

014934531

**SEQ:**
**01**

SECURE - 8:00AM

**THIS FORM IS NOT TO BE DUPLICATED**

E682329

833700E1*LS

FOR REFERENCE ONLY : 20240688406

NRECORDING REQUESTED BY
AND WHEN RECORDED, MAIL TO:

PREFERRED BANK
601 S. Figueroa Street, 47th Floor
Los Angeles, California 90017
Attention: Note Department

Assessor's Parcel No.: 5713-027-065

833700E1

SPACE ABOVE FOR RECORDER'S USE ONLY

**MEMORANDUM OF THIRD AMENDMENT TO LOAN DOCUMENTS**
**(244 S. Orange Grove Boulevard)**

THIS MEMORANDUM OF THIRD AMENDMENT TO LOAN DOCUMENTS ("Memorandum") is entered into as of this 10th day of September 2024, by and between SDRES PARTNERS LLC, a California limited liability company ("Borrower"), and PREFERRED BANK, a California banking corporation ("Lender"). Lender, Borrower, and Andrew Stupin, an individual, have entered into that certain Third Amendment to Loan Documents dated as of September 10, 2024 ("Amendment"), pursuant to which, among other things, the parties agreed to reduce the interest rate under that certain Amended and Restated Promissory Note dated March 25, 2019, in the maximum principal amount of Eight Million Four Hundred Thousand and No/100 Dollars ($8,400,000.00), executed by Borrower in favor of Lender (together with any and all extensions or amendments thereto or modifications thereof, the "Note"). The Note is secured by, among other things, certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated June 8, 2017 (together with any and all amendments thereto or modifications thereof, the "Deed of Trust"), executed by Borrower's predecessor in interest as trustor in favor of Lender, which was recorded on June 16, 2017, as Instrument No. 20170671625 in the Official Records of Los Angeles County, California, encumbering Borrower's interest in the real property more particularly described in Exhibit "A" attached hereto.

This Memorandum is intended to make a matter of public record the execution of the Amendment and the modification of the Note and the other Loan Documents (as defined in the Amendment) in connection therewith. This Memorandum is not intended to set forth all the terms and conditions thereof, for which reference is made to the Amendment. This Memorandum may be executed and delivered in two or more counterparts, each of which, when so executed and delivered, shall be an original, and such counterparts together shall constitute but one and the same instrument and agreement, and this Memorandum shall not be binding on any party until all parties have executed it.

IN WITNESS WHEREOF, this Memorandum is executed by Borrower and Lender and as of the day and year first above written.

**BORROWER:**

SDRES PARTNERS LLC,
a California limited liability company

By: ______________________
Name: Jason Miller
Its: Manager

**LENDER:**

PREFERRED BANK,
a California banking corporation

By: ______________________
Name: Ling Chu Lin
Title: EVP

[ALL SIGNATURES MUST BE ACKNOWLEDGED]

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
) ss
COUNTY OF Orange )

On October 4, 2024, before me, Jennifer Williamson, a Notary Public, personally appeared Jason Miller, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public

JENNIFER WILLIAMSON
COMM. #2466523
Notary Public - California
Orange County
My Comm. Expires Oct. 14, 2027

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
) ss
COUNTY OF Los Angeles )

On October 7, 2024, before me, Vicky Peng, a Notary Public, personally appeared Lingchen Lin, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public

VICKY PENG
Notary Public - California
Los Angeles County
Commission # 2421481
My Comm. Expires Oct 15, 2026

# EXHIBIT "A"
## LEGAL DESCRIPTION

Real property in the City of Pasadena, County of Los Angeles, State of California, described as follows:

PARCEL 1:

LOT 12 OF TRACT NO. 63103, IN THE CITY OF PASADENA, AS PER MAP RECORDED IN BOOK 1369 PAGES 35 THROUGH 52 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AMENDED PURSUANT TO THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED DECEMBER 3, 2013 AS INSTRUMENT NO. 20131708591 OF OFFICIAL RECORDS.

PARCEL 2:

A RECIPROCAL ACCESS EASEMENT OVER THOSE AREAS SET OUT ON THE MAP SHOWN ABOVE.

PARCEL 3:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN CONSOLIDATED AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (SOUTH ORANGE GROVE PARCELS) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716500 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 4:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (DEL MAR PARCEL) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716499 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 5:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN ROSE PARADE GRANDSTAND EASEMENT AGREEMENT (ORANGE GROVE AVENUE) RECORDED JULY 21, 2005 AS INSTRUMENT NOS. 05-1721787 AND 05-1721788 BOTH OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 6:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING GARAGE EASEMENT AGREEMENT RECORDED JULY 2, 2007 AS INSTRUMENT NO. 20071579026 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 7:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING EASEMENT AGREEMENT RECORDED DECEMBER 28, 2011 AS INSTRUMENT NO. 20111763712 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

APN: 5713-027-065

# Exhibit W

**SECURITY AGREEMENT**
**(ASSIGNMENT OF DEPOSIT ACCOUNT)**

For value received, between SDRES PARTNERS LLC, a California limited liability company ("Assignor"), hereby assigns, pledges, and transfers to PREFERRED BANK, a California banking corporation ("Lender"), and to its successors and assigns, all of Assignor's right, title, and interest in and to that certain deposit account with Lender in the name of "SDRES PARTNERS LLC" and maintained at Lender, Account No. 1022431 (the "Deposit Account"), together with all monies or proceeds due or to become due under said Deposit Account, and all sums due or to become due thereon or therefrom by way of interest, repayments or otherwise and all proceeds thereof (collectively, the "Collateral"). This Security Agreement (Assignment of Deposit Account) dated as of March 14, 2023 (this "Agreement") is the "Assignment of Deposit Account" described in that certain Third Extension Agreement of even date herewith ("Extension Agreement"), by and among Lender, Assignor and the other parties identified therein.

1. Obligations Defined. This assignment, pledge and transfer is given to Lender by Assignor as collateral security for all of the following obligations (individually and collectively, the "Obligations"): all indebtedness, liabilities and obligations now or hereafter owing to Lender by Assignor, including, without limitation, any and all debts, liabilities, obligations or undertakings owing by Assignor to Lender of any kind and description pursuant to or evidenced by (i) that certain Loan Agreement dated June 8, 2017, between Assignor and Lender (together with any and all amendments, modifications or supplements thereto, the "Loan Agreement"), and (ii) that certain Promissory Note dated as of June 8, 2017, in the original principal sum of $8,400,000.00 (together with any and all amendments, modifications or supplements thereto or renewals or extensions thereof, the "Note"), executed by Assignor in favor of Lender, whether direct or indirect, absolute or contingent, joint or several, and howsoever evidenced, no matter how arising; all amounts advanced or incurred by Lender on account of Assignor under the terms of this Agreement or for the maintenance or preservation of the Collateral; any and all amendments, modifications, renewals or extensions of Obligations including those evidenced by new or additional agreements or instruments changing the rate of interest or adding or releasing any third party on the Obligations; and all costs of collection, including fees and expenses in connection with the protection or realization of the Collateral or the enforcement of this Agreement, the Loan Documents (as defined in the Loan Agreement), the instruments, other notes, or other agreements evidencing the Obligations, whether or not suit is filed.

2. Representations, Warranties and Covenants. Assignor represents, warrants, and covenants that: Assignor is the owner of the above-described Collateral, and that such Collateral is free and clear of all liens and encumbrances of any nature whatsoever except for the lien in favor of Lender securing the obligations of Assignor to Lender; Assignor has not made any prior assignment or transfer of said Deposit Account or other Collateral, and shall not make any further assignment or transfer thereof during the term of this Agreement; Assignor has not withdrawn, canceled, been repaid, or redeemed all or any part thereof; there is no pending application for the withdrawal, cancellation, repayment, or redemption thereof; and this Agreement is valid, binding, and enforceable.

3. Extent of Security Interest. This is a continuing security agreement, securing all Obligations, including those arising after any repayment and reborrowing and those arising under successive and future transactions which shall increase, renew or modify the Obligations; it is without limitation as to its effective period and the Obligations hereunder may be terminated only upon payment in full of all Obligations and the termination or expiration of Lender's obligation to extend credit to Assignor. Each credit granted to Assignor, including all present and future Obligations or the termination or expiration of Lender's obligation to extend credit to Assignor, is and shall be granted by Lender in reliance on this Agreement. This Agreement shall not constitute a commitment of any nature by Lender to renew or hereafter extend credit.

4. No Right to Withdraw. The Deposit Account is a blocked account, accessible only to Lender. Subject to Section 5 of the Extension Agreement, Assignor shall not have the right to withdraw funds from the Deposit Account during the term of the Loan without the express, prior written consent of Lender, which Lender may give or withhold in its sole and absolute discretion.

5. Power of Attorney. Assignor hereby irrevocably constitutes and appoints Lender the true and lawful attorney of Assignor, with full power of substitution: to demand, collect, and receive payment of any and all monies or proceeds due or to become due under said Deposit Account and the other Collateral; to execute any and all instruments required for the withdrawal or repayment of same, or any part thereof; to insert in any instrument for the withdrawal of funds signed by Assignor the date and amount due under said Deposit Account and other Collateral, and to complete such instruments in any respect and in all respects to deal with said Deposit Account and other Collateral as the holder thereof; and, in its discretion, file any claim or take any other action or proceeding, either in its own name or in the name of Assignor, or otherwise, which Lender may deem necessary or appropriate to protect and preserve the right, title, assignment, pledge, transfer, and interest of Lender hereunder. This Agreement shall remain in full force and effect until the Obligations are indefeasibly satisfied in full.

6. Financing Statements and Other Documents. Assignor hereby agrees to permit Lender to file one or more financing or continuation statements, and any amendments thereto, all without Assignor's signature, where permitted by law, to perfect the security interest granted herein. Assignor agrees to sign such financing statements and other documents if requested by Lender. Any filing fees associated with the security interest granted herein charged by a public officer shall be for Assignor's account and, if paid by Lender, shall be payable upon demand.

7. Delivery of Documents. Assignor hereby agrees to deliver and does hereby pledge to Lender all written evidence of the Deposit Account and other Collateral, including, without limitation, all bank passbooks, certificates of deposit, and savings certificates with respect thereto. Lender is authorized at any time or times to notify each issuer or obligor with respect to the Deposit Account and other Collateral of the assignment, pledge, and transfer thereof to Lender, and to direct such issuer or obligor to mark its records accordingly. Assignor agrees to execute and deliver to Lender such further agreements, documents, assignments, and notices, in form and substance satisfactory to Lender, as Lender may request in its discretion in order to effectuate the purposes hereof.

8. Authorization. Either before or after termination of this Agreement, Assignor authorizes Lender, at its sole discretion, with or without notice, and without affecting Assignor's continuing liability hereunder, from time to time, to: (i) apply any sums received from Assignor, or from the sale or foreclosure of Collateral, to any, all, or any portion of the Obligations in any order, regardless of whether the Obligations are due and payable; (ii) exercise any right or remedy it may have with respect to any Obligations, or any other collateral securing any of the Obligations, this Agreement, or any guaranty of the Obligations, including bidding and purchasing at any sale of any such collateral, and compromising, collecting or otherwise liquidating any such collateral or any of the Obligations, and/or (iii) make such payments and perform such acts as Lender may deem necessary to preserve and insure the Collateral or its value or Lender's security interest, including, without limitation, any action which Assignor shall have agreed to take pursuant to the terms of this Agreement.

9. Default and Remedies. The following acts or omissions shall each constitute a default under this Agreement: (a) Assignor breaches any term or condition of this Agreement; (b) any representation or warranty contained in this Agreement is false or misleading; (c) Assignor defaults on, or fails to perform any of, the Obligations; or (d) and Event of Default (as defined in the Loan Agreement) occurs under the Loan Agreement.

In addition to any other authorizations and rights of Lender with respect to the Deposit Account or any other Collateral, upon the occurrence of a default hereunder and so long as such default remains uncured, Lender may, at its option, without further notice to Assignor, prohibit any withdrawals or reductions from the Deposit Account and other Collateral and exercise any and/or all of its rights and remedies under the California Uniform Commercial Code, and as otherwise granted hereunder, or at law, or in equity, including, without limitation, the withdrawal of any and all amounts in the Deposit Account, the sale or other disposition of the Collateral and/or the giving of notice to third parties in possession of the Collateral to turn over the Collateral to Lender. Lender shall have all rights, powers, privileges, and remedies of a secured party under the California Uniform Commercial Code, or other applicable law, with respect to the Collateral. All of the rights and remedies of the Lender are cumulative and not alternative.

10. Governing Law and Jurisdiction. This Agreement shall be governed by and construed in accordance with the laws of the State of California. This Agreement may not be amended, modified, or terminated except in writing executed by Lender and Assignor. Assignor agrees that all action or proceedings arising in connection with this Agreement shall be tried and litigated only in the state and federal courts located in the County of Los Angeles, State of California or, at the option of Lender, any court in which Lender shall initiate legal or equitable proceedings and which has subject matter jurisdiction over the matter in controversy. Assignor consents to the jurisdiction of any competent state or federal court within that state.

11. Miscellaneous Provisions.

(a) If any provision of this Agreement is found to be unenforceable, the remainder of this Agreement shall remain in full force and effect, and shall be enforceable in accordance with its terms as if the unenforceable provision was not included herein.

(b) If more than one person executes this Agreement, the obligations of Assignor hereunder are joint and several. All words used herein in the singular shall be deemed to have been used in the plural when the context and construction so require.

(c) Assignor waives the right to assert any statute of limitations with respect to this Agreement, the Collateral, or the Obligations.

(d) Assignor agrees to pay attorneys' fees and all other costs and expenses which may be incurred by Lender in connection with this Agreement.

(e) Paragraph headings are for convenience only and are not part of this Agreement.

(f) This Agreement and the Collateral are assignable in whole or in part by Lender with any one and/or several of the Obligations and, when so assigned, Assignor shall be bound to the assignees on the same terms as set herein without affecting Assignor's liability hereunder with respect to any of the Collateral not so assigned.

(g) All notices, requests and demands hereunder shall be made to Lender and to Assignor as provided in the Loan Agreement.

(h) No modification or change to this Agreement in any of the terms and conditions shall be effective unless in writing and signed by an officer of Lender.

(i) The rights and remedies of and authority granted to Lender under this Agreement shall be in addition to that granted by any statute or rule of law. No delay or omission on the part of Lender or its assignee in exercising any right hereunder shall operate as a waiver of such right, or any other right under this Agreement.

[Signature page to follow.]

IN WITNESS WHEREOF, Assignor has executed this Agreement as of the date set forth above.

"ASSIGNOR"

SDRES PARTNERS LLC,
a California limited liability company

By: Cantor Group LLC
a California limited liability company
Its: Managing Member

By:
Name: Deba Shyam
Its: General Manager

# Exhibit X

PREFERRED BANK

December 10, 2025

SDRES Partners LLC
520 Newport Center Dr Ste 480
Newport Beach CA 92660

Andrew Stupin
520 Newport Center Dr Ste 480
Newport Beach CA 92660

RE: Demand regarding $8,400,000 loan made by Preferred Bank to SDRES Partners LLC

Dear Borrower(s),

Reference is made to a loan made by Preferred Bank (the "Lender") to Plaza Continental Group LLC (the "Borrowers"), in the original principal amount of $8,400,000. The loan is evidenced by that certain Promissory Note dated June 08, 2017 (the "Note") and related documents made by Borrowers and payable to Lender.

As of December 10, 2025, the total amount due and owing on the Loan are as follows: billed principal of $12,986.58; accrued unpaid interest in the amount of $90,556.46; late charges in the amount of $51,294.36; which amounts to total of $154,837.40 (collectively, the "Amount Due"). Please note that the Amount Due is subject to change after December 10, 2025. The per diem interest rate is $1,484.05316.

Lender hereby accelerates the Loan and demands that the Amount Due be paid in full on or before December 20, 2025. If for any reason the Amount Due is not received on that date, Lender will, without further notice to you, exercise all remedies, at law or in equity, available to Lender under the Loan Documents.

Nothing contained herein shall be constructed or be the basis for holding that an event of default not stated herein is waived or that Lender has agreed to any waiver or forbearance of the exercise of any remedies, at law or in equity; provided in the Loan Documents, all of which are expressly reserve.

If you have any questions or comments or if you would like to request the final Amount Due to pay off the loan, please do not hesitate to contact Jayden Lee at 213.891.1188 ext. 1121.

Sincerely,

Preferred Bank

By: ______________________________
Jayden Lee
Portfolio Manager

Cc:

SDRES Partners LLC
Andrew Stupin

# Exhibit Y

# PROMISSORY NOTE

$400,000.00 LOS ANGELES, CALIFORNIA December 13, 2023

FOR VALUE RECEIVED, ANDREW STUPIN, an individual ("Borrower"), promises to pay to PREFERRED BANK, a California banking corporation ("Lender"), or its order, at its office located at 601 S. Figueroa Street, 47th Floor, Los Angeles, California 90017, or at such other place as the holder hereof may designate, in lawful money of the United States of America, the principal sum of Four Hundred Thousand and No/100 Dollars ($400,000.00), or so much thereof as shall have been advanced and is outstanding together with interest, on the outstanding principal balance, until paid in full in accordance with the terms, conditions and provisions as hereinafter set forth in this Promissory Note (this "Note").

**LOAN AGREEMENT.** This Note is the "Note" as defined in that certain Loan Agreement (the "Loan Agreement") of even date herewith, entered into by and between Borrower and Lender, as it may be amended from time to time, and is subject to all of the terms and conditions thereof. All terms not defined herein shall have the same meaning as in the Loan Agreement. In the event of a conflict between the terms of this Note and the Loan Agreement, the terms of this Note shall prevail.

**STRAIGHT LINE OF CREDIT.** This Note evidences a straight line of credit. Once the total amount of principal has been advanced, Borrower shall not be entitled to thereafter have said principal funded (again) to Borrower by Lender. Borrower agrees to be liable for all sums either: (a) advanced in accordance with the instructions of an authorized person on behalf of Borrower, (b) advanced in accordance with the Loan Agreement, or (c) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs

**ADVANCES**. Advances under this Note shall be made as provided under Article III of the Loan Agreement. All records of Advances made by Lender under this Note shall be maintained at Lender's office, and the records of Lender shall, absent manifest error, be binding and conclusive upon Borrower.

**INTEREST RATE**. Interest on the outstanding principal balance of this Note shall be computed and calculated based upon a three hundred sixty (360)-day year and actual days elapsed and shall accrue at the per annum rate (the "Note Rate") of the greater of (i) seven percent (7.00%) or (ii) "The Wall Street Journal Prime Rate", as the rate may change from time to time. The Wall Street Journal Prime Rate is and shall mean the variable rate of interest, on a per annum basis, which is announced and/or published in the Money Rates Section of The Wall Street Journal from time to time. The Note Rate shall be redetermined whenever The Wall Street Journal Prime Rate changes. Borrower understands and acknowledges that The Wall Street Journal Prime Rate is one of Lender's base rates, and only serves as a basis upon which effective rates of interest are calculated for loans making reference thereto and may not be the lowest of Lender's base

rates. If The Wall Street Journal Prime Rate becomes unavailable during the term of this Note, Lender may designate a substitute index after notice to Borrower.

<u>PRINCIPAL AND INTEREST PAYMENTS</u>. Interest shall be due and payable monthly, in arrears, based upon the actual number of days elapsed for that monthly period, commencing on January 8, 2024, and shall continue to be due and payable, in arrears, on the same day of each and every calendar month thereafter until the Maturity Date (as hereinafter defined).

Upon the Maturity Date, the entire unpaid obligation outstanding under this Note, the Loan Agreement, and any other Loan Documents shall become due and payable in full.

All payments due hereunder, including payments of principal and interest, shall be made to Lender in United States Dollars and shall be in the form of immediately available funds acceptable to the holder of this Note.

<u>APPLICATION OF PAYMENTS</u>. All payments received by Lender from, or for the account of Borrower, due hereunder shall be applied by Lender, in its sole and absolute discretion, in the following manner, or in any other order or manner as Lender chooses:

a. First. To pay any and all interest due, owing and accrued;

b. Second. To pay any and all costs, advances, expenses or fees due, owing and payable to Lender, or paid or incurred by Lender, arising from or out of this Note, the Loan Agreement, and the other Loan Documents; and

c. Third. To pay the outstanding principal balance on this Note.

All records of payments received by Lender shall be maintained at Lender's office, and the records of Lender shall, absent manifest error, be binding and conclusive upon Borrower. The failure of Lender to record any payment or expense shall not limit or otherwise affect the obligations of Borrower under this Note.

<u>MATURITY DATE</u>. On June 13, 2025 ("Maturity Date"), the entire unpaid principal balance, and all unpaid accrued interest thereon, shall be due and payable without demand or notice. In the event that Borrower does not pay this Note in full on the Maturity Date then, as of the Maturity Date and thereafter until paid in full, the interest accruing on the outstanding principal balance hereunder shall be computed, calculated and accrued on a daily basis at the Default Rate (as hereinafter defined). The Maturity Date may be extended pursuant to Section 3.5 of the Loan Agreement.

<u>UNPAID INTEREST, CHARGES AND COSTS</u>. Interest, late charges, costs or expenses that are not received by Lender within ten (10) calendar days from the date such interest, late charges, costs, or expenses become due, shall, at the sole discretion of Lender, be added to the principal balance and shall from the date due bear interest at the Default Rate.

**HOLIDAY.** Whenever any payment to be made under this Note shall be due on a day other than a Business Day, including Saturdays, Sundays and legal holidays generally recognized by banks doing business in California, then the due date for such payment shall be automatically extended to the next succeeding Business Day, and such extension of time shall in such cases be included in the computation of the interest portion of any payment due hereunder.

**NO OFFSETS OR DEDUCTIONS.** All payments under this Note shall be made by Borrower without any offset, decrease, reduction or deduction of any kind or nature whatsoever, including, but not limited to, any decrease, reduction or deduction for, or on account of, any offset, present or future taxes, present or future reserves, imposts or duties of any kind or nature, that are imposed or levied by or on behalf of any government or taxing agency, body or authority by or for any municipality, state or country. If at any time, present or future, Lender shall be compelled, by any Law, rule, regulation or any other such requirement which on its face or by its application requires or establishes reserves, or payment, deduction or withholding of taxes, imposts or duties, to act such that it causes or results in a decrease, reduction or deduction (as described above) in payment received by Lender, then Borrower shall pay to Lender such additional amounts, as Lender shall deem necessary and appropriate, such that every payment received under this Note, after such decrease, reserve, reduction, deduction, payment or required withholding, shall not be reduced in any manner whatsoever.

**DEFAULT**. Any one or more of the following events or occurrences shall constitute a default under this Note (hereinafter "Default"):

(i) Lender does not receive a payment in the amount and within the time and manner as set forth herein within ten (10) days after the same becomes due and payable; or

(ii) There shall be an Event of Default under the Loan Agreement; or

(iii) There shall be a default under any of the other Loan Documents beyond the expiration of any applicable notice and cure periods.

Upon the occurrence of a Default hereunder and during the continuance thereof, Lender may, in its sole and absolute discretion, declare the entire unpaid principal balance, together with all accrued and unpaid interest thereon, and all other amounts and payments due hereunder, immediately due and payable, without notice or demand.

**DEFAULT RATE**. From and after the occurrence of any Default in this Note whether by non-payment, maturity, acceleration, non-performance or otherwise, and until such Default has been cured, all outstanding amounts under this Note (including, but not limited to, interest, costs and late charges) shall bear interest at a per annum rate ("Default Rate") equal to eight percent (8%) over the Note Rate. Borrower acknowledges and agrees that (i) the Default Rate is not a penalty; (ii) the Default Rate is

intended to compensate Lender for the internal administrative costs and expenses incurred by Lender for a defaulted loan (including, for example, staff costs arising from internal and regulatory reporting of delinquencies, additional underwriting analysis, in-house legal review, and credit committee reviews) over and above the economic costs associated with the loss of use of money and out of pocket costs otherwise subject to reimbursement pursuant to this Note and the other Loan Documents; (iii) the amount of the Default Rate is a reasonable forecast of just compensation for the harm caused due to the Default; and (iv) the actual damage resulting from an Default is incapable or very difficult of accurate estimation.

**PREPAYMENT**. The principal amount of this Note may be prepaid in whole or in part; provided, however, that written notice of prepayment is received by Lender concurrently therewith. Any such prepayment shall not result in a reamortization, deferral, postponement, suspension, or waiver of any and all principal or other payments due under this Note.

**LATE CHARGES**. Time is of the essence for all payments and other obligations due under this Note. Borrower acknowledges that if any payment required under this Note is not received by Lender within ten (10) days after the same becomes due and payable, Lender will incur extra administrative expenses (i.e., in addition to expenses incident to receipt of timely payment) and the loss of the use of funds in connection with the delinquency in payment. Because, from the nature of the case, the actual damages suffered by Lender by reason of such administrative expenses and loss of the use of funds would be impracticable or extremely difficult to ascertain, Borrower agrees that five percent (5%) of the amount of the delinquent payment, together with interest accruing on the entire principal balance of this Note at the Default Rate, as provided above, shall be the amount of damages which Lender is entitled to receive upon such breach, in compensation therefor. Therefore, Borrower shall, in such event, without further demand or notice, pay to Lender, as Lender's monetary recovery for such extra administrative expenses and loss of use of funds, liquidated damages in the amount of five percent (5%) of the amount of the delinquent payment (in addition to interest at the Default Rate). The provisions of this paragraph are intended to govern only the determination of damages in the event of a breach in the performance of Borrower to make timely payments hereunder. Nothing in this Note shall be construed as in any way giving Borrower the right, express or implied, to fail to make timely payments hereunder, whether upon payment of such damages or otherwise. The right of Lender to receive payment of such liquidated and actual damages, and receipt thereof, are without prejudice to the right of Lender to collect such delinquent payments and any other amounts provided to be paid hereunder or under any of the Loan Documents, or to declare a default hereunder or under any of the Loan Documents.

**SECURITY**. This Note is unsecured.

**COSTS AND EXPENSES**. Borrower hereby agrees to pay any and all costs or expenses paid or incurred by Lender by reason of, as a result of, or in connection with the enforcement of this Note or any other Loan Documents, including, but not limited to, any

and all attorneys' fees and related costs when such costs or expenses are paid or incurred in connection with the enforcement of this Note and the other Loan Documents, or any of them, the protection or preservation of the collateral or security for this Note, or any other rights, remedies or interests of Lender, whether or not suit is filed. Borrower's agreement to pay any and all such costs and expenses includes, but is not limited to, costs and expenses incurred in or in connection with any bankruptcy proceeding in enforcing any judgment obtained by Lender and in connection with any and all appeals therefrom, and in connection with the monitoring of any bankruptcy proceeding and its effect on Lender's rights and claims for recovery of the amounts due hereunder, any proceeding concerning relief from the automatic stay, use of cash collateral, proofs of claim, approval of a disclosure statement or confirmation of, or objections to confirmation of, any plan of reorganization. All such costs and expenses are immediately due and payable to Lender by Borrower whether or not demand therefor is made by Lender.

**WAIVERS**. Borrower hereby waives grace, diligence, presentment, demand, notice of demand, dishonor, notice of dishonor, protest, notice of protest, any and all exemption rights against the indebtedness evidenced by this Note and the right to plead any statute of limitations as a defense to the repayment of all or any portion of this Note, and interest thereon, to the fullest extent allowed by law, and all compensation of cross-demands pursuant to California Code of Civil Procedure Section 431.70. No delay, omission or failure on the part of Lender in exercising any right or remedy hereunder shall operate as a waiver of such right or remedy or any other right or remedy of Lender.

**MAXIMUM LEGAL RATE.** This Note is subject to the express condition that at no time shall Borrower be obligated, or required, to pay interest on the principal balance at a rate which could subject Lender to either civil or criminal liability as a result of such rate being in excess of the maximum rate which Lender is permitted to charge. If, by the terms of this Note, Borrower is, at any time, required or obligated to pay interest on the principal balance at a rate in excess of such maximum rate, then the rate of interest under this Note shall be deemed to be immediately reduced to such maximum rate and interest payable hereunder shall be computed at such maximum rate and any portion of all prior interest payments in excess of such maximum rate shall be applied, or shall retroactively be deemed to have been payments made, in reduction of the principal balance, as the case may be.

**AMENDMENT; GOVERNING LAW.** This Note may be amended, changed, modified, terminated or canceled only by a written agreement signed by the party against whom enforcement is sought for any such action. This Note shall be governed by, and construed under, the Laws of the State of California.

**AUTHORITY.** Borrower, and each person executing this Note on Borrower's behalf, hereby represents and warrants to Lender that, by its execution below, Borrower has the full power, authority and legal right to execute and deliver this Note and that the indebtedness evidenced hereby constitutes a valid and binding obligation of Borrower without exception or limitation. In the event that this Note is executed by more than one person or entity, the liability hereunder shall be joint and several. Any married person

who is obligated on this Note, directly or indirectly, agrees that recourse may be had to such person's separate property in addition to any and all community property of such person.

**USA PATRIOT ACT NOTICE**. Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account or obtains a loan. Lender will ask for Borrower's legal name, address, tax ID number or social security number and other identifying information. Lender may also ask for additional information or documentation or take other actions reasonably necessary to verify the identity of Borrower, Guarantor or other related persons.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, Borrower has executed this Note as of the day and year first above written.

**BORROWER:**

ANDREW STUPIN, an individual

# Exhibit Z

# LOAN AGREEMENT

This Loan Agreement (the "Agreement") is made as of the 13th day of December 2023, by and between ANDREW STUPIN, an individual ("Borrower"), on the one hand, and PREFERRED BANK, a California banking corporation ("Lender"), on the other hand.

## RECITALS

A. Borrower has applied to Lender for a non-revolving line of credit in the maximum principal amount of Four Hundred Thousand and No/100 Dollars ($400,000.00) ("Loan") for the purpose of providing Borrower with short-term capital for business investments.

B. Lender has agreed to make the Loan to Borrower for such purpose upon the terms and conditions set forth herein.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

## ARTICLE I
## DEFINITIONS AND INTERPRETATIONS

1.1 DEFINITIONS –

For purposes of this Agreement, the following terms shall have the following meanings:

The definitions set forth in the Recitals or elsewhere in this Agreement are incorporated herein by reference.

"Advance" shall mean any advance or disbursement of Loan Proceeds by Lender pursuant to this Agreement.

"Advance Date" shall mean the date of each Advance.

"Advance Request" shall mean a completed, written request for an Advance from Borrower to Lender which request shall be in form satisfactory to Lender, and shall be accompanied by such other documents and information as Lender may specify from time to time. Each Advance Request shall be a representation and warranty by Borrower to Lender that all representations and warranties in this Agreement are correct and complete as of the date of the requested Advance.

"Affiliate" shall mean any Person, directly or indirectly, related to, in control of, controlled by, or under the common control of, Borrower, or of a successor thereof, whether through merger, consolidation, transfer of assets or otherwise.

"Agreement" shall mean this Loan Agreement, as originally executed and as it may from time to time be supplemented, extended, renewed, modified, or amended.

"Agreement To Furnish Insurance" shall mean the Agreement To Furnish Insurance duly executed by Guarantor in form and content as required by Lender and as it may from time to time be supplemented, modified or amended.

"Anti-Money Laundering Laws" shall mean the USA Patriot Act of 2001, the Bank Secrecy Act, as amended through the date hereof, Executive Order 1 3324—Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism, as amended through the date hereof, and other federal laws and regulations and executive orders administered by OFAC which prohibit, among other things, the engagement in transactions with, and the provision of services to, certain foreign countries, territories, entities and individuals (such individuals include specially designated nationals, specially designated narcotics traffickers and other parties subject to OFAC sanction and embargo programs), and such additional laws and programs administered by OFAC which prohibit dealing with individuals or entities in certain countries regardless of whether such individuals or entities appear on any of the OFAC lists.

"Approved Lease" shall mean a lease between Guarantor and any bona fide unrelated third party tenant for all or any portion of the Property at the prevailing market rate for similar space in the area where the Property is located and entered into by Guarantor with tenants in the ordinary course of Guarantor's business and is the result of a negotiation on an arms' length basis.

"Assets" shall have the meaning usually given that term in accordance with GAAP, but shall exclude sums due to Borrower from Affiliates (other than subsidiaries).

"Assignment of Leases" shall mean the Absolute Assignment of Leases, Lease Guaranties, Rents, Issues and Profits duly executed and delivered to Lender by Guarantor, assigning to Lender all present and future leases, subleases, rents, and concession rights, if any, and all related rights and interests of Guarantor thereunder, affecting the Property, or any part thereof, and in form and content acceptable to Lender in its sole opinion and judgment, and shall include delivery to Lender of the executed originals of each of said leases.

"Business Day" shall mean Monday through Friday, excluding Saturdays, Sundays and any day of the year on which banks are required or authorized to close in California.

"Collateral" shall mean all real and personal property of Guarantor, or others, in which Lender has been and may hereafter be granted a lien, assignment or security interest to secure payment and performance of Guarantor's obligations under the Guaranty.

"Deed of Trust" shall mean that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated as of the date herein, duly executed and

acknowledged by Guarantor, for the benefit of Lender, to secure the Guaranty and encumbering the Property and other assets and rights as therein provided, together with all such riders and exhibits thereto as Lender shall require, and as it may from time to time be supplemented, modified or amended.

"Environmental Indemnity" shall mean that certain Hazardous Substances Indemnity Agreement duly executed by Borrower and Guarantor, and as it may from time to time be supplemented, modified or amended, pursuant to which such parties shall indemnify and defend Lender from and against any loss or liability, direct or indirect, with respect to the presence or release of any hazardous or toxic material in, on, about or under the Property.

"Event of Default" shall mean any of those events specified in Article V hereof.

"Extension Fee" shall mean the sum of one-eighth of one percent (0.125%) of the maximum principal amount of the Loan, payable by Borrower to Lender for an extension of the Maturity Date, if requested in accordance with the provisions of Section 3.5 below.

"FF&E" shall mean all furniture, fixtures, machinery, tools, inventory and equipment owned by Guarantor and used, or intended to be used, in connection with the Property.

"Financial Statements" shall mean balance sheets, income statements, reconciliations of capital structure, statements of sources and applications of funds, and income tax returns, all prepared in accordance with GAAP, consistently applied.

"Financing Statements" shall mean one or more financing statements (form UCC-1) given by Guarantor to Lender, if required by Lender, covering the FF&E and all other personal property and/or fixtures included in the Property.

"GAAP" shall mean generally accepted accounting principles consistently maintained and applied throughout the period indicated and consistent with the prior financial practice of the Person providing such financial information.

"Governmental Agency" shall mean any governmental or quasi-governmental agency, authority, board, bureau, commission, department, instrumentality or public body, court, administrative tribunal, or public utility.

"Guarantor" shall mean SDRES PARTNERS LLC, a California limited liability company.

"Guarantor Loan" shall mean the loan in the maximum principal sum of $8,400,000.00, made by Lender to Guarantor and secured by the Guarantor Security Documents.

"Guarantor Loan Agreement" shall mean that certain Loan Agreement dated June 8, 2017, as amended, executed by Guarantor and Lender in connection with the Senior Loan.

"Guarantor Loan Documents" shall mean the documents and instruments, and all amendments and/or modifications thereto, evidencing and securing the Guarantor Loan, as amended, including, without limitation, the Guarantor Loan Agreement and the Guarantor Note.

"Guarantor Note" shall mean that certain Promissory Note dated June 8, 2017, as a mended, in the original principal amount of $8,400,000.00, executed by Guarantor in favor of Lender.

"Guarantor Security Documents" shall mean the security agreement, the deeds of trust and the assignments of leases (together with any and all amendments and/or modifications thereto) by Guarantor in favor of Lender encumbering the Property and securing, in part, the Guarantor Loan.

"Guaranty" shall mean the Secured Continuing Guaranty duly executed by Guarantor, unconditionally and irrevocably guaranteeing payment and performance of Borrower's obligations to Lender in connection with the Loan, as such agreement or agreements are originally executed and as such agreement or agreements may from time to time be reaffirmed, supplemented, modified or amended.

"Hazard Insurance Disclosure" shall mean the Hazard Insurance Disclosure duly executed by Borrower and Guarantor in form and content as required by Lender.

"Insurance Policies" shall mean any of the policies of insurance specified in Section 4.1 hereof.

"Interest Reserve" shall mean that portion of the Loan Proceeds, totaling $80,000.00 allocated for payment of interest on the Note. Notwithstanding the existence of the Interest Reserve, Borrower shall be responsible to pay the interest due under the terms of the Note from funds other than the Loan Proceeds in the event the Interest Reserve has been disbursed in its entirety or upon the occurrence and during the continuance of an Event of Default.

"Laws" shall mean, collectively, all federal, state, and local laws, rules, regulations, ordinances, and codes.

"Leasing Commissions" shall mean commissions payable for services related to the leasing of all or any portion of the Property under an Approved Lease, which commission is to be paid through disbursements of Loan Proceeds, subject to the terms, provisions and conditions of this Agreement, including, without limitation, Section 3.12.

"Loan" shall mean the loan described in the Recitals and in Article III of this Agreement.

"Loan Closing" shall mean the date on which the Loan closes in accordance with Section 3.2 of this Agreement.

"Loan Closing Costs" shall mean all title insurance premiums and recording charges, tax service contract fees, and all out-of-pocket fees and costs incurred by Lender in connection with the appraisal, inspection, assessment, evaluation, insuring, and testing of the Property, and all fees and costs incurred by Lender in connection with the negotiation and preparation of the Loan Documents, including attorneys' fees, and closing of the Loan as herein provided, including, but without limitation, the Loan Fee.

"Loan Documents" shall mean this Agreement, the Note, Deed of Trust, Assignment of Leases, Financing Statements, Guaranty, Environmental Indemnity, Agreement To Furnish Insurance, Hazard Insurance Disclosure and such other documents as Lender may require Borrower to give to Lender as evidence of and/or security for and/or guaranty of the Loan.

"Loan Fee" shall mean the sum of $1,000.00 payable by Borrower to Lender for the granting of the Loan.

"Loan Proceeds" shall mean funds advanced by Lender to Borrower for purposes set forth in Article III hereof.

"Material Adverse Effect" shall mean any act, event, condition or circumstance which could materially and adversely affect (i) the business, operations, condition (financial or otherwise), performance, prospects, or assets of Borrower or Guarantor, (ii) the ability of Borrower or Guarantor to perform its obligations under any Loan Document to which it is a party or by which it is bound, or (iii) Guarantor's interest in, or the value, perfection or priority of Lender's security interest in the Property.

"Maturity Date" shall mean June 13, 2025, as set forth in the Note, at which time the entire principal balance of the Loan, plus accrued interest thereon, is and shall be due and payable as provided in this Agreement and the Note, subject to acceleration as provided in the Loan Documents and also subject to the extension provision included in Section 3.5 below.

"Note" shall mean the Promissory Note of Borrower in the amount of the Loan, payable to the order of Lender, duly executed by Borrower, as required by Lender to evidence the Loan, as originally executed, and as it may from time to time be supplemented, modified or amended.

"OFAC" shall mean the United States Department of the Treasury, Office of Foreign Assets Control.

"OFAC Prohibited Person" shall mean a country, territory, individual or person (i) listed on, included within or associated with any of the countries, territories, individuals or entities referred to on The Office of Foreign Assets Control's List of Specially Designated Nationals and Blocked Persons or any other prohibited person lists maintained by governmental authorities, or otherwise included within or associated with any of the countries, territories, individuals or entities referred to in or prohibited by OFAC or any other Anti-Money Laundering Laws, or (ii) which is obligated or has any

interest to pay, donate, transfer or otherwise assign any property, money, goods, services, or other benefits from the Property directly or indirectly, to any countries, territories, individuals or entities on or associated with anyone on such list or in such laws.

"Organizational Documents" shall mean, if Borrower, Guarantor or any other Person as Lender may require is other than a natural person, the duly filed, certified and/or executed documents or instruments evidencing or confirming the lawful formation and existence of Borrower, Guarantor and such other Persons, and all written consents and certifications required by Lender from Persons having management and/or ownership interests in Borrower, Guarantor and/or such other Persons.

"Permitted Encumbrances" shall mean only those matters and exceptions to title to the Property, as shown in the preliminary report of title and all supplements thereto, issued by the Title Company, and approved by Lender, in regard to the Property, including the lien and security interests created by the Guarantor Security Documents.

"Person" shall mean an individual, corporation, limited liability company, partnership, joint venture, trust or unincorporated organization or a Governmental Agency.

"Property" shall mean the real property described in Exhibit "A" hereto and in the Deed of Trust and all present and future improvements thereon and appurtenances thereto, including, without limitation, Guarantor's fee simple interest therein.

"SNDA" shall mean a subordination, nondisturbance and attornment agreement by a tenant on the Property, in form and content satisfactory to Lender.

"Tenant Estoppel" shall mean a tenant estoppel certificate by a tenant on the Property, in form and content satisfactory to Lender.

"Tenant Improvements" shall mean the materials, structures and other improvements and fixtures to be constructed, renovated and/or installed on or about the Property in connection with an Approved Lease.

"Title Company" shall mean the title insurer designated by Lender, in its sole opinion and judgment, which shall issue the Title Policy.

"Title Policy" shall mean an ALTA Loan Policy (2006 Policy Form), written as such at Loan Closing and issued by the Title Company, with liability equal to the full amount of the Loan, in favor of Lender, as insured, insuring the lien of the Deed of Trust to be a valid second lien on the Property subject only to the Permitted Encumbrances and the first lien priority of the Guarantor Security Documents. The Title Policy shall have such endorsements thereto as Lender shall require. If required by Lender, the title insurance coverage will provide for reinsurance.

1.2 ACCOUNTING TERMS – All accounting terms not specifically defined herein shall be construed in accordance with GAAP, and all financial data

submitted pursuant to this Agreement shall be prepared in accordance with GAAP, unless Lender agrees to another manner of preparation.

1.3 USE OF DEFINED TERMS – Any defined terms used in the plural shall include the singular, and the masculine gender shall include the feminine and/or neuter, and such terms shall encompass all members of the relevant class.

1.4 SCHEDULES AND EXHIBITS – All schedules and exhibits to this Agreement, either as originally existing or as the same may from time to time be supplemented, modified or amended, are incorporated herein by reference.

1.5 REFERENCES – Any reference to this Agreement or any other document shall include such document, both as originally executed, and as it may from time to time be amended, supplemented and modified. References herein to Articles, Sections and Exhibits shall be construed as references to this Agreement unless a different document is named.

1.6 OTHER TERMS – The term "document" is used in its broadest sense and encompasses agreements, certificates, opinions, consents, instruments and other written material of every kind. The terms "including" and "include" shall mean "including (include), without limitation."

## ARTICLE II
## REPRESENTATIONS AND WARRANTIES OF BORROWER

Borrower hereby represents, warrants and covenants to Lender as of the date of this Agreement, the date of Loan Closing, each Advance Date and each and every date during the existence of the Loan, or any portion thereof, as the context admits or requires, that:

2.1 BORROWER'S CAPACITY – Borrower is an individual and is lawfully empowered and possesses the capacity to enter into and carry out the provisions of this Agreement.

2.2 VALIDITY OF LOAN DOCUMENTS – The Loan Documents are in all respects valid and binding upon Borrower according to their terms, subject to all applicable Laws, including, without limitation, equitable principles, insolvency Laws, and other matters applying to creditors generally; provided, however, that the implementation of such Laws do not and will not affect the ultimate realization of the obligations and security afforded thereby. The execution and delivery by Borrower of and the performance by Borrower of all its obligations under the Loan Documents have been duly authorized by all necessary action and do not and will not:

2.2.1 If Borrower is other than a natural Person, require any consent or approval not heretofore obtained of any other Person holding any interest in or entitled to receive any interest issued or to be issued by Borrower or otherwise; or

2.2.2 If Borrower is other than a natural Person, violate any provision of the Organizational Documents or any other agreements to which Borrower is bound; or

2.2.3 Result in or require the creation or imposition of any mortgage, deed of trust, pledge, lien, security interest, claim, charge, right of others, or other encumbrance of any nature (other than under the Loan Documents) upon or with respect to any property now owned or leased or hereafter acquired by Borrower; or

2.2.4 To the best of Borrower's knowledge, violate any order, writ, judgment, injunction, decree, determination, or award of any court or of any Governmental Agency, or violate any provision of any Laws; or

2.2.5 Result in a breach of or constitute a default under, cause or permit the acceleration of any obligation owed under, or require any consent under any indenture or loan or credit agreement or any other agreement, lease, or instrument to which Borrower is a party or by which Borrower or any property of Borrower is bound or affected.

2.3 NO DEFAULT – To the best of Borrower's knowledge, Borrower is not in default beyond the expiration of any applicable notice and cure period under any order, writ, judgment, injunction, decree, determination, award, indenture, agreement, lease, or instrument of the type described in Section 2.2 above.

2.4 NO GOVERNMENTAL APPROVALS REQUIRED – To the best of Borrower's knowledge, no authorization, consent, approval, order, license, exemption from, or filing, registration, or qualification with, any Governmental Agency is or will be required to authorize, or is otherwise required in connection with:

2.4.1 The execution, delivery and the performance by Borrower of all or any of Borrower's obligations under the Loan Documents; or

2.4.2 The creation of the liens, security interests, or other charges or encumbrances described in the Loan Documents, except that filing and/or recording with Governmental Agencies may be required to perfect such liens, security interests, or other charges or encumbrances.

2.5 TAX LIABILITY - Borrower and Guarantor have timely filed all tax returns (federal, state, and local) required to be filed and have paid all taxes shown thereon to be due and all property taxes due, including interest and penalties, if any.

2.6 FINANCIAL STATEMENTS - All Financial Statements of Borrower, Guarantor and any Persons having an interest in Borrower or Guarantor (if Borrower or Guarantor is other than a natural person) which have heretofore been submitted to Lender fairly present the financial positions of Borrower, Guarantor and of such other Persons at the respective dates of their preparation in conformity with GAAP. Since the dates of such Financial Statements, there have been no adverse changes in the financial conditions of Borrower, Guarantor and of such other Persons.

2.7 PENDING LITIGATION – There are no actions, suits, or proceedings pending or, to the knowledge of Borrower, threatened against or affecting Borrower, Guarantor or the Property, or involving the validity or enforceability of any of the Loan Documents or the priority of the lien thereof, at Law or in equity, or before or by any Governmental Agency, except actions, suits, and proceedings that are fully covered by insurance or which, if adversely determined, would not substantially impair the ability of Borrower or Guarantor to perform each and every one of their obligations under and by virtue of the Loan Documents; and to the best of Borrower's knowledge, neither Borrower nor Guarantor is in default, or has received written notice that either is in default, with respect to any order, writ, injunction, decree, or demand of any court or any Governmental Agency.

2.8 VIOLATIONS OF LAWS - To the best of Borrower's knowledge, there are no violations or notices of violations of any Laws relating to the Property or any of the Collateral.

2.9 COMPLIANCE WITH ZONING ORDINANCES AND SIMILAR LAWS – To the best of Borrower's knowledge, the Property complies with all applicable Laws and all permits and approvals issued thereunder, affecting the Property, the sale, operation, leasing or financing of the Property and the intended occupancy, use and enjoyment of the Property, including, but not limited to, applicable subdivision Laws, licenses and permits, building codes, zoning ordinances, flood disaster, environmental protection and equal employment regulations and appropriate supervising boards of fire underwriters and similar agencies. Borrower shall not seek, make or consent to (or permit Guarantor to seek, make or consent to) any change in the zoning, conditions of use, or any other applicable land use permits, approvals or regulations pertaining to the Property, or any portion thereof, which would constitute a violation of the warranties and representations herein contained, or would change the nature of the use or occupancy of the Property.

2.10 AVAILABILITY OF UTILITIES – To the best of Borrower's knowledge, all utility services necessary for the proper operation of the Property for its intended purposes are available at the Property.

2.11 CONDITION OF PROPERTY – To the best of Borrower's knowledge, the Property is not now damaged or injured as a result of any fire, explosion, accident, flood, or other casualty, nor subject to any action in eminent domain.

2.12 BROKERAGE COMMISSIONS - No brokerage commissions are or will be owed by Borrower in connection with the Loan, or if there are commissions due or payable, the same will be paid by Borrower. Borrower agrees to and shall indemnify and hold Lender harmless from all liability, claims, or losses arising by reason of any such brokerage commissions related to any or all acts of Borrower in connection with the Loan. This provision shall survive the repayment of the Loan and shall continue in full force and effect so long as the possibility of such liability, claims or losses exists.

2.13 ENVIRONMENTAL IMPACT STATEMENT – To the best of Borrower's knowledge, all required environmental impact statements as required by any Governmental Agency having jurisdiction over the Property have been duly filed and approved.

2.14 ACCESS - The Property fronts on a publicly maintained road or street and has both legal and practical access to the same.

2.15 SUBORDINATE FINANCING AND LEASES – Except for the Guarantor Security Documents, Borrower will not (or permit Guarantor to) cause there to be deeds of trust, mortgages, security agreements, liens or encumbrances on the Property or any portion thereof or interest therein. Borrower will not cause (or permit Guarantor to), without the prior written consent of Lender, enter into a lease for all or any portion of the Property, except for Approved Leases.

2.16 PRIORITY OF LIEN ON PERSONALTY – Except for the Guarantor Security Documents, no lease, chattel mortgage, bill of sale, security agreement, financing statement, or other title retention agreement (except those executed in favor of Lender) has or will be executed by Guarantor (and Borrower shall ensure that Guarantor complies with this Section 2.16) with respect to any personal property, chattel or FF&E of Guarantor used in conjunction with construction, operation, or maintenance of the Property, except with respect to removable trade fixtures, inventory, and personal property of any tenant of the Property.

2.17 AIR RIGHTS – Borrower has not and will not transfer, assign, convey, hypothecate or encumber any of the air rights pertaining to the Property. Borrower will ensure that Guarantor has not and will not transfer, assign, convey, hypothecate or encumber any of the air rights pertaining to the Property.

2.18 COMPLIANCE WITH ENVIRONMENTAL LAWS – Borrower will not (and shall not permit Guarantor to) use, store, manufacture, generate, transport to or from, or dispose of any toxic substances, hazardous materials, hazardous wastes, radioactive materials, flammable explosives, or related material on or in connection with the Property or any property or the business of Borrower on any property. Borrower will not permit (and shall cause Guarantor to not permit) any lessee on any property to use, store, manufacture, generate, transport to or from, or dispose of any toxic substances, hazardous materials, hazardous waste, radioactive materials, flammable explosives, related material on or in connection with the Property or any property or the business on any property. ("Toxic substances," "hazardous materials," and "hazardous waste" shall include, but not be limited to, such substances, materials and wastes which are or become regulated under applicable Laws or which are classified as hazardous or toxic under applicable Laws.)

2.19 SOLVENCY – Borrower is and shall continue to be able to pay Borrower's debts as they mature and the realizable value of Borrower's collateral or the Collateral, as applicable, is, and at all times that it may have obligations hereunder shall continue to be, sufficient to satisfy any and all obligations hereunder or the Guaranty, as applicable.

2.20 PERMITS – Borrower possesses (and will cause Guarantor to possess) all licenses, approvals, permits, franchises, patents, copyrights, trademarks, and trade names, or rights thereto, that are necessary to own the Property and conduct its business on the Property substantially as now conducted and as presently proposed to be conducted, and to the best of Borrower's knowledge, neither Borrower nor Guarantor is in violation of any valid rights of others with respect to any of the foregoing.

2.21 NO ERISA PLAN – Neither Borrower nor Guarantor maintains a plan under the Employee Retirement Income Security Act of 1974.

2.22 FULL DISCLOSURE – All information in the loan application, Financial Statement, certificate, or other document and all information prepared and delivered by Borrower and Guarantor to Lender in obtaining the Loan is correct and complete in all material respects, and there are no omissions therefrom that result in such information being incomplete, incorrect, or misleading in any material adverse respect as of the date thereof. To the best of Borrower's knowledge, all information in any loan application, Financial Statement, certificate or other document prepared and delivered to Lender on behalf of Borrower or Guarantor by Persons other than Borrower or its Affiliates, Guarantor and their affiliates, and all other information prepared and delivered to Lender on behalf of Borrower by Persons other than Borrower or its Affiliates in applying for the Loan is correct and complete in all material respects, and there are no omissions therefrom that result in any such information being incomplete, incorrect, or misleading in any material adverse respect as of the date thereof. All information in any loan application, Financial Statement, certificate or other document prepared and delivered to Lender on behalf of Guarantor by Persons other than Guarantor or its Affiliates, and all other information prepared and delivered to Lender on behalf of Guarantor by Persons other than Guarantor or its Affiliates in applying for the Loan is correct and complete in all material respects, and there are no omissions therefrom that result in any such information being incomplete, incorrect, or misleading in any material adverse respect as of the date thereof.

2.23 USE OF PROCEEDS; MARGIN STOCK – The proceeds of each Advance will be used by Borrower solely for the purposes specified in this Agreement. None of such proceeds will be used for the purpose of purchasing or carrying any "margin stock" as defined in Regulation U of the Board of Governors of the Federal Reserve System (12 C.F.R. Part 221), or for the purpose of reducing or retiring any indebtedness which was originally incurred to purchase or carry a margin stock or for any other purpose which might constitute this transaction a "purpose credit" within the meaning of such Regulation U. Borrower is not engaged in the business of extending credit for the purpose of purchasing or carrying margin stock. Neither Borrower nor any Person acting on behalf of Borrower has taken or will take any action which might cause any Loan Documents to violate Regulation U or any other regulations of the Board of Governors of the Federal Reserve System or to violate Section 7 of the Securities Exchange Act of 1934, or any rule or regulation thereunder, in each case as now in effect or as the same may hereafter be in effect. Borrower and Borrower's Affiliates own no "margin stock".

2.24 GOVERNMENTAL REGULATION – Neither Borrower nor Guarantor is subject to regulation under the Federal Power Act, the Investment Company Act of 1940, the Interstate Commerce Act (as any of the preceding have been amended), or any other Law which regulates the incurring by Borrower or Guarantor of indebtedness, including but not limited to Laws relating to common or contract carriers or the sale of electricity, gas, steam, water, or other public utility services.

2.25 NO CONDEMNATION – No condemnation proceedings are pending or, to the best of Borrower's knowledge, threatened against the Property.

2.26 BUILDING PERMITS - All building permits, by every name, required for the construction and installation of the Tenant Improvements pursuant to Section 3.12 below have been or will be obtained prior to such construction and/or installation, and prior to the disbursement of any Advances for such construction and/or installation, copies of same will be delivered to Lender.

## ARTICLE III
## THE LOAN

3.1 THE LOAN –

3.1.1 The Loan will be in an amount not exceeding the principal sum of Four Hundred Thousand and No/100 Dollars ($400,000.00). The Loan is non-revolving, and Loan Proceeds once disbursed and repaid cannot be reborrowed. All payments received by Lender from, or for the account of, Borrower on the Loan shall be applied pursuant to the terms of the Note. All records of payment received by Lender shall be maintained at Lender's office, and the records of Lender shall, absent manifest error, be binding and conclusive upon Borrower. The failure of Lender to record any payment or expense shall not limit or otherwise affect the obligations of Borrower under the Note, this Agreement and/or any other Loan Documents.

3.1.2 At Loan Closing, Loan Proceeds shall be disbursed by Lender to pay the Loan Fee, Loan Closing Costs and all other fees mentioned in this Agreement.

3.1.3 A portion of the Loan Proceeds in the total amount of $80,000.00 from the Note shall be held back as an Interest Reserve and disbursed by Lender pursuant to Section 3.11 below.

3.1.4 A portion of the Loan Proceeds in the total amount of $200,000.00 from the Note shall be disbursed in accordance with and subject to the other terms and conditions of this Agreement, including, without limitation, Section 3.12, below.

3.1.5 The remainder of the Loan Proceeds ("Remaining Loan Proceeds") shall be disbursed as follows: Each request for an Advance by Borrower of the Remaining Loan Proceeds shall only be made by Borrower completing, executing and delivering an Advance Request to Lender. Each Advance Request shall be deemed delivered only upon actual receipt by Lender of such Advance Request at the address specified opposite Lender's signature block in this Agreement. An Advance by Lender

shall only be made following Loan Closing and so long no Event of Default hereunder or under any of the Loan Documents (or event which, with the giving of notice or the passage of time, or both, would become an Event of Default) shall have occurred and be continuing. Each Advance Request shall be a representation and warranty by Borrower to Lender that all representations and warranties set forth herein and in the other Loan Documents are true, correct and complete as of the date of the requested Advance. Advances shall be made by deposit of the amount of the Advance to an account of Borrower with Lender. All Advances that are deposited to an account of Borrower with Lender shall be deemed properly delivered to and received by Borrower upon deposit, and each Advance made by Lender shall conclusively be deemed to have been made for the benefit of Borrower when disbursed at the request or direction of Borrower or when deposited in such account, whether or not such Advance was requested by an authorized representative of Borrower. No Advances will be approved for disbursement or made on or after the Maturity Date as set forth herein.

3.2 LOAN CLOSING

3.2.1 The Loan will close if, and only if, on or before January 13, 2024, Borrower shall, at Borrower's sole expense, deposit or cause to be deposited with Lender, the following in form and substance satisfactory to Lender, in Lender's sole opinion and judgment, duly executed by the party to be charged and acknowledged where required:

(a) The Loan Fee;

(b) The Note;

(c) The Guaranty;

(d) The Deed of Trust;

(e) The Assignment of Leases;

(f) The Title Policy or evidence of a commitment therefor. The Title Policy shall show no blanket exceptions for anything a survey would show;

(g) One or more Financing Statements;

(h) If required by Lender, UCC search certificates showing the Financing Statements to be subject only to such prior filings as are acceptable to Lender, in its sole opinion and judgment;

(i) True and correct copies of: Guarantor's Organizational Documents and certificate(s) of fictitious business name and financial statements, all of which documents must be first reviewed and approved by Lender, its counsel, or both;

(j) Such resolutions or other authorizations as Lender shall require of Guarantor and any Person holding an interest in Guarantor (as applicable) authorizing the

Guaranty and the other Loan Documents to be executed in connection therewith, or such other matters as Lender shall require;

(k) The Environmental Indemnity;

(l) The Agreement To Furnish Insurance, together with evidence that all insurance coverages required by Lender have been purchased and are in place;

(m) The Hazard Insurance Disclosure;

(n) IRS Form 4506 executed by Borrower and Guarantor;

(o) Review and approval of Borrower's 2022 Financial Statements, real estate schedules and tax returns (with all forms K-1 attached), prepared by a certified public accountant satisfactory to Lender, together with a credit report for Borrower; and

(p) Such additional assignments, agreements, certificates, reports, approvals, instruments, documents, financing statements, consents, and opinions as Lender may request, including, but not limited to any zoning variances, permits, approvals, conditional use permits, development agreements or other land use requirements Guarantor shall be required to obtain in connection with the operation of the Property and any and all subordination agreements, non-disturbance and attornment agreements, and tenant estoppel certificates as Lender, in its reasonable discretion, shall require Borrower to obtain from tenants of the Property, if any.

3.3 LOAN PURPOSE – The Loan Proceeds disbursed shall be used by Borrower solely for (i) financing Borrower's short-term capital for business investments, (ii) funding the Interest Reserve, (iii) paying, at Loan Closing, the Loan Fee and all other Loan Closing Costs, and (iv) paying, at or after Loan Closing, such fees, costs and other amounts as Lender shall, in Lender's sole and absolute discretion, approve in writing, but only to the extent of the Loan Proceeds. Borrower shall be responsible for paying any of the foregoing from Borrower's own funds in the event the Loan Proceeds are insufficient to do so.

3.4 LOAN FEE - The Loan Fee shall be paid by Borrower to Lender at Loan Closing from the Loan Proceeds, and will be in addition to all other fees mentioned in this Agreement. The Loan Fee shall be deemed fully earned and non-refundable when paid, whether or not any Loan Proceeds are disbursed at any time.

3.5 LOAN TERM

3.5.1 The term of the Loan will commence on the date of Loan Closing and the Loan will mature upon the Maturity Date, subject to acceleration or adjustment as provided in this Agreement and the other Loan Documents.

3.5.2 If, as of the Maturity Date, there is not an uncured Event of Default under this Agreement or any of the Loan Documents, the Maturity Date shall be extended to December 13, 2025, upon the occurrence and satisfaction of each of the following: (i)

Borrower's written request made not later than May 13, 2025, for an extension of the Maturity Date, (ii) payment to Lender of the Extension Fee, (iii) execution by Borrower, Guarantor and Lender of a modification and/or extension agreement in form and content reasonably satisfactory to Lender, which extension agreement shall include, without limitation, an acknowledgment by Borrower and Guarantor of the outstanding principal balance of the Loan, a reaffirmation of all obligations by Borrower and Guarantor under the Loan Documents, an acknowledgement by Borrower and Guarantor to Lender that neither Borrower nor Guarantor has any offset or defense to the obligations, indebtedness and liability under the Loan Documents, and a general release of all claims (known and unknown), and a waiver of Civil Code Section 1542, (iv) issuance of such endorsements to the Title Policy as shall be satisfactory to Lender, in Lender's reasonable opinion and judgment, and (v) if required by Lender, in its sole and absolute discretion, Borrower's deposit of funds with Lender into a bank-controlled account ("Interest Reserve Account") in such amounts as Lender may designate, in Lender's sole opinion and judgment, as necessary to pay interest due under the Note during the six (6) month extension period, which Interest Reserve Account shall be assigned to Lender as additional collateral for the Loan pursuant to a Security Assignment (Assignment of Deposit Account) in form and content reasonably satisfactory to Lender, executed by Borrower in favor of Lender; Borrower hereby authorizes Lender on a monthly basis to disburse from the Interest Reserve Account the amount of interest accrued and unpaid to Lender under the terms of the Loan during such extension period, without further authorization on the part of Borrower. The granting of any such extension, however, is not intended to imply any agreement for any other or further extension of the Maturity Date.

3.6 INTEREST RATE - The interest rate will be as set forth in the Note.

3.7 REPAYMENT - In addition to any other provisions set forth herein, repayment of the Loan will be required as follows:

3.7.1 Interest and principal payments under the Loan shall be due and payable to Lender pursuant to the provisions of the Note;

3.7.2 Borrower hereby authorizes Lender, at Lender's option, if and to the extent any payment of principal or interest or sum otherwise due hereunder is not promptly made pursuant to the Note, to charge against any account of Borrower with Lender an amount equal to the principal and accrued interest from time to time due and payable to Lender under the Note or otherwise;

3.7.3 All payments hereunder or under the Note shall be made by Borrower without any offset or deduction for or on account of any present or future taxes, imposts or duties, of whatever nature, imposed or levied by or on behalf of any Governmental Agency. If at any time, whether by reason of any present or future Law or other requirement, Borrower shall be compelled by such Law or other requirement to deduct or withhold such taxes, imposts or duties, Borrower shall pay such additional amounts to Lender as may be necessary such that every net payment under this Agreement and the Note on which Borrower is obligated, after such deduction or withholding, will not be less than the amount required hereunder or thereunder; and

3.7.4 Whenever any payment to be made under this Agreement and the Note shall be due on a day other than a Business Day of Lender, such payment may be made on the next succeeding Business Day, and such extension of time shall in such cases be included in the computation of payment of interest hereunder and under the Note.

3.8 DEPOSIT ACCOUNT - Borrower hereby grants, assigns, pledges and hypothecates to Lender all of Borrower's right, title and interest in and to all deposit accounts maintained by Borrower with Lender, as security for each and all of the obligations of Borrower to Lender under the Loan Documents. Borrower shall, so long as the Loan has not been fully repaid, performed and discharged, maintain a depository relationship with Lender.

3.9 NO AUTOMATIC SET-OFF - The existence of any sum or sums being on deposit with Lender shall in no way constitute a set-off against or be deemed to compensate the obligations of the Loan or any payment or performance due under the Loan Documents or this Agreement, unless and until Lender, by affirmative action, shall so apply said accounts or any portion thereof, and then only to the extent thereof as so designated by Lender.

3.10 RELIANCE BY LENDER AND ACQUITTANCE - Lender may conclusively assume that the statements, facts, information, and representations contained herein and/or in any affidavits, orders, receipts, or other written instrument(s) that are filed with Lender or exhibited to it, are true and correct, and Lender may rely thereon without any investigation or inquiry, and any payment made by Lender in reliance thereon shall be a complete release in its favor for all sums so paid.

3.11 INTEREST RESERVE – The sum of $80,000.00 shall be utilized from the Loan Proceeds as the Interest Reserve for the Loan. Borrower hereby authorizes Lender on a monthly basis to disburse from the Interest Reserve the amount of interest accrued and unpaid to Lender under the terms of the Loan, without further authorization on the part of Borrower. Upon the occurrence of any Event of Default, Lender may continue to make disbursements from the Interest Reserve of the amounts of interest accrued and unpaid, in Lender's sole and absolute opinion and judgment, without further authorization on the part of Borrower. Notwithstanding the existence of the Interest Reserve, Borrower shall be responsible to pay interest due under the terms of the Note from funds other than the Interest Reserve in the event the Interest Reserve has been disbursed in its entirety or upon the occurrence of an Event of Default. In the event that the Interest Reserve is insufficient to pay interest due under the terms of the Note, Borrower shall, within ten (10) Business Days after demand of Lender, deposit into a non-interest bearing demand deposit account with Lender additional funds for the Interest Reserve, in such amounts as Lender may designate, in Lender's sole opinion and judgment. Borrower agrees to execute an assignment of deposit account in form and content acceptable to Lender, in its sole discretion, granting a security interest to Lender in such account as additional security for the Loan. Borrower acknowledges that Lender has made no representation or warranty concerning the adequacy or sufficiency of the Interest Reserve for payment of interest on the Loan or any portion thereof.

3.12 DISBURSEMENT OF LOAN PROCEEDS FOR TENANT IMPROVEMENTS AND LEASING COMMISSIONS - A portion of the Loan Proceeds in the sum of $200,000.00 shall be disbursed in accordance with this Section 3.12 solely to pay for Tenant Improvements and Leasing Commissions with respect to the Property.

3.12.1 Conditions Precedent to Advances. Prior to and as conditions precedent to any duty on the part of Lender to make the first or any other Advance (other than in accordance with Section 3.11 above or Section 3.12 below), each and all of the following shall have occurred and/or have been furnished to Lender, as applicable:

(a) The Loan shall have closed, and all Loan Documents shall have been duly executed, acknowledged where appropriate, and delivered to Lender, all such documents and instruments shall be in full force and effect with all conditions therein shall have been satisfied.

(b) Lender shall have received an Advance Request completed and fully executed by Borrower requesting an Advance under this Agreement, and which Advance Request shall be approved by Lender in its sole and absolute discretion and shall set forth, without limitation, a specific description of the proposed use of the funds requested, which use must be solely for the following: (i) paying any workmen engaged in the construction or renovation of Tenant Improvements on the Property pursuant to an Approved Lease, together with any permits, fees (including, without limitation, legal fees), and/or utility fees incurred in connection therewith, and (ii) paying for Leasing Commissions in connection with the leasing of portions of the Property. Borrower acknowledges and agrees that to the extent that the amount of Loan Proceeds available for distribution pursuant to this Section 3.12 for payment of such costs and expenses are insufficient to fully pay for such costs and expenses to complete the Tenant Improvements and Leasing Commissions, Borrower shall be solely responsible for paying any deficiency from Borrower's own funds.

(c) The maximum amount of the Loan Proceeds that Lender shall Advance for Tenant Improvement and Leasing Commission pursuant to this Section 3.12 shall not exceed $200,000.00.

(d) Once commenced, the Tenant Improvements shall be completed, free and clear of any and all liens, in accordance with any and all applicable Laws, with a valid Notice of Completion for the Property having been recorded in the Official Records of the County where the Property is located. In addition, upon completion of the Tenant Improvements, Borrower shall have delivered to Lender true and correct copies of valid, final certificates of occupancy and/or such similar Governmental Agency approval(s) for the applicable Tenant Improvements, as may be required by Lender, in its reasonable discretion.

(e) Each of the representations and warranties of Borrower in this Agreement, including without limitation those representations and warranties in Article II, shall be true and correct in all respects on and as of the date of each Advance.

(f) Borrower shall have complied with all of the covenants made by Borrower in this Agreement, including without limitation those covenants in Article IV.

(g) No Event of Default (or event which, with the giving of notice or the passage of time, or both, would become an Event of Default) shall exist under any of the Loan Documents.

(h) Upon request by Lender, and at Borrower's sole expense, Borrower shall have caused Title Company to issue an endorsement to the Title Policy insuring the continued validity, priority and enforceability of the Deed of Trust with respect to such Advance, subject to no encumbrances or other exceptions except those set forth in the original Title Policy and as are otherwise approved by Lender in writing, in its sole discretion.

3.12.2 Mechanism for Advances. Advances shall be made by Lender at the written request of Borrower through an Advance Request. Each Advance Request shall be a representation and warranty by Borrower to Lender that all representations and warranties set forth herein and in the other Loan Documents are true, correct and complete as of the date of the requested Advance. Advances shall be made by deposit of the amount of the Advance to an account of Borrower with the Lender, or as otherwise instructed in Borrower's Advance Request to Lender. All Advances that are deposited to such account or otherwise made pursuant to an Advance Request shall be deemed properly delivered to and received by Borrower upon deposit or upon Advance in accordance with Borrower's Advance Request, and each Advance made by Lender shall conclusively be deemed to have been made for the benefit of Borrower when disbursed at the request or direction of Borrower or when deposited in such account, whether or not such Advance was requested by an authorized representative of Borrower. No Advances will be approved for disbursement or made on or after the Maturity Date as set forth herein.

3.12.3 Conditions Precedent to Advance(s) for Tenant Improvements. Prior to and as a condition precedent to any duty on the part of Lender to make the first or any Advance for Tenant Improvements, each of the following conditions precedent shall be satisfied:

(a) All the conditions of Section 3.12.1 shall have been satisfied;

(b) Lender shall have received evidence, satisfactory to Lender in its sole discretion, that all permits then required based upon the then current status of the construction of the underlying Tenant Improvements have been or (with respect to Advances here under to pay for permits) will be concurrently issued;

(c) If required by Lender, Lender shall have approved a detailed budget for the construction and/or renovation of any Tenant Improvements ("TI Approved Budget") and such TI Approved Budget;

(d) A disbursement of all expenses to be incurred in accordance with the TI Approved Budget for the Approved Lease shall be made by Lender following the submittal by Borrower to Lender of an Advance Request, and shall be accompanied by (i) all applicable invoices and/or purchase orders, (ii) a true and correct copy of the Approved Lease (if not previously delivered), and (iii) if required by Lender, an SNDA and Tenant Estoppel for the Approved Lease. At Lender's request, the Advance Request for the expense incurred by Borrower shall also be accompanied by, without limitation, a written certificate signed by Borrower certifying, inter alia, (i) the identity of each workman or other Person who has performed work and/or supplied materials for which an Advance of Loan Proceeds is sought, (ii) a specific description of all such work performed and/or materials supplied, (iii) if a workman or other Person specified in the Advance Request has not been paid, the amount to be paid to each such workman or other Person (copies of any and all applicable invoices and/or purchase orders shall be provided to Lender concurrently with the Advance Request), (iv) if a workman or other Person specified in the Advance Request has been paid, the amount so paid to each such workman or other Person (evidence of such payment, including, without limitation, cancelled checks, shall be provided to Lender concurrently with the Advance Request); (v) that each workman or other Person specified in the Advance Request has satisfactorily completed the work and/or furnished the materials for which payment is requested, in accordance with the applicable contract; and (vi) that all work performed and/or materials furnished for which an Advance Request is made conforms to the TI Approved Budget.

(e) Lender shall have received such evidence as Lender or a fund control approved by Lender may require that all funds disbursed pursuant to the Advance Request have been utilized to pay the labor, services and/or materials described therein; and

(f) Within thirty (30) days of disbursement by Lender for the TI Approved Budget, Borrower shall submit to Lender true and correct copies of all final lien releases from each workman who has supplied the labor and/or materials encompassed in the Advance Request under Section 3.12.3(c); provided, however, that in the event such workman has not completed the work covered by its contract, a conditional lien release shall be submitted to Lender, conditioned only upon receipt of the last disbursement covering the full amount due such workman upon completion of such work.

3.12.4 Conditions Precedent to Advance(s) for Leasing Commissions. Prior to and as a condition precedent on any duty on the part of Lender to make the first or any Advance for Leasing Commissions in connection with an Approved Lease, each of the following conditions precedent shall be satisfied:

(a) All the conditions of Section 3.12.1 shall have been satisfied;

(b) Borrower and the tenant shall have fully executed such Approved Lease;

(c) A true and correct copy of such Approved Lease shall have been submitted to Lender;

(d) If requested by Lender, an SNDA for such Approved Lease shall have been submitted to Lender; and

(e) Borrower shall have submitted to Lender a certificate signed by Borrower setting forth the amount of the Leasing Commission relating to such Approved Lease (together with all applicable invoices) and that there is no other Leasing Commission for the Approved Lease.

## ARTICLE IV
## BORROWER'S COVENANTS

4.1 INSURANCE – Borrower shall cause Guarantor to obtain and at all times maintain liability insurance in amount, form and issued by a company or companies reasonably satisfactory to Lender, as required under the Deed of Trust and/or the Agreement To Furnish Insurance.

4.2 RIGHT OF ENTRY – Lender and Lender's employees or agents shall have the right at all times to enter upon the Property for whatever purpose Lender deems appropriate, including, without limitation, inspection of the premises and the posting of such notices and other written or printed material thereon as Lender may deem appropriate or desirable.

4.3 PRESERVE ITS EXISTENCE – Borrower, if other than a natural person, will, so long as Borrower remains obligated on the Loan, do all things necessary to preserve and keep in full force and effect its organizational status and will comply with all Laws, orders and decrees of any Governmental Agency or court applicable to Borrower or to the Property. Borrower will, so long as Borrower remains obligated on the Loan, do all things necessary to cause Guarantor to preserve and keep in full force and effect Guarantor's organizational status and will comply with all Laws, orders and decrees of any Governmental Agency or court applicable to Guarantor or to the Property.

4.4 LENDER MAY EXAMINE BOOKS AND RECORDS – Lender shall have the right, from time to time, acting by and through its employees or agents, to examine the books, records, and accounting data of Borrower, and to make extracts therefrom or copies thereof. Borrower shall promptly make such books, records, and accounting data available to Lender, as stated above, upon written request, and upon like request shall promptly advise Lender, in writing, of the location of such books, records, and accounting data.

4.5 PAYMENT OF TAXES –

(a) Borrower shall pay and discharge, or cause to be paid and discharged, all taxes, assessments, and governmental charges or levies imposed upon the Property, Borrower or upon Borrower's income or profits, or upon any properties belonging to Borrower prior to the date on which penalties attach thereto, and all lawful

claims which, if unpaid, might become a lien or charge of a material nature upon any of Borrower's properties; provided, that Borrower shall not be required to pay any such tax, assessment, charge, levy or claim which is being contested in good faith and by proper proceedings if Borrower maintains adequate reserves with respect thereto.

(b) Borrower shall cause Guarantor to pay and discharge all taxes, assessments, and governmental charges or levies imposed upon the Property prior to the date on which penalties attach thereto, and all lawful claims which, if unpaid, might become a lien or charge of a material nature upon the Property; provided, that Borrower shall not be required to cause Guarantor to pay any such tax, assessment, charge, levy or claim which is being contested in good faith and by proper proceedings if Guarantor maintains adequate reserves with respect thereto.

4.6 COMPLY WITH APPLICABLE LAWS – Borrower shall comply (and shall cause Guarantor to comply) with all applicable restrictive covenants, zoning and subdivision ordinances, building codes, health and environmental Laws and all other applicable Laws, directions, orders and notices of violations issued by any Governmental Agency relating to or affecting the Property or the business or activity being conducted thereon whether by Borrower, Guarantor or by any occupant thereof, including, without limitation, any and all Laws relating to hazardous or toxic waste or waste products or hazardous substances. Further, Borrower shall indemnify and hold Lender and the Trustee under the Deed of Trust harmless from the failure by Borrower to comply with such Laws in any respect, and Borrower shall cause Guarantor to indemnify and hold Lender and the Trustee under the Deed of Trust harmless from the failure by Guarantor to comply with such Laws in any respect.

4.7 MAINTENANCE OF PROPERTIES AND PRESERVE EXISTENCE –

(a) Borrower shall maintain and preserve, or cause to be maintained and preserved, all of its properties, necessary or useful in the proper conduct of Borrower's business, including such as may be under lease, in good working order and condition, ordinary wear and tear excepted. Borrower, so long as Borrower remains obligated on the Loan, will comply with all Laws, orders and decrees of any Governmental Agency or court applicable to Borrower.

(b) Borrower shall cause Guarantor to maintain and preserve the Property in good working order and condition, ordinary wear and tear excepted. Borrower, so long as Borrower remains obligated on the Loan, shall cause Guarantor to do all things necessary to preserve and keep in full force and effect Guarantor's organizational status, and will cause Guarantor to comply with all Laws, orders and decrees of any Governmental Agency or court applicable to Guarantor or to the Property.

4.8 BOOKS AND RECORDS; AUDIT AND EXAMINATION – Borrower shall keep and maintain all books and records in original form, as shall be required and as shall otherwise be appropriate, in Lender's reasonable opinion and judgment, pertaining to the performance by Borrower of Borrower's covenants and other obligations hereunder, and otherwise pertaining to Borrower's operations and activities. Borrower

shall at all times permit Lender to review, audit and examine all such books and records, either directly or through one or more auditors designated by Lender, including independent contractors.

4.9 REPORTING REQUIREMENTS – So long as Borrower shall have any obligation to Lender under this Agreement and/or the other Loan Documents, Borrower shall prepare, or cause to be prepared, and deliver, or cause to be delivered, to Lender the following Financial Statements and reports:

(a) As soon as practicable and in any event within five (5) days after Borrower knows of the commencement of any legal action against it that would reasonably be expected to have a Material Adverse Effect, except actions seeking money judgments that are fully insured or bonded, a report of the commencement of such action containing a statement signed by an authorized signatory of Borrower setting forth details of such legal action and any action Borrower proposes to take with respect thereto;

(b) Within five (5) days of the occurrence of any Event of Default, a report regarding such Event of Default or event setting forth details and describing any action which Borrower proposes to take with respect thereto, signed by Borrower;

(c) Any change in the name of Borrower, Guarantor or use of any trade names or trade styles not presently used;

(d) At any time upon Lender's request, complete and accurate Financial Statements representing the financial condition of Borrower as of the date such Financial Statements are prepared and delivered to Lender, including, but not limited to, balance sheets, income statements, sources and uses of funds, real estate schedules and such other supplemental reports and schedules as Lender shall require, in its reasonable discretion. All such Financial Statements may be self-prepared; and all such Financial Statements shall contain a certification signed by any individual providing a Financial Statement or by one or more authorized representatives of any corporation, partnership, limited liability company, trust or other entity providing a Financial Statement, certifying to the completeness and accuracy of all information, without exception. All such Financial Statements shall be prepared and presented in accordance with GAAP, consistently applied, or in such other form and content as Lender may permit, in its sole and absolute opinion and judgment. Additionally, at any time upon Lender's request, Borrower shall furnish to Lender complete and accurate copies of all signed income tax returns (with all forms K-1 attached) of Guarantor, including all schedules and exhibits thereto, prepared by an independent certified public accountant acceptable to Lender, in its sole opinion and judgment;

(e) At any time upon Lender's request, Borrower shall provide to Lender complete and accurate annual Financial Statements representing the financial condition of Guarantor as of the date such Financial Statements are prepared and delivered to Lender, including balance sheets, income statements, sources and uses of funds, detailed schedule of real estate of Guarantor, and such other supplemental reports

and schedules as Lender shall require, in its reasonable discretion. The Financial Statements for Guarantor may be company-prepared and shall contain a certification signed by any individual providing a Financial Statement or by one or more authorized representatives of any corporation, partnership, limited liability company or other entity providing a Financial Statement, certifying to the completeness and accuracy of all information, without exception. All such Financial Statements shall be prepared and presented in accordance with GAAP, consistently applied, or in such other form and content as Lender may permit, in its sole and absolute opinion and judgment. Additionally, at any time upon Lender's request, Borrower shall furnish to Lender complete and accurate copies of signed income tax returns (with all forms K-1 attached) of Guarantor, including all schedules and exhibits thereto, prepared by an independent certified public accountant acceptable to Lender, in its sole opinion and judgment;

(f) Promptly upon receipt thereof, one (1) copy of any other report submitted to Borrower by independent accountants in connection with any annual, interim or special audit made by them of the books of Borrower;

(g) Within five (5) days of (i) any contact to Borrower or Guarantor from any Governmental Agency concerning any environmental protection Laws, including, but not limited to, any notice of any proceeding or inquiry with respect to the presence of any hazardous waste, toxic substances or hazardous materials on the Property or the migration thereof from or to other property, (ii) any and all claims made or threatened by any third Person against or relating to the Property concerning any loss or injury resulting from toxic substances, hazardous waste, or hazardous materials, or (iii) Borrower's and/or Guarantor's discovery of any occurrence or condition on any property adjoining or in the vicinity of the Property that could cause the Property, or any part thereof, to be subject to any restrictions on the ownership, occupancy, transferability, or loss of the Property under any Law which would reasonably be expected to have a Material Adverse Effect, Borrower shall deliver to Lender a report regarding such contact and setting forth in detail and describing any action which Borrower or Guarantor proposes to take with respect thereto, signed by Borrower;

(h) Within five (5) days of becoming aware of any developments or other information which may materially and adversely affect the Property, Borrower's properties, business, prospects, profits or condition (financial or otherwise) or Borrower's ability to perform this Agreement or the other Loan Documents, telephonic or written notice (delivered via facsimile) specifying the nature of such development or information and such anticipated effect, which shall be promptly confirmed in writing; and

(i) Such other information respecting the business, properties or the condition or operations, financial or otherwise, of Borrower or Guarantor as Lender may from time to time reasonably request.

4.10 <u>LIENS</u> – Except for the Guarantor Security Documents, Borrower shall not create, incur, assume or suffer to exist, or permit Guarantor to create, incur, assume or suffer to exist, any mortgage, deed of trust, pledge, lien, security interest or other charge

or encumbrance of any nature upon or with respect to the Property, or assign or otherwise convey, or permit Guarantor to assign or otherwise convey, any right to receive income, except that the foregoing restrictions shall not apply to mortgages, deeds of trust, pledges, liens, security interests or other charges or encumbrances, including the Deed of Trust and the Assignment of Leases, covering the Property created by or pursuant to or permitted by this Agreement, or taxes, assessments or governmental charges or levies on property of Borrower, or in respect of a judgment or award against Borrower, if the same shall not at the time be delinquent or thereafter can be paid without penalty, or if Borrower shall have set aside adequate reserves therefor as determined or approved by its certified independent accounting firm, or, if in the case of a judgments or award, execution on the same shall have been effectively stayed pending appeal or review or insured or bonded to the extent of Borrower's liability in respect thereof, and in the case of all of the foregoing, the same are being contested in good faith and by appropriate proceedings.

4.11 <u>NO TRANSFER OR FURTHER ENCUMBRANCE</u> – Borrower shall not (and Borrower shall ensure that Guarantor shall not), without the prior written consent of Lender:

(a) Create, incur, assume, permit or suffer to exist, any mortgage, deed of trust, pledge, lien, hypothecation, charge (fixed or floating), security interest or other encumbrance whatsoever on the Property or any interest therein, except the Permitted Encumbrances;

(b) Transfer the Property, or any interest therein, except for the Approved Leases;

(c) Become a party to any transaction whereby the Property or any portion thereof, or all or any substantial part of the properties, assets or undertakings of Borrower and/or Guarantor (whether legally or beneficially owned by Borrower and/or Guarantor), would become the property of any other Person, whether by way of transfer, sale, conveyance, lease, sale and leaseback, or otherwise, except for the Approved Leases;

(d) Change the use of the Property;

(e) Modify or amend any Approved Lease;

(f) Enter into a new lease for all or any portion of the Property, except for Approved Leases;

(g) Transfer, convey, hypothecate, or sell membership interests in Guarantor, except for transfers of up to forty-nine percent (49%) of the membership interests in Guarantor in the aggregate, made by members of Guasrantor for usual and customary estate planning purposes so long as Lender shall be notified of such estate planning transfers, in writing, in advance; or

(h) Change the manager of Guarantor.

4.12 PROTECTION OF LIENS – Borrower shall cause Guarantor to maintain the lien of the Deed of Trust as a first priority lien on the Property and take all actions, and execute and deliver to Lender all documents, reasonably required by Lender from time to time in connection therewith.

4.13 TITLE INSURANCE ENDORSEMENTS – Borrower shall cause Guarantor deliver to Lender, at Borrower's and/or Guarantor's sole expense and in form and content reasonably required by Lender from time to time, such endorsements to the Title Policy as Lender shall request.

4.14 APPROVED LEASES; SNDAs.

(a) Borrower shall ensure that Guarantor will only enter into Approved Leases for the Property (this restriction shall apply to all leases for the Property entered into by Guarantor, including, without limitation, all new and renewal leases and any modifications to such leases).

(b) Borrower shall, immediately upon execution by Guarantor of any new or renewal lease, or any extensions or modifications of any lease, with respect to the Property, provide Lender with (i) a true, correct and complete copy of such lease, modification or extension, as applicable, as signed by all parties, and (ii) upon Lender's request, an SNDA and/or Tenant Estoppels from such tenants under new leases as Lender shall require.

4.15 TAXES AND OTHER DEBT – Borrower shall pay and discharge, or shall cause to be paid an discharged, (a) before delinquency all taxes, assessments, and governmental charges or levies imposed upon Borrower, upon Borrower's income or profits, or upon the Property or any property belonging to Borrower; (b) when due all lawful claims (including, without limitation, claims for labor, materials, and supplies), which, if unpaid, might become a lien or encumbrance upon any of Borrower's assets or property; and (c) all Borrower's other obligations and indebtedness when due; provided, however, that Borrower may contest any of the foregoing in good faith and by appropriate proceedings diligently prosecuted by Borrower as long as Borrower has adequate reserves to pay any adverse determination or has otherwise provided Lender evidence of a surety or bond to pay any adverse determination.

4.16 NAME, FISCAL YEAR, ACCOUNTING METHOD, AND LINES OF BUSINESS – Borrower shall ensure that Guarantor will not change Guarantor's name, fiscal year, or method of accounting. Borrower will ensure that Guarantor shall not directly or indirectly engage in any business other than the business in which Guarantor is engaged on the date of this Agreement, discontinue any existing lines of business that are material to the business or operations of Guarantor , or substantially alter its method of doing business.

4.17 [Reserved].

4.18 [Reserved].

4.19 [Reserved].

4.20 [Reserved].

4.21 TERRORISM AND ANTI-MONEY LAUNDERING - Borrower warrants and agrees as follows:

(a) As of the date hereof and throughout the term of the Loan: (i) Borrower; (ii) any Person controlling or controlled by Borrower (if Borrower is other than a natural Person); (iii) if Borrower is a privately held entity, any Person having a beneficial interest in Borrower (if Borrower is other than a natural Person); or (iv) any Person for whom Borrower is acting as agent or nominee in connection with this transaction, is not an OFAC Prohibited Person.

(b) To comply with applicable U.S. Anti-Money Laundering Laws and regulations, all payments by Borrower to Lender or from Lender to Borrower will only be made in Borrower's name and to and from a bank account of a bank based or incorporated in or formed under the laws of the United States or a bank that is not a "foreign shell bank" within the meaning of the U.S. Bank Secrecy Act (31 U.S.C. § 5311 et seq.), as amended, and the regulations promulgated thereunder by the U.S. Department of the Treasury, as such regulations may be amended from time to time.

(c) To provide Lender at any time and from time to time during the term of the Loan with such information as Lender determines to be necessary or appropriate to comply with the Anti-Money Laundering Laws and regulations of any applicable jurisdiction, or to respond to requests for information concerning the identity of Borrower, any Person controlling or controlled by Borrower or any Person having a beneficial interest in Borrower, from any governmental authority, self-regulatory organization or financial institution in connection with its anti-money laundering compliance procedures, or to update such information.

(d) The representations and warranties set forth in this Section 4.21 shall be deemed repeated and reaffirmed by Borrower as of each date that Borrower makes a payment to Lender under the Note, this Agreement and the other Loan Documents or receives any payment from Lender. Borrower agrees promptly to notify Lender in writing should Borrower become aware of any change in the information set forth in these representations.

4.22 DISTRIBUTIONS - Borrower shall ensure that Guarantor does not make, declare or permit any distribution to any officer, shareholder, member, manager or partner of Guarantor at any time that an Event of Default (or event of which Borrower has actual knowledge and that with the giving of notice or passage of time, or both, would constitute an Event of Default) has occurred and is continuing or if any such distribution would cause or contribute to an Event of Default (or event that with the giving of notice or passage of time, or both, would constitute an Event of Default).

4.23 MARIJUANA RELATED BUSINESS (MRB) – Borrower acknowledges and agrees that if any part of the Property will be leased to a marijuana related business ("MRB"), or otherwise used for MRB purposes, Borrower must submit written request to Lender for approval of an MRB tenant or for MRB use prior to execution of a lease to an MRB tenant or for MRB use, which approval shall be Lender's sole and absolute discretion.

_______________
Borrower's Initials

ARTICLE V
EVENTS OF DEFAULT

An "Event of Default" shall be deemed to have occurred hereunder if:

5.1 DEFAULT UNDER LOAN DOCUMENTS - Borrower shall fail to pay principal or interest, or both, when due under the terms of the Note (taking into account any grace period provided in the Note) or any other amount owing under this Agreement or any of the other Loan Documents within five (5) Business Days after Lender shall have given written notice to Borrower demanding same; or Borrower shall fail to perform or observe any term, covenant or agreement contained in this Agreement or in any of the other Loan Documents, which failure cannot be cured by the payment of money and such failure shall continue for a period of thirty (30) calendar days after Lender shall have given written notice to Borrower specifying such default; provided, however, that if such default is curable but is of a nature that such cure cannot be completed within such thirty (30) day period, Borrower shall be allowed to cure such default if Borrower shall promptly commence such cure within thirty (30) days after receipt of such notice and diligently prosecutes the same to completion within sixty (60) days of the date Lender gave written notice to Borrower specifying such default (provided further, however, that in no event shall such extension operate to extend the Maturity Date); or

5.2 BREACH OF WARRANTY - Any representations or warranties made or agreed to be made by Borrower or Guarantor in any of the Loan Documents or this Agreement, or otherwise in connection with the Loan, shall prove to be false or misleading in any material respect when made; provided, however, if (i) Borrower or Guarantor makes a good faith, unintentional misrepresentation, and (ii) the underlying facts or situation that rendered such representation inaccurate or untrue can reasonably be expected to be remedied to Lender's reasonable satisfaction within thirty (30) days following the earlier to occur of the discovery of such misrepresentation by Borrower or Guarantor or written notice from Lender to Borrower of such misrepresentation, and Borrower or Guarantor actually remedies said underlying facts or situation as to make the original representation true and correct prior to the expiration of said thirty (30) day period, then such misrepresentation shall not be deemed an Event of Default.

5.3 ACTION AGAINST BORROWER OR GUARANTOR - Any suit shall be filed against Borrower or Guarantor, which, if adversely determined, could reasonably

be expected to have a Material Adverse Effect, unless Borrower's counsel furnishes to Lender its opinion, to the reasonable satisfaction of Lender and Lender's counsel, that, in Borrower's counsel's judgment, the suit is essentially without merit; or

5.4 LEVY UPON PROPERTY - A levy be made on the Property or any other Collateral under any process or any lien creditor commences suit to enforce a judgment lien against the Property or any other Collateral, and such levy or action shall not be bonded against by sureties deemed by Lender to be sufficient in its reasonable opinion and judgment and shall continue to be unstayed and in effect for a period of more than thirty (30) days;; or

5.5 FILING OF LIENS AGAINST THE PROPERTY - Any lien for labor, material, taxes or otherwise shall be filed against the Property and such lien shall not be either satisfied or bonded over within forty-five (45) days of such filing in the full amount; or

5.6 [Intentionally omitted.]

5.7 TRANSFER OF PROPERTY – Except for Approved Leases, Borrower and/or Guarantor shall voluntarily or by operation of Law, sell, transfer, convey, lease, or encumber the Property, or any interest therein, or shall contract for such sale, transfer, conveyance, or encumbrance without the prior written consent of Lender, which consent Lender may either give or withhold in its sole and absolute opinion and judgment; or

5.8 INSOLVENCY – (i) Borrower or Guarantor shall fail to pay its debts as they become due, or shall make an assignment for the benefit of its creditors, or shall admit, in writing, its inability to pay its debts as they become due, or (ii) Borrower or Guarantor shall file a petition under any chapter of the United States Bankruptcy Code or any similar Law, now or hereafter existing, or shall become "insolvent" as that term is generally defined under the United States Bankruptcy Code, or shall in any involuntary bankruptcy case commenced against it file an answer admitting insolvency or inability to pay its debts as they become due, or shall fail to obtain a dismissal of such case within thirty (30) calendar days after its commencement or shall convert the case from one chapter of the United States Bankruptcy Code to another chapter, or be the subject of an order for relief in such bankruptcy case, or be adjudged a bankrupt or insolvent, or shall have a custodian, trustee, or receiver appointed for, or have any court take jurisdiction of, its property, or any part thereof, in any voluntary or involuntary proceeding, including, but not limited to, those for the purpose of reorganization, arrangement, dissolution, or liquidation, and such custodian, trustee, or receiver shall not be discharged, or such jurisdiction shall not be relinquished, vacated, or stayed within thirty (30) calendar days after the appointment; or

5.9 EXECUTION LEVY - Execution shall have been levied against the Property or any lien creditor(s) commence(s) suit to enforce a judgment lien against the Property and such action or suit shall not have been bonded over and shall continue unstayed and in effect for a period of more than thirty (30) calendar days; or

5.10 GUARANTOR STATUS - Without Lender's prior written consent, Guarantor shall be liquidated, dissolved, or fail to maintain its status as a going concern or there shall be a change in the entity form of Guarantor; or

5.11 ATTACHMENT - Any proceeding shall be brought the object of which is that any part of Lender's commitment to make the Advances hereunder shall at any time be subject or liable to attachment or levy during the course of the suit of any creditor of Borrower unless Borrower's counsel furnishes to Lender its opinion, to the satisfaction of Lender and Lender's counsel, that, in its judgment and after investigation, the suit is essentially without merit; or

5.12 EMINENT DOMAIN - The Property shall be the subject of an eminent domain proceeding or a taking adverse to the security interest or other interests of Lender; provided, however, that a taking of only an immaterial portion of the Property shall not be deemed an Event of Default under this Section 5.12 so long as Lender shall have received the entire amount of the proceeds payable to Guarantor ("Eminent Domain Proceeds") from such proceeding or taking and Lender shall have determined, pursuant to an updated appraisal of the remaining Property at the sole cost of Borrower, that the ratio of the outstanding principal amount of the Guarantor Loan (after payment to Lender of the Eminent Domain Proceeds) to the appraised "as is" value of the remaining Property does not exceed seventy percent (70%); or

5.13 DESTRUCTION - The Property is damaged or destroyed by fire or other casualty and the loss shall prove to be inadequately covered by insurance actually collected or in the process of collection; or

5.14 FINANCIAL CONDITION - There shall be any material adverse change in the financial condition of Borrower or Guarantor; or

5.15 DEFAULT UNDER GUARANTY – Guarantor is in default under the Guaranty beyond the expiration of any applicable notice and cure period or revokes or notifies Lender of an intention to revoke the Guaranty; or

5.16 MISREPRESENTATION AND/OR NON-DISCLOSURE - Borrower has made certain statements and disclosures in order to induce Lender to make the Loan and enter into this Agreement, and, in the event Borrower has made material misrepresentations or failed to disclose any material fact, Lender may treat such misrepresentation or omission as a breach of this Agreement. Such action shall not affect any remedies Lender may have for such misrepresentation or non-disclosure, as such, or under its Deed of Trust for such misrepresentation or concealment; or

5.17 DEATH AND INCAPACITATION – Borrower dies or becomes legally incapacitated or legally incompetent.

5.18 DEFAULT UNDER GUARANTOR LOAN DOCUMENTS – Guarantor defaults under or breaches the Guarantor Loan Documents, or any of the them, which breach or default is not remedied during any applicable cure period.

## ARTICLE VI
## REMEDIES

6.1 CEASE PAYMENT AND/OR ACCELERATE – Upon the occurrence of an Event of Default, and during the continuance thereof, all Loan Proceeds disbursed or advanced by Lender and all accrued and unpaid interest thereon shall, at the option of Lender, become immediately due and payable, and Lender shall be released from any and all obligations to Borrower under the terms of this Agreement.

6.2 ENFORCEMENT OF RIGHTS – Upon the occurrence of an Event of Default, and during the continuance thereof, Lender may enforce any and all rights and remedies under the Loan Documents, the Deed of Trust and all other documents delivered in connection therewith and against any or all Collateral and may pursue all rights and remedies available at Law or in equity.

6.3 COLLATERAL – Upon the occurrence of an Event of Default, and during the continuance thereof, Lender may, at its option, without notice to Borrower or any Affiliate of Borrower or without regard to the adequacy of the Collateral for the payment of the Loan, appoint one or more receivers of the Collateral, and Borrower hereby irrevocably consents to such appointment, with such receivers having all the usual powers and duties of receivers in similar cases, including the full power to maintain, sell, dispose and otherwise operate the Collateral upon such terms that may be approved by a court of competent jurisdiction.

6.4 RIGHTS AND REMEDIES NON-EXCLUSIVE - In addition to the specific rights and remedies hereinabove mentioned, Lender shall have the right to avail itself of any other rights or remedies to which it may be entitled under any then existing Laws including, but not limited to, the right to realize upon any or all of its security, and to do so in any order. Furthermore, the rights and remedies set forth above are not exclusive, and Lender may avail itself of any individual right or remedy set forth in this Agreement, or available under such Laws, without utilizing any other right or remedy.

## ARTICLE VII
## GENERAL CONDITIONS AND MISCELLANEOUS

7.1 NONLIABILITY OF LENDER - Borrower acknowledges and agrees that by accepting or approving anything required to be observed, performed, fulfilled, or given to Lender pursuant to the Loan Documents, including any certificate, statement of profit and loss, or other Financial Statement, survey, appraisal or insurance policy, Lender shall not be deemed to have warranted or represented the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision, or condition thereof, and such acceptance or approval thereof shall not be or constitute any warranty or representation to anyone with respect thereto by Lender.

7.2 NO THIRD PARTIES BENEFITTED - This Agreement is made for the purpose of defining and setting forth certain obligations, rights, and duties of Borrower and Lender in connection with the Loan and shall be deemed a supplement to the Note

and the Loan Documents, and shall not be construed as a modification of the Note or the Loan Documents, except as provided herein. This Agreement is made for the sole protection of Borrower and Lender, and Lender's successors and assigns. No Person other than Lender or Borrower shall have any rights of any nature hereunder or by reason hereof or the right to rely hereon. In the event of a conflict between this Agreement and the Note, the provisions of the Note shall control. In the event of a conflict between this Agreement and the Deed of Trust, this Agreement shall control.

7.3 INDEMNITY BY BORROWER - Borrower hereby indemnifies and agrees to hold Lender and its directors, officers, agents, and employees (individually and collectively, the "Indemnitee(s)") harmless from and against:

7.3.1 Any and all claims, demands, actions, or causes of action that are asserted against any Indemnitee by any Person if the claim, demand, action, or cause of action, directly or indirectly, relates to a claim, demand, action, or cause of action that the Person has or asserts against Borrower;

7.3.2 Any and all claims, demands, actions, or causes of action that are asserted against any Indemnitee by any Person which arise from or relate to any mechanics' lien or related proceeding relating to the Property or any other actual or alleged failure to pay or perform in connection with the Property ; and

7.3.3 Any and all liabilities, losses, costs, or expenses (including court costs and attorneys' fees) that any Indemnitee suffers or incurs as a result of the assertion of any claim, demand, action, or cause of action specified in this Section 7.3.

7.4 CHANGE IN LAWS - In the event of the enactment, after the date of this Agreement, of any Laws: (a) deducting from the value of property for the purpose of taxation any lien or security interest thereon; (b) imposing upon Lender the payment of the whole or any part of the taxes or assessments or charges or liens herein required to be paid by Borrower or Guarantor; (c) changing in any way the Laws relating to the taxation of deeds of trust or mortgages or security agreements, or debts secured by deeds of trust or mortgages or security agreements, or the interest of the mortgagee or secured party in the property covered thereby; or (d) changing the manner of collection of such taxes; then, to the extent any of the foregoing may affect the Deed of Trust or the indebtedness secured thereby or Lender, then, and in any such event, Borrower, upon demand by Lender, shall pay (or cause to be paid) such taxes, assessments, charges, or liens, or reimburse Lender therefor. If Borrower or Guarantor shall be prohibited from paying such tax or from reimbursing Lender for the amount thereof, Borrower shall execute a modification to the Loan Documents and the Note, which modification shall increase the interest rate payable pursuant to the Note so as to permit Lender to maintain its yield as if such tax had not been imposed. If Borrower shall be prohibited from executing the above-referenced modifications, Lender may, in Lender's sole discretion, declare the principal of all amounts disbursed and owing under the Note, this Agreement, and the other Loan Documents (including all obligations secured by the Loan Documents) and all other indebtedness of Borrower to Lender, together with interest thereon, to be forthwith due and payable, regardless of any other specified maturity or due date.

7.5 POWER OF ATTORNEY - Borrower does hereby irrevocably appoint, designate, empower, and authorize Lender, as Borrower's agent, under power of attorney, coupled with an interest, to sign and file for record any financing statements, notices of completion, notices of cessation of labor, or any other notice or written document that it may deem necessary to file or record to protect Lender's interests. Borrower does hereby cause Guarantor to irrevocably appoint, designate, empower, and authorize Lender, as Guarantor's agent, under power of attorney, coupled with an interest, to sign and file for record any financing statements, notices of completion, notices of cessation of labor, or any other notice or written document that it may deem necessary to file or record to protect Lender's interests.

7.6 NONRESPONSIBILITY - Lender shall in no way be liable for any acts or omissions of Borrower or Borrower's agents or employees.

7.7 TIME IS OF THE ESSENCE - Time is of the essence of this Agreement and of each and every provision hereof.

7.8 NON-WAIVER - The waiver by Lender of any breach or breaches hereof shall not be deemed, nor shall the same constitute, a waiver of any subsequent breach or breaches.

7.9 BINDING EFFECT; ASSIGNMENT - This Agreement shall be binding upon and inure to the benefit of Borrower and Lender and their respective successors and assigns, except that Borrower may not assign its rights hereunder or any interest herein without the prior written consent of Lender. Lender shall have the right to assign its rights under this Agreement and to grant participations in the Loan to others, but all waivers or abridgements of Borrower's obligations that may be granted from time to time by Lender shall be binding upon such assignees or participants. Borrower shall, promptly upon demand, provide Lender or any such purchaser or participant, one or more written statements confirming Borrower's indebtedness to Lender and all obligations in connection with the Loan, including the existence of any default thereunder.

7.10 EXECUTION IN COUNTERPARTS - This Agreement and any other Loan Documents, except the Note, the Deed of Trust and the Assignment of Leases, may be executed in any number of counterparts, and any party hereto or thereto may execute any counterpart, each of which, when executed and delivered, will be deemed to be an original, and all of which counterparts of this Agreement or any other Loan Document, as the case may be, taken together will be deemed to be but one and the same instrument. The execution of this Agreement or any other Loan Document by any party or parties hereto or thereto will not become effective until counterparts hereof or thereof, as the case may be, have been executed by all the parties hereto or thereto.

7.11 INTEGRATION; AMENDMENTS; CONSENTS - This Agreement, together with the documents referred to herein constitutes the entire agreement of the parties touching upon the subject matter hereof, and supersedes any prior negotiations or agreements on such subject matter. No amendment, modification, or supplement of any provision of this Agreement or any of the other Loan Documents shall be effective unless

in writing, signed by Lender and Borrower; and no waiver of any of Borrower's obligations under this Agreement or any of the other Loan Documents or consent to any departure by Borrower therefrom shall be effective unless in writing, signed by Lender, and then only in the specific instance and for the specific purpose given.

7.12 NEUTRAL INTERPRETATION - This Agreement is the product of the negotiations between the parties, and in the interpretation and/or enforcement hereof is not to be interpreted more strongly in favor of one party or the other.

7.13 COSTS, EXPENSES, AND TAXES - Borrower shall pay to Lender, on demand:

7.13.1 All attorneys' fees and out-of-pocket expenses incurred by Lender in connection with the negotiation, preparation, execution, delivery, and administration of this Agreement and any other Loan Document and any matter related thereto, including, but not limited to, the appraisal of the Property;

7.13.2 The costs and expenses of Lender in connection with the enforcement of this Agreement and any other Loan Document and any matter related thereto, including the fees and out-of-pocket expenses of any legal counsel, independent public accountants, and other outside experts retained by Lender and including all costs and expenses of enforcing any judgment or prosecuting any appeal of any judgment, order or award arising out of or in any way related to the Loan, this Agreement, or the Loan Documents; and

7.13.3 All costs, expenses, fees, premiums, and other charges relating to or arising from the Loan Documents or any transactions contemplated thereby or the compliance with any of the terms and conditions thereof, including, but not limited to, recording fees, filing fees, credit report fees, release or reconveyance fees, title insurance premiums, and the cost of realty tax service for the term of the Loan.

All sums paid or expended by Lender under the terms of this Agreement shall be considered to be, and shall be, a part of the Loan. All such sums, together with all amounts to be paid by Borrower pursuant to this Agreement, shall bear interest from the date of expenditure at the rate provided in the Note, shall be secured by the Loan Documents, and shall be immediately due and payable by Borrower upon demand.

7.14 SURVIVAL OF REPRESENTATIONS AND WARRANTIES - All representations and warranties of Borrower contained herein or in any and all other Loan Documents shall survive the making of the Loan and the execution and delivery of the Note, and are material and have been or will be relied upon by Lender, notwithstanding any investigation made by Lender or on behalf of Lender. For the purpose of this Agreement, all statements contained in any certificate, agreement, Financial Statement, appraisal or other writing delivered by or on behalf of Borrower pursuant hereto or to any other Loan Document or in connection with the transactions contemplated hereby or thereby shall be deemed to be representations and warranties of Borrower contained herein or in the other Loan Documents, as the case may be.

7.15 NOTICES - Except as provided in the Deed of Trust, all notices, requests, demands, directions, and other communications provided for hereunder and under any other Loan Document (a "Notice") must be in writing and must be mailed, delivered, or sent by facsimile transmission to the appropriate party at its respective address set forth below or, as to any party, at any other address as may be designated by it in a written notice sent to the other parties in accordance with this Section 7.14. Any notice given by facsimile transmission must be confirmed within forty-eight (48) hours by letter mailed or delivered to the appropriate party at its respective address. If any notice is given by mail it will be effective three (3) calendar days after being deposited in the mails with first-class or airmail postage prepaid; if given by facsimile transmission, when sent; or if given by personal delivery, when delivered.

7.16 FURTHER ASSURANCES - Borrower shall, at its sole expense and without expense to Lender, do, execute, and deliver such further acts and documents as Lender from time to time may require for the purpose of assuring and confirming unto Lender the rights hereby created or intended, now or hereafter so to be, or for carrying out the intention or facilitating the performance of the terms of any Loan Document, or for assuring the validity of any security interest.

7.17 GOVERNING LAW - The Loan shall be deemed to have been made in California, and the Loan Documents shall be governed by and construed and enforced in accordance with the Laws of the State of California.

7.18 SEVERABILITY OF PROVISIONS - Any provision in any Loan Document that is held to be inoperative, unenforceable, or invalid shall be inoperative, unenforceable, or invalid without affecting the remaining provisions, and to this end the provisions of all Loan Documents are declared to be severable.

7.19 JOINT AND SEVERAL OBLIGATIONS - If this Agreement is executed by more than one Person as Borrower, the obligations of each of such Persons hereunder shall be joint and several obligations.

7.20 NO JOINT VENTURE, MANAGEMENT AND CONTROL - Notwithstanding any provision of this Agreement, (i) Lender is not and shall not be construed to be a partner, joint venture, alter ego, manager, controlling person or other business associate or participant of any kind of Borrower and Guarantor, or either of them, or any other person; (ii) Lender shall not be deemed responsible to perform or participate in any acts, omissions, or decisions of Borrower and Guarantor, or either of them; and (iii) Borrower does not have any claims, causes of action or defenses to its obligations to Lender based on any allegations of management or control exercised by Lender. Borrower acknowledges and agrees that Lender does not manage or control it in any way.

7.21 CONSTRUCTION - Whenever the context of this Agreement requires, the singular shall include the plural and the masculine gender shall include the feminine and/or neuter.

7.22 HEADINGS - Article and section headings in this Agreement are included for convenience of reference only and are not part of this Agreement for any other purpose.

7.23 AGENCY – Nothing in this Agreement shall be construed to constitute the creation of a partnership or joint venture between Lender and Borrower. Lender is not an agent or representative of Borrower.

7.24 USA PATRIOT ACT NOTICE – Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account or obtains a loan. Lender will ask for Borrower's legal name, address, tax ID number or social security number and other identifying information. Lender may also ask for additional information or documentation or take other actions reasonably necessary to verify the identity of Borrower, Guarantor or other related persons.

7.25 APPLICATION OF PAYMENTS AND WAIVER OF MARSHALLING RIGHTS - Upon such terms and at such times as Lender considers best and with or without notice to Borrower, and without affecting Borrower's continuing liability under this Agreement or any other Loan Documents, Borrower hereby authorizes Lender to (i) apply any sums received from Borrower, Guarantor, or any other endorser or cosigner, or from the sale or collection of any collateral or its proceeds, to any indebtedness whatsoever under the Loan, in any order and regardless of whether or not such indebtedness is secured by the Deed of Trust, secured by any other collateral, or is otherwise due and payable, (ii) apply any sums received from Borrower or Guarantor, or from the sale of the Property, to all or any portion of the obligations under the Loan, in any order, regardless of whether said obligations are due and payable, and (iii) exercise any right or remedy Lender may have with respect to any obligations under the Loan Documents or any collateral securing any such obligations, the Deed of Trust or any Guaranty, including bidding and purchasing at any sale of any such collateral, and compromising, collecting or otherwise liquidating any collateral or any obligations. In addition, Borrower hereby waives all rights, legal and equitable, it may now or hereafter have to require marshaling of assets or to direct the order in which the Property will be sold, or how the proceeds of any such sale will be allocated, in the event of any sale under the Deed of Trust, including, but not limited to, any and all rights provided by California Civil Code Sections 2899 and 3433, as such Sections may be amended from time to time.

7.26 SALE OF LOAN DOCUMENTS AND PARTICIPATIONS – Lender shall have the right to do any or all of the following at any time without prior notice to or the consent of Borrower or any other Person: (a) to sell, transfer, pledge or assign any or all of the Loan Documents, or any or all servicing rights with respect thereto; and (b) to sell, transfer, pledge or assign participations in the Loan Documents. Lender is authorized to forward or disclose to each purchaser, transferee, assignee, servicer, participant, and any organization maintaining databases on the underwriting and performance of commercial mortgage loans, all documents and information which Lender now has or may hereafter acquire relating to the Loan and to Borrower as Lender determines to be necessary or desirable. Upon Lender's request, Borrower shall

reasonably cooperate with Lender in connection with any of the transactions contemplated by this Section.

7.27 NOTICE OF RIGHT TO COPY OF APPRAISAL REPORT – California Law provides that applicants on loans secured by real estate are entitled to receive a copy of an appraisal report which has been prepared as a result of a property appraisal. If Borrower qualifies and pays for the appraisal, it may request a copy of the appraisal report by writing to the Lender. Such written request must be received by Lender no later than 90 days after (a) Lender provides notice of the action taken on Borrower's loan application, including a notice of incompleteness, or (b) in the case of a withdrawn application, after Borrower withdraws its application. Lender's transmittal of a copy of the appraisal will be conditioned upon Borrower's payment of the cost of the appraisal.

7.28 JUDICIAL REFERENCE. THE PARTIES HEREBY AGREE THAT ANY CLAIMS, CONTROVERSIES, DISPUTES, OR QUESTIONS OF INTERPRETATION, WHETHER LEGAL OR EQUITABLE, ARISING OUT OF, CONCERNING OR RELATED TO THIS AGREEMENT AND ALL LOAN DOCUMENTS EXECUTED BY BORROWER AND GUARANTOR SHALL BE HEARD BY A SINGLE REFEREE BY CONSENSUAL GENERAL JUDICIAL REFERENCE PURSUANT TO THE PROVISIONS OF CALIFORNIA CODE OF CIVIL PROCEDURE SECTS 638 ET SEQ., WHO SHALL DETERMINE ALL ISSUES OF FACT OR LAW AND TO REPORT A STATEMENT OF DECISION. THE REFEREE SHALL ALSO HAVE THE POWER TO HEAR AND DETERMINE PROCEEDINGS FOR ANCILLARY RELIEF, INCLUDING, BUT NOT LIMITED TO, APPLICATIONS FOR ATTACHMENT, ISSUANCE OF INJUNCTIVE RELIEF, APPOINTMENT OF A RECEIVER, AND/OR CLAIM AND DELIVERY. THE COSTS OF THE PROCEEDING SHALL BE BORNE EQUALLY BY THE PARTIES TO THE DISPUTE, SUBJECT TO THE DISCRETION OF THE REFEREE TO ALLOCATE SUCH COSTS BASED ON A DETERMINATION AS TO THE PREVAILING PARTY(IES) IN THE PROCEEDING.

[Initials to follow on next page.]

BY INITIALING BELOW, THE PARTIES ACKNOWLEDGE THAT THEY HAVE READ AND UNDERSTAND THE FOREGOING JUDICIAL REFERENCE PROVISIONS AND UNDERSTAND THAT THEY ARE WAIVING THEIR RIGHT TO A JURY TRIAL.

____________________
Borrower's Initials

C.L.
____________________
Lender's Initials

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, Borrower and Lender have hereunto caused this Agreement to be executed as of the date first above written.

**BORROWER:**

______________________________
ANDREW STUPIN, an individual

Address:

520 Newport Center Drive, Suite 480
Newport Beach, California 92660

**LENDER:**

PREFERRED BANK,
a California banking corporation

By: ______________________________
Name: Carol Lee
Title: Senior Vice President

Address:

601 S. Figueroa Street, 47th Floor
Los Angeles, California 90017
Attn: Note Department

# EXHIBIT "A"
## LEGAL DESCRIPTION

**The land referred to herein is situated in the State of California, County of Los Angeles, City of Pasadena and described as follows:**

Parcel 1-A:

Lot 10 of Tract No. 63103, in the City of Pasadena, as per Map recorded March 15, 2012, in Book 1369 Pages 35 through 52, of Maps in the Office of the County Recorder of said County, amended pursuant to that certain Certificate of Correction recorded December 3, 2013 as Instrument No. 20131708591, of Official Records.

Parcel 1-B:

A reciprocal access easement over those areas set out on the map shown above.

Parcel 1-C:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Consolidated Amended and Restated Driveway Easement agreement (South Orange Grove Parcels) recorded December 5, 2013 as Instrument No. 20131716500, of Official Records, more particularly described as set out therein.

Parcel 1-D:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Rose Parade Grandstand Easement Agreement (Orange Grove Avenue) recorded July 21, 2005 as Instrument Nos. 05-1721787 and as Instrument No. 05-1721788, both of Official Records, more particularly described as set out therein.

Parcel 1-E:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Parking Garage Easement Agreement recorded July 2, 2007 as Instrument No. 20071579026, of Official Records, more particularly described as set out therein.

Parcel 1-F:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Parking Easement Agreement recorded December 28, 2011 as Instrument No. 20111763712, of Official Records, more particularly described as set out therein.

Parcel 2-A:

Lot 12 of Tract No. 63103, in the City of Pasadena, County of Los Angeles, State of California, as per Map recorded March 15, 2012, in Book 1369, Pages 35 through 52 of Maps in the Office of the County recorder of said County, amended pursuant to that certain Certificate of Correction recorded December 3, 2013 as Instrument No. 20131708591, of Official Records.

Parcel 2-B:

A reciprocal access easement over those areas set out on the Map shown above.

Parcel 2-C :

An easement for the purposes herein stated and subject to the terms and provisions of that certain Consolidated Amended and Restated Driveway Easement Agreement (South Orange Grove Parcels) recorded December 5, 2013 as Instrument No. 20131716500, of Official Records, more particularly described as set out therein.

Parcel 2-D:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Amended and Restated Driveway Easement Agreement (Del Mar Parcel) recorded December 5, 2013 as Instrument No. 20131716499, of Official Records, more particularly described as set out therein.

Parcel 2-E:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Rose Parade Grandstand Easement Agreement (Orange Grove Avenue) recorded July 21, 2005 as Instrument No. 05-1721787, and Instrument No. 05-1721788, both of Official Records, more particularly described as set out therein.

Parcel 2-F:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Parking Garage Easement Agreement recorded July 2, 2007 as Instrument No. 20071579026, of Official Records, more particularly described as set out therein.

Parcel 2-G:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Parking Easement Agreement recorded December 28, 2011 as Instrument No. 20111763712, of Official Records, more particularly described as set out therein

APN: 5713-013-057, 5713-027-065

(End of Legal Description)

# Exhibit AA

**This page is part of your document - DO NOT DISCARD**

# 20240011708

Pages: 0029

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**01/05/24 AT 08:00AM**

| | |
|---|---|
| FEES: | 154.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 225.00 |
| PAID: | 379.00 |

LEADSHEET

202401050250033

**00024117450**

014475474

**SEQ:**
**01**

SECURE - 8:00AM

**THIS FORM IS NOT TO BE DUPLICATED**

E405200

2179617

FOR REFERENCE ONLY: 20240011708

Recording Requested by
Stewart Title of California, Inc.

RECORDING REQUESTED BY
AND WHEN RECORDED, MAIL TO:

PREFERRED BANK
601 S. Figueroa Street, 47th Floor
Los Angeles, California 90017
Attention: Note Department

Assessor's Parcel No.: 5713-013-057
5713-027-065

2179617

## DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING

This Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing ("Deed of Trust") is made as of December 13, 2023, by SDRES PARTNERS LLC, a California limited liability company ("Trustor"), whose address is 2549 Eastbluff Drive, Newport Beach, California 92660, to STEWART TITLE OF CALIFORNIA, INC., as Trustee ("Trustee"), for the benefit of PREFERRED BANK, a California banking corporation, as Beneficiary ("Lender").

THIS DEED OF TRUST ALSO CONSTITUTES A FIXTURE FILING UNDER DIVISION 9 OF THE CALIFORNIA UNIFORM COMMERCIAL CODE AND COVERS GOODS WHICH ARE OR ARE TO BECOME FIXTURES ON THE REAL PROPERTY DESCRIBED ON EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF. TRUSTOR IS A RECORD OWNER OF AN INTEREST IN SAID REAL PROPERTY.

**GRANT IN TRUST:**

Trustor irrevocably grants, transfers and assigns to Trustee, in trust, for the benefit of Lender, with power of sale, all of Trustor's interest in that certain real property located in Los Angeles County, California, described as:

[SEE EXHIBIT "A" ATTACHED HERETO AND
INCORPORATED HEREIN BY THIS REFERENCE]

TOGETHER WITH: All right, title and interest which Trustor now has or may later acquire in such real property and all appurtenances, easements, covenants, rights of way, tenements, hereditaments and appurtenances thereunto belonging or in any way appertaining thereto now or hereafter, and all of the estate, right, title, interest, claim, demand, reversion or remainder whatsoever of Trustor therein or thereto, at law or in equity, now or hereafter in possession or expectancy, including, without limitation, all mineral, oil, and gas rights and royalties and profits therefrom, all water and water rights and shares of stock pertaining to water and water rights, and all sewers, pipes, conduits, wires and other facilities furnishing utility or services to the real property (collectively, the "Land");

**Recording Requested by**
**Stewart Title of California, Inc.**

RECORDING REQUESTED BY
AND WHEN RECORDED, MAIL TO:

PREFERRED BANK
601 S. Figueroa Street, 47th Floor
Los Angeles, California 90017
Attention: Note Department

Assessor's Parcel No.: 5713-013-057
5713-027-065

2179617

**DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING**

This Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing ("Deed of Trust") is made as of December 13, 2023, by SDRES PARTNERS LLC, a California limited liability company ("Trustor"), whose address is 2549 Eastbluff Drive, Newport Beach, California 92660, to STEWART TITLE OF CALIFORNIA, INC., as Trustee ("Trustee"), for the benefit of PREFERRED BANK, a California banking corporation, as Beneficiary ("Lender").

THIS DEED OF TRUST ALSO CONSTITUTES A FIXTURE FILING UNDER DIVISION 9 OF THE CALIFORNIA UNIFORM COMMERCIAL CODE AND COVERS GOODS WHICH ARE OR ARE TO BECOME FIXTURES ON THE REAL PROPERTY DESCRIBED ON EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF. TRUSTOR IS A RECORD OWNER OF AN INTEREST IN SAID REAL PROPERTY.

**GRANT IN TRUST:**

Trustor irrevocably grants, transfers and assigns to Trustee, in trust, for the benefit of Lender, with power of sale, all of Trustor's interest in that certain real property located in Los Angeles County, California, described as:

[SEE EXHIBIT "A" ATTACHED HERETO AND
INCORPORATED HEREIN BY THIS REFERENCE]

TOGETHER WITH: All right, title and interest which Trustor now has or may later acquire in such real property and all appurtenances, easements, covenants, rights of way, tenements, hereditaments and appurtenances thereunto belonging or in any way appertaining thereto now or hereafter, and all of the estate, right, title, interest, claim, demand, reversion or remainder whatsoever of Trustor therein or thereto, at law or in equity, now or hereafter in possession or expectancy, including, without limitation, all mineral, oil, and gas rights and royalties and profits therefrom, all water and water rights and shares of stock pertaining to water and water rights, and all sewers, pipes, conduits, wires and other facilities furnishing utility or services to the real property (collectively, the "Land");

TOGETHER WITH: All right, title and interest which Trustor now has or may later acquire in and to all buildings, structures and improvements now or hereafter erected on the Land, including, without limitation, all plant equipment, apparatus, machinery and fixtures of every kind and nature whatsoever now or hereafter located on or forming part of said buildings, structures and improvements (collectively, the "Improvements"; the Land and Improvements being hereinafter sometimes collectively referred to as the "Premises");

TOGETHER WITH: All right, title and interest which Trustor now has or may later acquire in and to the land lying in the bed of any street, road, highway or avenue now or hereafter in front of or adjoining the Premises;

TOGETHER WITH: Any and all awards heretofore or hereafter made by any governmental authorities (federal, state, local or otherwise) to Trustor and all subsequent owners of the Premises which may be made with respect to the Premises as a result of the exercise of the right of eminent domain, the alteration of the grade of any street or any other injury to or decrease of value of the Premises, which said award or awards are hereby assigned to Lender;

TOGETHER WITH: Any and all unearned premiums accrued, accruing or to accrue, and the proceeds of insurance now or hereafter in effect with respect to all or any portion of the Premises;

TOGETHER WITH: Any and all claims or demands which Trustor now has or may hereafter acquire against anyone with respect to any damage to all or any portion of the Premises;

TOGETHER WITH: Any and all claims under and proceeds of any insurance policies by reason of or related to a loss of any kind sustained to the Premises, now or hereafter, whether or not such policies name Lender as an insured and whether or not such policies are required by Lender, and whether or not such claims thereunder are characterized as personal claims;

TOGETHER WITH: All goods, equipment, machinery, furniture, furnishings, trade fixtures, appliances, inventory, building materials, apparatus, utensils, vehicles, wiring, pipes, conduits, elevators, escalators, heating and air conditioning equipment, chattels and articles of personal property, including, without limitation, any interest therein now or at any time hereafter affixed to, attached to or used in any way in connection with or to be incorporated at any time into the Premises or placed on any part thereof wheresoever located, whether or not attached to or incorporated in the Premises, together with any and all accessions, accessories, attachments, and replacements thereof, appertaining and adapted to the complete and compatible use, enjoyment, occupancy, operation or improvement of the Premises;

TOGETHER WITH: All instruments, investment property, deposit accounts, accounts, contract rights, general intangibles, and other intangible property and rights now or hereafter relating to the foregoing property, or the operation thereof or used in connection

therewith, including, without limitation, all options, letters of intent, and rights of first refusal of any nature whatsoever, covering all or any portion of such property, together with any modifications thereof, and deposits or other payments made in connection therewith, existing and future development rights, permits and approvals, air rights, density bonus rights, and transferable development rights; all of Trustor's right, title, and interest in and to any awards, remunerations, settlements, or compensation heretofore made or hereafter made by any and all courts, boards, agencies, commissions, offices, or authorities, of any nature whatsoever for any governmental unit (federal, state, local or otherwise) to the present or any subsequent owner of the foregoing property, including those for any vacation of, or change of grade in, any streets affecting the foregoing property and any and all licenses and privileges obtained by Trustor from non-governmental sources;

TOGETHER WITH: All leases of the Premises, Personalty, Fixtures, or any part thereof, now or hereafter entered into and all right, title and interest of Trustor thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the lessees of their obligations thereunder (whether such cash or securities are to be held until the expiration of the terms of such leases or applied to one or more of the installments of rent coming due immediately prior to the expiration of such terms); all other rights and easements of Trustor now or hereafter existing pertaining to the use and enjoyment of the Premises; and all right, title and interest of Trustor in and to all declarations of covenants, conditions and restrictions as may affect or otherwise relate to the Premises;

TOGETHER WITH: All permits, plans, licenses, specifications, subdivision rights, security interests, contracts, contract rights, public utility deposits, prepaid sewer and water hook-up charges, or other rights as may affect or otherwise relate to the Property (as hereinafter defined) ;

TOGETHER WITH: All rents, income, issues and profits (subject, however, to the rights given in this Deed of Trust to Lender to collect and apply same), including, without limitation, the accounts, revenues, and proceeds of any business operation conducted by or on behalf of Trustor on or through the use of the Premises, prepaid municipal and utility fees, bonds, revenues, income, and other benefits to which Trustor may now or hereafter be entitled to, or which are derived from, the Property or any portion thereof or interest therein.

The foregoing listing is intended only to be descriptive of the property encumbered hereby, and not exclusive or all inclusive. It is the intent of Trustor to encumber hereby all property located or to be located upon the above-described real property. Said real property (or the leasehold estate if this Deed of Trust encumbers a leasehold estate), buildings, improvements, appurtenances, Fixtures, Personalty, additions, accretions, and other property are herein referred to as the "Property." As used herein, the term "Fixtures" shall include all articles of personal property hereinabove described, now or hereafter attached to, placed upon for a definite term, or otherwise used in connection with the Property, and shall include trade fixtures and goods which are or are to become fixtures. As used herein, the term "Personalty" shall include all furniture, furnishings,

equipment, machinery, goods, contract rights, general intangibles, money, deposit accounts, instruments, accounts, leases, chattel paper and other personal property described in this Deed of Trust (other than Fixtures) of any kind or character now existing or hereafter arising or acquired, now or hereafter located upon, within or about the Property, or which otherwise pertains to the use, ownership, management, operation, construction, leasing and sale of the Property, and all products and proceeds thereof, and all of Trustor's right, title, and interest in and to all such property.

Trustor makes the foregoing grant to Trustee, and to Lender, as applicable, to hold the Property in trust for the benefit of Lender and for the purposes and upon the terms and conditions hereinafter set forth.

**FOR THE PURPOSE OF SECURING:**

(1) Payment of the obligations under a Secured Continuing Guaranty of even date herewith, executed by Trustor in favor of Lender ("Guaranty"), which Guaranty guarantees the obligations of ANDREW STUPIN, an individual ("Borrower"), under that certain (i) Promissory Note of even date herewith by Borrower and in favor of Lender in the original maximum principal amount of $400,000.00 (together with any and all other amendments thereto or modifications thereof, the "Note"), and (ii) Loan Agreement of even date herewith, by and between Borrower and Lender (together with any and all amendments thereto or modifications thereof, the "Agreement"). The Note and Agreement evidence a non-revolving line of credit made by Lender to Borrower in the maximum amount of $400,000.00.

(2) Performance of each and every term, covenant and condition of the Guaranty, including all modifications, renewals or extensions thereof;

(3) Payment of all other sums, with interest, advanced, paid, or incurred by Lender or Trustee under the terms of this Deed of Trust to protect the Property or Lender's security interest therein;

(4) Payment of such additional sums, with interest, as the then record owner of the Property may later borrow from Lender, in those instances in which the later obligations are evidenced by a promissory note or notes reciting that it or they are so secured (which additional obligations shall be referred to as "future advances" in this Deed of Trust); and

(5) Trustor's performance of each agreement in this Deed of Trust.

**TRUSTOR AND LENDER AGREE AS FOLLOWS:**

**RIGHTS AND DUTIES OF THE PARTIES:**

(1) PAYMENT AND PERFORMANCE BY TRUSTOR; TITLE: Trustor represents and warrants to and for the benefit of Lender and Trustee that Trustor holds good and marketable title of record to the Property in fee simple. Trustor shall promptly: (a) perform each and every term, covenant and condition of this Deed of Trust and any

other obligation secured by this Deed of Trust; and (b) pay when due all sums payable under the Guaranty.

(2) PAYMENT BY TRUSTOR OF TAXES AND OTHER IMPOSITIONS: The term "Taxes" shall mean all taxes, bonds and assessments, both general and special, affecting or levied upon the Property or any part thereof, assessments on water company stock, if any, all taxes or excises levied or assessed against Trustor, the Property, or any part thereof, in addition to or as a substitution in whole or in part for any real estate taxes or assessments, all taxes or excises measured by or based in whole or in part upon the rents, operating income, or any other factor relating to the Property, or any part thereof, and all license fees, taxes and excises imposed upon Lender (but not any federal or state income taxes imposed upon Lender) and measured by or based in whole or in part upon the obligations secured hereby. The term "Other Impositions" shall mean any fine, fee, charge, or other imposition in connection with the Property or Trustor, payment of which Lender shall deem to be necessary to protect, preserve, and defend Lender's interests hereunder. Trustor shall pay all Taxes, insurance premiums, and Other Impositions attributable to the Property, at least five (5) days before delinquency directly to the payee thereof, or in such other manner as Lender may designate in writing. Trustor shall promptly furnish to Lender all notices of amounts due under this paragraph, and if Trustor shall make payment directly, Trustor shall furnish to Lender receipts evidencing payments of Taxes at least five (5) days before delinquency and shall promptly deliver to Lender receipts evidencing all other payments above required.

Notwithstanding the foregoing, Trustor shall not be required to pay any of the Taxes or Other Impositions, so long as Trustor shall in good faith, and at its cost and expense, contest the amount or validity thereof, or take other appropriate action with respect thereto, in good faith and in an appropriate manner or by appropriate proceedings; provided that (a) such proceedings operate to prevent the collection of, or other realization upon, such Taxes or Other Impositions so contested, (b) there will be no sale, forfeiture or loss of the Property during the contest, (c) neither Lender nor Trustee is subjected to any claim against it as a result of such contest, and (d) Trustor sets aside adequate reserves and provides any other assurances as Lender may require of its ability to pay such Taxes or Other Impositions in the event Trustor is unsuccessful in its contest. Each such contest shall be promptly prosecuted to final conclusion or settlement, and Trustor shall indemnify and save Lender and Trustee harmless against all claims in connection therewith. Promptly after the settlement or conclusion of such contest or action, Trustor shall pay and discharge the amounts which shall be levied, assessed or imposed or determined to be payable, together with all penalties, fines, interests, costs and expenses in connection therewith.

At the request of Lender, or otherwise upon written agreement between Trustor and Lender, or as provided by applicable law, Trustor shall pay to Lender, on each day on which monthly installments of principal and/or interest are payable under the Note, until the Note is paid in full, an amount equal to one-twelfth (1/12) of the sum of annual Taxes and Other Impositions, together with annual insurance premiums on all policies of insurance required by this Deed of Trust, plus additional amounts reasonably estimated by Lender for the purpose of paying future installments of Taxes, Other Impositions, and

insurance premiums. In such event, Trustor further agrees to cause all bills, statements, or other documents relating to Taxes, Other Impositions, and insurance premiums to be sent or mailed directly to Lender. Upon receipt of such bills, statements, or other documents, and provided Trustor has deposited sufficient funds with Lender pursuant to this paragraph (2), Lender shall pay such amounts as may be due thereunder out of the funds so deposited with Lender for that purpose, subject to Lender's rights to seize and apply said funds to satisfy, in whole or in part, any default by Trustor. If at any time and for any reason the funds deposited with Lender are or will be insufficient to pay such amounts as may then or subsequently be due, Lender shall notify Trustor and Trustor shall immediately deposit an amount equal to such deficiency with Lender. Notwithstanding the foregoing, nothing contained herein shall cause Lender to be deemed a trustee of said funds or to be obligated to pay any amounts in excess of the amount of funds deposited with Lender pursuant to this paragraph (2). Lender shall not be obligated to pay or allow any interest on any sums held by Lender pending disbursement or application hereunder, and Lender may impound or reserve for future payment of Taxes, Other Impositions, and insurance such portion of such payments as Lender may in its reasonable discretion deem proper, applying the balance on the principal of or interest on the obligations secured hereby. Should Trustor fail to deposit with Lender (exclusive of that portion of said payments which has been applied by Lender on principal of or interest on the indebtedness secured hereby) sums sufficient to fully pay such Taxes, Other Impositions, or insurance premiums, at least ten (10) days before delinquency thereof, Lender may, at Lender's election, but without any obligation so to do, advance any amounts required to make up the deficiency, which advances, if any, shall be secured hereby and shall be repayable to Lender as herein elsewhere provided, or at the option of Lender the latter may, without making any advance whatever, apply any sums held by it upon any obligation of Trustor secured hereby. Upon the occurrence and during the continuance of a default on the part of Trustor in the payment or performance of any of Trustor's obligation in connection with the above Guaranty, Lender may, at Lender's option, apply any sums or amounts in its possession or under its control, received pursuant hereto or as rents or income of the Property or otherwise, upon any indebtedness or obligation of the Trustor secured hereby in such manner and order as Lender may elect. The receipt, use or application of any such sums paid by Trustor to Lender hereunder shall not be construed to affect the maturity of any indebtedness secured by this Deed of Trust or any of the rights or powers of Lender or said Trustee under this Deed of Trust or any other obligation secured hereby.

In the event of the passage, after the date of this Deed of Trust, of any law or judicial decision deducting from the value of the Property for the purposes of taxation any lien thereon, or changing in any way the laws now in force for the taxation of deeds of trust or obligations secured by deeds of trust, or the manner of operation of any such Taxes so as to adversely affect the interest of Lender, or imposing payment of the whole or any portion of any Taxes upon Lender, then and in such event, Trustor shall bear and pay the full amount of such Taxes; provided that if for any reason payment by Trustor of any such new or additional Taxes would be unlawful or if the payment thereof would constitute usury or render the Guaranty, or other indebtedness secured hereby, wholly or partially usurious under any of the terms or provisions of the Guaranty, or this Deed of Trust, or otherwise, Lender may, at its option, upon thirty (30) days' written notice to

Trustor, (i) declare the whole indebtedness secured by this Deed of Trust, together with accrued interest thereon, to be immediately due and payable, or (ii) pay that amount or portion of such Taxes as render the Guaranty, or other indebtedness secured hereby, unlawful or usurious, in which event Trustor shall concurrently therewith pay the remaining lawful nonusurious portion or balance of such Taxes.

(3) TRUSTOR TO PAY GROUND RENTS AND OBLIGATIONS THAT COULD RESULT IN LIENS ON THE PROPERTY: Trustor shall fully and faithfully pay and perform each and every obligation, and otherwise satisfy all conditions and covenants, which are or may be secured by any deed of trust upon the Property, or any portion thereof, existing of record as of the date this Deed of Trust is recorded. Trustor shall pay at or prior to maturity any and all ground rents and any liens, charges and encumbrances that are, later become, claim to be or appear to Lender to be prior or superior to the lien of this Deed of Trust, including, without limiting the generality of the foregoing, any and all claims for (a) work or labor performed, (b) materials and services supplied in connection with any work of demolition, alteration, improvement of or construction upon the Property, and (c) fees, charges and liens for utilities provided to the Property.

(4) TRUSTOR TO MAINTAIN INSURANCE: (a) Trustor shall maintain insurance covering the Property against loss or damage by fire, earthquake and other risks as shall from time to time be required by Lender as necessary to protect the security interest of Lender in the Property. The insurance shall be maintained with such companies, in such amounts, for such terms, and in form and content satisfactory to Lender, in Lender's reasonable opinion and judgment. Lender shall be named as the primary loss payee under all of the insurance policies, and Trustor shall assure that Lender receives a certificate from each insurance company that acknowledges Lender's position as loss payee and that states that the insurance policy cannot be terminated as to Lender except upon thirty (30) days' prior written notice to Lender. Such policies of insurance shall include, without limitation, the following: (i) insurance against loss or damage to the Property (including contents) by fire or other risk embraced by coverage of the type known as the broad form or extended coverage (or special extended coverage) in the amount required by Lender, but in no event less than one hundred percent (100%) of the full replacement cost of the Improvements, Fixtures and Personalty included within the Property without deduction for depreciation of any kind or the unpaid balance of the Note, whichever is greater, (ii) insurance against the loss of rental value of the Property on a "rented or vacant basis," including business interruption insurance, arising out of the perils insured against pursuant to clause (i) above in the amount required by Lender, but in no event less than one (1) year's gross rental income and other revenues from the Property, and (iii) comprehensive general liability insurance against claims for personal injury, death, or property damage occurring on, in, or about the Property, or arising from or connected with the use, conduct, or operation of Trustor's business in the amount from time to time required by Lender. (b) If such insurance, together with written evidence of the premium having been paid, are not delivered to Lender at least five (5) days prior to the expiration of such insurance, Lender shall have the right, but without obligation to do so, without notice to or demand upon Trustor and without releasing Trustor from any obligation under this Deed of Trust, to obtain such insurance or like insurance through or

from any insurance agency or company acceptable to it, pay the premium for such insurance, and add the amount of the premium to the Guaranty secured by this Deed of Trust, and this amount shall bear interest at the applicable rate of interest set forth in the Note. Neither the Trustee nor Lender shall be responsible for such insurance or for the collection of any insurance monies, or for any insolvency of any insurer or insurance underwriter. (c) In the event that the Property is sold to Lender at any trustee's sale under this Deed of Trust (see paragraph 17, below), Trustor hereby assigns to Lender all unearned premiums on all policies of insurance covering the Property and agrees that any and all unexpired insurance covering the Property shall inure to the benefit of and pass to Lender at the time of such Trustee's sale.

(5) INSURANCE PROCEEDS, CONDEMNATION PROCEEDS AND OTHER RECOVERIES: (a) All settlements, awards, damages and proceeds received by Trustor or any other person under any fire, earthquake or other hazard insurance policy, for losses existing as of or occurring after the effective date of this Deed of Trust, or in connection with any condemnation for public use of or injury to the Property (or any part of or interest in the Property) are assigned to Lender and may, at the option of Lender, be applied by Lender as provided in section (c) of this paragraph (5). (b) All causes of action, whether accrued before or after the date of this Deed of Trust, of any type for any damage or injury to the Property (or any portion of or interest in the Property), or in connection with the sale or other transaction being financed by the funds that are secured by this Deed of Trust, or in connection with or affecting the Property (or any portion of or interest in the Property), including causes of action arising in tort or contract and causes of action in fraud or concealment of a material fact, are assigned to Lender, and the proceeds of any such causes of action may, at the option of Lender, be applied by Lender as provided in section (c) of this paragraph (5). Lender may, at its option, appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement of any such action or proceeding. Trustor agrees to execute such further assignments of any settlements, awards, damages and causes of action as Lender from time to time may request. (c) Settlements, awards, proceeds and damages (collectively, "Awards") received by Lender under the provisions of section (a) and section (b) of this paragraph (5), at the option of Lender, may (i) if a default has occurred hereunder and is continuing or if Lender determines its security hereunder has been materially impaired be applied by Lender to the outstanding balance due on the Guaranty, or any other obligation secured by this Deed of Trust, in such order as Lender may determine; (ii) be used by Lender, without reducing the principal balance of the Guaranty or any other obligation secured by this Deed of Trust, to replace, restore or reconstruct the Property to a condition satisfactory to Lender; or (iii) any such amount may be divided in any manner among any such application, use or release. Awards received by Lender under the provisions of section (a) and section (b) of this paragraph (5) may, at the option of Lender, be released to Trustor to replace, restore or reconstruct the Property to a condition satisfactory to Lender in the event that Lender's security interest has not been materially impaired thereby in the reasonable opinion of Lender, and provided no default under paragraph (14) exists. No such application, use or release of the Award shall cure or waive any default or notice of default under this Deed of Trust or invalidate any act done pursuant to such notice.

(6) MAINTENANCE AND PRESERVATION OF THE PROPERTY:

(a) Trustor shall: (i) keep the Property, and every portion thereof, in good condition and repair and replace from time to time, or at any time, any Fixtures, Personalty or other items comprising the Property which may become obsolete or worn out, with Fixtures, Personalty or other items of at least the same utility, quality and value, each such replacement to be free of any liens or security interests of any kind or character other than the lien of this Deed of Trust, or any other document or instrument securing the indebtedness hereunder; (ii) not remove or demolish the Property, or any part thereof; (iii) complete or restore promptly and in good and workmanlike manner the Property, or any part thereof, which may be damaged or destroyed, so long as Lender makes available to Trustor any insurance proceeds which arise from or in connection with such damage or destruction and which have been received by Lender; (iv) comply with and not suffer violations of (A) any and all laws, ordinances, rules, regulations, standards and orders, including, without limitation, making any alterations or additions required to be made to, or safety appliances and devices required to be installed or maintained in or about, the Property, or any portion thereof, under any such laws, ordinances, rules, regulations, standards or orders now or hereafter adopted, enacted or made applicable to the Property, or any portion thereof, and payment of any fees, charges or assessments arising out of or in any way related to treatment of the Property, or any portion thereof, as a source of air pollution, traffic, storm water runoff, or other adverse environmental impacts or effects, and (B) any and all covenants, conditions, restrictions, equitable servitudes and easements, whether public or private, of every kind and character, and (C) any and all requirements of insurance companies and any bureau or agency which establishes standards of insurability, which laws, covenants or requirements affect the Property and/or pertain to acts committed or conditions existing thereon, or the use, management, operation or occupancy thereof by Trustor and anyone holding under Trustor, including (but without limitation) such work of alteration, improvement or demolition as such laws, covenants or requirements mandate; (v) not commit or permit waste of the Property, or any portion thereof; (vi) do all other acts which from the character or use of the Property may be reasonably necessary to maintain, preserve and enhance its value, including, without limitation, keeping all plants, lawns and other landscaping in a good and thriving condition, and otherwise performing such appropriate upkeep and maintenance to the Property to insure that the Property, and each part thereof, is maintained in a first-class manner and retains at all times a first-class appearance and condition, such upkeep to include, without limitation, appropriate measures to protect wood, stucco and concrete surfaces from weathering, deterioration and aging, and to protect from and immediately remove graffiti or other defacement from such surfaces; (vii) perform all obligations required to be performed in leases or conditional sales or like agreements affecting the Property or the operation, occupation or use thereof (and, if not previously assigned, upon the occurrence and during the continuance of a default hereunder, all right, title and interest of Trustor under any such leases, conditional sales or like agreements shall be automatically assigned to Lender hereunder, together with any deposits made in connection therewith); (viii) make payment of any and all charges, assessments or fees imposed in connection with the delivery, installation or maintenance of any utility services or installations on, to or for the Property, or any portion thereof; (ix) not create any deed of trust, liens or encumbrances upon the Property subsequent hereto, the parties

hereby having specifically bargained in contemplation of the fact that any subsequent encumbrance upon the Property would adversely affect Lender's security interests hereunder; (x) make no further assignment of rents of the Property; and (xi) execute and, where appropriate, acknowledge and deliver such further documents or instruments as Lender or Trustee deem necessary or appropriate to preserve, continue, perfect and enjoy the security provided for herein, including (but without limitation) assignments of Trustor's interest in leases of the Property.

(b) Trustor shall not undertake or suffer to be made pursuant to section (a) of this paragraph (6), any material alterations, additions, repairs, expansions, relocations, remodeling or demolition of, or structural or other material changes in, any Improvements, Fixtures or Personalty comprising the Property, without the prior written consent of Lender, which consent shall not be unreasonably withheld, delayed or conditioned. No material changes are to be made in any plans and/or specifications as approved by Lender without Lender's prior written consent, which consent shall not be unreasonably withheld, delayed or conditioned. All such work shall be performed promptly and in good and workmanlike manner, using first quality materials in conformity with plans and specifications reasonably approved in advance by Lender, and shall be diligently prosecuted to completion free of liens and encumbrances, other than this Deed of Trust and any other document or instrument evidencing or securing the indebtedness secured hereby.

(c) Without limiting the generality of this paragraph (6), Trustor hereby warrants, represents and covenants to Lender that Trustor and the Property presently, to the best of Trustor's knowledge, comply with, and will in the future comply fully with, all applicable federal, state and local laws, ordinances, rules and regulations, and all permits and approvals issued thereunder, affecting Trustor's qualification to do business, the construction of any improvements to be located upon the Property, the sale, operation, leasing or financing of the Property and the intended occupancy, use and enjoyment thereof, including, but not limited to, all applicable subdivision laws, licenses and permits, building codes, zoning ordinances, environmental protection laws, flood disaster laws, and all laws pertaining to industrial hygiene and the environmental conditions on, under or about the Property, including, but not limited to, soil and groundwater condition. Trustor further warrants, represents and covenants that Trustor does not presently, and will not in the future, use, store, manufacture, generate, transport to or from, or dispose of any toxic substances, hazardous wastes, radioactive materials, flammable explosives or related material on or in connection with the Property or the business of Trustor on the Property; except as are described in Exhibit "B" attached hereto and incorporated herein, and which are used, stored or maintained in full and complete compliance with all such laws ("Permitted Toxic Materials"). Trustor further warrants, represents and covenants to Lender that Trustor does not presently, and will not, permit any lessee or other user of the Property to use, store, manufacture, generate, transport to or from, release or dispose of any toxic substances, hazardous materials, hazardous wastes, radioactive materials, flammable explosives or related materials on or in connection with the Property or the business of said lessee or other user of the Property. Trustor further warrants, represents and covenants to Lender that as to the Permitted Toxic Materials, Trustor shall obtain and continue to maintain all necessary

permits and approvals for the Permitted Toxic Materials, and comply with all laws, ordinances, rules and regulations, and all permits and approvals issued thereunder, pertaining thereto. ("Toxic substances," "hazardous materials" and "hazardous wastes" shall include, but not be limited to, such substances, materials and wastes which are or become regulated under applicable federal, state or local laws, ordinances, rules or regulations.) Without the prior written consent of Lender, which consent shall not be unreasonably withheld, delayed or conditioned, Trustor shall not seek, make or consent to any change in the zoning, conditions of use, or any other applicable land use permits, approvals or regulations pertaining to the Property, or any portion thereof, which would constitute a violation of the warranties, representations and covenants herein contained, or would otherwise materially impair the ability of Trustor to complete construction of any improvements now underway or to be constructed, constituting the Property, or would change the nature of the use or occupancy of the Property. Within five (5) days of (i) any contact from any federal, state, or local governmental agency concerning any environmental protection laws, including, but not limited to, any notice of any proceeding or inquiry with respect to the presence of any hazardous wastes, toxic substances or hazardous materials on the Property or the migration thereof from or to other property, (ii) any and all claims made or threatened by any third party against or relating to the Property concerning any loss or injury resulting from toxic substances, hazardous wastes, or hazardous materials, or (iii) Trustor's discovery of any occurrence or condition on any property adjoining or in the vicinity of the Property that could cause the Property, or any part thereof, to be subject to any restrictions on the ownership, occupancy, transferability, or loss of the Property under any federal, state, or local laws, ordinances, rules, or regulations, Trustor shall deliver to Lender a report regarding such contact and setting forth in detail and describing any action which Trustor proposes to take with respect thereto, signed by Trustor.

(d) If Trustor has executed any unsecured agreement regarding hazardous materials containing any warranties and/or indemnities by Trustor in favor of Lender pertaining to the presence or release of hazardous and/or toxic materials or other similar substances upon, within or from the Property (hereinafter "Hazardous Substances Indemnity"), then the covenants, duties, and liabilities of Trustor, and the rights and remedies of Lender with respect to the subject of hazardous and/or toxic materials, shall be governed by the provisions of the Hazardous Substances Indemnity in addition to the provisions of this Deed of Trust; provided, however, that the provisions of the Hazardous Substances Indemnity shall prevail and exclusively govern the subject matter to the extent of any duplication, conflict or inconsistency between such provisions and the provisions of this Deed of Trust, and payment or performance of Trustor's obligations under said Hazardous Substances Indemnity shall not be secured by this Deed of Trust but shall be and remain unsecured obligations of the Trustor, unless expressly otherwise therein provided.

(e) Trustor shall deliver to Lender such affidavits, reports, certificates or other written instruments as may be requested by Lender, in Lender's reasonable opinion and judgment, pertaining to Trustor's compliance with this paragraph (6). Lender may conclusively assume that the statements, facts, information and representations contained herein and/or in any affidavits, orders, receipts or other written

instruments that are filed with Lender or exhibited to it, are true and correct. Lender may rely thereon without any investigation or inquiry. By accepting or approving anything required to be observed, performed, fulfilled, or given to Lender pursuant to this paragraph (6), Lender shall not be deemed to have warranted or represented the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision or condition thereof, or of Trustor's compliance with the terms of this Deed of Trust, and such acceptance or approval thereof shall not be or constitute any warranty or representation to anyone with respect thereto by Lender.

(7) LEGAL ACTIONS AND PAYMENT OF RELATED COSTS: Trustor shall appear in and defend any action or proceeding that may, in the Lender's reasonable judgment, affect the Lender's security interest under this Deed of Trust or any of the rights or powers of Lender or Trustee under this Deed of Trust. Whether or not Trustor so appears or defends, Trustor shall pay all costs and expenses, including, without limitation, cost of evidence of title and attorneys' fees, that are incurred by Trustor, Lender or Trustee in any such action or proceeding in which Lender or Trustee may appear, by virtue of being made a party defendant or otherwise, and irrespective of whether the interest of Lender or Trustee in the Property is directly questioned by such action or proceeding or whether Lender's rights or interests are otherwise adversely affected thereby, or whether Lender is or shall become a party, including by way of intervention. Trustor promises and agrees to give Lender notice in writing of the pendency of any such action or proceeding promptly, but in any event no later than five (5) days, after Trustor first obtains knowledge of the pendency of such action or proceeding. Trustor shall cooperate with Lender in any action that is brought by Lender to protect its security interest under this Deed of Trust. Trustor will, upon demand by Lender, commence any action or proceeding required to protect or facilitate Lender's recovery of Awards under paragraph (5) of this Deed of Trust. If Trustor fails to bring any such action or proceeding, then Lender may, but need not, do so, and Trustor shall pay to Lender all costs, expenses and attorneys' fees that are incurred by Lender in doing so. Whenever, under this Deed of Trust, or any other document or instrument evidencing or securing the indebtedness secured hereby, Trustor is obligated to appear in and defend Lender or defend or prosecute any action or proceeding, Lender shall have the right of full participation in any such action or proceeding, with counsel of Lender's choice, and all costs and expenses incurred by Lender in connection with such participation (including, without limitation, attorneys' fees) shall be reimbursed by Trustor to Lender immediately upon demand. In addition, Lender shall have the right to approve any counsel retained by Trustor in connection with the prosecution or defense of any such action or proceeding by Trustor. All costs or expenses required to be reimbursed by Trustor to Lender hereunder shall, if not paid upon demand by Lender, thereafter bear interest at the applicable rate of interest set forth in the Note. As used herein, "proceeding" shall include litigation (whether by way of complaint, answer, cross-complaint, counter claim or third party claim), arbitration and administrative hearings or proceedings, and shall include commencement of any case or the filing of any petition for relief or other action under any Chapter of the U.S. Bankruptcy Code.

(8) LENDER'S RIGHTS TO INSPECT THE PROPERTY: Lender and its agents, employees and contractors, may enter upon the Property at any time to inspect

the Property for any purpose relating to Lender's rights and interests under the terms of this Deed of Trust, including, but not limited to, Trustor's compliance with the terms of paragraph (6).

(9) SUBSTITUTION OF TRUSTEE: From time to time, by an instrument signed and acknowledged by Lender, and recorded in the Office of the Recorder of the County in which the Property is located, Lender may appoint a substitute trustee or trustees in place of the Trustee. Such instrument shall refer to this Deed of Trust and shall set forth the date and instrument number or book and page of its recordation. Upon recordation of such instrument, the Trustee shall be discharged and the new trustee so appointed shall be substituted as Trustee under this Deed of Trust with the same effect as if originally named Trustee in this Deed of Trust. An instrument recorded pursuant to the provisions of this paragraph (9) shall be conclusive proof of the proper substitution of such new Trustee.

(10) MISCELLANEOUS POWERS OF LENDER AND TRUSTEE: In addition to any other powers granted in this Deed of Trust to the Trustee, from time to time, upon the written request of Lender and upon the presentation of this Deed of Trust and any obligation secured by this Deed of Trust for endorsement, and without affecting any obligation secured by this Deed of Trust or the performance of the obligations set forth in this Deed of Trust, the Trustee may, without liability and without notice to any person: reconvey all or any part of the Property to Trustor, consent to the making of any map or plat of the Property, join in granting any easement on the Property, join in any agreement subordinating the lien of this Deed of Trust, release any obligation secured by this Deed of Trust, in whole or in part, with regard to any Trustor, extend or renew the Guaranty or any other obligation secured by this Deed of Trust, accept or release any additional security under this Deed of Trust, or accept and release the guaranty of any additional person or any obligation secured by this Deed of Trust.

(11) ASSIGNMENT AND COLLECTION OF RENTS: (a) Trustor hereby assigns absolutely to Lender the rents of the Property, provided that Trustor shall have a revocable license to collect such rents as they become due and payable, prior to any default by Trustor under paragraph (14) of this Deed of Trust. (b) Upon any default by Trustor under paragraph (14) of this Deed of Trust and during the continuance thereof, such license will, automatically, be deemed revoked without the necessity for any act or notice by Lender, and Lender, in person, by agent or by judicially appointed receiver, shall be entitled to enter upon, take possession of and manage the Property and may collect the rents of the Property, and, after so taking possession, shall be entitled to collect any rents that are past due. Lender has, however, no duty to produce rents from the Property nor any responsibility for pursuing or collecting claims or rights of Trustor. If Trustor, at or immediately prior to such taking of possession by or on behalf of Lender, has operated a business upon the Property other than the rental thereof, the authority granted herein to so take possession of the Property shall also include the authority and power to take possession of the receipts of such business and, if appropriate, to operate such business, and the receipts thereof shall be deemed herein to be a form of rents. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and of collection of rents, including, but not limited to, costs

and expenses of any receivership and attorneys' fees incurred by Lender in connection with the receivership, and then to the Guaranty and any other obligations secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received. (c) At any time, whether or not an event of default exists under this Deed of Trust, or any other agreement or obligation secured by this Deed of Trust, Trustor shall, on demand, deliver to Lender from time to time all security deposits made by lessees to Trustor under the terms of any lease of all or part of the Property. These funds shall be held by Lender without interest payable to Trustor and as a part of and commingled with Lender's general funds. These funds, however, will be repayable to lessees pursuant to the provisions of the leases under which security deposits are made. In the event of any conflict between the provisions of this paragraph (11) and the provisions of a specific separate assignment of rents and/or assignment of lease(s), the provisions of the specific assignment(s) shall be deemed to govern over the provisions of this paragraph.

(12) RECONVEYANCE OF THE PROPERTY: Upon the written request of Lender stating that the Guaranty and all other obligations secured by this Deed of Trust have been discharged, and upon surrender of this Deed of Trust, the Guaranty or any other notes or instruments evidencing such other obligations to the Trustee, and upon payment of the Trustee's fees, the Trustee shall reconvey, without warranty, the Property or that portion of the Property then held by the Trustee under this Deed of Trust. The recitals in any such reconveyance of any matters or facts shall be conclusive proof of the truthfulness of such matters or facts. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." When the Property has been fully reconveyed, the last such reconveyance shall operate as a reassignment of all of the rents of the Property to the person or persons legally entitled to such rents. Five (5) years after issuance of such full reconveyance, the Trustee may destroy this Deed of Trust and any such notes, unless directed in such request to retain them.

(13) CHANGE OF LENDER'S RECORDS: In the event Trustor requests Lender to change any of its records relating to the Property, the Guaranty or this Deed of Trust (including, but not limited to, changes in mailing address or ownership of the Property), Trustor shall pay a fee prescribed by the Lender to so change its records.

**ACCELERATION AND DEFAULT:**

(14) CONDITIONS UNDER WHICH LENDER MAY DECLARE A DEFAULT BY TRUSTOR: A default under this Deed of Trust shall occur in the event that: (a) subject to any applicable grace, notice or cure periods, if any, provided for in the Agreement, Trustor fails to pay when due: (i) any sum payable under the Guaranty in accordance with the terms thereof; or (ii) any sum the payment of which is required or secured by this Deed of Trust; (b) subject to any applicable grace, notice or cure periods, if any, provided for in the Agreement, Trustor fails to perform any other obligation required to be performed by Trustor under this Deed of Trust or secured by this Deed of Trust; (c) the Property is or becomes subject to any proceedings for abatement of a public nuisance; (d) any material information given to Lender by Trustor, intended to or which does, in fact, induce the granting of any loan, was not true in any respect when given, or

any material information requested or required by Lender is withheld or concealed by Trustor; or (e) there is an Event of Default under the Agreement and/or a default under the Guaranty.

(15) LENDER'S RIGHT TO REQUIRE IMMEDIATE PAYMENT IN FULL: In the event: (a) of a default under this Deed of Trust, or (b) Trustor sells, transfers, grants, hypothecates, conveys, encumbers, alienates, or assigns (voluntarily, involuntarily, or by operation of law), enters into a contract of sale of, or leases, the Property, or any portion of the Property or any interest therein not expressly permitted in the Agreement, or any interest in Trustor not expressly permitted in the Agreement, Lender may, at its option and without further notice to any person, declare the entire principal balance and any other obligations under the Guaranty and/or any other obligations secured by this Deed of Trust, together with accrued interest thereon and any prepayment penalties, immediately due and payable. Trustor shall provide to Lender a complete and exact duplicate copy of any contract providing for the transfer of any interest in the Property, or any deed of trust or similar instrument creating a lien or encumbrance on the Property, immediately upon the execution of any such contract, deed of trust, or other instrument. No waiver of the Lender's right to accelerate shall be effective unless it is in writing.

(16) LENDER'S RIGHT TO PERFORM ACTS TRUSTOR FAILS TO PERFORM AND INDEMNIFICATION:

(a) If Trustor fails to make any payment when due or to do any act required to be made or performed under this Deed of Trust, subject to any applicable grace, notice or cure periods, if any, provided for in the Agreement, then Lender or Trustee, without notice to or demand upon Trustor and without releasing Trustor from any obligation under this Deed of Trust, may, but are not required to, make or do the same in such manner and to such extent as either may deem necessary or desirable to protect the security of this Deed of Trust. Lender and Trustee are authorized to (i) enter upon the Property for such purposes; (ii) appear in and defend any action or proceeding purporting to affect the security of this Deed of Trust or the rights or powers of Lender or Trustee; and (iii) pay, purchase, contest or compromise any encumbrance, charge, lien or claim of lien, in whole, in part and/or in installments, which in the judgment of either Lender or Trustee appears to be prior or superior to the lien of this Deed of Trust, the judgment of Lender or Trustee being conclusive of the matter as among the parties to this Deed of Trust. In exercising the above powers, Lender or Trustee may pay necessary costs and expenses, employ counsel, consultants, any other agents or independent contractors, and pay fees, compensation, and costs thereof. Trustor promises and agrees to pay immediately upon demand all amounts so expended by Lender or Trustee (including all such costs, expenses and attorneys' fees) under this paragraph (16), together with any fees charged by Lender in regard to such activity by Lender and interest from the date of expenditure at the applicable rate of interest set forth in the Note, with payment of such amounts being secured by this Deed of Trust.

(b) Trustor hereby indemnifies and agrees to hold harmless Lender and Trustee and their directors, officers, shareholders, agents and employees

(individually and collectively the "Indemnitees") from and against: (i) any and all claims, demands, actions, liabilities, or causes of action that are asserted against any Indemnitee by any person or entity if the claim, demand, action, liability, or cause of action, directly or indirectly, relates to a claim, demand, action, liability, or cause of action that the person or entity has or asserts based upon, arising out of, or in connection with, the Property, the conduct of Trustor, any action or non-action by Trustor in connection with the Property, or this Deed of Trust; and (ii) any and all claims, liabilities, losses, costs, or expenses (including court costs and attorneys' fees) that any Indemnitee suffers or incurs as a result of the assertion of any such claim, demand, action, liability or cause of action (excluding liability to Indemnitees to the extent resulting solely and directly from the gross negligence or willful misconduct of any Indemnitee). The foregoing indemnity shall survive the release of this Deed of Trust, whether such release is as a result of payment of the indebtedness secured hereby, foreclosure, acceptance of a deed in lieu of foreclosure, other action, or otherwise.

(17) TRUSTEE'S RIGHTS AND DUTIES TO SELL THE PROPERTY: (a) Upon the occurrence and during the continuance of a default under this Deed of Trust by Trustor, Lender may then or thereafter execute or cause the Trustee to execute a written notice of such default and of its election to have the Property sold to satisfy the obligations secured by this Deed of Trust. Such notice shall be recorded in the office of the Recorder of the County where the Property is located. (b) When the minimum period of time required by law following recordation of such notice of default has elapsed, and notice of sale having been given as then required by law, the Trustee, without demand upon Trustor, shall sell the Property at the time and place of sale fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as Lender may determine, at public auction to the highest bidder for cash or a cash equivalent acceptable to Trustee, in lawful money of the United States, payable at time of sale. Lender shall have the right, at its option, to offset Lender's bid(s) to the extent of the total amount due Lender, including but not limited to all Trustee's fees, costs, expenses (including, without limitation, premiums for guarantees or other evidence of title), and other amounts secured by this Deed of Trust. The Trustee may postpone the sale of all or any portion of the Property by public notice at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Additionally, Lender, from time to time before any Trustee's sale, may rescind or cause to be rescinded any notice of default and election to sell or notice of sale by executing and delivering to Trustee a written notice of such rescission, which notice, when recorded, shall also constitute a cancellation of any prior declaration of default and demand for sale. The exercise by Lender of such right of rescission shall not constitute a waiver of any breach or default then existing or subsequently occurring, or impair the right of Lender to execute and deliver to Trustee, as above provided, other declarations or notices of default and demand for sale of the Property to satisfy the obligations hereof, nor otherwise affect any provision, covenant or condition of the Guaranty or the Agreement or any of the rights, obligations or remedies of Trustee to Lender. (c) The Trustee shall deliver to the purchaser at such sale its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. (d) Any person, including Trustor, Lender or Trustee may purchase at such sale. After deducting all

costs, fees and expenses of the Trustee and of this Deed of Trust, including, without limitation, cost of evidence of title and attorneys' fees in connection with the sale, the Trustee shall apply the proceeds of the sale to the payment of: first, all sums expended under the terms of this Deed of Trust not then repaid, with interest at the applicable rate of interest set forth in the Note; second, the payment of all other sums then secured by this Deed of Trust; and third, the remainder, if any, to the person or persons legally entitled to such proceeds.

(18) OTHER REMEDIES IF TRUSTOR DEFAULTS: (a) All of the remedies of Lender and Trustee set forth in this Deed of Trust are intended to be in addition to and not in substitution for any other remedies available to Lender or Trustee at law or in equity. It is expressly understood and agreed that Lender or Trustee, or both, may bring suit in any court of competent jurisdiction to foreclose this Deed of Trust by judicial action or to obtain specific performance of the assignment of rents contained in this Deed of Trust. In connection with any such action, Lender or Trustee may apply to the court for the appointment of a receiver to take possession of the Property, operate the business of Trustor being conducted on the Property, utilize and enforce all agreements of Trustor in respect of the operation of such business, the utilization of any such agreement being at the election of Lender or the receiver, to be exercised at any time after the occurrence and during the continuance of a default hereunder, receive the rents of the Property and apply the same to the obligations of Trustor under this Deed of Trust and under the Guaranty and any other obligations secured by this Deed of Trust. (b) Neither the acceptance of this Deed of Trust nor its enforcement in any manner shall prejudice the right of Lender or Trustee to realize upon or enforce any other security now or later held by Lender or Trustee. Trustor promises and agrees that the rights of Lender and Trustee under this Deed of Trust, and with respect to any other security now or later held by Lender, may be enforced in such order and manner as Lender and Trustee, or either of them, may determine in their sole and absolute discretion.

(19) TRUSTOR'S OBLIGATIONS AND LENDER'S RIGHTS NOT WAIVED: By accepting payment of any sum secured by this Deed of Trust after its due date, or by accepting late performance of any obligation secured by this Deed of Trust, or by making any payment or performing any act on behalf of Trustor that Trustor was obligated to make or perform under this Deed of Trust but failed to make or perform, or by adding any payment so made by Lender to the Guaranty secured by this Deed of Trust, Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to make any such prompt payment or to perform any such act. No failure or delay on the part of Lender, Trustee, or any holder of the Guaranty or this Deed of Trust in the exercise of any power, right or privilege hereunder shall operate as a waiver thereof. No single or partial exercise of any such power, right or privilege shall preclude any other or further exercise thereof or of any other right, power or privilege. No exercise of any right or remedy of Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right or remedy contained in this Deed of Trust or provided by law. All rights and remedies existing under this Deed of Trust are cumulative to, and not exclusive of, any rights or remedies otherwise available.

(20) SUCCESSORS IN INTEREST: The terms, agreements, and conditions contained in this Deed of Trust shall apply to, be binding upon and inure to the benefit of, all of the parties to this Deed of Trust, their heirs, personal representatives, successors and assigns.

(21) STATEMENTS CONCERNING THE STATUS OF THE GUARANTY: From time to time as required by law, Lender shall furnish to Trustor such statements as may be required concerning the status of the obligations secured by this Deed of Trust. Trustor promises and agrees to pay upon demand for such statements the maximum amount permitted by law.

(22) TRUSTEE'S OBLIGATIONS: The Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. The Trustee is not obligated to notify any party to this Deed of Trust of pending sale under any other deed of trust or of any action or proceeding in which Trustor, Lender or Trustee is a party unless such action is brought by the Trustee. The Trustee shall not be obligated to perform any act required of it under this Deed of Trust unless the performance of such act is requested in writing and the Trustee is reasonably indemnified against loss, costs, liability and expense.

(23) OBLIGATIONS OF TRUSTOR ARE JOINT AND SEVERAL; GENDER AND NUMBER: If more than one person has executed this Deed of Trust as "Trustor," the obligations of all such persons under this Deed of Trust shall be joint and several. In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(24) NO OFFSETS: No offset or claims which Trustor now or in the future may have against Lender shall relieve Trustor from making payments or performing any other obligations contained in or secured by this Deed of Trust. Despite any right or option that may be granted to Lender or Trustee by this Deed of Trust or in the evidence of any obligations secured by this Deed of Trust or document ancillary to this Deed of Trust to receive, collect, accept deposit of, use, apply or in any other manner obtain or dispose of any funds or property, the same shall not be deemed to constitute any credit against or to satisfy any obligation secured by this Deed of Trust, in whole or in part, unless and until such funds or property shall be both so obtained and expressly so applied by Lender or Trustee to such satisfaction of such obligation and then only in the manner and to the extent of such application.

(25) GOVERNING LAW: The Guaranty secured by this Deed of Trust is made pursuant to the laws of the State of California, and the rules and regulations promulgated thereunder. The loan contracts between the parties, including this Deed of Trust, shall be construed and governed by such laws, rules, and regulations.

(26) AGREEMENT CHANGED ONLY BY WRITING: This Deed of Trust cannot be changed except by agreement in writing signed by Trustor and Lender.

(27) TIME: Time is of the essence in connection with all of Trustor's obligations under this Deed of Trust.

(28) NOTICE: Except for any notice required under applicable law to be given in another manner: (a) any notice to Trustor provided for in this Deed of Trust shall be addressed to Trustor at the address of Trustor set forth above, or to such other address as Trustor may designate by notice to Lender pursuant to the terms of paragraph (28)(c), and (b) any notice to Lender provided for in this Deed of Trust shall be addressed to Lender as follows:

PREFERRED BANK
601 S. Figueroa Street, 47th Floor
Los Angeles, California 90017
Attention: Note Department

and to such other address as Lender may designate by notice to Trustor, pursuant to the terms of paragraph (28)(c).

(c) Except as otherwise provided by law, all notices, requests, demands, directions, and other communications provided for in this Deed of Trust must be in writing and sent by facsimile and mail or certified mail to the appropriate party at its respective address. Any notice given by facsimile must be confirmed within forty-eight (48) hours by letter mailed via regular mail to the appropriate party at its respective address. If any notice is given by certified mail, it will be effective when deposited in the mails with first class or airmail postage prepaid; or if given by facsimile and mail, when the facsimile is sent.

(29) TITLES, CAPTIONS, AND HEADINGS: The titles, captions, and headings to paragraphs contained in this Deed of Trust are for assistance in identification only and are not to be considered part of the substance of the provisions of this Deed of Trust.

(30) SEVERABILITY OF PROVISIONS: If any paragraph, clause or provision of this Deed of Trust is construed or interpreted by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those paragraphs, clauses or provisions so construed or interpreted and shall not affect the remaining paragraphs, clauses and provisions of this Deed of Trust.

(31) ACKNOWLEDGMENT OF TRUSTOR'S UNDERSTANDING OF DEED OF TRUST: The foregoing terms, provisions and conditions of this Deed of Trust have been read and are understood by Trustor. Trustor hereby acknowledges receipt of a copy of this Deed of Trust.

(32) LENDER'S RELIANCE: The financial accommodations made or to be made by Lender to Trustor are being made, renewed or extended, as applicable, by Lender to Trustor at the request and urging of Trustor and this Deed of Trust is being given in consideration of such financial accommodations, and Lender may rely upon the

validity and enforceability of this Deed of Trust in making such financial accommodations.

(33) SECURITY AGREEMENT:

(a) Security Interest. This Deed of Trust shall also constitute and serve as a security agreement and financing statement for Personalty, Fixtures, and any of the Property in which a security interest can be perfected under and within the meaning of Division 9 of the California Uniform Commercial Code, and shall grant to Lender, until the obligations secured hereby shall be satisfied, a security interest, including but not limited to a fixture filing, pursuant to Division 9 of the California Uniform Commercial Code with respect to the Personalty and Fixtures. To this end, Trustor shall and hereby does grant to Lender, a security interest in, under and to the Personalty, Fixtures, and any of the Property in which a security interest can be perfected under Division 9 of the California Uniform Commercial Code.

(b) Financing Statements. Trustor authorizes Lender to file such financing statements and cause such financing statements and other assurances as Lender may from time to time require to be recorded and filed at such times and places as may be required or permitted by law to create, perfect and preserve such security interest.

(c) Remedies on Default. Upon the occurrence and during the continuance of a default hereunder, Lender may, at its option: (i) exercise any remedy permitted by law or in equity, including without limitation, all the rights and remedies of a secured party under the California Uniform Commercial Code in any jurisdiction where enforcement is sought, whether in California or elsewhere; (ii) notify any parties obligated on any of the Personalty or Fixtures to make payment to Lender and enforce collection thereof; (iii) apply any sums received or collected from or on account of any Personalty or Fixtures, including the proceeds of any sales thereof, to the payment of any indebtedness of Trustor to Lender in any order, including the costs and expenses incurred in preserving and enforcing the rights of Lender and attorneys' fees, in such order and manner as Lender in Lender's sole discretion determines. All of Lender's rights and remedies shall be cumulative and not exclusive.

(d) Fixture Filing. This Deed of Trust shall constitute a fixture filing under the California Uniform Commercial Code. Lender's address from which information concerning Lender's security interest can be obtained is set forth in paragraph (28) above, subject to change as therein provided.

(34) SALE OF INTEREST: Trustor acknowledges and accepts that Lender may, at any time, in Lender's sole discretion sell all or any portion of Lender's interest in the Guaranty and this Deed of Trust to one or more third parties. The sale of all or any part of Lender's interest in the Guaranty or Deed of Trust shall not relieve Trustor of any of Trustor's obligations hereunder.

(35) SEPARATE PROPERTY: Any married person executing this Deed of Trust in an individual capacity agrees that recourse may be had to his or her separate property for satisfaction of all sums secured under this Deed of Trust.

(36) BOOKS AND RECORDS: Trustor shall keep and maintain at all times at Trustor's address stated above, or at such other place as Lender may approve in writing from time to time, complete and accurate books or accounts and records adequate to reflect correctly the results of the operation of the Property and copies of all written contracts, leases, rental agreements, concessions, licenses, and other documents and instruments which affect the Property, or any portion thereof or interest therein. Such books, records, contracts, leases, documents, and other instruments shall be subject to examination and inspection by Lender, or Lender's agents or designated auditors, at any reasonable time and from time to time.

(37) INSPECTION, APPRAISAL, AND ASSESSMENTS: Lender may, at any time and from time to time and as and when Lender deems it to be appropriate, whether or not Trustor is then in default,(a) enter upon the Premises, directly or through one or more agents or independent contractors, to inspect any and all Property which is security for the obligations herein described, and (b) cause to be performed and prepared one or more appraisals and/or preliminary or other environmental assessments of the Property, or any portion thereof, in form and content satisfactory to Lender and meeting all requirements or standards of applicable laws, regulations, ordinances, orders, and generally recognized industry standards relating thereto. All costs and expenses incurred by Lender or Trustee in connection with any such inspection, appraisal, or assessment, shall be payable by Trustor upon demand and shall be secured by this Deed of Trust. All reports and other evidence and work papers relating to such inspections, appraisals, and assessments, shall be and remain the sole property of Lender, and Trustor hereby waives any right which Trustor may have by agreement or by operation of law to receive an original or duplicate thereof. Any appraisal or assessment may, at Lender's sole election, be relied upon by Lender in taking any action Lender deems to be necessary or appropriate in connection with the enforcement of its rights and exercise of remedies under or by virtue of this Deed of Trust, or under any obligation secured hereby, or under any separate obligation pertaining to the Property, or in connection with the protection, maintenance, preservation, remediation, restoration, or repair of the Property. Unless Lender otherwise expressly declares in writing, neither said appraisal nor assessment shall constitute conclusive evidence of the value or condition of the Property or as a representation or warranty by Lender as to the value or condition of the Property, and may not be used or relied upon by Trustor for any purpose.

(38) DEFINITIONS: All terms not defined herein shall be defined as set forth in the Agreement.

(39) JUDICIAL REFERENCE. Trustor hereby agree that any claims, controversies, disputes, or questions of interpretation, whether legal or equitable, arising out of, concerning or related to this Deed of Trust shall be heard by a single referee by consensual general judicial reference pursuant to the provisions of California Code of Civil Procedure sects 638 et seq., who shall determine all issues of fact or law and report

a statement of decision. The referee shall also have the power to hear and determine proceedings for ancillary relief, including, but not limited to, applications for attachment, issuance of injunctive relief, appointment of a receiver, and/or claim and delivery. The costs of the proceeding shall be borne equally by the parties to the dispute, subject to the discretion of the referee to allocate such costs based on a determination as to the prevailing party(ies) in the proceeding.

[Trustor's Initials to follow on next page.]

***By initialing below, Trustor acknowledges that it has read and understands the foregoing Judicial Reference provisions and understand that it is waiving its right to a jury trial.***

B.H
Trustor's Initials

[Signature page to follow.]

**THE UNDERSIGNED TRUSTOR REQUESTS THAT A COPY OF ANY NOTICE OF DEFAULT AND ANY NOTICE OF SALE HEREUNDER BE MAILED TO TRUSTOR AT TRUSTOR'S ADDRESS SET FORTH ABOVE.**

("Trustor")

SDRES PARTNERS LLC,
a California limited liability company

By: ______________________
Name: Banayotis Haddad
Its: Manager

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
) ss
COUNTY OF Orange )

On December 19, 2023, before me, Jennifer Williamson, a Notary Public, personally appeared Banayotis Haddad, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

[signature]
Notary Public

NR01
JENNIFER WILLIAMSON
COMM. #2466523
Notary Public - California
Orange County
My Comm. Expires Oct. 14, 2027
NR01

# EXHIBIT "A"

## LEGAL DESCRIPTION

Order No.: 2179617
Escrow No.: 2179617

The land referred to herein is situated in the State of California, County of Los Angeles, City of Pasadena and described as follows:

Parcel 1-A:

Lot 10 of Tract No. 63103, in the City of Pasadena, as per Map recorded March 15, 2012, in Book 1369 Pages 35 through 52, of Maps in the Office of the County Recorder of said County, amended pursuant to that certain Certificate of Correction recorded December 3, 2013 as Instrument No. 20131708591, of Official Records.

Parcel 1-B:

A reciprocal access easement over those areas set out on the map shown above.

Parcel 1-C:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Consolidated Amended and Restated Driveway Easement agreement (South Orange Grove Parcels) recorded December 5, 2013 as Instrument No. 20131716500, of Official Records, more particularly described as set out therein.

Parcel 1-D:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Rose Parade Grandstand Easement Agreement (Orange Grove Avenue) recorded July 21, 2005 as Instrument Nos. 05-1721787 and as Instrument No. 05-1721788, both of Official Records, more particularly described as set out therein.

Parcel 1-E:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Parking Garage Easement Agreement recorded July 2, 2007 as Instrument No. 20071579026, of Official Records, more particularly described as set out therein.

Parcel 1-F:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Parking Easement Agreement recorded December 28, 2011 as Instrument No. 20111763712, of Official Records, more particularly described as set out therein.

Parcel 2-A:

Lot 12 of Tract No. 63103, in the City of Pasadena, County of Los Angeles, State of California, as per Map recorded March 15, 2012, in Book 1369, Pages 35 through 52 of Maps in the Office of the County recorder of said County, amended pursuant to that certain Certificate of Correction recorded December 3, 2013 as Instrument No. 20131708591, of Official Records.

Parcel 2-B:

A reciprocal access easement over those areas set out on the Map shown above.

Parcel 2-C :

An easement for the purposes herein stated and subject to the terms and provisions of that certain Consolidated Amended and Restated Driveway Easement Agreement (South Orange Grove Parcels) recorded December 5, 2013 as Instrument No. 20131716500, of Official Records, more particularly described as set out therein.

Parcel 2-D:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Amended and Restated Driveway Easement Agreement (Del Mar Parcel) recorded December 5, 2013 as Instrument No. 20131716499, of Official Records, more particularly described as set out therein.

Parcel 2-E:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Rose Parade Grandstand Easement Agreement (Orange Grove Avenue) recorded July 21, 2005 as Instrument No. 05-1721787, and Instrument No. 05-1721788, both of Official Records, more particularly described as set out therein.

Parcel 2-F:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Parking Garage Easement Agreement recorded July 2, 2007 as Instrument No. 20071579026, of Official Records, more particularly described as set out therein.

Parcel 2-G:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Parking Easement Agreement recorded December 28, 2011 as Instrument No. 20111763712, of Official Records, more particularly described as set out therein

APN: 5713-013-057, 5713-027-065

(End of Legal Description)

**EXHIBIT "B"**
**(PERMITTED TOXIC MATERIALS)**

Trustor shall not permit there to be any hazardous and/or toxic materials at, on, in, around and/or under the Property and improvements, other than those as used in the regular course of business and for which Trustor has licenses from the proper authority, such as a government agency or regulatory body, and further, notwithstanding the foregoing, Trustor hereby expressly covenants, represents and warrants to Lender that all such materials shall be used or stored in strict compliance with the provisions as set forth in paragraph (6)(c) of the Deed of Trust for compliance with all state and federal laws, rules, regulations, relating to or governing the use, storage and/or presence of toxic materials and/or hazardous substances.

Notwithstanding any provisions to the contrary contained in this Exhibit "B" and paragraph (6)(c) of the Deed of Trust, in the event Trustor has executed any unsecured Hazardous Substances Indemnity Agreement ("Hazardous Substances Indemnity") in favor of Lender pertaining to the presence or release of hazardous and/or toxic materials or other similar substances upon, within or from the Property, then the covenants, duties and liabilities of Trustor, and the rights and remedies of Lender with respect to the subject of hazardous and/or toxic materials, shall be governed by the provisions of the Hazardous Substances Indemnity in addition to the provisions of the Deed of Trust; provided, however, that the provisions of said Hazardous Substances Indemnity shall prevail and exclusively govern the subject matter to the extent of any duplication, conflict or inconsistency between such provisions and the provisions of this Deed of Trust, and payment or performance of Trustor's obligations under said Hazardous Substances Indemnity shall not be secured by this Deed of Trust, but shall be and remain unsecured obligations of the Trustor.

# Exhibit BB

**This page is part of your document - DO NOT DISCARD**

# 20240011709

Pages: 0009

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**01/05/24 AT 08:00AM**

| | |
|---|---|
| FEES: | 85.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 85.00 |

**PCOR SURCHARGE $20.00**

LEADSHEET

202401050250033

**00024117451**

014475474

**SEQ:**
**02**

SECURE - 8:00AM

**THIS FORM IS NOT TO BE DUPLICATED**

2179617

E465200

FOR REFERENCE ONLY: 20240011709

Recording Requested by
Stewart Title of California, Inc.

**RECORDING REQUESTED BY**
**AND WHEN RECORDED, MAIL TO:**

PREFERRED BANK
601 S. Figueroa Street, 47th Floor
Los Angeles, California 90017
Attention: Note Department

Assessor's Parcel No.: 5713-013-057
5713-027-065

217961

# ABSOLUTE ASSIGNMENT OF LEASES, LEASE GUARANTIES, RENTS, ISSUES AND PROFITS

FOR VALUE RECEIVED, the undersigned, SDRES PARTNERS LLC, a California limited liability company ("Assignor"), grants, transfers and assigns to PREFERRED BANK, a California banking corporation ("Assignee"), all of Assignor's right, title and interest in all leases executed by Assignor, or Assignor's predecessors in interest, or Assignor's successors in interest, in regard to the real property described below, as lessor (individually and collectively, the "Leases"), concerning real property located in Los Angeles County, California, and legally described as set forth in Exhibit "A" hereto and incorporated herein by reference ("Property"), and all lease guaranties in regard to the Leases (individually and collectively, the "Lease Guaranties") and all rents, issues and profits of the Property, including the cash proceeds thereof, to the fullest extent permitted by California Civil Code Section 2938. Assignor's interests in the Property are the subject of that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated December 13, 2023 ("Deed of Trust"), by Assignor, as Trustor, to Stewart Title of California, Inc., as Trustee, for Assignee, as Beneficiary, which Deed of Trust secures the obligations of Assignor under that certain Secured Continuing Guaranty dated December 13, 2023, executed by Assignor in favor of Assignee ("Guaranty"), which Guaranty guarantees the obligations of ANDREW STUPIN, an individual ("Borrower"), under that certain (i) Promissory Note of even date herewith by Borrower and in favor of Lender in the original maximum principal amount of $400,000.00 (together with any and all other amendments thereto or modifications thereof, the "Note"), and (ii) Loan Agreement of even date herewith, by and between Borrower and Lender (together with any and all amendments thereto or modifications thereof, the "Agreement"), evidencing a non-revolving line of credit made by Lender to Borrower in the maximum amount of $400,000.00. This assignment includes the assignment of Assignor's interest in all extensions and renewals of the Leases and all extensions or renewals of the Lease Guaranties.

1. Assignor warrants that title to all of such property interests is in Assignor; that Assignor has the right to make this assignment; that full title and right to receive all rents, issues and profits under the Leases and all amounts accruing under the Lease Guaranties are vested absolutely in Assignee by this assignment; and that the rental property and rental payments and other sums are free from liens, encumbrances, claims and setoffs of every kind whatsoever, other than the liens and rights of Assignee.

-Trust deed recording concurrently

Exempt from fee per GC27388.1; fee cap of $225 reached

Recording Requested by
Stewart Title of California, Inc.

**RECORDING REQUESTED BY
AND WHEN RECORDED, MAIL TO:**

PREFERRED BANK
601 S. Figueroa Street, 47th Floor
Los Angeles, California 90017
Attention: Note Department

Assessor's Parcel No.: 5713-013-057
5713-027-065

217961?

**ABSOLUTE ASSIGNMENT OF LEASES, LEASE GUARANTIES, RENTS, ISSUES AND PROFITS**

FOR VALUE RECEIVED, the undersigned, SDRES PARTNERS LLC, a California limited liability company ("Assignor"), grants, transfers and assigns to PREFERRED BANK, a California banking corporation ("Assignee"), all of Assignor's right, title and interest in all leases executed by Assignor, or Assignor's predecessors in interest, or Assignor's successors in interest, in regard to the real property described below, as lessor (individually and collectively, the "Leases"), concerning real property located in Los Angeles County, California, and legally described as set forth in Exhibit "A" hereto and incorporated herein by reference ("Property"), and all lease guaranties in regard to the Leases (individually and collectively, the "Lease Guaranties") and all rents, issues and profits of the Property, including the cash proceeds thereof, to the fullest extent permitted by California Civil Code Section 2938. Assignor's interests in the Property are the subject of that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated December 13, 2023 ("Deed of Trust"), by Assignor, as Trustor, to Stewart Title of California, Inc., as Trustee, for Assignee, as Beneficiary, which Deed of Trust secures the obligations of Assignor under that certain Secured Continuing Guaranty dated December 13, 2023, executed by Assignor in favor of Assignee ("Guaranty"), which Guaranty guarantees the obligations of ANDREW STUPIN, an individual ("Borrower"), under that certain (i) Promissory Note of even date herewith by Borrower and in favor of Lender in the original maximum principal amount of $400,000.00 (together with any and all other amendments thereto or modifications thereof, the "Note"), and (ii) Loan Agreement of even date herewith, by and between Borrower and Lender (together with any and all amendments thereto or modifications thereof, the "Agreement"), evidencing a non-revolving line of credit made by Lender to Borrower in the maximum amount of $400,000.00. This assignment includes the assignment of Assignor's interest in all extensions and renewals of the Leases and all extensions or renewals of the Lease Guaranties.

1. Assignor warrants that title to all of such property interests is in Assignor; that Assignor has the right to make this assignment; that full title and right to receive all rents, issues and profits under the Leases and all amounts accruing under the Lease Guaranties are vested absolutely in Assignee by this assignment; and that the rental property and rental payments and other sums are free from liens, encumbrances, claims and setoffs of every kind whatsoever, other than the liens and rights of Assignee.

-Trust deed recording concurrently

Exempt from fee per GC27388.1;
fee cap of $225 reached

2. Assignor, to the extent made necessary hereby, appoints Assignee its true, lawful and irrevocable attorney to demand, receive and enforce payment, to give receipts, releases and satisfactions, and to sue, either in the name of Assignor or in the name of Assignee, for all rents and other sums payable in regard to the Leases and Lease Guaranties.

3. Until a default in the payment of any indebtedness to which this assignment is related or in the performance of any obligation, covenant or agreement contained herein or in the Deed of Trust on the part of Assignor to be performed ("Default") has occurred and is continuing, Assignor shall have the right to collect said rents or other sums, but according to the terms and conditions hereinafter specified. During the continuance of a Default by Assignor, Assignee shall be entitled to collect and receive all rents, issues and profits that have accrued but remain unpaid and uncollected by Assignor (or Assignor's agent, or for Assignor's benefit) on that date, and all rents, issues and profits that accrue after that date.

4. Assignee may enforce its rights to collect rents, issues and profits in any manner permitted by law, including, without limitation, (a) the appointment of a receiver, (b) obtaining possession of the rents, issues or profits, (c) delivery to any one or more of the tenants of a written demand for the turnover of rents, issues and profits in the form specified by California Civil Code Section 2938, and (d) delivery to Assignor of a written demand for the rents, issues and profits as specified by California Civil Code Section 2938.

5. Assignor consents that, without further notice and without releasing the liability of Assignor, Assignee may, at Assignee's discretion, give grace or indulgence in the collection of all rents and sums due or to become due under the Leases and Lease Guaranties and grant extensions of time for the payment of the same before, at, or after maturity.

6. Nothing herein contained shall be construed as imposing upon Assignee the duty to collect any rent or any other sum. Further, nothing herein contained shall be construed as imposing upon Assignee any duty in regard to causing the Property to be rented, in whole or in part, or to be utilized in any other way.

7. Nothing herein contained shall be construed as requiring Assignee to give credit to Assignor or any successor in interest of Assignor in regard to Assignor's obligation or obligations to Assignee which are related to this assignment, or as creating any setoff against or reduction of said obligation or obligations for any sum or sums except to the extent of any sum or sums actually received and so applied by Assignee.

8. Assignee does not assume any of the landlord's obligations under the Leases or the Lease Guaranties, or any of them, and Assignor agrees (a) to keep and perform all obligations of the landlord under the Leases and the Lease Guaranties and to save Assignee harmless from the consequences of any failure to do so; and (b) to preserve the Property subject to the Leases free and clear of liens and encumbrances, except to or with the written consent of Assignee.

9. Assignor agrees that Assignor will not assign any other interest in the Leases or the Lease Guaranties, or any of them, or in the rents, issues or profits of the Property; that notice of this assignment may be given to any tenant or lease guarantor at any time at Assignee's option; and

that, in the event any payment of rent or any other sum is made to Assignor, Assignor will hold such rent or other sum as trustee for Assignee to the extent that the same equals any installment or installments then due and payable under the related obligation or obligations, any installment or installments on any lien which may be superior to the Deed of Trust in terms of priority and any taxes or assessments then due and payable in regard to the Property.

10. Assignor further agrees, at its sole cost and expense: (i) to enforce or secure the performance of each obligation of the Leases by the respective Lessees to be performed and each obligation of the Lease Guaranties by the respective lease guarantor to be performed; (ii) not to anticipate the rents thereunder, nor to waive or release any party thereunder of or from his, her or its obligations; and (iii) not to modify the Leases or Lease Guaranties, or any of them, nor accept surrender thereunder.

11. This assignment is in addition to the Deed of Trust and is not to be construed as being a waiver of any of the terms thereof or of the obligations which the Deed of Trust secures.

12. If, as and when a Default occurs, Assignee shall be entitled to all attorneys' fees paid or incurred by Assignee for so doing, all fees and commissions paid or incurred by Assignee for or in connection with management of the Property, and reimbursement of all expenses paid or incurred by Assignee for or in connection with maintaining the Property, all added to the obligation hereinabove described as though advances under the Deed of Trust.

13. This assignment is irrevocable and shall remain in full force and effect until and unless there is payment in full of all obligations related to it or it is released in writing by Assignee.

14. A Default hereunder shall constitute a default under the Loan Agreement, the Guaranty, the Deed of Trust and all other instruments evidencing the Loan or securing the Guaranty, as those terms are defined in the Loan Agreement, and, upon occurrence and during the continuance of any such Default, at the option of Assignee, without notice to Assignor, all unpaid indebtedness secured by said instruments shall become immediately due and payable.

15. Nothing contained in this assignment or in any action or undertaking by Assignee pursuant to this assignment shall be deemed or be construed to constitute Assignee as a mortgagee in possession of the Property or to obligate Assignee to take any action hereunder, to incur expenses or discharge any obligation, duty or liability hereunder or under the Leases or Lease Guaranties. Until the loan as evidenced by the Note and all indebtedness secured hereby shall have been paid in full, Assignor will from time to time execute and deliver to Assignee upon demand any and all writings which Assignee may deem necessary or desirable to carry out the purposes and intent hereof, and which will enable Assignee to enforce any right or remedy hereunder.

16. Except to the extent caused by the gross negligence or willful misconduct of Assignee, Assignor hereby indemnifies and holds Assignee harmless from and against any and all liability, loss, or damage which Assignee may incur under the Leases or Lease Guaranties or by reason of this assignment, and of and from any and all claims and demands whatsoever which may be asserted against Assignee by reason of any alleged obligation or undertaking to be performed or

discharged by any mortgagee or holder of a trust deed under the Leases or this assignment. Nothing contained in the Note, the Deed of Trust, the Loan Agreement, the Guaranty or in this assignment shall be construed to bind Assignee to the performance of any of the terms or provisions contained in any of the Leases or Lease Guaranties, or otherwise to impose any obligation on Assignee, including, but not limited to, any liability under any covenant of quiet enjoyment contained in the Leases in the event that any tenant shall have been joined as a party defendant in any action to foreclose the Deed of Trust and shall have been barred and foreclosed thereby of all right, title, and interest, and equity of redemption, in said premises. Prior to actual entry and taking possession of the Property, or any portion thereof, by Assignee, even though Assignee may be receiving rental income, this assignment shall not operate to place responsibility for control, care, management, or repair of said Property upon Assignee, nor for the carrying out of any terms and provisions of the Leases or Lease Guaranties. Should Assignee incur any liability described in this Section, or loss or damage under the Leases or Lease Guaranties or under or by reason of the assignment, or in defense of any such claims or demands, Assignor shall immediately upon demand reimburse Assignee for the amount thereof, including all costs, expenses and attorneys' fees incurred in connection therewith, and Assignee may retain possession and collection of any and all rents and other income derived from the Leases, the Lease Guaranties and/or the Property, and, from time to time, apply them in or towards satisfaction of or reimbursement for any such loss, damage, cost or expense.

[Signature page to follow.]

IN WITNESS WHEREOF, Assignor has executed this Absolute Assignment of Leases, Lease Guaranties, Rents, Issues and Profits as of the date set forth above.

"ASSIGNOR"

SDRES PARTNERS LLC,
a California limited liability company

By:
Name: Banayotis Haddad
Its: Manager

**(ALL SIGNATURES MUST BE ACKNOWLEDGED)**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
) ss
COUNTY OF Orange )

On December 19, 2023, before me, Jennifer Williamson, a Notary Public, personally appeared Banayotis Haddad, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public

JENNIFER WILLIAMSON
COMM. #2466523
Notary Public - California
Orange County
My Comm. Expires Oct. 14, 2027
NR01



5074991v2 | 050625-0906

# EXHIBIT "A"

## LEGAL DESCRIPTION

Order No.: 2179617
Escrow No.: 2179617

The land referred to herein is situated in the State of California, County of Los Angeles, City of Pasadena and described as follows:

Parcel 1-A:

Lot 10 of Tract No. 63103, in the City of Pasadena, as per Map recorded March 15, 2012, in Book 1369 Pages 35 through 52, of Maps in the Office of the County Recorder of said County, amended pursuant to that certain Certificate of Correction recorded December 3, 2013 as Instrument No. 20131708591, of Official Records.

Parcel 1-B:

A reciprocal access easement over those areas set out on the map shown above.

Parcel 1-C:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Consolidated Amended and Restated Driveway Easement agreement (South Orange Grove Parcels) recorded December 5, 2013 as Instrument No. 20131716500, of Official Records, more particularly described as set out therein.

Parcel 1-D:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Rose Parade Grandstand Easement Agreement (Orange Grove Avenue) recorded July 21, 2005 as Instrument Nos. 05-1721787 and as Instrument No. 05-1721788, both of Official Records, more particularly described as set out therein.

Parcel 1-E:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Parking Garage Easement Agreement recorded July 2, 2007 as Instrument No. 20071579026, of Official Records, more particularly described as set out therein.

Parcel 1-F:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Parking Easement Agreement recorded December 28, 2011 as Instrument No. 20111763712, of Official Records, more particularly described as set out therein.

Parcel 2-A:

Lot 12 of Tract No. 63103, in the City of Pasadena, County of Los Angeles, State of California, as per Map recorded March 15, 2012, in Book 1369, Pages 35 through 52 of Maps in the Office of the County recorder of said County, amended pursuant to that certain Certificate of Correction recorded December 3, 2013 as Instrument No. 20131708591, of Official Records.

Parcel 2-B:

A reciprocal access easement over those areas set out on the Map shown above.

Parcel 2-C :

An easement for the purposes herein stated and subject to the terms and provisions of that certain Consolidated Amended and Restated Driveway Easement Agreement (South Orange Grove Parcels) recorded December 5, 2013 as Instrument No. 20131716500, of Official Records, more particularly described as set out therein.

Parcel 2-D:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Amended and Restated Driveway Easement Agreement (Del Mar Parcel) recorded December 5, 2013 as Instrument No. 20131716499, of Official Records, more particularly described as set out therein.

Parcel 2-E:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Rose Parade Grandstand Easement Agreement (Orange Grove Avenue) recorded July 21, 2005 as Instrument No. 05-1721787, and Instrument No. 05-1721788, both of Official Records, more particularly described as set out therein.

Parcel 2-F:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Parking Garage Easement Agreement recorded July 2, 2007 as Instrument No. 20071579026, of Official Records, more particularly described as set out therein.

Parcel 2-G:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Parking Easement Agreement recorded December 28, 2011 as Instrument No. 20111763712, of Official Records, more particularly described as set out therein

APN: 5713-013-057, 5713-027-065

(End of Legal Description)

# Exhibit CC

# SECURED CONTINUING GUARANTY

The undersigned, SDRES PARTNERS LLC, a California limited liability company (herein called "Guarantor"), at the solicitation of ANDREW STUPIN, an individual ("Borrower"), requests PREFERRED BANK, a California banking corporation (herein called "Lender"), to extend Credit to Borrower. In order to induce Lender to extend Credit to Borrower, and in consideration of Credit heretofore, now or hereafter granted to Borrower by Lender, Guarantor agrees as follows:

1. The term "Credit" is used throughout this Secured Continuing Guaranty dated as of December 13, 2023 ("Guaranty") in its most comprehensive sense and means and includes, without limitation, any and all loans, advances, debts, obligations and liabilities of any kind or nature owed by Borrower to Lender, heretofore, now, or hereafter made, incurred or created, arising from the Loan Documents as defined in the Loan Agreement dated December 13, 2023, between Borrower and Lender ("Agreement"), whether due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined, secured or unsecured, whether on original, renewed, extended or revised terms (including, without limitation, those evidenced by new or additional instruments or agreements or those changing the applicable rate of interest or which release any obligor with respect thereto), whether principal, interest, fees, or expenses, whether Borrower may be liable individually or jointly with others, whether recovery upon such indebtedness may be or hereafter becomes barred by any statute of limitations, and whether such indebtedness may be or hereafter becomes invalid or otherwise unenforceable. In the event a petition under the United States Bankruptcy Code is filed by or against Borrower, the term "Borrower" shall also mean and include Borrower in its status as a debtor, debtor-in-possession and/or reorganized debtor under the United States Bankruptcy Code. All capitalized terms used herein but not defined shall have the meaning given to them in the Agreement.

2. (a) If there is more than a single entity or person included in the terms "Guarantor" or "Borrower," respectively, each reference herein to such terms shall mean any and all, and one or more of such entities and persons both jointly and severally, and (b) if more than one person or entity executes this Guaranty, the obligations and liabilities hereunder of Guarantors are and shall be both joint and several. If Borrower is a corporation, partnership, limited liability company or association, each reference herein to the term "Borrower" shall include any successor entity to Borrower. If there is more than one guaranty of the obligations of Borrower, the liabilities of all Guarantors are joint and several. As used in this Guaranty, neuter terms include the masculine and feminine, and vice versa.

3. In addition to any liability hereunder, Guarantor agrees to bear and be liable to Lender for the interest and expenses enumerated in paragraph 21 hereof. Any payment by Guarantor shall not reduce the obligations of Guarantor hereunder unless written notice to that effect is actually received by Lender at or prior to the time of such payment.

4. Guarantor unconditionally guarantees and agrees to pay to Lender, on demand, in lawful money of the United States of America, an amount equal to the amount of the Credit plus the fees, expenses, interest and other amounts and charges

specified in paragraphs 3 and 21 hereof, and to otherwise perform any obligations of Borrower undertaken pursuant to any Credit. This Guaranty is a guaranty of payment and not of collection. No payment received by Lender from Borrower or any other person or from proceeds of collateral granted by Borrower or any other person shall reduce Guarantor's liability hereunder.

5. Either before or after revocation hereof, Guarantor authorizes Lender at its sole discretion, with or without notice, and without affecting Guarantor's continuing liability hereunder, from time to time to (a) change the time or manner of payment of any Credit by modification, renewal, extension, acceleration or otherwise, (b) amend or change any other provision of any Credit including the rate of interest thereon, (c) accept partial payment on any Credit, (d) accept new or additional instruments, agreements or documents relative to any Credit, (e) release, substitute or add one or more endorsers, cosigners or guarantors for any Credit, (f) enter into forbearances with Borrower even though the result of such forbearance is to increase the amount of accrued and unpaid interest, cost, fees and/or expenses attributable to the Credit, (g) amend or modify the terms of any guaranty executed by a co-guarantor, including the maximum liability thereunder, (h) obtain collateral for the payment of any Credit and/or any guaranty thereof, (i) waive, release, exchange, substitute, or modify, in whole or in part, existing, after-acquired or later acquired collateral securing payment of the Credit or any guaranty therefor on such terms as Lender at its sole discretion shall determine, (j) subordinate payment of all or any part of the Credit to other creditors of Borrower or other persons on such terms as Lender deems appropriate, (k) apply any sums received from Borrower, any other guarantor, endorser or cosigner or from the sale or collection of collateral or its proceeds to any indebtedness whatsoever in any order and regardless of whether or not such indebtedness is guaranteed hereby, is secured by collateral, or is due and payable, (l) without limiting the foregoing, apply any sums received from Guarantor or from the sale of collateral, if any, pledged by Guarantor to any, all, or any portion of the Credit in any order regardless of whether or not the Credit is secured by collateral or is due and payable, and (m) exercise any right or remedy it may have with respect to any Credit or any collateral securing any Credit, this Guaranty or any other guaranty, including, without limitation, bidding and purchasing at any sale of any such collateral, and compromising, collecting or otherwise liquidating any collateral or any Credit.

6. Guarantor acknowledges that Guarantor may have certain rights under applicable law which, if not waived by Guarantor, might provide Guarantor with defenses against Guarantor's liability under this Guaranty. Among those rights, are certain rights of subrogation, reimbursement, indemnification and contribution, and rights provided in sections 2787 to 2855, inclusive, of the California Civil Code. Guarantor waives all of Guarantor's rights of subrogation, reimbursement, indemnification, and contribution, and any other rights and defenses that are or may become available to Guarantor by reason of any or all of California Civil Code sections 2787 to 2855, inclusive, including, without limitation, Guarantor's rights:

(a) To require Lender to notify Guarantor of any default by Borrower, provide Guarantor with notice of any sale or other disposition of security for any Credit, disclose information with respect to the Credit, Borrower, or any other guarantor, co-signer or endorser, or with respect to any collateral;

(b) That Guarantor's obligation under this Guaranty must be commensurate with that of Borrower;

(c) To be discharged based upon the absence of any liability of Borrower, at any time, by virtue of operation of law, or otherwise, or due to any other disability or defense of Borrower or any other guarantor, endorser or co-signer;

(d) To be discharged if any of the terms, conditions or provisions of the Credit are altered in any respect;

(e) To be discharged upon acceptance by Lender of anything in partial satisfaction of the Credit, and/or if Lender designates the portion of the Credit to be satisfied;

(f) To be discharged upon any modification of the Credit or the release by Lender of Borrower or any other guarantor, endorser or co-signer;

(g) To require Lender to proceed against Borrower, or any other guarantor, endorser, co-signer, or other person, or to pursue or refrain from pursuing any other remedy in Lender's power;

(h) To receive the benefit of or participate in any and all security for repayment and/or performance of the Credit;

(i) To have any security for the Credit first applied to satisfy or discharge the Credit;

(j) That any arbitration award rendered against Borrower not constitute an award against Guarantor;

(k) To be discharged based upon any failure by Lender to perfect or continue perfection of any lien, use due diligence to collect all or any part of any Credit, or if recovery against Borrower becomes barred by any statute of limitations, or if Borrower is not liable for any deficiency after Lender realizes upon any collateral;

(l) To be discharged due to the release or discharge of any collateral for any Credit or guaranty, or relating to the validity, value or enforceability of any collateral; and

(m) To revoke this Guaranty.

7. Guarantor also waives all rights and defenses that Guarantor may have because the Borrower's debt is secured by real property. This means, among other things: (1) Lender may collect from Guarantor without first foreclosing on any real or personal property collateral pledged or assigned by Borrower; (2) If Lender forecloses on any real property collateral pledged by the Borrower: (A) The amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price, (B) Lender may collect from Guarantor even if Lender, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from Borrower. This is an unconditional and irrevocable

waiver of any rights and defenses Guarantor may have because Borrower's debt is secured by real property. These rights and defenses include, but are not limited to, any rights or defenses directly or indirectly based upon Sections 580a, 580b, 580d, or 726 of the California Code of Civil Procedure.

8. Guarantor also waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against the principal by the operation of Section 580d of the California Code of Civil Procedure or otherwise.

9. Guarantor waives all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of acceptance, notices of the existence, creation or increase of any new or additional credit, notice of sale in regard to judicial or non-judicial foreclosure of real or personal property collateral and all other notices and demands of any kind or nature whatsoever except as expressly set forth herein.

10. Notwithstanding any foreclosure of the lien of any security agreements, deeds of trust, mortgages or other security instruments, with respect to the Credit or any other guaranty, whether by the exercise of the power of sale contained therein, by any action for judicial foreclosure, or by any acceptance of a deed or other transfer in lieu of foreclosure, whether or not such method of foreclosure or transfer in lieu of foreclosure was for a consideration equal to or greater than the fair market value of the security property, Guarantor shall remain bound under this Guaranty for the obligations of Borrower to Lender and shall be liable to Lender for any and all of the Credit remaining unpaid after any such foreclosure.

11. Guarantor represents and warrants to Lender that: (a) Lender has made no representation to Guarantor in regard to Borrower, the Credit or any matters pertaining thereto, upon which Guarantor is relying in giving this Guaranty; and (b) Guarantor has established adequate means and assumes the responsibility for being and keeping informed of the financial condition of Borrower and of all other circumstances bearing upon the risk of nonpayment of the Credit which diligent inquiry would reveal, and Lender shall have no duty to advise Guarantor of information known to Lender regarding such condition or any such circumstance.

12. [Intentionally omitted.]

13. Any and all indebtedness of Borrower now or hereafter owed to Guarantor and all claims of Guarantor against Borrower, whenever arising, are hereby subordinated to the Credit and assigned to Lender as additional collateral. If Lender so requests, any note or other instrument evidencing such indebtedness and all claims of Guarantor against Borrower shall be delivered to Lender, and such indebtedness and all claims of Guarantor against Borrower shall be collected, enforced and received by Guarantor as trustee for Lender and be paid over to Lender on account of the Credit and shall reduce liability of Guarantor hereunder. Should Guarantor fail to collect proceeds of debt owed to it by Borrower and pay the proceeds to Lender, Lender, as Guarantor's attorney-in-fact may do such acts and sign such documents in Guarantor's name as Lender considers

necessary, at its discretion, to effect such collection, and Guarantor hereby irrevocably appoints Lender as Guarantor's attorney-in-fact for such purposes. If Borrower is a corporation, limited liability company or partnership, Guarantor will not withdraw or accept, without Lender's prior written consent, any return of any capital invested or equity interest in Borrower (i) following the occurrence of an Event of Default (as defined in the Agreement) and during the continuance thereof, or (ii) if such withdrawal or acceptance would cause an Event of Default.

14. Guarantor agrees that to the extent Borrower makes a payment or payments or is credited for any payment or payments made for the account of or on behalf of Borrower to Lender, which payment or payments, or any part thereof, are subsequently invalidated, determined to be fraudulent or preferential, voided, set aside and/or required to be repaid to any trustee, receiver, assignee or any other party whether under any bankruptcy, state or federal law, common law or equitable cause or otherwise, then to the extent thereof, the obligation or part thereof intended to be satisfied thereby, together with the guaranty thereof hereunder, shall be revived, reinstated and continued in full force and effect as if said payment or payments had not originally been made by or for the account of or on behalf of Borrower.

15. Guarantor agrees that to the extent Guarantor makes a payment or payments or is credited for any payment or payments made for the account of or on behalf of Guarantor to Lender, which payment or payments, or any part thereof, are subsequently invalidated, determined to be fraudulent or preferential, voided, set aside and/or required to be repaid to any trustee, receiver, assignee or any other party whether under any bankruptcy, state or federal law, common law or equitable cause or otherwise, then to the extent thereof, the obligation or part thereof intended to be satisfied thereby, shall be revived, reinstated and continued in full force and effect as if said payment or payments had not originally been made by or for the account of or on behalf of Guarantor.

16. Guarantor's obligations hereunder are not contingent upon and are independent of the obligations of Borrower, or any other guarantor or surety of the Credit. This Guaranty is not made in consideration of the liability of any other guarantor or surety of the Credit. The release or death of any guarantor of the Credit or the revocation of any guaranty shall not release or otherwise affect the liability of any other non-revoking guarantor. A separate action or actions may be brought and prosecuted against Guarantor whether action is brought against Borrower or any other guarantor or whether Borrower or any other guarantor be joined in any such action or actions.

17. To the maximum extent permitted by law, Guarantor specifically waives the benefit of the statute of limitations affecting its liability hereunder or the enforcement hereof, or the collection of any Credit, including, without limiting the foregoing, any and all special statutes of limitations arising out of California Code of Civil Procedure sections 580a or 726(b). Any partial payment by Borrower which operates to toll any statute of limitations as to Borrower shall likewise toll the statute of limitations as to Guarantor.

18. Any married Guarantor who signs this Guaranty expressly agrees that recourse may be had against his/her separate property as well as all community property

over which that person has a power of management and control, for all of his/her obligations hereunder. Notwithstanding anything to the contrary contained herein and for the avoidance of doubt, in no event shall any of the separate property of Guarantor's spouse be subject to or bound by any of the obligations of Guarantor hereunder.

19. Should any one or more provisions of this Guaranty be determined to be illegal or unenforceable, all other provisions shall remain effective.

20. Lender may, with or without notice, assign this Guaranty in whole or in part. This Guaranty shall inure to the benefit of Lender, its successors and assigns, and shall bind Guarantor and Guarantor's heirs, executors, administrators, representatives, successors and assigns.

21. Guarantor agrees to pay to Lender, on demand, all attorneys' fees and all other costs and expenses which may be incurred by Lender in the collection or attempted collection from Borrower of any Credit and/or in the interpretation, enforcement or attempted enforcement by Lender of this Guaranty or any collateral therefor, including, but not limited to, proceedings in any bankruptcy or other insolvency case or other proceedings touching the Credit or this Guaranty, or both, in any manner, whether or not legal proceedings or suit are instituted, together with interest thereon at the rate applicable to the Credit and including, without limitation, all attorneys' fees and related costs of enforcement of any and all judgments and awards and upon any appeal relating thereto.

22. Guarantor warrants and represents to Lender that:

(a) All financial statements and other financial information furnished or to be furnished to Lender by Guarantor are or will be true and correct in all material respects and do and will fairly represent the financial condition of Guarantor (including all contingent liabilities) as of the dates thereof; and

(b) To the best of Guarantor's knowledge, there has been no material adverse change in Guarantor's financial condition since the dates of the financial statements and other information furnished to Lender, except as previously disclosed to Lender in writing..

23. Lender may declare Guarantor in default under this Guaranty upon the occurrence of any of the following events:

(a) Guarantor fails to pay or perform any of Guarantor's obligations under this Guaranty within five (5) days following written demand from Lender regarding such failure; or

(b) Any representation or warranty made or given by Guarantor to Lender proves to be false or misleading in any material respect when made by Guarantor; or

(c) A petition or action for relief shall be filed by or against Guarantor, pursuant to the Federal Bankruptcy Code (Title 11, U.S. Codes) in effect from time to time, or under any other law relating to bankruptcy, insolvency, reorganization,

moratorium, creditor composition, arrangement or other relief from debts; the appointment of a receiver, trustee, custodian or liquidator of or for any property of Guarantor; or upon the death, incapacity, insolvency, dissolution, or termination of the business of Guarantor; or

(d) Guarantor revokes or attempts to revoke this Guaranty.

24 If Borrower is a corporation, limited liability company or partnership, Lender need not inquire into the power of Borrower or the authority of its officers, directors, partners, agents, members or managers acting or purporting to act in its behalf, and any Credit granted in reliance upon the purported exercise of such power or authority is guaranteed hereunder.

25. Receipt of a true copy of this Guaranty is hereby acknowledged by Guarantor. Guarantor understands and agrees that Lender's acceptance of this Guaranty shall not constitute a commitment of any nature whatsoever by Lender to extend, renew or hereafter extend credit to Borrower. Guarantor agrees that this Guaranty shall be effective with or without notice from Lender of its acceptance of this Guaranty.

26. If Guarantor has executed more than one Guaranty of any or all indebtedness of Borrower owed to Lender, any limits of liability thereunder and hereunder shall be cumulative, and a subsequent guaranty executed by Guarantor shall not supersede or replace this Guaranty unless such subsequent guaranty so provides.

27. Guarantor waives all rights to interpose any setoffs or counterclaims of any nature in any action or proceeding instituted by Lender with respect to this Guaranty (other than compulsory counterclaim), the collateral therefor, or any matter arising therefrom or relating thereto and the posting of any bond which may otherwise be required, and waives any and all benefits of cross-demands pursuant to section 431.70 of the California Code of Civil Procedure.

28. Guarantor hereby irrevocably submits and consents to the jurisdiction of any federal or state court of competent jurisdiction within California in connection with any action or proceeding arising out of or relating to this Guaranty. In any such litigation, Guarantor consents to service of process by any means authorized by California or federal law or as otherwise agreed in writing between Lender and Guarantor.

29. All rights, remedies, powers and benefits granted to Lender under this Guaranty, the Credit, any oral or other written agreement or applicable law whether expressly granted or implied in law or otherwise, are cumulative and not exclusive, and are enforceable alternatively, successively, or concurrently on any one or more occasions at Lender's discretion.

30. Lender shall not, by any act, delay, omission or otherwise be deemed to have expressly or impliedly waived any security interest granted to Lender hereunder or Lender's rights, powers and/or remedies hereunder (including any right of setoff) unless such waiver shall be in writing and signed by an authorized officer of Lender. Any such waiver shall be enforceable only to the extent specifically set forth therein. A waiver by Lender of any default, right, power and/or remedy on any one occasion shall not be

construed as a bar to or waiver of any such default, right, power and/or remedy which Lender would otherwise have on any future occasion whether similar in kind or otherwise. Any failure by Lender to file or enforce a claim against the estate (whether in administration, bankruptcy, probate or other proceeding) of Borrower or of any others, shall not affect Guarantor's liability hereunder.

31. Neither this Guaranty nor any related agreement, document or instrument nor any provision hereof or thereof shall be amended, modified or discharged orally or by course of conduct, but only by a written agreement signed by an authorized officer of Lender expressly referring to this Guaranty and to the provisions so amended, modified or discharged.

32. Lender's books and records showing the account(s) between Lender and Borrower shall be admissible in evidence in any action or proceeding as prima facie proof of the items set forth therein. Lender's statements rendered to Borrower, to the extent to which no objection is made within thirty (30) days after date thereof, shall be deemed conclusively correct and constitute an account stated absent manifest error, which shall be binding on Guarantor whether or not Guarantor receives a copy of any such statement or notice thereof.

33. This is a continuing guaranty of the Credit, including those arising after any repayment and reborrowing and under any successive and future transactions which may increase, renew or continue the original Credit. Revocation of this Guaranty, if permitted by applicable law, shall be effective only upon the close of the next business day after written notice thereof is received by an officer of Lender by certified or registered mail, return receipt requested at 601 S. Figueroa Street, 47th Floor, Los Angeles, California 90017, Attention: Note Department, or at any other office of Lender designated in a written notice mailed by Lender to Guarantor at its address set forth below. Any such revocation shall be effective only as to the revoking party and shall not affect that party's obligations with respect to Credit existing before the revocation became effective or as to any renewals, extensions or modifications of any Credit, whether such renewal, extension or modification is made prior to or after revocation, including those evidenced by a new or additional instrument or agreement or which change the rate of interest on any Credit, or for post-revocation interest and collection expenses accruing or incurred by Lender with respect thereto. Notwithstanding any revocation hereof, this Guaranty shall not be terminated until Lender has received indefeasible payment in full of all Credit which is guaranteed hereby and, in regard to which Credit, Lender no longer has an outstanding commitment to lend. Credit existing before revocation becomes effective shall be deemed to include, without limitation, all Credit or advances which Lender has committed to make to Borrower in reliance upon this Guaranty, even though the amount of such Credit or advances has not been advanced as of the effective date of revocation, and even though Lender may have defenses or defaults which would relieve it of such commitment, if asserted.

34. The provisions of this Guaranty shall be construed and interpreted and all rights and obligations hereunder determined in accordance with the laws of the State of California.

35. GUARANTOR ACKNOWLEDGES THAT LENDER HAS OR MAY IN

THE FUTURE EXTEND CREDIT TO BORROWER IN RELIANCE ON GUARANTOR'S UNCONDITIONAL PROMISE TO REPAY ANY AND ALL CREDIT AND LENDER IS RELYING ON THE WAIVERS, WARRANTIES AND PROMISES MADE BY GUARANTOR IN THIS GUARANTY. GUARANTOR AGREES THAT EACH OF THE WAIVERS, WARRANTIES AND PROMISES SET FORTH IN THIS GUARANTY ARE MADE WITH GUARANTOR'S UNDERSTANDING OF THEIR SIGNIFICANCE AND CONSEQUENCES AND THAT THEY ARE REASONABLE. IF ANY WAIVERS, WARRANTIES AND PROMISES ARE DETERMINED TO BE CONTRARY TO ANY APPLICABLE LAW OR PUBLIC POLICY, SUCH WAIVERS, WARRANTIES AND PROMISES SHALL BE EFFECTIVE TO THE MAXIMUM EXTENT PERMITTED BY LAW. BEFORE SIGNING THE GUARANTY, GUARANTOR HAS EITHER SOUGHT THE ADVICE OF COUNSEL TO EXPLAIN THE WAIVERS OF ITS RIGHTS AND DEFENSES AS STATED HEREIN AND THE EFFECT THEREOF, OR HAS HAD THE OPPORTUNITY TO SEEK SUCH COUNSEL, AND IN ANY EVENT, INTENDS THIS GUARANTY TO BE AS UNRESTRICTED AS POSSIBLE. GUARANTOR THEREFORE HAS CONSCIOUSLY AND INTENTIONALLY WAIVED ALL DEFENSES OF GUARANTOR AND RIGHTS WHICH COULD EXONERATE GUARANTOR HEREUNDER TO THE FULL EXTENT PERMITTED BY THE LAWS OF THE STATE OF CALIFORNIA, WHETHER OR NOT EACH AND EVERY DEFENSE, RIGHT OR WAIVER IS EXPLAINED OR DESCRIBED IN DETAIL IN THIS GUARANTY.

36. GUARANTOR ACKNOWLEDGES THAT NEITHER LENDER NOR ANY OF LENDER'S OFFICERS OR EMPLOYEES HAVE MADE ANY PROMISE OR REPRESENTATION, NOT INCORPORATED HEREIN, WHETHER ORAL, WRITTEN OR IMPLIED, TO CAUSE GUARANTOR TO SIGN THIS GUARANTY. GUARANTOR IS NOT SIGNING THIS GUARANTY IN RELIANCE ON ANY PROMISE, CONDITION OR THE ANTICIPATION OF THE OCCURRENCE OF ANY EVENT, AND THERE ARE NO ORAL UNDERSTANDINGS, STATEMENTS OR AGREEMENTS WHICH HAVE NOT BEEN INCLUDED IN THIS GUARANTY. GUARANTOR UNDERSTANDS THAT LENDER HAS THE RIGHT TO ENFORCE PAYMENT OF THE CREDIT AGAINST BORROWER OR GUARANTOR IN ANY ORDER AND LENDER IS NOT OBLIGATED TO OBTAIN ANY OTHER OR ADDITIONAL GUARANTORS OF THE CREDIT OR TO TAKE ANY OTHER COURSE OF ACTION.

37. This Guaranty constitutes the entire agreement between the parties with respect to the subject matter of this Guaranty, and any and all previous or contemporaneous correspondence, statements, or agreements by or between the parties hereto with respect to the subject matter of this Guaranty (but not previous or other guarantees given to Lender by Guarantor) are superseded hereby. This Guaranty may be modified only by a written instrument signed by the parties hereto.

38. This Guaranty is secured by Guarantor's real property pursuant to that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing of even date herewith, executed by Guarantor in favor of Lender.

39. Guarantor acknowledges that federal law requires all financial institutions

to obtain, verify and record information that identifies each person who opens an account or obtains a loan. Guarantor further acknowledges that Lender will ask for Borrower's and Guarantor's legal name, address, tax ID number or social security number and other identifying information and that Lender may also ask for additional information or documentation or take other actions reasonably necessary to verify the identity of Borrower, Guarantor or other related Persons.

40. Guarantor agrees and consents to Lender's (a) sale, transfer, pledge or assignment, whether now or later, of this Guaranty and/or any of the Loan Documents, or any or all servicing rights with respect thereto, and/or (b) sale or transfer, whether now or later, of one or more participation interests in the loan guaranteed by this Guaranty ("Loan") to one or more purchasers, whether related or unrelated to Lender. Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Guarantor, Borrower or about any other matter relating to the Loan or this Guaranty, and Guarantor hereby waives any rights to privacy Guarantor may have with respect to such matters. Guarantor additionally waives any and all notices of sale or sale of participation interests, as well as all notices of any repurchase of participation interests. Guarantor also agrees that the purchasers of this Guaranty and/or any Loan Documents or participation interests will be considered as the absolute owners of such interests in the Guaranty and/or Loan, as applicable, and will have all the rights granted under the agreement or agreements governing the sale of such interests. Guarantor further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of this Guaranty or such Loan Documents or participant of the Loan and unconditionally agrees that either Lender or such purchaser or participant may enforce Guarantor's obligation under this Guaranty irrespective of the failure or insolvency of any holder of any interest in the Loan and/or this Guaranty. Guarantor further agrees that the purchaser of any such interests may enforce its interests irrespective of any personal claims or defenses that Guarantor may have against Lender.

41. Notice. Any notice, request, direction, demand, consent, waiver, approval or other communication required or permitted to be given hereunder shall not be effective unless it is given in writing and shall be delivered (a) in person, (b) by certified mail, postage prepaid, return receipt requested, (c) by facsimile (any notice given by facsimile must be confirmed within 48 hours by letter mailed via regular mail to eth appropriate party), or (d) by a commercial overnight courier that guarantees next day delivery and provides a receipt, and addressed to the parties at the addresses stated below, or at such other address as either party may hereafter notify the other in writing as aforementioned:

| | |
|---|---|
| If to Guarantor: | SDRES PARTNERS LLC<br>520 Newport Center Drive, Suite 480<br>Newport Beach, California 92660 |
| If to Lender: | PREFERRED BANK<br>601 S. Figueroa Street, 29th Floor<br>Los Angeles, California 90017<br>Attn: Note Department/Carol Lee |

Service of any such notice or other communications so made shall be deemed effective when made in person, when deposited in the mails or when the facsimile is sent, as applicable (whether accepted or refused).

42. **JUDICIAL REFERENCE**. THE PARTIES HEREBY AGREE THAT ANY CLAIMS, CONTROVERSIES, DISPUTES, OR QUESTIONS OF INTERPRETATION, WHETHER LEGAL OR EQUITABLE, ARISING OUT OF, CONCERNING OR RELATED TO THIS GUARANTY AND ALL LOAN DOCUMENTS EXECUTED BY GUARANTOR SHALL BE HEARD BY A SINGLE REFEREE BY CONSENSUAL GENERAL JUDICIAL REFERENCE PURSUANT TO THE PROVISIONS OF CALIFORNIA CODE OF CIVIL PROCEDURE SECTS 638 ET SEQ., WHO SHALL DETERMINE ALL ISSUES OF FACT OR LAW AND TO REPORT A STATEMENT OF DECISION. THE REFEREE SHALL ALSO HAVE THE POWER TO HEAR AND DETERMINE PROCEEDINGS FOR ANCILLARY RELIEF, INCLUDING, BUT NOT LIMITED TO, APPLICATIONS FOR ATTACHMENT, ISSUANCE OF INJUNCTIVE RELIEF, APPOINTMENT OF A RECEIVER, AND/OR CLAIM AND DELIVERY. THE COSTS OF THE PROCEEDING SHALL BE BORNE EQUALLY BY THE PARTIES TO THE DISPUTE, SUBJECT TO THE DISCRETION OF THE REFEREE TO ALLOCATE SUCH COSTS BASED ON A DETERMINATION AS TO THE PREVAILING PARTY(IES) IN THE PROCEEDING. BY INITIALING BELOW THE PARTIES ACKNOWLEDGE THAT THEY HAVE READ AND UNDERSTAND THE FOREGOING JUDICIAL REFERENCE PROVISIONS AND UNDERSTAND THAT THEY ARE WAIVING THEIR RIGHT TO A JURY TRIAL.

Guarantor has initialed below to further indicate its awareness and acceptance of each and every provision hereof.

______________________
Guarantor's Initials

[Signature page to follow.]

IN WITNESS WHEREOF, the Guarantor has executed this Guaranty as of the date set forth above.

**GUARANTOR:**

SDRES PARTNERS LLC,
a California limited liability company

By: ______________________________
Name: Banayotis Haddad
Its: Manager

Address: 520 Newport Center Drive, Suite 480
Newport Beach, California 92660

# Exhibit DD

# EXTENSION AGREEMENT

THIS EXTENSION AGREEMENT (this "Extension Agreement") is entered into as of June 6, 2025, and effective as of June 13, 2025, by and between ANDREW STUPIN, an individual , an individual ("Borrower"), and SDRES PARTNERS LLC, a California limited liability company ("Guarantor"), on the one hand, and PREFERRED BANK, a California banking corporation ("Lender"), on the other hand.

## RECITALS

A. Lender has provided a non-revolving line of credit (the "Loan") to Borrower for the purpose of providing Borrower with short-term capital for business investments. The Loan was and is evidenced, in part, by that certain Promissory Note dated December 13, 2023, in the maximum principal amount of Four Hundred Thousand and No/100 Dollars ($400,000.00), executed by Borrower in favor of Lender (together with any and all amendments and extensions thereto or modifications thereof, the "Note"). In connection with the Loan, Borrower and Lender executed that certain Loan Agreement dated December 13, 2023 (together with any and all amendments and extensions thereto or modifications thereof, the "Loan Agreement").

B. Payment and performance of Borrower's indebtedness and obligations in connection with the Loan was and is guaranteed by Guarantor pursuant to that certain Secured Continuing Guaranty dated as of December 13, 2023, executed by Guarantor in favor of Lender (together with any and all amendments to or modifications thereof, the "Guaranty").

C. The Guaranty is secured by, among other things, that certain (i) Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated December 13, 2023 (together with any and all amendments thereto or modifications thereof, the "Guarantor Deed of Trust"), executed by Guarantor, as trustor, in favor of Lender, which was recorded on January 5, 2024, as Instrument No. 20240011708, in the Official Records of Los Angeles County, California, encumbering the real property more particularly described in Exhibit "A" attached hereto and incorporated herein by this reference (the "Property"), and (ii) Absolute Assignment of Leases, Lease Guaranties, Rents, Issues and Profits dated December 13, 2023 (the "Guarantor Assignment of Leases"), executed by Guarantor in favor of Lender, which was recorded January 5, 2024, as Instrument No. 20240011709 in the Official Records of Los Angeles County, California. Borrower and Guarantor also executed that certain Hazardous Substances Indemnity Agreement dated December 13, 2023 (the "Guarantor Hazardous Indemnity"), in favor of Lender.

D. Pursuant to the Guarantor Deed of Trust, Guarantor granted to and in favor of Lender a second priority security interest in and lien upon certain real and personal property described in the Guarantor Deed of Trust (the "Guarantor Deed of Trust Collateral"), to secure, without limitation, payment and performance of the indebtedness and obligations of Guarantor under and in connection with the Guaranty. Lender's security interest in the Guarantor Deed of Trust Collateral was and is perfected under applicable law.

E. The Note, Loan Agreement, Guaranty, Guarantor Deed of Trust, Guarantor Assignment of Leases, Guarantor Hazardous Indemnity and all other assignments, agreements,

instruments and other documents executed by Borrower or Guarantor in connection with the Loan shall at times hereinafter be referred to collectively as the "Loan Documents."

F. Borrower and Guarantor have each requested that Lender (i) extend the maturity date of the Loan from June 13, 2025 to August 13, 2025, and (ii) approve of the change in Manager of Guarantor from Banayotis Haddad to Jason Miller (the "Guarantor Manager Change"), and Lender is willing to agree to said request, subject to the terms and conditions set forth in this Extension Agreement.

Except as may be otherwise expressly defined in this Agreement, all terms used in this Agreement beginning with a capital letter shall have the meanings ascribed to them in the Loan Agreement.

**AGREEMENT**

NOW, THEREFORE, for valuable consideration and the mutual promises of the parties hereto, said parties do hereby acknowledge and agree as follows:

1. Recitals.

The recitals are incorporated herein by this reference as are all exhibits. Borrower and Guarantor, and each of them, agree and acknowledge that the factual information recited above is true and correct.

2. Borrower and Guarantor Acknowledgment as to Obligations.

A. Borrower, and Guarantor each acknowledge, confirm and agree that as of June 3, 2025, (i) the total outstanding principal balance of the Note is $331,618.78, plus accrued and unpaid interest thereon, and (ii) the total amount of Loan Proceeds available as Interest Reserve is $45,974.01 ("Available Interest Reserve"). Other than the Available Interest Reserve which shall be disbursed pursuant to Section 4(B) below, the parties hereto agree and acknowledge that Lender shall have no obligation whatsoever to disburse any further Loan Proceeds.

B. Borrower and Guarantor, and each of them, specifically acknowledge and confirm that they do not have any valid offset or defense to the obligations, indebtedness and liability under the Loan Documents.

3. Reaffirmation of Obligations.

This Extension Agreement is, in part, a reaffirmation of the obligations, indebtedness and liability of Borrower and Guarantor, and each of them, to Lender as evidenced by the Loan Documents. Therefore, Borrower and Guarantor, and each of them, acknowledge and agree that, except as specified herein, all of the terms and conditions of the Loan Documents are and shall remain in full force and effect, without waiver or modification of any kind whatsoever, and are ratified and confirmed in all respects.

4. Extension of Maturity Date; Available Interest Reserve; Management Change of Guarantor.

A. The Maturity Date is hereby extended from June 13, 2025 to August 13, 2025, at which time the entire principal balance under the Loan plus all accrued and unpaid interest thereon is and shall be due and payable as provided under the Loan Documents. Any and all references to the "Maturity Date" in the Loan Agreement, the Note and the other Loan Documents shall mean August 13, 2025. Section 3.5.2 of the Loan Agreement is hereby deleted in its entirety and Lender has no obligation whatsoever to extend the Maturity Date beyond August 13, 2025.

B. Pursuant to Section 3.11 of the Loan Agreement, Borrower hereby authorizes Lender on a monthly basis to continue to disburse from the Available Interest Reserve the amount of interest due under the Note during the extension period provided in this Extension Agreement, without further authorization on the part of Borrower. Upon the occurrence of any Event of Default, Lender may continue to make disbursements from the Available Interest Reserve of the amounts of interest accrued and unpaid under the Note, in Lender's sole and absolute opinion and judgment, without further authorization on the part of Borrower. Notwithstanding the existence of the Available Interest Reserve, Borrower shall be responsible to pay interest due under the terms of the Note from funds other than the Available Interest Reserve in the event the Available Interest Reserve has been disbursed in its entirety or upon the occurrence of an Event of Default. In the event that the Interest Reserve is from time to time insufficient to pay interest due under the terms of the Note, Borrower shall, within ten (10) Business Days after demand of Lender, deposit into a non-interest bearing demand deposit account with Lender additional funds for the Interest Reserve, in such amounts as Lender may designate, in Lender's sole opinion and judgment. Borrower agrees to execute an assignment of deposit account in form and content acceptable to Lender, in its sole discretion, granting a security interest to Lender in such account as additional security for the Loan. Borrower acknowledges that Lender has made no representation or warranty concerning the adequacy or sufficiency of the Interest Reserve for payment of interest on the Loan or any portion thereof.

C. Lender hereby consents to the Guarantor Manager Change.

5. Extension Agreement as a Loan Document.

From and after the effective date of this Extension Agreement, this Extension Agreement and any other documents and instruments executed in connection herewith shall each constitute one of the "Loan Documents."

6. Effective Date of Extension Agreement.

This Extension Agreement and the amendments provided for herein shall be effective as of June 13, 2025, subject to the timely and complete satisfaction of each and all of the conditions precedent set forth in Section 8 of this Extension Agreement.

7. Borrower's and Guarantor's Representations and Warranties.

Borrower and Guarantor, and each of them, hereby represent and warrant to Lender and covenant and agree with Lender as follows:

A. Borrower and Guarantor, and each of them, have full legal right, power and authority to enter into and perform this Extension Agreement. The execution and delivery of this Extension Agreement by Borrower and the consummation by Borrower of the transactions contemplated hereby have been duly authorized by all necessary action by or on behalf of Borrower. This Extension Agreement is a valid and binding obligation of Borrower and Guarantor, and each of them, enforceable against Borrower and Guarantor in accordance with its terms.

B. Neither the execution and delivery of this Extension Agreement by Borrower and Guarantor, or any of them, nor the consummation by Borrower and Guarantor, or any of them, of the transactions contemplated hereby, conflicts with or constitutes a violation or a default under any law or regulation applicable to Borrower and Guarantor, or any of them, or any contract, commitment, agreement, arrangement or restriction of any kind to which Borrower and Guarantor, or any of them, is a party, by which Borrower and Guarantor, or any of them, is bound or to which any of Borrower's and Guarantor's, or any of their, property or assets is subject.

C. There are no actions, suits or proceedings pending, or to the knowledge of Borrower and Guarantor, or any of them, threatened against or affecting Borrower and Guarantor, or any of them, respectively, in relation to their obligations to Lender or involving the validity and enforceability of this Extension Agreement, the Loan Agreement, the Guaranty, the Guarantor Deed of Trust or any of the other Loan Documents, as applicable, or the priority of any liens given by Borrower to Lender in accordance with the Note, the Loan Agreement, the Guarantor Deed of Trust, and the other Loan Documents, at Law or in equity, or before or by any Governmental Agency, or which could have a material adverse effect on the financial condition, operations, properties, assets, liabilities or earnings of Borrower and Guarantor, or any of them, or the ability of Borrower and Guarantor, or any of them, to perform their respective obligations to Lender.

D. Borrower and Guarantor, and each of them, hereby reaffirm and confirm that the representations and warranties of Borrower and Guarantor, as applicable, contained in the Loan Documents are true, correct and complete in all material respects as of the date of this Extension Agreement.

E. Borrower and Guarantor, and each of them, are in full and complete compliance with the terms, covenants, provisions and conditions of the Note, the Loan Agreement, the Guaranty, the Guarantor Deed of Trust and the other Loan Documents.

F. Neither Borrower nor Guarantor has any actual knowledge of any release of Hazardous Substances (as defined in the Indemnity Agreement) on the Property.

All covenants, representations and warranties of Borrower and Guarantor herein are incorporated by reference and hereby made a part of the Loan Agreement and the Guaranty, as applicable.

8. Conditions Precedent to Effectiveness of Extension Agreement.

The effectiveness of this Extension Agreement is expressly conditioned upon Borrower having, at its sole expense, deposited or caused to be deposited with Lender by no later than June 25, 2025, all of the following items, documents, certificates and other instruments, in form and content satisfactory to Lender and its counsel, in their sole and absolute discretion, and suitable for filing or recording as required:

A. Payment to Lender of an extension fee in the amount of $2,500.00

B. This Extension Agreement, fully executed by Borrower and Guarantor;

C. An updated authorization of Guarantor, together with any amendments to the organizational documents of Guarantor, reflecting the Guarantor Management Change;

D. Such additional information, assignments, agreements, certificates, reports, approvals, instruments, documents, subordination agreements, financing statements, consents and opinions as Lender may request, in its sole and absolute opinion and judgment, in connection with this Extension Agreement and/or any of the matters which are the subject of this Extension Agreement; and

E. [Intentionally omitted.]

9. General Release.

A. Except as to the obligations imposed upon Lender, as provided herein, Borrower and Guarantor, and each of them, on behalf of themselves, their respective successors and assigns, and each of them, do each hereby forever relieve, release, acquit and discharge Lender and its predecessors, successors and assigns, and their respective past and present attorneys, accountants, insurers, representatives, affiliates, partners, subsidiaries, officers, employees, directors, and shareholders, and each of them (collectively, the "Released Parties"), from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, costs and expenses (including, but not limited to, attorneys' fees), damages, injuries, actions and causes of action, of whatever kind or nature, whether legal or equitable, known or unknown, suspected or unsuspected, contingent or fixed, which Borrower and Guarantor, or any of them, now own or hold or have at any time heretofore owned or held or may at any time hereafter own or hold against the Released Parties, or any of them, by reason of any acts, facts, transactions or any circumstances whatsoever occurring or existing through the date of this Extension Agreement, including, but not limited to, those based upon, arising out of, appertaining to, or in connection with the Recitals above, the Loan, the Loan Documents, the facts pertaining to this Extension Agreement, any collateral heretofore granted to Lender or granted in connection herewith, or to any other obligations of Borrower and/or Guarantor to Lender, all jointly and severally.

B. As to the matters released herein, Borrower and Guarantor, and each of them, expressly waive any and all rights under Section 1542 of the Civil Code of the State of California, which provides as follows:

> "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

Borrower and Guarantor, and each of them, expressly waive and release any right or benefit which they have or may have under Section 1542 of the Civil Code of the State of California, and any similar law of any state, territory, commonwealth or possession of the United States, or the United States, to the full extent that they may waive all such rights and benefits pertaining to the matters released herein. In connection with such waiver and relinquishment, Borrower and Guarantor, and each of them, acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true. Nevertheless, it is the intention of Borrower and Guarantor, and each of them, through this Extension Agreement, to fully, finally and forever release all such matters, and all claims relative thereto, which do now exist, may exist, or heretofore have existed. In furtherance of such intention, the release herein given shall be and remain in effect as a full and complete release of such matters notwithstanding the discovery or existence of any such additional or different claims or facts relative thereto.

C. In entering into the release provided for in this Extension Agreement, Borrower and Guarantor, and each of them, recognize that no facts or representations are ever absolutely certain; accordingly, Borrower and Guarantor, and each of them, assume the risk of any misrepresentation, concealment or mistake, and if Borrower and Guarantor, or any of them, should subsequently discover that any fact that they relied upon in entering into these releases was untrue, or that any fact was concealed from them, or that any understanding of the facts or of the law was incorrect, Borrower and Guarantor, and each of them, shall be not entitled to set aside these releases by reason thereof, regardless of any claims of fraud, misrepresentation, promise made without the intention of performing it, concealment of fact, mistake of fact or law, or any other circumstances whatsoever.

D. Borrower and Guarantor, and each of them, are the sole and lawful owners of all right, title and interest in and to every claim and other matter which they purport to release herein, and they have not heretofore assigned or transferred, or purported to assign or transfer to any person or any entity claims or other matters herein released. Borrower and Guarantor, and each of them, shall indemnify, defend and hold Lender and each of the other Released Parties, harmless from and against any claims, liabilities, actions, causes of action, demands, injuries, costs, and expenses (including, but not limited to, attorneys' fees), based upon or arising in connection with any such prior assignment or transfer, or any such purported assignment or transfer, or any claims or other matters released herein.

10. <u>Revival of Obligation</u>.

A. Borrower and Guarantor, and each of them, acknowledge and agree that in the event that the payment of money, this Extension Agreement, or the grant of collateral should for any reason subsequently be declared to be "fraudulent" within the meaning of any state, federal or foreign law relating to fraudulent conveyances, preferential or otherwise voidable or

recoverable, in whole or in part, for any reason, under the United States Bankruptcy Code or any other federal, foreign or state law (collectively referred to herein as "Voidable Transfer"), and Lender is required to pay or restore any such Voidable Transfer, or any portion thereof, then as to that which is repaid or restored pursuant to any such Voidable Transfer (including all costs, expenses and attorneys' fees of Lender related thereto, including, without limitation, relief from stay or similar proceedings), the liability of Borrower and Guarantor, and each of them, shall automatically be revived, reinstated and restored to the extent thereof, and shall exist as though such Voidable Transfer had never been made to Lender.

B. Nothing set forth herein is an admission that such Voidable Transfer has occurred. Borrower and Guarantor, and each of them, expressly acknowledge that Lender may rely upon advice of counsel, and if so advised by counsel, may, in the exercise of Lender's sole opinion and judgment, settle, without defending, any action to void any alleged Voidable Transfer, and that upon such settlement, Borrower and Guarantor, and each of them, shall again be liable for any deficiency resulting from such settlement as provided in this Extension Agreement.

C. As an additional inducement to and material consideration for Lender agreeing to the extension provided in this Extension Agreement, Borrower and Guarantor, and each of them, agree that in the event a Bankruptcy or Judicial Action (as hereinafter defined in this Section 10) is commenced which subjects Lender to any stay in the exercise of Lender's rights and remedies under the Loan Documents including, but not limited to, the automatic stay imposed by Section 362 of the United States Bankruptcy Code (individually and collectively, "Stay"), then Borrower and Guarantor, and each of them, irrevocably consent and agree that such Stay shall automatically be lifted and released against Lender, and Lender shall thereafter be entitled to exercise all of its rights and remedies against Borrower and Guarantor, and each of them, under the Loan Documents, subject, however, to the terms and conditions of this Extension Agreement. Borrower and Guarantor, and each of them, acknowledge that each is knowingly, voluntarily, and intentionally waiving each of such party's rights to any Stay and agrees that the benefits provided to Borrower and Guarantor under the terms of this Extension Agreement are valuable consideration for such waiver. As used in this Section 10, the term "Bankruptcy or Judicial Action" shall mean any voluntary or involuntary case filed by or against Borrower and/or Guarantor, or any of them, under the United States Bankruptcy Code, or any voluntary or involuntary petition in composition, readjustment, liquidation, or dissolution, or any state and federal bankruptcy law action filed by or against Borrower and Guarantor, or any of them, any action where Borrower or Guarantor, or any of them, are adjudicated as bankrupt or insolvent, any action for dissolution of Borrower or Guarantor, or any of them, or any action in furtherance of any of the foregoing, or any other action, case, or proceeding that has the effect of staying (or in which a stay is being obtained against) the enforcement by Lender of its rights and remedies under this Extension Agreement, or any of the Loan Documents.

11. <u>No Joint Venture, Management and Control</u>. Notwithstanding any provision of this Extension Agreement and/or of the Loan Documents:

A. Lender is not and shall not be construed to be a partner, joint venture, alter ego, manager, controlling person or other business associate or participant of any kind of Borrower and Guarantor, or any of them, or any other person;

B. Lender shall not be deemed responsible to perform or participate in any acts, omissions, or decisions of Borrower and Guarantor, or any of them; and

C. Borrower and Guarantor, and each of them, do not have any claims, causes of action or defenses to their obligations to Lender based on any allegations of management or control exercised by Lender. Borrower and Guarantor, and each of them, acknowledge and agree that Lender does not manage or control them in any way.

12. Miscellaneous.

A. Section headings used in this Extension Agreement are for convenience only and shall not affect the construction of this Extension Agreement.

B. This Extension Agreement may be executed in one or more counterparts but all of the counterparts shall constitute one agreement; provided, however, this Extension Agreement shall not be effective and enforceable unless and until it is executed by all parties hereto.

C. This Extension Agreement and the other documents and instruments executed in connection therewith constitute the product of the negotiation of the parties hereto and the enforcement hereof shall be interpreted in a neutral manner, and not more strongly for or against any party based upon the source of the draftsmanship hereof.

D. This Extension Agreement shall be binding upon and inure to the benefit of Lender, Borrower and Guarantor, and each of them, and their respective successors and assigns, except that neither Borrower nor Guarantor shall assign their rights hereunder or any interest therein without the prior written consent of Lender.

E. This Extension Agreement is not a novation, nor, except as expressly provided in this Extension Agreement, is it to be construed as a release or modification of any of the terms, conditions, warranties, waivers or rights set forth in the Loan Documents. Nothing contained in this Extension Agreement shall be deemed to constitute a waiver by Lender of any required performance by Borrower or Guarantor, and each of them, of any Event of Default or default heretofore or hereafter occurring under or in connection with the other Loan Documents. In the event there is a conflict in any term, condition or provision of this Extension Agreement, on the one hand, and the Note, the Loan Agreement, the Guaranty, the Guarantor Deed of Trust, or any of the other Loan Documents, on the other hand, the terms, conditions and provisions of this Extension Agreement are to control.

F. Borrower and Guarantor, and each of them, further represent and warrant as follows:

(1) They have received, or have had the opportunity to receive, independent legal advice from attorneys of each of their choice with respect to the advisability of executing this Extension Agreement and prior to the execution of this Extension Agreement by Borrower and Guarantor, their attorneys reviewed this Extension Agreement and discussed this Extension Agreement with them and have made all desired changes;

(2) Except as expressly stated in this Extension Agreement, neither Lender nor any other person or entity has made any statement or representation to Borrower or Guarantor regarding facts relied upon by any of them;

(3) Borrower and Guarantor, and each of them, do not rely upon any statement, representation or promise of Lender or any other person or entity in executing this Extension Agreement except as expressly stated in this Extension Agreement;

(4) The terms of this Extension Agreement are contractual and not a mere recital;

(5) This Extension Agreement has been carefully read by, the contents hereof are known and understood by, and it is signed freely by Borrower and Guarantor, and each of them; and

(6) This Extension Agreement and the releases contained herein are intended to be final and binding against Borrower and Guarantor, and each of them, and each of them acknowledge that Lender is expressly relying on the finality of this Extension Agreement as a substantial, material factor inducing Lender's execution of this Extension Agreement. Borrower and Guarantor, and each of them, have the full right and authority to enter into this Extension Agreement, and the officer, agent or other representative executing this Extension Agreement on behalf of Borrower has the full right and authority to fully commit and bind it to this Extension Agreement.

[Signatures to follow on next page]

IN WITNESS WHEREOF, Borrower, Guarantor and Lender have executed and delivered this Extension Agreement as of the date set forth above.

**BORROWER:**

______________________________
ANDREW STUPIN, an individual

**GUARANTOR:**

SDRES PARTNERS LLC,
a California limited liability company

By: ______________________________
Name: Jason Miller
Its: Manager

[Lender's signature to follow on next page.]

**IN WITNESS WHEREOF, Borrower, Guarantor and Lender have executed and delivered this Extension Agreement as of the date set forth above.**

**BORROWER:**

_______________________________
**ANDREW STUPIN, an individual**

**GUARANTOR:**

**SDRES PARTNERS LLC,**
**a California limited liability company**

**By:** _______________________________
**Name: Jason Miller**
**Its: Manager**

**[Lender's signature to follow on next page.]**

**LENDER:**

**PREFERRED BANK,**
**a California banking corporation**

**By:** ______________________
**Name:** Lingchu Lin
**Title:** FVP

**EXHIBIT "A"**
LEGAL DESCRIPTION

**The land referred to herein is situated in the State of California, County of Los Angeles, City of Pasadena and described as follows:**

Parcel 1-A:

Lot 10 of Tract No. 63103, in the City of Pasadena, as per Map recorded March 15, 2012, in Book 1369 Pages 35 through 52, of Maps in the Office of the County Recorder of said County, amended pursuant to that certain Certificate of Correction recorded December 3, 2013 as Instrument No. 20131708591, of Official Records.

Parcel 1-B:

A reciprocal access easement over those areas set out on the map shown above.

Parcel 1-C:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Consolidated Amended and Restated Driveway Easement agreement (South Orange Grove Parcels) recorded December 5, 2013 as Instrument No. 20131716500, of Official Records, more particularly described as set out therein.

Parcel 1-D:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Rose Parade Grandstand Easement Agreement (Orange Grove Avenue) recorded July 21, 2005 as Instrument Nos. 05-1721787 and as Instrument No. 05-1721788, both of Official Records, more particularly described as set out therein.

Parcel 1-E:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Parking Garage Easement Agreement recorded July 2, 2007 as Instrument No. 20071579026, of Official Records, more particularly described as set out therein.

Parcel 1-F:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Parking Easement Agreement recorded December 28, 2011 as Instrument No. 20111763712, of Official Records, more particularly described as set out therein.

Parcel 2-A:

Lot 12 of Tract No. 63103, in the City of Pasadena, County of Los Angeles, State of California, as per Map recorded March 15, 2012, in Book 1369, Pages 35 through 52 of Maps in the Office of the County recorder of said County, amended pursuant to that certain Certificate of Correction recorded December 3, 2013 as Instrument No. 20131708591, of Official Records.

Parcel 2-B:

A reciprocal access easement over those areas set out on the Map shown above.

Parcel 2-C :

An easement for the purposes herein stated and subject to the terms and provisions of that certain Consolidated Amended and Restated Driveway Easement Agreement (South Orange Grove Parcels) recorded December 5, 2013 as Instrument No. 20131716500, of Official Records, more particularly described as set out therein.

Parcel 2-D:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Amended and Restated Driveway Easement Agreement (Del Mar Parcel) recorded December 5, 2013 as Instrument No. 20131716499, of Official Records, more particularly described as set out therein.

Parcel 2-E:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Rose Parade Grandstand Easement Agreement (Orange Grove Avenue) recorded July 21, 2005 as Instrument No. 05-1721787, and Instrument No. 05-1721788, both of Official Records, more particularly described as set out therein.

Parcel 2-F:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Parking Garage Easement Agreement recorded July 2, 2007 as Instrument No. 20071579026, of Official Records, more particularly described as set out therein.

Parcel 2-G:

An easement for the purposes herein stated and subject to the terms and provisions of that certain Parking Easement Agreement recorded December 28, 2011 as Instrument No. 20111763712, of Official Records, more particularly described as set out therein

APN: 5713-013-057, 5713-027-065

(End of Legal Description)

# Exhibit EE

# LOAN MODIFICATION AGREEMENT

**THIS LOAN MODIFICATION AGREEMENT** (this "**Agreement**") is effective as of August 13, 2025 (the "**Effective Date**") by and among PREFERRED BANK, a California Banking corporation ("**Lender**"), ANDREW STUPIN, an individual ("**Borrower**") and SDRES PARTNERS LLC, a California ("**Guarantor**"). Borrower and Guarantor are referred to herein together as the "**Borrower Parties**". The Borrower Parties and Lender are sometimes referred to herein individually as a "**Party**" and together as the "**Parties**". All of the documents mentioned in the recitals set forth in the Statement of Background below are referred to herein collectively as the "**Loan Documents**". Notwithstanding the foregoing, following the effectiveness hereof, any and all references in any of the Loan Documents to any or all Loan Documents and to any time after the effectiveness hereof shall be deemed to refer to the Loan Document or Loan Documents, as modified or amended by this Agreement. Capitalized terms used herein without definition shall have the same meanings herein as when defined herein and in the Loan Documents.

## STATEMENT OF BACKGROUND

A. Lender made a non-revolving line of credit loan (the "**Loan**") to Borrower in the amount of $400,000.00, as evidenced by that certain (i) Loan Agreement dated as of December 13, 2023, entered into by and between Lender and Borrower (the "**Loan Agreement**") and (ii) Promissory Note dated as of December 13, 2023, in the original principal amount of $400,000.00 made by Borrower payable to the order of Lender (the "**Note**") for the purpose of providing Borrower with short-term capital for business investments

B. Payment and performance of Borrower's indebtedness and obligations in connection with the Loan was and is guaranteed by Guarantor pursuant to that certain Secured Continuing Guaranty dated as of December 13, 2023, executed by Guarantor in favor of Lender (together with any and all amendments to or modifications thereof, the "**Guaranty**").

C. The Guaranty is secured by, among other things, that certain (i) Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated December 13, 2023 (together with any and all amendments thereto or modifications thereof, the "**Guarantor Deed of Trust**"), executed by Guarantor, as trustor, in favor of Lender, which was recorded on January 5, 2024, as Instrument No. 20240011708, in the Official Records of Los Angeles County, California, encumbering that certain property commonly known as 210 and 244-248 Orange Grove Boulevard, Pasadena, California 91105, as more particularly described in Exhibit "A" attached therein (the "**Property**"), and (ii) Absolute Assignment of Leases, Lease Guaranties, Rents, Issues and Profits dated December 13, 2023 (the "**Guarantor Assignment of Leases**"), executed by Guarantor in favor of Lender, which was recorded January 5, 2024, as Instrument No. 20240011709 in the Official Records of Los Angeles County, California. Borrower and Guarantor also executed that certain Hazardous Substances Indemnity Agreement dated December 13, 2023 (the "**Guarantor Hazardous Indemnity**"), in favor of Lender.

D. Pursuant to the Guarantor Deed of Trust, Guarantor granted to and in favor of Lender a second priority security interest in and lien upon certain real and personal property described in the Guarantor Deed of Trust (the "**Guarantor Deed of Trust Collateral**"), to secure, without limitation, payment and performance of the indebtedness and obligations of Guarantor under and in connection with the Guaranty. Lender's security interest in the Guarantor Deed of Trust Collateral was and is perfected under applicable law.

E. The Loan was modified by that certain Extension Agreement effective as of June 13, 2025 entered into by Lender and the Borrower Parties (the "**Modification**"). The Loan Agreement, the Note, the Guaranty, Guarantor Deed of Trust, Guarantor Assignment of Leases, Guarantor Hazardous Indemnity, the Modification and all other assignments, agreements, instruments and other documents executed by Borrower or Guarantor in connection with the Loan shall at times hereinafter be referred to collectively as the "**Loan Documents**".

F. The Maturity Date of the Loan is August 13, 2025.

G. Borrower and Guarantor have requested that Lender consent to extending the Maturity Date for an additional 4 months (the "**Request**"). Lender has no obligation to accede to Borrower's and Guarantors' request, but Lender is willing to agree, subject to all of the terms and conditions set forth in this Agreement.

**STATEMENT OF AGREEMENT**

FOR AND IN CONSIDERATION of mutual covenants herein contained, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby covenant and agree as follows:

**ARTICLE I**
**ACKNOWLEDGMENTS, WARRANTIES & REPRESENTATIONS**

1.01 **Recitals**. The Parties acknowledge and agree that the facts recited in the Statement of Background to this Agreement are true and accurate in all material respects.

1.02 **Status of the Loan**.

(a) **Loan Documents**. Borrower and Guarantor acknowledges and agrees that the Loan Documents (as they existed prior to this Agreement, and as the same are modified pursuant to this Agreement) constitute valid and legally binding obligations of such Borrower and Guarantor that are parties thereto and are enforceable against such Borrower and Guarantor that is a Party thereto and the Property in accordance with their terms. Borrower and Guarantor further acknowledges and agrees that this Agreement is not intended to be, and shall not be deemed or construed to be, a waiver of the Loan or the Loan Documents, or any of them and that there are no currently existing claims, demands, offsets or defenses at law or in equity that would defeat or diminish Lender's right to collect the indebtedness evidenced by the Loan Documents and to enforce the rights and remedies available to Lender as provided in the Loan Documents or at law or in equity.

(b) **Borrower's Reaffirmation of Representations**. Borrower hereby confirms and reaffirms the truth and accuracy, as of the date of this Agreement, of all warranties and representations of Borrower set forth in the Loan Documents.

(c) **Guarantors' Reaffirmation of Representations**. Guarantor hereby confirms and reaffirms the truth and accuracy, as of the date of this Agreement, of all warranties and representations of Guarantor as set forth in Loan Documents. By execution of this Agreement, Guarantor hereby expressly consents to the modifications set forth herein and any other agreements executed contemporaneously herewith. Guarantor hereby acknowledges, represents and agrees that the Loan Documents, as modified and amended herein, the Guaranty and any other agreements related thereto remain in full force and effect and constitute the valid and legally binding obligation of Borrower and Guarantor, respectively, enforceable against such persons or entity in accordance with their respective terms, and that the Guaranty executed by Guarantor extends to and applies to the foregoing documents as modified and amended.

(d) **No Satisfaction, Novation, Release or Waiver**. Borrower and Guarantor acknowledge and agree that this Agreement is not intended to be, and shall not be deemed or construed to be, a cure of any default or event of default under the Loan Documents, or a satisfaction, novation or release of the Loan or the Loan Documents, or any of them, or of this Agreement except as otherwise expressly provided in this Agreement, or as a waiver by Lender of any of the rights of Lender under the Loan Documents, or any of them, or at law or in equity; and that Lender reserves all of its rights and

remedies under the Loan Documents, at law, and in equity, in connection with any such defaults or events of default.

1.03 **Authority of Guarantors**. Guarantor represents and warrants that (a) the execution, delivery and performance of this Agreement by Guarantor will not violate any provision of any law, rule, regulation, order, writ, judgment, injunction, decree, determination or award presently in effect and applicable to Guarantor, or result in a breach or constitute or cause a default under any indenture, agreement, lease or instrument to which Guarantor is a party; (b) Guarantor is not in default under any such law, rule, regulation, order, writ, judgment, injunction, decree, determination or award, or any such indenture, agreement, lease or instrument; and (c) the Guaranty, the Loan Documents, this Agreement to which Guarantor is a party constitutes the valid and legally binding obligations of Guarantor and are enforceable against Guarantor in accordance with its terms.

1.04 **Borrower Financial Statements**. Borrower represents and warrants to Lender that all financial statements regarding Borrower's financial condition heretofore delivered to Lender by Borrower are true, complete and accurate statements in every material respect for the periods covered thereby and were prepared in accordance with sound accounting principles applied on a consistent basis. Borrower acknowledges and agrees that all of such financial statements have been provided to Lender to induce Lender to enter into this Agreement and are being relied upon by Lender for such purposes.

1.05 **Guarantor Financial Statements**. Guarantor represents and warrants to Lender that all financial statements regarding Guarantor's financial condition heretofore delivered to Lender by Guarantor are true, complete and accurate statements in every material respect for the periods covered thereby and were prepared in accordance with sound accounting principles applied on a consistent basis. Guarantor acknowledges and agrees that all of such financial statements have been provided to Lender to induce Lender to enter into this Agreement and are being relied upon by Lender for such purposes.

## ARTICLE II
## MODIFICATION OF LOAN

2.01 **Effectiveness of Modification**. This Agreement and any obligations of Lender shall not be effective, unless and until each of the following conditions precedent has been satisfied or waived in writing by Lender, which shall be determined by Lender in Lenders sole and absolute judgment:

(a) Borrower shall pay to Lender an extension fee in the amount of $3,500.00;

(b) Borrower shall pay to Lender, within five (5) days of Lender's request, all of Lender costs and expenses, including, but not limited to, Lender's costs of documentation and execution of this Agreement.

(c) On or before August 29, 2025, Borrower and Guarantor shall have executed and delivered to Lender this Agreement and

(d) Borrower and Guarantor provide Lender with any and all other documents and instruments evidencing, securing or otherwise relating to the Loan and entered into contemporaneously with the execution and delivery of this Agreement.

2.02 **Balance of Loan and Interest Reserve**. The Borrower Parties and Lender acknowledge and agree that as of August 1, 2025, the outstanding principal balance of the Note is $335,846.49 the total amount of Loan Proceeds available as Interest Reserve is $41,746.30 (**"Available Interest Reserve"**). Other than the Available Interest Reserve which shall be disbursed pursuant to Section 2.03(b) below, the parties hereto agree and acknowledge that Lender shall have no obligation whatsoever to disburse any further Loan Proceeds.

2.03 **Modification of Loan Documents**. Borrower and Lender agree that if the conditions set forth in Section 2.01 above are timely satisfied, then the Loan shall be modified as follows:

(a) The Maturity Date of the Loan shall be extended from August 13, 2025 to December 13, 2025.

(b) Pursuant to Section 3.11 of the Loan Agreement, Borrower hereby authorizes Lender on a monthly basis to continue to disburse from the Available Interest Reserve the amount of interest due under the Note, without further authorization on the part of Borrower. Upon the occurrence of any Event of Default, Lender may continue to make disbursements from the Available Interest Reserve of the amounts of interest accrued and unpaid under the Note, in Lender's sole and absolute discretion, without further authorization on the part of Borrower. Notwithstanding the existence of the Available Interest Reserve, Borrower shall be responsible to pay interest due under the terms of the Note from funds other than the Available Interest Reserve in the event the Available Interest Reserve has been disbursed in its entirety or upon the occurrence of an Event of Default. If the Available Interest Reserve is from time to time insufficient to pay interest due under the terms of the Note, then Borrower shall, within 10 Business Days of Lender's demand, deposit into a non-interest bearing demand deposit account with Lender additional funds to increase the Interest Reserve, in such amounts as Lender may designate, in Lender's sole and absolute discretion. Borrower agrees to execute an assignment of deposit account in form and content acceptable to Lender, in its sole discretion, granting a security interest to Lender in such account as additional security for the Loan. Borrower acknowledges that Lender has made no representation or warranty concerning the adequacy or sufficiency of the Interest Reserve for payment of interest on the Loan or any portion thereof.

2.04 **References**. From and after the date of this Agreement, any and all references in any of the Loan Documents to the "**Loan Documents**" shall be deemed to be references to the Loan Documents as the same have been modified by this Agreement.

## ARTICLE III
## RELEASE AND COVENANT NOT TO SUE, WAIVERS

3.01 **Release and Covenant Not To Sue**. Borrower and Guarantor, each for itself and on behalf of themselves and all of their respective heirs, successors and assigns, do hereby unconditionally, irrevocably and fully remise, release, acquit, waive, satisfy, settle and forever discharge Lender and all of its respective subsidiaries and affiliates, and all of the respective past, present and future officers, directors, employees, agents, representatives, attorneys, participants, heirs, successors and assigns of Lender and all of its respective subsidiaries and affiliates (all of such parties being hereinafter referred to collectively as the "**Released Lender Parties**") from any and all manner of debts, accountings, bonds, warranties, representations, covenants, promises, contracts, controversies, agreements, liabilities, obligations, expenses, damages, judgments, executions, objections, defenses, setoffs, actions, claims, counterclaims, demands and causes of action of any nature whatsoever, whether at law or in equity, whether known or unknown, which any of the Borrower Parties now has or hereafter may have by reason of any matter, cause or thing arising at any time from the beginning of the world to and including the time immediately prior to the execution and delivery of this Agreement (collectively, the "**Released Claims**"), including specifically, but without limitation, (i) claims, causes of action and defenses based on the negligence of Lender or any of the Released Lender Parties or on any other "lender liability" theories of, among others, bad faith, breach of implied covenant of good faith, unfair dealing, duress, coercion, control, misrepresentation, omissions, misconduct, overreaching, unconscionability, disparate bargaining position, reliance, equitable subordination, fraud, or otherwise, and (ii) matters arising out of or relating to (A) the Loan, including, but not limited to, the servicing, administration or funding thereof, (B) the Loan Documents or the indebtedness evidenced and secured thereby, (C) the Borrower, the Property or the development, financing and operation thereof, and (D) any other agreement or transaction between the Borrower Parties, or any of them, and any of the Released Lender Parties. Further, the Borrower Parties, each for itself and on behalf of all of their respective heirs, successors and assigns, hereby covenant and agree never to institute, cause to be instituted, continue prosecution of, or assist in or cooperate with the prosecution of any suit or other form of action or proceeding of any kind or nature whatsoever against any of the

Released Lender Parties by reason of or in connection with any of the foregoing Released Claims. Lender expressly acknowledges and agrees that the foregoing release and covenant not to sue does not apply to any liability of Lender which may arise by virtue of any breach by Lender on or after the Effective Date of any of its covenants, representations, warranties and agreements in this Agreement.

Without in any manner altering or modifying the provisions of Section 3.01 of this Agreement, each of the Borrower Parties agree as follows:

EACH OF THE BORROWER PARTIES HEREBY ACKNOWLEDGES THAT IT HAS READ AND IS FAMILIAR WITH THE PROVISIONS OF CALIFORNIA CIVIL CODE SECTION 1542 ("**SECTION 1542**"), WHICH IS SET FORTH BELOW:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

BY INITIALING BELOW, EACH OF THE BORROWER PARTIES HEREBY WAIVES THE PROVISIONS OF SECTION 1542 SOLELY IN CONNECTION WITH THE MATTERS WHICH ARE THE SUBJECT OF THE FOREGOING WAIVERS AND RELEASES:

Initials: Borrower ____________ Guarantor

3.02 <u>Warranty and Representation Regarding Released Claims</u>. Borrower and Guarantor, respectively, warrants and represents to the Released Lender Parties that such Borrower Party is presently the legal and beneficial owner and holder of the Released Claims and that such Borrower Party has not heretofore expressly or impliedly assigned, transferred, pledged, hypothecated, sold, conveyed or otherwise disposed of, for the benefit of creditors or otherwise, any of the Released Claims, and that it is the intent of such Borrower Party to release, compromise and settle such Released Claims, whether known or unknown, whether reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured and whether they arose collaterally, directly, derivatively or otherwise between any of the Borrower Parties and any of the Released Lender Parties from the beginning of the world to and including the date of this Agreement. Each Borrower Party hereby assumes the risk of any and all unknown, unanticipated or misunderstood defenses, claims, causes of action, contracts, liabilities and obligations which are released by this Agreement in favor of the Released Lender Parties, and each of the Borrower Parties hereby waives and releases all rights and benefits which they might otherwise have under applicable law with regard to the release of such unknown, unanticipated or misunderstood defenses, claims, causes of action, contracts, liabilities, and obligations. To the extent (if any) that any law may be applicable, each of the Borrower Parties hereby waives and releases, to the maximum extent permitted by law, any right or defense which any of them might otherwise have under any law of any applicable jurisdiction, which might limit or restrict the effectiveness or scope of any waivers or releases under this Agreement.

3.03 <u>Non-Bankruptcy Waivers</u>.

(a) <u>Waiver of Civil Code 2822</u>. Borrower and Guarantor, respectively, each hereby waives any rights, claims or defenses under California Civil Code Section 2822 or any successor sections to designate the portion of the obligations under the Loan Documents that are to be satisfied by any payment or other satisfaction by Borrower or Guarantor.

(b) <u>Waiver of Right of Offset</u>. Borrower and Guarantor, respectively, each hereby waives any rights, claims or defenses of offset and no portion of the obligations shall be or be deemed to be offset or compensated by all or any part of any claim, cause of action, counterclaim, or cross-claim,

Released Lender Parties by reason of or in connection with any of the foregoing Released Claims. Lender expressly acknowledges and agrees that the foregoing release and covenant not to sue does not apply to any liability of Lender which may arise by virtue of any breach by Lender on or after the Effective Date of any of its covenants, representations, warranties and agreements in this Agreement.

Without in any manner altering or modifying the provisions of Section 3.01 of this Agreement, each of the Borrower Parties agree as follows:

EACH OF THE BORROWER PARTIES HEREBY ACKNOWLEDGES THAT IT HAS READ AND IS FAMILIAR WITH THE PROVISIONS OF CALIFORNIA CIVIL CODE SECTION 1542 ("**SECTION 1542**"), WHICH IS SET FORTH BELOW:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

BY INITIALING BELOW, EACH OF THE BORROWER PARTIES HEREBY WAIVES THE PROVISIONS OF SECTION 1542 SOLELY IN CONNECTION WITH THE MATTERS WHICH ARE THE SUBJECT OF THE FOREGOING WAIVERS AND RELEASES:

Initials: Borrower ____________ Guarantor JM

3.02 **Warranty and Representation Regarding Released Claims**. Borrower and Guarantor, respectively, warrants and represents to the Released Lender Parties that such Borrower Party is presently the legal and beneficial owner and holder of the Released Claims and that such Borrower Party has not heretofore expressly or impliedly assigned, transferred, pledged, hypothecated, sold, conveyed or otherwise disposed of, for the benefit of creditors or otherwise, any of the Released Claims, and that it is the intent of such Borrower Party to release, compromise and settle such Released Claims, whether known or unknown, whether reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured and whether they arose collaterally, directly, derivatively or otherwise between any of the Borrower Parties and any of the Released Lender Parties from the beginning of the world to and including the date of this Agreement. Each Borrower Party hereby assumes the risk of any and all unknown, unanticipated or misunderstood defenses, claims, causes of action, contracts, liabilities and obligations which are released by this Agreement in favor of the Released Lender Parties, and each of the Borrower Parties hereby waives and releases all rights and benefits which they might otherwise have under applicable law with regard to the release of such unknown, unanticipated or misunderstood defenses, claims, causes of action, contracts, liabilities, and obligations. To the extent (if any) that any law may be applicable, each of the Borrower Parties hereby waives and releases, to the maximum extent permitted by law, any right or defense which any of them might otherwise have under any law of any applicable jurisdiction, which might limit or restrict the effectiveness or scope of any waivers or releases under this Agreement.

3.03 **Non-Bankruptcy Waivers**.

(a) **Waiver of Civil Code 2822**. Borrower and Guarantor, respectively, each hereby waives any rights, claims or defenses under California Civil Code Section 2822 or any successor sections to designate the portion of the obligations under the Loan Documents that are to be satisfied by any payment or other satisfaction by Borrower or Guarantor.

(b) **Waiver of Right of Offset**. Borrower and Guarantor, respectively, each hereby waives any rights, claims or defenses of offset and no portion of the obligations shall be or be deemed to be offset or compensated by all or any part of any claim, cause of action, counterclaim, or cross-claim,

whether liquidated or unliquidated, that Borrower, Guarantor or any other Person may have or claim to have against Lender, including without limitation, any rights of offset, setoff or other claims arising out of, related to or based on 11 U.S.C. § 553 and California Code of Civil Procedure Section 431.70.

(c) Marshalling. Borrower and Guarantor, respectively, each hereby waives any rights, claims, defenses relating to any requirement to the marshaling of assets or the realization on any collateral for the Loan in any particular order, including without limitation, as may be otherwise required by California Civil Code Sections 2899 and 3433.

## ARTICLE IV
## MISCELLANEOUS

4.01 No Impairment of Liens. Except as otherwise expressly provided in this Agreement, nothing contained in this Agreement shall affect any of the Loan Documents or the validity, priority or extent of the security interest or liens of any of the Loan Documents. Except as expressly modified by or pursuant to this Agreement: (i) the Loan Documents shall remain in full force and effect, and (ii) this Agreement shall have no effect on the priority or validity of the security interests or liens set forth in the Loan Documents.

4.02 Survival of Provisions. Except as expressly herein provided, the covenants, acknowledgments, representations, waivers, agreements and obligations contained in this Agreement shall survive the consummation of the transactions contemplated by this Agreement.

4.03 No Limitation of Remedies. No right, power or remedy conferred upon or reserved to or by Lender in this Agreement is intended to be exclusive of any other right, power or remedy conferred upon or reserved to or by Lender hereunder or under the Loan Documents, or at law or in equity, but each and every remedy shall be cumulative and concurrent, and shall be in addition to each and every other right, power and remedy given hereunder or under the Loan Documents, or now or hereafter existing at law or in equity.

4.04 No Waivers. Except as specifically and expressly set forth in this Agreement, nothing contained herein or therein shall constitute a waiver of any rights or remedies of Lender under the Loan Documents or at law or in equity. No delay or failure on the part of any party hereto in the exercise of any right or remedy hereunder or thereunder shall operate as a waiver thereof, and no single or partial exercise of any right or remedy hereunder or thereunder shall preclude other or further exercise thereof or the exercise of any other right or remedy. No action or forbearance by any party contrary to the provisions of this Agreement shall be construed to constitute a waiver of any of the express provisions hereof or thereof. Any party may in writing expressly waive any of such party's rights under this Agreement without invalidating this Agreement or any portion hereof or thereof and no waiver herein or in the Loan Documents shall constitute a waiver as to any subsequent occurrence whether or not similar.

4.05 Pronouns. All personal pronouns used in this Agreement, whether used in the masculine, feminine or neuter gender, shall include all other genders; the singular shall include the plural, and vice versa.

4.06 No Partnership, Joint Venture or Agency. This Agreement shall not in any respect be interpreted, deemed or construed as making Lender a partner or joint venturer with the Borrower Parties or any of them, nor shall it be interpreted, deemed or construed as making Lender the agent or representative of any of the Borrower Parties. In no event shall Lender be liable for debts or claims accruing or arising against the Borrower Parties or any of them. The relationship of Lender to Borrower is that of "lender" and "borrower." The relationship of Lender to Guarantor is that of "lender" and "guarantor" or "surety" and nothing herein shall change the nature of Guarantor's obligations under the Guaranties or make Guarantor a co-borrower or otherwise principally obligated with respect to Borrower's obligations under the Loan Documents. The relationship of Guarantor to Borrower is that solely of "guarantor" or "surety" and "debtor."

4.07 **Successors or Assigns**. Without in any manner limiting the scope and effect of any "due-on-sale" provisions in the Loan Documents, all covenants and agreements contained in this Agreement shall bind and inure to the benefit of the respective heirs, executors, legal representatives, successors, successors-in-title and assigns of the Parties whether so expressed or not.

4.08 **Construction of Agreement**. Borrower and Guarantor (for itself, and not jointly and severally) acknowledges that it has participated in the negotiation of this Agreement and no provision of this Agreement shall be construed against or interpreted to the disadvantage of any party hereto or thereto by any court or other governmental or judicial authority by reason of such party having or being deemed to have structured, dictated or drafted such provision; that the Borrower Parties, and each of them, at all times have had access to an attorney in the negotiation of the terms of and in the preparation and execution of this Agreement, and the Borrower Parties, and each of them, has had the opportunity to review and analyze this Agreement for a sufficient period of time prior to the execution and delivery thereof; that no representations or warranties have been made by or on behalf of Lender (including Lender's participants), or relied upon by the Borrower Parties, or any of them, pertaining to the subject matter of this Agreement, other than those that are set forth in this Agreement, and all prior statements, representations and warranties, if any, are totally superseded and merged into this Agreement, which represent the final and sole agreement of the parties with respect to the matters which are the subject hereof and thereof; that all of the terms of this Agreement were negotiated at arm's-length; and that this Agreement were prepared and executed without fraud, duress, undue influence or coercion of any kind exerted by any of the parties upon the others; and that the execution and delivery of this Agreement is the free and voluntary act of each of the Borrower Parties.

4.09 **No Admissions**. Borrower and Guarantor expressly acknowledges and agrees that the waivers, estoppels, releases and covenants not to sue contained in this Agreement shall not be construed as an admission of wrongdoing, liability or culpability on the part of Lender or any of the other Released Lender Parties, or as an admission by Lender or any of the other Released Lender Parties of the existence of any claims of any of the Borrower Parties against Lender or any of the other Released Lender Parties. Lender expressly acknowledges and agrees that the waivers, estoppels, releases and covenants not to sue contained in this Agreement shall not be construed as an admission of wrongdoing, liability or culpability on the part of any of the Borrower Parties, or as an admission by any of the Borrower Parties of the existence of any claim of any of the Released Lender Parties against any of the Borrower Parties.

4.10 **Governing Law**. This Agreement shall be governed by and construed in accordance with the laws of the State of California, without regard to principles of conflict of law.

4.11 **Bankruptcy of Borrower**. Borrower and Guarantor covenants and agrees that if Borrower or the Property, or any portion thereof, shall be or become the subject of any bankruptcy proceeding or the property of any bankruptcy estate, Lender shall be entitled to obtain upon ex parte application therefor, and without further notice or action of any kind or nature whatsoever, (i) an order from the Bankruptcy Court prohibiting the use of Lender's "cash collateral" (as such term is defined in Section 363 of the Bankruptcy Code) in connection with the Loan, and (ii) an order from the Bankruptcy Court granting immediate relief from the automatic stay pursuant to Section 362 of the Bankruptcy Code so as to permit Lender to exercise all of its rights and remedies pursuant to this Agreement, the Loan Documents, and at law and in equity. Borrower and Guarantor covenants not to directly or indirectly oppose or otherwise defend against Lender's effort to obtain relief from the stay pursuant to this Section, and covenants and agrees that Lender shall be entitled to the lifting of the stay pursuant to this Section, without the necessity of an evidentiary hearing and without the necessity or requirement that Lender establish or prove the value of the Property, the lack of adequate protection of Lender's interest in the Property, the lack of any reasonable prospect of reorganization with respect either to Borrower or the Property, or Borrower's lack of equity in the Property. Borrower and Guarantor further warrants, represents and agrees that in the event of the filing of any voluntary or involuntary petition in bankruptcy by or against Borrower, such party shall not assert or request any other party to assert that the automatic stay provided by Section 362 of the Bankruptcy Code shall operate or be interpreted to stay, interdict, condition, reduce or inhibit the ability of Lender to enforce any rights it has by virtue of this Agreement or the Loan Documents, or any other rights Lender has, whether now or hereafter acquired, against Guarantor or any collateral owned by

Guarantor; and further that, in the event of the filing of any voluntary or involuntary petition in bankruptcy by or against Borrower, such party shall not seek a supplemental stay or any other relief, whether injunctive or otherwise, pursuant to Section 105 of the Bankruptcy Code or any other provision of the Bankruptcy Code, to stay, interdict, condition, reduce or inhibit the ability of Lender to enforce any rights it has by virtue of this Agreement or the Loan Documents, or at law or in equity, or any other rights Lender has, whether now or hereafter acquired against Guarantor or any collateral owned by Guarantor.

4.12 **Headings**. The headings of the articles, sections and subsections of this Agreement are for the convenience of reference only, are not to be considered a part hereof, and shall not limit or otherwise affect any of the terms hereof or thereof.

4.13 **Modifications**. The terms of this Agreement may not be changed, modified, waived, discharged or terminated orally, but only by an instrument or instruments in writing, signed by the party against whom the enforcement of the change, modification, waiver, discharge or termination is asserted.

4.14 **Time of Essence**. Time is of the essence of this Agreement.

4.15 **Counterparts**. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, and all such counterparts together shall constitute one and the same instrument. A telecopied facsimile or e-mailed facsimile (*e.g.*, a "pdf") of a duly executed counterpart of this Agreement shall be sufficient to evidence the binding agreement of the parties to the terms herein.

4.16 **Entire Agreement**. This Agreement embodies the final, entire Agreement among the parties hereto and thereto with respect to the subject matter hereof and thereof and supersede any and all prior commitments, agreements, representations and understandings, whether written or oral, relating to the subject matter hereof and thereof and may not be contradicted or varied by evidence of prior, contemporaneous or subsequent oral agreements or discussions of the parties hereto or thereto. There are no oral agreements among the parties hereto or thereto. The provisions of this Agreement may be amended or waived only by an instrument in writing signed by the respective parties to such documents.

4.17 **Invalid Provision to Affect No Others**. If, from any circumstances whatsoever, fulfillment of any provision of this Agreement or any transaction related thereto at the time performance of such provision shall be due, shall involve transcending the limit of validity presently prescribed by any applicable usury statute or any other applicable law, with regard to obligations of like character and amount, then ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity; and if any clause or provision herein or therein contained operates or would prospectively operate to invalidate this Agreement, in whole or in part, then such clause or provision only shall be held for naught, as though not herein or therein contained, and the remainder of this Agreement shall remain operative and in full force and effect.

*[Remainder of page intentionally blank; signature page follows]*

**IN WITNESS WHEREOF,** the Parties hereto have duly executed and delivered this Loan Modification Agreement as of the day and year first above written.

**LENDER**:

**PREFERRED BANK,** a California banking corporation

By: ______________________
Name: Jayden Lee
Its: VP, PM

**BORROWER:**

______________________
**ANDREW STUPIN,** an individual

**GUARANTOR:**

**SDRES PARTNERS LLC,**
a California limited liability company

By: ______________________
Jason Miller, Manager

**IN WITNESS WHEREOF,** the Parties hereto have duly executed and delivered this Loan Modification Agreement as of the day and year first above written.

**LENDER:**

**PREFERRED BANK**, a California banking corporation

By:______________________________
Name:____________________________
Its:______________________________

**BORROWER:**

______________________________
**ANDREW STUPIN**, an individual

**GUARANTOR:**

**SDRES PARTNERS LLC,**
a California limited liability company

By: ______________________________
Jason Miller, Manager

# Exhibit FF

DENTONS

**Andrea C. Chang**

andrea.chang@dentons.com
D +1 213-243-6180

Dentons US LLP
601 South Figueroa Street
Suite 2500
Los Angeles, CA 90017-5704
United States

dentons.com

January 6, 2026

**via FEDERAL EXPRESS**

ANDREW STUPIN
520 Newport Center Drive, Suite 480
Newport Beach, California 92660

SDRES PARTNERS LLC
520 Newport Center Drive, Suite 480
Newport Beach, California 92660
Attn: Jason Miller, Manager

Re: **NOTICE OF DEFAULT AND MATURITY**
$400,000.00 Loan to ANDREW STUPIN

Dear Mr. Stupin and SDRES Partners LLC:

This firm represents Preferred Bank, a California banking corporation ("**Lender**"), in connection with a loan made by Lender to ANDREW STUPIN ("**Borrower**"), in the original principal amount of Four Hundred Thousand and No/100 Dollars ($400,000.00) (the "**Loan**"), which Loan is evidenced by, among other things, that certain:

1) Loan Agreement dated December 13, 2023 (as the same has been modified, amended, renewed and/or supplemented from time to time, collectively, the "**Loan Agreement**"), by and between Borrower and Lender,
2) Promissory Note dated December 13, 2023, in the maximum principal amount of $400,000.00 (as the same has been modified, amended, renewed and/or supplemented from time to time, collectively, the "**Note**") executed by Borrower in favor of Lender,
3) Secured Continuing Guaranty dated December 13, 2023 entered into by SDRES Partners LLC ("**Guarantor**") in favor of Lender,
4) Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated December 13, 2023 (together with any and all amendments thereto or modifications thereof, the "**Guarantor Deed of Trust**"), executed by Guarantor, as trustor, in favor of Lender, which was recorded on January 5, 2024, as Instrument No. 20240011708, in the Official Records of Los Angeles County, California (the "**Official Records**"), encumbering that certain property commonly known as 210 and 244-248 Orange Grove

Boulevard, Pasadena, California 91105, as more particularly described in Exhibit "A" attached therein (the "**Property**"),

5) Absolute Assignment of Leases, Lease Guaranties, Rents, Issues and Profits dated December 13, 2023 (the "**Guarantor Assignment of Leases**"), executed by Guarantor in favor of Lender, which was recorded January 5, 2024, as Instrument No. 20240011709 in the Official Records,
6) Hazardous Substances Indemnity Agreement (the "**Indemnity**") dated December 13, 2023 entered into by Borrower and Guarantor in favor of Lender,
7) Extension Agreement (the "**Extension**") effective as of June 13, 2025 entered into by Lender, Borrower and Guarantor and
8) Loan Modification Agreement (the "**Modification**") effective August 13, 2025 entered into by Lender, Borrower and Guarantor.

The Loan Agreement, Note, Guaranty, the Guarantor Deed of Trust, the Guarantor Assignment of Leases, the Indemnity, the Extension, the Modification and all amendments and modifications thereto, and any and all other agreements, instruments, security agreements and/or other documents executed in connection with Loan are hereinafter referred to individually and collectively as the "**Loan Documents**." All capitalized terms not defined herein shall have the meaning ascribed such terms in the Loan Agreement.

**NOTICE OF DEFAULT UNDER
LOAN DOCUMENTS**

NOTICE IS HEREBY GIVEN that Events of Default have occurred under the Loan Documents (each, an "**Event of Default**" and collectively, the "**Events of Default**") as follows:

1) **THE LOAN MATURED ON DECEMBER 13, 2025. BORROWER'S FAILURE TO PAY THE LOAN AT MATURITY IS AN EVENT OF DEFAULT. YOU ARE HEREBY NOTIFIED THAT ALL AMOUNTS UNDER THE LOAN DOCUMENTS FOR THE LOAN ARE NOW DUE, PAYABLE AND DELINQUENT. LENDER IS ENTITLED TO EXERCISE ANY AND ALL OF ITS REMEDIES UNDER THE LOAN DOCUMENTS.**

2) Guarantor has failed to pay property taxes owed with respect to the Property.

3) Borrower and Guarantor have failed to timely provide Financial Statements.

4) There are multiple pending actions against Borrower.

As of the date of this letter, you have not timely paid the outstanding balance due Lender under the Loan Documents and incurable Events of Default have occurred. Please be advised that Lender expects, and we hereby demand on Lender's behalf, that Borrower immediately pay the entire balance now due and outstanding under the Loan and the Loan Documents including,

without limitation, all accrued non-default and default interest, past-due principal, late fees, and other charges and amounts provided for under the Loan Documents.

As of January 2, 2026, the total outstanding balance due under the Loan Documents was $343,970.11, broken down as follows: principal balance of the loan was $339,891.40, past due interest was $1,652.26, default interest was $906.37 and late charges were $1,520.08, excluding legal fees, any foreclosure fees and costs, and any other amounts that are required to be paid by Borrower under the terms of the Loan Documents.

**YOU ARE HEREBY NOTIFIED THAT ALL AMOUNTS UNDER THE LOAN DOCUMENTS ARE NOW DUE, PAYABLE AND DELINQUENT. WE HEREBY DEMAND THAT ON OR BEFORE JANUARY 16, 2026, PLEASE PAY TO LENDER THE TOTAL OUTSTANDING BALANCE DUE UNDER THE LOAN DOCUMENTS**. In order to determine the exact payoff figure currently owing to Lender, please have your counsel contact me at andrea.chang@dentons.com, (213), 243-6180.

Please be advised that until such time as the entire outstanding balance due under the Loan Documents is paid in full, additional default rate interest, late fees, and other charges shall continue to accrue as provided for under the Loan Documents. In addition, please be aware that, pursuant to the Loan Documents, Borrower is liable for the payment of all of Lender's reasonable attorneys' fees and disbursements now or hereafter incurred by Lender in connection with the enforcement of the provisions of the Note and the other Loan Documents, and the protection of Lender's security interest in the Collateral, including but not limited to, the costs of having a receiver appointed for and/or foreclosure on any or all of the Collateral.

Please be advised that based on the above-described Events of Default, Lender is entitled to exercise any or all of its rights and remedies under the Loan Documents, at law and equity, including, without limitation, seeking the appointment of a receiver for the Collateral, bringing an action on the Note against Borrower, bringing an action on the Guaranty against Guarantor, and/or by foreclosing on any or all of the Collateral, or by any of the foregoing.

Please be further advised that as to any post-maturity, partial payments already made or in the event Borrower makes any subsequent payment of any amount less than the entire amount necessary to pay the entire outstanding balance due under the Loan Documents in full to the indebtedness outstanding under the Loan Documents (each a "**Partial Payment**"), Lender will apply such Partial Payment to the indebtedness outstanding under the Loan Documents as a partial payment. No such Partial Payment or the acceptance thereof shall constitute or be deemed or construed as a waiver or cure of any existing default or Event of Default under the Loan Documents or the terms of this letter, a satisfaction of the Loan, or a waiver, modification, relinquishment, or forbearance by Lender of any of Lender's rights or remedies under the Loan Documents or at law or in equity, all of which rights and remedies are hereby expressly reserved. Without limiting the generality of the foregoing, no such Partial Payment or the acceptance thereof by Lender shall

have any effect on the requirement that Borrower immediately pay the entire outstanding balance due on the Loan.

No compromise, settlement, agreement, or understanding presently exists with respect to the Loan or any default or Event of Default under the Loan Documents, and none shall be deemed to exist unless and until such time, if any, as complete written documentation of such compromise, settlement, agreement, or understanding is executed and delivered by authorized representatives of all parties. Moreover, please be advised that it is the policy of Lender that no statement, act, omission, or course of dealing or conduct on the part of Lender shall be construed to alter or waive any default or Event of Default under the Loan Documents or any obligations arising under applicable law and/or the Loan Documents unless documented to writing and signed by an officer duly authorized to bind Lender.

Nothing contained in this letter is intended to create or constitute a waiver, modification, relinquishment, or forbearance by Lender of any of Lender's rights or remedies under any of the Loan Documents or at law or in equity, including, without limitation, any and all rights and remedies in connection with any other defaults or Events of Default that may now or hereafter exist under any of the Loan Documents, all of which rights and remedies are hereby expressly reserved. Neither delay by nor failure of Lender to exercise any right, power, or privilege under any of the Loan Documents shall operate as a waiver thereof, and no single or partial exercise of any right, power, or privilege shall preclude any other further exercise thereof or the exercise of any other right, power, or privilege.

Thank you for your prompt attention to this matter.

Sincerely,

Dentons US LLP

By: Andrea Chang
Andrea C. Chang

cc: Carol Lee and Lingchu Lin

# Exhibit GG

**This page is part of your document - DO NOT DISCARD**

# 20260071281

**Pages: 0005**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**01/30/26 AT 08:00AM**

| | |
|---|---|
| FEES: | 37.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 112.00 |

LEADSHEET

202601300190035

**00026249040**

015765048

**SEQ:**
**02**

SECURE - 8:00AM

**THIS FORM IS NOT TO BE DUPLICATED**

E497026

25-00380-2FN[illegible] NOD

FOR REFERENCE ONLY: 2026007128

Recording Requested By
Simplifile

and When Recorded Mail to:

FIDELITY NATIONAL TITLE COMPANY
5170 Golden Foothill Parkway, Suite 130
El Dorado Hills, CA 95762

Trustee Sale No: 25-00380-2FNT
Loan No: ****26/SDRES PARTNERS LLC
APN Number: 5713-027-065

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

## IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is $230,429.29 as of January 27, 2026, and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice,

**unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.**

**To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:**

**PREFERRED BANK, a California banking corporation**
**Attn.: Lingchu Lin**
**601 S. Figueroa Street 48th Floor**
**Los Angeles, CA 90017**
**Phone: 213-891-6878**

**If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.**

**REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

**NOTICE IS HEREBY GIVEN: That default has been declared by PREFERRED BANK, a California banking corporation, the current beneficiary under that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated as of June 8, 2017, executed by Cantor Group LLC, a California limited liability company, as trustor (the "Original Trustor"), to secure obligations in favor of PREFERRED BANK, a California banking corporation, as beneficiary (the "Original Beneficiary"), recorded on June 16, 2017, as Instrument No. 20170671625 of official records in the office of the Recorder of Los Angeles County, California (the "Original Deed of Trust"), and that**

**The Original Deed of Trust together with that certain 1) MEMORANDUM OF ASSUMPTION AGREEMENT executed by SDRES PARTNERS LLC, a California limited liability company (the "Amended Trustor"), the Original Trustor and Andrew Stupin dated as of June 16, 2017, recorded in the official records in the office of the Recorder of Los Angeles County, California on June 16, 2017, as Instrument No. 20170671628, 2) MEMORANDUM OF MODIFICATION OF DEED OF TRUST AND AMENDMENT TO LOAN DOCUMENTS executed by Amended Trustor dated as of March 25, 2019, recorded in the official records in the office of the Recorder of Los Angeles County, California on May 29, 2019, as Instrument No. 20190487920, 3) MEMORANDUM OF FIFTH EXTENSION AGREEMENT AND AMENDMENT TO LOAN DOCUMENTS dated as of December 13, 2023, recorded in the official records in the office of the Recorder of Los Angeles County, California on January 10, 2024, as Instrument No. 20240020417 and 4) MEMORANDUM OF THIRD AMENDMENT TO LOAN DOCUMENTS dated as of September 10, 2024, recorded in the official records in the office of the Recorder of Los Angeles County, California on October 9, 2024, as Instrument No. 20240688406, and any modifications thereto are collectively referred to herein from time to time as the "Deed of Trust", and that**

**The Deed of Trust encumbers certain property more particularly described therein (the "Trust Property"), and that**

**The Deed of Trust secures the payment of and the performance of certain obligations,**

including but not limited to, the obligations set forth in that certain Promissory Note executed by Original Trustor with a face amount of $8,400,000.00 and as amended and restated by that certain Amended and Restated Promissory Note executed by Amended Trustor (as successor-in-interest to Original Trustor), with a face amount of $8,400,000.00 (the "Amended Note"), and that

The Amended Note, together with all renewals of, extensions of, modifications of, refinancing of, consolidations of, and substitutions for the Amended Note are collectively referred to herein from time to time as the "Note", and that

The Note, together with that certain Loan Agreement dated as of June 8, 2017, executed between Original Trustor and Original Beneficiary (the "Loan Agreement"), and any other documents evidencing the obligations secured by the Deed of Trust, together with any modifications thereto, are collectively referred to herein from time to time as the "Secured Obligations", and that

The term "Trustor" as used herein shall mean either the Amended Trustor under the Deed of Trust or, if applicable, its successors in interest, and that

The term "Borrower" as used herein shall mean either the Amended Trustor or, if applicable, its successors in interest, and that

The term "Trustee" as used herein shall mean the original trustee under the Deed of Trust or, if applicable, its successors in interest, and that

The term "Beneficiary" as used herein shall mean the Original Beneficiary under the Deed of Trust or, if applicable, its successors in interest, and that

Capitalized terms not defined herein shall have the same meaning as those in the Secured Obligations, the Deed of Trust and/or any other loan documents, and that

A breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the Borrower has failed to perform obligations pursuant to or under the Secured Obligations and/or the Deed of Trust, specifically: failed to pay payments which became due; and all subsequent payments; together with late charges due; failed to pay attorneys` fees and expenses; together with other fees and expenses incurred by the Beneficiary; failed to pay, when due, and/or provide evidence of payment of real and/or personal property taxes, together with interest and/or penalties due thereon; and that

The Borrower has failed, or shall hereafter fail, to pay all other and subsequent interest and/or principal together with late charges and/or default interest and/or any and all other obligations and indebtedness as may become due under the terms of or under the Secured Obligations and/or Deed of Trust and not performed and/or paid including, without limitation, reimbursement to the Beneficiary and/or the Trustee of any of the following fees, costs and expenses heretofore or hereafter incurred, suffered or paid by the Beneficiary and/or the Trustee in connection with the Secured Obligations and/or Deed of Trust, the Trustor, the Borrower, or the Trust Property:

1. Attorneys' fees and costs including, without limitation, those incurred in connection with foreclosure of the Deed of Trust, appointment of a receiver with respect to the Trust Property, litigation over the amount, validity, enforcement or priority of the Secured Obligations and/or Deed of Trust, or commencement of an

**action or proceeding for relief from any bankruptcy court or other judicial or administrative stay, order or injunction, and all other such matters;**

2. **Real and/or personal property taxes, or payments under or with respect to prior or junior liens or encumbrances, insurance premiums and all other such matters;**
3. **Protection, preservation, repairs, restoration or completion of the Trust Property, and all other such matters;**
4. **Compliance with any applicable laws, regulations or orders, and all other such matters;**
5. **Trustee's fees, Trustee's sale guarantee premiums, and other foreclosure costs, and all other such matters; and that**

**It is the intention of the Beneficiary to include herein all delinquent sums or obligations now or hereafter secured by and under the Deed of Trust, whether presently known or unknown, and whether or not specifically set forth herein, and that**

**By reason thereof, the Beneficiary has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the Trust Property to be sold to satisfy the obligations secured thereby.**

**Date: January 29, 2026** **TS #:25-00380-2FNT**

**FIDELITY NATIONAL TITLE COMPANY, Trustee**

______________________________

**Jenny Taylor, Senior Vice President, Default Resolution Network Division**

**This page is part of your document - DO NOT DISCARD**

# 20260071283

**Pages: 0005**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County, California**

**01/30/26 AT 08:00AM**

| | |
|---|---|
| FEES: | 38.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 113.00 |

LEADSHEET

202601303300025

**00026249047**

015765050

**SEQ:**
**02**

SECURE - 8:00AM

**THIS FORM IS NOT TO BE DUPLICATED**

E492058

25-00381-2FN[illegible] NOD

FOR REFERENCE ONLY: 20260071283

Recording Requested By
Simplifile

and When Recorded Mail to:

FIDELITY NATIONAL TITLE COMPANY
5170 Golden Foothill Parkway, Suite 130
El Dorado Hills, CA 95762

Trustee Sale No: 25-00381-2FNT
Loan No: ***026/SDRES PARTNERS LLC
APN Number: 5713-013-057

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

## IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is $230,429.29 as of January 27, 2026, and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice,

**unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.**

**To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:**

**PREFERRED BANK, a California banking corporation**
**Attn.: Lingchu Lin**
**601 S. Figueroa Street 48th Floor**
**Los Angeles, CA 90017**
**Phone: 213-891-6878**

**If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.**

**REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

**NOTICE IS HEREBY GIVEN: That default has been declared by PREFERRED BANK, a California banking corporation, the current beneficiary under that certain DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING dated as of June 8, 2017, executed by Cantor Group LLC, a California limited liability Company, as trustor (the "Original Trustor"), to secure obligations in favor of PREFERRED BANK, a California banking corporation, as beneficiary (the "Original Beneficiary"), recorded on June 16, 2017, as Instrument No. 20170671620 of official records in the office of the Recorder of Los Angeles County, California (the "Original Deed of Trust"), and that**

**The Original Deed of Trust together with that certain 1) MEMORANDUM OF ASSUMPTION AGREEMENT executed by SDRES PARTNERS LLC, a California limited liability company (the "Amended Trustor"), the Original Trustor and Andrew Stupin dated as of June 16, 2017, recorded in the official records in the office of the Recorder of Los Angeles County, California on June 16, 2017, as Instrument No. 20170671623, 2) MEMORANDUM OF MODIFICATION OF DEED OF TRUST AND AMENDMENT TO LOAN DOCUMENTS executed by Amended Trustor dated as of March 25, 2019, recorded in the official records in the office of the Recorder of Los Angeles County, California on May 29, 2019, as Instrument No. 20190487919, 3) MEMORANDUM OF FIFTH EXTENSION AGREEMENT AND AMENDMENT TO LOAN DOCUMENTS dated as of December 13, 2023, recorded in the official records in the office of the Recorder of Los Angeles County, California on January 10, 2024, as Instrument No. 20240020404 and 4) MEMORANDUM OF THIRD AMENDMENT TO LOAN DOCUMENTS dated as of September 10, 2024, recorded in the official records in the office of the Recorder of Los Angeles County, California on October 9, 2024, as Instrument No. 20240688400, and any modifications thereto are collectively referred to herein from time to time as the "Deed of Trust", and that**

**The Deed of Trust encumbers certain property more particularly described therein (the "Trust Property"), and that**

**The Deed of Trust secures the payment of and the performance of certain obligations,**

including but not limited to, the obligations set forth in that certain Promissory Note executed by Original Trustor with a face amount of $8,400,000.00 and as amended and restated by that certain Amended and Restated Promissory Note executed by Amended Trustor (as successor-in-interest to Original Trustor), with a face amount of $8,400,000.00 (the "Amended Note"), and that

The Amended Note, together with all renewals of, extensions of, modifications of, refinancing of, consolidations of, and substitutions for the Amended Note are collectively referred to herein from time to time as the "Note", and that

The Note, together with that certain Loan Agreement dated as of June 8, 2017, executed between Original Trustor and Original Beneficiary (the "Loan Agreement"), and any other documents evidencing the obligations secured by the Deed of Trust, together with any modifications thereto, are collectively referred to herein from time to time as the "Secured Obligations", and that

The term "Trustor" as used herein shall mean either the Amended Trustor under the Deed of Trust or, if applicable, its successors in interest, and that

The term "Borrower" as used herein shall mean either the Amended Trustor or, if applicable, its successors in interest, and that

The term "Trustee" as used herein shall mean the original trustee under the Deed of Trust or, if applicable, its successors in interest, and that

The term "Beneficiary" as used herein shall mean the Original Beneficiary under the Deed of Trust or, if applicable, its successors in interest, and that

Capitalized terms not defined herein shall have the same meaning as those in the Secured Obligations, the Deed of Trust and/or any other loan documents, and that

A breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the Borrower has failed to perform obligations pursuant to or under the Secured Obligations and/or the Deed of Trust, specifically: failed to pay payments which became due; and all subsequent payments; together with late charges due; failed to pay attorneys` fees and expenses; together with other fees and expenses incurred by the Beneficiary; failed to pay, when due, and/or provide evidence of payment of real and/or personal property taxes, together with interest and/or penalties due thereon; and that

The Borrower has failed, or shall hereafter fail, to pay all other and subsequent interest and/or principal together with late charges and/or default interest and/or any and all other obligations and indebtedness as may become due under the terms of or under the Secured Obligations and/or Deed of Trust and not performed and/or paid including, without limitation, reimbursement to the Beneficiary and/or the Trustee of any of the following fees, costs and expenses heretofore or hereafter incurred, suffered or paid by the Beneficiary and/or the Trustee in connection with the Secured Obligations and/or Deed of Trust, the Trustor, the Borrower, or the Trust Property:

1. Attorneys' fees and costs including, without limitation, those incurred in connection with foreclosure of the Deed of Trust, appointment of a receiver with respect to the Trust Property, litigation over the amount, validity, enforcement or priority of the Secured Obligations and/or Deed of Trust, or commencement of an

action or proceeding for relief from any bankruptcy court or other judicial or administrative stay, order or injunction, and all other such matters;

2. Real and/or personal property taxes, or payments under or with respect to prior or junior liens or encumbrances, insurance premiums and all other such matters;
3. Protection, preservation, repairs, restoration or completion of the Trust Property, and all other such matters;
4. Compliance with any applicable laws, regulations or orders, and all other such matters;
5. Trustee's fees, Trustee's sale guarantee premiums, and other foreclosure costs, and all other such matters; and that

It is the intention of the Beneficiary to include herein all delinquent sums or obligations now or hereafter secured by and under the Deed of Trust, whether presently known or unknown, and whether or not specifically set forth herein, and that

By reason thereof, the Beneficiary has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the Trust Property to be sold to satisfy the obligations secured thereby.

Date: January 29, 2026 TS #:25-00381-2FNT

FIDELITY NATIONAL TITLE COMPANY, Trustee

Jenny Taylor, Senior Vice President, Default Resolution Network Division

# Exhibit HH

**This page is part of your document - DO NOT DISCARD**

# 20260343596

**Pages:**
**0005**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**05/11/26 AT 04:04PM**

| | |
|---|---|
| FEES: | 38.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 113.00 |

LEADSHEET

202605110160030

**00026548588**

015956776

**SEQ:**
**01**

SECURE - Daily - Time Sensitive

**THIS FORM IS NOT TO BE DUPLICATED**

E523477

25-00380-2FN

FOR REFERENCE ONLY: 20260343596

Recording Requested by:

**Simplifile**

and When Recorded Mail to:

FIDELITY NATIONAL TITLE COMPANY
5170 Golden Foothill Parkway, Suite 130
El Dorado Hills, CA 95762

---

**Trustee Sale No. 25-00380-2FNT** **Loan No: ****26/SDRES PARTNERS LLC**
**APN 5713-027-065**

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING DATED JUNE 8, 2017. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On June 3, 2026, at 11:00 AM, at the Courtyard located at 400 Civic Center Plaza, Pomona, CA 91766, FIDELITY NATIONAL TITLE COMPANY, as the duly appointed Trustee (the "Trustee"), under and pursuant to the power of sale contained in that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing recorded on June 16, 2017, as Instrument No. 20170671625 of official records in the office of the Recorder of Los Angeles County, CA, executed by: Cantor Group LLC, a California limited liability company, as Trustor (the "Trustor"), in favor of PREFERRED BANK, a California banking corporation, as Beneficiary (the "Beneficiary"), together with that certain 1) MEMORANDUM OF ASSUMPTION AGREEMENT executed by SDRES PARTNERS LLC, a California limited liability company (the "Amended Trustor"), the Original Trustor and Andrew Stupin dated as of June 16, 2017, recorded in the official records in the office of the Recorder of Los Angeles County, California on June 16, 2017, as Instrument No. 20170671628, 2) MEMORANDUM OF MODIFICATION OF DEED OF TRUST AND AMENDMENT TO LOAN DOCUMENTS executed by Amended Trustor dated as of March 25, 2019, recorded in the official records in the office of the Recorder of Los Angeles County, California on May 29, 2019, as Instrument No. 20190487920, 3) MEMORANDUM OF FIFTH EXTENSION AGREEMENT AND AMENDMENT TO LOAN DOCUMENTS dated as of December 13, 2023, recorded in the official records in the office of the Recorder of Los Angeles County, California on January 10, 2024, as Instrument No. 20240020417 and 4) MEMORANDUM OF THIRD AMENDMENT TO LOAN DOCUMENTS dated as of September 10, 2024, recorded in the official records in the office of the Recorder of Los Angeles County, California on October 9, 2024, as Instrument No. 20240688406, and any modifications thereto are collectively referred to herein from time to time as the "Deed of Trust", WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER, in lawful money of the United States, all payable at the time of sale, that certain property situated in said County, California describing the land therein as:

As more particularly described in Exhibit "A" attached hereto and made a part hereof

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the Property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the Property. You should also be aware that the lien being auctioned off may be a junior

lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the Property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this Property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the Property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this Property, you may call **1.866.684.2727** or visit this Internet Website **www.servicelinkasap.com**, using the file number assigned to this case **25-00380-2FNT**. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Website. The best way to verify postponement information is to attend the scheduled sale.

The real Property heretofore described is being sold "as is". The street address and other common designation, if any, of the real Property described above is purported to be: 244 S. Orange Grove Boulevard, Pasadena, CA.

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

Said sale will be made without covenant or warranty, express or implied, regarding title, possession, or encumbrances, to pay the remaining unpaid balance of the obligations secured by and pursuant to the power of sale contained in that certain Deed of Trust (together with any modifications thereto).

The total amount of the unpaid balance of the obligations secured by the Property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of this Notice of Trustee's Sale is estimated to be $8,736,555.84 (Estimated), provided, however, prepayment premiums, accrued interest and advances will increase this figure prior to sale. Beneficiary's bid at said sale may include all or part of said amount. In addition to cash, the Trustee will accept a cashier's check drawn on a state or national bank, a check drawn by a state or federal credit union or a check drawn by a state or federal savings and loan association, savings association or savings bank specified in Section 5102 of the California Financial Code and authorized to do business in California, or other such funds as may be acceptable to the trustee. In the event tender other than cash is accepted, the Trustee may withhold the issuance of the Trustee's Deed Upon Sale until funds become available to the payee or endorsee as a matter of right. The Property offered for sale excludes all funds held on account by the Property receiver, if applicable.

DATE: May 8, 2026

FIDELITY NATIONAL TITLE COMPANY, TRUSTEE
25-00380-2FNT
5170 Golden Foothill Parkway, Suite 130
El Dorado Hills, CA 95762
916-636-0114

Lindsay Lopez, Authorized Signor

**SALE INFORMATION CAN BE OBTAINED ON LINE AT www.servicelinkasap.com**
**AUTOMATED SALES INFORMATION PLEASE CALL 1.866.684.2727**

25-00380-2FNT

**EXHIBIT "A"**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF PASADENA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOT 12 OF TRACT NO. 63103, IN THE CITY OF PASADENA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1369, PAGES 35 THROUGH 52, INCLUSIVE OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AMENDED PURSUANT TO THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED DECEMBER 3, 2013 AS INSTRUMENT NO. 20131708591 OF OFFICIAL RECORDS.

PARCEL 2:

A RECIPROCAL ACCESS EASEMENT OVER THOSE AREAS SET OUT ON THE MAP SHOWN ABOVE.

PARCEL 3:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN CONSOLIDATED AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (SOUTH ORANGE GROVE PARCELS) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716500 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 4:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (DEL MAR PARCEL) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716499 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 5:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN ROSE PARADE GRANDSTAND EASEMENT AGREEMENT (ORANGE GROVE AVENUE) RECORDED JULY 21, 2005 AS INSTRUMENT NO. 05-1721787 AND AS INSTRUMENT NO. 05-1721788 BOTH OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 6:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING GARAGE EASEMENT AGREEMENT RECORDED JULY 2, 2007 AS INSTRUMENT NO. 20071579026 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 7:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING EASEMENT AGREEMENT RECORDED DECEMBER 28, 2011 AS INSTRUMENT NO. 20111763712 OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

**This page is part of your document - DO NOT DISCARD**

# 20260343605

**Pages: 0005**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County, California**

**05/11/26 AT 04:10PM**

| | |
|---|---|
| FEES: | 38.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 113.00 |

LEADSHEET

202605111020036

**00026548589**

015956777

**SEQ: 01**

SECURE - Daily - Time Sensitive

**THIS FORM IS NOT TO BE DUPLICATED**

E248987

25-00381-2FN7 NOS

FOR REFERENCE ONLY: 20260343605

Recording Requested by:

**Simplifile**

and When Recorded Mail to:

FIDELITY NATIONAL TITLE COMPANY
5170 Golden Foothill Parkway, Suite 130
El Dorado Hills, CA 95762

---

**Trustee Sale No. 25-00381-2FNT** **Loan No: ***026/SDRES PARTNERS LLC**
**APN 5713-013-057**

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING DATED JUNE 8, 2017. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On June 3, 2026, at 11:00 AM, at the Courtyard located at 400 Civic Center Plaza, Pomona, CA 91766, FIDELITY NATIONAL TITLE COMPANY, as the duly appointed Trustee (the "Trustee"), under and pursuant to the power of sale contained in that certain DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING recorded on June 16, 2017, as Instrument No. 20170671620 of official records in the office of the Recorder of Los Angeles County, CA, executed by: Cantor Group LLC, a California limited liability Company, as Trustor (the "Trustor"), in favor of PREFERRED BANK, a California banking corporation, as Beneficiary (the "Beneficiary"), together with that certain 1) MEMORANDUM OF ASSUMPTION AGREEMENT executed by SDRES PARTNERS LLC, a California limited liability company (the "Amended Trustor"), the Original Trustor and Andrew Stupin dated as of June 16, 2017, recorded in the official records in the office of the Recorder of Los Angeles County, California on June 16, 2017, as Instrument No. 20170671623, 2) MEMORANDUM OF MODIFICATION OF DEED OF TRUST AND AMENDMENT TO LOAN DOCUMENTS executed by Amended Trustor dated as of March 25, 2019, recorded in the official records in the office of the Recorder of Los Angeles County, California on May 29, 2019, as Instrument No. 20190487919, 3) MEMORANDUM OF FIFTH EXTENSION AGREEMENT AND AMENDMENT TO LOAN DOCUMENTS dated as of December 13, 2023, recorded in the official records in the office of the Recorder of Los Angeles County, California on January 10, 2024, as Instrument No. 20240020404 and 4) MEMORANDUM OF THIRD AMENDMENT TO LOAN DOCUMENTS dated as of September 10, 2024, recorded in the official records in the office of the Recorder of Los Angeles County, California on October 9, 2024, as Instrument No. 20240688400, and any modifications thereto are collectively referred to herein from time to time as the "Deed of Trust", WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER, in lawful money of the United States, all payable at the time of sale, that certain property situated in said County, California describing the land therein as:

As more particularly described in Exhibit "A" attached hereto and made a part hereof

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the Property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the Property. You should also be aware that the lien being auctioned off may be a junior

lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the Property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this Property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the Property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this Property, you may call **1.866.684.2727** or visit this Internet Website **www.servicelinkasap.com**, using the file number assigned to this case **25-00381-2FNT**. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Website. The best way to verify postponement information is to attend the scheduled sale.

The real Property heretofore described is being sold "as is". The street address and other common designation, if any, of the real Property described above is purported to be: 210 S. Orange Grove Boulevard, Pasadena, CA.

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

Said sale will be made without covenant or warranty, express or implied, regarding title, possession, or encumbrances, to pay the remaining unpaid balance of the obligations secured by and pursuant to the power of sale contained in that certain Deed of Trust (together with any modifications thereto).

The total amount of the unpaid balance of the obligations secured by the Property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of this Notice of Trustee's Sale is estimated to be $8,736,555.84 (Estimated), provided, however, prepayment premiums, accrued interest and advances will increase this figure prior to sale. Beneficiary's bid at said sale may include all or part of said amount. In addition to cash, the Trustee will accept a cashier's check drawn on a state or national bank, a check drawn by a state or federal credit union or a check drawn by a state or federal savings and loan association, savings association or savings bank specified in Section 5102 of the California Financial Code and authorized to do business in California, or other such funds as may be acceptable to the trustee. In the event tender other than cash is accepted, the Trustee may withhold the issuance of the Trustee's Deed Upon Sale until funds become available to the payee or endorsee as a matter of right. The Property offered for sale excludes all funds held on account by the Property receiver, if applicable.

DATE: May 8, 2026

FIDELITY NATIONAL TITLE COMPANY, TRUSTEE
25-00381-2FNT
5170 Golden Foothill Parkway, Suite 130
El Dorado Hills, CA 95762
916-636-0114

Lindsay Lopez, Authorized Signor

**SALE INFORMATION CAN BE OBTAINED ON LINE AT www.servicelinkasap.com**
**AUTOMATED SALES INFORMATION PLEASE CALL 1.866.684.2727**

25-00381-2FNT

**EXHIBIT "A"**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF PASADENA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOT 10 OF TRACT NO. 63103, IN THE CITY OF PASADENA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1369, PAGES 35 THROUGH 52 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AMENDED PURSUANT TO THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED DECEMBER 3, 2013 AS INSTRUMENT NO. 20131708591, OF OFFICIAL RECORDS.

PARCEL 2:

A RECIPROCAL ACCESS EASEMENT OVER THOSE AREAS SET OUT ON THE MAP SHOWN ABOVE.

PARCEL 3:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN CONSOLIDATED AMENDED AND RESTATED DRIVEWAY EASEMENT AGREEMENT (SOUTH ORANGE GROVE PARCELS) RECORDED DECEMBER 5, 2013 AS INSTRUMENT NO. 20131716500, OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 4:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN ROSE PARADE GRANDSTAND EASEMENT AGREEMENT (ORANGE GROVE AVENUE) RECORDED JULY 21, 2005 AS INSTRUMENT NO. 05-1721787 AND INSTRUMENT NO. 05-1721788, BOTH OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 5:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING GARAGE EASEMENT AGREEMENT RECORDED JULY 2, 2007 AS INSTRUMENT NO. 20071579026, OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

PARCEL 6:

AN EASEMENT FOR THE PURPOSES HEREIN STATED AND SUBJECT TO THE TERMS AND PROVISIONS OF THAT CERTAIN PARKING EASEMENT AGREEMENT RECORDED DECEMBER 28, 2011 AS INSTRUMENT NO. 20111763712, OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS SET OUT THEREIN.

# Exhibit II

| | First Loan to June 3rd | First Loan 6/3/26 – 8/6/26 | Second Loan to June 3rd | Second Loan 6/3/26 – 8/6/26 | Totals |
|---|---|---|---|---|---|
| Principal | $7,914,950.71 | $0.00 | $339,891.40 | $0.00 | $8,254,842.11 |
| Accrued Interest | $353,233.87 | $94,979.40 | $11,697.93 | $4,229.76 | $464,140.96 |
| Default Interest | $218,100.85 | $112,568.18 | $12,915.87 | $4,834.01 | $348,418.91 |
| Late Charges | $66,672.73 | $5,175.69 | $0.00 | $0.00 | $71,848.42 |
| Legal Fees | $193,013.17 | $91,819.92 | $37,362.78 | $41,090.90 | $363,286.77 |
| Foreclosure Fees and Title Fees | $42,211.44 | $333.30 | $0.00 | $0.00 | 42,544.74 |
| Appraisal Fees | $10,225.00 | 0.00 | $10,225.00 | 0.00 | $20,450.00 |
| **TOTAL** | $8,798,407.77 | $304,876.49 | $412,092.98 | $50,154.67 | $9,565,531.91 |
| | **Taxes & HOA Fees** | | | | |
| Taxes | | | | | $595,427.99 |
| HOA Fees | | | | | $26,025.13 |
| **TOTAL** | | | | | $621,453.12 |
| | **Receivership Fees to June 3rd** | **Receivership Fees 6/3/26 – 8/6/26** | | | |
| Receiver Fees And Costs | $0.00 | $67,087.75 | | | 67,087.75 |
| Jalmar Fees | $3,112.09 | $5,000.00 | | | $8,112.09 |
| Jalmar Maintenance | $26,868.15 | $11,694.38 | | | $38,562.53 |
| Maintenance And Repairs | $77,433.88 | $36,246.78 | | | $113,680.66 |
| **TOTAL** | | | | | $227,443.03 |
| Maintenance Repairs To Be Done | | | | | $425,286.00 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
601 S. Figueroa Street, Suite 2500, Los Angeles, CA 90017-5704

A true and correct copy of the foregoing document entitled (*specify*): DECLARATION OF LINGCHU LIN IN SUPPORT OF PREFERRED BANK'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND FOR RELIEF FROM TURNOVER BY PREPETITION RECEIVER
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) August 25, 2026 , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) August 25, 2026 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) August 25, 2026 , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**BY MESSENGER**
Hon. Scott C. Clarkson
U. S. Bankruptcy Court
Ronald Reagan Federal Building
411 West Fourth Street, Suite 5130
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 25, 2026 | JoAn Mack | */s/ JoAn Mack* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

**SERVED VIA NOTICE OF ELECTRONIC FILING (NEF)**

- **Kyra E Andrassy** kandrassy@raineslaw.com, bclark@raineslaw.com;csantiago@raineslaw.com
- **Jessica L Bagdanov** jbagdanov@bg.law, ecf@bg.law
- **Ira David Kharasch** ikharasch@pszjlaw.com
- **Kenneth Misken** Kenneth.M.Misken@usdoj.gov
- **John A Moe** john.moe@dentons.com, kathryn.howard@dentons.com;derry.kalve@dentons.com;DOCKET.GENERAL.LIT.LOS@dentons.com
- **Byron Z Moldo** bmoldo@ecjlaw.com, aantonio@ecjlaw.com,dperez@ecjlaw.com,scarson@ecjlaw.com
- **Walter Whitman Moore** walter@licensedtosue.com, waltermooreinla@gmail.com
- **David M Poitras** dpoitras@bg.law
- **United States Trustee (SA)** ustpregion16.sa.ecf@usdoj.gov

**SERVED BY UNITED STATES MAIL**

SDRES Partners LLC
520 Newport Center Drive, Suite 480
Newport Beach, CA 92660

Joseph M. Rothberg
Levene, Neale, Bender, Yoo & Golubchik, LLP
2818 La Cienega Avenue
Los Angeles, California 90034

Cia Mackle
Brook E Wilson
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd 13th Fl
Los Angeles, CA 90067-4100